USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/13/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
:
ELETSON HOLDINGS, INC. and ELETSON :
CORPORATION, :
:
                        Petitioners, :      23-cv-7331 (LJL)
:
     -v- :      MEMORANDUM AND
:              ORDER
LEVONA HOLDINGS LTD., :
:
                        Respondent. :
:
-------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

On August 18, 2023, Petitioners Eletson Holdings, Inc. ("Holdings") and Eletson Corporation ("Corp." and, with "Holdings," "Eletson" or "Petitioners") filed this petition to confirm an arbitration award with the Clerk of Court. Dkt. No. 2. On that date, at the request of Respondent Levona Holdings Ltd. ("Levona" or "Respondent"), Judge Rakoff, who was then sitting in Part I, ordered that the case be filed temporarily under seal. Dkt. No. 1. Respondent now moves for the petition, the arbitration award, and the declaration and exhibits in support of that petition to be publicly filed in redacted form. Dkt. No. 7. The motion to file the petition and related papers with redactions is denied.

## BACKGROUND

For purposes of this motion, the Court assumes the truth of the allegations of the petition to confirm the arbitral award.

Holdings and Corp. are corporations formed under the laws of Liberia. Dkt. No. 2 ¶ 2. Levona is a special purpose entity incorporated under the laws of the British Virgin Islands. *Id.*

¶ 3. Levona is owned by two hedge funds (the "Hedge Funds"), which in turn are managed and wholly controlled by an alternative management firm (the "Controller"). *Id.*

Eletson and Levona were each parties to a limited liability company agreement ("LLC Agreement") addressing the membership interests they held in a $700 million liquified petroleum gas joint venture (the "Company"), which, among other things, owned, directly or indirectly, fourteen liquified petroleum gas carriers. *See id.* ¶¶ 8–9; Dkt. No. 2-A at 5. Levona purchased its interest from funds managed by Blackstone Tactical Opportunities ("Blackstone"). Dkt. No. 2 ¶ 8. Eletson provided management services for the vessels owned by the Company. *Id.* ¶ 2. It appears that first Blackstone and then Levona provided funding for the Company. *See id.* ¶ 9.

The dispute arises out of the alleged conduct of Levona, and those acting on its behalf, after it acquired Blackstone's interests. Eletson entered into a Binding Offer Letter which gave Eletson a purchase option to buy out Levona's interests in the Company. *See id.* ¶ 10; Dkt. No. 2-A at 5. Eletson alleges that Levona, and those acting on its behalf, breached the LLC Agreement and the covenant of good faith and fair dealing in several ways. To summarize, Eletson claimed that: (1) the Controller bribed Eletson's Chief Financial Officer and caused him to disclose confidential Company information before the Controller's purchase of the interests in the Company, breached a non-disclosure agreement with Blackstone and communicated with Company financiers and lenders, and engaged in industrial sabotage that led to the arrest of the Company's vessels prior to Levona's acquisition of its interests; (2) Levona breached the LLC Agreement by attempting to fire Eletson as the manager of the Company's vessels and continued to conspire with the CFO to harm the Company; (3) Levona-related entities violated a status quo injunction ordered by the arbitrator; and (4) Levona failed to recognize Eletson's exercise of the

buy-out option under the Binding Offer Letter and continued to act on behalf of the Company in bad faith. *See* Dkt. No. 2-A at 8.

Eletson commenced arbitration in New York on July 29, 2022. *Id.* ¶ 12. At the conclusion of an eight-day arbitration hearing, the arbitrator issued an interim award resolving all issues except as to attorneys' fees, costs, expenses, and pre-judgment interest. *Id.* ¶¶ 20, 23. On August 15, 2023, the arbitrator issued rulings on the award. *Id.* ¶ 27. Petitioners claim that the arbitrator awarded compensatory damages of $43,455,122.21 and punitive damages of $43,455,122.21 jointly and severally against Levona, the Controller, and an identified special purpose vehicle owned and directed by the same entities and representatives of Levona (the "SPV"). *See id.* ¶ 29; Dkt. No. 2-A at 10. The arbitrator allegedly split that award—with $47,554,757 to Eletson and $39,355,487.42 to its "Preferred Nominees," Dkt. No. 2-A at 10, which are entities "affiliated with the principals" of Eletson that it designated "as the parties to receive the preferred interest in the Company, previously held by Levona," *id.* at 7. Respondent has not paid the award. Dkt. No. 2 ¶ 31.

Respondent seeks to redact the names of the Hedge Funds, the Controller (as well as the names of that firm's owner, agent, and counsel), the SPV, and the CFO. Dkt. No. 7. Respondent also seeks to redact information regarding consideration to be paid to Levona for its interests and the value of certain assets. *Id.*

## DISCUSSION

Federal Rule of Civil Procedure 5.2(d) provides that the Court "may order that a filing be made under seal without redaction" and may later "order the person who made the filing to file a redacted version for the public record." Fed. R. Civ. P. 5.2(d). In determining whether to permit the sealing of records filed in federal court, the Court engages in a three-step analysis. "First, the court determines whether the record at issue is a 'judicial document'—a document to which the

3

presumption of public access attaches." *Mirlis v. Greer*, 952 F.3d 51, 59 (2d Cir. 2020). Second, "if the record sought is determined to be a judicial document, the court proceeds to determine the weight of the presumption of access to that document." *Id.* (quotation omitted). Third, "the court must identify all of the factors that legitimately counsel against disclosure of the judicial document, and balance those factors against the weight properly accorded the presumption of access." *Id.*; *see Stafford v. Int'l Bus. Machines Corp.*, 2023 WL 5183546, at *5 (2d Cir. Aug. 14, 2023).

There is no dispute that the petition to confirm the arbitral award, the memorandum of law in support of that petition, and the supporting declaration (including the award itself) are judicial documents. For a document to be considered a judicial document, it "must be relevant to the performance of the judicial function and useful in the judicial process." *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995); *see Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019). "[I]t is well settled in this District that 'the petition, memoranda, and other supporting documents filed in connection with a petition to confirm an arbitration award (including the Final Award itself) are judicial documents that directly affect the Court's adjudication of that petition.'" *Clearwater Ins. Co. v. Granite State Ins. Co.*, 2015 WL 500184, at *3 (S.D.N.Y. Feb. 5, 2015) (Sullivan, J.) (quoting *Aioi Nissay Dowa Ins. Co. v. ProSight Specialty Mgmt. Co.*, 2012 WL 3583176, at *6 (S.D.N.Y. Aug. 21, 2012) (collecting cases)); *see also Stafford*, 2023 WL 5183546, at *6 ("[T]he arbitration award attached to [the] petition to confirm is a judicial document because it is relevant to the court's decision to confirm that award." (quotation omitted)).

Second, the weight of the presumption of public access "is of the highest." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 123 (2d Cir. 2006). The "weight of the presumption

4

[of access] is a function of (1) the role of the material at issue in the exercise of Article III judicial power and (2) the resultant value of such information to those monitoring the federal courts." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 142 (2d Cir. 2016) (quotations omitted).  The highest presumption applies to "matters that directly affect an adjudication." *Lugosch*, 435 F.3d at 119 (quoting *United States v. Amodeo* (*Amodeo II*), 71 F.3d 1044, 1049 (2d Cir. 1995)).  Over four decades ago, Judge Winter held for the Second Circuit that "documents used by parties moving for, or opposing, summary judgment should not remain under seal absent the most compelling reasons." *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982); *see Brown*, 929 F.3d at 48; *Lugosch*, 435 F.3d at 123.  The court's resolution of such a motion "is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny." *Joy*, 692 F.2d at 893.  Such a motion "adjudicates substantive rights and serves as a substitute for a trial." *Lugosch*, 435 F.3d at 122 (quoting *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 252–53 (4th Cir. 1988)).

A strong presumption of public access similarly attaches to papers submitted in connection with a petition to confirm an arbitration award.  Such papers "directly affect an adjudication." *Amodeo II*, 71 F.3d at 1049.  The Federal Arbitration Act is not indifferent to the contents of the award and the facts recited in it.  Its contents are central to the judicial function.  An arbitrator's award must "be confirmed 'if a ground for the arbitrator's decision can be inferred from the facts of the case.'" *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (quoting *Barbier v. Shearson Lehman Hutton, Inc.*, 948 F.2d 117, 121 (2d Cir. 1991)).  Moreover, the petition calls upon public officers, paid for by the taxpayer, to discharge a function entrusted to them by Congress. *See Bernstein*, 814 F.3d at 141 ("[A] claim has been leveled and [] state power has been invoked—and public resources spent—in an effort to resolve

5

the dispute."). Under the law in this Circuit, a petition to confirm an arbitration is treated as a motion for summary judgment. *See D.H. Blair*, 462 F.3d at 109. The petition, much like a motion for summary judgment, results in a final adjudication of the rights as between the parties. *See id.* at 110 ("[C]onfirmation of an arbitration award . . . makes what is already a final arbitration award a judgment of the court." (quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir.1984))); *Lohnn v. Int'l Bus. Machines Corp.*, 2022 WL 36420, at *9 (S.D.N.Y. Jan. 4, 2022) ("Plaintiff's motion and the accompanying papers ask the Court for the ultimate relief any court can grant—a judgment in her favor. The entry of judgment is integral to the judicial function."). If the petitioner satisfies the standards set forth by Congress under the Federal Arbitration Act, the court enters a judgment, concluding the matter. *See* 9 U.S.C. § 9. At that point, the petitioner has the ability to enforce the judgment using the resources of the United States courts. *See* Fed. R. Civ. P. 69. Public access to the petition and the materials supporting the petition thus implicates all of the interests that the Second Circuit has held justify the presumption of public access: "the need for federal courts," in the discharge of their substantive duties and "particularly because they are independent," "to have a measure of accountability and for the public to have confidence in the administration of justice." *Lugosch*, 435 F.3d at 119 (quoting *Amodeo II*, 71 F.3d at 1048); *see also TIG Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2019 WL 6310208, at *5 (S.D.N.Y. Nov. 25, 2019) ("[B]y availing themselves of the judicial process, the parties must also contend with the values of transparency and public access which undergird its legitimacy."). Indeed, the Second Circuit has long condemned the final adjudication of substantive rights "on the basis of secret documents." *Joy*, 692 F.2d at 893; *see also United States v. Aref*, 533 F.3d 72, 83 (2d Cir. 2008) ("The political branches of government claim legitimacy by election, judges by reason. Any step that withdraws an element

of the judicial process from public view makes the ensuing decision look more like fiat and requires rigorous justification." (quotation omitted)).

Thus, courts in this District have consistently held that petitions to confirm arbitration awards and documents submitted in support of such petitions "directly affect" adjudications, *see Dentons US LLP v. Zhang*, 2021 WL 2187289, at *1 (S.D.N.Y. May 28, 2021), such that "a strong presumption of public access" applies to them, *Susquehanna Int'l Grp. Ltd. v. Hibernia Express (Ir.) Ltd.*, 2021 WL 3540221, at *3 (S.D.N.Y. Aug. 11, 2021); *see Aioi Nissay Dowa Ins. Co. Ltd.*, 2012 WL 3583176, at *6; *Church Ins. Co. v. Ace Prop. & Cas. Ins. Co.*, 2010 WL 3958791, at *3 (S.D.N.Y. Sept. 23, 2010) (Sullivan, J.) ("Clearly, the Petition and Memorandum are judicial documents that directly affected the Court's adjudication of this case"); *TIG Ins. Co.*, 2019 WL 6310208, at *4 (holding the presumption of public access to an "arbitral Award and the Petition to confirm it" is at its "zenith" (quotation omitted)); *cf. Century Indem. Co. v. AXA Belgium*, 2012 WL 4354816, at *14 (S.D.N.Y. Sept. 24, 2012) (holding that the weight to be given to the presumption of access to arbitral awards under review was "reasonably high").  "In circumstances where an arbitration award is confirmed, the public in the usual case has a right to know what the Court has done."  *Glob. Reins. Corp.-U.S. Branch v. Argonaut Ins. Co.*, 2008 WL 1805459, at *1 (S.D.N.Y. Apr. 21, 2008).  By contrast, "sealing or redacting a petition would leave the public unaware" of the basis for the court's decision, frustrating the twin goals of "educating the public about the operation of the courts . . . and informing the public [about] matters of public concern."  *Cont'l Ins. Co. v. Transp. Ins. Co.*, 2023 WL 4364776, at *2 (S.D.N.Y. July 5, 2023).

Finally, the Court concludes that there are no "countervailing factors" that outweigh the strong presumption of public access here.  *Lugosch*, 435 F.3d at 120.  Countervailing factors

7

include: "the danger of impairing law enforcement or judicial efficiency," *SEC v. TheStreet.Com*, 273 F.3d 222, 232 (2d Cir. 2001); the need to safeguard "grand jury transcripts" and "medical records," *Dunham v. City of New York*, 2021 WL 918373, at *1 n.1 (S.D.N.Y. Mar. 10, 2021); the protection of attorney-client privilege, *Lugosch*, 435 F.3d at 125; and "the privacy interests of those resisting disclosure, such as trade secrets," *Dodona I, LLC v. Goldman, Sachs & Co.*, 119 F. Supp. 3d 152, 154 (S.D.N.Y. 2014). Moreover, a court may maintain materials in court filings under seal only after "review[ing] the documents individually" and making "'specific, on-the-record findings that sealing is necessary to preserve higher values.'" *Brown*, 929 F.3d at 48 (quoting *Lugosch*, 435 F.3d at 124)).

The "sensitivity of the information," *Stafford*, 2023 WL 5183546, at *6 (quoting *Amodeo II*, 71 F.3d at 1051), does not justify redaction here. Respondent identifies three categories of information it contends are sensitive: (1) the names of persons associated with Respondent; (2) the name of the CFO with whom Respondent allegedly conspired; and (3) certain information regarding the consideration to be paid for the interests. The Second Circuit has held that "[t]he privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation." *Amodeo II*, 71 F.3d at 1050–51 (quoting *Gardner v. Newsday, Inc.*, 895 F.2d 74, 79–80 (2d Cir. 1987)). The names that Respondent seeks to redact, however, are hardly those of innocent third parties. *See In re Keurig Green Mt. Single-Serve Coffee Antitrust Litig.*, 2023 WL 196134, at *11 (S.D.N.Y. Jan. 17, 2023). The arbitrator concluded that the SPV and Controller, acting through the Hedge Funds, were Respondent's alter egos. Dkt. No. 2-A at 6. Likewise, the arbitrator concluded that the Controller had bribed the CFO in breach of the LLC Agreement. *Id.* at 50. These parties are thus not peripheral to this proceeding; they are central to it. They are neither "innocent" nor "third parties."

Petitioners also have demonstrated that their identities are already publicly known. Dkt. No. 8 at 2–3 & n.3. Thus, disclosure will not cause any incremental injury. *See Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 n.11 (2d Cir. 2004) ("Once [information] is public, it necessarily remains public."); *cf. Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 494–95 (1975) ("[T]he interests in privacy fade when the information involved already appears on the public record.").

As to the information regarding the consideration to be paid for the interests, courts "have been skeptical of sealing information that is [alleged to be] commercially sensitive, particularly where it is highly relevant to the dispute and by extension, to the public's understanding of the court's decision." *In re Keurig*, 2023 WL 196134, at *4. The information that Respondent seeks to seal appears to be precisely of that nature. Not only has Respondent failed to provide any support for the notion that the disclosure of this dated information in connection with a specific transaction would cause it any harm, *see Sony Ericsson Mobile Commc'ns AB v. Delta Elecs. Pub. Co. (Thai.)*, 2009 WL 959639, at *2 (S.D.N.Y. Apr. 8, 2009), but the information at issue—regarding the transaction that forms the basis for the award Petitioners seek to confirm—appears to be relevant to the dispute. The arbitrator relied on that information in rendering the award. *See* Dkt. No. 2-A at 39. It thus will be relevant to the Court's decision whether to confirm it. Accordingly, Respondent's "vague and generalized concern [of harm] is not sufficient to overcome the . . . public right of access to the petition" and related documents. *Cont'l Ins. Co.*, 2023 WL 4364776, at *2.

The Second Circuit has rejected "attempts . . . to unseal confidential documents obtained in individual arbitrations by filing them in court." *Stafford*, 2023 WL 5183546, at *5. A rule that documents exchanged in arbitration would become public simply by the expedience of

9

attaching them to a filing, regardless of their relevance, gives rise to the concern that the "courts' files might 'become a vehicle for improper purposes.'" *Brown*, 929 F.3d at 47 (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)).[1] Thus, the Circuit has held that confidential documents obtained in an arbitration are appropriately sealed when a petition to confirm an arbitral award has become moot and the purpose of counsel in placing the documents in a court file was not to obtain satisfaction of the award but to "evade the confidentiality provision to which [the plaintiff] agreed in her arbitration agreement" and to use the documents in other proceedings, *Stafford*, 2023 WL 5183546, at *6, or to obtain through an unsealing order the very relief Plaintiffs "sought in the first instance," *In re IBM Arb. Agreement Litig.*, 76 F.4th 74, 86 (2d Cir. 2023) (quoting *In re IBM Arb. Agreement Litig.*, 2022 WL 3043220, at *2 (S.D.N.Y. Aug. 2, 2022)). In those cases, courts were rightly concerned that the lawsuits were filed and used as vehicles to force the disclosure of otherwise-confidential materials.

By contrast, when a party seeks to confirm an arbitration award, to vacate it, or to modify it, the award is both the object and very heart of the dispute. The lawsuit is not filed to make public otherwise-confidential materials. It is filed because that is the means Congress has provided for an award to be made into a judgment, vacated, or modified. The award is not filed gratuitously. The movant has no discretion over whether to file the award with the Clerk of Court. Congress itself has dictated that the arbitration award "shall" be filed. 9 U.S.C. § 13(b).

---

[1] Tellingly, in *Brown v. Maxwell*, 929 F.3d 41, the Second Circuit held that the concern that court filings not become vehicles for the improper purpose of disclosing otherwise undisclosed or defamatory material is best addressed not by relaxing the rules with respect to the sealing of documents and shielding court documents from public view, but by addressing the issue directly: issuing protective orders forbidding the dissemination of confidential information, denying parties leave to file certain materials that were exchanged pursuant to protective orders, and ordering material that is not relevant to the judicial function to be stricken so that the public can know that the material will not have been used in the exercise of the judicial function. *Id.* at 51.

Because the award itself will be confirmed—and thereby transformed into a judgment—or vacated through an order, it is indispensable to the court's process. Indeed, the parties' agreement here recognizes that centrality by providing that otherwise-confidential arbitration materials can be disclosed "to the extent necessary to . . . confirm or enforce any award or decision in the arbitration," Solomon Decl., Ex. B, § 12.14(e), thereby vitiating any expectation Respondent could have had that the award, if entered in favor of Petitioners and if Petitioners sought to confirm it, would be kept confidential solely by virtue of the fact that it was rendered in an arbitration, *see Lugosch*, 435 F.3d at 126 (concluding that a party's reliance on a confidentiality order does not furnish a countervailing factor when that order "specifically contemplates that relief from the provisions of the order may be sought," because "complete reliance on the order to avoid disclosure [would not be] reasonable"); *Diversified Grp., Inc. v. Daugerdas*, 217 F.R.D. 152, 160 (S.D.N.Y. 2003); *see also Allianz Glob. Invs. GmbH v. Bank of Am. Corp.*, 609 F. Supp. 3d 287, 289 (S.D.N.Y. 2022) (denying motion to seal a document on the grounds of "attorney-client privilege, because the document contemplates disclosure of its contents to a third party" (quotation omitted)).[2] Under these circumstances, the fact that the award is the product of an otherwise-confidential arbitration proceeding is entitled to no independent weight. *See Park Ave. Life Ins. Co.*, 2019 WL 4688705, at *3; *see also Lohnn*, 2022 WL 36420, at *13 (collecting cases). Instead, the party seeking to keep material under seal must

---

[2] As such, courts in this District have refused to seal arbitration materials pursuant to confidentiality agreements that expressly contemplate disclosure in a judicial proceeding to confirm an arbitration award. *See TIG Ins. Co.*, 2019 WL 6310208, at *3 (denying a sealing request when a confidentiality agreement "[did] not by its terms require that this matter proceed under seal"); *Park Ave. Life Ins. Co. v. Allianz Life Ins. Co. of N. Am.*, 2019 WL 4688705, at *3 (S.D.N.Y. Sept. 25, 2019) (unsealing arbitration records when the parties' confidentiality agreement "explicitly provide[d] that arbitration information may be disclosed as is necessary in connection with court proceedings relating to any aspect of the arbitration, including . . . motions to confirm" (quotation omitted)).

support its application by identifying the sensitivity of the particular material sought to be sealed and how continued sealing would be narrowly tailored to protect that sensitivity and to preserve higher values or to achieve countervailing factors. *See Lugosch*, 435 F.3d at 124. Respondent has not done so.

## CONCLUSION

For the foregoing reasons, Respondent's motion to file the petition, the award, and the declaration with redactions is DENIED. The Court further ORDERS that this Action be unsealed and Records Management upload all documents filed to date on the Electronic Case Filing system.

SO ORDERED.

Dated: September 13, 2023
      New York, New York

_____
LEWIS J. LIMAN
United States District Judge