**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ELETSON HOLDINGS, INC. and ELETSON CORP., <br><br> Petitioners/Cross-Respondents, <br><br> v. <br><br> LEVONA HOLDINGS, LTD., <br><br> Respondent/Cross-Petitioner. | Civ. No. 23-cv-07331 (LJL) |

**LEVONA'S MEMORANDUM OF LAW IN OPPOSITION TO AMENDED AND SUPPLEMENTAL PETITION TO RECOGNIZE AND ENFORCE ARBITRAL AWARD AND IN SUPPORT OF MOTION TO DISMISS AND AMENDED AND <u>SUPPLEMENTAL CROSS-PETITION TO VACATE</u>**

14433656.3

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... iii

INTRODUCTION ........................................................................................................ 1

BACKGROUND ........................................................................................................... 2

    A.    The Parties And Eletson Gas ............................................................... 2

    B.    Levona's Rescue Funding To Eletson Gas Via The BOL ..................... 3

    C.    The Arbitration........................................................................................ 5

    D.    The Eletson Holdings Bankruptcy And Related Arbitration Developments .......... 6

    E.    The Arbitration Awards ........................................................................ 10

ARGUMENT ............................................................................................................... 14

I.    THE PETITION SHOULD BE DISMISSED IN AT LEAST SUBSTANTIAL PART BECAUSE PETITIONERS LACK STANDING ............................................................. 14

II.    THE PETITION SHOULD BE DENIED AND THE AWARDS VACATED BECAUSE THE ARBITRATOR EXCEEDED HIS POWERS ...................................... 16

    A.    The Arbitrator Improperly Adjudicated Rights And Duties Of Non-Parties To The Arbitration And Non-Signatories To The Arbitration Agreement ............... 17

    B.    The Arbitrator Improperly Adjudicated Claims Subject To A Different Arbitration Agreement ....................................................................... 23

    C.    The Arbitrator Improperly Adjudicated Claims Barred By The Bankruptcy Stay ..................................................................... 25

    D.    The Arbitrator Improperly Awarded Fees Incurred In The Bankruptcy Case And Bondholder Litigation .............................................................. 27

        1.    The Award Of Fees Incurred In The Bankruptcy Case Intruded Upon The Bankruptcy Court's Exclusive Jurisdiction ....................................... 27

        2.    The Award Of Fees Incurred In The Bankruptcy Case And Bondholder Litigation Exceeded The Scope Of The Arbitration Agreement ............. 29

    E.    The Arbitrator Improperly Awarded Fees And Costs To Non-Prevailing Parties 31

III.    THE PETITION SHOULD BE DENIED AND THE AWARDS VACATED BECAUSE THE ARBITRATOR MANIFESTLY DISREGARDED THE LAW AND THE BOL ............ 32

CONCLUSION ................................................................................................................... 35

# TABLE OF AUTHORITIES

**Page(s)**

### **Cases**

*In re Affirmative Ins. Holdings, Inc.*,
565 B.R. 566 (Bankr. D. Del. 2017) ......................................................................26

*Computer Assocs. Int'l, Inc. v. Altai, Inc.*,
893 F.2d 26 (2d Cir. 1990) ....................................................................................29

*Am. Renaissance Lines, Inc. v. Saxis S. S. Co.*,
502 F.2d 674 (2d Cir. 1974).............................................................................18, 23

*Am. Safety Equip. Corp. v. J. P. Maguire & Co.*,
391 F.2d 821 (2d Cir. 1968)...................................................................................22

*In re Am. Cooler Co.*,
125 F.2d 496 (2d Cir. 1942)...................................................................................28

*In re Arb. Between Melun Indus., Inc. & Strange*,
898 F. Supp. 990 (S.D.N.Y. 1990) ........................................................................23

*Armco Emps. Indep. Fed'n, Inc. v. AK Steel Corp.*,
149 F. App'x 347 (6th Cir. 2005) ..........................................................................19

*Aspic Eng'g & Constr. Co. v. ECC Centcom Constructors LLC*,
913 F.3d 1162 (9th Cir. 2019) ...............................................................................32

*Badgerow v. Walters*,
142 S. Ct. 1310 (2022)...........................................................................................15

*Beneficial Nat. Bank v. Anderson*,
539 U.S. 1 (2003)...................................................................................................27

*In re Braniff Int'l Airlines, Inc.*,
164 B.R. 820 (Bankr. E.D.N.Y. 1994)...................................................................28

*In re Chateaugay Corp.*,
213 B.R. 633 (S.D.N.Y. 1997)...............................................................................27

*Compagnie Noga D'Importation et d'Exportation S.A. v. Russian Fed'n*,
350 F. App'x 476 (2d Cir. 2009) ...........................................................................15

*Compagnie Noga D'Importation Et D'Exportation S.A. v. Russian Fed'n*,
No. 00 CIV. 0632, 2008 WL 3833257 (S.D.N.Y. Aug. 15, 2008) .........................15

*Cooke v. Murphy*,
  99 A.3d 226, 2014 WL 3764177 (Del. 2014) ...................................................................31

*Cresta Blanca Wine Co. v. Eastern Wine Corp.*,
  143 F.2d 1012 (2d Cir. 1944)............................................................................................30

*CSWS, LLC v. Rios*,
  2021 WL 7161224 (N.D. Ill. Oct. 20, 2021)....................................................................21

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006)....................................................................................................15, 16

*Ethyl Corp. v. United Steelworkers*,
  768 F.2d 180 (7th Cir. 1985) ...........................................................................................32

*First Options of Chi., Inc. v. Kaplan*,
  514 U.S. 938 (1995)..........................................................................................................23

*Friends Life Ltd v. Siemens Hearing Instruments Ltd*,
  English Court of Appeal, [2014] EWCA Civ 382 .............................................................35

*GE Transp. (Shenyang) Co. v. A-Power Energy Generation Sys., Ltd.*,
  No. 15 CIV. 6194, 2016 WL 3525358 (S.D.N.Y. June 22, 2016)................................18, 20

*Gonzales v. Parks*,
  830 F.2d 1033 (9th Cir. 1987) ......................................................................................1, 27

*Granite Rock Co. v. Teamsters*,
  561 U.S. 287 (2010)...............................................................................................1, 23, 24

*Jefferies LLC v. Gegenheimer*,
  849 F. App'x 16 (2d Cir. 2021) ........................................................................................32

*Knox v. SEIU*,
  567 U.S. 298 (2012)..........................................................................................................15

*Lewis v. Casey*,
  518 U.S. 343 (1996)..........................................................................................................15

*Lorillard Tobacco Co. v. Am. Legacy Found.*,
  903 A.2d 728 (Del. 2006) .................................................................................................34

*Mannai Invest. Co. Ltd. v. Eagle Star Life Assurance Co. Ltd.*
  Judicial Committee of the House of Lords, [1997] A.C. 749 .................................................34

*In re Marine Pollution Services, Inc.*,
  857 F.2d 91 (2d Cir. 1988)...............................................................................................32

*Marquis Yachts v. Allied Marine Grp., Inc. (N.)*,
   No. 09-1770, 2010 WL 1380137 (D. Minn. Mar. 31, 2010) ..................................................26

*In re Miles*,
   430 F.3d 1083 (9th Cir. 2005) .......................................................................................27, 30

*Nat'l Equip. Rental, Ltd. v. Fowler*,
   287 F.2d 43 (2d Cir. 1961)....................................................................................................29

*Nationwide Mut. Ins. Co. v. Home Ins. Co.*,
   330 F.3d 843 (6th Cir. 2003) ...................................................................................17, 18, 19

*NCR Corp. v. Sac-Co., Inc.*,
   43 F.3d 1080 (6th Cir. 1995) ..........................................................................................18, 20

*Opals on Ice Lingerie, Designs by Bernadette, Inc. v. Bodylines Inc.*,
   320 F.3d 362 (2d Cir. 2003)..................................................................................................25

*Orion Shipping & Trading Co. v. E. States Petroleum Corp.*,
   312 F.2d 299 (2d Cir. 1963)..............................................................................18, 19, 22, 23

*In re Point Blank Sols., Inc.*,
   449 B.R. 446 (Bankr. D. Del. 2011) .....................................................................................26

*Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*,
   497 F.3d 133 (2d Cir. 2007)..................................................................................................33

*Productos Mercantiles E Industriales, S.A. v. Faberge USA, Inc.*,
   23 F.3d 41 (2d Cir. 1994)......................................................................................................23

*Rennie v. Westbury Homes (Holdings) Ltd*,
   English Court of Appeal, [2007] EWCA Civ 1401 ...............................................................35

*Rexnord Holdings, Inc. v. Bidermann*,
   21 F.3d 522 (2d Cir. 1994)....................................................................................................26

*Smarter Tools Inc. v. Chongqing SENCI Imp. & Exp. Trade Co.*,
   57 F.4th 372 (2d Cir. 2023) .......................................................................1, 17, 9, 22, 23, 24

*Stafford v. IBM Corp.*,
   78 F.4th 62 (2d Cir. 2023) ....................................................................................................15

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
   559 U.S. 662 (2010)..........................................................................................................18, 35

*Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.*,
   548 F.3d 85 (2d Cir. 2008)....................................................................................................32

*Stoppi v. Wilmington Tr. Co.*,

518 A.2d 82 (Del. 1986) ................................................................................................34

*T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*,
    592 F.3d 329 (2d Cir. 2010) .......................................................................................32

*Taylor v. Sturgell*,
    553 U.S. 880 (2008) ....................................................................................................18

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ................................................................................................15

*United Scientific Holdings v Burnley B.C.*,
    Judicial Committee of the House of Lords, [1978] AC 904 .......................................35

*Utica Mut. Ins. Co. v. Fireman's Fund Ins. Co.*,
    957 F.3d 337 (2d Cir. 2020) .......................................................................................34

*Wallace v. Buttar*,
    378 F.3d 182 (2d Cir. 2004) ..................................................................................32, 33

*Weinberg v. Waystar, Inc.*,
    294 A.3d 1039 (Del. 2023) .........................................................................................34

*Westerbeke Corp. v. Daihatsu Motor Co.*,
    304 F.3d 200 (2d Cir. 2002) ..................................................................................17, 32

*Wilmington Savs. Fund Soc'y, FSB v. Eletson Holdings, Inc.*,
    No. 23-cv-00261 (S.D.N.Y.) .........................................................................................8

*Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*,
    126 F.3d 15 (2d Cir. 1997) .........................................................................................32

## Constitutional Provisions, Statutes & Treaties

U.S. Const. art. III, § 2 ...................................................................................................14

9 U.S.C. § 9 .........................................................................................................................7

9 U.S.C. § 10(a)(4) ......................................................................................................17, 27

9 U.S.C. § 207 ...................................................................................................................17

11 U.S.C. § 303(i) .............................................................................................................27

11 U.S.C. § 362 .......................................................................................................7, 25, 26

11 U.S.C. § 364 .................................................................................................................28

11 U.S.C. § 726 ..................................................................................................28

28 U.S.C. § 1334(e) ..........................................................................................7, 28

United Nations Convention on the Recognition and Enforcement of Foreign
    Arbitral Awards art. V(1) .............................................................................17

## **Other Authorities**

11 Williston on Contracts § 32:3 (4th ed.) ........................................................33

11 Williston on Contracts § 32:5 (4th ed.) ........................................................34

## INTRODUCTION

This is the rare case that cries out for the Court to exercise its authority under the Federal Arbitration Act and the New York Convention to vacate and decline to confirm an arbitration award. "Arbitration is strictly a matter of consent, and thus is a way to resolve those disputes— *but only those disputes*—that *the parties* have agreed to submit to arbitration.'" *Granite Rock Co. v. Teamsters*, 561 U.S. 287, 299 (2010) (second emphasis added) (internal quotation marks omitted). The arbitral award at issue here ignored those limits several times over. It awarded damages *to* entities that were neither parties to the arbitration proceedings nor parties to the underlying arbitration agreement. It awarded damages *against* entities that were neither parties to the proceedings nor parties to the agreement. It awarded damages for conduct *not subject to* the arbitration agreement, and indeed subject to the exclusive jurisdiction of other courts and arbitral tribunals. And it did all this in a transparent—all-but expressly acknowledged—effort to aid Petitioners' circumvention of, and interference with, a co-pending bankruptcy proceeding involving Petitioner Eletson Holdings, Inc. *See In re Eletson Holdings, Inc.*, No. 23-10322 (JPM) (Bankr. S.D.N.Y.). Vacatur is thus warranted because the arbitrator repeatedly "exceeded [his] powers" in entering the award. 9 U.S.C. § 10(a)(4); *see, e.g.*, *Granite Rock*, 561 U.S. at 299; *Smarter Tools Inc. v. Chongqing SENCI Imp. & Exp. Trade Co.*, 57 F.4th 372, 382 (2d Cir. 2023) ("[A]rbitrators exceed[] their powers by determining the rights of a corporation not party to the arbitration."); *Gonzales v. Parks*, 830 F.2d 1033, 1035 (9th Cir. 1987) ("Filings of bankruptcy petitions are a matter of exclusive federal jurisdiction.").

The petition to confirm suffers from a more fundamental problem: Petitioners lack Article III standing to seek recognition, confirmation, or enforcement of at least the substantial portions of the arbitral award that are in favor of non-parties. Petitioners have no concrete interest in that relief, and the Court should dismiss the Petition on that basis.

To be clear, Respondent strenuously disagrees with the arbitrator's baseless findings of misconduct, which were not only mistaken but also the product of one-sided evidentiary rulings that hindered Respondent's ability to defend itself.  But the Court need not consider that unfair playing field or those erroneous factual findings in order to grant Respondent the relief it seeks. The arbitrator's repeated disregard for the relevant contracts, the governing law, and the limits on his powers provide a more than sufficient basis to deny confirmation and grant vacatur of this ungrounded award.

## BACKGROUND

### A.    The Parties And Eletson Gas

Petitioner/Cross-Respondent    Eletson    Holdings,    Inc.    ("Eletson    Holdings")    and Respondent/Cross-Petitioner Levona Holdings, Ltd. ("Levona") are joint venturers in a liquified petroleum gas shipping company called Eletson Gas LLC ("Eletson Gas" or the "Company").  *See* ECF 41-1, Solomon Decl., Ex. 1, Final Award, at 6.  Petitioner/Cross-Respondent Eletson Corp., which is fully owned by Eletson Holdings, provides management services for Eletson Gas's ships. *Id.*  Eletson Holdings and Eletson Corp. are ultimately owned and controlled by three Greek families (those of Vassilis Kertsikoff, Laskarina Karastamati, and Vasilis Hadjieleftheriadis) (the "Greek families").  *Id.*

Eletson Gas was formed in 2013 by Eletson Holdings and funds managed by Blackstone Tactical Opportunities ("Blackstone").  *Id.*  The common stock was held by Eletson Holdings (~60% on a converted basis).  The preferred stock was initially held by Blackstone (~40% on a converted basis) and was sold to Levona in November 2021.  *Id.* at 7-8.

Eletson Gas's governing document, which provides rules for the general management of the company, is its Third Amended and Restated Limited Liability Company Agreement, dated August 16, 2019 ("LLCA").  *See* Decl. of Isaac Nesser ("Nesser Decl."), Ex. A.  The LLCA is

governed by Delaware law (to the extent not inconsistent with Marshall Islands law), LLCA § 12.13, and has a binding arbitration clause providing that "[a]ny dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof (including the determination of the scope or applicability of this agreement to arbitrate) shall be determined by arbitration in New York County in the State of New York or any other mutually agreeable location, before a single arbitrator," LLCA § 12.14.  The parties to the LLCA are Eletson Gas, Eletson Holdings, Eletson Corp., and Levona (which, as mentioned, bought its stake from Blackstone).  LLCA at 73-78; Nesser Decl., Ex. B (Joinder Agreement).

**B.      Levona's Rescue Funding To Eletson Gas Via The BOL**

Long before Levona had any association with either company, both Eletson Holdings and Eletson Gas had defaulted on hundreds of millions of dollars in debt.  Eletson Holdings had defaulted on over $300 million in corporate bonds as of January 2019, nearly two years before Levona became a member of Eletson Gas.  *See* Nesser Decl., Ex. E at 1-3.  And Eletson Gas had defaulted on $254 million in debt as of April 2020, a year-and-a-half before Levona became a member of the company.  *See* Nesser Decl., Ex. D at 1.  Eletson Gas's debt was secured by, *inter alia*, preferred mortgages on five of its ships.  *Id.*  Thus, in April 2020, Eletson Gas's lenders issued notices of default and acceleration, demanded immediate payment of some $118 million then due, commenced legal and/or enforcement proceedings in three jurisdictions (Texas, Singapore, and the Netherlands), and procured the arrest of four of the mortgaged ships.  *Id.* at 1-2.

Unable to recoup its losses, in November 2021, Blackstone exited the joint venture by selling its stake to Levona.  *See* Final Award at 8.  Eletson Gas remained distressed as of early 2022, however, and, absent a source of funding, it would have been necessary to sell several of its ships to keep the company in business.  In dire need, the Greek families turned to Levona.

On February 22, 2022, only three days before the scheduled auction of two of the company's ships, Eletson Gas, Eletson Holdings, Eletson Corp., EMC Gas (a wholly-owned subsidiary of Eletson Gas), and Levona entered into a Binding Offer Letter ("BOL") through which Levona provided much-needed, immediate liquidity to rescue Eletson Gas.  *See* Nesser Decl., Ex. F, BOL § 4.1; *id.*, Ex. D (informing auctioning petitioner of refinancing of Eletson Gas's obligations, ultimately leading to ships' release).  In relevant part, the BOL stated that Levona would loan Eletson Gas up to $10 million[1] and Eletson Gas would transfer to Levona the shares in two Greek companies that held the ships *Symi* and *Telendos*.  BOL at 1. In consideration of this transfer, and subject to certain conditions, the BOL provided Eletson Gas a time-limited option to purchase Levona's stake in Eletson Gas (the "Purchase Option").  BOL § 2.  The BOL states that, in order to exercise the Purchase Option, Eletson Gas would need to provide (i) "written notice" within 30 days of execution of the BOL, BOL §§ 2.1, 2.3, only after (ii) it had fully repaid the loan or "adequate security and/or collateral" had been "provided for the Loan (the adequacy of such security being at the sole discretion of Levona)," BOL § 2.2.  Finally, for the Purchase Option to be validly exercised, Eletson Gas had to transfer the "Purchase Option Consideration payable in cash … to such account as Levona may nominate in writing."  BOL § 2.1.

On March 11, 2022, Eletson Gas transferred the *Symi* and *Telendos* to Levona "in consideration of … the purchase option" to Eletson Gas.  BOL § 1; *see* Nesser Decl., Ex. I (Share Transfer Agmt.); Final Award at 9.  To Levona, this transfer was the consideration for granting

---

[1]   This was further documented in a Loan Agreement on March 11, 2022, that, as amended on April 5, 2022, increased the facility to $14 million.  Eletson Gas eventually borrowed at least $12.85 million.  Although Eletson Gas was required to make regular interest payments, it has defaulted on such payments.  *See* Final Award at 35; Nesser Decl., Ex. G at 1.  Levona is pursuing claims against Eletson Gas for these defaults in an arbitration commenced in London in July 2023 under the terms of the Loan Agreement (which, similar to the BOL, is governed by English law and provides for arbitration in London).

Eletson Gas the Purchase Option.  Indeed, a "unanimous written consent" adopted by the Board of Eletson Gas on March 11, 2022, stated that "the sale of the [*Symi* and *Telendos*] to Levona" was "in consideration of the grant of a purchase option to [Eletson Gas]."  Nesser Decl., Ex. J at 1. Petitioners, however, later asserted that the March 11 transfer *exercised* the Purchase Option— even though (i) Eletson Gas had not provided written notice exercising the Purchase Option (as the arbitrator correctly found), *see* Final Award at 43, 46, (ii) the loan was never repaid, *see id.* at 35, and (iii) it is undisputed that Levona never accepted the adequacy of any security, *see id.* at 40.

The BOL contains its own choice-of-law provision and arbitration agreement, which provides that "any disputes and claims arising out of or in connection with" the transfer of the ships, the loan, or the Purchase Option "shall be governed by and construed in accordance with *English law* and shall finally be resolved by arbitration in accordance with the rules of arbitration of the London International Centre for Arbitration … by one arbitrator" in "*London, United Kingdom*."  BOL § 10 (emphasis added).

## C.     The Arbitration

Although disputes arising out of the BOL must be arbitrated in London pursuant to the arbitration agreement in the BOL, on July 29, 2022, Petitioners filed an arbitration demand against Levona in New York pursuant to the arbitration agreement in the LLCA.  *See* Nesser Decl., Ex. C. The arbitration demand asserted that, because Eletson Gas had purportedly exercised the Purchase Option under the BOL, Levona had no interest in Eletson Gas and so Levona's appointed directors could not hold themselves out as legal representatives or agents of Eletson Gas.  *See* Final Award at 10 ("The majority of the claims and counterclaims asserted in this arbitration rest[] upon [whether] … Eletson exercise[d] the purchase option pursuant to the Transaction Documents."). The only parties to the arbitration were Eletson Holdings and Eletson Corp. (as Claimants) and Levona (as Respondent).  No joinder of any other party was ever sought or granted.

Beginning on the first page of its response to the arbitration demand and continuing for several paragraphs, Levona objected to the arbitrator's jurisdiction, arguing that disputes relating to the BOL and the Purchase Option—the supposed exercise of which was at the heart of the parties' dispute—could "*only* be resolved by an adjudication on the Binding Offer Letter … which demand[s] arbitration in London and [is] governed by English Law."  Nesser Decl., Ex. K at 1. Levona also asserted LLCA-based counterclaims seeking relief that was the inverse of that sought by the Petitioners.  *Id.* at 2.  Levona then moved to strike any claims that purported to touch upon the interpretation and application of the BOL, but the arbitrator denied that motion.  Final Award at 13-14.  Specifically, the arbitrator determined that (i) the arbitration agreement in the LLCA was so broad as to bestow upon the arbitrator jurisdiction over a distinct agreement such as the BOL, and (ii) Levona had consented to resolve the BOL-related issues in the existing arbitration by asserting counterclaims—even though the counterclaims expressly indicated that Levona opposed arbitration of BOL-related issues.  *See* Nesser Decl., Ex. H at 13.

Early in the proceeding, the arbitrator entered an injunction (the "Status Quo Injunction") providing that "the parties hereto shall maintain the status quo and shall not, among other things: (1) engage in the transfer or sale of any assets of Eletson Gas LLC … absent the joint written consent of the parties, which shall be sent to the undersigned Arbitrator; or (2) notice or conduct of [sic] any board meetings for the purposes of proposing or considering transfer or sale of any assets of [Eletson Gas]."  Final Award at 15.  The arbitrator later extended this restriction to the sale of the *Symi* and *Telendos*.  *Id.*  Several months of discovery followed.

### D.    The Eletson Holdings Bankruptcy And Related Arbitration Developments

In March 2023, while discovery in the arbitration was ongoing, several of Eletson Holdings' creditors commenced an involuntary bankruptcy proceeding against Eletson Holdings, which, as noted above, had been in default on hundreds of millions of dollars in corporate bonds

since at least 2019.  *See* Nesser Decl., Exs. L-P.  One of the creditors was Pach Shemen, an entity

under common ownership with Levona.[2]  In light of Eletson Holding's insolvency, any award in

favor of Eletson Holdings would be property of its bankruptcy estate, and its distribution to Eletson

Holdings' creditors would be subject to the bankruptcy court's exclusive jurisdiction.  *See* 28

U.S.C. § 1334(e).

The arbitration was then stayed "pending further order or notice from the Bankruptcy

Court."  Final Award at 17.  On April 17, 2023, the bankruptcy court (Mastando, J.), with the

support of petitioning creditors, modified the automatic stay under the Bankruptcy Code, 11 U.S.C.

§ 362, "with respect to the Arbitration solely to the extent necessary and for the sole purpose of

permitting a trial, any related pre-trial proceedings (including any remaining discovery), any

related post-trial proceedings or briefing, and a final determination or award to be made by the

Arbitrator, including any appeals, *with respect to the claims currently pending in the Arbitration*."

Nesser Decl., Ex. Q at 3 (emphasis added).  The arbitration thus resumed.  The bankruptcy court

also ordered that any arbitration award "be stayed pending further order of the Bankruptcy Court,"

which, "[f]or avoidance of doubt," prohibited Eletson Holdings, Eletson Corp., and Levona from

transferring or otherwise disposing of any arbitration award or "any asset or property related

thereto."  *Id.* at 4.  Given that order, any confirmed award here cannot be enforced without the

bankruptcy court's approval.

Notwithstanding the bankruptcy court's order limiting the arbitration to "*claims currently

pending in the Arbitration*," Petitioners immediately brought new bankruptcy-related claims in the

---

[2]  Levona and Pach Shemen are owned by two Bermudan mutual funds, Nomis Bay Ltd. and BPY
Ltd.  Contrary to the arbitrator's findings, Murchinson Ltd. is not the owner of the Bermuda funds,
let alone of Levona and/or Pach Shemen.  Murchinson, which is a Canadian firm not present in
New York, merely acts as the investment sub-advisor to the Bermuda funds.

arbitration just three weeks before the arbitration hearing began.  In a "supplemental notice" dated April 25, 2023, Petitioners purported to add bankruptcy-specific claims against Levona premised substantially on the conduct of non-party Pach Shemen,[3] including that Levona—through Pach Shemen—had purportedly violated the Status Quo Injunction by commencing Eletson Holdings' involuntary bankruptcy proceeding in bad faith.  *See* Nesser Decl., Ex. R at 1, 8.  Eletson Holdings has since converted the case to a voluntary Chapter 11 case.  *See In re Eletson Holdings, Inc.*, No. 23-10322 (JPM) (Bankr. S.D.N.Y.), ECF 201 (Sept. 25, 2023); *see also* Nesser Decl., Ex. MM (September 13, 2023 letter to bankruptcy court).

Then, on May 5, 2023, with the arbitration hearing set to begin on May 15, Petitioners even more radically altered their claims.  Petitioners asserted, *for the first time and contrary to their position throughout the arbitration*, that they and the Eletson Holdings bankruptcy estate did not own and had never owned the preferred shares in Eletson Gas—*i.e.,* the disputed property at the very heart of the arbitration, which they had supposedly acquired by exercising the Purchase Option.  According to Petitioners' new theory, "[t]he preferred interests at issue in this arbitration, from their issuance up until the execution of the BOL and even thereafter, were never owned or controlled, directly or indirectly, by [Eletson] Holdings, Eletson Corporation, [Eletson Gas], or any other entity directly or indirectly affiliated with any of these entities."  *See* Final Award at 18 (quoting Claimants' Rule 20(b) Statement, May 5, 2023, ¶ 100).[4]  Rather, according to Petitioners'

---

[3]  The supplemental notice also alleged that Levona had violated the Status Quo Injunction through the actions of non-party Wilmington Savings Fund Society, which, acting in its capacity as indenture trustee of the notes issued by Eletson Holdings and two other affiliated debtors, had initiated a related action against Eletson Holdings.  *See Wilmington Savings Fund Society, FSB v. Eletson Holdings, Inc.,* No. 23-cv-00261 (JLR) (S.D.N.Y.) (the "bondholder litigation").

[4]  Petitioners' contradiction of their prior position was stark.  *See* Nesser Decl., Ex. S (Aff. of V. Kertsikoff, Oct. 25, 2022), at ¶¶ 9, 28(e) ("Prior to March 11, 2022, Eletson Holdings was a common unit holder (sometimes for convenience referred to as shares) of the Company. As of

convoluted new theory, the Greek families (not Eletson Gas) had secretly nominated three previously-undisclosed Cypriot entities by the names of Fentalon, Apargo, and Desimusco (the "Alleged Nominees"), and an unspecified Eletson entity allegedly assigned the preferred shares to those Alleged Nominees in exchange for their "commit[ment] to pay €3 million" to that unspecified entity "effect[ive] immediately upon Eletson's exercise of the option."  Nesser Decl., Ex. FF, at 419; *see* Final Award at 18.

Petitioners offered no documentary support for this new theory other than six pages of largely handwritten notes in Greek, bearing no date or time stamps or other official or corporate marking or seals, and containing several (never-explained) redactions.  *See* Nesser Decl., Exs. W-Z, AA.  Nor did the Petitioners provide any evidence identifying the unnamed Eletson entity that supposedly assigned the shares; any evidence of agreements purporting to effectuate the assignment; or any evidence of any payment ever having been made, let alone compliance with the BOL's mandatory payment formula, *see* BOL § 4; Nesser Decl., Ex. GG (Claimants' Opening Presentation, May 15, 2023), at 153 (asserting "[t]he agreement is an oral agreement" ).  Plainly, in pressing this construct, Petitioners were straining to maintain the position that the Purchase Option had been exercised while also keeping Levona's shares out of the bankruptcy proceedings.

---

March 11, 2022, Eletson Holdings became the sole unit holder of the Company"; "Eletson held itself out as the sole shareholder of the Company and sole beneficial owners of the Company's remaining 12 vessels."); *id.*, Ex. T (Claimants' Mem. of Law in Support of Cross-App. for Prelim. Inj., Oct. 25, 2022), at 9 ("At all times, Eletson held itself out as the sole shareholders of the Company and sole beneficial owners of the Company's remaining 12 Vessels"); *id.*, Ex. U (Claimants' Mem. of Law in Opp., Nov. 8, 2022), at 6 ("Eletson held itself out as the sole shareholder of the Company and sole beneficial owner of the Company's remaining 12 vessels."); *id.*, Ex. V (Claimants' Reply Brief in Support of Cross-App., Nov. 18, 2022), at 11 ("The undisputed record establishes that Eletson continued to manage the Company without Levona on the scene and even held itself out to potential financiers as the sole shareholder of the Company"); *see also* Complaint ¶ 33, Dkt. 1, *Eletson Holdings Inc. v. Murchinson Ltd.*, No. 23-01132 (JPM) (Bankr. S.D.N.Y.) (Eletson Holdings contending as recently as April 20, 2023, that "Eletson Gas, LLC ('Eletson Gas')" is "a wholly-owned subsidiary of Eletson Holdings.").

On May 10, 2023, Levona moved to strike Petitioners' last-minute assertions regarding the purported transfer of its shares to the Alleged Nominees.  Nesser Decl., Ex. KK, at 1.  After deferring ruling on the motion until after the hearing, the arbitrator ultimately "acknowledge[d] that the lack of earlier notice by [Petitioners] to Levona of the contingent transfer of any preferred shares to the [Alleged] Nominees initially raised concern."  Final Award at 31.  Nonetheless, the arbitrator denied Levona's motion.  In doing so, the arbitrator accepted Petitioners' argument that they had announced their change of position specifically to keep the disputed property outside of Eletson Holdings' bankruptcy—*i.e.*, if Eletson Gas had indeed exercised the Purchase Option, that property would properly form part of Eletson Holdings' bankruptcy estate.  *Id.* at 32.  And while the arbitrator appeared to fault Levona for not seeking discovery into Petitioners' eleventh-hour allegations (*id.*), he disregarded that he had deprived Levona of the opportunity to do so by deferring ruling on the motion to strike until the award.[5]

E.     **The Arbitration Awards**

The arbitrator rendered an interim award on July 29, 2023, corrected it on August 15, 2023 (*see* ECF 16) (the "Corrected Interim Award"), and rendered a final award on September 29, 2023 (the "Final Award" and, together with the Corrected Interim Award, the "Awards").  The Final Award republished the Corrected Interim Award and additionally addressed, ruled upon, and quantified the amounts of fees, costs, and interest.  *See* Final Award at 5-6 (explaining same); *see*

---

[5]   This is just one example of multiple one-sided procedural rulings by the arbitrator.  Others abound.  For instance, Levona's counsel learned, after the hearing concluded, that Eletson Holdings had produced an email in the bankruptcy case that was highly relevant in showing that Petitioners did not exercise the Purchase Option.  On that basis, Levona sought to compel production so that the arbitrator would have an opportunity to consider this improperly withheld evidence.  The arbitrator refused to do so on the spurious basis that the protective order in the bankruptcy proceeding barred Petitioners from producing their own documents.  *See* Nesser Decl., Ex. BB, at 2; *see also id.*, Ex. CC (Letter, July 26, 2023).

*also* Nesser Decl., Ex. NN (redline showing changes from Corrected Interim Award to Final Award).

Regarding the key issue of whether Eletson Gas exercised the Purchase Option, the arbitrator concluded that "it is more likely than not that the conditions for the buyout were met … *pursuant to the BOL*.  Final Award at 47 (emphasis added).  As such, he determined that "Levona's interests should have been transferred to Eletson Gas, or its nominee."  *Id.*  And because the interests were not transferred, Levona was liable, *inter alia*, for its supposed unjust enrichment by having kept ownership of the ships *Symi* and *Telendos* and transferring the shares.  *Id.* at 64.

As to the written notice required to exercise the Purchase Option pursuant to the BOL, the arbitrator "agree[d] with Levona that there does not seem to be a separate formal written notice provided to Levona by Eletson exercising the option."  *Id.* at 43.  The arbitrator, however, excused Eletson Gas's non-compliance with the contract's requirement of written notice on the basis— found nowhere in governing English law or even in Delaware law applicable to the LLCA, and not otherwise justified by the arbitrator—that "[a]t best, the absence of a written notice" was a "formalit[y] that the parties failed to observe."  *Id.* at 46.[6]  The arbitrator also failed to square Petitioners' new theory with (i) the option granted to Eletson Gas alone—not the Greek families— to nominate a purchaser of Levona's shares, BOL § 2.1, (ii) the facts that the loan had not been paid and that Levona had not received adequate security or collateral as required by the BOL, BOL

---

[6]   The arbitrator also disregarded contemporaneous evidence establishing that the Purchase Option had never been exercised.  *See* Nesser Decl., Exs. DD, EE (Eletson Gas's principals sharing a buyout proposal with Levona on July 13, 2022, thereby showing that Eletson Gas had not exercised the Purchase Option; there would have been no need for such proposal had the option been exercised).  Levona has commenced an arbitration under the BOL to address these very issues before the appropriate, and contractually agreed, forum.

§ 2.2, and (iii) the Alleged Nominees' failure to the pay the Purchase Option Consideration in cash into an account designated by Levona, as required by the BOL, *see* BOL § 2.1.[7]

The arbitrator also concluded that Levona, through Pach Shemen—a non-signatory to the LLCA and non-party to the arbitration—violated the Status Quo Injunction and caused Petitioners to incur expenses in the bankruptcy case and in the bondholder litigation.  Final Award at 62-63. The arbitrator pointed out that Pach Shemen had "instructed the bond trustee … to sue Holdings to collect the debt due on [Eletson Holdings'] bonds," and, together with "other creditors of Holdings, filed involuntary bankruptcy petitions against Holdings in the Southern District of New York."  *Id.* at 61.  The arbitrator concluded that those actions violated the Status Quo Injunction because Pach Shemen's goal had been to obtain the "assets of [Eletson] Gas … or assets in dispute in this arbitration."  *Id.* at 62.  For the arbitrator, "the Levona-related entities were looking to either strip this arbitration of its jurisdiction or hedge against a potential loss in this arbitration."  *Id.* Accordingly, the arbitrator decided that he had jurisdiction over the conduct of Pach Shemen.

Based on these dubious findings, the arbitrator awarded approximately $87 million in damages (half of which was punitive damages).  The arbitrator carefully avoided awarding any damages to Eletson Holdings—the entity that had sought those damages when it commenced the arbitration and that is now in bankruptcy—just a Petitioners' counsel had requested.[8]  Rather, the arbitrator awarded:

---

[7]  The arbitrator also did not consider whether a transfer to the Alleged Nominees was possible in light of the LLCA's restrictions on the transfer of shares.  *See* LLCA § 10.2(b), (e).

[8]  *See* Nesser Decl., Ex. GG, at 6-7 (Petitioners' counsel asking the arbitrator to "structure relief" so as to avoid proceeds becoming subject to the bankruptcy).

1.  $21,777,378.50 to non-party Eletson Gas as compensatory damages because Levona had purportedly caused the improper arrests of certain of Eletson Gas's ships *prior* to acquiring its stake from Blackstone;[9]

2.  $19,677,743.71 to the non-party Alleged Nominees for Levona's purported unjust enrichment after acquiring the *Symi* and *Telendos*;

3.  $2,000,000 to non-party Eletson Gas as compensatory damages "arising out of Levona's other breaches of contract"; and

4.  $43,455,122.21 to non-party Eletson Gas and the non-party Alleged Nominees as punitive damages for alleged misconduct by "Murchinson, on its own, and through Levona and Pach Shemen."

Final Award at 100-01; *see id.* at 69.  The arbitrator also determined that non-party Pach Shemen and non-party Murchinson were jointly and severally liable with Levona for all damages because they were purportedly "alter egos" of one another, *id.* at 100-01—thereby imposing liability on non-parties that not even Petitioners had requested.  *See* Nesser Decl, Ex. II (asserting claims against only Levona).

The arbitrator additionally awarded over $12.5 million in attorney's fees and costs, not only in connection with the arbitration at issue here ($9,590,222.99), but also in connection with the above-noted bankruptcy case and bondholder litigation ($3,007,266.20).  The award states that those amounts are owed to Eletson Holdings and Eletson Corp., "to be paid to the entity or individuals who paid those costs and fees."  Final Award at 91-92.[10]  The arbitrator also awarded "[a]dditional pre-judgment interest on the compensatory damages as awarded in the Corrected Interim Award through August 31, 2023," in the amount of $1,319,163.14 to Eletson Gas (not a party to the arbitration) and $1,176,918.74 to the Preferred Nominees (also not parties to the

---

[9]  The arbitrator never explained how arrests pursuant to court orders could be improper, let alone how he could properly exercise jurisdiction over conduct that allegedly occurred several months *before* Levona acceded to the LLCA.

[10]  The arbitrator also awarded Petitioners $22,366.10 representing additional JAMS costs incurred in this arbitration since the filing of Eletson's Opening Affirmation, and which Eletson had paid both its share and Levona's share.

arbitration).  *Id.*  And the arbitrator awarded additional prejudgment interest on compensatory damages and the fees, costs, and expenses from the date of the Final Award to the date of payment or confirmation.  *Id.* at 102.  As with the rest of the award, non-party Pach Shemen and non-party Murchinson were deemed jointly and severally liable for these fees and interest as alleged "alter egos" of Levona.  Final Award 100-01.[11]

Petitioners have petitioned this Court to confirm the Final Award against Levona.  Levona now moves to dismiss the petition and counter-petitions to vacate the Corrected Interim Award and Final Award.

## ARGUMENT

## I.   THE PETITION SHOULD BE DISMISSED IN AT LEAST SUBSTANTIAL PART BECAUSE PETITIONERS LACK STANDING

Article III of the Constitution provides that the "judicial power shall extend to all Cases" and "Controversies."  U.S. Const. art. III, § 2.  To satisfy this case-or-controversy requirement, a party seeking to invoke a federal court's jurisdiction must have standing to sue.  That means the party "must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or

---

[11]   The arbitrator also made serious findings against individuals who had no opportunity to defend themselves.  For example, the arbitrator found that Eletson Gas's CFO (also an Eletson Corp. employee) was induced to disregard his fiduciary duties and harm Eletson Gas.  Final Award at 24.  That individual was not produced as a witness.  And the arbitrator did not have a complete account of the relevant facts, including that it was Blackstone that had asked the individual to share information with Levona's principals.  The arbitrator also failed to appreciate that the individual was, for years, knowingly put in an inherently conflicted position between his duties to Eletson Gas (which owned the ships) and Eletson Corp. (which managed the ships and thus had conflicting interests because its management fees would shrink if the ships were sold).  These commercial realities, ignored by the arbitrator, had informed the operations of Eletson Gas for years.

No different was the arbitrator's determination that punitive damages were warranted on the unsubstantiated basis that Levona's in-house counsel had tampered with evidence.  Final Award at 44.  This was not true, as Levona demonstrated by reference to the document allegedly tampered with and its metadata.  Nesser Decl., Ex. LL (Levona's Post-Hearing Br., June 9, 2023), at 34-35.  The arbitrator ignored this evidence and regrettably engaged in an injudicious rush to tar a young lawyer.

imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). Further, "a plaintiff must demonstrate standing for each claim he seeks to press"; "standing is not dispensed in gross." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352-53 (2006) (quoting *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996)).

Article III's case-or-controversy requirement applies to actions governed by the Federal Arbitration Act ("FAA"). "The Supreme Court recently affirmed that the FAA's provisions authorizing 'applications to confirm, vacate, or modify arbitral awards … do not themselves support federal jurisdiction.'" *Stafford v. IBM Corp.*, 78 F.4th 62, 68 (2d Cir. 2023) (quoting *Badgerow v. Walters*, 142 S. Ct. 1310, 1316 (2022)). Instead, an entity seeking to confirm an award must have a "concrete" stake in the outcome of the confirmation proceeding. *Id.* As the Second Circuit has held, an entity lacks such a stake where it has "no interest in the award[]," *Compagnie Noga D'Importation et d'Exportation S.A. v. Russian Fed'n*, 350 F. App'x 476, 477 (2d Cir. 2009), or there is not "any issue over payment" to it, *Stafford*, 78 F.4th at 68.

For example, in *Compagnie Noga*, Judge Pauley ruled that an entity's "assignments of its arbitration proceeds to certain of its creditors deprived it of standing to seek confirmation of the arbitral award." 2008 WL 3833257, *1, *7 (S.D.N.Y. Aug. 15, 2008). In affirming that decision, the Second Circuit explained that in such circumstances the petitioning entity "had no interest in the awards and, therefore, lacked standing to pursue its" petition to confirm them. 350 F. App'x at 477. Similarly, in *Stafford*, the Second Circuit recently held that, following satisfaction of an arbitral award, a petition to confirm that award was "moot because [the petitioner] now lacks any 'concrete interest' in confirmation." 78 F.4th at 68 (quoting *Knox v. SEIU*, 567 U.S. 298, 307 (2012)). In both cases, the petitioner had no stake in the award that it sought to confirm.

Here, Petitioners lack standing to confirm the portions of the Awards that are in favor of third parties for a similar reason.  They, like the petitioner in *Compagnie Noga*, have "no interest in" the substantial portions of the Awards that resolve non-parties and non-signatories' rights and direct Levona to pay damages to non-parties Eletson Gas and the Alleged Nominees—not to Petitioners.  *Compagnie Noga*, 350 F. App'x at 477.  Nor do those portions of the Awards present any "issue over payment" to Petitioners.  *Stafford*, 78 F.4th at 68.  Accordingly, if the Court were to hear and grant the petition to confirm, Petitioners would reap no benefit as to the overwhelming bulk of the Awards.  That is the paradigmatic example of a party lacking a concrete interest in the outcome of an action.

At most, Petitioners may have an interest in the fees from the arbitration, bankruptcy case, and bondholder litigation that the Awards granted them.  But even as to that portion of the Awards, which should be vacated for the reasons discussed below, Petitioners do not have a direct interest because the fees were apparently paid by others.  *See* Final Award at 68 (directing that fees "be paid to" any "entity or individuals who paid those costs and fees" on Petitioners' behalf); Nesser Decl., Ex. HH (Aff. of V. Kertsikoff), at 7 ("[O]ne or another of the Eletson-affiliated entities has made very substantial payments, equalling $2 million, to Reed Smith in respect of fees incurred. … Any amounts still owed in connection with this arbitration have been included in a Promissory Note of sum certain made by Fentalon, Apargo, and Desimusco [*i.e.* the Alleged Nominees].").  In any event, a cognizable interest in fees would not give Petitioners "standing … in gross" to seek to confirm any other part of the Awards.  *DaimlerChrysler*, 547 U.S. at 353.

## II.  THE PETITION SHOULD BE DENIED AND THE AWARDS VACATED BECAUSE THE ARBITRATOR EXCEEDED HIS POWERS

The FAA provides that an arbitral award falling under the New York Convention shall be confirmed "unless [a court] finds one of the grounds for refusal or deferral of recognition or

enforcement of the award specified in the [] Convention." 9 U.S.C. § 207. Such grounds include where an "award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, ... contains decisions on matters beyond the scope of the submission to arbitration, ... or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made." United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, art. V(1)(c), (e); *see* 9 U.S.C. § 9 (court may not confirm an arbitral award if it "is vacated"). The FAA further provides that a court may vacate an arbitral award where arbitrators "exceeded their powers." 9 U.S.C. § 10(a)(4). The Court's inquiry under § 10(a)(4) "focuses on whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue." *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 220 (2d Cir. 2002) (citation omitted).

The arbitrator here exceeded his powers by (1) adjudicating the rights and duties of non-parties to the arbitration proceedings and non-signatories to the LLCA; (2) adjudicating claims for conduct that falls outside the scope of the arbitration agreement in the LLCA and that is expressly subject to a London-seated arbitral tribunal; (3) adjudicating claims barred by the bankruptcy; (4) awarding fees incurred in the bankruptcy case and bondholder litigation, in a manner that not only violates the bankruptcy court's exclusive jurisdiction but also is outside the scope of the LLCA's arbitration clause; and (5) awarding fees and costs to non-prevailing parties despite the LLCA's contrary limit. For those clear jurisdictional excesses, the Court should vacate the Awards.

### A. The Arbitrator Improperly Adjudicated Rights And Duties Of Non-Parties To The Arbitration And Non-Signatories To The Arbitration Agreement

"[A]rbitrators exceed[] their powers by determining the rights of a corporation not party to the arbitration." *Smarter Tools*, 57 F.4th at 382; *see Nationwide Mut. Ins. Co. v. Home Ins. Co.*,

330 F.3d 843, 849 (6th Cir. 2003) ("[W]e AFFIRM the district court's order of vacation based on the arbitration panel's lack of jurisdiction to order payment to a third party ….").

That limit on arbitrators' powers means that they can determine the rights and duties of only those who are "part[ies] to the arbitration contract." *Am. Renaissance Lines, Inc. v. Saxis S. S. Co.*, 502 F.2d 674, 677 (2d Cir. 1974). Otherwise, arbitrators would thwart the "contractual nature of arbitration that parties may specify *with whom* they choose to arbitrate their disputes." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 683-84 (2010); *see Nationwide*, 330 F.3d at 847 ("Home and Nationwide agree that CIGNA and its affiliate, AISUK, are non-parties to the contract and to the arbitration. Thus, the arbitration award exceeds the panel's authority" by awarding them damages.).

That limit also means arbitrators can determine the rights and obligations of only "parties in the arbitration proceedings." *NCR Corp. v. Sac–Co., Inc.*, 43 F.3d 1080 (6th Cir. 1995) (relying on *Orion Shipping & Trading Co. v. E. States Petroleum Corp.*, 312 F.2d 299, 301 (2d Cir. 1963)). For example, in *GE Transportation (Shenyang) Co. v. A-Power Energy Generation Systems, Ltd.*, 2016 WL 3525358 (S.D.N.Y. June 22, 2016), this Court declined to enforce an arbitration award against alleged alter egos of a party to the arbitration proceedings because "the alleged alter egos [we]re not parties to th[e] action" and thus "the Court [could ]not enter judgment against them." *Id.* at *5 (citing *Taylor v. Sturgell*, 553 U.S. 880, 884 (2008) ("It is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment in personam in a litigation in which he is not designated as a party or to which he has not been made a party ….")).

Because this scenario arises so infrequently, courts in this circuit have not had much occasion to opine on it. But the Sixth Circuit has held, much like this Court in *GE Transportation*, that an arbitrator could not award damages to employees who had signed a collective bargaining

agreement with an arbitration clause, but who had not filed grievances under that agreement, because "arbitrators exceed their powers when they determine rights and obligations of individuals who are not parties to the arbitration proceedings." *Armco Emps. Indep. Fed'n, Inc. v. AK Steel Corp.*, 149 F. App'x 347, 351 (6th Cir. 2005); *accord Nationwide*, 330 F.3d at 849 (affirming order vacating arbitral award based on the arbitration panel's lack of jurisdiction to require payment to third party). That conclusion is consistent with the law of the Second Circuit, under which an "arbitrator exceed[s] his powers" when he "determin[es] the obligations of a corporation which was clearly not a party to the arbitration proceeding." *Orion Shipping*, 312 F.2d at 300 (affirming order vacating arbitration award against entity that was not a party to arbitration).

Here, the arbitrator improperly determined the rights and obligations of non-parties and non-signatories by (1) awarding damages to the Alleged Nominees—non-parties and non-signatories; (2) awarding damages to Eletson Gas—a non-party; and (3) awarding damages against Pach Shemen and Murchinson—non-parties and non-signatories.

*First*, the arbitrator improperly awarded the Alleged Nominees $19,677,743.71 for Levona's purported unjust enrichment and $19,677,743.71 in punitive damages. Final Award at 100-01. The Alleged Nominees were neither signatories to the LLCA nor parties to the arbitration proceedings, so the arbitrator exceeded his power in "order[ing] payment to" them "as third parties." *Nationwide*, 330 F.3d at 849; *see, e.g.*, *Smarter Tools*, 57 F.4th at 382. The issue is particularly significant because the Awards were made to non-parties in an effort to allow Petitioners to circumvent the pending bankruptcy proceeding involving Eletson Holdings, to the detriment of its creditors.

*Second*, the arbitrator improperly awarded Eletson Gas $21,777,378.50 as compensatory damages because Levona allegedly caused the arrests of Eletson Gas ships, $2,000,000 as

compensatory damages "related to or arising out of Levona's other breaches of other contracts," and $23,777,378.50 in punitive damages. Final Award at 65, 100-01. The problem with those awards is that Eletson Gas, although a party to the LLCA, was not a party to the arbitration. *NCR Corp.*, 43 F.3d at 1080 (arbitrator "exceeded his authority by … determining the rights of individuals who were not parties in the arbitration proceedings"). Indeed, this case is on all fours with *Armco*, where the Sixth Circuit held that an arbitrator could not award damages to employees who, though signatories to an arbitration agreement, had not filed grievances under that agreement and had therefore not become "parties to the arbitration proceedings." 149 F. App'x at 351. Just as in *GE Transportation*, this Court should vacate the award because Eletson Gas was not a "part[y] to th[e] action." 2016 WL 3525358, at *5.[12]

In the interim awards, the arbitrator did not explain why he had authority to award damages to a non-party like Eletson Gas. It was only in the Final Award—which the arbitrator issued a week after Levona had filed its initial opening brief in this Court urging vacatur of the Corrected Interim Award (*see* ECF 30)—that the arbitrator sought to justify that portion of the award. His first purported justification, unsupported by any cited authority, was that "Eletson Gas could not

---

[12]   Levona, moreover, never consented to adjudication of non-parties' rights and obligations, let alone to them receiving an award of damages. In the operative statement of claims, *Petitioners* requested that they be awarded "[c]ompensatory damages for all the harm caused to the Company and/or [Petitioners] by reason of Levona's misconduct." Nesser Decl., Ex. II, at 22. *Petitioners* also sought an award of "[p]unitive damages and other exemplary damages for, among other things, the manner in which Levona has mistreated [Petitioners], disregarded its obligations to [Petitioners] and to the Company, and breached contract and committed associated torts against [Petitioners], with unlawful conduct directed to the public at large." *Id.* at 23 (emphasis added). Neither request sought an award of damages to anyone other than *Petitioners*. It was only in their post-hearing Proposed Order that Petitioners sought a damages award directly to a non-party (*see* Nesser Decl., Ex. JJ, at 6)—at which point Levona had no chance to respond. And when the Alleged Nominees surfaced at the eleventh hour before the hearing, Levona moved to strike any allegations regarding them—making clear that adjudication of issues involving them was outside the arbitrator's authority. *Id.*, Ex. KK, at 1.

bring this claim on its own given that Levona contended it continued to own the preferred interests of, and therefore had a controlling interest in, Eletson Gas." Final Award at 89.  That is simply wrong.  Because Petitioners maintained that they own Eletson Gas and that Levona had no interest in Eletson Gas, they had every ability to cause Eletson Gas to sue Levona; Levona's contention that it owns Eletson Gas would merely have been a defense.  *See, e.g.*, *CSWS, LLC v. Rios*, 2021 WL 7161224, *1 (N.D. Ill. Oct. 20, 2021) ("The notice of removal states that removing defendant owns 55% of plaintiff CSWS, LLC's certificates of ownership. CSWS, LLC, filed the state court suit to force Seif LLC to transfer the certificates of ownership based on an operating agreement, the applicability of which is disputed.").

In another effort to justify his award to Eletson Gas, the arbitrator erroneously stated in the Final Award that "[i]t has … been clear throughout these proceedings that Eletson would turn over any damages to Eletson Gas, depending upon my ultimate determinations in this arbitration." Final Award at 89.  In support, the arbitrator cited paragraph 64(p) of Claimants' Third Amended Statement of Claims, which asserts that "[i]nsofar as any of the claims asserted herein are determined by the Arbitrator to be derivative in nature, then Claimants bring such claims by and on behalf of the Company and will account to the Company for all damages or other relief awarded against Levona in respect of any such derivative claim."  Nesser Decl., Ex. II, at 23.  But that statement, and indeed the arbitrator's own statement in the Final Award, shows only that Petitioners might receive an award and then give it to Eletson Gas; it does not show that Eletson Gas might receive an award directly.  Indeed, in their post-hearing brief, Petitioners stated that they would turn over certain damages to Eletson Gas, not that Eletson Gas should get an award ab initio.  Nesser Decl., Ex. LL, at 23.  And this distinction is important not only as a matter of standing and procedure but also because Eletson Holdings is a debtor in a bankruptcy case, so its

creditors would have a claim to any damages that go to it rather than to Eletson Gas. *See infra*, Part II.C.

The arbitrator also erroneously stated in the Final Award that "Levona never objected to Eletson having standing to enforce the terms of the BOL, even though, if successful, relief would be awarded—as expressly set forth in the BOL—to 'Eletson Gas or its nominee.'"  Final Award at 89.  The BOL says no such thing.  Rather, Section 2.1 provides that "in consideration of the Transfer occurring … Levona hereby grants to Eletson Gas the option, exercisable by written notice to Levona by both of them (an "Option Notice"), for *either Eletson Gas or its nominee to purchase* all of the membership interests held by Levona in Eletson Gas."  BOL § 2.1 (emphasis added).  That clause in no way suggests that if Petitioners—which do not include Eletson Gas or its nominees—succeeded in arbitration, then the arbitrator would award damages directly to Eletson Gas and the Alleged Nominees.

*Finally*, the arbitrator improperly ordered non-parties and non-signatories Pach Shemen and Murchinson to pay nearly $90 million by holding them jointly and severally liable with Levona.  Because neither entity was a party to the arbitration proceedings or the LLCA, the arbitrator "exceed[ed his] powers by determining the rights of a corporation not party to the arbitration," *Smarter Tools*, 57 F.4th at 382; *see Orion*, 312 F.2d at 300 (same), notwithstanding his finding that Pach Shemen and Murchinson were alter egos of Levona (Final Award at 97).  The prohibition on arbitrators determining the rights and obligations of non-parties applies no matter how closely a non-party and party might relate.  That is because the issue of whether a claimant can compel an entity "to arbitrate is an issue to be decided in the courts"—not by an arbitrator. *Am. Safety Equip. Corp. v. J. P. Maguire & Co.*, 391 F.2d 821, 829 (2d Cir. 1968).  And the Second Circuit has firmly "held that an arbitration award could not be enforced under an alter-ego theory

against the [non-signatory] parent corporation of one of the parties" because even "a confirmation action [is] not the proper time to attempt to 'pierce the corporate veil,' due to the potentially complex fact-finding this inquiry would involve." *Productos Mercantiles E Industriales, S.A. v. Faberge USA, Inc.*, 23 F.3d 41, 47 (2d Cir. 1994) (quoting *Orion*, 312 F.2d at 301); *cf. Am. Renaissance Lines*, 502 F.2d at 677-78. ("[A] corporation … is entitled to a presumption of separateness from a sister corporation … even if both are owned and controlled by the same individuals.").

In sum, because arbitration is contractual and based on the parties' consent, the arbitrator here repeatedly "exceeded his powers in determining the obligations" of companies who were not "part[ies] to the arbitration proceeding" or the relevant contract. *Orion*, 312 F.2d at 300.[13]

### B.   The Arbitrator Improperly Adjudicated Claims Subject To A Different Arbitration Agreement

Arbitrators also exceed their powers where they award damages "for events not governed by the arbitration agreement." *Smarter Tools*, 57 F.4th at 382 (citing *In re Arb. Between Melun Indus., Inc. & Strange*, 898 F. Supp. 990, 994-95 (S.D.N.Y. 1990)); *see Granite Rock*, 561 U.S. at 299; *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995) ("[A] party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration.").

Here, the arbitrator awarded unjust enrichment damages because it found that Levona *breached the BOL*—not the LLCA—by failing to transfer its interest in Eletson Gas after Eletson Gas purportedly exercised the Purchase Option.  Final Award at 46.  Beyond the egregious legal errors underlying the arbitrator's analysis that independently warrant vacatur (*see infra*, Part III), there is an even more fundamental problem with this unjust enrichment award:  it stemmed from

---

[13]   The arbitrator's award of prejudgment interest to and against non-parties is improper for the same reasons discussed in text.  *See* Final Award at 93-94, 100-01.

a supposed breach of the BOL, not the LLCA, and thus was "for events not governed by the arbitration agreement." *Smarter Tools*, 57 F.4th at 382.

The arbitrator did not even try to obscure that the Awards rested on the interpretation and enforcement of the BOL. Under the heading, "Eletson Exercised the Option Pursuant to the Terms of the BOL," the arbitrator quoted several provisions of the BOL, states that he is "enforc[ing]" the BOL, Final Award at 33-34, and spent several pages addressing whether various provisions of the BOL were complied with, before finding that Eletson Gas exercised the BOL Purchase Option, *id.* at 35-47. The arbitrator then concluded that because "the conditions for the buyout were met … *pursuant to the BOL*, Levona's interests should have been transferred to Eletson Gas, or its nominee." *Id.* at 47 (emphasis added).[14] And because they were not, the arbitrator ruled that Levona was liable for its supposed unjust enrichment. *Id.* at 64.

The problem with all of this is that the arbitrator had the authority to decide only those issues "arising out of or relating to" the LLCA. LLCA § 12.14. Levona never "consent[ed]" for the arbitrator "to resolve those disputes" arising from the BOL. *Granite Rock*, 561 U.S. at 299. To the contrary, the BOL—which was entered into after Levona assented to the LLCA—has its own separate arbitration agreement providing that "any disputes and claims arising out of or in connection with" the Purchase Option "shall be governed by and construed in accordance with *English law* and shall finally be resolved by arbitration" in "*London*." BOL § 10 (emphasis added). Accordingly, the dispute about whether Eletson Gas exercised the Purchase Option had to be arbitrated in London, not in the arbitration below. Levona has recently commenced an arbitration

---

[14]   In this entire 15-page discussion, the Awards mention just one provision of the LLCA, noting that had Levona acquired the *Symi* and *Telendos* without transferring its shares in Eletson Gas it may have run afoul of LLCA Section 6.2. *See* Final Award at 36. But that point in no way makes Levona's alleged failure to transfer its interest a violation of the LLCA.

in London as provided by the BOL to address these very issues.  The arbitrator thus exceeded his authority by deciding issues that the LLCA did not govern.

The arbitrator determined that Levona consented to pay damages based on violations of the BOL by seeking "relief for its counterclaims" that he could award only if he were to "interpret, enforce, and provide relief for pursuant to the [BOL]."  Final Award at 14.  But that determination improperly disregards Levona's express challenge to arbitrator's jurisdiction over the BOL.  *See* Nesser Decl., Ex. K at 2 ("Levona does not waive its right to challenge jurisdiction and will do so as necessary in this arbitration").  Indeed, the lead argument in Levona's initial response to Petitioners' arbitration demand was that the BOL was "the crux of this entire matter," and thus the matter had to be resolved in an arbitration in London, not New York.  *Id.*  Levona followed that objection by explicitly moving to strike arguments related to the BOL.  Nesser Decl., Ex. KK, at 1.  Levona thus repeatedly preserved its jurisdictional objection, and cannot be held to have consented to arbitrate in New York whether the Purchase Option was exercised under the BOL.  *See, e.g.*, *Opals on Ice Lingerie, Designs by Bernadette, Inc. v. Bodylines Inc.*, 320 F.3d 362, 368 (2d Cir. 2003) (party did not impliedly consent to proceed by arbitration where it "objected repeatedly to arbitration").[15]

## C.   The Arbitrator Improperly Adjudicated Claims Barred By The Bankruptcy Stay

As noted above, the arbitrator stayed the arbitration pending further order or notice from the bankruptcy court, which then modified the automatic stay under section 362(a) of the Bankruptcy Code to permit the arbitration to proceed only as to "*claims currently pending in the*

---

[15]   As discussed below (*see infra*, Part II.D.2), the arbitrator also exceeded his authority under the LLCA by awarding costs and fees incurred in the bankruptcy case and bondholder litigation— entirely different proceedings unrelated to the LLCA.

*Arbitration*" as of April 17, 2023.  Nesser Decl., Ex. Q at 3-4 (emphasis added).  The arbitrator thus lacked authority to adjudicate Petitioners' claims that Levona (allegedly through Pach Shemen) had commenced Eletson Holdings' involuntary bankruptcy proceeding in bad faith (a claim first asserted on April 25), or that the preferred interests had been assigned to the Alleged Nominees (a claim first asserted on May 5).  *See supra*, at 8.  Because those claims had not been "pending in the Arbitration" as of April 17, 2023, the arbitrator's decision to adjudicate them violated the Bankruptcy Court's order and the automatic stay under section 362(a).

Adjudication of Petitioners' newly-asserted claim also improperly usurped the bankruptcy court's exclusive authority to decide whether claims belonging to a debtor are property of the bankruptcy estate.  *See, e.g.*, *In re Point Blank Sols., Inc.*, 449 B.R. 446, 449 (Bankr. D. Del. 2011) ("It is well established that proceedings to determine what constitutes property of the bankruptcy estate under section 541(a) of the Bankruptcy Code are core proceedings."); *In re Affirmative Ins. Holdings, Inc.*, 565 B.R. 566, 584 (Bankr. D. Del. 2017) ("[T]he determination of whether the funds … are indeed property of bankruptcy estate is a core proceeding.").  Indeed, Petitioners' newly-asserted claim was particularly offensive to the bankruptcy court's order—and the automatic stay under section 362(a)—because it rests on the premise (detrimental to debtor Eletson Holdings and its creditors) that the preferred shares underlying Petitioners' claims are *not* property of the bankruptcy estate.

Because "any proceedings or actions [against the debtor] described in section 362(a)(1) are void and without vitality if they occur after the automatic stay takes effect," the arbitrator's determination that Levona's interests in Eletson Gas passed to the Alleged Nominees is void.  *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 527 (2d Cir. 1994) (citations omitted).  The Awards should be vacated on this basis.  *See, e.g.*, *Marquis Yachts v. Allied Marine Grp., Inc. (N.)*,

2010 WL 1380137, *5 (D. Minn. Mar. 31, 2010) ("Allied's claim [for declaratory relief] against [the debtor] is an action 'against the debtor' and therefore was subject to the automatic stay [under section 362]. … To the extent that the arbitration panel ruled on Allied's claim for declaratory relief, the panel violated the automatic stay and exceeded its powers." (citing 9 U.S.C. § 10(a)(4))).

### D.   The Arbitrator Improperly Awarded Fees Incurred In The Bankruptcy Case And Bondholder Litigation

#### 1.   The Award Of Fees Incurred In The Bankruptcy Case Intruded Upon The Bankruptcy Court's Exclusive Jurisdiction

The arbitrator intruded on the bankruptcy court's exclusive jurisdiction in no fewer than three ways when he awarded fees incurred in the bankruptcy case. *First*, the arbitrator lacked authority to award fees in connection with the bankruptcy because that claim was not pending when the bankruptcy court modified the automatic stay; Petitioners made that request only later. *See* Nesser Decl., Ex. R.

*Second*, the award of fees for the bankruptcy case is improper because damages based on an involuntary bankruptcy petition are exclusively a matter of federal bankruptcy law, specifically 11 U.S.C. § 303(i), and remedies outside the Bankruptcy Code are preempted. *See, e.g.*, *In re Miles*, 430 F.3d 1083, 1091-92 (9th Cir. 2005) ("§ 303(i) of the Bankruptcy Code 'provide[s] the exclusive cause of action for the claim[s] asserted and also set[s] forth procedures and remedies governing that cause of action.' … Therefore, we hold that 11 U.S.C. § 303(i) completely preempts state law tort actions for damages predicated upon the filing of an involuntary bankruptcy petition." (quoting *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003)); *Gonzales*, 830 F.2d at 1035 ("Filings of bankruptcy petitions are a matter of exclusive federal jurisdiction. State courts are not authorized to determine whether a person's claim for relief under a federal law, in a federal court, and within that court's exclusive jurisdiction, is an appropriate one."); *In re Chateaugay Corp.*, 213 B.R. 633, 637 (S.D.N.Y. 1997) (citing *Gonzales* for proposition that "state courts lack

jurisdiction to adjudicate claim[s] that filing [a] bankruptcy petition constituted abuse of process"). The arbitrator thus improperly usurped the bankruptcy court's power over the involuntary bankruptcy proceeding by awarding Petitioners' fees and costs associated with it.  The Awards should be vacated on this basis too.  It is irrelevant that the arbitrator purported to award such fees based on a supposed violation of the Status Quo Injunction (by a non-party to the arbitration). Final Award at 68.  That is because the arbitrator's authority did not extend to matters strictly reserved for the bankruptcy court.

*Third*, the award of fees for the bankruptcy case is additionally improper because, rather than simply awarding those fees to the bankrupt debtor (Eletson Holdings), it directed the debtor to repay any non-party "entity or individuals who paid those costs and fees" on Petitioners' behalf. Final Award at 66.  No non-party, however, could have validly advanced costs and fees on the debtor's behalf without bankruptcy court approval, because such advances and the repayment thereof are within the bankruptcy court's exclusive jurisdiction.  *See* 11 U.S.C. § 364(b) & (c) (bankruptcy court must authorize non-ordinary course borrowings "*after notice and a hearing*") (emphasis added); 28 U.S.C. § 1334(e) ("The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction … of property of the estate"); *cf. In re Braniff Int'l Airlines, Inc.*, 164 B.R. 820, 828 (Bankr. E.D.N.Y. 1994), *aff'd*, 101 F.3d 686 (2d Cir. 1996) (bankruptcy judge "'should not retroactively validate the loan unless he is confident that he would have authorized it if a timely application had been made" and "in addition, he is reasonably persuaded that the creditors have not been harmed by a continuation of the business made possible by the loan'" (quoting *In re Am. Cooler Co.*, 125 F.2d 496, 497 (2d Cir. 1942))).  Moreover, the bankruptcy court—not an arbitrator—oversees the payment of creditors in accordance with the Bankruptcy Code.  *See* 11 U.S.C. § 726.  The Awards should be vacated for this reason as well.

### 2.   The Award Of Fees Incurred In The Bankruptcy Case And Bondholder Litigation Exceeded The Scope Of The Arbitration Agreement

The arbitrator also exceeded his powers under the LLCA's arbitration agreement by awarding Petitioners the fees and costs incurred in Eletson Holdings' bankruptcy case and in the bondholder litigation.  Those portions of the award are three degrees removed from any relation to the LLCA: they concern fees and costs allegedly incurred in *actions other than the arbitration* (the bankruptcy case and bondholder litigation), because *non-party and non-signatory Pach Shemen* (not Levona) purportedly violated the *Status Quo Injunction* (not the LLCA).  Indeed, the only reference to the LLCA in the relevant portion of the Awards is to Section 12.14(d), which empowers the arbitrator "to award reasonable attorneys' fees and reasonable travel expenses (excluding meals) to the prevailing party."  Final Award at 68 (quoting LLCA § 12.14(d)).  But that "prevailing party" provision is plainly limited to fees and expenses incurred in connection with the arbitration.  The LLCA did not contemplate or permit an award of fees and costs for other proceedings.  The arbitrator therefore lacked authority to award fees and costs that related to the bankruptcy case and bondholder litigation and not the LLCA.

The arbitrator's conclusion that the Status Quo Injunction, rather than the LLCA, barred Pach Shemen from initiating a bankruptcy proceeding (and that damages for the filing of that action should be awarded to Petitioners) is an improper injunction against a federal-court action. *See* Final Award at 91.  Federal courts, much less arbitrators, may enjoin other federal court actions only to avoid duplicative litigation.  For example, "a district court 'may enjoin the suitor in [a] more recently commenced case from taking any further action in the prosecution of that case' if the claims presented in the second action should have been interposed as compulsory counterclaims to the claims in the suit pending before it."  *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 893 F.2d 26, 28-29 (2d Cir. 1990) (quoting *Nat'l Equip. Rental, Ltd. v. Fowler*, 287 F.2d 43,

45 (2d Cir. 1961)).  Likewise, a federal court may enjoin a later-instituted proceeding in another federal court "if the controversy in each court involves the same issues and the same parties." *Cresta Blanca Wine Co. v. Eastern Wine Corp.*, 143 F.2d 1012, 1014 (2d Cir. 1944).

Here, Pach Shemen's bankruptcy action was not duplicative of the arbitration.  Those actions do not involve the same parties—the arbitration involves Levona, Eletson Holdings, and Eletson Corp., while the bankruptcy proceeding involves Pach Shemen and Eletson Holdings (among others).  And they do not involve the same claims in any respect—one is about Levona's alleged misconduct and failure to abide by the BOL, and the other is about Eletson Holdings' insolvency.  Thus the arbitrator (even if vested with the full authority of a federal court) had no authority to enjoin Pach Shemen from prosecuting its bankruptcy claims and thus lacked authority to enter a sanctions award for exercising rights under federal law.

In all events, it is for the bankruptcy court alone to grant any remedies in connection with the filing of an involuntary bankruptcy petition.  *See, e.g.*, *In re Miles*, 430 F.3d at 1091-92; *see also supra*, at 27-28.  Indeed, recent developments in the bankruptcy proceeding demonstrate the importance of the bankruptcy court having exclusive jurisdiction over fees associated with its proceedings.  Just a week after the arbitrator issued the Corrected Interim Award, Eletson Holdings reversed course entirely, withdrew its motion to dismiss the involuntary bankruptcy proceeding that was based on alleged bad faith, and instead became a voluntary debtor.  *See supra*, at 8.

After Levona filed its initial vacatur brief, the arbitrator tried to justify this portion of the award in the Final Award by pointing for the first time to JAMS Rule 29, which provides that the "Arbitrator may order appropriate sanctions for failure of a Party to comply … with an order of the Arbitrator."  Final Award at 92.  Based on that grant of authority, the arbitrator stated that the award of attorneys' fees for the bankruptcy case and bondholder litigation "was as damages to

compensate for the intentional violations by Levona, through its alter ego, Pach Shemen, of the Status Quo Injunction Order—not a finding of a prevailing party's entitlement to fees or a finding under a fee-shifting provision." *Id.*

The arbitrator's after-the-fact effort to rescue this improper award lacks any basis in law or fact. In law, JAMS Rule 1(e) defines "Party" as used in the JAMS Rules as "Parties to the Arbitration and their counsel or representatives." Here, Pach Shemen was not a "Party" under Rule 29 and thus its conduct could not form the basis for sanctions under JAMS Rule 29. But even if JAMS Rule 29 were available here, the arbitrator failed to explain how any bankruptcy-related violation of the Status Quo Injunction caused any harm to Eletson Holdings that could be "compensat[ed]" by "damages": Pach Shemen was one of several petitioning creditors that initiated the involuntary bankruptcy proceeding, such that Eletson Holdings would have incurred fees in the bankruptcy regardless of Pach Shemen's involvement.

### E.   The Arbitrator Improperly Awarded Fees And Costs To Non-Prevailing Parties

As mentioned, Section 12.14(d) of the LLCA empowers the arbitrator "to award reasonable attorneys' fees and reasonable travel expenses (excluding meals) to the prevailing party." Under Delaware law, "the defendant is the prevailing party" if a plaintiff receives "zero dollars in damages." *Cooke v. Murphy*, 99 A.3d 226, 2014 WL 3764177, at *3 (Del. 2014).

That rule applies directly to this case. The arbitrator awarded "zero dollars in damages" to Claimants Eletson Holdings and Eletson Corp. *Id.* He awarded damages only to Eletson Gas and the Alleged Nominees. Thus, Eletson Holdings and Eletson Corp. were not "prevailing part[ies]" to whom the arbitrator could award attorneys' fees under Section 12.14(d) of the LLCA. The arbitrator, though, failed to heed that limit on his power and improperly awarded Petitioners nearly $13 million in fees in a case in which they did not prevail.

### III.   THE PETITION SHOULD BE DENIED AND THE AWARDS VACATED BECAUSE THE ARBITRATOR MANIFESTLY DISREGARDED THE LAW AND THE BOL

In addition to exceeding his authority under the LLCA's arbitration agreement, the arbitrator grossly misinterpreted the BOL—and manifestly disregarded the law—resulting in an indefensible $87 million award.  The Second Circuit has recognized that "awards may be vacated or modified in the limited circumstances where the arbitrator's award is in manifest disregard of the terms of the [parties'] agreement."  *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997).  For example, in *In re Marine Pollution Servs., Inc.*, 857 F.2d 91 (2d Cir. 1988), the Second Circuit ordered vacatur of an arbitration award where the arbitrator had failed to interpret the contract at issue and instead merely made "noises" of contract interpretation and "based the award on some body of thought, or feeling, or policy, or law that is outside the contract."  *Id.* at 94 (quoting *Ethyl Corp. v. United Steelworkers*, 768 F.2d 180, 184-85 (7th Cir. 1985)); *see Aspic Eng'g & Constr. Co. v. ECC Centcom Constructors LLC*, 913 F.3d 1162, 1169 (9th Cir. 2019) ("When an arbitrator disregards the plain text of a contract without legal justification simply to reach a result that he believes is just, we must intervene.").

Likewise, "[a]n arbitral award may be vacated for manifest disregard of the law." *Jefferies LLC v. Gegenheimer*, 849 F. App'x 16, 17 (2d Cir. 2021) (quoting *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004)).  A party seeking to vacate an arbitration award on manifest disregard grounds must show "egregious impropriety on the part of the arbitrator" and that there is not even a "barely colorable justification for the outcome reached."  *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010) (quoting *Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.*, 548 F.3d 85, 91-92 (2d Cir. 2008), *rev'd on other grounds*, 559 U.S. 662 (2010); *see, e.g.*, *Westerbeke*, 304 F.3d at 218 ("A court may find intentional disregard if the reasoning supporting the arbitrator's judgment strains credulity or does not rise to the standard of barely colorable."

(cleaned up)).  This requires showing that the arbitrator "knew of a governing legal principle" that was "well-defined, explicit, and clearly applicable to the case" yet "refused to apply [the principle] or ignored it altogether."  *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 139 (2d Cir. 2007) (quoting *Wallace*, 378 F.3d at 189).

The Awards meet this high bar because the arbitrator wholly failed to interpret the BOL—he made "noises" of contract interpretation at best—and reached a result that so plainly conflicts with foundational principles of contract interpretation as to warrant vacatur.  The BOL gave Eletson Gas an option to buy out Levona's stake in it, provided certain strict conditions were met—including that the Purchase Option had to be exercised "by written notice," BOL § 2.1.  But, as the arbitrator correctly found, Eletson Gas never sent anything even purporting to be such a written notice to Levona.  *See* Final Award at 41 ("I agree with Levona that there does not seem to be a separate formal written notice provided to Levona by Eletson exercising the option.").  The Purchase Option thus was never exercised under the BOL's unambiguous terms.

In ruling otherwise, the arbitrator summarily asserted that the unambiguous "written notice" requirement could be ignored because "[a]t best, the absence of a written notice … [is a] formalit[y] that the parties failed to observe."  Final Award at 46.  The arbitrator was of course correct in finding that the written notice requirement was a "formalit[y] that the parties failed to observe."  But he was entirely incorrect—incomprehensibly so—in concluding that the failure to comply with a formal contractual requirement can be ignored precisely *because* the contractual requirement is formal.  That reasoning not only impermissibly disregarded the plain contractual text but it read the written notice requirement out of the contract entirely, contrary to fundamental tenets of contract law.  *See, e.g.*, 11 Williston on Contracts § 32:3 (4th ed.) ("The plain, common, or normal meaning of language will be given to the words of a contract."); *id.* § 32:5 ("To the

extent possible, and except to the extent that the parties manifest a contrary intent, … every word, phrase or term of a contract must be given effect.").[16]

Having manifestly disregarded the contract and applicable law by treating a "formality" as irrelevant, the arbitrator magnified his error by citing supposed circumstantial evidence that "the parties acknowledged that Eletson was exercising the option." *Id.* at 43. That is untenable. The entire purpose and effect of a provision requiring formal written notice is to provide clarity and certainty by precluding post-hoc arguments based on circumstantial evidence of what the parties supposedly thought and meant. *Cf. Stoppi v. Wilmington Tr. Co.*, 518 A.2d 82, 86 (Del. 1986) ("[W]ritten notice … is the better rule since" it "gives greater protection to the debtor, eliminates the problems of proof associated with oral notice, and establishes exactly what notice has been given in a particular instance.").

Finally, the arbitrator also manifestly disregarded the law by failing to make any effort to interpret the BOL under governing English law, which is particularly strict in mandating adherence to specified means of notice and specified conditions on the exercise of options. *See*, e.g., *Mannai Investment Co. Ltd. v. Eagle Star Life Assurance Co. Ltd.*, Judicial Committee of the House of Lords, [1997] A.C. 749 at 776 ("If the clause had said that the notice had to be on blue paper, it would be no good serving a notice on pink paper, however clear it might have been that the tenant

---

[16]   *See also Weinberg v. Waystar, Inc.*, 294 A.3d 1039, 1044 (Del. 2023) ("We will read the contract as a whole and enforce the plain meaning of clear and unambiguous language. In doing so, we endeavor to give each provision and term effect and not render any terms 'meaningless or illusory." (internal quotation marks omitted)); *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006) ("When the language of a ... contract is clear and unequivocal, a party will be bound by its plain meaning …." ) (internal quotation marks omitted)); *see also Utica Mut. Ins. Co. v. Fireman's Fund Ins. Co.*, 957 F.3d 337, 344 (2d Cir. 2020) ("[I]n construing the contract, we are to give full meaning and effect to the material provisions of the contract, and [a] reading of the contract should not render any portion meaningless." (applying New York law) (internal quotation marks omitted).

wanted to terminate the lease."); *United Scientific Holdings v Burnley B.C.,* Judicial Committee of the House of Lords, [1978] AC 904 at 929 (Because "the grant of an option … is an irrevocable offer," an option "must be accepted in exact compliance with its terms."); *Friends Life Ltd v. Siemens Hearing Instruments Ltd*, English Court of Appeal, [2014] EWCA Civ 382 at 66 (holding, after summarizing English law on the exercise of options, that to validly exercise an option, a party "must pay close attention to all the requirements of the clause, *including the formal requirements*, and follow them precisely") (emphasis added); *Rennie v. Westbury Homes (Holdings) Ltd*, English Court of Appeal, [2007] EWCA Civ 1401, at 14-15 (explaining that "[a] typical case of an 'indispensable condition'"—the failure of which "invalidates the notice"—"is where the contract states that the relevant notice shall be in writing and shall contain particular information").

For all these reasons, the arbitrator's deviation from the plain contractual language and fundamental canons of contract interpretation is so far outside the range of permissible decisions as to warrant vacatur.  *See, e.g.*, *Stolt-Nielsen*, 559 U.S. at 671 (vacatur warranted "when an arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice." (internal quotation marks omitted)).

## CONCLUSION

The Court should (i) dismiss or deny the Amended and Supplemental Petition to Recognize and Enforce the Arbitral Award and (ii) vacate the Corrected Interim Award and the Final Award.

DATED: October 24, 2023          QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  /s/ *Isaac Nesser*
_____
Mark McNeill
William B. Adams
Isaac Nesser
Odysseas Repousis
John Super

51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel: 212-849-7351
Fax: 212-849-7100
markmcneill@quinnemanuel.com
williamadams@quinnemanuel.com
isaacnesser@quinnemanuel.com
odysseasrepousis@quinnemanuel.com
johnsuper@quinnemanuel.com

*Attorneys for Respondent Levona Holdings, Ltd.*