UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

**ELETSON HOLDINGS, INC. and**
**ELETSON CORPORATION,**

|  |  |  |
|---|---|---|
| | Petitioners, | Civil No. 23-cv-7331 (LJL) |

v.

**LEVONA HOLDINGS LTD,**

Respondent.

<u>**AMENDED MEMORANDUM OF LAW IN SUPPORT OF ELETSON'S**</u>
<u>**PETITION TO CONFIRM ARBITRAL AWARD**</u>

**REED SMITH LLP**
599 Lexington Avenue
New York, New York 10022
Tel: (212) 521-5400
Fax: (212) 521-5450

## PRELIMINARY STATEMENT

Petitioners Eletson Holdings, Inc. ("Holdings") and Eletson Corporation ("Corp", and together, "Eletson") by and through their attorneys, Reed Smith LLP, respectfully submit this memorandum in support of their Petition to Confirm the Arbitral Award (the "Petition") that was issued on August 15, 2023 by Hon. Ariel Belen of JAMS.  A true and correct copy of the Final Award, dated September 29, 2023 (the "Final Award"), is attached as Exhibit E to declaration of Louis M. Solomon, Esq. ("Solomon Decl.").

After months of discovery, robust motion practice, and a nearly two-week arbitration hearing, to which the parties stipulated as to its fairness, Justice Belen made declarative findings in favor of Eletson and ordered Respondent Levona Holdings Ltd. ("Levona") to pay compensatory damages, punitive damages, and attorney's fees, costs, and interest.  As set forth below, the Final Award falls squarely within the ambit of the United Nations Convention on the Enforcement and Recognition of Foreign Arbitral Awards (the "New York Convention") and the Federal Arbitration Act ("FAA").  There is no basis for refusing or deferring recognition of the Final Award under the New York Convention.  Therefore, recognition of the Final Award is mandated under the FAA, 9 U.S.C. § 207, and Petitioners are entitled to the entry of judgment in their favor.

## BACKGROUND

### I.     The Parties

Petitioners Holdings and Corp are both corporations formed under the laws of Liberia. Holdings holds the common shares in Eletson Gas LLC (the "Company"), a limited liability company formed under the laws of the Republic of the Marshall Islands and a liquefied petroleum gas shipping venture.  Corp, among other things, is responsible for management

services for the vessels owned directly or indirectly by the Company.  Holdings is the parent company of Corp.  (Solomon Decl., Ex. E at 5).

Respondent Levona is a special purpose entity formed on October 20, 2021 and is incorporated under the laws of the British Virgin Islands.  Levona is 60% owned by Nomis Bay Ltd. and 40% owned by BPY Limited — two hedge funds controlled by an affiliated entity, Murchinson Ltd. ("Murchinson"), an alternative management firm that manages and wholly controls the two funds.  (*See* Solomon Decl., Ex. E at 7).

## II.    The LLC Agreement and Arbitration Provision

On August 16, 2019, Holdings, Corp, and Levona's predecessors in interest, BTO Eletson Holdings L.P., Blackstone Family Tactical Opportunities Investment Partnership (Cayman) ECS L.P., and Blackstone Family Tactical Opportunities Investment Partnership (Cayman) SMD L.P., (collectively, "Blackstone") entered into the Third Amended and Restated LLC Agreement ("LLC Agreement"), which regulates the whole relationship among the holders of membership interests in the Company, including the resolution of disputes.  (Solomon Decl., Ex. E. at 6).

Specifically, section 12.14 of the LLC Agreement is entitled "Disputes", and subsection 12.14(a) provides:

> Any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof (including the determination of the scope or applicability of this agreement to arbitrate) shall be determined by arbitration in New York County in the State of New York or any other mutually agreeable location, before a single arbitrator. The arbitrator shall be selected by agreement of the parties. If the parties are unable to agree on an arbitrator within 15 days after the demand for arbitration is made, JAMS shall designate the arbitrator. The arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures. The Federal Arbitration Act shall govern the interpretation and enforcement of such arbitration proceeding. The arbitrator shall apply the Law of the

3

State of Delaware and the Republic of the Marshall Islands, as the case may be, in accordance with Section 12.13.

(Solomon Decl., Ex. E at 12).  Per Section 12.14 of the LLC Agreement, the arbitrator

designated by the parties possesses plenary authority concerning all disputes between members

of the Company concerning matters that relate to the LLC Agreement.  (*Id*.).

In early 2021, Blackstone sought to sell its interest in the Company, and eventually

reached an agreement with Murchinson whereby Murchinson would purchase Blackstone's

interest in the Company.  Murchinson created Levona as a special purpose entity to hold the

shares but at all relevant times wholly controlled Levona.  On November 2, 2021, following an

assignment from Blackstone, Levona became a party to the LLC Agreement and was bound by

the dispute provision.  (Solomon Decl., Ex. E at 6-7).

## III.    Eletson's Claims Against Levona

Shortly after acquiring the Blackstone interests, Levona sought to sell its stake in the

Company.  Eletson and Levona then entered into discussions to finalize the terms of a transaction

wherein Eletson acquired Levona's membership interests in the Company.  The details of that

transaction were set forth in an agreement, the Binding Offer Letter, dated February 22, 2022

(the "BOL").  On March 11, 2022, the parties entered into a series of agreements that effectuated

the buyout of Levona's interests in the Company (the "Transaction Documents").  (Solomon

Decl., Ex. E at 8-9).  However, during the course of the parties' dealings, Levona, fraudulently

and in bad faith, including through bribery of Corp's Chief Financial Officer (*id.* at 50-51, 68-69,

73), deprived Eletson of the benefits of its bargain and unjustly enriched itself at the expense of

Eletson and the Company.  (*See id.* at 73).

Among other things, Levona failed to acknowledge Eletson's compliance with the terms

of the Transaction Documents, asserted that they had not transferred the preferred interests in the

4

Company, and continued to act on behalf of the Company in bad faith, including by entering into a Letter of Intent with the Company's competitor, Unigas, in order to sell substantially all of the Company's vessels.  (Solomon Decl., Ex. E at 46-47).  Levona's conduct damaged Eletson in ways subsequently proved by Eletson in the arbitration.

## IV.    The Arbitration

On July 29, 2022, under the broad and comprehensive arbitration provision of the LLC Agreement, Eletson filed its initial Statement of Claims, asserting a number of claims directly arising out of and relating to Levona's material breaches of the LLC Agreement.  (Solomon Decl., Ex. E at 11).

Pursuant to the parties' agreement, JAMS appointed Justice Belen to act as the sole arbitrator of the dispute.  (*See* Ex. E)  Justice Belen had served a total of 17 years as an Associate Justice of the New York Appellate Division, Second Department, Administrative Judge of the Supreme Court of the State of New York, Kings County, and Justice of the Supreme Court for Kings County, including in the Commercial Division.

On August 19, 2022, Levona filed its Response to Statement of Claims and Statement of Counterclaims.  On September 12, 2022, Levona then moved to strike Eletson's claims, asserting, among other things, that the claims were not within the jurisdiction of JAMS.  Levona conceded, however, that JAMS had jurisdiction to decide issues raised under the LLC Agreement, including, for example, Levona's counterclaims related to Levona's alleged improper notices purporting to hold board meetings, Eletson's alleged refusal to cooperate in due diligence for the Unigas transaction, and Eletson's alleged refusal to cooperate with other rights Levona purported it had.  (Solomon Decl., Ex. E at 12).

On September 30, 2022, Justice Belen issued an Order denying Levona's motion, holding that "the arbitration provision in the LLC Agreement is broad, encompasses the claims asserted, and the parties agree that this arbitration provision was not replaced or superseded by the arbitration [provision] in the Transaction Documents." (Solomon Decl., Ex. E at 12-13). Justice Belen also found that Levona had waived its jurisdictional challenges when it availed itself of the JAMS forum by filing counterclaims. (*Id.*)

On Eletson's application, Justice Belen also issued a temporary restraining order, providing that "during the pendency of this Temporary Restraining Order the parties hereto shall maintain the status quo and shall not, among other things: (1) engage in the transfer or sale of any assets of Eletson Gas LLC (the "Company") absent the joint written consent of the parties, which shall be sent to the undersigned Arbitrator; or (2) notice or conduct of any board meetings for the purposes of proposing or considering transfer or sale of any assets of the Company." (Solomon Decl., Ex. E at 13-14). Justice Belen further clarified the parameters of the "status quo" on November 7, 2022, holding that "[a]ny attempt to sell or otherwise transfer the Symi and Telendos vessels [two of the assets in dispute] will be deemed to be in violation of the TRO." (*Id.* at 13).

On January 12, 2023, Justice Belen issued a decision on the parties' cross-motions for preliminary injunctions and entered a Preliminary Injunction extending the temporary restraining order's prohibition on actions upsetting the status quo until further notice. Specifically, the preliminary injunction stated the following:

> The parties hereto shall maintain the status quo and shall not, among other things: (a) engage in the transfer or sale of, or attempt to sell or otherwise transfer, any assets of Eletson Gas LLC (the "Company"), or assets in dispute in this arbitration, absent the joint written consent of the parties, which shall be sent to the undersigned Arbitrator; or (2)

notice or conduct of any board meetings for the purposes of proposing or considering the transfer or sale of any assets of the Company or other assets in dispute in this arbitration.

(Solomon Decl., Ex. E at 14).

The parties engaged in extensive discovery, including robust motion practice.  During this time, evidence came to light that Murchinson had bribed Eletson Corporation's CFO, Peter Kanelos, and caused him to disclose sensitive, non-public and confidential Company information before Murchinson's purchase of the preferred interests in the Company.  (Ex. E at 50-51, 68-69, 73). As a result, Eletson amended its Statement of Claims to assert claims based on this evidence.  Eletson also claimed that Murchinson, in breach of a Non-Disclosure Agreement with Blackstone, communicated directly with Company financiers and lenders, and engaged in industrial sabotage that led to the arrest of Company's vessels prior to and immediately after Levona's acquisition of the preferred interests in the Company.  (*See* Solomon Decl., Ex. E at 22-25).

A nearly two-week arbitration hearing was ultimately scheduled to begin on May 15, 2023.  Prior to the hearing, Levona stipulated that it would not object to or challenge the arbitration "on fairness grounds or on the basis that it ha[d] not been granted enough time to prepare for or present its case."  (Solomon Decl., Ex. E at 17).

The Arbitration commenced on May 15, 2023 and lasted 8 days, with closing arguments on June 13, 2023.  During that time, Justice Belen heard testimony from representatives of both Eletson and Levona, as well as expert witnesses and others.  (Solomon Decl., Ex. E at 4).  At the conclusion of the Arbitration, the parties consented to a 15-day extension of the 30-day deadline under the JAMS Rules to issue a final award.  *See* JAMS Rule 24(a).  On June 4, 2023, Justice Belen issued an email order contemplating that the award that would be issued at the conclusion of 45 days would be final: "***in order to ensure that the award addresses each item of relief***

***requested by each party***, I request that each party provide a proposed order in their post-hearing submissions which lists the specific rulings, orders, or declarations that they are seeking in the award." (Solomon Decl., Ex. C) (emphasis added).

On July 28, 2022, Justice Belen issued an "interim" ruling and award ("Interim Award") in Eletson's favor, but specified the, "Interim Award resolves all issues submitted for decision in this arbitration, except as expressly reserved relating to the amount of Claimants' attorney's fees, costs, expenses and pre-judgment interest." (Solomon Decl., Ex. D). On August 11, 2023, Levona sought to argue that the Interim Award, because it was not styled as a "final award," was not subject to JAMS Rule 24's provisions regarding finality and the timelines for requesting corrections. Justice Belen soundly rejected this argument on August 14, 2023 holding, "there is absolutely no merit to Respondent's argument that the Interim Award was not a final determination with respect to all the issues and arguments raised in this arbitration relating to the merits of the claims and counterclaims." (Solomon Decl. Ex. D).

Nonetheless, Justice Belen granted Levona an extension under the JAMS rules to identify, "any computational, typographical or other similar error in the Interim Award." (Solomon Decl. Ex. D). Levona submitted its request for corrections on August 15, 2023 and Eletson responded the same day. On August 15, 2023 Justice Belen issued a Corrected Interim Award pursuant to JAMS Rule 24(k). *See* JAMS Rule 24(k) (providing that an award is considered "final" "as of the effective date of service of a corrected Award.").

On September 29, 2023, Justice Belen issued a Final Award, which "adopts, incorporates, and republishes the Corrected Interim Award in its entirety amending the Corrected Interim Award only as necessary to make certain ministerial and stylistic edits, and to integrate the

undersigned arbitrator's subsequent determinations regarding the Claimants' request for

attorneys' fees, costs, expenses and interest."  (Solomon Decl., Ex. E).

Among other things, Justice Belen made the following findings in the Final Award:

1.     Eletson effectively exercised the buyout option granted in the Binding Offer Letter dated February 22, 2022 on and as of March 11, 2022, and any alleged precondition to the exercise of that option was either satisfied or waived.

2.     As of March 11, 2022, Respondent Levona had no membership interest in the Company, Eletson Gas.

3.     The Company exercised its rights under the BOL to nominate three entities—Fentalon, Apargo, and Desimusco, (the Preferred Nominees)—affiliated with the principals of Claimants, as the parties to receive the preferred interests in the Company, previously held by Levona.

4.     The preferred interests in the Company were transferred to the Preferred Nominees, effective as of March 11, 2022, and the Preferred Nominees are permitted transferees under the LLC Agreement. They have stipulated to be bound by this Award and any Judgment entered hereon.

5.     Eletson Holdings and Eletson Corporation never held any of the preferred interests in the Company.

6.     The shares of the subsidiaries which control the Symi and Telendos were transferred to Levona as of March 11, 2022 as the Purchase Option Consideration in connection with the BOL. Since March 11, 2022, Levona retains all rights associated with ownership of the subsidiaries of those vessels.

7.     The Status Quo Injunction shall stay in effect until the later of the final court judgment being entered on any Award or any further order of this Arbitrator.

8.     Levona, Murchinson, and Pach Shemen, are each alter egos of the other concerning every fact proven in this matter and every item of relief awarded herein. Any references to Levona herein are therefore to all the alter-egos and for the avoidance of doubt, any judgments against Levona are also against each alter-ego.

9.     Levona breached its LLCA and related obligations, including without limitation common law and contractual duties to Claimants and the Company, in at least the following ways:

i.   Bribing an Eletson Corporation employee, and Company representative, Peter Kanelos, and causing him to disclose the Company's confidential information;

ii.   Violating confidentiality obligations by disclosing the Company's confidential information to third parties, failing to take steps to recover such information, and then deceiving Claimants and the Company concerning said breaches after it became a member of the Company;

iii.   actively engaging in unlawful behavior by wrongfully influencing Company financiers to turn against the Company and Claimants, including without limitation by causing the arrest of five of the Company's vessels and not disclosing this misconduct to Eletson or the Company after it became a member of the Company;

iv.   Failing to acknowledge that Eletson fully complied with the terms of the BOL Purchase Option, and failing to act in good faith by remaining silent about its purported belief that the Company would or might fail to meet its BOL terms;

v.   Improperly purporting to act on behalf of the Company in its business dealings with third parties, including by attempting to sell the Company's assets to its primary competitor, Unigas, and concealing such misconduct from Claimants;

vi.   Improperly threatening Eletson and affiliated officers and directors, including by pursuing litigation against them;

vii.   Improperly purporting to seize control of the Company's board of directors post-March 11, 2022;

viii.   Improperly purporting to direct the day-to-day operations of the Company post-March 11, 2022;

ix.   Improperly purporting to assert control over the assets of the Company post March 11, 2022;

x.   Improperly purporting to call and hold meetings of the Board of the Company without following proper procedures and for unlawful and improper purposes of approving unlawful and improper conduct post March 11, 2022;

xi.   Breaching its obligations under the LLCA, including without limitation by purporting to terminate management agreements that Eletson Corporation has with

10

the Company's subsidiaries, purporting to change
management of the Company's subsidiaries, precluding
Eletson Corporation from communicating with the
Company's financiers, all of which Levona knew was
unlawful and in breach of the LLCA;

(Ex. E at 95-98.)  Justice Belen also found that Respondent had violated the Status Quo

Injunction by:

>    i.    Wrongfully declaring the Company in default of the
>    loan from Levona and wrongfully purporting to accelerate
>    payment of the principal;
>
>    ii.    Trying to sell vessels, including the Symi and
>    Telendos, while the Status Quo Injunction was in effect;
>    and
>
>    iii.    Directing and/or causing Levona's affiliates to
>    purchase a controlling position in securities of Eletson
>    Holdings in January 2023 for the purpose of wrongfully
>    commencing and then actually causing the commencement
>    of litigation against Eletson Holdings and the filing an
>    involuntary bankruptcy petition against Eletson Holdings.

(Solomon Decl., Ex. E at 98-99).

Justice Belen also awarded Eletson damages as follows:

### B. Compensatory Damages

Levona, Murchinson and Pach Shemen, as alter-egos, jointly
and severally, shall pay $43,455,122.21 in compensatory damages
as follows:

1. $21,777,378.50, to be paid to Eletson Gas, as compensatory
damages for the improper arrests of Eletson Gas vessels, which
includes prejudgment interest at a rate of 10% from the date of the
arrests (or approximate date the expenses were incurred) through
January 2023;

2. $19,677,743.71, to be paid to the Preferred Nominees,
constituting the lost profits (EBITDA) due to Levona's unjust
enrichment arising from available use of the Symi and Telendos
since March 11, 2022, without the reciprocal transfer of the
preferred interests, which includes pre-judgment interest through
January 2023;

11

3. $2,000,000 to be paid to Eletson Gas, as compensatory damages arising out of Levona's other breaches of contract, with prejudgment interest at 10% from the date of this Corrected Interim Award until the earlier of the payment of either this award or confirmation in a court of competent jurisdiction of this award.

4. The entities referred to in B.1 and B.2 respectively shall also be awarded prejudgment interest on the principal amount of the compensatory damages in paragraph B.1. above, (damages for improper arrests), and paragraph B.2. above (damages for lost profits due to Levona's unjust enrichment) at a rate of 10% running from January 30, 2023 through the earlier of either the payment of the award or confirmation of the award in a court of competent jurisdiction.

### C. Punitive Damages

Levona, Murchinson and Pach Shemen, as alter-egos, jointly and severally, shall pay punitive damages in the total amount of $43,455,122.21, as follows:

1. $23,777,378.50, to be paid to Eletson Gas; and

2. $19,677,743.71 to be paid to the Preferred Nominees.

### D. Attorney's Fees

Levona, Murchinson and Pach Shemen, as alter-egos, jointly and severally, shall pay:

1.   Attorney's fees, costs, and expenses to Claimants incurred to date in connection with this arbitration, the Bondholder Litigation, and the Bankruptcy pursuant to the LLCA Section 12.14(d) and JAMS Rule 24(g), as follows:

i. Attorneys' fees, costs, and expenses due in connection with this arbitration in the amount of $9,590,222.99.

ii. An additional amount of $22,366.10 representing additional JAMS costs incurred in this arbitration since the filing of Eletson's Opening Affirmation, and which Eletson has paid both its share and covered Respondent's share.

iii. Attorneys' fees, costs and expenses due in connection with the Bankruptcy and Bondholder Litigation in the amount of $3,007,266.20;

      2.   Additional pre-judgment interest on the compensatory damages as awarded in the Corrected Interim Award through August 31, 2023, in the amount of $2,496,081.88, to be paid as follows:

            i. To Eletson Gas: $1,319,163.14.

            ii. To the Preferred Nominees: $1,176,918.74

      3.   Additional prejudgment interest on compensatory damage running from August 31, 2023 until the earlier of the date of payment of the amount due or the date of confirmation of this Final Award by a court of competent jurisdiction calculated by using the formula set froth above in this Final Award; and

      4.   Additional prejudgment interest on any fees, costs and expenses that have been awarded in this Final Award running from the date of this Final Award until the earlier of the date of payment of the amounts due or the date of confirmation of this Final Award by a court of competent jurisdiction calculated by using the formula set forth above in this Final Award.

(Solomon Decl., Ex. E at 99-101).

## ARGUMENT

## I.    The Court Has Subject Matter Jurisdiction under the New York Convention and the Federal Arbitration Act

This Court has original jurisdiction over this action in that this is a civil action seeking recognition of an award rendered in an arbitration falling under the New York Convention. *See* New York Convention, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3; 9 U.S.C. §§ 201, 203. The New York Convention is implemented by the FAA, which provides federal courts with subject matter jurisdiction or an "action or proceeding falling under the Convention." 9 U.S.C. § 203. The New York Convention applies to arbitral awards relating to commercial matters where either (1) at least one party is not a citizen of the United States or (2) all parties are United States citizens but there is some reasonable relation with one or more foreign states. 9 U.S.C. § 202; *see also Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us,* Inc., 126 F.3d 15, 19

(2d Cir. 1997) (arbitration awards are "subject to the Convention" when they involve "parties domiciled or having their principal place of business outside the enforcing jurisdiction.").  None of the parties is domiciled or has its principal place of business in the United States and the Final Award concerns a commercial matter.  Thus, this Court has subject matter jurisdiction.

## II.    The Court Has Personal Jurisdiction Over the Parties

This Court has personal jurisdiction over the parties to confirm the award because the arbitration was held in New York as agreed to by the parties in the LLC Agreement.  The Second Circuit has long held that agreements to arbitrate in New York confer personal jurisdiction by consent.  *See, e.g., Merrill Lynch, Pierce, Fenner & Smith Inc. v. Lecopulos*, 553 F.2d 842, 844-45 (2d Cir. 1977); *Victory Transp. Inc. v. Comisaria Gen. de Abastecimientos y Transportes*, 336 F.2d 354, 363 (2d Cir. 1964), *cert. denied*, 381 U.S. 934 (1965).  Where "a party signs an arbitration agreement designating New York City as the site for arbitration proceedings, and then actively participates in those proceedings, the party has in effect consented to this Court's jurisdiction over a subsequent petition to confirm."  *Compania Chilena de Navegacion lnteroceanica, S.A. v. Norton, Lilly & Co.,* 652 F. Supp. 1512, 1514 (S.D.N.Y. 1987).

Moreover, the parties have specifically agreed to personal jurisdiction with respect to confirmation of any award.  Indeed, section 12.14(f) of the LLC Agreement specifically provides,

> Each of the parties irrevocably agrees that (i) any dispute, claim or controversy arising out of or relating to this Agreement that may not be arbitrated pursuant to the laws of the Republic of the Marshall Islands or (ii) any legal action or proceeding to compel arbitration or enforce any arbitral award granted pursuant to this Section 12.14 may be brought in the State or Federal courts located in New York County in the State of New York. Each of the parties hereby irrevocably (A) accepts the jurisdiction of the foregoing courts for the purposes set forth in the foregoing sentence . . . .

(Solomon Decl., Ex. B, § 12.14(f)). Thus, the Court has personal jurisdiction over the parties to confirm the award.

## III.     Venue is Proper

Venue is proper in this judicial district pursuant to 9 U.S.C. § 204 because this Petition seeks confirmation of an arbitration award made within this District.

## IV.     The Award Must Be Confirmed Under the FAA and the New York Convention

The New York Convention and the FAA provide that United States courts "shall recognize arbitral awards [under the New York Convention] as binding" according to the rules of procedure of the United States.  New York Convention, art. III; 9 U.S.C. § 201; *see also* 9 U.S.C. § 207.  Once a petitioner demonstrates that a final arbitral award exists, it is entitled to judicial deference, and confirmation of the award is mandatory and is a summary proceeding.  *See Ottley v. Schwartzberg*, 819 F.2d 373, 377 (2d Cir. 1987) ("[c]onfirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.") (internal quotations and citations omitted).

(a)     *The Award is a Final Award*

The Final Award is a final award and is ripe for confirmation.  First, the Corrected Interim Award finally and conclusively disposed of the substantive claims submitted by the parties, and merely bifurcates the issue of the prevailing party's attorneys' fees and costs for later resolution, as the parties to the arbitration requested.  *See Adult Use Holdings Inc. v. Faze Clan Inc.*, 631 F. Supp. 3d 174, 182 (S.D.N.Y. 2022) ("[a]n award that finally and conclusively disposes of a 'separate independent claim' may be confirmed even if it does not dispose of all the claims that were submitted to arbitration.") (citing *Kerr-McGee Ref. Corp. v. M/T Triumph*, 924 F.2d 467, 471 (2d Cir. 1991)); *Ecopetrol S.A. v. Offshore Expl. & Prod. LLC*, 46 F. Supp. 3d

327, 337 (S.D.N.Y. 2014) (granting a petition to confirm interim awards stating that "the Interim

Arbitral Awards are 'specific and final and [do] not need to be followed by a concluding

award.'").  The Award itself made this clear:

> This Corrected Interim Award resolves **all issues** submitted for
> decision in this arbitration, except as expressly reserved relating to
> the amount of Claimants' attorney's fees, costs, expenses and pre-
> judgment interest. The undersigned **has considered and resolved
> all the issues and arguments raised** relating to the merits of the
> claims and counterclaims, including those not explicitly addressed
> herein. Any argument not addressed in this Corrected Interim
> Award was found to be unavailing, without merit, academic, or
> unnecessary to reach.

(Solomon Decl., Ex. A at 74) (emphasis added).

The Corrected Interim Award was also considered final under the JAMS Rules, which

provide that a party must request corrections to a "Partial Final Award," or "Final Award" within

seven days and that an award is "final, for purposes of  . . . a judicial proceeding to enforce"

fourteen days after service if no request for a correction is made, or upon the issuance of a

corrected award.  JAMS Rule 24(j)-(k).

Justice Belen issued the Interim Award on July 28, 2023, triggering JAMS Rule 24(j)'s

seven-day deadline for a party to request corrections.  Levona failed to request corrections within

the seven-day window—indeed, even within the fourteen-day window—but were provided

additional time by Justice Belen.  After consideration of Eletson's responses to the proposed

corrections, Justice Belen issued the corrected Award on August 15, 2023.  This Award is

considered final under the JAMS Rules.

To the extent that there is any ambiguity that the Corrected Interim Award is final (there

is not), Justice Belen resolved this doubt in his August 14, 2023 ruling, stating that there was no

merit to Levona's argument that "the Interim Award was not a final determination with respect

to all the issues and arguments raised in this arbitration relating to the merits of the claims and counterclaims," given that "[t]he Interim Award very clearly stated this to be the case[.]" (Solomon Decl., Ex. D).  The Final Award fully resolves all issues and claims pending in the arbitration, explains and expands the basis for Justice Belen's findings, and "adopts, incorporates, and republishes the Corrected Interim Award in its entirety amending the Corrected Interim Award only as necessary to make certain ministerial and stylistic edits, and to integrate the undersigned arbitrator's subsequent determinations regarding the Claimants' request for attorneys' fees, costs, expenses and interest."  (Solomon Decl., Ex. E).  Thus, the Final Award is final and subject to confirmation.  *See* JAMS Rule 25(k) ("The Award is considered final . . . fourteen (14) calendar days after service if no request for a correction is made").

    (b)     *The Award Is Entitled to Judicial Deference*

The role of the court in an action for recognition of an arbitral award is extremely limited; it is not an occasion for *de novo* review. *Scandinavian Reins. Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012).  The standard of review is so narrow that courts "are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987).  "An arbitrator's decision is entitled to substantial deference, and the arbitrator need only explicate his reasoning under the contract 'in terms that offer even a barely colorable justification for the outcome reached' in order to withstand judicial scrutiny." *In re Marine Pollution Serv., Inc.*, 857 F.2d 91, 94 (2d Cir. 1988).

Given this framework, Justice Belen's findings and judgments must be afforded great deference.  Justice Belen heard and carefully considered Levona's arguments, and issued an 80-page, well-reasoned decision, supported by extensive evidence in the record.  Levona had a full

17

and fair opportunity to present its case and, in fact, stipulated to the fairness of the proceeding prior to the hearing.  (Solomon Decl., Ex. E at 16-17).

       (c)    *No Grounds Exist to Refuse or Defer Recognition of the Award.*

Finally, Levona cannot carry its burden to establish that any grounds to vacate or otherwise refuse or defer recognition exist.  *See Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.,* 403 F.3d 85, 90 (2d Cir. 2005) ("The party opposing enforcement of an arbitral award has the burden to prove that one of the seven defenses under the New York Convention applies.").  Under the New York Convention, confirmation of an arbitration award is mandatory unless one of the specified grounds for the refusal or deferral applies: (1) incapacity of a party; (2) lack of notice; (3) resolution of a non-arbitrable dispute; (4) improper composition of the arbitration panel; (5) an award that is not binding; (6) subject matter of the arbitration that is not capable of settlement by arbitration under the law of the country where enforcement of the award is sought; or (7) a violation of public policy arising from recognition of the award. *See* New York Convention, art. V, 21 U.S.T. 2517; *Yusuf Ahmed Alghanim & Sons,* 126 F.3d at 19.  None of the grounds for vacating an award under the Convention is present here.

Neither can Levona show that any of the grounds for vacating an arbitral award under the FAA apply.  Where, "'the arbitration took place in the United States,' the award also is 'subject to the FAA provisions governing domestic arbitration awards.'" *Temsa Ulasim Araclari Sanayi Ve Ticaret A.S. v. CH Bus Sales, LLC*, 2022 U.S. Dist. LEXIS 158396, at *9 (S.D.N.Y. Sep. 1, 2022)(citations omitted).  Under the statutory requirements of the FAA, an arbitration award may only be vacated if it is the product of: (1) fraud or undue means; (2) evident partiality or corruption in the arbitrators; (3) arbitrator misconduct; (4) the arbitrators exceeding their powers;

or (5) evident material miscalculation or mistake.  *See* 9 U.S.C. §§ 10(a)-11(a).  Since none of the grounds for vacating an award under the FAA are present here, the Final Award must be confirmed.

## **CONCLUSION**

For the reasons set forth above, Eletson respectfully requests that this Court enter judgment in its favor, confirming the Final Award, and granting such other relief as the Court may deem just and proper, including relief necessary to prevent Levona from avoiding its obligation to satisfy judgment.

 Dated: October 31, 2023

<div style="margin-left:40%">

Respectfully submitted,

**REED SMITH LLP**
By: /s/ *Louis M. Solomon*
   Louis M. Solomon
   Colin A. Underwood
599 Lexington Avenue
New York, New York 10022
Tel: (212) 521-5400
Fax: (212) 521-5450
lsolomon@reedsmith.com
cunderwood@reedsmith.com

*Counsel for Petitioners*

</div>