

Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036-6797
+1 212 698 3500  Main
+1 212 698 3599  Fax
www.dechert.com

**DAVID A. HERMAN**

David.Herman@dechert.com
+1 212 649 8728  Direct
+1 212 698 3599  Fax

December 28, 2023

**VIA ECF**

Honorable Lewis J. Liman
U.S. District Court, Southern District of New York
500 Pearl Street, Room 1620
New York, New York 10007

Re: *Eletson Holdings, Inc. v. Levona Holdings Ltd.,* No. 23-cv-07331 (LJL)

Dear Judge Liman:

We represent the Official Committee of Unsecured Creditors of Eletson Holdings, Inc. ("Holdings"), and its affiliated debtors (the "Committee"). As the Court is aware, Holdings is a debtor in chapter 11 proceedings before the United States Bankruptcy Court for the Southern District of New York. *See In re Eletson Holdings Inc.*, Case No. 23-bk-10322 (JPM) (Bankr. S.D.N.Y.). The Committee is the statutory fiduciary for Holdings' unsecured creditors.[1]

We write to bring to the Court's attention case law bearing on the proper resolution of these proceedings, which is not cited in the parties' submissions. Specifically, it has recently come to the Committee's attention that Holdings contends that this Court is constrained either to confirm or to vacate the arbitration award in full. *See* Ex. A (Dec. 4 Hr'g Tr.) at 81:11-16. Indeed, both the Petitioners and the Respondent contend in their briefing that the award should be confirmed in full or vacated in full. As set forth below, however, the Second Circuit has made clear that this Court's review is not all-or-nothing—rather, the Court may confirm or vacate the arbitration award "either in whole or in part." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006); *see also Eletson Holdings, Inc. v. Levona Holdings Ltd.*, No. 23-cv-7331, 2023 WL 5956144, at *5 (S.D.N.Y. Sept. 13, 2023) (explaining that proceedings such as this one are "the means Congress has provided for an award to be made into a judgment, vacated, *or modified*") (emphasis added).

This is important for the Court's consideration because certain portions of the award should be confirmed while others should be vacated. Although much of the award is entitled to deference

---

[1] The Committee was appointed on October 20, 2023, by the Office of the United States Trustee, a division of the U.S. Department of Justice. *See* Bankr. Dkt. 233; 11 USC § 1102(a)(1). Its members do not include any parties to these proceedings or affiliates of such parties. The Committee has the authority to "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor," 11 U.S.C. § 1103(c)(2), and to "raise and . . . appear and be heard on any issue" in Holdings' chapter 11 case, *id.* § 1109(b).



December 28, 2023
Page 2

under the applicable standard of review, the Court should vacate the portions of the award holding that the preferred shares in Eletson Gas LLC (the "Preferred Shares") were transferred to Cypriot "nominees" (the "Nominees") affiliated with the Petitioners' insiders and that damages against respondent likewise should be awarded to non-parties rather than to the Petitioners.  Under settled law, the arbitrator had no authority to award damages or the preferred shares to non-parties.  *See Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 330 F.3d 843, 847 (6th Cir. 2003) (holding that "arbitration award exceeds the panel's authority" by awarding damages to "non-parties to the contract and to the arbitration"); *see also Orion Shipping & Trading Co. v. E. States Petroleum Corp.*, 312 F.2d 299, 300 (2d Cir. 1963).

As the arbitrator found, Petitioners raised the contention that the Preferred Shares had been transferred to the Nominees for the first time in May 2023, following the Bankruptcy Court's entry of an April 17, 2023 stipulation and order lifting the automatic stay imposed by the Bankruptcy Code to permit the arbitration to continue.  *See* Bankr. Dkt. 48.  At the time the stay was lifted, it appeared that an arbitration ruling in favor of Holdings would benefit Holdings and its creditors by affirming that Eletson Gas had repurchased the Preferred Shares from respondent Levona Holdings Ltd. ("Levona"), thus rendering Holdings the sole equity holder of Eletson Gas.  If Holdings is the sole unit holder of Eletson Gas, all the value of Eletson Gas would flow to Holdings, as the 100% holder of its common shares, for the benefits of its creditors.[2]  That appears to have been the position Holdings itself took in the arbitration until that point.[3]

Holdings did not disclose to its creditors or to the Bankruptcy Court that it had brought a new claim seeking a finding that the Preferred Shares were transferred to the Cypriot entities.[4]  The arbitrator accepted that contention, however, and Holdings now takes the position in this Court that substantially all the value from the arbitration award flows directly or indirectly to the Cypriot Nominees, rather than to Holdings.  Indeed, Holdings has conceded that it does not stand to receive any monetary value from a successful result in these proceedings.  *See* Bankr. Dkt. 286 at ¶ 41 ("The fact that Holdings received no direct monetary award under the Final Award does not render

---

[2] Holdings is deeply insolvent: it owes creditors more than $450 million and reports no assets except litigation claims and equity interests in its subsidiaries, the value of which it reports as "0" or "unknown."  *See* Bankr. Dkt. Nos. 216 at 10-11, 335-1 at 337.  Therefore, all the value of Holdings' assets must be distributed to its creditors.  *See* 11 U.S.C. § 1129(b)(2); *In re DBSD N. Am., Inc.*, 634 F.3d 79, 94 (2d Cir. 2011) (explaining that shareholders are not entitled to distributions from a bankruptcy estate before creditors are paid in full).

[3] *See, e.g.*, Dist. Ct. Dkt. 68 Ex. 20 ¶ 9 ("As of March 11, 2022, Eletson Holdings became the sole unit holder of the Company by reason of the transactions that Respondent Levona Holdings Ltd ("Levona") appears to be challenging and that I am advised are part of the issues before this Tribunal to resolve.")

[4] In May 2023, Levona brought to the attention of the Bankruptcy Court that Petitioners had raised a new allegation that the Preferred Shares were transferred.  Holdings did not disclose at that time, however, that it had brought a new claim and had sought a ruling from the arbitrator on this issue.



the Final Award valueless to Holdings."). Instead, it contends that all the monetary value will flow to the Cypriot entities affiliated with its owners.

The parties to be harmed by Holdings' position are the creditors of Holdings who were not parties to the arbitration and are not represented in these District Court proceedings. Therefore, while the Committee largely agrees with the Petitioners that the arbitration award is entitled to deference and should be confirmed, the ruling that the Preferred Shares were transferred to the Cypriot Nominees should not be. With respect to that issue, the arbitrator exceeded his authority by awarding damages and the Preferred Shares to nonparties to the arbitration—the Nominees and Eletson Gas—rather than to the Petitioners themselves.

This Court should not endorse this transfer of value to Holdings' insiders, and the law does not require the Court to do so. Although not addressed in the parties' submissions, the Second Circuit has made clear that courts reviewing arbitration awards "can confirm and/or vacate the award, *either in whole or in part*." *D.H. Blair*, 462 F.3d at 104 (emphasis added); *see also Three Bros. Trading, LLC v. Generex Biotechnology Corp.*, No. 18 Civ. 11585, 2020 WL 1974243, at *6 (S.D.N.Y. Apr. 24, 2020) (affirming arbitration award in part and vacating and remanding in part). This Court therefore should vacate that portion of the award finding that the Preferred Shares were transferred to the Nominees and holding that the Nominees and Eletson Gas, rather than the Petitioners, were entitled to damages.

The Committee thanks the Court for its consideration of this letter. We are available at the Court's convenience should the Court have any questions.

Respectfully submitted,

David A. Herman

# Exhibit A

```
                                                                    1

 1

 2   UNITED STATES BANKRUPTCY COURT

 3   SOUTHERN DISTRICT OF NEW YORK

 4   - - - - - - - - - - - - - - - - - - - - -x

 5

 6   In the Matter of:

 7   ELETSON HOLDINGS INC., et al.,           Main Case No.

 8          Debtors.                          23-10322-jpm

 9

10   - - - - - - - - - - - - - - - - - - - - -x

11

12                United States Bankruptcy Court

13                One Bowling Green

14                New York, New York

15

16                December 4, 2023

17                10:09 AM

18

19

20

21   B E F O R E:

22   HON. JOHN P. MASTANDO, III

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO:   MARIA
```

They not only raised it three times in the papers that are before Your Honor, when they first tried to get it assigned, and then they tried to get it reassigned, and then they moved for reconsideration, all of the points that he is now making are made there. And what Judge Liman said is I do have discretion to ask Judge Mastando to do this, and I decline to do that. I am the Article III court. I am -- under the treaty, the New York Convention, I have the authority and the responsibility to look at the application to confirm, and their application, by the way, to vacate.

And so not only did he reject it three times, but in the application to vacate, they've made the same arguments again. And I don't mean, Your Honor, just that the preferred shouldn't have been transferred. I don't mean that. I mean the very arguments that they're making to Your Honor, that somehow the stay was violated before Your Honor, and the bankruptcy court has exclusive jurisdiction, they're making all of those arguments before Judge Liman. And the idea at this point to --

THE COURT: That's being heard on January 2nd, or among the things being heard on the 2nd?

MR. SOLOMON: Absolutely, Your Honor. Absolutely. And that's on January 2nd. But he's already rejected it, for the first three times, when Murchinson's alter ego made those arguments. But now Dechert, who's apparently clean of all of

1  this, waits a couple of days after the last time Judge Liman
2  rejected their third application, while he has the vacatur
3  motion in front of him, and now they're trying to get Your
4  Honor to do what Judge Liman has already said should not be
5  done.
6         Now, this is one of the things that I do.  It's part
7  of my day job.  I have been involved in dozens of confirmation
8  proceedings.  Reed Smith has been involved in hundreds of
9  confirmation proceedings.  The case law engages an illumination
10 of thousands.
11        And in not a single one has Dechert showed you, Your
12 Honor, that they can cherry pick a final award so that, okay,
13 why don't we confirm this, but we won't confirm that.  Okay?
14 It doesn't exist in our business.  We've moved to confirm the
15 award.  There was no divided loyalty in confirming the award.
16 That is what the statute allows us to do.
17        They moved to vacate the entire award.  You don't hear
18 them saying, oh, we'll accept this, but we won't accept that.
19 It doesn't work that way.  And they're asking Your Honor to do
20 something completely -- in my experience, completely unheard
21 of.
22        And Your Honor doesn't have to guess about that.  They
23 don't cite a single case that allows that.  Nor do they cite a
24 single case that has a party relying on a stipulation by the
25 bankruptcy court to lift the stay that somehow, in reliance on

1   that, we then go ahead and try the case that then, in between
2   the end of the trial and the confirmation of the proceeding,
3   somehow it all gets stopped.
4         Now, they've made some accusations against us that we
5   misled this Court.  It is not true, absolutely.  Your Honor is
6   going to have an opportunity, before there's any enforcement,
7   to look at any of the issues that Your Honor wishes, okay?  But
8   nothing -- there's no truth to that at all.  On April 17, the
9   Togut firm understood, and actually said to Your Honor, that
10  the preferred and where the preferred went is the key issue in
11  that arbitration.
12        And while I'm there, let me pick this up, okay?  Mr.
13  Zide shouts that, well, no monetary award to Holdings, okay,
14  overlooking the fact that the most significant award that we
15  received was that his alter ego, his client's alter ego,
16  doesn't get the preferred.  That wasn't a monetary award.  It
17  redounds to the benefit of Holdings.
18        The monetary award, which gives Holdings' subsidiary,
19  Corp., money, that redounds to Holdings' benefit.  That's in
20  the award that he wants Your Honor to stop.  For Gas to receive
21  money; that's also in the award.  That also redounds to the
22  benefit, indirectly, of Holdings, for reasons that we have
23  already said in our papers.
24        But so he says, well, although the Togut firm, when we
25  presented this stipulation and said that the preferred and