```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
`------------------------------------------------------------------X`

ELETSON HOLDINGS, INC. and ELETSON CORPORATION,

                Petitioners,

    -v-

LEVONA HOLDINGS LTD.,

                Respondent.

`------------------------------------------------------------------X`

23-cv-7331 (LJL)

MEMORANDUM AND ORDER

LEWIS J. LIMAN, United States District Judge:

On February 9, 2024, the Court issued an Opinion and Order granting in part and denying in part the application of petitioners Eletson Holdings, Inc. ("Holdings") and Eletson Corporation ("Corp." and together with Holdings, "Eletson" or "Petitioners") for an order confirming, pursuant to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards and the Federal Arbitration Act, a final arbitration award (the "Award") issued by the Honorable Ariel Belen (the "Arbitrator") of the Judicial Arbitration and Mediation Services, Inc ("JAMS"). Dkt. No. 83. As relevant here, the Court concluded that the Arbitrator exceeded his powers under applicable law and the parties' arbitration agreement by awarding damages based upon his finding that an affiliate of Levona Holdings, Ltd. ("Levona" or "Respondent") that was not itself a party to the arbitration violated a status quo injunction (the "Status Quo Injunction") that the Arbitrator had issued when the affiliate commenced a bondholder litigation and filed an involuntary bankruptcy petition against Holdings. *Id.* at 90–111. In the course of reaching that conclusion, the Court noted that the involuntary bankruptcy petition filed by Respondent's affiliate was "well-founded" and that "[t]here was no finding, nor

1

apparently could there have been one, by the bankruptcy court . . . that the petition was filed in bad faith." *Id.* at 108. The Court also noted that the issues involved in the bondholder litigation were "entirely different" from those covered by the arbitration agreement. *Id.* at 110. Accordingly, the Court declined to confirm "[a]ll awards of relief, including compensatory and punitive damages, based upon violations of the Status Quo Injunction," which the Arbitrator had interpreted to prohibit the affiliate's filing of the involuntary bankruptcy petition and commencement of the bondholder litigation. *Id.* at 124. The Court directed the parties to each submit a proposed judgment consistent with the Court's Opinion and Order. *Id.*

Eletson and Levona each submitted proposed judgments on February 23, 2024. *See* Dkt. Nos. 94, 96.[1] Eletson argues that the only portion of the Award that the Court should not incorporate into its judgment based on the Court's Opinion and Order is the Award's grant of fees in the amount of $3,007,266.20 that were incurred "in connection with the Bankruptcy and Bondholder Litigation." Dkt. No. 94 at 3 (quoting Dkt. No. 67-58 at 100); Dkt. No. 100 at 3. Eletson asserts that the damages amount in the Award is otherwise undisturbed by the Court's Opinion and Order. Dkt. No. 94 at 3; Dkt. No. 100 at 3. Finally, Eletson avers that if the Court finds that the Award lacked sufficient clarity for the Court to enter a judgment consistent with its Opinion and Order, that the Court should remand the Award to the Arbitrator for clarification. Dkt. No. 100 at 5. Levona, meanwhile, argues that the punitive damages award must be vacated

---

[1] Eletson requested that the Court either strike a letter submitted by Levona along with its proposed judgment, or permit Eletson to respond by letter brief. *See* Dkt. No. 97. Levona replied opposing the request to strike the letter, and itself requested an opportunity to respond to Eletson's briefing on its proposed judgment. *See* Dkt. No. 98. The Court denied the request to strike any previously submitted briefing, and instead directed each party to respond to the submissions of the other party in a letter brief no longer than five single-spaced pages. *See* Dkt. No. 99. In accordance with the Court's instruction, Eletson and Levona each submitted briefing on the proposed judgments. *See* Dkt. Nos. 100, 101.

in its entirety because the punitive damages award was based, at least in part, on violations of the Status Quo Injunction—which the Court found to be an impermissible basis for an award damages—and because the "arbitrator provided no way to separate the punitive damages that were based on violations of the Status Quo Injunction from any that were not." Dkt. No. 96 at 1. Nor, according to Levona, would it be proper for the Court to "devise a new amount of punitive damages and enter judgment as to that amount because such a calculation would be speculative and constitute an improper modification . . . of the arbitrator's decision." *Id.*

The parties do not dispute that the Award included $3,007,266.20 of attorneys' fees, costs, and expenses that were awarded based upon the asserted violations of the Status Quo Injunction, and that the judgment should therefore exclude at least that amount contained in the Award.[2] The parties dispute, however, whether the punitive damages award was at all based upon the asserted violations of the Status Quo Injunction, and if so, whether the Court should vacate the punitive damages award in its entirety, or remand the matter to the Arbitrator for the purpose of clarifying whether the punitive damages award was predicated on a finding that the Status Quo Injunction had been violated.

The record reflects that the award of punitive damages in this case was based in part on the Arbitrator's view that the Status Quo Injunction prohibited the filing of the involuntary bankruptcy petition and the bondholder litigation. *See* Dkt. No. 67-58. In the "Conclusion and Final Award" section of the Award, the Arbitrator provided—in addition to a summary of his findings—a list of the declaratory relief granted, and an accounting of attorneys' fees, costs, expenses, and additional interest awarded, a detailed description of compensatory damages, and

---

[2] The parties also do not dispute, and in fact agreed in the arbitration, that the Arbitrator has the power to award punitive damages. Dkt. No. 67-58 at 68.

3

a brief recitation of punitive damages. *See id.* at 94–101. As compensatory damages, the Arbitrator awarded $43,455,122.21, which included "$21,777,378.50 . . . as compensatory damages for the improper arrests of . . . vehicles," "$19,677,743.71 . . . constituting the lost profits (EBITDA) due to Levona's unjust enrichment arising from available use of the Symi and Telendos since March 11, 2022, without the reciprocal transfer of the preferred interests," and "$2,000,000 . . . as compensatory damages arising out of Levona's other breaches of contract." *Id.* at 99. The subsection describing the award of punitive damages, however, offered no such detailed accounting of its basis, stating merely that "Levona, Murchinson, and Pach Shemen, as alter-egos,[3] jointly and severally, shall pay punitive damages in the total amount of $43,455,122.21," with "$23,777,378.50, to be paid to Eletson Gas," and "$19,677,743.71 to be paid to the Preferred Nominees." *Id.* at 100.

The Arbitrator's reasoning for finding that an award of punitive damages was merited, laid out earlier in the Award, suggest that the Arbitrator deemed an award of punitive damages appropriate at least in part because of the asserted violations of the Status Quo Injunction. *See* Dkt. No. 67-58 at 67–73. The Arbitrator began the section on punitive damages by stating that "[i]f there was a case warranting punitive damages, . . . this is the one," because "Murchinson, on its own, and through Levona and Pach Shemen, has engaged in an intentionally hostile, corrupt, wanton, and deceitful campaign." Dkt. No. 67-58 at 68. The Arbitrator then listed examples of specific conduct that supported this statement, including that "[t]he deceit and backstabbing . . . even continued during [the] arbitration as Murchinson disingenuously hid behind shell entities to avoid producing relevant documents and to repeatedly violate the Status

---

[3] Earlier in the Award, the Arbitrator found that Murchinson, an investment firm that manages Levona, and Pach Shemen, a special-purpose vehicle also managed by Murchinson, were alter egos of Levona. *See* Dkt. No. 67-58 at 21.

4

Quo Injunction Order." *Id.* The Arbitrator then provided a more detailed explanation of why an award of punitive damages was warranted. That detailed explanation made several references to violations of the Status Quo Injunction, stating that "the record [was] replete with instances of Murchinson's agents engaging in deceitful and malicious behavior to further their own agenda: from . . . to Levona and its agents knowingly violating—multiple times—the Status Quo Injunction Order." *Id.* at 69. Later in the Award, the Arbitrator again emphasized that "Murchinson/Levona continue through today to engage in gamesmanship both in connection with . . . their continuation of multiple legal proceedings they have commenced—through [two of the Levona-appointed directors on the board of Eletson Gas]—in violation of the Status Quo Injunction Order." *Id.* at 73. The Court has concluded that, by adopting the view that he had the power to prevent the entities from commencing and engaging in legal proceedings in the bankruptcy court and in this Court, the Arbitrator arrogated to himself powers that the law and the arbitration agreement did not give him. Specifically, the Status Quo Injunction did not prevent, and could not have prevented, Levona's affiliates from commencing any of those proceedings.

In sum, the Arbitrator made a threshold determination—for reasons that included asserted violations of the Status Quo Injunction—that an Award of punitive damages was warranted, and then calculated the value of the punitive damages award by applying a multiple (here a multiple of one) to the compensatory damages award. The Award is ambiguous, however, as to whether the breach of the Status Quo Injunction was a necessary component of the Arbitrator's conclusion that an award of punitive damages was appropriate, and as to whether the multiple that the Arbitrator applied in calculating the punitive damages would have been lower in the absence of a finding that the Status Quo Injunction had been violated. The Arbitrator's

references to the Status Quo Injunction in the section justifying an award of punitive damages were supplemented by citations to numerous other forms of conduct he deemed improper. *See id.* at 67–73. For example, the Arbitrator highlighted his findings that "Murchinson corrupted and bribed an Eletson officer," that Murchinson committed an "intentional breach of the NDA with Blackstone," Levona's predecessor-in-interest, and that "Murchinson disingenuously hid behind shell entities to avoid producing relevant documents." *Id.* at 68. The Arbitrator cited each of those justifications—none of which related to the Status Quo Injunction—in concluding that it was "clear to [him] that without some punitive deterrence, Murchinson's agents will continue to believe that they are not accountable for their actions." *Id.* at 69. The Arbitrator's summary grouped together the violations of the Status Quo Injunction with the other misconduct he identified:

> As a result of the bad-faith, deceitful, wanton and corrupt manner in which Levona treated Claimants with an intent to injure them, bribed an Eletson officer, disregarded their obligations to Claimants and to the Company, intentionally and willfully breached the LLCA, committed associated torts against Claimant, and violated the orders of this arbitration, I find that punitive damages in the amount of $43,455,122.21, equal to the amount of compensatory damages, are warranted to be paid to the same entities that are to receive the underlying compensatory damages.

*Id.* at 73.

The Second Circuit has held that remand to an arbitrator is appropriate when "(1) the final award is ambiguous; (2) the clarification merely clarifies the award rather than substantively modifying it; and (3) the clarification comports with the parties' intent as set forth in the agreement that gave rise to the arbitration." *Gen. Re Life Corp. v. Lincoln Nat'l Life Ins. Co.*, 909 F.3d 544, 549 (2d Cir. 2018); *see also Hyle v. Dr.'s Assocs., Inc.*, 198 F.3d 368, 370 (2d Cir. 1999) ("[A] district court can remand an award to the arbitrator for clarification where an

6

award is ambiguous."); *N.Y. Bus Tours, Inc. v. Kheel*, 864 F.2d 9, 12 (2d Cir. 1988) (directing district court to remand to arbitrator to clarify relief granted in arbitration award).

      Those conditions are satisfied here. The Award could be read to suggest that, even in the absence of a finding that the Status Quo Injunction had been violated, the Arbitrator would have awarded punitive damages and that such damages would have been awarded in the same amount. Alternatively, the Award could be read to suggest that in the absence of a finding that the Status Quo Injunction had been violated, the Arbitrator would not have concluded that Respondent's conduct rose to the level of warranting an award of punitive damages. Further still, the Award could be read to suggest that in the absence of a finding that the Status Quo Injunction had been violated, the Arbitrator would have deemed an award of punitive damages appropriate, but would have awarded punitive damages in a lower amount. Because "[l]anguage in an arbitral award is ambiguous when it is 'susceptible to multiple meanings,'" *Ferrand v. Mystique Brands LLC*, 2021 WL 119572, at *10 (S.D.N.Y. Jan. 13, 2021) (quoting *Gen. Re Life Corp.*, 909 F.3d at 549), the Award satisfies the test for ambiguity. The Court is not able to discern whether an award of punitive damages would have been made in the absence of the finding that the Status Quo Injunction had been violated, or what the size of the award would have been in the absence of such a finding, without "affecting the merits of the controversy." *Fischer v. CGA Comput. Assocs., Inc.*, 612 F. Supp. 1038, 1041 (S.D.N.Y. 1985) (quoting 9 U.S.C. § 11). A remand to the Arbitrator for further clarification is therefore warranted.

      The Arbitrator is requested to limit his clarification simply to the questions of whether he would not have awarded punitive damages, but for the finding of a violation of the Status Quo Injunction, and whether he would have applied a different multiple of the compensatory damages in his calculation of the punitive damages award in the absence of the finding of a violation of

7

the Status Quo Injunction. *See Three Bros. Trading, LLC v. Generex Biotechnology Corp.*, 2019 WL 3456631, at *5 (S.D.N.Y. July 31, 2019). "For the sake of clarity, the Court notes that the arbitrator is not required to 'state [his] reasons' for clarification, 'but only to explain [his] . . . ambiguous award in a way sufficient to allow effective judicial review.'" *Id.* at *5 n.2 (quoting *Rich v. Spartis*, 516 F.3d 75, 83 (2d Cir. 2008)). Once the Arbitrator has issued his clarification, the parties may return to the Court to move for entry of judgment. *Three Bros. Trading*, 2019 WL 3456631, at *5.[4]

## CONCLUSION

The Award is remanded to the Arbitrator for further clarification. The parties are directed to submit a joint letter to the Court within two weeks of any substantive decision of the Arbitrator.

SO ORDERED.

Dated: April 19, 2024
New York, New York

_____
LEWIS J. LIMAN
United States District Judge

---

[4] The Court reserves judgment on the question whether, in the event that the Arbitrator clarifies that he would not have awarded punitive damages but for the finding of a violation of the Status Quo Injunction, such clarification either permits or necessitates a vacatur of the punitive damages award in its entirety. The parties may brief that issue after the Arbitrator clarifies the Award.