**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ELETSON HOLDINGS, INC. and
ELETSON CORP.,

        Petitioners/Cross-Respondents,

    v.

 LEVONA HOLDINGS, LTD.,

        Respondent/Cross-Petitioner.

Civ. No. 23-cv-07331 (LJL)

**LEVONA'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE TO
FILE AN AMENDED ANSWER TO OPERATIVE PETITION TO CONFIRM THE
ARBITRAL AWARD AND SECOND AMENDED CROSS-PETITION TO VACATE
ARBITRAL AWARD AND FOR DISCOVERY**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION .................................................................................................. 1

BACKGROUND ................................................................................................... 2

    A.    Levona's Rescue Funding To Eletson Gas Via The BOL And Buyout Option ..... 2

    B.    Eletson's Repeated Admissions That It Did Not Exercise The Option ................. 3

    C.    Eletson's Failure To Produce Evidence Showing It Didn't Exercise The Option .. 6

    D.    Levona's Diligence And Eletson's Cover-Up Campaign ...................................... 8

LEGAL STANDARD ............................................................................................ 12

ARGUMENT ...................................................................................................... 13

I.    LEVONA SHOULD BE PERMITTED TO AMEND ITS ANSWER AND PETITION TO SEEK VACATUR BASED ON FRAUD AND UNDUE MEANS AND DENIAL OF CONFIRMATION BECAUSE IT WAS UNABLE TO PRESENT ITS CASE ........ 13

    A.    The Improperly Withheld Documents Support Vacatur Of The Final Award Under FAA § 10(a)(1) And Denial Of Confirmation Under Article V(1)(b) ....... 13

        1.    Eletson Engaged In Fraudulent Activity, Used Undue Means, And Prevented Levona From Presenting Its Case ............................................. 14

        2.    The Fraud Materially Relates To The Central Issue In The Arbitration: Whether Eletson Exercised The Buyout Option ....................................... 17

        3.    Levona Could Not Have Discovered The Fraud Prior To The Final Award ......................................................................................... 20

    B.    The Amendment Is Timely And Would Not Prejudice Eletson ......................... 22

II.    DISCOVERY IS WARRANTED TO PROVIDE A FULL RECORD REGARDING WHETHER ELETSON PROCURED THE FINAL AWARD BY FRAUD ................. 23

CONCLUSION ................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*,
  404 F.3d 566 (2d Cir. 2005) ..................................................................................12

*ARMA, S.R.O. v. BAE Sys. Overseas, Inc.*,
  961 F. Supp. 2d 245 (D.D.C. 2013) .......................................................................24

*Bonar v. Dean Witter Reynolds, Inc.*,
  835 F.2d 1378 (11th Cir. 1988) ..............................................................16, 18, 23

*Enzymotec Ltd. v. NBTY, Inc.*,
  754 F. Supp. 2d 527 (E.D.N.Y. 2010) ...................................................................13

*Forsythe Int'l, S.A. v. Gibbs Oil Co. of Tex.*,
  915 F.2d 1017 (5th Cir. 1990) ...............................................................................16

*France v. Bernstein*,
  43 F.4th 367 (3d Cir. 2022) ....................................................................16, 18, 21, 23

*Frere v. Orthofix, Inc.*,
  2000 WL 1789641 (S.D.N.Y. Dec. 6, 2000) .........................................................24

*Holmes v. Grubman*,
  568 F.3d 329 (2d Cir. 2009) ...........................................................................12, 13

*Int'l Bhd. of Teamsters, Loc. 519 v. United Parcel Serv., Inc.*,
  335 F.3d 497 (6th Cir. 2003) ...........................................................................18, 23

*Iran Aircraft Indus. v. Avco Corp.*,
  980 F.2d 141 (2d Cir. 1992) ...................................................................................14

*Lyeth v. Chrysler Corp.*,
  929 F.2d 891 (2d Cir. 1991) ...................................................................................24

*Mathews v. Eldridge*,
  424 U.S. 319 (1976) ...............................................................................................14

*MidAmerican Energy Company v. International Brotherhood of Electrical
  Workers Local 499*,
  345 F.3d 616 (8th Cir. 2003) ...............................................................................19

*Move, Inc. v. Citigroup Glob. Markets, Inc.*,
  840 F.3d 1152 (9th Cir. 2016) ...............................................................................23

*NuVasive, Inc. v. Absolute Med., LLC,*
   71 F.4th 861 (11th Cir. 2023) ........................................................................................19, 23

*Odeon Cap. Grp. LLC v. Ackerman,*
   864 F.3d 191 (2d Cir. 2017)..................................................................13, 17, 18, 19

*PaineWebber Grp., Inc. v. Zinsmeyer Trusts P'ship,*
   187 F.3d 988 (8th Cir. 1999) ..........................................................................................16

*Richardson Greenshields Securities, Inc. v. Lau,*
   825 F.2d 647 (2d Cir. 1987)..............................................................................................12

*Sanko Steamship Co. v. Cook Indus.,*
   495 F.2d 1260 (2d Cir. 1973).............................................................................................24

*Telenor Mobile Commc'ns AS v. Storm LLC,*
   524 F. Supp. 2d 332 (S.D.N.Y. 2007), *aff'd*, 584 F.3d 396 (2d Cir. 2009) ............................14

*Thomas Kinkade Co. v. Hazlewood,*
   2007 WL 217384 (N.D. Cal. Jan. 25, 2007) ........................................................16, 21, 24, 25

## Rules/Statutes

Federal Rules of Civil Procedure Rule 15(a)(2) ....................................................................12, 13

Federal Rules of Civil Procedure Rule 15(c)(1)(B).....................................................................23

Federal Rules of Civil Procedure Rule 16(b)(4) .........................................................................13

Federal Rules of Civil Procedure Rule 81(a)(6)(B).....................................................................12

9 U.S.C. § 10(a)(1)..................................................................................1, 13, 14, 20, 23

9 U.S.C. § 10(a)(2)................................................................................................................1

9 U.S.C. § 10(a)(3)................................................................................................................1

## Other Authorities

Local Civil Rule 15.1(a) ......................................................................................................26

Local Civil Rule 15............................................................................................................13, 24

Local Civil Rule 16(b) ..........................................................................................................13

Local Civil Rule 17(a) ..............................................................................................7, 15, 20, 21

New York Convention Article V(1)(b)..............................................................1, 14, 16, 23

## INTRODUCTION

What was once uncertain and unknowable is now increasingly clear: Eletson Holdings and Eletson Corp. (together, "Eletson") withheld from Levona and the arbitrator multiple pieces of key evidence on the core issue in the arbitration—whether Eletson Gas exercised the option to buy out Levona's stake in Eletson Gas—despite discovery requests encompassing that evidence. The withheld evidence consists of emails from July and August 2022—just before and just after Eletson demanded arbitration—in which Eletson's highest-ranking officers wrote that they were still trying to devise a way to, *in the future*, purchase Levona's stake. That evidence directly contradicts Eletson's position in the arbitration that the option had been exercised in March 2022, *before* Eletson's officers wrote the withheld emails.

The withheld documents provide good cause for Levona to amend its answer and vacatur petition regarding the nearly $100 million arbitration award to additionally seek vacatur under 9 U.S.C. § 10(a)(1) based on fraud and undue means and under 9 U.S.C. § 10(a)(3) based on arbitrator misconduct and to invoke as a defense Article V(1)(b) of the New York Convention, which permits the Court to refuse to recognize and confirm the Final Award because Levona was "unable to present [its] case."[1]  At minimum, the withheld documents warrant targeted discovery, including as to other relevant documents Levona knows exist but cannot use here, either because it does not possess them or because they are subject to protective orders in other proceedings. The Court thus should permit Levona to file an amended answer to Eletson's petition and an amended vacatur petition as set forth herein and to permit related, targeted discovery.

---

[1]  As Levona has noted (ECF 120 at 2-3), it is seeking clarification from JAMS regarding certain information that calls into doubt the arbitrator's independence and impartiality. JAMS has administratively stayed the remand pending its review. Levona reserves all rights to further amend the petition to vacate the award based on evident partiality under 9 U.S.C. § 10(a)(2).

## BACKGROUND

**A.      Levona's Rescue Funding To Eletson Gas Via The BOL And Buyout Option**

Eletson Gas is a liquefied petroleum gas shipping joint venture of Eletson Holdings and Levona.  ECF 67-58, at 6-7.  In February 2022, only three days before the scheduled auction of two of the company's ships, Eletson Gas, Eletson Holdings, Eletson Corp., EMC Gas, and Levona entered into a Binding Offer Letter ("BOL") through which Levona provided much-needed, immediate liquidity to rescue Eletson Gas.  *See* ECF 67-10.  In relevant part, the BOL states that Levona would loan Eletson Gas up to $10 million (later extended to up to $14 million, of which at least $12.85 million was drawn) ("BOL Loan") and provided Eletson Gas a 30-day option to buy out Levona's stake in the preferred shares of Eletson Gas for $23 million plus one dollar (the "Buyout Option").  *Id.* § 2.  In return for the Buyout Option, the BOL provided among other consideration that Eletson Gas would, concurrently with documenting the BOL Loan, transfer to Levona the shares in two Greek companies that held the vessels *Symi* and *Telendos*.  *Id.* § 1.

On March 11, 2022, Eletson Gas transferred those vessels to Levona as, in Levona's view, consideration for Levona having granted Eletson the Buyout Option.  *See* ECF 67-12.  A "unanimous written consent" adopted by Eletson Gas's Board the same day stated, "the sale of the [vessels] to Levona" was "in consideration of the grant of … [the] option."  ECF 67-13, at 2.

Eletson Gas never formally exercised the Buyout Option, nor did it exercise its rights to extend the option period by repaying portions of the BOL Loan.  *See* ECF 67-10 §§ 2.3, 2.4, 2.5; ECF 67-58, at 43 ("I agree with Levona that there does not seem to be a separate formal written notice provided to Levona by Eletson exercising the option.").  Because the contractual preconditions to exercising the Buyout Option requirements had not been satisfied (ECF 67-10 §§ 2.1-2.3; *see* ECF 67-58, at 35, 40, 43, 46), Levona concluded that the option had lapsed unexercised, it still owned the preferred shares in Eletson Gas and the two vessels, and Eletson

Gas remained obligated to repay the loan.  On July 15, 2022, Levona entered into a Letter of Intent ("LOI") with Unigas to sell Eletson's fleet of vessels for $262 million.  ECF 67-58, at 10.

On July 15, 2022, Vassilis Kertsikoff—a director of Eletson Holdings and Eletson Gas, among other roles—admitted on a call with Levona representative Adam Spears that the Buyout Option had "*lapsed a couple months ago*."  Nesser Decl., Ex. 1, at 3.[2]

By July 19, 2022, at the latest (and perhaps back on July 13), Eletson had become aware of a July 13, 2022 email in which its CFO provided Mr. Spears (a "fellow director[]" of Eletson Gas) a "buyout proposal" that Mr. Kertsikoff "would like to discuss" and that specifically listed certain "*Murchinson Buyout Steps*."  *See* ECF 67-14; ECF 67-15; ECF 68 ¶ 39; Nesser Decl., Ex. 35.  The arbitrator acknowledged that "Levona spent considerable energy and time focused" on this email, which in Levona's view was the "smoking gun" of the arbitration (ECF 67-58, at 45-46 n.6), but the arbitrator disregarded this evidence based, in part, on the testimony of Eletson witnesses (*see, e.g.*, *id.*; *id.* at 40), which the withheld evidence shows to be false.

### B.    Eletson's Repeated Admissions That It Did Not Exercise The Option

Just as Levona concluded the option had lapsed unexercised, several senior executives at Eletson similarly admitted, on multiple occasions, that the Buyout Option had lapsed unexercised:

*Admission #1: First July 25 Email*.  On July 25, 2022,



Nesser Decl., Ex.

---

[2]  A recording and transcript are exhibits to the accompanying declaration.  *Id.*, Exs. 1-3.  Levona had the recording previously but did not produce it in the arbitration and is not using it as direct evidence of fraud.  It merely corroborates Eletson's fraud in withholding other materials.

4 (SEALED) at -7265 ███████████████████████████████ *see id.* at -7266

███████████████████████████████

***Admission #2:  Second July 25 Email***.  On July 25, 2022, ████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████ *Id.*, Ex. 5 (SEALED). ███████████████████████

████████████████████████████████████████████████

███████████████████ *Id.*, Ex. 4, at -7266; Ex. 5, at -7299.  The BOL

contemplated $23 million for the purchase of the Eletson Gas preferred shares; the ███████

███████████████████████████ show that the purchase option had indeed lapsed

and Eletson was considering new terms for a potential new offer.

On July 29, 2022, just days after three Eletson senior executives admitted they had never

exercised the Buyout Option, Eletson Holdings and Eletson Corp. filed a JAMS arbitration demand

(ECF 67-16) against Levona in which they took precisely the opposite position.  According to their

arbitral petition, Eletson Gas had exercised the Buyout Option on March 11, 2022.[3]  *Id.* at 5.  That

is, according to Eletson's litigation position, transferring the vessels to Levona was an *exercise* of

the option, not "in consideration of the *grant* of … [the] option," as the BOL provided, *see* ECF

67-10 § 1.1 (emphasis added), and Eletson's Board had stated on the sale date, *see* ECF 67-13, at

2 ("the sale of the [vessels] to Levona" was "in consideration of the grant of … [the] option").

---

[3]    Eletson's apparent willingness to defraud is not limited to whether it exercised the Buyout
Option.  Based on only a few handwritten notes, Eletson has sought to direct the preferred shares
in Eletson Gas to the Cypriot Nominees to avoid the consequences of Eletson Holdings'
bankruptcy and put those shares beyond the reach of Eletson Holdings' creditors.  *See* ECF 67-58,
at 29-31.  Eletson and its counsel repeatedly asserted that *Eletson Holdings* owned the preferred
shares as of March 11, 2022, and reversed position only after the filing of the bankruptcy case.
*See* ECF 50, at 16-17 n.4 (compiling Eletson's evolving positions).

*Admission #3:  August 12 Email*.  On August 12, 2022, two weeks after Eletson demanded arbitration, ███████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████ Nesser Decl., Ex. 8 (SEALED); *see id.* ███████████████████████████████████

██████████████████████████████████

*Admission #4:  August 18 Email*.  On August 18, 2022, nearly three weeks after the arbitration demand had been filed, ████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████ *Id.*, Ex. 9 (SEALED); *see id.* ███████████████████████████

To summarize:  By August 18, 2022, four senior executives at Eletson—including a president, a director, a financial controller, and a corporate finance manager—had variously stated, unambiguously, both before and after Eletson had filed the arbitration with the assistance of counsel, and during a period when Eletson was furiously focused on the issue, that Eletson had *not* exercised the Buyout Option.  The withheld documents also show that during that period Eletson

was developing a transaction or series of transactions, including by reaching out to potential external investors, to buy back the preferred shares in Eletson Gas at materially different terms than the BOL—the very preferred shares Eletson now contends it acquired via its supposed exercise of the Buyout Option on March 11, 2022.

### C.    Eletson's Failure To Produce Evidence Showing It Didn't Exercise The Option

The "majority of the claims" in the arbitration "rest[ed] upon [whether] … Eletson exercise[d] [a] purchase option" as to the preferred shares in Eletson Gas.  ECF 67-58, at 10. Levona's discovery requests in the arbitration thus sought broad disclosure concerning that issue, and Eletson agreed to provide that discovery.  Nesser Decl., Ex. 10 at 2-3; *id.* at 15 (p. 2 of Ex. 4).

For example, Levona's discovery requests included a request (no. 11) for "[a]ny communications and/or documents related to Eletson's preparation of, negotiations to, and/or related to the final offer of the 'Murchison Buyout Steps,'" and Eletson agreed to produce all documents responsive to that request.  *Id.* at 2-3; *id.* at 10-11 (Ex. 2); *id.* at 14-15 (Ex. 4, with arbitrator acknowledging Eletson's "agreement to produce … documents responsive to [Levona's] Request No. 11").  Other relevant discovery requests include: (a) "Any and all communications concerning actions undertaken by Eletson to obtain independent investors to purchase an interest in Eletson or [Eletson Gas] from March 11, 2022 through present," (b) "Any documents … as to the determinations of the value of the [*Symi* and *Telendos*] in 2022 …," and (c) "Any communications related to any attempt to refinance any debt of [Eletson Gas] and secure new debt/credit for [Eletson Gas] from January 1, 2022 through present."  *Id.*, Ex. 11, at 6-7.

Those requests were in addition to Eletson's obligation under the JAMS Rules to engage in the "voluntary and informal exchange of all non-privileged documents and other information … relevant to the dispute or claim."  JAMS Rule 17(a).

But Eletson *withheld* that discovery.  ***None of the above-cited documents were produced or otherwise disclosed in the arbitration.***  Not the first July 25 email.  Not the second July 25 email.  Not the August 12 email.  Not the August 18 email.  Not the attachments to those emails.  Not the other communications discussed and described in those emails.  Not the other document versions inherently alluded to in those emails.  Nor did any of Eletson's witnesses say anything about those documents.  *Cf.* Nesser Decl., Ex. 12 ¶¶ 14-15 (Mr. Kertsikoff Nov. 17, 2022 affidavit: The "assertion that I stated on a call that I 'understood and stated the [Buyout] Option had lapsed' … is unequivocally false.  At no point did I make any such statement.").[4]

It is also clear that Eletson failed to produce still other responsive documents because the withheld documents *themselves* refer to other evidence that was withheld.  By way of example:

- The second July 25, 2022 email ████████████████████████████████████████
  ████████████████████████████████████

- The August 12, 2022 email ████████████████████████████████████████
  ████████████████████████████████████

- The August 18, 2022 email ████████████████████████████████████████
  ████████████████████████████

- All wrongfully withheld emails necessarily infer ████████████████████
  ████████████████████████████████

- Levona has reason to believe that additional documents contain relevant evidence (EletsonBK017273-293, 017853-857, 017861-883), *see In re Eletson Holdings*, 23-bk-10322, ECF 230[5] at 3 n.3, which includes the first document that Levona requested from the arbitrator in July 2022 (but to date remains withheld).

---

[4]    Mr. Kertsikoff in fact openly advocated for withholding relevant documents during his testimony.  *See* Nesser Decl., Ex. 6, Bankr. ECF 753-7, at 208:2-6 (stating on record to Reed Smith, as to exhibit introduced by Levona on cross examination, "we were not supposed to provide this").  Mr. Kertsikoff also denied "tell[ing] Mr. Spears that [Mr. Kertsikoff] understood that Eletson had not yet bought out Levona."  Nesser Decl., Ex. 7, Bankr. ECF 753-18, at 131-32.

[5]    References to the docket in the Eletson Holdings bankruptcy case, No. 23-cv-10322, are hereinafter referred to as "Bankr. ECF ##."

- Debtors produced in the arbitration a single May 26, 2022 email between Eletson and Castalia Advisors seeking "$30mm for a minority stake in the 12-vsl fleet," with the proceeds being used to "[r]efinanc[e] ... Murchinson Partners working capital facility," among other things.  Nesser Decl., Ex. 13, at -1850-51.  Levona believes that additional third-party materials exist and should have been produced.

- Eletson's refinancing communications with Tufton, Libera and Oaktree—*i.e.*, a whole universe of documents—also were never produced.

As one last and even more offensive example, the document bates numbered EletsonBK017864, which concerns an overlapping set of issues, was (a) produced by Eletson Holdings in the Eletson Holdings bankruptcy case *last year*, but remains subject to a protective order that *continues* to prevent Levona from even seeing it, and (b) was produced by Eletson Gas to Levona in a London-based arbitration less than two months ago, only after Levona obtained an order compelling production over Eletson's strenuous objection, but where it remains subject to confidentiality rules under which Eletson Gas has refused to permit its use here.  To be clear: Levona **knows** the document includes key relevant evidence and that Eletson withheld it from production in the arbitration, Levona now **has** the document, but Levona cannot **mention** the substance of the document here because of Eletson's insistence on keeping it concealed.[6]

### D.    Levona's Diligence And Eletson's Cover-Up Campaign

Eletson has engaged in tooth-and-nail efforts over the last year and across multiple forums to prevent Levona from even *seeing* the documents at issue, including by abusing protective orders.

On June 13, 2023, after the conclusion of all testimony, the arbitrator heard closing arguments.  ECF 67-58, at 5.  Shortly thereafter, but before any interim award was issued, Levona learned that Eletson Holdings had produced a document (EletsonBK017281-284) to the petitioning creditors in the Eletson Holdings bankruptcy case that (a) contradicted Eletson's position in the

---

[6]  Levona is seeking permission from the London tribunal to disclose this document to the Court and anticipates a decision within two weeks.  Levona will update the Court following a decision.

arbitration that it had exercised the Buyout Option and (b) had not been produced in the arbitration despite being responsive to agreed discovery requests. *See supra*, at 8.[7] Levona made multiple attempts in multiple forums to obtain that document properly, and related documents that Levona later learned of, but Eletson objected to any disclosure, insisting on keeping them secret:

**First**, in July 2023, Levona asked the arbitrator to order Eletson to produce the wrongfully withheld document. Eletson opposed. The arbitrator denied Levona's request, ruling that (a) he lacked authority to require Eletson to "disobey … [the] Protective Order" in the bankruptcy (even though the document at issue belonged to Eletson itself) and (b) Levona, which had not seen the withheld document, had relied on "conclusory assertions" regarding the document's significance. *See* ECF 67-52, at 2-3. On July 26, Levona requested that the arbitrator's July 18 denial be "reconsidered" because, *inter alia*, "information that demonstrates that in July 2022 Eletson internally took a position contrary to representations made [in the arbitration] … is evidence that is material to this Arbitration." ECF 67-54, at 2, 5. The arbitrator did not do so.

**Second**, in early October 2023, while briefing was ongoing in this Court, Levona requested that the Court refer the confirmation/vacatur proceeding to the Bankruptcy Court pursuant to the Amended Standing Order of Reference. If granted, referral would have converted the vacatur proceeding to a "related Dispute" as defined in the protective order in that case and hence would have permitted Levona to review and use the wrongfully withheld documents. Eletson objected to the request. This Court denied the motion and reconsideration. *See* ECF 36; ECF 39.

---

[7] Levona has not seen or possessed this document, but learned of its likely relevance based upon non-confidential information Levona's counsel received from an individual who is a representative of both petitioning creditor Pach Shemen and Levona, and who had reviewed the document in connection with his work on behalf of Pach Shemen in the Eletson Holdings bankruptcy case.

*Third,* in mid-October 2023, Levona moved to modify the protective order in the Eletson Holdings bankruptcy case to permit Levona to use the withheld documents in support of Levona's vacatur petition in this Court, where briefing was in progress.  *See* Nesser Decl., Ex. 14, Bankr. ECF 230, at 8; *id.*, Ex. 15, Bankr. ECF 254, at 6-7.  Eletson opposed the motion, which the Bankruptcy Court denied on November 8.  *Id.*, Ex. 16, Bankr. ECF 295.  In its opposition, Eletson did not contest the withheld documents were responsive to Levona's discovery requests in the arbitration but not produced there.  *Id.*, Ex. 15, Bankr. ECF 254, at 3.

*Fourth,* in December 2023, Levona filed a proof of claim against Eletson Holdings in the Eletson Holdings bankruptcy case, to which Eletson Holdings objected (*id.*, Ex. 17, Bankr. ECF 378), following which Levona, on February 8, served discovery requests on Eletson Holdings and others concerning, *inter alia*: (a) any previous or current interest Eletson Holdings or others ever held in the preferred shares; and (b) Eletson Holdings' knowledge as to whether Eletson Gas exercised an option to purchase the preferred shares pursuant to the BOL.  *See id.*, Ex. 18, Bankr. ECF 700-1; *id.*, Ex. 19, Bankr. ECF 700-2.  On February 22, Eletson Holdings served boilerplate objections and refused to produce any documents or deposition witnesses.  *See id.*, Ex. 20, Bankr. ECF 700-4.  In May 2024, in connection with the proof of claim, Levona served subpoenas on third parties that interacted with Eletson entities seeking documents and testimony regarding, among other things: (a) the potential financing or re-financing of Eletson or related entities; (b) the purchase of Levona's preferred shares in Eletson Gas by any entity; and (c) the transfer of preferred interests in Eletson Gas to the Cypriot nominees or related entities.  Eletson Holdings obtained a stay of discovery, and Levona has not received any third-party discovery either.

*Fifth,* in early February 2024, Eletson Holdings incorrectly asserted that Levona was not a "Party" entitled to access confidential documents filed in the Eletson Holdings bankruptcy case.

Levona requested a discovery conference on the issue on February 12.  *Id.*, Ex. 21, Bankr. ECF 423.  Eletson again opposed disclosure of the documents to Levona.  *See* Bankr. ECF 527, 3/12/2024 Bankr. Hr'g Tr.  The Bankruptcy Court ruled in Levona's favor as to certain documents on March 12.  *See* Nesser Decl., Ex. 22, 3/12/2024 Bankr. Hr'g Tr. 10:12-11:5.  Due to that ruling, Levona on March 18, finally obtained some of the documents Eletson had withheld for over a year: the two July 25, 2022 emails, the August 12, 2022 email, and the August 18, 2022 email.[8]

**Sixth**, on April 2 and again on April 19, 2024, Levona requested a discovery conference regarding Eletson's continued refusal to produce any discovery regarding, among other issues, Levona's proof of claim.  *See id.*, Ex. 23, Bankr. ECF 545; *id.*, Ex. 24, Bankr. ECF 608.  On May 7, Levona filed a notice of a status conference with the Bankruptcy Court regarding its outstanding discovery disputes with Eletson to be held the following day (*id.*, Ex. 25, Bankr. ECF 642) and, on May 8, the court granted Levona permission to file a motion to compel discovery by May 15, with Eletson's response due by May 22.  *See* Bankr. ECF 705, 5/8/2024 Bankr. Hr'g Tr. 133.  After those filings (Nesser Decl., Ex. 26, Bankr. ECF 699; *id.*, Ex. 27, Bankr. ECF 714; *id.*, Ex. 28, Bankr. ECF 715), on May 31, the Bankruptcy Court directed Levona to file a 20-page brief on June 7 and Eletson to respond by June 14, with oral argument on June 18, *see* ECF 118, at 2.

During the June 18 hearing, the Bankruptcy Court heard argument on Levona's motion to compel discovery, including (a) the meaning and relevance of certain evidence Levona recently obtained indicating the Final Award was obtained by fraud and thus not entitled to collateral-estoppel effect, and (b) "why [the Bankruptcy Court] should not modify [its] protective order to allow the district court to see [the newly-discovered evidence]."  Bankr. ECF 811, 5/31/2024

---

[8]   Another example: On March 15, 2024, when Mr. Kertsikoff was asked about the July 15, 2022 call, Eletson's counsel baselessly "instruct[ed] the witness not to answer."  Nesser Decl., Ex. 29, Bankr. ECF 548, at 169:10-170:6.

Bankr. Hr'g Tr. 8:10-9:8.  The Bankruptcy Court ruled from the bench in Levona's favor.  The court found "that *extraordinary circumstances* and *compelling need* exist here, because the confirmation proceedings relating to the arbitration award are still pending before the district court which, of course, also hears appeals of rulings from this Court.  And the district court has remanded one issue to the arbitrator to consider in connection with the confirmation proceeding."  6/18/2024 Bankr. Hr'g Tr. 243:5-11 (emphasis added).  The Bankruptcy Court thus "modif[ied] the protective order in [that] case for the limited purpose of permitting Levona to raise the allegedly withheld documents in the district court confirmation proceedings."  *Id.* at 243:20-23.[9]

## LEGAL STANDARD

The Federal Rules of Civil Procedure govern amendments to pleadings in proceedings under the Federal Arbitration Act.  *See* Fed. R. Civ. P. 81(a)(6)(B).  "Pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, '[a] court should freely give leave [to amend] when justice so requires.'"  *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009) (quoting Rule 15(a)(2)).  A "Rule 15(a) motion 'should be denied only for such reasons as undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party,'" none of which applies here.  *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 603 (2d Cir. 2005) (quoting *Richardson Greenshields Secs., Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987)).  To the extent a scheduling order governs amendments (*see* ECF 20, 45), "the lenient standard under Rule 15(a), which provides leave to amend 'shall be freely given,' must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.'"  *Holmes*, 568 F.3d at 334-35 (cleaned up); *see* Fed. R. Civ. P.

---

[9]   The court ordered the parties to "continue to maintain the confidentiality of the documents at issue, subject to the rules and any rulings by the district court." 6/18/2024 Bankr. Hr'g Tr. 243-44.

16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.").
"Whether good cause exists turns on the diligence of the moving party." *Holmes*, 568 F.3d at 335
(internal citations and quotation marks omitted).

"Amendments are generally favored because they tend to facilitate a proper decision on the
merits." *Enzymotec Ltd. v. NBTY, Inc.*, 754 F. Supp. 2d 527, 538 (E.D.N.Y. 2010) (internal
citations and quotation marks omitted). Amendments are thus permitted even when a party learns
of the factual basis for the proposed amendment late in a case. *See, e.g.*, *id.* at 537 (finding "good
cause" to amend a complaint 9 months after the deadline for amendments because plaintiff learned
about the factual basis for the new claim during discovery and, "[a]lthough [the plaintiff] may have
suspected prior to filing the Initial Complaint that [claim existed] … causes of action in a complaint
must be based on factual allegations, not factual speculation").

## ARGUMENT

### I.  LEVONA SHOULD BE PERMITTED TO AMEND ITS ANSWER AND PETITION TO SEEK VACATUR BASED ON FRAUD AND UNDUE MEANS AND DENIAL OF CONFIRMATION BECAUSE IT WAS UNABLE TO PRESENT ITS CASE

#### A.  The Improperly Withheld Documents Support Vacatur Of The Final Award Under FAA § 10(a)(1) And Denial Of Confirmation Under Article V(1)(b)

The Federal Arbitration Act "permits a court to vacate an arbitration award 'where the
award was procured by corruption, fraud, or undue means.'" *Odeon Cap. Grp. LLC v. Ackerman*,
864 F.3d 191, 196 (2d Cir. 2017) (quoting 9 U.S.C. § 10(a)(1)). A petitioner seeking to vacate an
award on that basis "must adequately plead that (1) respondent engaged in fraudulent activity; (2)
even with the exercise of due diligence, petitioner could not have discovered the fraud prior to the
award issuing; and (3) the fraud materially related to an issue in the arbitration." *Id*. "[T]here
must be a nexus between the alleged fraud and the decision made by the arbitrators," but a
petitioner "need not demonstrate that the arbitrators would have reached a different result" in the

absence of the alleged fraud or undue means.  *Id.* at 194.

Further, the New York Convention provides for nonrecognition of an arbitral award where "[t]he party against whom the award is invoked … was otherwise unable to present his case."  N.Y. Convention, art. V(1)(b).  The Second Circuit has "recognized that the defense provided for in Article V(1)(b) essentially sanctions the application of the forum state's standards of due process, and that … '[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.'"  *Iran Aircraft Indus. v. Avco Corp.*, 980 F.2d 141, 145-46 (2d Cir. 1992) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)) (internal citations and quotation marks omitted).  "Accordingly, to obtain relief under Article V(1)(b), [the party resisting confirmation] bears the burden of proving that it was denied a full and fair opportunity to be heard."  *Telenor Mobile Commc'ns AS v. Storm LLC*, 524 F. Supp. 2d 332, 368 (S.D.N.Y. 2007), *aff'd*, 584 F.3d 396 (2d Cir. 2009).

Here, Eletson's improper withholding of critical evidence in the arbitration satisfies the standard for vacatur under Section 10(a)(1) and for denial of confirmation under Article V(1)(b).[10]

### 1.    Eletson Engaged In Fraudulent Activity, Used Undue Means, And Prevented Levona From Presenting Its Case

As described above, Eletson employed undue means and fraudulently withheld evidence that was directly relevant to the core issue in the arbitration—whether the Buyout Option was exercised—and responsive to at least one discovery request.  *See supra*, at 3-8.  Eletson withheld these documents despite ***agreeing*** to produce all documents responsive to that request, *see supra*

---

[10]    The arbitrator's failure to permit Levona further discovery into the Cypriot nominees and documents such as those Eletson withheld also provides basis for vacatur under 9 U.S.C. § 10(a)(3), as the documents known to be withheld have made clear that the arbitrator was "guilty of misconduct in refusing to postpone the hearing"—as Levona requested—"upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced."

*id.*, and in contravention of the JAMS Rules' requirement that the parties "cooperate in good faith in the voluntary and informal exchange of all non-privileged documents and other information … relevant to the dispute or claim," JAMS Rule 17(a).  In doing so, Eletson prevented Levona from presenting its case and from having a full and fair opportunity to be heard.

In particular, the withheld evidence includes documents from July and August 2022—*months after* the Buyout Option was purportedly exercised—and shows that, contrary to Eletson's position and the arbitrator's ultimate determination, the Buyout Option ***was not exercised***.  ECF 67-58, at 96.  Instead, Eletson was trying to negotiate *new* terms to purchase the preferred shares of Eletson Gas.  In the First July 25 Email, ███████████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████████████████████████████████ Nesser Decl., Ex. 4 (SEALED) at -7265.  In the Second July 25 Email, ██████████████████████ ████████████████████████████████████████████████ ███████  *Id.*, Ex. 5 (SEALED).  In the August 12 Email, ███████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████  *Id.*, Ex. 8 (SEALED).  And in the August 18 Email, ████████ ██████████████████████████████████████████████████████████ ████████████████████████████████████████  *Id.*, Ex. 9 (SEALED).

The withheld evidence thus states in the plainest of terms (consistent with Eletson CFO's July 13, 2022 email, and contrary to the arbitrator's discrediting of that document, *see supra*, at 3) that Eletson's highest-ranking officers were trying to devise a scheme to, *in the future*, pay off the Levona loan and purchase Levona's stake in Eletson Gas.  This *future*, potential new deal for a

buyout of Levona's ownership of the preferred shares in Eletson Gas was also on *new terms* that were materially different than the Buyout Option.  Most prominently, while the BOL contemplated that the Buyout Option could be exercised for a net price of approximately ████████ in March 2022, the withheld evidence shows that Eletson was contemplating a net price of approximately ████████ in July 2022 for the ████████████ in Eletson Gas.  *See supra*, at 3-6.

Making matters even worse, the evidence was withheld in a context where the documents at issue were (a) known to and involved Eletson's senior-most management, (b) of significant concern to Eletson's senior-most management, who were furiously focused on the issue, because they involved massive transactions that implicated Eletson's ongoing viability, (c) fresh in everyone's mind because they were being prepared and discussed *in real time* in the days before and after Eletson filed the arbitration, and (d) likely prepared with the awareness of Eletson's then- and current outside counsel, as they concerned the core issue on which counsel was advising in the arbitration.  Under all the circumstances, it is difficult to escape the impression that the concealment of critical evidence was knowing and indeed willful.

Eletson's withholding of these documents is thus **clear and convincing evidence of Eletson's fraud on the arbitrator** and its efforts to deprive Levona of a full and fair opportunity to present its case.  *See, e.g.*, *France v. Bernstein*, 43 F.4th 367, 378 (3d Cir. 2022) (holding that party committed fraud because "it is plain that France both lied under oath and withheld important information demanded in discovery"); *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378, 1381, 1383-84 (11th Cir. 1988) ("clear and convincing evidence" of perjury by expert witness in the arbitration "require[d] vacation of the punitive damages portion of the arbitration," where purported expert asserted "credentials … as a basis for his testimony as an expert witness [that] were completely false," including false educational degrees and professional experience); *Thomas*

*Kinkade Co. v. Hazlewood*, 2007 WL 217384, *3 (N.D. Cal. Jan. 25, 2007) ("An award may be 'procured by' fraud where 'fraud prevents the panel from considering a significant issue to which it does not otherwise enjoy access.'") (quoting *Forsythe Int'l, S.A. v. Gibbs Oil Co. of Tex.,* 915 F.2d 1017, 1022 (5th Cir. 1990)); *see also PaineWebber Grp., Inc. v. Zinsmeyer Trusts P'ship*, 187 F.3d 988, 991 (8th Cir. 1999) (award may be procured by "undue means" where there is "proof of intentional misconduct") (citation omitted) (collecting cases); Jay E. Grenig, Int'l Comm. Arb. § 14:14 (2024) ("'Undue means' is behavior that is immoral, if not illegal, something wrong, according to the standards of morals which the law enforces."); N.Y. Convention, Art. V(1)(b).

### 2.    The Fraud Materially Relates To The Central Issue In The Arbitration: Whether Eletson Exercised The Buyout Option

The improperly withheld evidence is "materially related to an issue in the arbitration." *Odeon Cap.*, 864 F.3d at 196.  The Final Award makes clear that the arbitrator's finding that the BOL Buyout Option was exercised was the central issue in the arbitration: "The resolution of the majority of the claims and counterclaims asserted in this arbitration rests upon the interpretation of the [BOL].  Did Eletson exercise the purchase option pursuant to the [BOL]?"  ECF 67-58, at 10.  And because the arbitrator found "that Eletson exercised the option to buyout Levona's membership interests as of March 11, 2022," the arbitrator dismissed Levona's counterclaims. *Id.* at 63.  But, as discussed above, the withheld evidence *directly forecloses* Eletson's position in the arbitration that the Buyout Option was exercised on March 11, 2022, *before* Eletson's officers wrote the withheld emails—all of which is corroborated by the July 15, 2022 recording in which Mr. Kertsikoff admitted the "***agreement lapsed a couple months ago***."  Nesser Decl., Ex. 1, at 1 (emphasis added).  The withheld evidence is also materially related to the arbitrator's damages findings, and especially punitive damages, because who knew what (and when) is essential to understanding why Levona took specific actions later.  Further, Eletson Holdings, through Mr.

Kertsikoff, admitted certain withheld evidence is within "the same subject matter" as issues central to the arbitration, *id.*, Ex. 30, Bankr. ECF 246, at 10; *id.*, Ex. 31, Bankr. ECF 248 ¶ 7, and yet Eletson withheld them in the arbitration. There can be no serious dispute that the withheld evidence is material to the central issue in the arbitration, and thus that there exists a clear nexus between the fraud and the arbitrator's decision that Eletson Gas had exercised the Buyout Option.

Numerous decisions from the courts of appeals support this conclusion. For example, in *France*, 43 F.4th 367, the Third Circuit held that the fraud was "material, and obviously so," because the "concealed evidence proved important facts supporting [the other party's] theory of the case." *Id.* at 381. There, the claimant's "central allegation" was that France was behind a particular signing event that was intended to induce the claimant's client to fire claimant and hire respondent France, but the claimant was unable to present relevant evidence. *Id.* at 370-71. However, the Third Circuit explained that "[the claimant] could have, and undoubtedly would have, presented such evidence if not for France's lie that he had no documents reflecting his involvement in the signing event and his further lies about being wholly uninvolved in the event." *Id.* at 381. The Third Circuit concluded that "the arbitrator's fact-finding task would have looked much different had [the claimant] possessed the concealed evidence to support [his] core allegation," which was "enough … to see a 'nexus between [the] fraud and the basis for the [arbitrator's] decision.'" *Id.* at 382; *see Int'l Bhd. of Teamsters, Loc. 519 v. United Parcel Serv., Inc.*, 335 F.3d 497, 504 (6th Cir. 2003) (alleged fraud was "material to the arbitration" because it "may have impacted not only on the arbitrator's ultimate decision to grant or deny relief …, but also may have directly affected the arbitrator's factual findings").[11]

---

[11]  Here too, the arbitrator's significant reliance on his determination that "the Eletson witnesses' testimony was both wholly credible and sincere" would have been affected by the withheld documents. ECF 67-58, at 31.

Similarly, in *Bonar*, 835 F.2d 1378, the Eleventh Circuit vacated an arbitral award based on fraud after determining that petitioner's expert witness lied about his credentials, including with fake educational degrees and prior work experience. *Id.* at 1384. In holding that the perjury was material, the court explained that the central factual issue before the arbitrators was whether respondents' "conduct was negligent enough to justify the imposition of punitive damages," and if the expert "had not committed perjury by falsifying his credentials, it is extremely doubtful that he would have been permitted to testify as an expert, and the arbitrators would have heard none of the ... testimony" regarding punitive damages. *Id.* at 1384-85. "Thus, by establishing the foundation that allowed the panel to hear influential expert testimony on the central issue of negligent supervision, the fraud materially related to an issue in the arbitration." *Id.*; *see NuVasive, Inc. v. Absolute Med., LLC*, 71 F.4th 861, 879 (11th Cir. 2023) (misconduct involving surreptitious "[text] messages and … arbitration testimony were materially related to an issue in the arbitration" because the improper "testimony 'related directly' to issues that the court had ordered the parties to resolve through arbitration"). And in *MidAmerican Energy Company v. International Brotherhood of Electrical Workers Local 499*, 345 F.3d 616 (8th Cir. 2003), the Eighth Circuit held that an employee's perjury in the underlying arbitration regarding a key disputed incident that had led to the employee's termination was "material" for the purposes of section 10(a)(1) analysis because the arbitrator's award stressed the employee's honesty and truthfulness. *Id.* at 623.

So too here. The withheld evidence directly relates to the central issue in the arbitration: whether Eletson Gas exercised the Buyout Option. The "nexus" between Eletson's fraud and the arbitrator's award is simple: the withheld evidence *directly contradicts* the arbitrator's finding that Eletson Gas exercised the Buyout Option and undermines the arbitrator's basis for compensatory and punitive damages that flowed from that finding. *Odeon Cap.*, 864 F.3d at 194, 196.

### 3.    Levona Could Not Have Discovered The Fraud Prior To The Final Award

Levona diligently sought production of all documents concerning exercise of the Buyout Option during the arbitration, was not aware of the existence of any of the improperly withheld documents until *after* the arbitration hearing closed, and did not *receive* any of the withheld documents until *months after* the Final Award was issued in September 2023. *See supra*, at 8-12.

The withheld documents were responsive to Levona's discovery requests and plainly relevant to the parties' dispute. *See supra*, at 6; JAMS Rule 17(a). At minimum, Eletson should have produced the improperly withheld documents in response to Levona's request number 11 for "[a]ny communications and/or documents related to Eletson's preparation of, negotiations to, and/or related to the final offer of the 'Murchison Buyout Steps,'" as described in the July 13, 2022 email (Nesser Decl., Ex. 32). It is undisputed that, in response to Levona's motion to compel responsive documents, Eletson agreed to produce all documents responsive to that request. *Id.*, Ex. 10 at 2-3; *id.*, at 10-11 (Ex. 2); *id.* at 14-15, (Ex. 4, with arbitrator acknowledging Eletson's "agreement to produce … documents responsive to [Levona's] Request No. 11" and determining that Levona's motion to compel was moot as a result). There is also no dispute that Eletson never produced these documents and did not even identify their *existence* during the arbitration. *See, e.g.*, *id*. at 21 (Ex. 5, which is Eletson's privilege log submitted in connection with its response to Levona's request number 11, including nine emails purportedly withheld on the basis of privilege dating both before ***and after*** the July 13 email). The failure to produce the documents also violated Eletson's obligations under JAMS Rule 17(a), which calls for the voluntary production of "all non-privilege documents and other information … relevant to the dispute or claim."

Levona, moreover, diligently sought the withheld evidence after learning of the existence one document (which Levona *still* has not received) in the weeks between June 13, 2023, when

the arbitration hearing closed, and July 28, 2023, when the arbitrator issued the interim award on the merits of the parties' dispute.  The arbitrator denied Levona's request, *without* looking at or considering the document Levona sought, because (a) in the arbitrator's view, he lacked authority to require Eletson to "disobey … [the] Protective Order" in the bankruptcy (even though the document at issue belonged to Eletson itself) and (b) Levona, which had not seen the withheld document, had relied on "conclusory assertions" regarding the document's significance.  *See* ECF 67-52, at 2-3.  Then, on July 26, 2023, Levona requested that the arbitrator's July 18, 2023 denial be "reconsidered" because, *inter alia*, "information that demonstrates that in July 2022 Eletson internally took a position contrary to representations made [in the arbitration] … is evidence that is material to this Arbitration."  ECF 67-54, at 2, 5.  The arbitrator refused.  Instead, the arbitrator issued the interim award on July 28, 2023, **two days** after Levona requested reconsideration.

The decision in *Thomas Kinkade Co. v. Hazlewood*, 2007 WL 217384, is instructive here. There, petitioners sought to vacate an arbitration award and sought limited discovery regarding alleged fraudulent conduct in connection with an application for attorneys' fees in the underlying arbitration.  *Id.* at *1.  Specifically, after the arbitration award was entered, petitioners "learned the identities of certain former employees … that may have information about the firm's billing practices and possibly fraudulent conduct" and sought their testimony in the vacatur proceeding in the district court.  *Id.* at *2.  The district court agreed, notwithstanding that petitioners had raised the issue of billing fraud in the arbitration.  *Id.* at *3.  The district court explained that petitioners "acted diligently in the arbitration proceedings" and "could [not] have discovered the information from … [the] former employees through the exercise of due diligence in the proceedings below." *Id.*  That is because, according to the district court, "the specific instances of fraud and misconduct that plaintiffs assert *were never presented* to the arbitration panel."  *Id.* (emphasis added).

21

So too here.  The arbitrator never saw or considered the improperly withheld documents.  As set forth above, Levona diligently sought those documents in the arbitration, but did not, and could not have, discovered those documents before the Final Award was issued because Eletson intentionally concealed them.  *See, e.g.*, *France*, 43 F.4th at 379 (As to whether "the fraud was not discoverable through reasonable diligence – France's non-production of responsive documents and false testimony fit the bill.  In fact, the fraud occurred directly in response to the reasonable diligence that Bernstein exercised in his discovery attempts leading up to the arbitration.").

### B.    The Amendment Is Timely And Would Not Prejudice Eletson

Levona has also acted diligently and without undue delay with respect to this motion, which it is filing within two weeks of the June 18, 2024 order granting Levona permission to submit some of the withheld evidence to this Court and while this case is paused pending the remand.

As the Bankruptcy Court observed in modifying its protective order to permit Levona to submit the withheld evidence to this Court, "Levona did not properly obtain the documents at issue in the letter motion until the [Bankruptcy] Court's March 12th, 2024 ruling entitling Levona to certain documents produced in these proceedings[,] … [a]nd Levona apparently received the documents on March 18th, 2024."  6/18/24 Bankr. Hr'g Tr. 241:23-242:3.  At that time, Levona was bound by the protective order's requirement that confidential documents produced in discovery "*shall be used … solely*" for the Eletson Holdings bankruptcy case, and "not for any other purpose."  Nesser Decl., Ex. 33, Bankr. ECF 37 ¶ 9; *id.*, Ex. 34, Bankr. ECF 457-1 ¶ 10.

Levona, moreover, now seeks leave to amend its answer and vacatur petition to vacate the Final Award as procured by fraud after Eletson *repeatedly* stymied Levona's efforts to obtain the withheld evidence for *a year*.  And notwithstanding Levona's substantial and diligent efforts, Levona knows that additional, relevant documents remain unusable here, either because they are subject to protective orders or because Eletson still has not produced them.  In these circumstances,

Eletson would suffer no prejudice from the proposed amendments.

Further, Levona's proposed amendment would relate back to its original, timely petition to vacate because "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B); *see Int'l Bhd. of Teamsters*, 335 F.3d at 505 (vacating denial of leave to amend vacatur petition, where party sought leave "more than one year after the original complaint was filed because it believed amendment was necessary to conform to recently discovered evidence of fraud"). Equitable principles reinforce this conclusion. *See, e.g.*, *NuVasive*, 71 F.4th at 875 ("We hold that the three-month window in [9 U.S.C.] § 12 may be equitably tolled in the appropriate circumstances."); *Move, Inc. v. Citigroup Glob. Markets, Inc.*, 840 F.3d 1152, 1158-59 (9th Cir. 2016) (holding "the FAA is subject to the established doctrine of equitable tolling" and vacating award under § 10(a)(3) where misrepresentations were not discovered until 4 years after award).

The Court thus should permit Levona to amend its answer and vacatur petition so that the Court can consider the withheld evidence. *See, e.g.*, *France*, 43 F.4th at 382 (reversing confirmation and directing vacatur of arbitration award based on fraud where clear evidence of non-production of responsive documents and false testimony was discovered via parallel action seven months after arbitration award); *Bonar*, 835 F.2d at 1381-82 (reversing confirmation of arbitral award and directing vacatur based on fraud discovered during vacatur proceeding and raised in amended petition under Rule 15, where fraud first raised five months after arbitral award).

## II.    DISCOVERY IS WARRANTED TO PROVIDE A FULL RECORD REGARDING WHETHER ELETSON PROCURED THE FINAL AWARD BY FRAUD

The withheld evidence discussed above is sufficient to warrant granting Levona leave to amend its answer and vacatur petition and ultimately to vacate the Final Award under 9 U.S.C. § 10(a)(1) and deny confirmation under Article V(1)(b). But regardless of whether the Court

grants Levona's motion for leave to amend now, targeted discovery should be permitted regarding Eletson's fraud to ensure the Court has a more complete record before it resolves Levona's fraud arguments on the merits (or, should the Court elect, before it grants leave).

"[D]iscovery in a post-arbitration judicial proceeding to confirm or vacate is governed by the Federal Rules of Civil Procedure, but is available only in limited circumstances, where relevant and necessary to the determination of an issue raised by such an application." *Frere v. Orthofix, Inc.*, 2000 WL 1789641, *4 (S.D.N.Y. Dec. 6, 2000) (citing *Lyeth v. Chrysler Corp.*, 929 F.2d 891, 898-99 (2d Cir. 1991); *Sanko Steamship Co. v. Cook Indus.*, 495 F.2d 1260, 1264-65 (2d Cir. 1973); collecting cases). "[T]he court must weigh the asserted need for hitherto undisclosed information and assess the impact of granting such discovery on the arbitral process." *Frere*, 2000 WL 1789641, at *5. "The inquiry is an entirely practical one, and is necessarily keyed to the specific issues raised by the party challenging the award …." *Id.* "[W]hen the requested discovery relates to allegations of fraud, as is the case here, a district court should only entertain a movant's request if the alleged fraud was not discoverable during the arbitration itself." *ARMA, S.R.O. v. BAE Sys. Overseas, Inc.*, 961 F. Supp. 2d 245, 261 (D.D.C. 2013). These requirements are met.

Federal courts have permitted limited discovery in connection with motions to vacate or confirm arbitral awards, including in comparable circumstances. *See Frere*, 2000 WL 1789641, at *7-8 (permitting limited discovery as to "information that [is] crucial to the resolution of the vacatur motion and not yet available to the petitioners," as to which court discerned "need … so self-evident as to justify honoring" discovery request); *Thomas Kinkade*, 2007 WL 217384, at *4 (permitting limited discovery to support party's petition to vacate award as "procured by fraud").

In *Thomas Kinkade*, the petitioners "assert[ed] that [respondent's] counsel lied regarding the availability of contemporaneous time records and pre-bills, and that the panel relied on the

absence of such records in reaching its ultimate award." 2007 WL 217384, at *4. In granting petitioners limited discovery regarding its fraud allegations, the court explained that, "given the seriousness of the allegations raised by [petitioners] in their discovery request, the court finds that it is likely the panel would have acted differently if such allegations had been raised and proven during the proceedings below." *Id.* The court determined that, "as guardian of the integrity of the arbitration process and the … court's confirmation or vacation of the arbitration award, [it] must satisfy itself that the award was not infected by fraud by either the parties or counsel." *Id.*

The withheld evidence compels the same conclusion here. That evidence supports vacatur and denial of confirmation and, at minimum, demonstrates that the arbitrator and this Court did not have the benefit of a complete record. The withheld evidence also shows Eletson improperly withheld *other* evidence during the arbitration. To permit the Court to resolve the issues raised in this motion on a complete record, and regardless of whether it grants leave to amend now, the Court should allow Levona to conduct targeted discovery regarding Eletson's fraud, undue means, and intentional efforts to prevent Levona from presenting its case in the arbitration, including as to the specific documents Levona knows exists but either does not yet possess or cannot use here.

## CONCLUSION

The Court should (a) grant this motion, (b) permit Levona to amend its answer and vacatur petition as proposed herein,[12] (c) order targeted discovery related to the issues raised in this motion, including as to the specific documents Levona is aware of, (d) permit the parties to file 10-page supplemental briefs (opening and opposition) and Levona to file a 5-page brief following the close of discovery, and (e) grant such other and further relief as the Court deems just and proper.

---

[12]    Pursuant to Local Civil Rule 15.1(a), Levona's proposed amended pleadings and a redline showing all differences accompany this motion. *See* Nesser Decl. Exs. 36, 37.

DATED: July 2, 2024                    QUINN EMANUEL URQUHART & SULLIVAN, LLP

By _Isaac Nesser_
    Mark McNeill
    William B. Adams
    Isaac Nesser
    Odysseas Repousis
    Alex Van Dyke
    John Super

    51 Madison Avenue, 22nd Floor
    New York, NY 10010
    Tel: 212-849-7351
    Fax: 212-849-7100
    markmcneill@quinnemanuel.com
    williamadams@quinnemanuel.com
    isaacnesser@quinnemanuel.com
    odysseasrepousis@quinnemanuel.com
    alexvandyke@quinnemanuel.com
    johnsuper@quinnemanuel.com

    *Attorneys for Respondent/Cross-Petitioner Levona Holdings, Ltd.*