UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ELETSON HOLDINGS, INC. and
ELETSON CORP.,

      Petitioners/Cross-Respondents,

v.

LEVONA HOLDINGS, LTD.,

      Respondent/Cross-Petitioner.

Civ. No. 23-cv-07331 (LJL)

**LEVONA'S REPLY IN SUPPORT OF MOTION FOR
LEAVE TO AMEND AND FOR DISCOVERY**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................. 1

ARGUMENT ................................................................................................................................... 1

I.  ELETSON'S FRAUD SUPPORTS VACATUR, DENIAL OF CONFIRMATION, AND FURTHER DISCOVERY ........................................................................................ 1

    A.  Levona's Proposed Amendment Is Far From Futile ............................................... 1

    B.  At Minimum, Discovery Is Warranted .................................................................... 5

II. ELETSON'S PROCEDURAL OBJECTIONS ARE MERITLESS ................................. 5

    A.  Levona's Proposed Amendments Are Timely ........................................................ 5

        1.  The FAA's Three-Month Limitations Period Does Not Apply To The New York Convention Defense To Confirmation ....................................... 5

        2.  The Vacatur Amendment Would Relate Back Under Rule 15 ................... 5

        3.  Equitable Tolling Applies In All Events ..................................................... 7

    B.  Levona Acted Diligently And Without Undue Delay ............................................. 9

    C.  Levona Acted In Good Faith ................................................................................. 10

    D.  Eletson Will Not Be Prejudiced ............................................................................ 10

CONCLUSION .............................................................................................................................. 10

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*ASARCO LLC v. Goodwin*,
  756 F.3d 191 (2d Cir. 2014) ............................................................................................... 7

*Badgerow v. Walters*,
  596 U.S. 1 (2022) ................................................................................................................ 8

*Bauer v. Carty & Co.*,
  246 F. App'x 375 (6th Cir. 2007) ....................................................................................... 2

*Bonar v. Dean Witter Reynolds, Inc.*,
  835 F.2d 1378 (11th Cir. 1988) ...................................................................................... 6, 7

*Booth v. Hume Pub., Inc.*,
  902 F.2d 925 (11th Cir. 1990) ............................................................................................ 6

*Chauffeurs Local 135 v. Jefferson Trucking Co.*,
  628 F.2d 1023 (7th Cir. 1980) ............................................................................................ 8

*Chelmowski v. AT & T Mobility, LLC*,
  615 F. App'x 380 (7th Cir. 2015) ....................................................................................... 7

*Florasynth, Inc. v. Pickholz*,
  750 F.2d 171 (2d Cir. 1984) ............................................................................................... 8

*France v. Bernstein*,
  43 F.4th 367 (3d Cir. 2022) ................................................................................................ 5

*Gerald Metals, LLC v. Gregory Davidson*,
  2021 WL 4993084 (D. Conn. Oct. 27, 2021) ..................................................................... 8

*Independent Laboratory Employees' Union, Inc. v. ExxonMobil Research & Engineering Co.*,
  2019 WL 3416897 (D.N.J. July 29, 2019), *aff'd*, 11 F.4th 210 (3d Cir. 2021) .................. 7

*Int'l Bhd. of Teamsters v. CBF Trucking, Inc.*,
  440 F. App'x 76 (3d Cir. 2011) .......................................................................................... 4

*Loch View LLC v. Seneca Insurance Co. Inc.*,
  2022 WL 1210664 (2d Cir. Apr. 25, 2022) ........................................................................ 7

*O.R. Sec., Inc. v. Pro. Plan. Assocs., Inc.*,
  857 F.2d 742 (11th Cir. 1988) ............................................................................................ 7

*Odeon Cap. Grp. LLC v. Ackerman*,
    864 F.3d 191 (2d Cir. 2017)..................................................................................................2

*Royal Park Invests. SA/NV v. Deutsche Bank Nat'l Tr. Co.*,
    192 F. Supp. 3d 400 (S.D.N.Y. 2016)..................................................................................10

*Smalls v. Collins*,
    10 F.4th 117 (2d Cir. 2021) ...................................................................................................9

*Stulberg v. Intermedics Orthopedics, Inc.*,
    1999 WL 759608 (N.D. Ill. Aug. 31, 1999) .........................................................................6

*Telenor Mobile Commc'ns AS v. Storm LLC*,
    524 F. Supp. 2d 332 (S.D.N.Y. 2007), *aff'd*, 584 F.3d 396 (2d Cir. 2009) ...........................2

*United Media Holdings, NV v. Forbes Media, LLC*,
    2017 WL 9473164 (S.D.N.Y. Aug. 9, 2017).........................................................................3

*United States v. Wong*,
    575 U.S. 402 (2015)..............................................................................................................8

*Wilkins v. United States*,
    598 U.S. 152 (2023)..............................................................................................................8

*Young v. United States*,
    535 U.S. 43 (2002)................................................................................................................8

### **Statutes**

9 U.S.C. § 6............................................................................................................................6

9 U.S.C. § 10(a)(1)..............................................................................................................1, 9

9 U.S.C. § 12.......................................................................................................................5, 8

### **Other Authorities**

94 Am. Jur. Trials 211, § 36 (May 2004) ..................................................................................6

Fed. R. Civ. P. 15 .........................................................................................................5, 6, 7, 9

Fed. R. Civ. P. 16 .......................................................................................................................9

JAMS Rule 17............................................................................................................................2

**INTRODUCTION**

Eletson defrauded the arbitrator and Levona by withholding evidence disproving Eletson's position on the core arbitral issue, committing and suborning perjury on that issue, and engaging in a year-long multi-forum cover up that prevented Levona from seeing and using the evidence. Eletson offers no credible explanation for that wrongfully withheld evidence—which shows the Buyout Option was not exercised—or its misconduct. Instead, Eletson offers a series of procedural arguments that, according to Eletson, mean this Court may not even *consider* Eletson's fraud because it took Levona too long to find it. But it simply cannot be that a party may hide dispositive evidence, cover up that fraud *for a year* by manipulating confidentiality orders and erecting other procedural barriers, and then claim "prejudicial delay" because its scheme did not fall apart sooner.

If Levona had the evidence and was able to use it sooner, Levona would have sought vacatur based on fraud sooner. But, despite Levona's best efforts over many months in many jurisdictions, those things did not occur until June and July 2024, when the bankruptcy court and the LCIA arbitrator permitted Levona to use the withheld documents, in each case over Eletson's strenuous objection. Levona's motion is timely, procedurally proper, and, as shown by persuasive appellate precedent, relates back to its initial petition. In addition, because enforcement must await any appeal and bankruptcy court approval and will not as a practical matter occur before plan confirmation, there is no timing-related prejudice. The only prejudice would be if Eletson successfully weaponized procedure to further its fraud. Levona's motion should be granted.

**ARGUMENT**

**I.    ELETSON'S FRAUD SUPPORTS VACATUR, DENIAL OF CONFIRMATION, AND FURTHER DISCOVERY**

    **A.    Levona's Proposed Amendment Is Far From Futile**

Levona has identified misconduct sufficient to satisfy FAA § 10(a)(1) and New York

Convention Article V(1)(b). Eletson's fraud, and the "nexus" between the withheld evidence and the arbitrator's decision, is plain: the withheld evidence is relevant to—and indeed contradicts—the arbitrator's finding that Eletson Gas exercised the Buyout Option and was thus entitled to damages. *See, e.g.*, *Odeon Cap. Grp. LLC v. Ackerman*, 864 F.3d 191, 194, 196 (2d Cir. 2017). That is more than sufficient to permit an amendment, including as to a defense to confirmation under Article V(1)(b).[1] Eletson's rebuttal arguments are meritless.

*First*, relying on *Bauer v. Carty & Co.*, 246 F. App'x 375 (6th Cir. 2007), Eletson wrongly asserts (Opp. 21) Levona has raised only "'differences in interpretation' over discovery requests." In *Bauer*, the "only basis" offered "for the proposition that [a party's] failure to produce [withheld evidence] was an intentional misrepresentation" was "an inference from [that party's] responses to [the] document requests." 276 F. App'x at 378. Here, by contrast, the withheld evidence should have been produced pursuant to both the JAMS rules and Levona's requests (Mem. 6-7).

Eletson does not explain how its decision to withhold documents concerning the central dispute in the arbitration comports with JAMS Rule 17(a)'s requirement of a "voluntary and informal exchange of all non-privileged documents and other information … relevant to the dispute or claim." Nor does Eletson show (Opp. 7) that Levona's request for documents concerning the "Murchison [sic] Buyout Steps" had a July 13, 2022 cut-off date—to the contrary, Eletson included post-July 13 documents on its privilege log as to that very request. ECF 125-10, at 21. Eletson's effort to reduce its intentional non-compliance to "differences in interpretation" likewise fails because the documents discuss—within Eletson, with Levona, or with outside

---

[1] Eletson misstates (Opp. 11) Levona's Article V(1)(b) defense, which is not premised on a "lack of arbitral due process" caused by the *arbitrator*, but rather by "*Eletson's* improper withholding of critical evidence" (Mem. 14) (emphasis added). *See Telenor Mobile Commc'ns AS v. Storm LLC*, 524 F. Supp. 2d 332, 368 (S.D.N.Y. 2007), *aff'd*, 584 F.3d 396 (2d Cir. 2009).

investors—the same proposal or model of "Eletson Gas Buyout Steps" and "Murchinson Buyout Steps."[2]  These documents on their face were responsive to request #11.  The same is true as to requests for documents concerning ship valuations, as each withheld document contains such valuations, *see* ECF 127-4, at 15; 127-5, at 15; 127-8, at 10; 127-9, at 10; 137-1, at 14, and for communications with investors to buy an interest in Eletson Gas, refinance debt, or raise capital, *see* ECF 127-10, at 6.[3]

*Second*, Eletson wrongly asserts (Opp. 21) Levona knew about the "the essential facts that they now claim to be the fraud during the Arbitration."  Levona believed Eletson's witnesses lied about exercising the Buyout Option, but Levona did not know Eletson had fraudulently withheld evidence as to that issue.  *United Media Holdings, NV v. Forbes Media, LLC*, 2017 WL 9473164 (S.D.N.Y. Aug. 9, 2017), which involved the legality of the arbitral proceeding where the "essential facts" were known to all relevant parties, *id.* at *12, is thus inapposite.  Nor is it relevant that certain shared representatives of Pach Shemen and Levona, *in their capacity as representatives of Pach Shemen*, had earlier access to the withheld documents.  It is undisputed that Levona—including undersigned counsel—did not see any of the documents until March 2024.

*Third*, contrary to Eletson's assertion (Opp. 6; *see id.* 21), the documents cannot be "construed as an attempt to move forward with the original transaction"—*i.e.*, the Buyout Option—or as collateral to the arbitration.  If the withheld documents were discussing a "finalization" of the Buyout Option, they could at most involve a $23 million payment, the exercise

---

[2]  *Compare* ECF 125-32 (July 13, 2022 email) at 2-3, *with* ECF 142-1 (first July 25, 2022 email) at 3 ("Buyout of Murchinson" from Eletson Gas); 142-2 (second July 25, 2022 email) at 3 (same); 142-3 (Aug. 12, 2022 email) at 3 ("Investor Model for Murchinson Buyout"); 142-4 (Aug. 18, 2022 email) at 3 ("Murchinson's Exit Payment"); 144-1 (Aug. 13 & 18, 2022 emails) at 4-5 (same).

[3]  The parties' pre-hearing fairness stipulation is irrelevant for the same reason.  Levona was not aware that Eletson had withheld evidence material to the central issue in the arbitration.

3

price in the BOL.  ECF 67-10 § 3.1.  Indeed, the amount would have been far lower if, as Eletson argued, the ships had been tendered as consideration to exercise the option.  But the withheld documents discuss a much higher purchase price of **$36.2 million**.  ECF 142-1, at 3-4; 142-2, at 4.  They thus concern a possible *new* buyout at a *new* price, made necessary because the BOL option lapsed.  In all events, the withheld evidence is material to whether that option was exercised.

*Fourth*, attempting to discredit the withheld documents, Eletson wrongly asserts they all "connect to" (Opp. 21) and were "prepared by or for" Eletson's former CFO (Opp. 4-5).  That theory disregards that the emails were sent by Eletson's most senior officers and directors (sometimes without including Eletson's former CFO), none of whom suggested in real time that the proposals were illegitimate or the product of a rogue employee—all at a time when Eletson management was laser-focused on those issues because, as Eletson acknowledges (Opp. 5), the documents were sent "after adversity between the parties arose" and, for some, after the arbitration had been filed.  *See* ECF 142-1, 142-2, 142-3, 142-4 (July 25, Aug. 12, and Aug. 18, 2022 emails); 144-1, at 5 (engagement letter).  Eletson cannot even get its story straight now, arguing on one hand that the documents were malevolent "post-hoc machinations orchestrated by Peter Kanelos," (Opp. 2), while at the same time arguing they were ordinary-course communications "attempt[ing] to move forward with the original transaction" (Opp. 6) that contain sensitive business information warranting sealing (ECF 130, 131).  Eletson cannot have it both ways.

*Finally*, the withheld documents' text disproves Eletson's argument (Opp. 21-22) that "[t]he information underlying the Documents was not hidden from the arbitrator" and that the arbitrator was "'aware of the essential facts' supposedly underlying the alleged fraud" (quoting *Int'l Bhd. of Teamsters v. CBF Trucking, Inc.*, 440 F. App'x 76, 78 (3d Cir. 2011)).  If the arbitrator had known (1) Eletson was considering different terms to purchase the Preferred Shares, (2)

4

Kertsikoff was personally attempting to raise funds to finance a buyout *after* Eletson filed the arbitration, and (3) it was not just one document discussing a buyout but rather at least half a dozen, he could not have found that Eletson Gas exercised the Buyout Option and could not have discredited the July 13 and 19 emails based on purported misconduct by Eletson's former CFO. The withheld evidence thus corroborates—*i.e.*, strengthens—the July 13 email and undercuts Eletson's effort to use its former CFO as a scapegoat. At the least, the "arbitrator's fact-finding task would have looked much different," which is sufficient to support vacatur and denial of confirmation. *France v. Bernstein*, 43 F.4th 367, 382 (3d Cir. 2022); *see* N.Y. Conv. art. V(1)(b).

### B. At Minimum, Discovery Is Warranted

If the Court determines the withheld evidence submitted to the Court does not warrant vacatur, discovery is appropriate to address, at minimum, the *known* gaps in discovery. Eletson does not dispute (Opp. 25) that the withheld evidence refers to other unproduced evidence or that Levona still has not seen a document it requested in July 2023. This is not a fishing expedition.

## II. ELETSON'S PROCEDURAL OBJECTIONS ARE MERITLESS

Eletson devotes most of its opposition to procedural objections. None holds up.

### A. Levona's Proposed Amendments Are Timely

#### 1. The FAA's Three-Month Limitations Period Does Not Apply To The New York Convention Defense To Confirmation

Eletson asserts without support (Opp. 10-11) that Levona's proposed new defense under New York Convention Article V(1)(b) is "time barred." That is incorrect because the only time bar Eletson identifies is the three-month period in 9 U.S.C. § 12, which applies only to motions to vacate under the FAA, not affirmative defenses under the New York Convention.

#### 2. The Vacatur Amendment Would Relate Back Under Rule 15

Levona seeks to amend its vacatur petition because Eletson's fraud in procuring the

5

Award—withholding key evidence—could not have been presented to the Court until now. The amendment "relates back to, and is treated as if it were part of, the original vacatur motion." 94 Am. Jur. Trials 211, § 36 (May 2004). Eletson cites no case where relation back was held inapplicable to such an amendment. And for good reason: a contrary result would encourage fraudsters to obtain arbitral awards by fraud and then conceal that fraud for three short months until they receive full immunity.

Rather, this case is on all fours with *Bonar v. Dean Witter Reynolds, Inc.*, 835 F.2d 1378 (11th Cir. 1988). There, the initial vacatur motion was based on "the conduct and result of the arbitration proceedings," and the Eleventh Circuit held that later-discovered perjury "during those proceedings" was a basis to vacate the award as procured by fraud "that arose out of the same transaction or occurrence set forth in the original motion to vacate." *Id.* at 1382. "Under Rule 15," the "amended motion to vacate relates back to the date of [the] original motion to vacate." *Id. Bonar* is "highly persuasive," *Stulberg v. Intermedics Orthopedics, Inc.*, 1999 WL 759608, *7 (N.D. Ill. Aug. 31, 1999), and its holding is black-letter law: "[I]f a motion for vacatur is timely filed and later amended … then that amendment—even though filed after the three month vacatur window has closed—relates back to … the original vacatur motion." 94 Am. Jur. Trials 211, § 36.

Contrary to Eletson's assertion, 9 U.S.C. § 6, which provides that FAA applications "shall be made and heard in the manner provided by law for the making and hearing of motions," does not render relation back unavailable. As *Bonar* explained, "although technically called a 'motion,' the papers filed by a party seeking to confirm or vacate an arbitration award function as the initial pleadings." 835 F.2d at 1382. And *Bonar* is not "suspect" (Opp. 17) in light of later Eleventh Circuit cases holding that *other* rules do not apply to vacatur proceedings because they "would be inconsistent with the [FAA's] language and purpose." *Booth v. Hume Pub., Inc.*, 902 F.2d 925,

6

931 (11th Cir. 1990). Indeed, both of Eletson's cited cases reaffirmed *Bonar*. *See id.*, n.6; *O.R. Sec., Inc. v. Pro. Plan. Assocs., Inc.*, 857 F.2d 742, 749, n.7 (11th Cir. 1988).

Eletson also stretches to avoid *Bonar* by citing (Opp. 16) inapposite, unpublished cases—none of which supports declining to allow amendments based on late-discovered infirmities such as fraud. In *Loch View LLC v. Seneca Insurance Co. Inc.*, 2022 WL 1210664 (2d Cir. Apr. 25, 2022) (summary order), for example, the party seeking to amend its vacatur petition "concede[d]" its petition was not a "pleading"; the amendment did not involve late-breaking discovery of new vacatur grounds; and the Second Circuit ultimately declined to apply Rule 15 because no party had sought leave to amend. *See id.* at *2. None of those circumstances is present here.

Similarly, *Chelmowski v. AT & T Mobility, LLC*, 615 F. App'x 380, 380-81 (7th Cir. 2015), and *Independent Laboratory Employees' Union, Inc. v. ExxonMobil Research & Engineering Co.*, 2019 WL 3416897, *1 (D.N.J. July 29, 2019), *aff'd*, 11 F.4th 210 (3d Cir. 2021), did not involve later-discovered fraud and considered at most only whether an amendment could be made as of right, not whether it related back to a timely filed petition. That difference matters because adding a newly-discovered ground for vacatur—particularly fraud—arising from "the same transaction or occurrence" as the initial petition does not prejudice the opposing party. *Bonar*, 835 F.2d at 1382. Likewise inapposite are Eletson's cited cases that do not involve Rule 15 (Opp. 15-16).

Finally, Eletson does not rebut (Opp. 24) that the proposed amendment would relate back. Unlike the amendment in *ASARCO LLC v. Goodwin*, 756 F.3d 191, 203 (2d Cir. 2014), which sought to add claims against a new entity that involved new acts of environmental contamination at new sites, Levona's proposed amendment involves the same parties and the same improper award as its initial petition. Levona merely seeks to add reasons that award should be vacated.

    **3.**    **Equitable Tolling Applies In All Events**

Even if relation back is unavailable or inapplicable, the proposed amendments are still

7

timely due to equitable tolling. Eletson's position (Opp. 11) that equitable tolling cannot apply to actions that are "a creature of statute" is wrong. "It is hornbook law that limitations periods are customarily subject to equitable tolling, unless tolling would be inconsistent with the text of the relevant statute." *Young v. United States*, 535 U.S. 43, 49 (2002) (cleaned up). And because "most time bars, even if mandatory and emphatic, are not jurisdictional," Congress must make a "clear statement" otherwise. *United States v. Wong*, 575 U.S. 402, 403 (2015) (citations omitted).

Section 12's three-month deadline is not jurisdictional. Federal subject-matter jurisdiction is generally not derived from the FAA. *Badgerow v. Walters*, 596 U.S. 1, 4 (2022). So it makes little sense to think Congress intended the FAA's limitations window to be "jurisdictional." Several courts have thus "held that the time limit in section 12 of the FAA is not jurisdictional." *E.g.*, *Gerald Metals, LLC v. Gregory Davidson*, 2021 WL 4993084, *4 n.4 (D. Conn. Oct. 27, 2021) (collecting cases). Eletson suggests (Opp. 12) that section 12 is jurisdictional because it "uses the imperative 'must' in describing the need to file within three months." But non-jurisdictional statutes of limitation use imperative language all the time. *E.g.*, *Wilkins v. United States*, 598 U.S. 152, 158-59 (2023). And, because Levona filed its vacatur petition within three months, Eletson's cited cases involving late-filed petitions (Opp. 12)—none of which concern a fraud that could not have been discovered within the three-month window—are inapposite.

Eletson wrongly relies (Opp. 11) on *Florasynth, Inc. v. Pickholz*, 750 F.2d 171 (2d Cir. 1984), and district court cases extending it to bar equitable tolling for vacatur petitions. *Florasynth* has no bearing on equitable tolling. It held a party could not raise vacatur arguments as a defense to confirmation where it had not sought vacatur within three months, reasoning that the FAA "fixes the time period within which the right may be enforced." *Id.* at 175 (quoting *Chauffeurs Local 135 v. Jefferson Trucking Co.,* 628 F.2d 1023, 1027 (7th Cir. 1980)). Precluding equitable tolling

8

on that basis would contravene Supreme Court precedent.

### B. Levona Acted Diligently And Without Undue Delay

Contrary to Eletson's suggestion (Opp. 13), Levona "has been pursuing [its] rights diligently." *Smalls v. Collins*, 10 F.4th 117, 145 (2d Cir. 2021). The "extraordinary circumstance" of Eletson's concealment "stood in [the] way" of Levona asserting a fraud argument (*id.*), thus satisfying equitable tolling requirements and standards in Rules 15 and 16. Although Levona had received vague second-hand information that documents of interest exist, Eletson weaponized a protective order to prevent Levona's counsel from seeing them, using them, or even knowing what they said. Eletson even strenuously opposed Levona's motion to modify the protective order, which would have enabled Levona to raise fraud sooner. *E.g.*, Bankr. ECF 295, at 41:7-13 (arguing it was not "possible that [Levona] could be speculating about a document other than by having violated the[] protective order"); *id.* at 46:4-19 (Levona: "we are playing this by the book by asking you for permission to see the[ documents] first before we go to the District Court"). Eletson cannot complain about delay it caused.

Nor is Eletson correct (Opp. 13-14) that "Levona could have used the Recording within the three-month statutory period as a basis to move to vacate and to seek discovery" based on fraud. Though the recording corroborates the withheld evidence—showing that Eletson by its own admission did not exercise the Buyout Option—it has no bearing on whether the Award "was procured by" *Eletson's* "fraud" of withholding key evidence. 9 U.S.C. § 10(a)(1).

Eletson also strains to argue (Opp. 14) that "at any time, Levona could have brought the existence of the Documents to this Court's attention." Levona knew nothing about their substance until now and could only have presented conclusory second-hand assertions about their supposed relevance—which Eletson surely would have argued fell short of the standard to obtain discovery

here. Indeed, when Levona sought to reopen the *arbitration* based on the same second-hand information, the arbitrator refused, at Eletson's insistence, ruling that the necessarily conclusory information supporting Levona's request was insufficient. ECF 67-52, at 3; *cf. Royal Park Invests. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 192 F. Supp. 3d 400, 405 (S.D.N.Y. 2016) (counsel had actual "knowledge of what ha[d] been produced' in parallel case) (cited in Opp. 14, 25).

Finally, Eletson's suggestion (Opp. 14) that Levona should have sought discovery before it was able to see or use the documents is also not credible. We know what Eletson would have said had Levona done so: the request was "speculati[on]," Levona had "violated the[] protective order," Bankr. ECF 295, at 41:7-13, and "there is no provision for discovery," Bankr. ECF 246, at 2, in this "summary" proceeding, Opp. 23. Eletson cannot fault Levona's refusal to speculate, to violate a court order, or to seek discovery that Eletson would have opposed.

### C.   Levona Acted In Good Faith

Eletson's lone bad-faith argument (Opp. 20) is that this motion is a delay tactic. Untrue. Levona has been trying from day one of these proceedings to see and use the withheld evidence. Until just weeks ago, Eletson successfully thwarted Levona's every attempt. *See supra*.

### D.   Eletson Will Not Be Prejudiced

Contrary to Eletson's argument that it will be prejudiced by a delay (Opp. 23), any delay would be of Eletson's own making. And Eletson's concern (*id.*) about purportedly delaying a bankruptcy plan confirmation is also groundless. The plans discuss scenarios whereby potential net distributions of proceeds from the Award may be available to creditors and some of the plans may depend on whether, or to what extent, any net value may exist from the Award, but allowing Levona to pursue fraud arguments would *not* affect plan confirmation, including timing.

## CONCLUSION

The Court should grant Levona's motion.

DATED: July 30, 2024                QUINN EMANUEL URQUHART & SULLIVAN, LLP

By *Isaac Nesser*
   Mark McNeill
   William B. Adams
   Isaac Nesser
   Odysseas Repousis
   Alex Van Dyke
   John Super

51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel: 212-849-7351
Fax: 212-849-7100
markmcneill@quinnemanuel.com
williamadams@quinnemanuel.com
isaacnesser@quinnemanuel.com
odysseasrepousis@quinnemanuel.com
alexvandyke@quinnemanuel.com
johnsuper@quinnemanuel.com

*Attorneys for Respondent/Cross-Petitioner Levona Holdings, Ltd.*

11