**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ELETSON HOLDINGS, INC. and ELETSON CORP., <br><br>           Petitioners/Cross-Respondents, <br><br>    v. <br><br> LEVONA HOLDINGS, LTD., <br><br>          Respondent/Cross-Petitioner. | Civ. No. 23-cv-07331 (LJL) |

**LEVONA'S REPLY REGARDING ARTICLE III JURISDICTION**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................ii

INTRODUCTION ..............................................................................................................1

ARGUMENT .....................................................................................................................2

    I.    The Court Has Article III Jurisdiction To Vacate The Award Even If Reed Smith Is  Displaced As Eletson's Counsel ...............................................................2

    II.    Reed Smith Confuses Prudential and Article III Jurisdictional Limits ...................7

    III.    Prudential Considerations Favor The Court Resolving Levona's Petition To Vacate ...............................................................................................................9

CONCLUSION .................................................................................................................11

CERTIFICATE PURSUANT TO LOCAL RULE 7.1(C) .............................................13

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*,
  532 U.S. 598 (2001) ........................................................................................................4

*Colo. River Water Conservation Dist. v. United States*,
  424 U.S. 800 (1976) ........................................................................................................9

*Copragri S.A. v. Agribusiness United DMCC*,
  2021 WL 961751 (S.D.N.Y. Mar. 15, 2021) ............................................................5, 7

*D.H. Blair & Co. v. Gottdiener*,
  462 F.3d 95 (2d Cir. 2006).........................................................................................4, 7, 10

*Dist. Council No. 9 Int'l Union of Painters & Allied Trades, A.F.L.-C.I.O. v.*
  *Future Shock Architectural Metals & Glass*,
  2023 WL 3374560 (S.D.N.Y. May 11, 2023) (Liman, J.) .........................................5

*Dreamtex, Inc. v. Alva Advance, LLC*,
  2023 WL 5390998 (S.D.N.Y. Aug. 22, 2023).........................................................4, 5

*In re Eletson Holdings, Inc.*,
  No. 23-10322 (S.D.N.Y. Bk.) .......................................................................................6

*Gonzalez v. Pacers Running, LLC*,
  2024 WL 1513753 (S.D.N.Y. Apr. 8, 2024) (Liman, J.) ...........................................4

*INS v. Chadha*,
  462 U.S. 919 (1983) ...........................................................................2, 3, 7, 8, 11

*Lord v. Veazie*,
  49 U.S. 251 (1850) ......................................................................................................8, 9

*Martini v. City of Pittsfield*,
  2015 WL 1476768 (D. Mass. Mar. 31, 2015) ...........................................................10

*Moore v. Charlotte-Mecklenburg Board of Education*,
  402 U.S. 47 (1971) (per curiam).................................................................................7

*Nat'l Football League Players Ass'n v. Nat'l Football League Mgmt. Council*,
  2009 WL 855946 (S.D.N.Y. Mar. 26, 2009) ............................................................5

*NLRB v. Constellium Rolled Prods. Ravenswood, LLC*,
   43 F.4th 395 (4th Cir. 2022) ....................................................................8

*Pope v. United States*,
   323 U.S. 1 (1944) ....................................................................................4

*Ratner v. Sioux Natural Gas Corp.*,
   719 F.2d 801 (5th Cir. 1983) ...................................................................8

*South Spring Hill Gold-Mining Co. v. Amador Medean Gold-Mining Co.*,
   145 U.S. 300 (1892) .................................................................................8

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ..........................................................................2, 6, 8

*United States v. Johnson*,
   319 U.S. 302 (1943) .................................................................................7

*United States v. Windsor*,
   570 U.S. 744 (2013) ............................................................... 3, 6, 7, 9, 11

*Whitehead v. Pullman Grp., LLC*,
   2015 WL 12915099 (E.D. Pa. Feb. 13, 2015),
   *aff'd*, 811 F.3d 116 (3d Cir. 2016) .........................................................5

## Other Authorities

13 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper,
   Federal Practice & Procedure § 3530 (3d ed.).....................................4, 9

Br. of U.S. House of Representatives, Appellee-Petitioner, *INS v. Chadha*,
   1981 WL 388493 .....................................................................................7

Br. for Court-Appointed Amica Curiae Addressing Jurisdiction,
   *United States v. Windsor*, 2013 WL 315234 ...........................................7

iii

## INTRODUCTION

The motion of Eletson Holdings Inc. and Eletson Corp. to displace Reed Smith as counsel to Petitioners and to compel Reed Smith to turn over its client files (ECF 242) presents a dispute between Eletson's current and former counsel that does not facially implicate Respondent/Cross-Petitioner Levona Holdings Ltd. But Reed Smith's opposition brief (ECF 252) raises jurisdictional arguments that could directly affect the Court's resolution of Levona's petition to vacate the nearly $100 million arbitration award against it (the "Award"). Levona thus respectfully submits this reply to address those jurisdictional arguments and protect its interest in having the Court resolve its vacatur petition.

Recent Supreme Court precedent confirms that the Court will retain Article III jurisdiction to adjudicate Levona's vacatur petition if Reed Smith is displaced as Eletson's counsel. That is so because Levona has a concrete stake in eliminating the financial obligation the Award imposes on it. Indeed, Reed Smith (purportedly on behalf of Eletson Gas) recently highlighted that stake by filing an action in England to recognize and enforce the Award against Levona. The Bankruptcy Plan confirmed by Judge Mastando expressly contemplates Reed Smith's displacement as counsel to Eletson, and there is no basis for Reed Smith's self-serving argument that implementation of that Plan would somehow strip this Court of Article III jurisdiction, vitiate the last 18 months of litigation, and mandate dismissal. The displacement of Reed Smith and any potential agreement between the parties that might result from that displacement, would at most raise prudential concerns that are outweighed by, among other things, Levona's strong interest in fairly adjudicating its vacatur petition in the face of non-parties' current and expected future efforts to enforce the Award. At all times during such proceedings, Levona would remain subject to its existing burden to show that the Award should be vacated for fraud.

Accordingly, the displacement of Reed Smith as counsel will not affect this Court's jurisdiction and provides no basis for dismissal.

## ARGUMENT

### I.     The Court Has Article III Jurisdiction To Vacate The Award Even If Reed Smith Is Displaced As Eletson's Counsel

Article III grants federal courts the power to resolve "Cases" and "Controversies." For a case or controversy to exist, "the plaintiff must have a 'personal stake' in the case." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (quotation omitted). To demonstrate that "personal stake," plaintiffs must "show (i) that [t]he[y] suffered an injury in fact … ; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* (citation omitted). "In sum, under Article III, a federal court may resolve only 'a real controversy with real impact on real persons.'" *Id.* at 424 (quotation omitted). Accordingly, the requirements of Article III are satisfied if a judicial decision will "have real meaning" for the plaintiff—regardless of whether the party on the other side of the matter likes, dislikes, or is indifferent to the plaintiff's preferred outcome. *INS v. Chadha*, 462 U.S. 919, 939 (1983).

Several Supreme Court cases exemplify the foregoing rule. For instance, in *Chadha*, a federal statute authorized either house of Congress to use a legislative veto to overturn an Attorney General decision to allow a deportable alien to remain in the country. 462 U.S. at 923. The plaintiff, Chadha, sought to invalidate that statute as unconstitutional. *Id.* at 927. The opposing party, the Immigration and Naturalization Service, *agreed* with Chadha that the statute was unconstitutional, though it still enforced the statute against Chadha. *Id.* at 928, 939. The Supreme Court held that "adequate Art[icle] III adverseness" existed even though the parties agreed on the result because "Chadha has asserted a concrete controversy, and our decision will have real meaning: if we rule for Chadha, he will not be deported." *Id.* at 939. The Court reasoned that "the

2

INS's agreement with Chadha's position does not alter the fact that the INS would have deported Chadha absent the Court of Appeals' judgment." *Id.*

As another example, in *United States v. Windsor*, 570 U.S. 744 (2013), the plaintiff argued that certain parts of the Defense of Marriage Act ("DOMA") were unconstitutional and had unlawfully caused her to pay certain estate taxes. *Id.* at 750-51. The government *agreed* that the disputed DOMA provisions were unconstitutional but refused to refund the taxes. *Id.* at 753-54. After the Second Circuit held that the challenged parts of DOMA were unconstitutional, *id.* at 754-55, the government filed a petition for certiorari asking the Supreme Court to *affirm* the decision below. *Id.* at 781-82. The Court took the case and, to ensure it had jurisdiction, appointed an amicus to argue that there was no case or controversy under Article III. *Id.* at 755. The Court rejected the amicus's arguments. Relying on *Chadha*, it held that "[t]he United States retains a stake sufficient to support Article III jurisdiction on appeal and in proceedings before this Court" because "[t]he judgment in question orders the United States to pay [the plaintiff] the refund she seeks" and "[a]n order directing the Treasury to pay money is a real and immediate economic injury." *Id.* at 757-58. The Court further explained that even though "the Executive may welcome this order to pay the refund" that fact did "not eliminate the injury to the national Treasury if payment is made, or to the taxpayer if it is not." *Id.* at 758.

That conclusion—that parties' agreement on the outcome of litigation is not an Article III issue—is the only sensible result because a party could deprive federal courts of jurisdiction by simply deciding during the course of litigation to agree with whatever the other party says. Such a rule would defy common sense. *See Chadha*, 462 U.S. at 939 ("[I]t would be a curious result if … a person could be denied access to the courts because the Attorney General of the United States agreed with the legal arguments asserted by the individual."). And it would conflict with the

general proposition that "voluntary cessation of a challenged practice does not deprive a federal court of its power." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 609 (2001).

Moreover, as a practical matter, federal courts have long exercised jurisdiction despite party agreement. For example, agreement on a question of law or the order that a court should enter does not deprive federal courts of Article III jurisdiction "to render judgment on consent … on a legal obligation which the court finds to be established by stipulated facts … or when the defendant is in default." *Pope v. United States,* 323 U.S. 1, 12 (1944) (citations omitted). Likewise, federal courts often exercise their power to resolve uncontested motions for summary judgment. *See, e.g.*, *Gonzalez v. Pacers Running, LLC*, 2024 WL 1513753 (S.D.N.Y. Apr. 8, 2024) (Liman, J.) (granting unopposed summary judgment motion); *see Pope*, 323 U.S. at 11 ("[I]t is not any the less a case or controversy upon which a court possessing the federal judicial power may rightly give judgment, because the plaintiff's claim is uncontested or incontestable."). The Supreme Court also has long appointed amici when parties agree on the correct outcome, such as when the government confesses error. 13 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3530 n.42 (3d ed.) (collecting cases).

In the post-arbitration context, the Second Circuit has explicitly contemplated that courts might resolve unopposed petitions to vacate arbitral awards and has stated that a district court should treat an unopposed "petition to confirm/vacate as an unopposed motion for summary judgment." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006). Federal courts thus regularly grant such petitions absent opposition. For instance, in *Dreamtex, Inc. v. Alva Advance, LLC*, 2023 WL 5390998 (S.D.N.Y. Aug. 22, 2023), the petitioners filed a motion to vacate on grounds of "'evident partiality' of the arbitrator, … fraud and misconduct, and … manifest

disregard of the law." *Id.* at *1. The respondent initially opposed the vacatur petition but then, "[a]fter full briefing was completed, Respondent submitted a letter to the Court … indicating that it 'consent[ed] to the petition and … vacat[ur].'" *Id.* Then, "[b]ecause the parties [we]re in agreement," the Court "GRANT[ED] Petitioners' now unopposed Motion to vacate." *Id.*; *see, e.g.*, *Copragri S.A. v. Agribusiness United DMCC*, 2021 WL 961751, *5-6 (S.D.N.Y. Mar. 15, 2021) (granting unopposed vacatur petition because arbitrator exceeded power and manifestly disregarded the law); *Whitehead v. Pullman Grp., LLC*, 2015 WL 12915099, *2 n.3 (E.D. Pa. Feb. 13, 2015), *aff'd*, 811 F.3d 116 (3d Cir. 2016) ("We have the authority to grant [vacatur] … as uncontested"); *cf. Dist. Council No. 9 Int'l Union of Painters & Allied Trades, A.F.L.-C.I.O. v. Future Shock Architectural Metals & Glass*, 2023 WL 3374560, *3 (S.D.N.Y. May 11, 2023) (Liman, J.) (granting unopposed motion to confirm arbitral award). Decisions from this district also make clear that federal courts may confirm arbitration awards where there is no present dispute because the losing party has agreed to comply with the result. *E.g.*, *Nat'l Football League Players Ass'n v. Nat'l Football League Mgmt. Council*, 2009 WL 855946, *4 (S.D.N.Y. Mar. 26, 2009) ("Arbitration awards, which clearly involve disputed cases and controversies between the parties … , may be confirmed without a new dispute arising subsequent to the award.").

Under the foregoing decisions, Levona's vacatur petition remains a live—indeed growing—case and controversy under Article III, regardless of whether Reed Smith is displaced and Eletson were to agree with, disagree with, or take no position on Levona's petition. The Award purports to impose a contractual obligation on Levona to pay various entities, including nonparties distinct from Eletson, a total of nearly $100 million. That obligation would not be discharged even if Eletson were to change positions and no longer oppose vacatur.

5

In fact, Reed Smith and others are currently attempting to enforce the Award in various ways all over the world. *First*, Reed Smith, purporting to act on behalf of Eletson Gas, filed a self-described proceeding to enforce the Award in England in December 2024. ECF 248-1, at 24. *Second*, the alleged Cypriot nominees issued formal board resolutions and corporate records as of February 2024, in reliance on this Court's February 2020 confirmation/vacatur decision, purporting to change the share registry and board of directors of Eletson Gas to reflect the relief they believe they obtained through the Award and to authorize themselves to enforce it. ECF 248-1, at 21-23. *Third*, in March 2024, Eletson Corp. and Eletson Gas obtained an ex parte injunction in the British Virgin Islands precluding Levona from dissipating certain assets based on this Court's confirmation/vacatur decision. *See In re Eletson Holdings, Inc.*, No. 23-10322 (S.D.N.Y. Bk.), ECF 490, 493. *Fourth*, Reed Smith and others are falsely asserting in multiple jurisdictions that the Award has been "confirmed" and runs against Levona. ECF 248, at 2.

Thus, as in *Chadha* and *Windsor*, this Court's decision on Levona's vacatur petition "will have real meaning." Just as the "order directing the Treasury to pay money [wa]s 'a real and immediate economic injury'" for the government in *Windsor*, the Award here is a "real and immediate economic injury" for Levona. 570 U.S. at 757-58 (quotation omitted). Either the Court will vacate the Award and relieve Levona of its obligation to pay nearly $100 million to entities that are currently trying to enforce that obligation, or Levona will face the real and serious injury that such a large payment obligation imposes. That is as straightforward as a "personal stake" can get for purposes of Article III. *TransUnion LLC*, 594 U.S. at 423. Moreover, just as "the INS's agreement" with the plaintiff in *Chadha* did "not alter the fact that the INS would have deported Chadha absent the Court of Appeals' judgment," here, whether Reed Smith is displaced or Eletson agrees with Levona's position would not alter the fact that Levona remains under the Award's

thumb absent vacatur by this Court.  462 U.S. at 939.  If Levona's vacatur petition is ultimately unopposed, the Court should simply at that point treat it "as an unopposed motion for summary judgment," in accord with the routine practice of federal courts and as the Second Circuit contemplates and instructs.  *Copragri*, 2021 WL 961751, at *4, *6 (quoting *D.H. Blair*, 462 F.3d at 110).

## II.    Reed Smith Confuses Prudential and Article III Jurisdictional Limits

Reed Smith's arguments to the contrary are misplaced and "elide[] the distinction between two principles: the jurisdictional requirements of Article III and the prudential limits on its exercise."  *Windsor*, 570 U.S. at 756.

In both *Windsor* and *Chadha*, the Supreme Court confronted arguments—just like the argument that Reed Smith makes here (ECF 252, at 18)—that under cases such as *Moore v. Charlotte-Mecklenburg Board of Education*, 402 U.S. 47 (1971) (per curiam), and *United States v. Johnson,* 319 U.S. 302 (1943), federal courts lack Article III jurisdiction when the parties before them desire the same result.  Br. of U.S. House of Representatives, Appellee-Petitioner, *INS v. Chadha*, 1981 WL 388493, *47 (citing *Moore*); Br. for Court-Appointed Amica Curiae Addressing Jurisdiction, *United States v. Windsor*, 2013 WL 315234, *23, *31 (citing *Johnson* and *Moore*). But the Supreme Court rejected those arguments in *Windsor* and *Chadha* and made clear that any lack of adverse positions between parties to an action is not an Article III issue; it is merely a "prudential consideration[]" that can be overcome by "countervailing considerations."  *Windsor*, 570 U.S. at 759-60 (noting, separate from Article III, that the parties' agreement "raises the risk … the Court faces a 'friendly, non-adversary, proceeding'") (quotation omitted); *Chadha*, 462 U.S. at 940 ("[H]ere may be prudential, as opposed to Art. III, concerns about sanctioning the adjudication of this case in the absence of any participant supporting the validity of [the statute].").  Again, all Article III requires is that the party invoking the court's jurisdiction have a "'personal

stake' in the case." *TransUnion*, 594 U.S. at 423 (quotation omitted); *see, e.g.*, *NLRB v. Constellium Rolled Prods. Ravenswood, LLC*, 43 F.4th 395, 402 (4th Cir. 2022) ("Adverse interests—that minimum adverseness threshold required by *Windsor*—exist only when judicial action would have 'real-world consequences' and '"real meaning" for the parties.'" (quotation omitted)).

Likewise, common control among parties does not convert their agreement on a result from a prudential issue into a jurisdictional one. The case on which Reed Smith relies (ECF 252, at 18) for this point, *South Spring Hill Gold-Mining Co. v. Amador Medean Gold-Mining Co.*, 145 U.S. 300 (1892), did decline to resolve an appeal between commonly controlled entities. *See id.* at 301. But it did *not* ground that decision on Article III or the Court's jurisdiction to hear only cases or controversies. Rather, like the Court's later decisions in *Windsor* and *Chadha*, the Court cited cases that addressed prudential concerns with proceedings between parties that agree on the outcome. *See id.* For example, the Court cited its earlier decision in *Lord v. Veazie*, 49 U.S. 251 (1850), where it had emphasized that "the objection in the case before" it was the prudential concern that "plaintiff and defendant have the same interest, and that interest adverse and in conflict with the interest of third persons." *Id.* at 255. Article III jurisdiction never entered the discussion. *Windsor* and *Chadha* now make clear why: Having parties with adverse arguments rather than parties under common control is a "prudential, as opposed to Art. III, concern[]." *Chadha*, 462 U.S. at 940.

Accordingly, federal courts have adjudicated cases even where the parties are under common control—an impossible outcome if that were a jurisdictional as opposed to prudential issue. *See, e.g.*, *Ratner v. Sioux Natural Gas Corp.*, 719 F.2d 801, 803 n.10 (5th Cir. 1983) ("That [plaintiff] is now [pending appeal] effectively the owner of the nonsettling defendants does not

itself render this case moot."); 13 Wright, Miller & Cooper, Federal Practice & Procedure § 3530 (3d ed.) ("[I]t is not possible to have a rigid rule even as to parties under common control.").

### III.    Prudential Considerations Favor The Court Resolving Levona's Petition To Vacate

Although Reed Smith does not address prudential considerations (having erroneously treated the issues presented by its displacement as jurisdictional), a wealth of "countervailing considerations" outweigh any prudential concerns that might stem from Reed Smith's displacement.  *Windsor*, 570 U.S. at 745 (quotation omitted).  To start, federal courts have a "virtually unflagging obligation" to exercise jurisdiction in legal actions.  *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).  The burden is thus on the party opposing the exercise of jurisdiction to show why a case should be dismissed because of prudential concerns.  Reed Smith has not attempted to do so.

Moreover, there is no concern here of the sham or collusive litigation affecting nonparties that the prudential requirement of adversariness seeks to weed out.  *E.g.*, *Lord*, 49 U.S. at 255 ("[T]o obtain the opinion of the court upon a question of law which a party desires to know for his own interest or his own purposes, when there is no real and substantial controversy between those who appear as adverse parties to the suit, is an abuse.");  13 Wright, Miller & Cooper, Federal Practice & Procedure § 3530 (3d ed.) ("Cases involving genuinely adversary interests, but lacking any dispute as to facts or remedy, must be sharply distinguished from the decisions rested on the fact of common interests and a shared desire to affect nonparties.").  Eletson Gas and the purported Cypriot nominees, the only relevant nonparties, are not only closely bound to the parties here but have also represented to this Court that they would move to intervene in order to protect their

putative interests (although they now have chosen not to intervene, presumably in furtherance of a misguided strategy of attempting to strip this Court of jurisdiction).  *See infra*, at 10-11.

Further, even without Reed Smith, the Court will be able to assess the merits of Levona's petition based on a concrete record established before the parties purportedly came under common control,  and the Court of course will grant vacatur only if Levona establishes that it is entitled to vacatur—as courts routinely do in ruling on uncontested motions for summary judgment.  *See, e.g.*, *DH Blair*, 462 F.3d at 109 ("[A] court 'may not grant the [unopposed summary judgment] motion without first examining the moving party's submission to determine if it has met its burden … .'" (quotation omitted)).  So there is no risk of an unsupported or unjust outcome.

Next, if the Court does not exercise its jurisdiction, Levona may well be left without recourse and the fraudulent Award will improperly hang over it.  This is an especially powerful reason to rule here because Reed Smith and its purported clients are presently trying to enforce the Award in other jurisdictions, Reed Smith and its purported clients keep falsely claiming in yet more jurisdictions that the Award has been confirmed, and the purported Cypriot nominees have every incentive to seek enforcement.  *See Martini v. City of Pittsfield*, 2015 WL 1476768, *4 (D. Mass. Mar. 31, 2015) (determining that "[t]he circumstances of this case … raise such 'countervailing considerations'" because "a contrary result would countenance unfair manipulation of litigation tactics by defendants").

Finally, but importantly, Reed Smith cannot fairly claim to be on the side of "prudence." It has been counsel to parties that perpetrated a fraud.  And it is now trying to evade judicial review. On October 30, 2024, Reed Smith stated to this Court that it, "as counsel to Eletson Gas, and the Sidley Austin firm, as counsel to the Preferred Nominees, are authorized to state that Gas and the Preferred Nominees intend to seek intervention" in this proceeding.  ECF 204, at 2.  But it has not

done so despite asking this Court to modify a stay so as to permit motions to intervene, and the Court agreeing to do so.  11/12/24 Hr'g Tr. 6, 18.  The only plausible reason for the absence of intervention motions is the vain hope that the Court will dismiss Levona's vacatur petition due to a supposed lack of adversity.  The law does not require that result, and the equities preclude it.[1]

## CONCLUSION

The Court should continue to exercise jurisdiction over Levona's vacatur petition if it displaces Reed Smith as counsel to Eletson Holdings and Eletson Corp.

---

[1]  If the Court did determine that it lacks or should not exercise Article III jurisdiction, Levona respectfully requests that the Court invite the purported Cypriot nominees to participate as amici—despite their voluntary and hypocritical absence to date.  *See Windsor*, 570 U.S. at 760 ("One consideration is the extent to which adversarial presentation of the issues is assured by the participation of *amici* … ."); *Chadha*, 462 U.S. at 940 ("The Court of Appeals properly dispelled any [prudential] concerns by inviting and accepting briefs from both Houses of Congress.").  In the further alternative, Levona respectfully requests leave to join them.

DATED: January 28, 2025          QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  /s/ *Isaac Nesser*
     Isaac Nesser
     William B. Adams
     Daniel M. Kelly
     Michael A. Wittmann
     51 Madison Avenue, 22nd Floor
     New York, NY 10010
     Tel: 212-849-7253
     Fax: 212-849-7100
     isaacnesser@quinnemanuel.com
     williamadams@quinnemanuel.com
     danielkelly@quinnemanuel.com
     michaelwittmann@quinnemanuel.com

     Matthew Scheck
     Matthew Roznovak (*pro hac vice*)
     Alexander Van Dyke (*pro hac vice*)
     300 W. 6th Street
     Austin, TX 78701
     Tel: 737-667-6100
     Fax: 737-667-6100
     matthewscheck@quinnemanuel.com
     matthewroznovak@quinnemanuel.com
     alexvandyke@quinnemanuel.com

     *Attorneys for Respondent/Cross-Petitioner Levona Holdings, Ltd.*

**CERTIFICATE PURSUANT TO LOCAL RULE 7.1(c)**

I, Isaac Nesser, certify that the foregoing reply contains fewer than 3,500 words. According to the word processing program used to prepare this reply, it contains 3,491 words.

By /s/ Isaac Nesser
Isaac Nesser

13