**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ELETSON HOLDINGS, INC. and ELETSON CORP., | |
| Petitioners/Cross-Respondents, | Case No. 1:23-cv-07331-LJL |
| v. | |
| LEVONA HOLDINGS, LTD., | |
| Respondent/Cross-Petitioner. | |

**MEMORANDUM IN RESPONSE TO "LEVONA'S REPLY REGARDING
ARTICLE III JURISDICTION"**

Louis M. Solomon
Colin A. Underwood
REED SMITH LLP
599 Lexington Avenue
New York, New York 10022
Tel.: (212) 549-0400
Lsolomon@reedsmith.com

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 3

I.    THERE IS NO SUBJECT MATTER JURISDICTION OVER A "FRIENDLY" LAWSUIT ........................................................................................................................ 3

II.   LEVONA'S STANDING ARGUMENT IS INAPPOSITE ................................................. 6

III.  PRUDENTIAL CONSIDERATIONS DO NOT APPLY ................................................... 9

IV.  INTERVENTION/JOINDER CANNOT CREATE JURISDICTION ............................... 11

CONCLUSION ............................................................................................................................. 12

CERTIFICATE OF COMPLIANCE ........................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*767 Third Ave. Assocs. v. Consulate Gen. of Socialist Fed. Republic of Yugo.*,
    218 F.3d 152 (2d Cir. 2000)...........................................................................................4

*Absolute Nev., LLC v. Grand Majestic Riverboat Co.*,
    646 F. Supp. 3d 426 (S.D.N.Y. 2022).............................................................................8

*Alvarez v. Tex. Educ. Agency*,
    2022 WL 1143326 (W.D. Tex. Apr. 15, 2022), *report and recommendation
    adopted*, 2022 WL 2920423 (W.D. Tex. June 27, 2022), *aff'd on other
    grounds*, 2023 WL 4418224 (5th Cir. July 10, 2023)...................................................11

*Arizonans for Official English v. Arizona*,
    520 U.S. 43 (1997)........................................................................................................4, 5

*Clark v. Hanley*,
    89 F.4th 78 (2d Cir. 2023) ................................................................................................8

*Cleveland v. Chamberlain*,
    66 U.S. 419 (1862)................................................................................................6, 7, 8, 9

*Dasma Invs., LLC v. Realty Assocs. Fund III, L.P.*,
    459 F. Supp. 2d 1294 (S.D. Fla. 2006) .............................................................................5

*Disability Advocates, Inc. v. N.Y. Coal. for Quality Assisted Living, Inc.*,
    675 F.3d 149 (2d Cir. 2012)............................................................................................11

*Dreamtex, Inc. v. Alva Advance, LLC*,
    2023 WL 5390998 (S.D.N.Y. Aug. 22, 2023)...................................................................9

*Hollingsworth v. Perry*,
    570 U.S. 693 (2013)...........................................................................................................4

*INS v. Chadha*,
    462 U.S. 919 (1983).......................................................................................................3, 7

*Kirkland v. New York State Dep't of Corr. Servs.*,
    1988 WL 108485 (S.D.N.Y. Oct. 11, 1988) ...................................................................11

*Lincoln Prop. Co. v. Roche*,
    546 U.S. 81 (2005)...........................................................................................................11

*Lord v. Veazie*,
    49 U.S. 251 (1850)....................................................................................................4, 8, 9

*Ex parte McCardle*,
  74 U.S. (7 Wall.) 506 (1869) ...................................................................................11

*NLRB v. Constellium Rolled Prods. Ravenswood*,
  LLC, 43 F.4th 395 (4th Cir. 2022)........................................................................5, 6

*Papazian v. Sony Music Entm't*,
  2017 WL 10154498 (S.D.N.Y. Nov. 22, 2017)........................................................4

*Ratner v. Sioux Natural Gas Corp.*,
  719 F.2d 801 (5th Cir. 1983) ...............................................................................4, 5

*Russman v. Bd. of Educ.*,
  260 F.3d 114 (2d Cir. 2001)......................................................................................6

*South Spring Hill Gold-Mining Co. v. Amador Medean Gold-Mining Co.*,
  145 U.S. 300 (1892)........................................................................................3, 4, 6

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021)..................................................................................................6, 7

*United States v. Johnson*,
  319 U.S. 302 (1943)..................................................................................................3, 6

*United States v. Windsor*,
  570 U.S. 744 (2013)......................................................................................3, 5, 7, 10

*Veritas Vincit, LLC v. Brown*,
  2024 WL 3543414 (E.D. Tex. Jul 25, 2024) ...........................................................5

**Statutes**

9 U.S.C. § 10(a)(1)...........................................................................................................8

**Rules**

Fed. R. Civ. P. 20.............................................................................................................11

Fed. R. Civ. P. 82.............................................................................................................11

**Other Authorities**

13 Wright, Miller & Cooper, Federal Practice & Procedure § 3530 (3d ed.)............9, 10

Reed Smith LLP ("Reed Smith") respectfully submits this brief in response to "Levona's Reply Regarding Article III Jurisdiction" (ECF 258, "Br."), as this Court permitted (ECF 260).

Reed Smith disagrees with any determination that the only parties here are New Eletson and Levona (ECF 252, "Opp."). Reed Smith's view is bolstered by the ruling yesterday of a three-judge Greek Court, in an adversarial proceeding, after briefing and argument, which rejected the exact same argument that the related New Eletson-Levona parties are making here and denied New Eletson's application to have Adam Spears appointed as manager (ECF 262, 264). Nonetheless, should this Court adopt that argument, this case must be dismissed for lack of subject matter jurisdiction. Nothing in this brief should be taken as an admission that Reed Smith's clients are not before this Court, do not exist, or otherwise have been extinguished.

## PRELIMINARY STATEMENT

This brief responds to the Levona brief and addresses the scenario in which this Court concludes that the only Petitioners are New Eletson, ultimately controlled by Murchinson, and the Respondent is Levona, also ultimately controlled by Murchinson. In that scenario, this litigation would become collusive, such that there would be no case or controversy before this Court, and dismissal would therefore be required.

Levona's brief largely ignores this elephant in the room. Focusing instead on cases where there are independent parties on each side of the "v," Levona asserts that it has standing. That is the wrong analysis. The question before the Court is whether, assuming a change in ownership in the Petitioners recognized by this Court, there are now two independent parties before this Court. There are not. Murchinson, and Levona's representatives Adam Spears and Mark Lichtenstein, are on both sides of the "v". Such a scenario presents blackletter lack of Article III jurisdiction. Prudential concerns are not relevant, and intervention cannot save such a collusive/"friendly" lawsuit.

- 1 -

We will not re-argue our showing of lack of adversity (Opp. 7-9, 13-16 (citing evidence)), especially because Levona makes no argument challenging that showing. We provide the following schematic showing the common control on both sides of the "v" here.

**THERE IS NO ADVERSITY (*see* Opp. 7-9, 13-16 (citing evidence))**



<u>**ARGUMENT**</u>

**I.     THERE IS NO SUBJECT MATTER JURISDICTION OVER A "FRIENDLY" LAWSUIT**

Levona claims that the issue before this Court involves not "the jurisdictional requirements of Article III" but rather "the prudential limits on" the exercise of such power (Br. 7).  Levona is wrong.

Levona's oft-cited precedent states that Article III deals with "the Constitution's case-or-controversy requirement," while prudential concerns "are essentially matters of judicial self-governance." *United States v. Windsor*, 570 U.S. 744, 757 (2013) (Br. *passim*).  The Supreme Court has repeatedly held that when parties come under common control, there is no longer an Article III controversy before the Court.  We cited two such cases in our opposition brief (Opp. 13-14, citing *United States v. Johnson*, 319 U.S. 302 (1943), and *South Spring Hill Gold-Mining Co. v. Amador Medean Gold-Mining Co.*, 145 U.S. 300 (1892)).

Levona virtually ignores *United States v. Johnson*, which stated that "in a litigation where only private rights are involved, the judgment will not be allowed to stand where one of the parties has dominated the conduct of the suit by payment of the fees of both."  319 U.S. at 304 (Opp. 13).  Levona erroneously claims that *Windsor* and *INS v. Chadha*, 462 U.S. 919 (1983), addressed the same issue raised in *Johnson* (Br. 7).  In fact, those cases neither cited *Johnson* nor discussed the jurisdictional issues arising from common control; nor do the two briefs that Levona cites from those cases (Br. 7) address either collusion or common control.

As for *South Spring Hill Gold-Mining Co.* (Opp. 14), Levona's only attempt to distinguish that case is its argument that the decision was "*not*" based on "the Court's jurisdiction to hear only cases or controversies" (Br. 8).  Contrary to Levona's argument, the Supreme Court made clear that the issue was that when "the litigation has ceased to be between

adverse parties, . . . the controversy is not a real one."  145 U.S. at 301.  The same is true for the

other case that Levona claims was based on "prudential concerns" rather than Article III case or

controversy jurisdictional requirements (Br. 8).  In *Lord v. Veazie*, the Supreme Court held that

"there must be an actual controversy," not "a feigned controversy."  49 U.S. 251, 255 (1850).

These holdings unmistakably fall under the case or controversy requirement of Article III.

Thus, an action between friendly or collusive parties is one that is not within the

jurisdictional boundaries of Article III.  "Congress may not confer jurisdiction on Art. III federal

courts to render advisory opinions, or to entertain friendly suits ... because suits of this character

are inconsistent with the judicial function under Art. III."  *767 Third Ave. Assocs. v. Consulate

Gen. of Socialist Fed. Republic of Yugo*., 218 F.3d 152, 164 (2d Cir. 2000) (quoting *Sierra Club

v. Morton*, 405 U.S. 727, 732 n.3 (1972), *superseded by statute on other grounds*).  Simply put,

federal courts "lack [the] authority to act in friendly or feigned proceedings."  *Arizonans for

Official English v. Arizona*, 520 U.S. 43, 71 (1997).

"A controversy must exist throughout litigation, not simply at the time the complaint is

filed."  *Papazian v. Sony Music Entm't*, 2017 WL 10154498, *1 (S.D.N.Y. Nov. 22, 2017);

*Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013) ("Article III demands that an 'actual

controversy' persist throughout all stages of litigation").  Levona does not dispute that this Court

must consider its jurisdiction upon a change in ownership of the Petitioners, focusing its

argument only on the standard and analysis to be applied to such determination.

The one case Levona cites to support its statement that "federal courts have adjudicated

cases even where the parties are under common control" (Br. 8) did *not* involve common control.

Levona omits the details from its citation:

> That Grant is now effectively the owner of the nonsettling defendants does not itself
> render the case moot.  ***Rapada, Sioux, and Sioux Pipeline are in reorganization***

> *proceedings under chapter 11 of the Bankruptcy Code, and the assignment of Rapada*
> *common stock to Grant is subject to prior bank liens. If Grant is entitled to further*
> *recovery from Sioux, and Sioux Pipeline, a resolution of the merits of this appeal will*
> *determine Grant's priority in the reorganization proceedings.*

*Ratner v. Sioux Natural Gas Corp.*, 719 F.2d 801, 803 n.10 (5th Cir. 1983) (Br. 8-9) (emphasis

added, citations omitted). There is no indication that Grant had any control whatsoever over the

debtors or their litigation position, or that he assumed the role of a trustee or debtor-in-

possession. Here, Murchinson/Pach Shemen affirmatively assert they have in fact taken over

control of Eletson Holdings, rather than simply remaining a creditor. And whether or not they

admit the fact of control, it is real.

In cases where in fact there is common control, courts continue to find that they lack

Article III jurisdiction to maintain the action.

> When Plaintiffs, acting through an entity who they control (Fiduciario), acquired
> Defendant Reticulum, they eliminated any genuine case or controversy between
> themselves and Reticulum. Even absent concerns of collusion ..., "a federal court
> [can]not adjudicate an action between two corporations controlled by the same person,
> even if one of the corporations ha[s] some minority shareholders." *Dasma Invs., LLC v.*
> *Realty Assocs. Fund III, L.P.*, 459 F. Supp. 2d 1294, 1304 (S.D. Fla. 2006).

*Veritas Vincit, LLC v. Brown*, 2024 WL 3543414, *7 & n.7 (E.D. Tex. Jul 25, 2024) (citation

omitted) ("It is immaterial that Fiduciario only acquired Reticulum years into this proceeding

because '[t]o qualify as a case fit for federal-court adjudication, "an actual controversy must be

extant at all stages of review, not merely at the time the complaint is filed"'") (quoting

*Arizonans*, 520 U.S. at 67).

The issue here is not whether two adverse parties agree on an outcome (which is the

thrust of most of Levona's cited cases). The issue is whether there are two adverse parties. In

*Windsor*, the Court made clear that whether there was "sufficient adverseness" is an Article III

issue. *Windsor*, 570 U.S. at 759 (referencing "adequate Art. III adverseness"); *see NLRB v.*

*Constellium Rolled Prods. Ravenswood,* LLC, 43 F.4th 395, 401 (4th Cir. 2022) (Br. 8)

("*Windsor* did not abandon the longstanding principle that Article III requires adverseness. *Windsor* instead reaffirmed that Article III requires 'sufficient adverseness' to confer an 'adequate basis for jurisdiction.'").  Here, the issue of adversity is that of the identity and control of the parties, not necessarily the particular arguments they choose to assert.  Levona cites only one case that even discusses the Supreme Court "common control" cases – and that case makes clear that common control evidences a lack of sufficient adverseness:

> There is a motif in the Supreme Court's adverseness decisions that considers **situations in which one party has come to control the litigation on both sides of the "V,"** where one party becomes the *dominus litis* (master of the suit) on both sides.  *See, e.g., S. Spring Hill Gold-Mining v. Amador Medean Gold-Mining*, 145 U.S. 300, 301 (1892). **This configuration is evidence that the suit lacks the necessary adverseness**. See *Cleveland [v. Chamberlain]*, 66 U.S. (1 Black) at 425; *Johnson*, 319 U.S. at 303-05.

*NLRB*, 43 F.4th at 400 n.5  (Br. 8) (emphasis added) (dismissing for lack of jurisdiction).  Here, where Murchinson controls both sides of the "v," there is no case or controversy.

## II.    LEVONA'S STANDING ARGUMENT IS INAPPOSITE

Levona claims that "all Article III requires is that the party invoking the court's jurisdiction have a 'personal stake' in the case" (Br. 7-8, citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021); *see also* Br. 2).  Based on this truncated view of Article III requirements, Levona devotes the bulk of its brief to arguing that it has such a personal stake.

The *TransUnion* case, however, does not purport to set out all the requirements for Article III jurisdiction.  Indeed, the first line of the opinion makes clear that its holding is limited to standing, and then only one aspect of standing:  "To have Article III **standing** to sue in federal court, plaintiffs must demonstrate, **among other things**, that they have suffered a concrete harm."  *TransUnion*, 594 U.S. at 417 (emphasis added).  The *TransUnion* case does not purport to deal with other requirements, such a collusion, mootness, and the like.  *See, e.g., Russman v. Bd. of Educ.*, 260 F.3d 114, 118-19 (2d Cir. 2001) ("[A]t [Article III's case or controversy

requirement's] uncontroverted core lies the principle that, at all times, the dispute before the court must be real and live, not feigned, academic, or conjectural. The requisite dispute must persist throughout the litigation . . ., and if the dispute should dissolve at any time due to a change in circumstances, the case becomes moot. Whenever mootness occurs, the court – whether trial, appellate, or Supreme – loses jurisdiction over the suit, which therefore must be dismissed."). There was no occasion in *TransUnion* to discuss the jurisdictional issues presented by the common control cases, and this Court's analysis is not circumscribed by the inapposite fact pattern presented in *TransUnion*.

In fact, none of the cases Levona cites concerning prudential issues involved parties under common control; the parties may have sought the same result, but they remained separate, independent parties. That was particularly true in Levona's prime authorities, *Windsor* and *Chadha*, where the U.S. Government was on one side of each suit as against a private party.

Here, where there is a Murchinson-controlled entity on both sides of the "v," Levona's interest in obtaining a ruling from this Court is insufficient to confer jurisdiction. Levona asserts that its interest in "adjudicating its vacatur petition in the face of non-parties' current and expected future efforts to enforce the Award" (Br. 1; *see also* Br. 5-6, 9-10) is enough, but that is precisely the kind of "interest" that will *not* create a case or controversy.

In a case where there had been an actual controversy, but the defendant had fully paid the plaintiff, the Supreme Court dismissed for want of jurisdiction, holding "this appeal is not conducted by parties having adverse interests, but for the purpose of obtaining a decision of this court, to affect the interests of persons not parties." *Cleveland v. Chamberlain*, 66 U.S. 419, 426 (1862):

> About a month after the decree was entered, Chamberlain became the equitable owner of Cleveland's judgment, and the "dominus litis" on both sides. He then agreed to pay counsel who appeared for Cleveland, the appellee . . . .
>
> Chamberlain becomes the sole party in interest on both sides, makes up a record, and has a case made to suit himself, in order that he may obtain an opinion of this court, affecting the rights and interest of persons not parties to the pretended controversy.
>
> We repeat, therefore, what was said by the court in [*Lord v. Veazie*, 49 U.S. 251 (1850)]: "Any attempt, by a mere colorable dispute, to obtain the opinion of the court upon a question of law, which a party desires to know for his own interest or his own purposes, when there is no real and substantial controversy between those who appear as adverse parties to the suit, is an abuse which courts of justice have always reprehended, and treated as a punishable contempt of court."

*Cleveland*, 66 U.S. at 426; *Lord v. Veazie*, 49 U.S. at 255 (no jurisdiction where "the plaintiff and defendant have the same interest, and that interest [is] adverse and in conflict with the interest of third persons, whose rights would be seriously affected if the question of law was decided in the manner that both of the parties to this suit desire it to be").

The practical implications of Levona's position demonstrate why jurisdiction is lacking. This Court is presently entertaining two uniquely fact sensitive issues—equitable tolling and fraud on the arbitrator. *See Clark v. Hanley*, 89 F.4th 78, 94 (2d Cir. 2023) (equitable tolling "raises fact-specific issues"); *Absolute Nev., LLC v. Grand Majestic Riverboat Co.*, 646 F. Supp. 3d 426, 442 (S.D.N.Y. 2022) ("high burden" to show 10(a)(1) fraud). With New Eletson and Levona—both controlled by Murchinson/Spears/Lichtenstein—as the purported "adverse" parties before this Court, these entities will have no incentive to engage in rigorous discovery or truly adversarial presentation of evidence to this Court. The idea, for example, that Adam Spears, CEO of New Eletson, will notice the deposition of Adam Spears, principal of Levona, and zealously pursue the facts concerning when he learned of the At-Issue Documents, and the diligence Levona took in bringing a claim for vacatur under 9 U.S.C. § 10(a)(1), beggars belief. These commonly-controlled parties would be able to procure and present evidence selectively to the Court with the

goal of obtaining an order to use against non-parties, an order that would not be the product of the

true adversity required by Article III.  This is the very danger of collusive lawsuits, as the Supreme

Court noted in *Cleveland* and *Lord v. Veazie*.

Levona asserts that if two parties consent to vacate an arbitration award, a court can

vacate the award without further analysis "[b]ecause the parties are in agreement as to the

resolution of" the vacatur motion.  *See Dreamtex, Inc. v. Alva Advance, LLC*, 2023 WL 5390998,

*1 (S.D.N.Y. Aug. 22, 2023) (Br. 4-5).  Assuming arguendo that that were the law, in *Dreamtex*,

there was no issue that the consent was collusive or was meant to be used against third parties.

Here, those are the very issues that demonstrate the lack of jurisdiction.  The same would be true

if Murchinson orchestrated either an unopposed motion to vacate or a purported contested

motion, because the facts presented to the Court would be curated by Murchinson on both sides.

In such circumstances, there is no Article III controversy.  "A judgment entered under such

circumstances, and for such purposes, is a mere form.  The whole proceeding was in contempt of

the court, and highly reprehensible[.]"  *Lord v. Veazie*, 49 U.S. at 255.  The case should be

dismissed.

## III.    PRUDENTIAL CONSIDERATIONS DO NOT APPLY

Collusive litigation is not subject to prudential considerations, because the cases make

clear that the lack of a justiciable controversy is a core Article III limitation (*see supra* Point I).

Even were the Court to consider such issues, however, jurisdiction would still not lie.

Dispositively, even Levona recognizes that "collusive litigation affecting nonparties"

cannot proceed (Br. 9, citing, *inter alia*, 13 Wright, Miller & Cooper, Federal Practice &

Procedure § 3530 (3d ed.) ("Cases involving genuinely adversary interests, but lacking any

dispute as to facts or remedy, ***must be sharply distinguished from the decisions rested on the***

***fact of common interests and a shared desire to affect nonparties***" (emphasis added))).  Yet

- 9 -

Levona focuses on "Eletson Gas and the purported Cypriot nominees, the only relevant nonparties" (Br. 9), and completely ignores the "collusive" aspect. Any purported "prudential" concerns would focus not on "nonparties" but on the actual parties before this Court. Levona does not make any argument separating itself from New Eletson, nor does it challenge any aspect of our showing that New Eletson and Levona are under common control (Opp. at 7-9, 13-16). This collusive litigation therefore must be dismissed.

Moreover, Levona's interest in foreclosing the Preferred Nominees from "seek[ing] enforcement" (Br. 10) further demonstrates that the very point of this collusive litigation is to "affect[] nonparties." 13 Wright, Miller & Cooper, Federal Practice & Procedure § 3530 (3d ed.). Such an interest is not a cognizable consideration, as we showed above (*see supra* Point II).

Nor is this a case like *Windsor*, where the "[r]ights and privileges of hundreds of thousands of persons would be adversely affected" if the case were dismissed. *Windsor*, 570 U.S. at 761. Indeed, even Levona would not be adversely affected. The vacatur part of this proceeding—which is all that Levona cares about—has not progressed meaningfully into discovery. The issues Levona wants to litigate may be raised in other fora, against parties that are truly adversaries that would actually engage in genuinely adversarial litigation. Any sham discovery that occurs between two parties controlled by the same persons is not a prudential consideration meriting the exercise of jurisdiction by this Court.

For completeness, Reed Smith notes that any failure to address Levona's allegations and aspersions should not be taken as agreement, and Reed Smith contests all such statements (*see, e.g.*, the unprofessional, unproven, and untrue statement that Reed Smith "has been counsel to parties that perpetrated a fraud" (Br. 10)).

## IV.    INTERVENTION/JOINDER CANNOT CREATE JURISDICTION

Levona ends its brief complaining that the Preferred Nominees (represented by separate counsel) have not yet sought to intervene, and requesting leave to join them (Br. 10-11 & n.1), as if such intervention or joinder could create jurisdiction where there otherwise is none.

"[S]ince intervention contemplates an existing suit in a court of competent jurisdiction and because intervention is ancillary to the main cause of action, intervention will not be permitted to breathe life into a 'nonexistent' law suit." *Disability Advocates, Inc. v. N.Y. Coal. for Quality Assisted Living, Inc.*, 675 F.3d 149, 160 (2d Cir. 2012). "Indeed, this rule is so deeply entrenched in our jurisprudence that it is an axiomatic principle of federal jurisdiction in every circuit to have addressed the question." *Id.* at 160-61 (collecting cases); *see also Kirkland v. New York State Dep't of Corr. Servs.*, 1988 WL 108485, *3 (S.D.N.Y. Oct. 11, 1988) ("The presence of the *interveners* in this action does not create sufficient adversity to provide jurisdiction. They have properly called the court's attention to the lack of subject matter jurisdiction in respect to the motion as brought by plaintiffs and defendants."). Similarly, "[c]ourts have found that joinder under Rule 20 'is distinct from a grant of jurisdiction and . . . cannot be used to expand the jurisdiction of the federal courts.'" *Alvarez v. Tex. Educ. Agency*, 2022 WL 1143326, at *4 (W.D. Tex. Apr. 15, 2022), *report and recommendation adopted*, 2022 WL 2920423 (W.D. Tex. June 27, 2022), *aff'd on other grounds*, 2023 WL 4418224 (5th Cir. July 10, 2023); *see also* Fed. R. Civ. P. 82 ("These rules do not extend or limit the jurisdiction of the district courts"); *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 90 (2005) (citing Rule 82 re joinder rules).

"Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514

(1869).  If this Court determines that the only parties before it are Levona and New Eletson, both controlled by Murchinson, this case must be dismissed for lack of jurisdiction.

## <u>CONCLUSION</u>

The Court should deny the Motion and grant such other relief as the Court deems proper.

DATED:    New York, New York
                February 6, 2025

**REED SMITH LLP**

<u>/s/ Louis M. Solomon</u>
Louis M. Solomon
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 251-5400
Facsimile: (212) 521-5450
E-Mail: lsolomon@reedsmith.com

*Reed Smith LLP*

## <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the word limit of S.D.N.Y. Local Rule 7.1(c), because, excluding the parts of the document exempted by that rule, and relying on the word count of the word-processing program used to prepare this document, this document contains 3487 words.

Dated:  February 6, 2025

/s/ Louis M. Solomon
Louis M. Solomon
