# EXHIBIT 1

Niles, Illinois

## TRANSLATOR AFFIDAVIT

I, Eleftherios Kritikakis of Niles, Illinois, am a qualified, Berlitz-certified legal translator and interpreter for the Greek and English languages, member of the American Translators Association (ATA) and the Association of Judiciary Interpreters and Translators (NAJIT).

I hereby certify that the attached translation of 2024.11.27 - ELETSON GAS κλπ. ΚΑΤΑ LENOVA HOLDINGS-AITH is, to the best of my knowledge and belief, a true and accurate translation from Greek into English.

Niles, IL, on February 28, 2025



Signature



**TRANSPERFECT**

City of New York, State of New York, County of New York

I, Shayna Himelfarb, hereby certify that the document "2024.11.27 - ELETSON GAS κλπ. KATA LENOVA HOLDINGS-AITH" is, to the best of my knowledge and belief, a true and accurate translation from Greek into English.



_____
Shayna Himelfarb

Sworn to before me this
February 28, 2025

_____
Signature, Notary Public

_____
Stamp, Notary Public

REPUBLIC
PIRAEUS FIRST
INSTANCE COURT

ELECTRONIC FILING
[hw:] [illegible]

[hw:] [illegible]

[hw:] [illegible]

[logo]

[hw:] *8368*

**K. F. KALAVROS LAW FIRM**
Chr. P. FILIOS • Th. Th. KLOUKINAS

[hw:] *6/3/2025*

[seal:] Dematerialized
[illegible]

**BEFORE THE SINGLE-MEMBER FIRST-INSTANCE COURT OF PIRAEUS**

[hw:] [illegible]
*11/28/2024*
[signature]

[Voluntary Jurisdiction Proceedings]

[hw:] [illegible]
*11/28/2024*
[signature]

# APPLICATION

**a)** Of the foreign maritime company with company name "**Eletson Gas LLC**", which is based in the Marshall Islands (Marshall Islands), Trust Company Complex, Ajeltake Road, Ajeltake Island, Majuro, MH 96960 legally represented by Vasilis Kertsikoff.

**b)** Of the foreign maritime company with company name "**Fentalon Limited",** which is based in Cyprus, 17 Ifigeneias Street, Strovolos, 2007, Nicosia, Cyprus, legally represented by Savvas Polydorou.

**c)** Of the foreign maritime company with company name "**Apargo Limited",** which is based in Cyprus, 17 Ifigeneias Street, Strovolos, 2007, Nicosia, Cyprus, legally represented by Loukas Hatzigiagou.

**d)** Of the foreign maritime company with company name "**Desimusco Trading Limited**", which is based in Cyprus, 17 Ifigeneias Street, Strovolos, 2007, Nicosia, Cyprus, legally represented by Marios Lazarou.

# VERSUS

**a) The foreign special purpose company with company name "Levona Holdings Ltd.",** which is based in the British Virgin Islands (Sea Meadow House, P.O. Box 116, Road Town, Tortola, British Virgin Islands), legally represented.

K. F. CALAVROS
UNIVERSITY PROFESSOR

M. K. CALAVROU D.E.A.
Ch. K. CALAVROU LL.M.
Th. Th. KLOUKINAS
A. G. KARALEKAS
A. G. TSILIKA

Ch. P. FILIOS
UNIVERSITY PROFESSOR

L. N. VERGETI LL.M.
H. A. KIOUSI LL.M.

M. Ch. ASIMINAKI
X. N. DIAMANTI M.A.
E. H. ZIAKAS Ph.D.
K. SP. IGLEZIS
P. N. KALODIKIS
A. D. KAFETZI LL.M.
A. A. KELESIDOU LL.M.
E. Th. KLOUKINA LL.M

I. G. DOLAPTSI LL.M.
A. N. PAPASATHOPOULOS LL.M.
A. K. ROUSAKIS LL.M.
N. A. TSEMBERA LL.M.
V. G. TSOURA LL.M.
K. G. FILIPOPOULITIS LL.M.
M. P. HAHAMI

19 VRANA
115 25 ATHENS
210 3698700
CALAVROS@CALAVROS.GR

5 PAVLOU MELA
546 21 THESSALONIKI
2310 500770
THESSALONIKI@CALAVROS.GR

65 DONATOU DIMOULITSA
49100
26610 49736
CORFU@CALAVROS.GR

WWW.CALAVROS.GR

[logo]

**b) The foreign special purpose company with company name "Pach Shemen LLC"** which is based in Delaware (1209 N. Orange Street, Wilmington, DE 19801), legally represented.

**c) The foreign special purpose company with company name "Murchinson Ltd",** which is based in Canada (500-145 Adelaide St W Toronto, ON, M5H 4E5 Canada), legally represented.

ON THE RECOGNITION AND DECLARATION AS ENFORCEABLE

Of the  final arbitration award issued in New York, United States of America (USA) dated 09/29/2023, binding under the laws of the place of issuance of the Arbitral Tribunal, consisting of Judge - Arbitrator Ariel E. Belen (hereinafter referred to as ***the "Arbitral Award dated 09/29/2023").***

********

**I.    BRIEF BACKGROUND**

The dispute over which the Arbitration Award, dated 09/29/2023, was issued, requesting the **recognition** and **declaration as enforceable** in Greece, derives from the "Third Amendment and Restatement of a Limited Liability Company Corporate Agreement for Eletson Gas LLC", dated **August 16, 2019,** as amended on **April 16, 2020,** by 1 Amendment to the Third Amendment and Restatement of a Limited Liability Company Corporate Agreement for Eletson Gas LLC *(hereinafter: "the LLC Agreement" or "LLCA").*

The **LLCA** regulates the relationships **between the shareholders of** the **first of us, Eletson Gas LLC** *(hereinafter: "the Company" or "ELETSON GAS"),* **while the provision on arbitration is included in article 12.14(a), page 69 of the LLCA.**

In particular:

**I.1. The incorporation of ELETSON GAS by Eletson Holdings Inc. and Blackstone Tactical Opportunities.**

In early 2013, the **foreign maritime company with company name "Eletson Holdings Inc."** *(hereinafter: "ELETSON HOLDINGS"),* which is based, according to its statutory seat, in Liberia, in fact in Greece, at 118 Kolokotroni Street in Piraeus, entered into a commercial agreement with the foreign investment fund **Blackstone Tactical Opportunities** *(hereinafter: "Blackstone"),* which manages alternative investments, to establish a joint venture focused on the market of liquefied petroleum gas (LPG) tankers. Indeed, to fulfill this

2

[stamp:] [logo:] HELLENIC REPUBLIC
PIRAEUS FIRST INSTANCE COURT

[logo]

purpose, the new company ELETSON GAS was established by Eletson Holdings and Blackstone[1], which was established as a limited liability company (LLC) under the laws of the Marshall Islands by virtue of the Limited Liability Company Corporate Agreement dated April 12, 2013; which, as mentioned above, was amended and restated on August 16, 2019 – Amended and Restated LLC Agreement, while an additional amendment was made on it on April 16, 2020.

From 2013 to 2021, **Blackstone** was the Company's **preferred** shareholder, while from 2013 to this day, **ELETSON HOLDINGS** owns the **Company's common shares** – the first of us herein.

**Eletson Holdings, therefore, is a company incorporated under the laws of Liberia, and owns, from 2013 to this day, the common shares of the first of us, Eletson Gas**. Furthermore, Eletson Corporation (***jointly with Eletson Holdings, hereinafter, "Eletson"***) is similarly incorporated under the laws of Liberia and is responsible, inter alia, (through subsidiary management companies) for the provision of management services of the ships directly or indirectly owned by the Company's subsidiaries. Eletson Holdings is the parent company of Eletson Corporation. Eletson belongs to three prominent Greek families, which are the families of Laskarina Karastamati ("Karastamati"), Vasilis Kertsikoff ("Kertsikoff") and Vasilis Hatzieleftheriadis ("Hatzieleftheriadis"), while each of the above persons holds various management positions in the sub-entities of Eletson.

More specifically, according to the recent Statement of Directors, Nominated Employees and Shareholders, dated 09/26/2024, **shareholders** of **Eletson Holdings** are the following foreign maritime companies, which belong to **Greek families, namely**:

a.    **The foreign maritime company "LASSIA INVESTMENT COMPANY"** of the family of Laskarina Karastamati ("Karastamati"), holder of 3,072 shares, representing percentage of 30.72% of the share capital of the Company;

---

[1] More precisely, Blackstone participated in Eletson Gas LLC through the following legal entities it controlled, namely: (i) Blackstone Family Tactical Opportunities Investment Partnership (CAYMAN) ESC L.P., (ii) Blackstone Tactical Opportunities Investment Partnership (CAYMAN) SMD L.P. and (iii) BTO Eletson Holdings L.P.

3

[logo]

[stamp:] [logo:]
HELLENIC REPUBLIC
PIRAEUS FIRST
INSTANCE COURT

**b.    The foreign maritime company "FAMILY UNITY TRUST COMPANY"** of the family of Vasilis Kertsikoff ("Kertsikoff"), holder of 3,072 shares, representing **percentage of 30.72%** of the share capital of the Company;

**c.    The foreign maritime company "GLAFKOS TRUST COMPANY"** of the family of Vasilis Hatzieleftheriadis ("Hatzieleftheriadis") holder of 3,072 shares, which represent percentage of 30.72% of the share capital of the Company;

**d.    The foreign maritime company "ELAFONISSOS SHIPPING CORPORATION" of the family of Nikos Zilakos ("Zilakos")**, holder of 392 shares representing **percentage of 3.92%** of the share capital of the Company, and finally,

**e.    The foreign maritime company "KEROS SHIPPING CORPORATION" of the family of Vasiliki Androulaki ("Androulaki")**, holder of 392 shares, which represent **percentage of 3.92%** of the share capital of the Company.

ELETSON HOLDINGS, therefore, parent company of Eletson Corporation, as mentioned above, belongs to foreign companies also belonging to Greek ultimate beneficiaries, which has been incorporated under the laws of Liberia and **has the center of its main interests in Greece, specifically in Piraeus of Attica, at 118 Kolokotroni Street.**


In early 2022, the first of us herein - Company, owned, directly or indirectly, **14 liquefied gas transportation ships,** while the revenues of the Company derive primarily from the exploitation of these ships. Eletson's fleet is the second largest in the market of ships of this category – the largest is Unigas' fleet, a major competitor of Eletson. **Eletson Corporation,** together with **EMC GAS Corporation,** which was established as subsidiary of Eletson Gas, are responsible for providing services for the management of ships directly or indirectly owned by Eletson Gas' subsidiaries. In particular, Eletson Corporation has undertaken the technical management, and EMC GAS Corporation has undertaken the commercial representation - monitoring - financial management of Eletson Gas. For the management services, Eletson Corporation receives management fees from the subsidiary ship-owning companies which belong to Eletson Gas itself. These management fees are an asset of **Eletson Corporation** and aa liability for the Company or the respective subsidiaries incurring the relevant cost. Throughout the <u>corporate relationship of Eletson with Blackstone, Eletson was managing the aforementioned ships.</u>

[stamp:] [logo:] HELLENIC REPUBLIC
PIRAEUS FIRST INSTANCE COURT

[logo]

### I.2. The acquisition of Blackstone's preferred shares by Levona Holdings Ltd.

In **early 2021, Blackstone** sought to sell its share in the Company. Blackstone and the **third** of the respondents herein – foreign special purpose company named "Murchinson Ltd" *(hereinafter: "Murchinson"),* another investment fund (hedge fund) which manages funds on behalf of institutional investors, signed a Confidentiality Agreement on approximately January 25, 2021 (the "NDA"). The NDA states that the parties *"wish to exchange certain proprietary or confidential information in order to investigate a potential direct investment trading deal ... in relation to certain liquefied gas transportation assets which belong to or are operated by Eletson Gas LLC".*

The NDA further provided  that the *"Confidential Information shall be used solely for the  purposes of evaluating, financing and executing the Investment ... and shall not be disclosed by the Receiving Party or its Representatives, unless (i) the Disclosing Party consents".* Under the NDA, **Murchinson** agreed not to *"contact or communicate directly or indirectly with any of Eletson's employees, lenders, charterers, customers, suppliers or any other person with whom Eletson has a business relationship, and  not to request any information in relation to said business relationship from that person without Blackstone's express written consent."*

When **Murchinson** and **Blackstone** reached an agreement, according to which Murchinson would buy 100% of Blackstone's shares in Eletson Gas for the initial price of $3 million, Murchinson formed a special purpose company that would own these shares, that is, the first respondent herein foreign special purpose company **"Levona Holdings Ltd"** *(hereinafter: "Levona");* which is based, according to its articles of association, in the British Virgin Islands. **Levona** is owned by 60% by Nomis Bay Ltd and by 40% by BPY Ltd, i.e. two hedge funds, which are controlled and managed by **Murchinson – third of the respondents herein**.

On **November 2, 2021**, **Blackstone** transferred indeed its shares in the Company to **Levona,** which thus become a shareholder of the first of us, holding all (100%) of **its preferred shares (stock shares),** while ELETSON HOLDINGS continued to hold all (100%) of the common shares / stock shares of ELETSON GAS, pursuant to the LLC Agreement, under the terms of which Levona was entered, as a result of the above transfer. Subsequently, Levona appointed the four representatives of the board of directors of the Company, namely: Eliyahu Hasset ("Hasset"), Joshua Fenttiman ("Fenttiman"), Mark Lichtenstein ("Lichtenstein") and Adam Spears ("Spears").

[stamp:] [logo:]
HELLENIC REPUBLIC
PIRAEUS FIRST
INSTANCE COURT

[logo]

**I.3. Levona's agreement to withdraw from Eletson Gas by transferring its (Levona's) shares either to Eietson Gas or to companies it would indicate.**

Murchinson and Levona stated from the outset that they did not intend to be long-term investors, but wanted to withdraw soon with a significant profit over their investment. That is why shortly after Levona acquired the (preferred) shares of Biackstone by Levona, Eletson's executives and Levona's representative, Adam Spears, began to discuss an agreement that would allow  Eletson to acquire the shares of Levona, which  took place mainly in January and February 2022. These discussions resulted in the conclusion of a Binding Offer Letter (**_hereinafter "BOL"_**) between Eletson Holdings, Eletson Corporation, Eletson Gas and Levona, dated February 22, 2022.

**Term 2.1 of the BOL** provided that:

> *"Subject to and in exchange for the Transfer which takes place, and under the conditions set out in Terms 2.2. and 2.3, Levona hereby grants Eletson Gas the preemptive right upon written notice to Levona by the two companies (a "Preemptive Right Notice"), according to which Eletson Gas or another company indicated by it is entitled to purchase all shares held by Levona in Eletson Gas (the "Option Company Shares") in exchange for a consideration equal to the Call Option Exchange payable in cash upon the conclusion of the transfer of the Company Shares into an account which Levona may indicate in writing. (J-06 §2.1)."*

o  **Term 2.2. of the BOL** provided that Notice of the Option Exercise may only be served after:

**(a)** the Loan, that is, the Intra-Group Loan, pursuant to which Levona provided to "ELETSON GAS" a loan of up to US$10 million for a period of up to two (2) years and which was amended in April of the same year, allowing the Company the capacity to raise an additional US$4 million and any interest accrued thereon has been fully repaid; or

[stamp:] [logo:] HELLENIC REPUBLIC
PIRAEUS FIRST INSTANCE COURT

[logo]

**(b)** an adequate guarantee and/or security is provided for the Loan (the adequacy of such security lies with Levona's discretion).

Pursuant to **Term 2.3 of the BOL,** Eletson Gas had to exercise the option by sending the Option Exercise Notice **within thirty days of the BOL's (signing) date,** unless the period was extended under Terms 2.4 or 2.5 of the BOL.

"Call Option Exchange" was defined as "*amount equal to USD 1* **plus an amount equal to USD 23,000,000** *minus the Net Value.* If the Net Value equals US$23,000,000, the Call Option Exchange will be US$1. If the Net Value exceeds US$23,000,000, the amount owed on the Loan will be reduced by the amount of the balance."

Indeed, after the BOL was signed on **March 11, 2022**, the parties entered into a series of contracts, according to which, inter alia (a) Eletson Gas transferred to Levona the shares it held in the ship-owning companies MT SYMI **and** MT TELENDOS **worth S23,000,000 as suitable consideration of the acquisition of Levona's preferred shares**; and **(b) Eletson Corporation** assigned to Levona all of its claims in respect of its management fees and liquidity provision due to it by Eletson Gas; or its subsidiaries, thereby providing Levona with sufficient collateral for the Loan.

In particular, the following "**Transactional Documents**" were signed between the parties:

**(i)**  the Intra-Group Loan, pursuant to which Levona provided Eletson Gas with a loan of up to US$10 million for a period of up to two years;

**(ii)**  the Share Transfer Agreement pursuant to which Eletson Gas transferred to Levona 100% of the shares of the Special Maritime Enterprises (SME) SYMI II and TELENDOS II;

**(iii)**  the Assignment of Claims, pursuant to which Eletson Corporation assigned to Levona all its claims in respect of management fees and the provision of liquidity owed to it by the Company or its subsidiaries;

**(iv)**  the act of Waiver and Release; and

**(v)**  the Letter of Fundamental Acts.

7

[stamp:] [logo:]
HELLENIC REPUBLIC
PIRAEUS FIRST
INSTANCE COURT

[logo]

Following the above, Levona was no longer a shareholder of the first of us, Eletson Gas, while the latter indicated, according to the agreement in the BOL, as companies to which the shares of Eletson Gas would be transferred, the second through the fourth of the applicant foreign maritime companies herein, based in Cyprus, Fentalon Limited, Apargo Limited and Desimusco Trading Limited (**"the New Preferred Shareholders"),** which became, therefore, the preferred shareholders of the first of us Company on **03/11/2022**.

In fact, Eletson Holdings and in particular Eletson Corporation, without having a legal obligation to do so, offered to assist Levona in further reselling these ships (SYMI and TELENDOS) it had acquired per the above to third parties, i.e. to liquidate them, thus obtaining the relevant benefit itself. In this way, Levona's investment of three million US dollars ($3,000,000) in November 2021 had an extra-multiplying return, that is, an amount of US$23 million just a few months later.

**I.4. The unconventional, in bad faith, and contrary to good faith and good transactional ethics conduct of Levona. – The violation of the terms of the LLC Agreement by Levona.**

However, while communications and procedures between Eletson and Levona continued about changing the flag of the two ships and resell them to third parties, Levona (about mid-July 2022) suddenly started claiming that (while indeed the shares of SMEs SYMI and TELENDOS had been transferred to them as early as March 2022) they supposedly had not transferred, to Eletson Gas their preferred shares in Eletson Gas, and that they were supposedly still a shareholder of the Company, in fact a preferred one, alleging that according to the BOL, Eletson Gas should have followed some formal procedures as well for exercising an option to acquire such preferred shares, something that, always according to Levona's allegations, had not happened. Therefore, Levona began claiming at that point BOTH that its ships had been transferred AND they had not transferred the preferred shares it owned in Eletson Gas, and therefore it continued to be the preferred shareholder of the Company. In fact, Levona's conduct, in bad faith, unconventional and criminally punishable had become apparent when they attempted to sell the other twelve (12) ships of the Eletson Gas management fleet to Eletson's major competitor, the company Unigas. In particular, on **July 15, 2022**, Levona entered into a Letter of Intent to sell the entire fleet of the Company for US$262 million with Unigas (***hereinafter "Unigas LOI***"), **thus violating the terms of the LLC Agreement** [see above **under par. I.1.**], **given that, after Levona ceased to be a shareholder of the Company, they had no right under the LLCA to enter into the Unigas LOI or to otherwise act on behalf of the Company,** thereby causing, in bad faith, with their unconventional conduct contrary to the rules of good faith and transactional ethics, **damages to us, currently applicants, i.e. to Eletson Gas (first of the applicants herein) and to the New Preferred Shareholders (third to fourth of the applicants herein).**

8

[stamp:] [logo:] HELLENIC REPUBLIC
PIRAEUS FIRST INSTANCE COURT

[logo]

Therefore, that dispute, which was referred, according to the following, to an arbitration resolution, lies in Levona's breach of the terms of the "Third Amendment and Restatement of the Limited Liability Company Corporate Agreement for Eletson Gas LLC" **("the LLC Agreement" or "LLCA"),** dated **August 16, 2019,** as amended on **April 16, 2020,** by the Third Amendment and Restatement of the Limited Liability Company Corporate Agreement No. 1 for Eletson Gas LLC, which **LLCA,** as mentioned above, regulates the relationships between the shareholders of the first of us, Eletson Gas LLC.

## II.     THE ARBITRATION CLAUSE

The critical  **arbitral clause** in this case has been made in **article 12.14(a) on page 69** of the "Third Amendment and Restatement of the Limited Liability Company Corporate Agreement for Eletson Gas LLC" dated **August 16, 2019 (LLC Agreement),** that was concluded, as mentioned above, and was first signed between **Eletson Holdings** and **Blackstone** [see above **under I.1.**] in the place of which Levona entered on **November 2, 2021,**   as special successor to the latter [see above **under I.2.**],  by accepting its terms, and which is as follows:

*"12.14 Disputes.*

*(a)*     *Any dispute, claim, or controversy arising out of or relating to this Agreement or its breach, termination, performance, interpretation, or validity (including determination of the scope or enforceability of this arbitration agreement) shall be determined **by arbitration in New York County, New York State,** or any other mutually acceptable location, before **a single arbitrator.** The arbitrator shall be selected by agreement of the parties. If the parties are unable  to agree to an arbitrator within 15 days of filing the application for arbitration, **JAMS shall appoint the arbitrator. The arbitration is conducted by JAMS in accordance with its own arbitration rules and procedures.** Federal arbitration law governs the interpretation and performance of such arbitration proceedings. The arbitrator **shall apply the laws of the State of Delaware and the Republic of the Marshall Islands,** as the case may be, in accordance with section 12.13.*

[stamp:] [logo:]
HELLENIC REPUBLIC
PIRAEUS FIRST
INSTANCE COURT

[logo]

**(b)**  The parties agree that the **arbitration** provided for in this section 12.14 shall be the **sole and binding method to resolve any such dispute,** and shall be used in lieu of any judicial complaint which is expressly waived herein, except for any action to compel the arbitration or enter judgment upon an arbitral award pursuant to this section 12.14.

**(c)**  The parties agree that they shall attempt and intend to attempt, and the arbitrator shall use his/her best efforts to do so, to complete the arbitration proceedings and to have a final arbitrator award within 150 days from the date of the selection of the arbitrator - subject to the condition, however, that the arbitrator is entitled to extend said period of 150 days one or more times to the extent that the arbitrator deems it necessary for the adjudication of the claim, and the parties have the right to extend said period of 150 days by written agreement. The arbitrator is obliged to deliver his/her decision on the dispute to each of the parties, who must immediately act in accordance with it. It is expressly understood and agreed that each party may make a decision on any award issued in accordance with the arbitration provisions of this section 12.14, by recourse to any court having jurisdiction. The parties agree that the arbitrator has the authority to grant injunctive relief or other forms of equitable relief (including, but not limited to, injunctive or temporary relief) to any party (i) to preserve that party's rights pending final judgment on the merits, or (ii) which prevails in any such arbitration.

**(d)**  Each party shall be initially responsible for its own attorneys' costs, under the condition, however, that the arbitrator has the discretion to award reasonable attorneys' fees and reasonable travel costs (other than meals) to the prevailing party, which fees may be determined by the arbitrator of such action or imposed on a separate action brought before an arbitrator for such purpose in accordance with this section 12.14; **and** such fees are added to any other assistance that may be awarded.

[stamp:] [logo:] HELLENIC REPUBLIC
PIRAEUS FIRST INSTANCE COURT

[logo]

(e)     *Each party to this agreement shall maintain strict confidentiality with respect to all aspects of any arbitration initiated pursuant to this agreement and not disclose the fact, the conduct or outcome of the arbitration to non-parties or non-participants, except for notices (i) to consultants and testifying experts who agree to maintain confidentiality under this section 12.14(e), (ii) to the extent required by applicable law, or (iii) to the extent necessary to issue summons o recognition, confirmation or execution of any award or ratification in the arbitration, without prior written consent of all parties to the arbitration.*

(f)     *Each of the parties irrevocably agrees that (i) any dispute, claim arising out of or in connection with this agreement that cannot be resolved in arbitration under the laws of the Republic of the Marshall Islands; or (ii) any judicial act or proceedings  for compulsory arbitration or the performance of any arbitration award granted under this Section 12.14 may be brought before the State or federal courts located in New York County, New York State. Each of the parties hereby irrevocably accepts (A) the jurisdiction of the above courts for the purposes set out in the above sentence, (B) agrees that the final judgment in any such proceeding or proceeding will be final and may be enforceable in other jurisdictions by action on the judgment or in any other manner to the extent provided by law; (C) any opposition, to the fullest extent permitted by law now or in the future to the place of conduct of any such judicial action or proceeding brought before that court and any claim that any such judicial action or proceedings has been brought in an improper court is advised; and (D) consent to the service of the action in the manner provided for in the notices in section 12.2 (provided that, nothing in this Agreement shall affect the right of either party to bring the action in any other way permitted by law). EACH PART IRREVOCABLY WAIVES ANY RIGHT TO A JURY TRIAL IN ANY ACTION ARISING OUT OF OR RELATED TO THIS AGREEMENT.*

[logo]

[stamp:] [logo:]
HELLENIC REPUBLIC
PIRAEUS FIRST
INSTANCE COURT

### III.    RECOURSE TO ARBITRATION – THE CRITICAL ARBITRATION AWARD DATED 09/29/2023

Following Levona's aforementioned, unconventional and in all bad faith conduct, which, as mentioned above **under par. I.4.** entered, on **July 15, 2022** into a Letter of Intent with Unigas, a major competitor of the Company (**Unigas LOI**), for the sale of the entire Company fleet for US$262 million, immediately, **both** the shareholder of the first of us, **Eletson Holdings**, and its subsidiary, **Eletson Corporation,** responsible for the provision of management services for ships belonging to the Company through its subsidiaries (the management fees are an asset of **Eletson Corporation** and a liability for the Company or the respective subsidiaries undertaking the cost) **appealed to arbitration** pursuant to their written recourse to Levona dated **07/29/2022**, before JAMS, on the basis of the above arbitration clause of **article 12.14(a) on page 69** of the "Third Amendment and Restatement of a Limited Liability Company Corporate Agreement for Eletson Gas LLC" dated **August 16, 2019 (LLC Agreement).** JAMS proceeded to the appointment of the Arbitral Tribunal, and specifically the appointment of the Judge - Arbitrator Ariel E. Belen as the (sole) arbitrator.

With their recourse above, the aforementioned plaintiffs requested that it be recognized that Levona **had breached the terms of the LLCA**, as well as the **rules of good faith and transactional ethics,** since **the respondent, Levona, had ceased to be a shareholder of Eletson Gas**, following Eletson's exercise of the Option to Acquire the Preferred Shares of the first respondent (Levona) in the Company, in accordance with the terms of the concluded BOL and in particular following the transfer, to Levona, of the shares held by **Eletson Gas** in the ship-owning companies of the ships SYMI and TELENDOS worth US$23,000,000, by virtue of which (transfer) the preferred shares that Levona owned were acquired, at the direction of the first of us, Eletson Gas, and became New Preferred Shareholders of said their owners became the New Preferred Shareholders thereof - currently second through fourth of the applicants.

**Therefore, based on the above, the plaintiff companies argued that Levona** had no right under the LLCA to enter into the Unigas LOI or to act in any other way on behalf of the Company, while the acts to which it proceeded resulted to property damage of all the applicants herein, that is, Eletson Gas itself, as well as its New Preferred Shareholders, Fentalon Limited, Apargo Limited, and Desimusco Trading Limited, the remedy of which (damage) requested through their aforementioned recourse.

12

[stamp:] [logo:] HELLENIC REPUBLIC
PIRAEUS FIRST INSTANCE COURT

[logo]

Said Arbitral Tribunal, consisting of its sole Arbitrator, Mr. Ariel E. Belen, after investigating the case, following the principle of equality and hearing both sides, invited the parties to attend the hearing, and after having taken into account the evidence produced and heard the attorneys of both sides, as well as the witness statements given during the discussion, which took place on May 15, 16, 18, 19, 22, 23 and 24 of 2023, issued his final decision dated 09/29/2023, which was published in New York, United States of America (USA), that is, at the place which was agreed as the venue of the arbitration.

In accordance with that decision, the Arbitral Tribunal decided **on the one hand** that **Eletson exercised the option under the terms of the BOL, _on the other hand_, adjudicated** on the claims of the above plaintiffs, and that indeed Levona **had breached the terms of the LLCA, and that the same** along with its affiliates "Pach Shemen" and "Murchinson" had violated the **rules of good faith and transactional ethics,** causing quantifiable damages to Eletson Gas and its New Preferred Shareholders.

**III. 1. The rationale for the Arbitration Award dated 09/29/2023. - The evidence of the bad faith, unconventional and contrary to transactional ethics conduct of Levona, Murchinson and Pach Shemen, that is, the current respondents.**

In particular, as discussed in CHAPTER "***V. ANALYSIS AND DECISION ON THE SUBSTANCE OF THE CLAIMS AND OF THE COUNTERCLAIMS OF THE PARTIES***" of the Arbitration Award dated 09/29/2023, Judge-Arbitrator Ariel E. BELEN ruled that the following were proven:

> "**_A. Eletson exercised the option under the terms of the BOL._**
>
> [...] _As a result, after weighing the evidence, I find that the conditions for the acquisition are more likely to have been met. Therefore, according to the BOL, Levona's rights should have been transferred to Eletson Gas or its designee. As mentioned above, Eletson has demonstrated that Eletson Gas transferred these rights to the Preferred Shareholders. Thus, as of March 11, 2022, Levona was no longer the Preferred Shareholder and ceased to have any ownership in the Company._

13

[stamp:] [logo:]
HELLENIC REPUBLIC
PIRAEUS FIRST
INSTANCE COURT

[logo]

*It follows, therefore, that Levona had no power to enter into the Unigas LOI, to direct the Company's business or otherwise to exercise control over the Company's assets.*

**B. Eletson's claims prior to the BOL.**

**[…]**

### iii.    Claims after the acquisition/prior to the BOL

*As to the allegations regarding the claims after the acquisition/before the BOL, the evidence provided during the discussion demonstrates that **Murchinson bribed** an Eietson executive and Company representative, **violated the NDA with Blackstone, and disclosed confidential Company information**. These actions, which were never disclosed to Eletson after Levona became a party to the LLCA, violated the LLCA and/or the good faith and ethics clause.*

### (a)    Kanelos' Bribery

*As stated above, the evidence shows that Murchinson bribed Kanelos to act against the interests of the Company. **The secret relationship began prior to November 2, 2021, but continued after Levona/Murchinson became the Preferred Shareholder.** Indeed, the illegal "Services Agreement" was drafted between Levona/Murchinson and Kanelos in December 2021, and according to that Murchinson paid Kanelos US$100,000. (C-1699, C-1700, C-1701).*

*Kanelos was apparently a director of Eletson Corporation and, according to Levona, of Eletson Gas. The LLCA provides that "Each director has the duty of trust to the Affiliates as they apply to a director to a company incorporated under the laws of Delaware." (J-0 § 6.1 (d)). In accordance with Schedule VII (m) (Fundamental actions) Levona could not "enter into, amend or waive any term of agreement between the Company and any director or member of senior management". (J-01 Annex VII (m)). The so-called Service Agreement caused the breach of these duties of trust and was a breach of the good faith and transactional ethics clause."*

[stamp:] [logo:] HELLENIC REPUBLIC
PIRAEUS FIRST INSTANCE COURT

[logo]

**(b)** *Violation of confidentiality obligations and involvement in the Company's contracts with its banks and financiers*

The evidence also shows **that Murchinson breached the NDA** with Blackstone by directly contacting the Company's financiers and lenders.

*[...]*

**(c)** *Breach of the LLCA through efforts to terminate management agreements*

**Levona also breached the LLCA immediately upon entering the Company**, attempting to terminate the management contracts and replace the directors of the Company's subsidiaries. (C-818, C-837, C-838, C-1964 ¶¶20, 115-121.)

*[...]*

**C. Eletson's Allegations Regarding the Award for Injunction Relief**

**Eletson makes numerous allegations against the (legal) entities affiliated with Levona, for violations of the Award for Injunction Relief.** Some of these allegations, even if they are true, and while they are harassing and threatening, did not cause quantifiable damage to the Company. For example, Levona's early termination of the loan sent on October 25, 2022 and Levona's convening board meetings. (C-404, C-405, C-086).

Therefore, I will only specifically refer to the claims regarding violations that caused quantifiable damage (to the Company). **The three actions are all relevant: the purchase, by Pach Shemen, of a majority stake in outstanding bonds issued by Holdings, the instruction by Pach Shemen to the bond manager to initiate a trial against Holdings, and the instruction by Pach Shemen to file an application for involuntary bankruptcy against Holdings.**

On about January 4, 2023, **Pach Shemen purchased Holdings bonds valued at US$183,851,546 for US$2 million.**(C-746, May 22, 2023 Minutes p. 332:16-20). In addition, Mr. Spears, on behalf of the (legal) entities affiliated with Levona, offered additional consideration to the bondholders depending on the outcome of this arbitration, stating that he would pay in addition "US$500 thousand if the arbitration was awarded in our favor in connection with Eletson Gas and we were able to exercise our rights - to act as the Preferred Shareholders for the sale of the Eletson Gas ships and/or the company". (C- 746.0008). Holdings' bonds were purchased for **Pach Shemen** from Nomis Bay and BPY via private transactions and then were transferred to Pach Shemen. (C-746). Mr. Spears testified that he purchased the bonds from four

15

[stamp:] [logo:]
HELLENIC REPUBLIC
PIRAEUS FIRST
INSTANCE COURT

[logo]

previously held investment funds called Beachpoint, Caspian, Redwood and Knighthead. (May 23, 2023 Minutes p. Tr. 326:20- 327:2).

*On **January 11, 2023, Pach Shemen then instructed the bond manager, Wilmington Savings Fund Society, to sue Holdings in order to collect the overdue debts attributable to those bonds ("Bondholder Complaint").*[2] *Subsequently, on March 7, 2023, Pach Shemen and two other Holdings' creditors filed petitions for involuntary bankruptcy against Holdings in the Southern District of New York. The petition for involuntary bankruptcy and some of the documents included in the application were signed by Mr. Lichtenstein and Mr. Spears. (C-749- C-751- C-746). The time during which this application was filed is remarkable – it was three days after some decisions were issued verbally regarding the discovery process which was unfavorable to Levona, including, inter alia, that they had waived any allegation of attorneys' secrecy with WFW, which was when I ordered that Levona/Murchinson's communications with Kanelos be produced.*

*Levona alleges that none of Pach Shemen's actions constitutes a violation of the Injunction Relief Award, because Pach Shemen is not bound by such decisions, and in respect of the administrator's trial and bankruptcy, Pach Shemen is not the only creditor to direct such trials.*

*As mentioned above, **Pach Shemen is Levona's alter ego**. The indistinguishably of the two is by name only. Its representatives, including Spears and Lichtenstein, were bound by the Injunction Relief Award. Despite this fact, Pach Shemen otherwise Levona II, (C-746.0008), proceeded to a transaction for the purchase of the bonds, offering in exchange value related to the assets that are the subject of the dispute in this arbitration. TRO and the clarification of November 2022 expressly ordered the parties to "maintain the existing status quo" and prohibited the "transfer or sale, or sale attempt or transfer in any way, of any of the assets ... of Gas ...", and the Injunction Relief Award which was issued in January 2023, further* extended the prohibition to include "or assets subject to the dispute in this arbitration." (C-1816- C-1887- C-1838). While **Pach Shemen technically did not transfer assets of Gas or assets that are the subject of the dispute in this arbitration, the overall strategy was to disrupt the status quo and find another avenue for acquiring the "assets of Gas ... or assets that are the subject of the dispute in this arbitration.**

---

[2] *Eletson alleges that Pach Shemen's purchase of those bonds and the mandate to the administrator to file a complaint violated Eletson's agreement on suspension of payments with the original owners of the bonds. This allegation, **although probably true**, lies outside my jurisdiction.*

[stamp:] [logo:] HELLENIC REPUBLIC
PIRAEUS FIRST INSTANCE COURT

[logo]

*In other words, the (legal) entities affiliated with Levona have sought either to deprive this arbitration of its jurisdiction or to secure themselves against a potential defeat in the context of this arbitration. They believed, at that time – even though wrongly – that if I ruled that Eletson had exercised the option and acquired Levona's shares, the preferred shares would pass on to Holdings.* **And that in this way, with the purchase of the bonds, it became Holdings' primary creditor with the potential to bring about Holdings' bankruptcy. In the first instance, the filing of the bankruptcy petition led to Levona's insistence that such claims could not be adjudicated by the arbitral tribunal because of the automatic stay of bankruptcy. This certainly wasn't a preservation of the status quo.** In the event that the stay was lifted and Levona lost in the context of this arbitration, the (legal) entities affiliated with Levona would then be able to argue that, as a creditor of Holdings, the value of the preferred shares passed on to them.

*Unfortunately for Levona, this strategy was incorrect because the BOL expressly provided that in the event of a successful exercise of the option, the shares would be transferred to "Eletson Gas or its designee" (J-06 § 2.1), and as discussed above, Eletson Gas had transferred the rights to the Preferred Shareholders. Although Pach Shemen's actions may have been futile, its actions were intentional and (constitute) direct violations of the Injunction Relief Award."*

[stamp:] [logo:]
HELLENIC REPUBLIC
PIRAEUS FIRST
INSTANCE COURT

[logo]

### III. 2. The operative part of the Arbitration Award dated 09/29/2023. – The entire liability of Levona, Murchinson and Pach Shemen for the compensation of the applicants herein. Eletson Gas and its New Preferred Shareholders, Fentalon Limited, Apargo Limited and Desimusco Trading Limited.

Subsequently, according to the operative part of said decision, the Arbitral Tribunal ruled positively on the recourse of **ELETSON HOLDINGS and ELETSON CORPORATION** [3] and after dismissing Levona's allegations and requests, but also the claims of Levona (currently fifth of the defendants) in the Arbitration Counterclaim filed by them, decided the following (*emphasis added*):

«*VIII. CONCLUSION AND FINAL ARBITRATION AWARD*»

*This Final Arbitration Award resolves all issues submitted for judgment in this arbitration. The undersigned examined and decided on all issues and arguments raised regarding the merits of the claims and counter-claims, the requests regarding the amount of the Plaintiffs' solicitors' fees, costs, expenses and default interest, including those not expressly set forth herein. Any argument not contemplated in this Interim Decision was found to be unacceptable, unfounded, meaningless or unnecessary to be examined.*

*This Final Arbitral Award shall determine and stipulate the following:*

*1.     The Plaintiffs have demonstrated the breach of the LLCA and the rule of good faith and transactional ethics, and have proven that Eletson exercised the call option pursuant to the BOL, and is therefore entitled to the issuance of an acknowledging decision for direct damages, punitive damages, default interest and attorneys' fees, as set out below.*

*2.     Defendant did not prove any of its counterclaims, which (thus) are dismissed.*

  *Defendant is not entitled to claim anything from the Plaintiffs.*

"*A. Recognition award*

*The following are hereby recognized:*

*1.  Eletson effectively exercised the redemption option granted through the BOL dated February 22, 2022 on March 11, 2022, and any purported condition for exercising that right was either satisfied or waived.*

---

[3] It is noted that in the Arbitration Award dated 09/29/2023, where "**ELETSON**" or "**Plaintiffs**" is mentioned, it means "**ELETSON HOLDINGS**" and "**ELETSON CORPORATION**", a subsidiary of the first, which happen to be also the Complainants (Plaintiffs) and where "**Company**" is mentioned, it means "**Eletson Gas**".

[stamp:] [logo:] HELLENIC REPUBLIC
PIRAEUS FIRST INSTANCE COURT

[logo]

2. ***As of March 11, 2022, Defendant Levona had no right of participation in the company Eletson Gas.***

3. *The Company exercised its rights under the BOL to appoint three entities – Fentalon, Apargo and Desimusco (the Preferred Shareholders) – associated with the principals of the Plaintiffs as the parties who would receive the preferred shares of the Company which were previously held by Levona.*

4. *The preferred shares in the Company were transferred to the Preferred Shareholders, effective as of March 11, 2022, and the Preferred Shareholders are permitted assignees under the LLCA. They have agreed to be bound by this award and by each award issued thereon.*

5. *Eletson Holdings and Eletson Corporation never owned any of the company's preferred shares.*

6. ***The shares of the subsidiaries controlling the ships Symi and Telendos were transferred to Levona on March 11, 2022, as consideration for the Call Option in relation to the BOL.*** *As of Mach 11, 2022, Levona reserves all rights relating to the ownership of the subsidiaries of those ships,*

7.   *The Injunction Relief Award shall remain in effect until a final judgment is issued on any Arbitral Award or any other award of said arbitrator.*

8.   ***Levona, Murchinson and Pach Shemen, are each alter ego of the other with respect to each event proven in the present case, and any kind of compensation granted hereunder. Any reference to Levona herein therefore concerns all alter egos, and for the avoidance of doubt, any awards against Levona also concern any alter ego thereof.***

9.   ***Levona breached the LLCA and its related obligations****, including, without limitation, common law obligations and contractual obligations to Plaintiffs and the Company, in at least **the following ways***:

19

[stamp:] [logo:]
HELLENIC REPUBLIC
PIRAEUS FIRST
INSTANCE COURT

[logo]

**i.**  *Bribing an employee of Eletson Corporation and a representative of the Company, Peter Kanelos, so that he would disclose confidential information of the Company;*

**ii.**  *By breaching confidentiality obligations by disclosing confidential Company information to third parties, while failing to take steps to retrieve such information, and then deceiving the Plaintiffs and the Company about said breaches after becoming a shareholder in the Company;*

**iii.** *By actively engaging in illegal conduct, which led the Company's funders to turn against the Company and the Plaintiffs, including but not limited to, by causing the seizure of five ships of the Company and not disclosing such infringing conduct to Eletson or the Company after becoming a shareholder in the Company;*

**iv.** *By not recognizing that Eletson has fully complied with the terms of the BOL Call Option and by not acting in good faith, silencing its purported belief that the Company could or may not meet the terms of the BOL;*

**v.**  *By claiming to act on the Company's behalf in its business dealings with third parties, including, among other things, by attempting to sell the Company's assets to its main competitor, Unigas, and concealing such breach from the Plaintiffs;*

**vi.**    *By unfairly threatening Eletson and its associated officers and directors, including, among other things, by suing them;*

**vii.**  *By improperly claiming to have taken control of the board of directors of the Company after March 11, 2022;*

**viii.**  *By improperly asserting that they were directing the Company's day-to-day operations after March 11, 2022;*

**ix.**   *By improperly claiming that they are pursuing control of the Company's assets after March 11, 2022;*

**x.**  *By improperly alleging that they convened and held meetings of the Company's Board of Directors without following appropriate procedures, and for unlawful and improper purposes of approving illegal and improper conduct after March 11, 2022;*

[stamp:] [logo:] HELLENIC REPUBLIC
PIRAEUS FIRST INSTANCE COURT

[logo]

> ***xi.** By breaching their obligations under the LLCA, including without limitation, by claiming to terminate the management agreements Eletson Corporation has with the Company's subsidiaries, that they are modifying the management of the Company's subsidiaries, **excluding Eletson Corporation from communications with the Company's funders (violations) that Levona knew were anti–contractual and violated the LLCA**, and*

10. *By breaching the Injunction Relief Award of this arbitration;*

> ***i.** By declaring the Company improperly in default of the loan by Levona and unfairly terminating the loan;*

> ***ii.** By trying to sell ships, including Symi and Telendos, while the Injunction Relief Award was in effect; and*

> ***iii.** By leading and/or causing Levona's subsidiaries to purchase a majority stake in Eletson Holdings securities in January 2023 to commence and then bring proceedings against Eletson Holdings and file a petition for involuntary bankruptcy against Eletson Holdings.*

**Subsequently, the same Arbitration Award dated 09/29/2023 as above, of Judge-Arbitrator Ariel E. BELEN acknowledged the obligation of the respondent companies herein (Levona, Pach Shemen and Murchison) to pay, jointly and severally, to the aforementioned companies, the amounts referred to therein as: a) compensation for direct damages, and b) punitive damages, plus c) attorneys' fees, costs, expenses and additional interest, and specifically recognized that:**

> *"B. Compensation for direct damages*

> ***Levona, Murchison and Pach Shemen, as alter-egos, jointly and severally, will pay US$43,455,122.21 in compensation as follows:***

1. *US$21,777,378.50 to be paid to Eletson Gas as compensation for direct damages for improper seizure of Eletson Gas' ships, which includes default interest at 10% from the date of the seizures (or the approximate date the costs incurred) up to January 2023;*

[stamp:] [logo:]
HELLENIC REPUBLIC
PIRAEUS FIRST
INSTANCE COURT

[logo]

2. US$19,677,743.71 which must be paid to the Preferred Shareholders, which consist of lost profits (EBITDA) due to Levona's unjust enrichment arising from the exploitation of the Symi and Telendos ships from March 11, 2022, without the concurrent transfer of the preferred shares, which include pre-trial interest until January 2023;

3. *US$2,000,000 to be paid to Eletson Gas as compensation for direct damages arising from the other breaches of the contract by Levona, with a preliminary interest of 10% from the date of this Interim Arbitration Award until the repayment of the compensation awarded by this award or the confirmation of this award by a competent court, depending on which day is earliest.*

4. *The entities referred to above under B.1 and B.2 respectively are also awarded default interest on the principal amount of the compensation referred to in paragraph B.1. above (compensation for unlawful seizures) and paragraph B.2. above (compensation for lost profits due to unjust enrichment of Levona) at a rate of 10% from 30 January 2023 until the earlier of either the payment of the compensation or the confirmation of the (present) award by a competent court.*

**C.** ***Punitive damages***

***Levona, Murchinson and Pach Shemen, as alter-egos, jointly and severally, are liable to pay punitive damages in the total amount of US$43,455,122.21, as follows:***

1. *US$23,777,378.50 to be paid to Eletson Gas; and*

2. *US$19,677,743.71 to be paid to the Preferred Shareholders.*

**D.** ***Attorneys' Fees, Costs, Expenses and Additional Interest***

*Levona, Murchinson and Pach Shemen, as alter-egos, jointly and severally, will pay:*

1. *Solicitors' fees, costs and expenses incurred to date in connection with this arbitration, the Bondholders' Complaint and the Bankruptcy pursuant to Article 12.14(8) of the LLCA and Rule 24(5) of the JAMS, as follows:*

   i. *Attorneys' fees, costs and expenses due in connection with this arbitration amounting to US$9,590,222.99.*

[stamp:] [logo:] HELLENIC REPUBLIC
PIRAEUS FIRST INSTANCE COURT

[logo]

    ii.    *An additional amount of US$22,366.10, which represents additional costs of JAMS incurred in connection with this arbitration from the time Eletson filed the Initial Acknowledgment, and with respect of which Eletson paid both the share corresponding to them too the same as well as the share corresponding to the Defendant.*

    iii.    *Attorneys' fees, costs and expenses due in connection with the Bankruptcy and the Bondholders' Claims of US$3,007,266.20;*

2.    *Additional default interest on the principal amount of the compensation as awarded by the Corrected Interim Arbitration Award by 31 August 2023, amounting to US$2,496,081.88, which shall be paid as follows:*

    i.    *To Eletson Gas: US$1,319,163.14.*

    ii.    *To the Preferred Shareholders: US$1,176,918.74.*

3.    *Additional default interest on the principal amount of the compensation from August 31, 2023 until the date of payment of the amount due or the date of confirmation of this Final Arbitration Award, as enforceable by a court of competent jurisdiction, whichever date is earlier, and calculated using the formula set forth above in this Final Arbitration Award; and*

4.    *Additional default interest on fees, costs and expenses awarded by this Final Arbitration Award; from the time of publication of this Final Arbitration Award until the date of payment of the amounts due or the date of confirmation of this Final Arbitration Award as enforceable by a competent court, whichever date is earlier, and calculated using the formula set out above in this Final Arbitration Award."*

    Furthermore, it is noted that on **July 28, 2023**, the same Arbitral Tribunal, consisting of Judge-Arbitrator Ariel E, Belen, issued an **Interim Arbitration Award** in the context of the aforementioned open arbitration, which was corrected by the same Arbitrator on **August 15, 2023** under a **Corrected Interim Arbitration Award,** by which he clarified that in Section VII. B4 of the arbitration award "*The entities referred to in paragraphs B.1 and B.2, respectively, are also awarded default interest on the main amount of the indemnification of paragraph B.1.*"

23

[stamp:] [logo:]
HELLENIC REPUBLIC
PIRAEUS FIRST
INSTANCE COURT

[logo]

The **Final Arbitral Award dated 09/29/2023** adopts, incorporates and republishes the **Corrected Interim Arbitral Award** in its entirety, amending the Corrected Interim Arbitration Award only to the extent necessary to make certain notional and stylistic changes, and to incorporate the subsequent decisions of the undersigned arbitrator in relation to the Plaintiffs' request for award of costs and attorneys' fees. Section VII of the Corrected Interim Arbitration Award titled *"Conclusion and Interim Arbitration Award" is not* reproduced within the critical **Final Arbitration Decision dated 09/29/2023** for the sake of brevity and clarity, although the findings and legal conclusions of that section are adopted in their entirety in **Section VIII of the Final Arbitration Award dated 09/29/2023 titled "Conclusion and Final Arbitration Award".**

## IV.  LEGAL BASIS OF THE PRESENT APPLICATION

**1.** According to **article 906 of the Code of Civil Procedure,** the foreign arbitration decisions are declared enforceable, according to article 905 § 1 of the Code of Civil Procedure, if the conditions of article 903 of the Code of Civil Procedure are also met. According to article 905 § 1 of the Code of Civil Procedure, without prejudice to those stipulating international conventions, compulsory enforcement can be exercised in Greece based on a foreign title, as long as it is declared enforceable by the Single-Member Court of First Instance of the district where the debtor has a residence, and if the debtor has no residence, the debtor's place of domicile, if he does not have a place of domicile, the Single-Member Court of First Instance of the State's capital city. According to subparagraph b of paragraph 1 of article 905 of the Code of Civil Procedure, which is applied in this case according to article 906 of the same Code, the competent Single-Member Court of First Instance tries during the procedure of articles 740 to 781 of the Code of Civil Procedure (voluntary jurisdiction procedure).

**2.** The first article of Law 4220/1961 ratified the New York Convention dated 06/10/1958, which concerns the recognition and enforcement of foreign arbitration decisions, and has legal force since 10/14/1962 and supersedes, according to article 28 of the Constitution, articles 903, 905 and 906 of the Code of Civil Procedure (**(Supreme Court Plenary 11/2009 Nomiko Vima 2009, p. 1416, Supreme Court Plenary** 8/1997, Hellenic Justice 1997, p. 764, Athens Appellate Court 4332/2011, Legal Databank NOMOS. Article 3 of the Contract states that "*...each contracting State will recognize the validity of the arbitration award and will allow the execution according to the procedural rules, which are followed in the territory where the decision is invoked and with the conditions* **stated in the following articles. No conditions that are noticeably stricter, nor court costs that are noticeably higher to those imposed for the recognition or enforcement of domestic arbitration awards shall be imposed for the recognition or enforcement of domestic arbitration awards...").**

24

[stamp:] [logo:] HELLENIC REPUBLIC
PIRAEUS FIRST INSTANCE COURT

[logo]

    **3.** Article 4 of the New York Convention states that *"to achieve the recognition and execution provided for in the preceding article, the party requesting recognition and execution must produce, at the same time as the application: a) the original of the decision duly affirmed or a copy of that original containing the conditions required for its authenticity; and b) the original of the agreement provided for in article 2 or a copy containing the conditions required for its authenticity ("agreement to subject the parties to arbitration")".*

    **4.** Furthermore, **article 5 of the Contract** provides that: *"...The recognition and enforcement of the decision may be dismissed only at the request of the party against whom said invocation is made, if the party submits, to the competent authority of the country where recognition and execution is sought, proof that: a) the parties referred to in the agreement, which is regulated by article 2, have had a disability according to the law applicable to them or that said agreement is not valid under the law to which the parties have submitted it, and if there is no indication for this, on the basis of the law of the country in which the judgment was issued, or b) the party against whom the judgment is invoked was not duly informed about the arbitrator's appointment or the arbitration procedure or that it was impossible, for any reason, to use the means available to them, or c) the decision referring to a dispute not provided for by the joint agreement or not included in the provisions of the arbitration clause, or that it involves decisions that exceed the terms of the joint agreement or arbitration clause, or d) the formation of the arbitral tribunal or the arbitration procedure was not in accordance with the agreement of the parties, or if there is no agreement, that it was not in accordance with the law of the country where the arbitration took place, and e) the award has not yet become binding on the parties or was annulled or suspended by a competent authority of the country in which, or under the law of which, the award was issued...".*

Paragraph 2 of the same article stipulates that *"...The recognition and enforcement of an arbitration award may also be dismissed if the competent authority of the country in which the recognition and enforcement is sought, finds: a) that under the laws of that country the subject matter of the dispute is not susceptible to regulation by arbitration, or b) that the recognition and enforcement of the award would be contrary to the public order of that country...".*

[logo]

[stamp:] [logo:]
HELLENIC REPUBLIC
PIRAEUS FIRST
INSTANCE COURT

**5.** From these provisions, that the jurisdictional judgment of the court which is called upon by its decision to declare a foreign arbitration award enforceable at its place, which was issued on the territory of another State, which has entered into the New York Convention, is limited to determining the contribution of the conditions of article 4 of the Convention. However, the one against whom the foreign arbitration award is invoked, may propose and prove that any of the negative conditions laid down in article 5 of this convention are met, in order to achieve the dismissal of the application, which the court cannot take into account ex officio, while investigating, ex officio, whether the subject matter of the dispute is not amenable to regulation by arbitration, according to the laws it adjudicates or whether the enforcement of the decision is deemed contrary to the public order of the country in which the recognition and execution is requested *(Supreme Court 635/2021, Legal Databank NOMOS, Supreme Court 460/1990, Legal Databank NOMOS).* The conditions to declare, as enforceable, a foreign arbitration award do not include a review of its legal correctness, and in particular whether the substantive law that had to be applied under Greek private international law or under a contractual term was applied, since the Greek court is not allowed to enter the merits of the case, by re-trying and re-diagnosing it substantially, to amendments (e.g. considering oppositions to the claim), changes, additions or removals as to what is ordered by the foreign decision (*Supreme Court Plenary 899/1985 Legal Databank NOMOS, Supreme Court 635/2021 Legal Databank NOMOS, Supreme Court* 1657/2014 Legal Databank NOMOS, *Supreme Court* 1066/2007 Legal Databank NOMOS, *Supreme Court* 65/1997 Legal Databank NOMOS, Mazis in Keramefs/Kondylis/Nikas, Interpretation of the Code of Civil Procedure, 2021, article 906 no. 5, 12**).** If the foreign arbitration award is incorrect in its merits, the defeated litigant may exercise the remedies provided by foreign law or appeal against it *(Supreme Court 635/2021 Legal Databank NOMOS,* Supreme Court 1657/2014 *Legal Databank NOMOS, Supreme Court* 1066/2007 *Legal Databank NOMOS, Supreme Court* 954/1984 *Legal Databank NOMOS).* The Greek courts, that is, courts that lack jurisdiction over deciding, even incidentally, where a negative recognition request is raised by the substantive legal relationship for the invalidity or non-existence of a foreign arbitration award, and to proceed to a re-trial of the case, because jurisdiction on relevant recourses or legal remedies lies with the courts of the country under the procedural law of which the arbitration awards were issued (Supreme Court 635/2021, Legal Databank NOMOS, Supreme Court 544/1996 Legal Databank NOMOS). Finally, it is concluded from the combined provisions of articles 905 par. 3 and 323 par. 5 of the Code of Civil Procedure that in order for an enforceable decision of a foreign court to be declared enforceable in Greece, it is required, inter alia, that it is not contrary to "public order". In these provisions, public order means that within the meaning of article 33 of the Civil Code. Therefore, the declaration of a foreign court decision as enforceable in Greece is not awarded when, due of its content and in view of the specific circumstances arising from the foreign decision, its execution: a) would impinge on fundamental political, ethical, social, legal or economic perceptions that prevail in the country; and b) it would disturb the legal rhythm prevailing in the country *(Supreme Court Plenary*

[stamp:] [logo:] HELLENIC REPUBLIC
PIRAEUS FIRST INSTANCE COURT

[logo]

*17/1999 Legal Databank NOMOS, Supreme Court* 2273/2009, *Supreme Court* 1066/2007 Legal Databank NOMOS, Mazis in Keramefs / Kondylis / Nikas, Interpretation of the Code of Civil Procedure, 2021, article 906 no. 3 f). Just the fact that Greek law ignores a certain institution or certain regulation, provided for in foreign law and implemented by the decision, or that Greek law holds a contrary rule, does not mean that the decision is contrary to domestic public order. However, a foreign court decision is not allowed to be executed in Greece, when its execution, due to the contrast between the fundamental concepts above, would disturb the legal rhythm prevailing in the country.

**6.** Since the foreign arbitration award is not covered by a bilateral agreement (article 7 of the New York Covenant), the provisions of article 903 of the Code of Civil Procedure subside and those of the international agreement for the recognition and enforcement of foreign arbitration awards prevail, as was signed in New York on June 10, 1958, and ratified by Law 4220/1961, within the framework of the countries that have signed or entered into this convention.

## V.

**Whereas** in this case, the conditions for the recognition and enforceability, in Greece, of the foreign arbitral award at issue, dated 09/29/2023, are met.

**Whereas**, the New York Convention, ratified by Legislative Decree 4220/1961, under the limitations of mutuality and commerciality of the dispute and being in force after the introduction of the Code of Civil Procedure, constitutes, since its ratification, domestic law and supersedes, in its scope, any contrary provision of law.

**Whereas** the current applicants are actively legalized to file this application, because through it they seek the recognition of the arbitration award at issue and the compliance of the respondent companies with all the provisions of its operative part, set out above.

[stamp:] [logo:]
HELLENIC REPUBLIC
PIRAEUS FIRST
INSTANCE COURT

[logo]

**Whereas** the subject matter of the dispute of said arbitration award may be the subject of an arbitration agreement under Greek law, as concluded by the combination of the provisions of articles 3 par. 4 of Law 5016/2023 and article 867 of the Code of Civil Procedure.

**Whereas** the Arbitration Award dated 09/29/2023 has been issued in New York, United States of America (USA).

**Whereas** none of the negative conditions of article 5 of the New York Convention are met.

**Whereas** the Arbitration Award dated 09/29/2023 is final and binding under the law of the State of its issuance, since according to the latter, the arbitration award is binding on the parties from and through its issuance.

**Whereas** the arbitration award at issue is binding on the parties to the arbitration.

**Whereas** the recognition and enforcement of the arbitration award at issue is not contrary to the public order of Greece, in which the recognition and enforcement thereof is requested.

**Whereas** Your Court is competent substantially and locally to declare the foreign arbitration award at issue enforceable pursuant to article 905 par. 1 of the Code of Civil Procedure.

**Whereas** the legal fee of my proxy attorneys for the filing of this document has been paid, as shown in the advance payment receipts of the Athens Bar Association Nos. P 5415557/2024 and P 5415594/2024.

**FOR THESE REASONS**

And with the explicit reservation of all our rights.

**WE HEREBY REQUEST**

- **T**he acceptance of our present application  as legal, valid and true.

- **To** be recognized that there is res judicata arising from the final Arbitration Award of the Arbitral Tribunal, dated on 09/29/2023, issued in New York, United States of America (USA), binding under the law of the place of its issuance, issued by the Arbitral Tribunal consisting of Judge-Arbitrator Ariel E. Belen as the sole arbitrator, as it (the Arbitral Award) was issued against the respondent companies herein, in accordance with the presumptions contained therein and with the parties benefitting therefrom being, inter alia, the currently applicant companies.

28

[stamp:] [logo:] HELLENIC REPUBLIC
PIRAEUS FIRST INSTANCE COURT

[logo]

     - **To** declare, as enforceable, the final Arbitration Award of the Arbitral Tribunal, dated on 09/29/2023, issued in New York, United States of America (USA), binding under the law of the place of its issuance, issued by the Arbitral Tribunal consisting of Judge-Arbitrator Ariel E. Belen as the sole arbitrator, as it (the Arbitral Award) was issued against the respondent companies herein, in accordance with the presumptions contained therein and with the parties benefiting therefrom being, inter alia, the currently applicant companies, under the enforceable type of the Greek Code of Civil Procedure.

     - **To** convict the respondents to our general court costs and to the fees of our proxy attorneys.

Athens, November 27, 2024

The Proxy Attorneys

[signature]
[seal:] K. F. CALAVROS LAW FIRM
Ch. P. FILIOS • Th. Th. KLOUKINAS
19 VRANA - ATHENS 115 25
T. 2103698700 F. 2103698750
THEMOSTOKLIS TH. KLOUKINAS, ATTORNEY AT LAW
E: kloukinas@calavros.gr

[signature]
[seal:] K. F. CALAVROS LAW FIRM
Ch. P. FILIOS • Th. Th. KLOUKINAS
19 VRANA - ATHENS 115 25
T. 2103698700 F. 2103698750
THEMOSTOKLIS TH. KLOUKINAS, ATTORNEY AT LAW
E: kloukinas@calavros.gr

[seal:] [illegible]

[hw:] *11/28/2024*

[signature] [hw:] *Ay 012348 Athens Bar Association*

[signature] [hw:] *Ay 30482 Athens Bar Association*

29

[stamp:] [logo:] HELLENIC REPUBLIC
PIRAEUS FIRST INSTANCE COURT

[signature]

[stamp:] [logo:] HELLENIC REPUBLIC

PIRAEUS FIRST INSTANCE COURT

[logo:] General Secretariat for
Information Systems &
Digital Governance

# e-FeeReceipt
# Card Payment
# Certificate

[logo:] HELLENIC REPUBLIC
Ministry of Digital Governance

[stamp:] [logo:] HELLENIC
REPUBLIC
PIRAEUS FIRST INSTANCE
COURT

## *For use by the Public Service*

| | |
|---|---|
| **Fee receipt code** | **737775647955 0519 0005** |
| **Service** | Justice |
| **Fee receipt category** | TA.X.DI.K. Stamp Duty ("Megarosimo") |
| **Fee Receipt Type** | [ 2033 ] T.X.DI.K. Stamp Duty ("Megarosimo") EUR 2 |
| **Amount (€)** | 2.00 Euro |
| **Status** | PAID |
| **RF code** | RF69905106009500737775647 |
| **Transaction Code** | 11298321/000473857744 |
| **Date of Transaction** | 11/19/2024 |

**Additional details**

## *For Official Use*

| | |
|---|---|
| **Administrative Fee Code** | **737775647955 0519 0005** |
| **Public Authority** | Ministry of Justice |
| **Administrative Fee Category** | Fee stamp to fund court buildings (court building fee stamp) |
| **Administrative Fee Type** | [ 2033 ] JBFF stamp duty (megarosimo) EUR 2 |
| **Amount (€)** | 2.00 Euro |
| **Status** | PAID |
| **RF Code** | RF69905106009500737775647 |
| **Transaction Code** | 11298321/000473857744 |
| **Transaction Date** | 11/19/2024 |

**Additional
Info**

[stamp:] [logo:]
HELLENIC REPUBLIC
PIRAEUS FIRST
INSTANCE COURT

[signature]
[stamp:] [logo:] HELLENIC REPUBLIC
PIRAEUS FIRST INSTANCE COURT

[logo:] General Secretariat for Information Systems & Digital Governance

# e-FeeReceipt Card Payment Certificate

[logo:] HELLENIC REPUBLIC
Ministry of Digital Governance

[stamp:] [logo:] HELLENIC REPUBLIC

PIRAEUS FIRST INSTANCE COURT

## *For use by the Public Service*

| | |
|---|---|
| **Fee receipt code** | **737777315955 0519 0005** |
| **Service** | Justice |
| **Fee receipt category** | TA.X.DI.K. Stamp Duty ("Megarosimo") |
| **Fee Receipt Type** | [ 2033 ] TA.X.DI.K. Stamp Duty ("Megarosimo") EUR 2 |

**Additional details**

| | |
|---|---|
| **Amount (€)** | 2.00 Euro |
| **Status** | PAID |
| **RF code** | RF41905106009500737777315 |
| **Transaction Code** | 11298599/000473860522 |
| **Date of Transaction** | 11/19/2024 |

## *For Official Use*

| | |
|---|---|
| **Administrative Fee Code** | **737777315955 0519 0015** |
| **Public Authority** | Ministry of Justice |
| **Administrative Fee Category** | Fee stamp to fund court buildings (court building fee stamp) |
| **Administrative Fee Type** | [ 2033 ] JBFF stamp duty (megarosimo) EUR 2 |

**Additional Info**

| | |
|---|---|
| **Amount (€)** | 2.00 Euro |
| **Status** | PAID |
| **RF Code** | RF41905106009500737777315 |
| **Transaction Code** | 11298599/000473860522 |
| **Transaction Date** | 11/19/2024 |

[stamp:] [logo:]
HELLENIC REPUBLIC
PIRAEUS FIRST
INSTANCE COURT

[signature]
[stamp:] [logo:] HELLENIC REPUBLIC
PIRAEUS FIRST INSTANCE COURT

[logo:] General Secretariat for Information Systems & Digital Governance

# e-FeeReceipt Card Payment Certificate

[logo:] HELLENIC REPUBLIC
Ministry of Digital Governance

[stamp:] [logo:] HELLENIC REPUBLIC
PIRAEUS FIRST INSTANCE COURT

## *For use by the Public Service*

| | |
|---|---|
| **Fee receipt code** | **737817458955 0519 0002** |
| **Service** | Justice |
| **Fee receipt category** | TA.X.DI.K. Stamp Duty ("Megarosimo") |
| **Fee Receipt Type** | [ 2033 ] TA.X.DI.K. Stamp Duty ("Megarosimo") EUR 2 |
| **Amount (€)** | 2.00 Euro |
| **Status** | PAID |
| **RF code** | RF58905106009500737817458 |
| **Transaction Code** | 11298315/000473857316 |
| **Date of Transaction** | 11/19/2024 |

**Additional details**

## *For Official Use*

| | |
|---|---|
| **Administrative Fee Code** | **737817458955 0519 0002** |
| **Public Authority** | Ministry of Justice |
| **Administrative Fee Category** | Fee stamp to fund court buildings (court building fee stamp) |
| **Administrative Fee Type** | [ 2033 ] JBFF stamp duty (megarosimo) EUR 2 |
| **Amount (€)** | 2.00 Euro |
| **Status** | PAID |
| **RF Code** | RF58905106009500737817458 |
| **Transaction Code** | 11298315/000473857316 |
| **Transaction Date** | 11/19/2024 |

**Additional Info**

[stamp:] [logo:]
HELLENIC REPUBLIC
PIRAEUS FIRST
INSTANCE COURT

[signature]
[stamp:] [logo:] HELLENIC REPUBLIC
PIRAEUS FIRST INSTANCE COURT

[logo:] General Secretariat for Information Systems & Digital Governance

# e-FeeReceipt
# Card Payment Certificate

[logo:] HELLENIC REPUBLIC
Ministry of Digital Governance

[stamp:] [logo:] HELLENIC REPUBLIC
PIRAEUS FIRST INSTANCE COURT

## *For use by the Public Service*

| | |
|---|---|
| **Fee receipt code** | **737775229955 0519 0076** |
| Service | Justice |
| Fee receipt category | TA.X.DI.K. Stamp Duty ("Megarosimo") |
| Fee Receipt Type | [ 2033 ] TA.X.DI.K. Stamp Duty ("Megarosimo") EUR 2 |

**Additional details**

| | |
|---|---|
| **Amount (€)** | 2.00 Euro |
| **Status** | PAID |
| **RF code** | RF06905106009500737775229 |
| **Transaction Code** | 11298239/000473856650 |
| **Date of Transaction** | 11/19/2024 |

## *For Official Use*

| | |
|---|---|
| **Administrative Fee Code** | **737775229955 0519 0076** |
| **Public Authority** | Ministry of Justice |
| **Administrative Fee Category** | Fee stamp to fund court buildings (court building fee stamp) |
| **Administrative Fee Type** | [ 2033 ] JBFF stamp duty (megarosimo) EUR 2 |

**Additional Info**

| | |
|---|---|
| **Amount (€)** | 2.00 Euro |
| **Status** | PAID |
| **RF Code** | RF06905106009500737775229 |
| **Transaction Code** | 11298239/000473856650 |
| **Transaction Date** | 11/19/2024 |

[stamp:] [logo:]
HELLENIC REPUBLIC
PIRAEUS FIRST
INSTANCE COURT

[signature]
[stamp:] [logo:] HELLENIC REPUBLIC
PIRAEUS FIRST INSTANCE COURT

[logo]

Date: 11/28/2024

# ATHENS BAR ASSOCIATION

## FEES AND STAMPS ADVANCE PAYMENT RECEIPT, 28.80 EURO

### Annexes I & III, Law 4194/2013 (Government Gazette A 208 / 09-27-2013)

**LAW FIRM K.F. KALAVROS – Ch. P. FILIOS – Th. KLOUKINAS** with Reg. No. **080011** and Tax Reg. No. **099634359** paid the amount of **TWENTY EIGHT EURO AND EIGHTY CENTS** of the attorney **KLOUKINAS THEMISTOKLIS, son of THEODOROS**, with Reg. No. **012348** and Tax Reg. No. **040315330**, which concerns an APPLICATION before the Piraeus Single-Member First Instance Court – Voluntary Jurisdiction, in the case of its principal **Eletson Gas, etc.**

|  | ITEMIZED (*) | | |
|---|---|---|---|
|  | REFERENCE AMOUNT (Par. I of Law 4194/2013) €102.00 | | |
| Athens Bar Association | €4.00 | TAXDIK FILING STAMP | €4.00 |
| E.F.K.A. | €20.40 | TAXDIK STAMP FOR COPIES | €0.00 |
| Withholding per Article 29 of Law 4596/2019 | €0.40 | | |
| TAX | €15.30 | | |
| **TOTAL WITHHOLDINGS** | €24.80 | **TOTAL FOR STAMPS** | €4.00 |
| REPAYMENT | €44.10 | | |

*VAT 24% = €24.48 is calculated on the amount of €102.00 (Total amount of reference and VAT: €126.48)

[qrcode]

By order of the Athens Bar Association

[stamp:] [logo:] HELLENIC
REPUBLIC
PIRAEUS FIRST INSTANCE
COURT

Date: 11/28/2024

[logo]

# ATHENS BAR ASSOCIATION

## FEES AND STAMPS ADVANCE PAYMENT RECEIPT, 28.80 EURO

### Annex I & III, Law 4194/2013 (Government Gazette A 208 / 09-27-2013)

**LAW FIRM K.F. KALAVROS - Ch. P. FILIOS - Th. KLOUKINAS** with Reg. No. 089011 and Tax Reg. No. **099634359** paid the amount of **TWENTY EIGHT EURO AND EIGHTY CENTS** of the attorney **KLOUKINAS THEMISTOKLIS, son of THEODOROS**, with Reg. No. 012348 and Tax Reg. No. **040315330**, which concerns an APPLICATION before the Piraeus Single-Member First Instance Court - Voluntary Jurisdiction, in the case of its principal **Eleson Gas, etc.**

**ITEMIZED (\*)**

**REFERENCE AMOUNT (Par. 1 of Law 4194/2013) €102.00**

| | | | | |
|---|---|---|---|---|
| Athens Bar Association | €4.00 | TAXDIK FILING STAMP | | €4.00 |
| E.F.K.A. | €20.40 | TAXDIK STAMP FOR COPIES | | €0.00 |
| Withholding per Article 29 of Law 4596/2019 | €0.40 | | | |
| TAX | €15.30 | | | |
| **TOTAL WITHHOLDINGS** | €24.80 | **TOTAL FOR STAMPS** | | €4.00 |
| REPAYMENT | €44.10 | | | |

\*VAT 24% = €24.48 is calculated on the amount of €102.00 (Total amount of reference and VAT= €126.48)

[qrcode]

By order of the Athens Bar Association

[stamp:] [logo:] HELLENIC
REPUBLIC
PIRAEUS FIRST INSTANCE
COURT

[logo]

Date: 11/28/2024

# ATHENS BAR ASSOCIATION

## FEES AND STAMPS ADVANCE PAYMENT RECEIPT, 28.80 EURO

### Annex I & III, Law 4194/2013 (Government Gazette A 208 / 09-27-2013)

The Attorney at Law **HAHAMI MARIA, daughter of PANAGIOTIS** with Reg. No. 030482 and Tax Reg. No. **131220580** paid the amount of **TWENTY EIGHT EUROS AND EIGHTY CENTS** concerning an APPLICATION before the PIRAEUS SINGLE-MEMBER FIRST INSTANCE COURT - VOLUNTARY JURISDICTION in the case of her principal **Eleison Gas, etc.**

**ITEMIZED (*)**

**REFERENCE AMOUNT (Par. 1 of Law 4194/2013) €102.00**

| | | | |
|---|---|---|---|
| Athens Bar Association | €4.00 | TAXDIK FILING STAMP | €4.00 |
| E.F.K.A. | €20.40 | TAXDIK STAMP FOR COPIES | €0.00 |
| Witholding per Article 29 of Law 4596/2019 | €0.40 | | |
| TAX | €15.30 | | |
| **TOTAL WITHHOLDINGS** | €24.80 | **TOTAL FOR STAMPS** | €4.00 |
| REPAYMENT | €44.10 | | |

* VAT 24% = €24.48 is calculated on the amount of €102.00 (Total amount of reference and VAT: €126.48)

[qrcode]

By order of the Athens Bar Association

[stamp:] [logo] HELLENIC
REPUBLIC
PIRAEUS FIRST INSTANCE
COURT

[stamp:] [logo:] HELLENIC REPUBLIC
PIRAEUS FIRST
INSTANCE COURT

[signature]
[stamp:] [logo:] HELLENIC REPUBLIC
PIRAEUS FIRST INSTANCE COURT

[stamp:] [logo:] HELLENIC
REPUBLIC
PIRAEUS FIRST INSTANCE
COURT    [logo:]

HELLENIC REPUBLIC
PIRAEUS FIRST INSTANCE COURT

**LEGAL DOCUMENT FILING REPORT**

Type of Legal Document: APPLICATION

General Filing Number: 18551/2024

Special Filing Number: 8368/2024

Exception Request Number: 0

Before the PIRAEUS FIRST INSTANCE COURT today, 11/28/2024 Thursday at 12:39 a.m., the attorneys at law KLOUKINAS THEMOSTOKLIS with Reg. No.: 012348 of the Bar Association of ATHENS, Tax Reg. No. 040315330, and MARIA HAHAMI with Reg. No.: 030482 of the Bar Association of ATHENS, Tax Reg.. No. 131220580 appeared and filed the above legal document.

For this act, this report was drafted and lawfully signed.

|  Filed by  |  The Secretary  |
|---|---|
|  |  [signature]  |
|  KLOUKINAS THEMISTOKLIS  |  ASCARID MARIA  |

**HEARING SCHEDULING ACT**

Proceedings: VOLUNTARY, of the SINGLE MEMBER COURT

Docket: VOLUNTARY, SINGLE-MEMBER ADMIRALTY COURT

with Docket Number: 1

We hereby schedule the discussion on 06/03/2025, Tuesday at 09:00 before the PIRAEUS COURT OF FIRST INSTANCE at the address 3-5 Skouze, Second Floor, Room 218

on the condition that this case be notified THIRTY (30) days prior to its hearing TO THE RESPONDENTS. Service shall be made at the responsibility of the applicant.

PIRAEUS, 11/28/2024

Scheduling Judge

[signature]

PANAGIOTA PAPAGEORGIOU

**TRUE COPY**

PIRAEUS, 11/28/2024

The Secretary

MARIA ASCARIDOU

[stamp:] [logo:] HELLENIC
REPUBLIC
PIRAEUS FIRST
INSTANCE COURT

[stamp:] True copy which was
certified for its legal stamps. Piraeus
[illegible]
[hw:] *02/24/2025*

[signature]

Konstantina Karaferi