**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ELETSON HOLDINGS, INC. and ELETSON CORP.,

Petitioners/Cross-Respondents,

v.

LEVONA HOLDINGS, LTD.,

Respondent/Cross-Petitioner.

Case No. 1:23-cv-07331-LJL

**REED SMITH'S MEMORANDUM IN RESPONSE TO "LEVONA HOLDINGS LTD.'S MEMORANDUM IN OPPOSITION TO REED SMITH LLP'S MOTION FOR STAY PENDING APPEAL AND FOR EXTENSION OF TIME TO COMPLY WITH TURNOVER ORDER"**

Louis M. Solomon
Colin A. Underwood
REED SMITH LLP
599 Lexington Avenue
New York, New York 10022
Tel.: (212) 549-0400
Lsolomon@reedsmith.com

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

I. LEVONA'S OPPOSITION HIGHLIGHTS WHY THERE ARE SUBSTANTIAL AND SERIOUS LEGAL QUESTIONS IN THIS PROCEEDING THAT WARRANT A STAY ........ 2

II. THE NEW YORK CONVENTION OPERATING AS ENVISIONED DOES NOT GIVE RISE TO PREJUDICIAL OR COGNIZABLE HARM THAT SUPPORTS DENYING A STAY ........ 5

III. LEVONA'S GENERALIZED ALLEGATIONS OF DELAY DO NOT SUPPORT DENIAL OF A STAY ........ 6

CONCLUSION ........ 9

CERTIFICATE OF COMPLIANCE ........ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arciniaga v. GMC*,
460 F.3d 231 (2d Cir. 2006)....................5

*CBF Industria de Gusa v. AMCI Holdings, Inc.*,
850 F.3d 58 (2d Cir. 2017)....................4

*Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*,
964 F.2d 159 (2d Cir. 1992)....................3

*Damon J. Baldone, LLC v. Starr Surplus Lines Ins. Co.*,
2024 WL 4188482 (E.D. La. Sept. 13, 2024)....................8

*Diatek Licensing LLC v. Estrella Media, Inc.*,
2022 WL 510809 (S.D.N.Y. Oct. 4, 2022)....................6

*Fairchild Corp. v. Alcoa, Inc.*,
510 F. Supp. 2d 280 (S.D.N.Y. 2007)....................6

*Goodman v Samsung Elecs. Am*,
2017 WL 5636286 (S.D.N.Y. Nov. 22, 2017)....................7

*In re 650 Fifth Ave. & Related Props.*,
2020 WL 3000382 (S.D.N.Y. June 4, 2020)....................2

*INS v. Chadha*,
462 U.S. 919 (1983)....................2

*Jock v. Sterling Jewelers, Inc.*,
738 F. Supp. 2d 445 (S.D.N.Y. 2010) (Br. )....................2

*Karaha Bodas Co. v. Negara*,
335 F.3d 357 (5th Cir. 2003)....................4

*Kleinman v. O'Neill*,
2008 WL 5582453 (E.D.N.Y. Dec. 30, 2008)....................3

*Nat'l Immigration Project of the Nat'l Lawyers Guild v. United States Dep't of Homeland Sec.*,
842 F. Supp. 2d 720 (S.D.N.Y. 2012)....................8

*NLRB v. Constellium Rolled Prods. Ravenswood, LLC*,
43 F.4th 395 (4th Cir. 2022)....................2

*Thai-Lao Lignite (Thail.) Co. v. Gov't of the Lao People's Democratic Republic*,
864 F.3d 172 (2d Cir. 2017)....................................................................................4

*United States v. Johnson*,
319 U.S. 302 (1943)..............................................................................................2

*United States v. Windsor*,
570 U.S. 744 (2013)..............................................................................................2

**Other Authorities**

N.Y. Conv., Art. VI.....................................................................................................5

UNCITRAL, *Article VI, Introduction*, n.1, New York Convention Guide*,*
https://newyorkconvention1958.org/index.php?lvl=cmspage&pageid=10&me
nu=627&opac_view=-1 (last visited March 4, 2025)................................................5

Reed Smith LLP ("Reed Smith") respectfully submits this brief in response to "Levona Holdings Ltd.'s Memorandum In Opposition To Reed Smith LLP's Motion For Stay Pending Appeal And For Extension Of Time To Comply With Turnover Order" (ECF 275, "Opposition" or "Lev. Opp."), and in support of its motion for a stay pending appeal of this Court's February 14, 2025 Order (ECF 274, "Motion" or "Br."). The accompanying Reply Declaration of Louis M. Solomon, dated March 5, 2025 ("Solomon Reply Decl.") contains pertinent information and attaches relevant exhibits.

**PRELIMINARY STATEMENT**

As with Reorganized Holdings, Levona is trying through its stay opposition to obtain a premature victory on the merits of disputed and critical issues presently on appeal in the Second Circuit. However, denying a stay in this instance would lend to an unfair and unjust result that would frustrate and largely defeat the benefits of appellate review. These are the precise circumstances in which a stay of a district court order has its highest utility. A stay, accordingly, should be granted here.

As for Levona's particular arguments for denying the stay, as with Reorganized Holdings, they do not overcome the sound reasons a stay should be granted and, on analysis, underscore why a stay is needed. All parties agree that the threshold issue—*i.e.*, the issue that drives the bankruptcy and turnover appeals—is whether Reorganized Holdings should be recognized as Reed Smith's client. There is a substantial debate on that issue; one the Second Circuit will resolve. There is no reason, and Levona does not offer one, to declare Levona the winner, deny the stay, and direct the turnover of confidential documents to parties who presently are adversaries in a dispute. The harm engendered by that is apparent and real.

By comparison, granting a stay will not materially prejudice Levona. To the extent its interests need immediate protection, it has ample recourse under the New York Convention in the

countries directly involved in the recognition proceedings. As for the purported claim of delay, Levona offers no credible argument that Reed Smith was not entitled to dispute the turnover of its confidential files, particularly with the bankruptcy appeal going forward. The only delay comes with allowing the merits to be heard, as would be the case in any appeal in the ordinary course. There is, in short, a multitude of reasons for granting a stay and no compelling reason not to. The Court should so hold.

## ARGUMENT

### I. LEVONA'S OPPOSITION HIGHLIGHTS WHY THERE ARE SUBSTANTIAL AND SERIOUS LEGAL QUESTIONS IN THIS PROCEEDING THAT WARRANT A STAY

As stated in the Motion, Reed Smith respectfully submits that the Court's decision to let two parties under common control engage in litigation to the detriment of the rights of third parties is an outlier in Constitutional jurisprudence (Br. at 4-7). For this reason, the principle that to obtain a stay, "'the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay,'" is especially important. *In re 650 Fifth Ave. & Related Props*., 2020 WL 3000382, *2 (S.D.N.Y. June 4, 2020). The Second Circuit has never addressed whether *United States v. Windsor*, 570 U.S. 744 (2013) and *INS v. Chadha*, 462 U.S. 919 (1983), two factually distinct cases, read out the federal judiciary's historic understanding that collusive litigation is barred by the Constitution. *See, e.g.*, *United States v. Johnson*, 319 U.S. 302, 304 (1943).

Given the Constitutional issue not yet decided by the Second Circuit, even if "the Court remains confident in the soundness of the reasons" for its ruling, it should stay the Order as "[the] appeal presents an issue of first impression." *Jock v. Sterling Jewelers, Inc.*, 738 F. Supp. 2d 445, 447 (S.D.N.Y. 2010) (Br. at 9); *see also NLRB v. Constellium Rolled Prods. Ravenswood, LLC,* 43 F.4th 395, 401 & n.5 (4th Cir. 2022) (citation omitted) ("*Windsor* did not abandon the

longstanding principle that Article III requires adverseness. *Windsor* instead reaffirmed that Article III requires 'sufficient adverseness' to confer an 'adequate basis for jurisdiction.'") (Br. at 6).

Levona does not cite a case where a court without subject matter jurisdiction could issue a turnover order. The one case cited by Levona (and Reorganized Holdings and this Court) (Lev. Opp. at 6; Reorganized Holdings Opp. at 8; ECF 270 ("2/14/25 Hr'g Tr.") at 112:17-20) does not support the ability to order turnover here. In *Kleiman v. O'Neill*, the Title VII case was still ongoing when the Court ordered an attorney to turnover his files. *See* 2008 WL 5582453, *1, 3 (E.D.N.Y. Dec. 30, 2008) (files needed for "continued prosecution of [Title VII] claims"; statutory exception to exercising supplemental jurisdiction over attorney-client claims where "the district court has dismissed all claims over which it has original jurisdiction" did "not apply").

For the reasons set forth in the Motion, if this Court requires Reed Smith to act, but is without Article III jurisdiction, Reed Smith's property interests will be irreparably harmed, as will the property interests of its client Eletson Gas, who is still engaged in global litigation against the common owners of Levona, Pach Shemen, and Reorganized Holdings. *See Chase Manhattan Bank, N.A. v. Turner & Newall, PLC,* 964 F.2d 159, 165 (2d Cir. 1992) ("[A]ttorneys cannot unlearn what has been disclosed to them…") (Br. at 13). Levona's Opposition never wrestles with the substantiality of this question—the pivotal issue for granting a stay.

Instead, Levona misdirects by complaining that "Reed Smith and its clients continue their global campaign to seek confirmation of the arbitration award elsewhere" (Lev. Opp. at 1). Levona asserts that Reed Smith and Provisional Holdings "have launched a coordinated effort to circumvent this Court's authority over Levona's vacatur petition altogether, including by seeking confirmation in multiple jurisdictions across the globe" (*id.*). But the reality is otherwise.

No entity is attempting to "circumvent" the Court's authority to vacate the Final Award. Rather, numerous proceedings substantively reviewing an arbitral award is the exact circumstance the New York Convention envisions. On this point, the Second Circuit has explained that "[w]hile uniquely empowering courts in the primary jurisdiction to set aside or annul an arbitral award, the Convention also anticipates that an arbitral party that has prevailed may sue elsewhere to enforce an award before the award has been reviewed by courts in the arbitral seat." *Thai-Lao Lignite (Thail.) Co. v. Gov't of the Lao People's Democratic Republic*, 864 F.3d 172, 176 (2d Cir. 2017). In fact, the New York Convention did away with the "requirement that a court in the rendering state recognize an award before it could be taken and enforced abroad." *CBF Industria de Gusa v. AMCI Holdings, Inc.*, 850 F.3d 58, 73 (2d Cir. 2017). Indeed, "[u]nder the Convention, a court maintains the discretion to enforce an arbitral award even when nullification proceedings are occurring in the country where the award was rendered." *Karaha Bodas Co. v. Negara*, 335 F.3d 357, 367 (5th Cir. 2003). Overall, "[b]y allowing concurrent enforcement and annulment actions, as well as simultaneous enforcement actions in third countries, the Convention necessarily envisions multiple proceedings that address the same substantive challenges to an arbitral award." *Id*. at 367-68 ("[A]s the Convention already provides for multiple simultaneous proceedings, it is difficult to envision how court proceedings in Indonesia could amount to an inequitable hardship."). In any event, the notion that Reed Smith would represent its client in trying to obtain relief in this forum and elsewhere does not detract from the serious and substantial issues raised in this proceeding and provides no reason to deny a stay.

## II. THE NEW YORK CONVENTION OPERATING AS ENVISIONED DOES NOT GIVE RISE TO PREJUDICIAL OR COGNIZABLE HARM THAT SUPPORTS DENYING A STAY

The fact that the New York Convention operates as envisioned is not prejudicial. As shown, the New York Convention explicitly contemplates what Levona complains of—numerous and simultaneous reviews of a single arbitral award. This explains why Levona does not (and cannot) cite any case law prohibiting multiple confirmation proceedings in various jurisdictions.

Pursuant to Article VI of the New York Convention,

> If an application for the setting aside or suspension of the award has been made to a competent authority referred to in article V(1)(e), the authority before which the award is sought to be relied upon ***may***, if it considers it proper, adjourn the decision on the enforcement of the award

*See* N.Y. Conv., Art. VI (emphasis added). Commentary to Article VI makes clear that it "addresses the situation where a party seeks to set aside an award in the country where it was issued, while the other party seeks to enforce it elsewhere." *See* UNCITRAL, *Article VI, Introduction*, n.1, New York Convention Guide, https://newyorkconvention1958.org/index.php?lvl=cmspage&pageid=10&menu=627&opac_view=-1 (last visited March 4, 2025). The New York Convention thus expressly contemplates that litigation over the propriety of an award would take place in multiple forums. That eventuality—what Levona labels as the prejudice sufficient to deny a stay—is the ordinary consequence of something the New York Convention contemplates.

For its part, Levona itself accepted the benefits and burdens of the New York Convention in becoming a signatory to the LLCA. *Cf. Arciniaga v. GMC*, 460 F.3d 231, 234 (2d Cir. 2006) ("[I]t is difficult to overstate the strong federal policy in favor of arbitration."). Of course, "a central premise of arbitration assumes that when parties commit consensually to resolve disagreements by arbitration . . . they are entitled to get what they bargained for, and be prepared

to accept both the benefits and the risks the system incorporates." *Fairchild Corp. v. Alcoa, Inc.*, 510 F. Supp. 2d 280, 287 (S.D.N.Y. 2007). Once again, the fact that the Final Award is being reviewed consistent with the New York Convention is the bargained-for result of the arbitration agreement. Any purported prejudice that follows from that does not compel the denial of a stay on the turnover order appealed here.

Levona's assertion that Reed Smith has not fully disclosed these multiple proceedings (Lev. Opp. at 3) is wrong and does not provide a reason to deny a stay in these proceedings, either. Reed Smith is not involved in the two Greek proceedings, and it has confirmed that it has represented Gas in its efforts to confirm the Final Award in the proceeding filed in England on December 16, 2024. In any event, Levona plainly was aware of the multiple proceedings, and their existence still is not a factor in the considerations supporting a stay, must less a reason for prematurely forcing Reed Smith to turnover confidential documents before the merits of its appeal are decided.

To the extent that Levona inaccurately argues that these foreign actions are "enforcement" proceedings, not confirmation proceedings, they are not. As Reed Smith has represented time and time again, it intends to return to Judge Mastando before any such enforcement. *See, e.g.*, Solomon Reply Decl. Ex. A (First Witness Statement of Charles G. Weller) ¶ 94 (filing in the English Proceeding noting enforcement will not proceed until conclusion of the Confirmation Proceedings). There accordingly is no reason to deny a stay on this basis either.

## III. LEVONA'S GENERALIZED ALLEGATIONS OF DELAY DO NOT SUPPORT DENIAL OF A STAY

Levona has "not shown prejudice to it aside from the prejudice present in every stay" of delay. *Diatek Licensing LLC v. Estrella Media, Inc.*, 2022 WL 510809, *2 (S.D.N.Y. Oct. 4,

2022) (Liman, J.) (citing *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 277 F.R.D. 84, 88 (W.D.N.Y. 2011) ("delay alone is insufficient to prevent a stay")); *Goodman v Samsung Elecs. Am,* 2017 WL 5636286, *3 (S.D.N.Y. Nov. 22, 2017) (a "mere delay in the litigation does not establish undue prejudice for purposes of a motion to stay."). For this reason alone, Levona's argument should be rejected. Nonetheless, there are ample other reasons why the Motion should be granted over Levona's claims of prejudice.

***First***, any harm to Levona caused by the delay is temporary and minor when compared to the irreparable harm Reed Smith faces in disclosing privileged communications *directly* to Levona's principals (Br. at 12-13). Adam Spears, the principal of Levona, Pach Shemen, and Reorganized Holdings, has in fact admitted that he is unable to separate his knowledge among entities: "I don't have a line down the middle of my brain that can separate the two." (Solomon Reply Decl. Ex. B (9/3/2023 Spears Dep.) at Tr. 45:2-4). And further, Levona admitted that Reorganized Holdings did not have an independent director at all; rather it had "an independent director whose fiduciary duties run to the new shareholders — *i.e., to Pach Shemen* and its designee" (ECF 202 (10/28/24 Levona Letter) at 2 (emphasis added)). And when it suited Reorganized Holdings to try to move a matter to this Court, it told Judge Failla:

> Levona (with the most at stake in the outcome of the Arbitration Confirmation Proceeding) is an affiliate of Pach Shemen, who through the Plan Confirmation Order became (along with its nominee) Holdings' largest shareholders (and therefore has the most at stake in the outcome of the Plan Confirmation Appeal and the Consummation Appeals).

(Solomon Reply Decl. Ex. C (2/28/25 Reorganized Holdings Letter)). Thus, once the privileged documents are turned over to Reorganized Holdings, they will not only be in Reorganized Holdings' hands, and that is adversity enough, but they will be in possession of Levona as well. There is no going back. Here, the harm that would inure to Reed Smith absent a stay greatly

outweighs any possible harm Levona may face due to delay. *See Nat'l Immigration Project of the Nat'l Lawyers Guild v. United States Dep't of Homeland Sec.*, 842 F. Supp. 2d 720, 733 (S.D.N.Y. 2012) ("failure to stay the disclosure required by the Order would cause the [party] irreparable injury if the ruling was erroneous") (Br. at 12); *Damon J. Baldone, LLC v. Starr Surplus Lines Ins. Co.*, 2024 WL 4188482, *2 (E.D. La. Sept. 13, 2024) (finding irreparable harm if party was "required to produce privileged and/or protected communications or documents") (Br. at 13).

***Second***, Levona's effort to single out Reed Smith as the sole instrument of delay does not paint the full picture and still does not provide a reason to deny a stay. Levona (i) sought to have this action referred to the Bankruptcy Court despite already having filed a motion to vacate (ECF 34; ECF 35); (ii) then sought reconsideration of this Court's denial (ECF 38; ECF 39); (iii) then sought discovery on issues related to its own motions (ECF 75; ECF 80); (iv) then sought leave to amend to include allegations of fraud (ECF 138; ECF 147); and (v) then sought a stay pending Bankruptcy Court decision on confirmation (ECF 202). In other words, the time involved in resolving the issues in this proceeding is related to the issues themselves.

***Third***, any delays that will result from Reed Smith's pursuit of its appeal arise, as noted, from the ordinary course of litigation and provide no impetus prematurely to grant Levona the privileged documents it seeks. A stay of the order in the ordinary course likewise does not resolve anything in Reed Smith's favor. If the appellate resolution on both appeals favors Levona, and we do not mean to suggest that it will, then the appropriate documents will be produced with any further protections the law allows. Using a stay to protect the status quo in the meantime, particularly given the substantial nature of the issues involved, makes abundant good sense.

## CONCLUSION

The Court should grant the Motion and issue a stay pending appeal and grant such other relief as the Court deems proper.

DATED: New York, New York
March 5, 2025

**REED SMITH LLP**

*/s/ Louis M. Solomon*
Louis M. Solomon
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 251-5400
Facsimile: (212) 521-5450
E-Mail: lsolomon@reedsmith.com

*Reed Smith LLP*

**CERTIFICATE OF COMPLIANCE**

This document complies with the word limit of S.D.N.Y. Local Rule 7.1(c), because, excluding the parts of the document exempted by that rule, and relying on the word count of the word-processing program used to prepare this document, this document contains 2,610 words.

Dated: March 5, 2025

*/s/ Louis M. Solomon*
Louis M. Solomon