

Hal S. Shaftel
Tel 212.801.2164
Fax 212.801.6400
shaftelh@gtlaw.com

May 1, 2025

Honorable Lewis J. Liman
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007-1312

   Re:  <u>Eletson Holdings, Inc. et al. v. Levona Holdings, Ltd</u>. 23-cv-7331 (S.D.N.Y) (LJL)

Dear Judge Liman:

  We write on behalf of the Preferred Shareholders (the "Preferreds") regarding Levona's letter dated April 24, 2025 (ECF 325), which seeks to compel non-party discovery based on procedurally deficient and, frankly more importantly, inordinately overbroad subpoenas ("RFPs") disconnected to the issues genuinely in dispute. While it is not the Preferreds' task to repair facially improper RFPs, that is particularly so because Levona seeks to misuse the discovery process to singularly burden the Preferreds to gain whatever leverage it can while opposing their intervention.

  <u>Levona Conveniently Ignores Relevant Context</u>: Having no interest in focusing on foot faults, the Preferreds justifiably object to Levona's substantive abuse of the discovery rules. After confirming, in April 2024, the arbitral Award in substantial respects (ECF 104 at 123),[1] the Court stated, in September 2024, that it would "permit discovery on facts relevant to equitable tolling and to whether the award was procured by fraud or undue means." ECF 162 at 47 (the "Discovery Order"). Discovery thus must be reasonably tailored to the limited subject matter defined in the Discovery Order and not to re-litigation of extrinsic issues already decided by arbitration.

  Following the Discovery Order, Levona alleges it "served" the non-party Preferreds by U.S. Postal Service mailings to Cyprus on October 8, 2024.[2] On its face, the RFPs purported to command production of documents by October 22 and, contrary to Rule 45(c)(2)(A), at a location in New York City (far) more than 100 miles from Cyprus.[3]

---

[1] In February 2025, the Court amended its prior order to provide that it is "subject to resolution of Levona's pending motion to vacate the award and defense based on fraud in the arbitration." ECF 268.

[2] While Cyprus does not prohibit service by mail, "service" does not resolve enforceability issues, particularly in respect of foreign recipients for whom personal jurisdiction in the forum has not been established; indeed, Levona is actively opposing the Preferreds' intervention. But "before compelling a nonparty to comply with a subpoena . . . a court must have personal jurisdiction over that nonparty." *Nike Inc. v. Wu*, 349 F.Supp.3d 310, 321 (S.D.N.Y. 2018).

[3] By impermissibly fixing compliance outside of Rule 45's geographic requirements, Levona's error is not so much about the logistics of transmitting documents to New York; rather, it is about depriving the currently <u>non-party</u> Preferreds of rights (*see* Rule 45(f)) to adjudicate non-party discovery disputes where they are located.

**Greenberg Traurig, P.A. | Attorneys at Law**
One Vanderbilt Avenue | New York, NY 10017 | T +1 212.801.9372 | F +1 212.801.6400

www.gtlaw.com

According to Levona, the RFPs allegedly were delivered to Cyprus on November 1, 2024 (Ex. A hereto, from Levona), which was (i) 10 days <u>after</u> the purported compliance date; and (ii) more significantly, the day <u>after</u> the Court adopted a discovery stay. ECF 205. Putting aside any issues of service, jurisdiction and time/place rules, the Preferreds – while Levona speaks of service seven months ago (ECF 325 at 1) – were not obliged to respond until after the discovery stay was lifted on March 25, 2025. ECF 297. Nor, accordingly, did Leona follow up in any manner whatsoever until then. At that point, the Preferreds (initially through Apargo) expressed a desire to intervene in the case to protect their interests (ECF 289, 302) and repeatedly sought to engage in developing a reasonable discovery plan with the named parties. However, the parties refused, rejecting requests to confer on the scope and status of party and other non-party discovery. Frustrated in their efforts to learn what, if any, other discovery was in process to mitigate against disproportionality and/or duplicativeness, the Preferreds served well-grounded objections to the RFPs on April 18, which, rather than mere "boilerplate' (ECF 235 at 1), took account of that specific context. *E.g.,* ECF 325-11 at 1, 3 (exemplar objections specific to circumstances). Even so, the Preferreds did not "resist[] . . . meaningful discovery" (ECF 235 at 1) but stated a willingness to confer on parameters consistent with the Discovery Order. ECF 235-11 at 2.

In follow up, Levona insisted that the Preferreds offer unilateral accommodations, without explaining in response to questions what it truly needed/wanted, let alone why, and refusing to narrow anything. Essentially turning the discussion into cross-examination (to which it was not entitled) about the Preferreds' activities, Levona falsely states we were "unable to even identify" custodians/repositories or the full scope of "possession, custody or control" documents. ECF 235 at 1-2. While a catalogue of all documents of course was not called for, it was specifically explained that the Preferreds, as non-operating investment entities with no employees, have only minimal documents largely related to corporate formation and accounting matters maintained with professional advisors and outside the Discovery Order's scope. For additional repositories, it was explained that as the Preferreds do not have their own email domains/servers, representatives of the families who are known to Levona as associated with the Preferreds, use other email addresses in connection with the Preferreds. But again, information that the family representatives acting on behalf of the Preferreds possess is minimal given the limited activities of the Preferreds. It was also specifically explained that the Preferreds do not view documents held by third parties, such as Eletson Gas for which they have shareholder status, as in their possession, custody or control. Before any further discussion, Levona filed its ill-founded discovery letter.

<u>RFPs Are Inordinately Overbroad</u>: As written (and Levona rebuffed requests for any pruning), the RFPs are facially improper for several independent reasons:

First, most notably, the RFPs bear little to no relationship to the Discovery Order's scope. Indeed, Levona clearly made "no effort to tailor the subpoena" to appropriate discovery. *Lelchook v. Lebanese Canadian Bank, SAL* 670 F. Supp. 3d 51, 54 (S.D.N.Y. 2023); *New Falls Corp. v. Soni*, 2022 U.S. Dist. LEXIS 227830, *26 (E.D.N.Y. Dec. 19, 2022) (rejecting "expansive discovery" from non-party where "no effort to tailor" requests) (citation omitted). Particularly given Levon's standing on the RFPs as written, it is not the responsibility of either this Court or the Preferreds to remedy the facially improper requests. *Bhatt v. Lalit Patel Physician P.C.*, 2020 WL 13048694 at *3 (E.D.N.Y. Oct. 19, 2020) (court "decline[s] to rewrite" "plaintiffs' requests [which] are grossly overbroad"). Under the Discovery Order, discovery is only permitted

concerning (1) the alleged fraud from the non-disclosure of the so-called "At-Issue Documents"; and (2) Levona's claim for equitable tolling (which warrants discovery <u>provided</u> by, not <u>propounded</u> by Levona). Far beyond the limits of the Discovery Order, the RFPs cover a broad range of topics, including, among many other items, the "Purchase Option" generally (ECF 325-1 at 11); "the value of [various] vessels" (*id.* at 13); "the value of any interest in Eletson Gas" (*id.*); communications of any kind with almost 20 people or entities (*id.*); and organizational charts and document retention (*id.* at 14), etc., etc. Based on a disingenuous citation to the Court's Order dated September 6, 2024 (ECF 162), Levona argues the arbitral Award is not "a basis to oppose discovery" (ECF 235 at 3); in fact, that Order recognized that Levona's motion to amend its answer "is based on four [At-Issue] documents" (*id.* at 7) without opening up for dispute and discovery all otherwise undisturbed aspects of the Award, such as the fact of the nomination of the Preferreds to receive the interests. Indeed, the Discovery Order is squarely to the contrary.

Second, while leaving the Preferreds in the dark about other discovery, Levona is hypocritically opposing their intervention but propounding expansive RFPs on them as if they were parties. Ignored by Levona, "non-party status is [] significant in determining whether compliance with a discovery demand would constitute an undue burden." *Athalonz, LLC v. Under Armour, Inc*., 2024 U.S. Dist. LEXIS 65685, *7 (S.D.N.Y. 2024) (quashing subpoena because "non-party status weighs heavily" in favor of doing so).[4] As much as Levona wants it both ways, the Preferreds currently are non-parties.

Third, by broadly defining the Preferreds to include, among other things, "partners, corporate parent[s], subsidiaries, and affiliates," Levona apparently seeks back-door discovery of <u>other</u> parties' documents, such as Eletson Gas in which the Preferreds hold the preferred equity. The fact that "the documents [Levona] seeks from [the Preferreds] are likely available from other sources . . . weighs further in [] favor" of finding undue burden. *Athalonz* at *9-10. Further, the fact that the Preferreds hold equity in Eletson Gas certainly does not make them the proper source of discovery from that entity.[5]

Fourth, twelve of the thirteen RFPs (virtually all include multiple subparts containing convoluted definitions) improperly demand "<u>[a]ll</u>" documents broadly "relating to" the expansive range of topics referenced in the RFPs. Requests of that type "seeking All Documents or All Communications on a given issue are overbroad, impermissible, and presumptively improper." *Oakley v. MSG Networks, Inc.* 2025 U.S. Dist. LEXIS 4963, * 7 (S.D.N.Y. Jan. 9, 2025) (internal quotations marks omitted).[6]

---

[4] *See also Arista Records LLC v. Lime Group LLC*, 2011 U.S. Dist. LEXIS 20709, *9 (S.D.N.Y. Mar. 1, 2021) ("special weight [should be given] to the burden on non-parties of producing documents"); *In re 650 Fifth Ave. & Related Props.*, 2013 WL 12335763, at *2 (S.D.N.Y. Aug. 29, 2013) ("nonparty status" is "a significant factor in determining whether discovery is unduly burdensome."); *Minpeco, S.A. v. Conticommodity Servs., Inc*., 118 F.R.D. 331, 332 (S.D.N.Y. 1988) ("compelling production should be imposed on a nonparty . . . only in extreme circumstances").

[5] Reflecting their rote nature, the RFPs are "substantially similar" to Levona's requests directed to Eletson. *Athalonz* at *9-10 (rejecting "duplicative" discovery); *Alcon Vision, LLC v. Allied Vision Grp., Inc*., 2019 U.S. Dist. LEXIS 152073, *6 (S.D.N.Y. 2019) (rejecting nonparty subpoena where "cumulative and duplicative") (citation omitted.)

[6] *See also Hedgeye Risk Mgmt., LLC v. Dale*, 2023 U.S. Dist. LEXIS 116323, *4 (S.D.N.Y. July 5, 2023) (requests

While their objections to the RFP's are plainly meritorious, it does not appear that the Preferreds possess documents fairly understood as within the Discovery Order's scope. That said, for background as Levona requested, the Preferreds are willing to produce documents (some already are included in the bankruptcy case discovery, which can be reproduced) sufficient to reflect the corporate structure of the entities under standard confidentiality protections.

Respectfully,

*/s/ Hal S. Shaftel*

Hal S. Shaftel

---

demanding "All Documents" are "often [] a red flag for overbreadth and undue burden."); *Optionality Consulting Pte Ltd. v. Edge Tech. Grp. LLC*, 2022 WL 1977746, at *3-4 (S.D.N.Y. June 3, 2022) (requests for "all documents and communications" are overbroad and "presumptively improper"); *Gropper v. David Ellis Real Estate, L.P.*, 2014 WL 518234, at *4 (S.D.N.Y. Feb. 10, 2014) (requests for "any" and "all" documents are "inherently overbroad").

# EXHIBIT A

**Tracking Number:**

Remove ✕

## RA431698693US

Copy    Add to Informed Delivery (https://informeddelivery.usps.com/)

### Latest Update

Your item was delivered in CYPRUS at 10:20 am on November 1, 2024.

## Delivered

**Delivered**
CYPRUS
November 1, 2024, 10:20 am

See All Tracking History

**What Do USPS Tracking Statuses Mean? (https://faq.usps.com/s/article/Where-is-my-package)**

Feedback

Text & Email Updates ⌄

Product Information ⌄

See Less ⌃

**Track Another Package**

[ Enter tracking or barcode numbers ]

## Need More Help?

Contact USPS Tracking support for further assistance.