```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__5/9/2025__
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                               :

ELETSON HOLDINGS, INC. and ELETSON       :
CORPORATION,
                               :

               Petitioners,      :         23-cv-7331 (LJL)
                               :

        -v-                   :     MEMORANDUM AND
                               :         ORDER

LEVONA HOLDINGS LTD.,           :

               Respondent.    :
------------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

      Apargo Limited, Fentalon Limited, and Desimusco Trading Limited ("Proposed

Intervenors") move, pursuant to Federal Rule of Civil Procedure 24, for an order permitting them

leave to intervene in this action and to file a proposed petition (the "Proposed Petition") seeking

confirmation of the Arbitral Award (the "Award") issued by the Hon. Ariel E. Belen of JAMS

(the "Arbitrator") on September 29, 2023.  Dkt. No. 301.  The motion is granted in part and

denied in part.  The Court grants the motion to the extent that Proposed Intervenors seek to

defend the Award against the cross-petition of Levona Holdings Ltd. ("Levona") to vacate the

Award.  The Court denies the motion to the extent that Proposed Intervenors seek to confirm the

Award and to file the Proposed Petition.

## BACKGROUND

      Familiarity with the prior proceedings in this matter is presumed.

      This case arises from the Award issued by Justice Belen on September 29, 2023,

resolving a dispute between Levona, a British Virgin Islands special purpose entity, and Eletson

Holdings, Inc. ("Holdings") and Eletson Corporation ("Corp." and with Holdings, "Eletson")

over ownership interests in Eletson Gas LLC ("Eletson Gas"), a limited liability company that specializes in liquified petroleum gas shipping.  Eletson was originally controlled by three Greek shipping families, the families of Laskarina Karastamati, Vassilis Kertsikoff, and Vasilis Hadjieleftheriadis, but had fallen on hard times.  *See* Dkt. No. 104 at 2–3; *Eletson Holdings, Inc. v. Levona Holdings Ltd.*, 731 F. Supp. 3d 531, 546 (S.D.N.Y. 2024), *as modified by* Dkt. No. 268 (the "Second Amended Confirmation Order" or "SACO").[1]  In March 2023, prior to the issuance of the Award, creditors of Holdings had filed an involuntary bankruptcy petition against Holdings.  Holdings subsequently converted that petition into a voluntary petition.  SACO at 17–18.

Levona is a subsidiary of two hedge funds, Nomis Bay and BPY, that have both engaged the same alternative management company Murchinson Ltd. ("Murchinson") to act as their investment sub-advisor.  *Id.* at 2.  In November 2021, Levona invested in Eletson Gas by purchasing Preferred Shares of the company from Eletson's previous investor and joint venture partner, Blackstone.  Holdings held the common shares in Eletson Gas.  *Id.* at 3.  Corp. provided management services to Eletson Gas.  *Id.* at 2.

The JAMS arbitration was initiated by Holdings and Corp. pursuant to the Third Amended and Restated LLC Agreement (the "LLCA"), Dkt. No. 51-1, which Holdings and Corp. had entered into with Levona, *id.* at 3.  The underlying dispute between the parties also

---

[1] The Court published an Amended Opinion and Order on April 19, 2024, Dkt. No. 104, correcting typographical errors in the Opinion and Order issued on February 9, 2024, Dkt. No. 83, which granted in part and denied in part Eletson's petition to confirm and granted in part and denied in part Levona's cross-petition to vacate the Award.  On February 14, 2025, the Court sua sponte amended the second sentence of the Amended Opinion and Order, which had originally confirmed the Award without conditional language, adding: "Subject to the resolution of Levona's pending motion to vacate the award and its defense based on fraud in the arbitration." Dkt. No. 268.

involved a Binding Offer Letter ("BOL") that Levona had entered with Eletson pursuant to which Levona had provided funding to Eletson Gas in exchange for the transfer of two of its ships to Levona. *Id.* at 5. The BOL had an option which permitted Eletson to purchase the Preferred Shares from Levona by repaying the loan. *Id.* at 7–8. In broad strokes, Eletson claimed that it had exercised an option to acquire the Preferred Shares that was embedded in the BOL and that, as a consequence, actions that Levona took subsequent to the option exercise and consistent with Levona's ownership of the Preferred Shares were tortious. Levona counterclaimed against Eletson, asserting that the option had not been exercised because the loan had not been repaid and that it was entitled to damages. *Id.* at 11–12.

The Arbitrator ruled in favor of Eletson. He determined that Eletson had validly exercised the purchase option contained in the BOL and that Levona was no longer the proper owner of the Preferred Shares in Eletson Gas. Dkt. No. 67-58 at 34–46. After the presentation of evidence in the arbitration was closed, Holdings (which was then in bankruptcy proceedings) asked the Arbitrator to award the shares and monetary relief not to it but rather to Gas and to the Proposed Intervenors (who allegedly were owned by the then-owners of Holdings). The Arbitrator granted the request, over the objection of Levona. *Id.* at 30–31. He ruled that the Preferred Shares were transferred to nominees chosen by Eletson. *Id.* at 46. He awarded compensatory damages to the Proposed Intervenors in the amount of $19,677,743.71 and to Eletson Gas in the amount of $23,777,378.50. *Id.* at 100. He also awarded punitive damages to the Proposed Intervenors in the amount of $19,677,743.71 and to Eletson Gas in the amount of $23,777,378.50, *id.* at 73, 100,[2] as well as attorneys' fees, expenses, and costs against Levona for

---

[2] The Court remanded to the Arbitrator for clarification regarding aspects of the punitive damages award, *see* Dkt. Nos. 106, 121, in response to which the Arbitrator issued a Remand Decision, Dkt. No. 150-1. The Court has not addressed the Remand Decision.

the arbitration, involuntary bankruptcy proceedings, and trustee litigation, *id.* At 67, 75–76, 84–86.

The Award is now subject to judicial review to determine whether it was procured by fraud. Though the Court issued an Opinion and Order on April 19, 2024, granting in part and denying in part Eletson's application to confirm the Award, the Court issued a subsequent Opinion and Order on September 6, 2024, finding that there was evidence that Eletson and its counsel had procured the Award through fraud, Dkt. No. 162 at 16, and permitting Levona to file an amended petition to vacate asserting that the Award was procured by corruption, fraud, or undue means, 9 U.S.C. § 10(a)(1), *id.* at 46. The Amended Answer and Second Amended Cross-Petition is at Dkt. No. 125-36 and 127–36.[3] Proceedings with respect to that petition are ongoing.

## PROCEDURAL HISTORY

Proposed Intervenors filed this motion on April 7, 2025. Dkt. No. 301. Proposed Intervenors also filed a memorandum of law and a declaration of counsel in support of the motion with a copy of their proposed petition (the "Proposed Petition"). Dkt. Nos. 302, 303. The Proposed Petition contains a single count, asking the Court for recognition of the Award. Dkt. No. 303-1 ¶¶ 29–37. The relief sought is limited to an order confirming the Award and entering judgment in favor of the Intervenors and against Levona in accordance with the Award. *Id.* at 12. On April 21, 2025, Levona filed a memorandum of law in opposition to the motion to intervene along with the declaration of counsel. Dkt. Nos. 318, 320. On the same day, Eletson filed a memorandum joining in Levona's opposition to the motion to intervene. Dkt. No. 319.

---

[3] Levona did not separately file the Amended Answer and Second Amended Cross-Petition following the Court's September 6, 2024, Opinion and Order. The Court treats the filing at Dkt. Nos. 125-36 and 127-36 as the operative Amended Answer and Second Amended Cross-Petition, as have the parties. *See* Dkt. No. 170 (Eletson Response to Second Amended Cross-Petition).

On April 28, 2025, Proposed Intervenors filed a reply memorandum in further support of their motion to intervene.[4]

The Court heard oral argument on the motion to intervene on May 7, 2025.  This Memorandum and Order memorializes the opinion delivered orally at the conclusion of that hearing.

## DISCUSSION

Proposed Intervenors move for intervention under Federal Rules of Civil Procedure 24(a)(2) and 24(b).

The motion is based on a bankruptcy proceeding that was commenced during the arbitration but that continued after the Award was issued, eventually resulting in a change of corporate control over Eletson.  On or about January 4, 2023, while the arbitration was ongoing, an affiliate under common ownership with Levona—Pach Shemen—purchased over $183 million in bonds of Holdings.  Holdings failed to make the required interest payments on the bonds.  Accordingly, on March 7, 2023, while the arbitration was pending, Pach Shemen and two other creditors of Holdings filed involuntary petitions for relief under Section 303 of Title 11 of the Bankruptcy Code, commencing involuntary Chapter 7 proceedings against Holdings and two of its affiliates (the "Debtors") in the Bankruptcy Court for the Southern District of New York. Dkt. Nos. 67-26, 67-30; *see In re Eletson Holdings Inc. et al.* ("*Bankruptcy Proceeding*"), No. 23-10322 (Bankr. S.D.N.Y.).  Ultimately, on September 25, 2023, on motion of the Debtors, the proceeding was converted to a voluntary bankruptcy under chapter 11.  Dkt. No. 215,

---

[4] By order of February 14, 2025, the Court granted the motion of Eletson to remove Eletson's former counsel, Reed Smith LLP ("Reed Smith"), from the docket as counsel for Eletson.  Dkt. No. 269.  Reed Smith sought a stay of that order, and the Second Circuit granted a temporary stay pending review by a three-judge panel on an expedited basis.  Dkt. No. 316.  Accordingly, the docket still lists Reed Smith as counsel for Holdings and Corp.  Nonetheless, Reed Smith has not filed a memorandum on this motion.

*Bankruptcy Proceeding.*  The Debtors and Petitioning Creditors proposed competing plans of reorganization.  Dkt. No. 1212 at 5–11, *Bankruptcy Proceeding.*  The Debtors' proposed plan was not confirmable.  After lengthy evidentiary hearings and significant briefing, the bankruptcy court held that a plan submitted by Pach Shemen and the two other creditors was confirmable. Dkt. No. 1212 at 5–11, *Bankruptcy Proceeding.*

The bankruptcy court confirmed the petitioning creditors' plan on November 4, 2024. Under the confirmed plan, control of Eletson Holdings has passed from its former equity holders and board to Pach Shemen and a new board representing creditor interests.  Levona has acknowledged that the plan results in a "marked change" in management from "current management, who answer to the three Greek families that purportedly designated their own Cypriot companies as nominees to receive the preferred shares of Eletson Gas" to new management and a board with fiduciary duties running to Pach Shemen.  Dkt. No. 202 at 2.  The Proposed Intervenors assert that under the plan as confirmed by the bankruptcy court, there is a "lack of genuine adversity between Eletson as presently reconstituted and Levona [that] jeopardizes the fair development of the record, the full presentation of arguments, and the integrity of the process," making intervention necessary for the Proposed Intervenors to protect their economic stake in the Award.  Dkt. No. 302 at 2.

Federal Rule of Civil Procedure 24(a)(2) provides that, "[o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent their interest."  Fed. R. Civ. P. 24(a)(2).  To be entitled to intervention as a matter of right under Rule 24(a), the proposed intervenor must "(1) timely file an application, (2)

show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." *In re New York City Policing During Summer 2020 Demonstrations*, 27 F.4th 792, 799 (2d Cir. 2022) (quoting *"R" Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006)). "All four parts of the test must be satisfied to qualify for intervention as of right." *Washington Elec. Coop, Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 922 F.2d 92, 96 (2d Cir. 1990).

Federal Rule of Civil Procedure 24(b) gives the Court discretion to grant intervention to anyone who, on a timely motion, shows it "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). "The court considers substantially the same factors whether the claim for intervention is 'of right' under Fed. R. Civ. P. 24(a)(2) or 'permissive' under Fed. R. Civ. P. 24(b)(2)." *"R" Best Produce, Inc.*, 467 F.3d at 240.

The Supreme Court has held that "an intervenor of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing." *Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 440 (2017). As the Court explained, "[f]or all relief sought, there must be a litigant with standing, whether that litigant joins the lawsuit as a plaintiff, a coplaintiff, or an intervenor as of right." *Id.* 439. "Central to the *Town of Chester* analysis is the underlying assumption that standing must be established only for litigants who seek affirmative relief and move to intervene *as plaintiffs*." *Greater Chautauqua Fed. Credit Union v. Marks*, 2023 WL 2744499, at *5 (S.D.N.Y. Mar. 31, 2023). In *Virginia House of*

*Delegates v. Bethune-Hill*, the Supreme Court drew a distinction between intervention as a defendant, for which a party need not have Article III standing, and intervention seeking affirmative relief, wherein a party "invoke[es] a court's jurisdiction." 587 U.S. 658, 663 (2019); *see Env't Integrity Project v. Wheeler*, 2021 WL 6844257, at *2 (D.D.C. Jan. 27, 2021) (Jackson, J.) (holding that litigants who "are seeking to intervene as defendants, and are not invoking the Court's jurisdiction. . . are not required to demonstrate that they have Article III standing.").

Likewise, in order to intervene for the purposes of obtaining relief, a party must have a right to obtain such relief. *See  Eddystone Rail Co., LLC v. Jamex Transfer Servs., LLC*, 289 F. Supp. 3d 582, 588 (S.D.N.Y. 2018). The Rules Enabling Act provides that the Federal Rules of Civil Procedure "shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). It follows that, if a person could not obtain a particular form of relief by a complaint filed in federal court, she cannot obtain that relief by the contrivance of withholding a complaint and only later filing a motion to intervene in someone else's case. "To enlarge standing in this way would extend the entitlement to sue to a new party that is otherwise unauthorized under the statute at issue to bring suit to enforce whatever rights it may claim. Such a decision would amount to an improper expansion of the substantive rights provided by the Act." *Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d 62, 83 (2d Cir. 2013); *see also Bugliotti v. Republic of Argentina*, 67 F.4th 102, 107 (2d Cir. 2023) (holding that "whether a plaintiff is entitled to enforce the asserted right . . . must be answered by reference to substantive law" and that "[t]o hold otherwise would amount to an improper expansion of the substantive rights provided by the substantive law"  in violation of the Rules Enabling Act) (cleaned up).

Levona argues broadly that Proposed Intervenors do not have statutory standing under the Federal Arbitration Act ("FAA") to pursue confirmation of the Award or to oppose vacatur. Dkt.

No. 318 at 11–12, 13–15.  Proposed Intervenors argue broadly that they have standing both to seek confirmation and to oppose vacatur.  Dkt. No. 329 at 2, 4–5.  The Court concludes that the Proposed Intervenors do not have standing to seek confirmation but that they do have standing to oppose vacatur.

## I.    Standing to Petition for Confirmation

The FAA provides, in parallel language, that "any party to the arbitration" may apply to the court for an order confirming an arbitration award, for an order vacating an award, or for an order modifying or correcting the award.  9 U.S.C. §§ 9, 10, 11; *see also*  9 U.S.C. § 207 ("[A]ny party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration").  That language is purposeful.[5]  "The FAA provides a 'streamlined' process for a party seeking a 'judicial decree confirming an award, an order vacating it, or an order modifying or correcting it.'"  *Tube City IMS, LLC v. Anza Cap. Partners, LLC*, 25 F. Supp. 3d 486, 488 (S.D.N.Y. 2014) (quoting *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008)).  "Normally, confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration

---

[5] Where Congress intended to empower nonparties to invoke the court's affirmative power with respect to an arbitral award, that intent is manifest in the language of the statute.  *See* 9 U.S.C. § 10(c) (in arbitration actions involving federal agencies pursuant to 5 U.S.C.A. § 580, the district court may vacate an award "upon the application of a person, other than a party to the arbitration, who is adversely affected or aggrieved by the award" if the award is inconsistent with the required factors).  The Court may not assume that the omission of such an authorization for nonparties in other parts of the FAA was "accidental."  *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 294 (S.D.N.Y. 2015); *see also Frank G. v. Bd. of Educ. of Hyde Park*, 459 F.3d 356, 370 (2d Cir. 2006) (noting the applicability of the *expressio unius est exclusio alterius* canon of interpretation when "it is fair to suppose that Congress considered the unnamed possibility and meant to say no to it." (quoting *Barnhart v. Peabody Coal Co*., 537 U.S. 149, 168 (2003))); *Doe v. Bin Laden*, 663 F.3d 64, 70 (2d Cir. 2011) ("The ancient maxim *expressio unius est exclusio alterius* (mention of one impliedly excludes others) cautions us against engrafting an additional exception to what is an already complex statute." (internal citation omitted)).

award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006).

To that end, courts in this Circuit and elsewhere have uniformly held that only one who is party, and not a nonparty, to an arbitration has statutory standing to seek an order vacating an arbitral award. *See, e.g., Meshkin v. Vertrue Inc.*, 2007 WL 2462172, at *2 (D. Conn. Aug. 28, 2007); *Dundas Shipping & Trading Co. v. Stravelakis Bros.*, 508 F. Supp. 1000, 1003 (S.D.N.Y. 1981) ("Since Buck was not a party to the arbitration, it has no standing to move to vacate the award.") (Weinfeld, J.) (citing *Local 13, Int'l Longshoremen's & Warehousemen's Union v. Pacific Maritime Ass'n*, 441 F.2d 1061, 1064 (9th Cir. 1971), *cert. denied*, 404 U.S. 1016 (1972)); *Marshall v. Wells Fargo Advisors, LLC*, 668 F. App'x 874 (11th Cir. 2016); *Katz v. Feldman*, 2019 WL 266945, at *3 (D. Del. Jan. 18, 2019); *Thomas v. Jenkins*, 2016 WL 6566707, at *1 (M.D. Tenn. Nov. 4, 2016); *Rocky Mountain Biologicals, Inc. v. Microbix Biosystems, Inc.*, 986 F. Supp. 2d 1187, 1196 (D. Mont. 2013). Likewise, courts have held that only a party to an arbitration may seek an order modifying or correcting an arbitral award. *See U.S. Postal Serv. v. Am. Postal Workers Union*, 564 F. Supp. 545, 548 (S.D.N.Y. 1983). The same follows with respect to petitions to confirm an arbitral award. Only a party to the underlying arbitration, not a stranger to that arbitration, can invoke the court's powers to obtain an order confirming the award. *See Cleveland v. Porca Co*., 38 F.3d 289, 297 (7th Cir. 1994) (labor arbitration): *Rocky Mountain Biologicals*, 986 F. Supp. 2d at 1196 (labor arbitration).[6]

---

[6] Section 3 of the FAA permits an application for a stay of litigation of "a suit or proceeding referrable to arbitration" under an agreement to be made by "one of the parties" until arbitration is had, 9 U.S.C. § 3, and Section 4 of the FAA permits a "party aggrieved" by the failure or refusal or another to arbitrate under a written agreement to arbitrate to petition the court for an order compelling arbitration, 9 U.S.C. § 4. An intended third-party beneficiary thus may be able to move to compel arbitration or to stay litigation pending arbitration, for in that circumstance, both parties to the written arbitration agreement would have agreed in advance to the status of

Proposed Intervenors do not appear to challenge the proposition that Rule 24 cannot give them rights as intervenors that they would not have under the FAA had they filed a complaint without intervention.  Rule 24 does not expand substantive rights.  Instead, they argue that, even had Eletson not filed a petition to confirm, they would have been entitled to seek confirmation because they "received substantial, direct relief from the arbitration" or, alternatively, if standing is limited to a "party to the arbitration," they should be considered to be a "party" because of their interest in the Award, and because they "participated as witnesses, and stipulated to abide by its outcome."  Dkt. No. 329 at 2–3.  Neither proposition is correct.  Under the FAA, only a "party to the arbitration" is entitled to an order confirming an award.  One who is not a party to the arbitration cannot seek to vacate the award or to modify it, no matter how directly or substantially the award might affect him or her.  *See, e.g., Katir v. Columbia Univ.*, 15 F.3d 23, 24–25 (2d Cir. 1994) (per curiam) (holding that "an individual employee represented by a union generally does not have standing to challenge an arbitration proceeding to which the union and the employer were the only parties," even where the arbitrator determined that the employer had "just cause" to fire the employee); *Ladson v. Ulltra E. Parking Corp.*, 878 F. Supp. 25, 28 (S.D.N.Y. 1995) (denying employee standing to challenge results of arbitration between union and employer even where employee alleged that the award deprived him of the amount of backpay to which he was entitled)*; Loc. 13*, 441 F.2d 1061 (denying local union standing as a

---

the third party as one entitled to assert contract rights.  *See, e.g. City of Almaty, Kazakhstan v. Sater*, 2019 WL 6681560, at *10 (S.D.N.Y. Dec. 6, 2019), *objections overruled sub nom. City of Almaty v. Sater*, 2021 WL 4940304 (S.D.N.Y. Oct. 22, 2021).  But in this case, Proposed Intervenors do not claim to have been intended third-party beneficiaries of the LLCA, nor could they make that claim.  The agreement pursuant to which arbitration was brought and the petition to confirm the award was filed precludes the existence of third-party beneficiaries.  *See* LLCA § 12.20.

nonparty to set aside the results of arbitration between parent union and employers' association, even where result was the de-registration of local union officer). The rule is not different where, as here, the nonparty benefits from of an award and seeks to have it reduced to a judgment than where, as in *Katir* and *Loc. 13*, the nonparty is impaired by an award and seeks to have it vacated.

Proposed Intervenors' alternative argument is that they should be considered a "party to the arbitration" because representatives of the Proposed Intervenors testified as witnesses at the arbitration and because Proposed Intervenors, in their capacity as the apparent nominees of Eletson, agreed to be bound by the Award. The argument is demonstrably incorrect. Proposed Intervenors were not parties to the arbitration. The record reflects that they were not named as parties in the arbitration, *see* Dkt. No. 31-3, they never appeared in the arbitration, Levona never agreed to arbitrate claims against them, and they never subjected themselves to discovery. Levona agreed to no "stipulation" by which Proposed Intervenors would participate in the arbitration. What the Proposed Intervenors refer to as a "stipulation" was simply a sentence in the testimony of each of the representative witnesses stating a unilateral promise to be bound by the results of the arbitration, made after the evidence was concluded and at a time when the direction the arbitration was headed was clear. Dkt. No. 67-41 ¶¶ 101, 103 (Laskarina Karastamati witness statement); Dkt. No. 67-43 ¶¶ 194, 196 (Vassilis E. Kertsikoff witness statement); Dkt. No. 67-45 ¶ 104 (Vasilis A. Hadjieleftheriadis witness statement). Proposed Intervenors did not agree to be bound by the resolution of any affirmative claims of Levona; Levona did not make any affirmative claims against them. Such unilateral promises— particularly of this "heads, I win, tails, you lose" variety—have no power to turn a nonparty into a party to an arbitration. *See, e.g., Granite Rock Co. v. Teamsters*, 561 U.S. 287, 299 (2010)

(because "[a]rbitration is strictly a matter of consent," it "is a way to resolve … only those

disputes [] that the parties have agreed to submit to arbitration." (quotation marks omitted)).  Nor

did these unilateral promises reflect an offer to arbitrate, i.e., an offer to Levona to submit to the

process of arbitration, including a discovery process, but merely a promise to be bound by the

Award.  In the bankruptcy case, then-counsel for Holdings and Corp., Reed Smith, swore that it

was representing Holdings and Corp "and only those entities—in the Arbitration and

Confirmation Proceedings" before this Court, not the Proposed Intervenors.  Dkt. No. 60-1 at

ECF 4; Dkt. No. 261, *Bankruptcy Proceeding*.  This Court has already determined that the

Proposed Intervenors testified at the hearing on behalf of Eletson in their capacity as witnesses,

not as parties.  *See* SACO at 71 ("Neither the Nominees nor [Eletson Gas] were named as

parties. Although representatives of each testified, they did so in their capacity as witnesses, and

not in their capacity as parties."); *cf. Loc. 13*, 441 F.2d at 1064.[7]

---

[7] Proposed Intervenors rely upon *Data-Stream AS/RS Techs., LLC v. China Int'l Marine
Containers, Ltd.*, 2003 WL 22519456 (S.D.N.Y. Nov. 6, 2003), but that case is clearly
distinguishable.  The court there held that a company that was not formally included in the
caption as a party to the arbitration nonetheless was appropriately considered a party because (1)
it had been assigned the contract rights prior to the arbitration to initiate the arbitration; (2) it had
initiated the arbitration; (3) the "Claim for Arbitration and Mediation" made clear that it was the
real party in interest; (4) the Claim was signed by its counsel; and (5) both parties treated it as a
party during the arbitration as an assignee.  An assignment is markedly different from an interest
as third-party beneficiary.  "An unequivocal and complete assignment extinguishes the
assignor's rights against the obligor and leaves the assignor without standing to sue the obligor."
*Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank*, 731 F.2d 112, 125 (2d Cir. 1984); *see
Valdin Invs. Corp. v. Oxbridge Cap. Mgmt., LLC*, 651 Fed. App'x 5, 7 (2d Cir. 2016) (summary
order) ("Valdin's assignment of its rights extinguished its claims against Oxbridge and deprived
it of any interest in this litigation. Valdin therefore lacks standing."); *Wistron Neweb Corp. v.
Genesis Networks Telecom Servs., LLC*, 2023 WL 4493542, at *1 (S.D.N.Y. July 12, 2023)
(same).  In that circumstance, the assignor loses all interest in the case and can no longer bring a
motion to confirm.  *See Compagnie Noga d'Importation et d'Exportation S.A. v. Russian Fed'n*,
2008 WL 3833257, at *6 (S.D.N.Y. Aug. 15, 2008), *aff'd*, 350 F. App'x 476 (2d Cir. 2009)
(summary order).  The assignee stands in the shoes of the assignor and becomes the real party in
interest.  *See Sonterra Cap. Master Fund, Ltd. v. Barclays Bank PLC*, 403 F. Supp. 3d 257, 260
(S.D.N.Y. 2019) ("Where a valid assignment has been executed, the assignee is 'the real party in

Proposed Intervenors also do not fit within any of the "limited exceptions" to the rule that only a party to the arbitration has rights under the FAA. *Meshkin*, 2007 WL 2462172, at *7. Courts have held that an employee who is represented by her union in an arbitration has standing to petition to vacate an adverse award in the limited circumstance where she alleges that the union breached its duty of fair representation. *See 1199SEIU United Healthcare Workers E. v. PSC Cmty. Servs.*, 597 F. Supp. 3d 557, 568 (S.D.N.Y. 2022); *Katir v. Columbia Univ.*, 821 F. Supp. 900, 901 (S.D.N.Y. 1993), *aff'd*, 15 F.3d 23 (2d Cir. 1994); *Lofton v. U.S. Postal Serv.*, 592 F. Supp. 36, 38 (S.D.N.Y. 1984).[8]  Proposed Intervenors do not argue that Holdings or Corp. owed a duty to them in connection with the arbitration akin to the duty that the union owes to its members, much less that Holdings or Corp. breached that duty in the arbitration.  To the contrary, Eletson—through its prior counsel—made clear that it was not representing the Proposed Intervenors.  Dkt. No. 60-1 at ECF 4; Dkt. No. 261, *Bankruptcy Proceeding*; Dkt. No. 270, Feb. 14, 2025, Hearing Transcript at 50:14–50:19 ("THE COURT: Is the provisional board filing an appearance here? Can the provisional board be sanctioned? MR. SOLOMON: Not the

---

interest' and 'the right to sue is exclusively' the assignee's." (quoting *Dennis v. JPMorgan Chase & Co.*, 342 F. Supp. 3d 404, 409 n.6 (S.D.N.Y. 2018))).  Thus, it has been held that"[a]n assignee has the same standing to enforce an arbitration award in this Court as its assignor would have." *Jugometal v. Samincorp, Inc*., 78 F.R.D. 504, 507 (S.D.N.Y. 1978).  By contrast, here, Proposed Intervenors were not assignees of the LLCA, the names of the Proposed Intervenors were not disclosed until more than halfway through the arbitration, and a request for relief on their behalf was not submitted until after all the evidence was closed and even then, was submitted over Levona's objection.  *See* SACO at 19–21, 24; Dkt. No. 67-48 at 62–63.

[8] *See also In re AMR Corp*., 598 B.R. 365, 373 (Bankr. S.D.N.Y. 2019); *Choudhary v. U.S. Postal Serv*., 2015 WL 1651076, at *2 (E.D.N.Y. Apr. 14, 2015); *Duffy v. Legal Aid Soc'y*, 2013 WL 541521, at *3 (S.D.N.Y. Feb. 12, 2013); *Shait v. The Millennium Broadway Hotel*, 2001 WL 536996, at *8–9, (S.D.N.Y. May 18, 2001); *Johnson v. Am. Arbitration Ass'n*, 1999 WL 223154, at *2, (S.D.N.Y. Apr. 16, 1999); *Am. Postal Workers Union*, 564 F. Supp. at 550.

directors. I think both counsel want to make us counsel for the directors. I don't represent the directors. I represent an entity.").

Proposed Intervenors also do not fall within the *Contracting Plumbers* exception. That case involved a jurisdictional dispute between two trade unions—the plumbers' and the pipefitters' unions—with respect to work that each argued fell within its jurisdiction. An international union, the United Association of Journeymen and Apprentices of the Plumbing Industry of the United States and Canada, AFL-CIO (the "Association"), had the constitutional authority to establish work jurisdiction among its local unions. *See Ass'n of Contracting Plumbers of City of New York, Inc. v. Loc. Union No. 2 United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada*, 841 F.2d 461, 467 (2d Cir. 1988). Nonetheless, without informing the other local or the Association of it, one of the locals (representing the plumbers) engaged in an arbitration with its employer association that resulted in a determination contrary to that which had been reached by the Association. The Second Circuit held that, by virtue of its pre-existing right to determine trade line jurisdiction, the Association had standing to challenge the arbitration awards and an injunction that grew out of them. The Circuit reasoned that "[r]efusing to recognize the international union's standing to challenge the arbitration awards and injunctions would undermine one of the primary reasons for the UA's existence: to avoid trade line jurisdiction disputes between the local unions." *Id.* at 467. "In other words, foreclosing the Association from challenging the arbitration awards would have directly resulted in an outcome where the Association's very existence would have been jeopardized." *Eddystone Rail Co.*, 289 F. Supp. 3d at 589.[9]

---

[9] Though it did not expressly bear on the Second Circuit's standing analysis, the parties in *Contracting Plumbers* consented to the Association's intervention. 841 F.2d at 466.

Proposed Intervenors are unlike the Association for two independently sufficient reasons. First, they had no pre-existing right to participate in the arbitration. They also had no pre-existing right to participate in this proceeding, nor have the parties consented to their intervention. They were not parties to the LLCA pursuant to which Eletson, over Levona's objection, initiated the arbitration. Dkt. No. 31-1 § 12.14. That agreement specifically provided that there were no third-party beneficiaries. *Id.* § 12.20. If they had a claim against Levona, they had no right, absent Levona's consent, to have it resolved through arbitration.[10] Second, they had no need to participate in the arbitration. If, as Proposed Intervenors assert, they had a claim against Levona, they could have brought that claim in the ordinary way, through litigation, in a forum in which both parties would have the right to a judge and to the tools of litigation. The arbitration would not have undermined the assertion of those rights. Thus, unlike in *Contracting Plumbers*, there is no need to permit Proposed Intervenors to participate as a "party to the arbitration" in this proceeding in order to preserve Proposed Intervenors' "reasons for . . . existence," 841 F.2d at 467, or even to preserve their rights. If those rights are in any way undermined by the Award, it will be a result of Proposed Intervenors' unilateral decision to be bound by the Award while at the same time eschewing the obligations they would have undertaken had they elected to participate, with Levona's consent, as a party in the arbitration. That is not a sufficient basis to invoke the limited *Contracting Plumbers* exception.

## II. Standing to Oppose Vacatur

The Court reaches a different result with respect to the request to intervene to oppose vacatur. Proposed Intervenors argue that "independent of FAA rights, the Preferred

---

[10] In addition, under Section 12.14 of the LLCA, which Eletson invoked to assert jurisdiction over Levona in this proceeding, *see* Dkt. No. 14 ¶ 5, Dkt. No. 46 ¶ 5, only Eletson and Levona had the right to invoke this Court's jurisdiction to enforce an arbitral award, Dkt. No. 31-1 § 12.14.

Shareholders enjoy standing to protect their cognizable interests in Award and the Confirmation Order, justifying permissive intervention under Rules 24(b) and 71." Dkt. No. 329 at 2. Levona has two responses to this argument, neither of which is persuasive.

First, Levona argues that participation of the Proposed Intervenors to oppose vacatur would violate the FAA. They assert that the FAA presupposes that the adverse party to a motion to vacate must be a party to the arbitration because Section 12 of the FAA provides that "[n]otice of a motion to vacate … must be served upon the adverse party" and that upon such service, a court may "stay[] the proceedings of the adverse party to enforce the award." 9 U.S.C. § 12. That argument is flawed. In opposing vacatur, Proposed Intervenors do not seek relief under the FAA. Rather, they ask the Court not to award relief. Thus, regardless of whether Levona would have been required to serve Proposed Intervenors with their original motion to vacate, there is nothing in the FAA that would prohibit the Court from permitting the Proposed Intervenors from intervening to protect the Award.

Second, Levona analogizes the Proposed Intervenors to "nonparties in an appeal from a district court decision [who] do 'not have standing to protest the vacatur or a decision to which [they were] not a party.'" Dkt. No. 318 at 14 (quoting *U.S. Philips Corp. v. Sears Roebuck & Co.*, 55 F.3d 592, 594 (Fed. Cir. 1995)). But the authority Levona cites is inapposite. In *United States Phillips Corp.*, two companies that settled a patent infringement/antitrust matter asked the Federal Circuit to vacate the district court judgment that had resolved their dispute. *See U.S. Philips Corp. v. Windmere Corp.,* 971 F.2d 728, 729 (Fed. Cir. 1992), cited in *U.S. Phillips Corp.*, 55 F.3d at 594. A third company which was not party to the proceedings below or the subject of the judgment sought to intervene for the purposes of opposing vacatur on the basis that it was an indemnitor of the losing party and that the judgment should be preserved for purposes

of collateral estoppel in another lawsuit.  971 F.2d at 729–730.  The Federal Circuit denied the

motion to intervene on the grounds, in part, that the company was not party to the other lawsuit.

*Id.* at 731.[11]  In this case, by contrast, the Award conferred enforceable rights on Proposed

Intervenors.  *U.S. Phillips Corp.* thus lends no support to Levona's argument.[12]

## III.    Rule 24 Intervention

Having resolved the issues of standing, the Court turns to the Rule 24 analysis.  The

Court concludes that Proposed Intervenors have satisfied Rule 24 with respect to the opposition

to the motion to vacate the Award, establishing an entitlement to intervene as of right under Rule

24(a)(2).[13]

Proposed Intervenors claim an interest in the property that is the subject of this action.

The Second Circuit has held that "for an interest to be 'cognizable' under Rule 24, it must be

'direct, substantial, and legally protectable.'"  *Floyd v. City of New York*, 770 F.3d 1051, 1060

---

[11] The Supreme Court dismissed as improvidently granted a petition for certiorari in *U.S. Phillips Corp.*, on the grounds that because the third company had not successfully intervened in the court of appeals, it had no standing to petition for certiorari in the Supreme Court.  *See Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.*, 510 U.S. 27, 34 (1993).  Justice Stevens, joined by Justice Blackmun in dissent, would have held that an appellate court should not vacate a judgment entered by a trial court at the request of parties who settled their differences "without first considering its effect on third parties."  *Id.* at 34.

[12] Levona also cites the Second Circuit's summary order in *Kahn v. Chase Manhattan Bank*, 131 F.3d 131 (2d Cir. 1997).  In that case, the court held that only the plaintiffs whose complaint had been dismissed by the district court and who had filed a notice of appeal, and not persons who had been proposed as plaintiffs in the district court but who had been named only in a complaint that the court did not permit to be filed, were permitted to take an appeal.  *Id.* at *2.  The court specifically took note that the proposed plaintiffs had failed to move to intervene in the appeal filed by the plaintiffs who were the subject to the adverse ruling of the district court.  The Second Circuit did not address whether it would have granted a motion to intervene.  Its decision thus has no bearing on the question presented here whether the Court should permit the Proposed Intervenors to participate in this case when they have an enforceable interest in the Award and have moved to intervene.

[13] In the alternative, Proposed Intervenors have established a basis for permissive intervention under Rule 24(b), which requires consideration of the same factors.  *See "R" Best Produce, Inc.*, 467 F.3d at 240.

(2d Cir. 2014) (quoting *Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010)); *see In re New York City Policing*, 27 F.4th at 799.  Levona argues that Proposed Intervenors do not have such a right because they are not entitled to seek confirmation of the Award under the FAA.  Dkt. No. 318 at 15–16.  But that argument confuses statutory standing to seek confirmation under the FAA with the ability to enforce the Award under the New York Convention.  Under the Award, Levona was directed to pay the Proposed Intervenors $19,677,743.71 in compensatory damages and $1,176,918.74 in interest on the compensatory damages.  The Arbitrator also awarded the Proposed Intervenors punitive damages in the amount of $19,677,743.71.  Dkt. No. 67-58 at 100.  Even without confirmation by this Court, that Award may be confirmed and enforced in other countries under Article V of the New York Convention. *See CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 72–73 (2d Cir. 2017) (noting that "[t]his, in fact, was the entire purpose of the New York Convention").  Levona's motion to vacate the Award puts the rights of the Proposed Intervenors at risk.  If the Court, exercising its primary jurisdiction, determines to set aside or to modify the Award, it will no longer be enforceable. *See Eletson Holdings Inc. v. Levona Holdings Ltd.*, 2025 WL 893686, at *10 (S.D.N.Y. Mar. 24, 2025).  As the Court previously recognized, the Proposed Intervenors "have the most direct stake in the Court's decision" whether to vacate the Award. *Id.* at 21.  The Award thus is legally protectable.

Although the question is close, the motion to intervene to oppose vacatur is timely.  Although "timely" is not defined by Rule 24, courts consider: "(a) the length of time the applicant knew or should have known of its interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to the applicant if the motion is denied; and (d) the presence of unusual circumstances militating for or against a finding of

timeliness." *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 390 (2d Cir. 2006). Proposed Intervenors would have known from August 2023, when the petition to confirm was filed, and certainly from September 2023, when the cross-petition to vacate was filed, that they had an interest in this matter. But at that point, there would have been no particular reason for Proposed Intervenors to suspect that Eletson would not adequately have protected that interest. It was Eletson who directed the Arbitrator to award the damages to Proposed Intervenors. Although the bankruptcy proceeding was progressing, Eletson was a debtor in possession and under the same management as the management that had participated in favor of the Proposed Intervenors in the arbitration. It was not until September 2024 that the Court granted Levona's motion to amend its petition to assert the claims of fraud it is now pursuing, thereby putting the Award at risk, Dkt. No. 162, and it was not until November 2024 that the Plan became effective and Eletson's prior management and board displaced, Dkt. No. 1124, *Bankruptcy Proceeding*. Thus, relatively little time has passed since the Proposed Intervenors would have seen a need to intervene in this case.

Moreover, Eletson and Levona have not demonstrated that they would be prejudiced by any delay by Proposed Intervenors in filing this motion. After the motion to amend was granted and before the Bankruptcy Plan was confirmed, there was relatively little activity with respect to discovery. Letter motions for discovery were filed, Dkt. Nos. 177, 178, 179, 183, 187, 192, 196, 199, and an ESI stipulation was signed, Dkt. No. 186, but the letter motions were not addressed and Eletson and Levona have now indicated that so long as they receive the client file from Eletson's former counsel, Reed Smith, many of the current motions may be resolved, Dkt. No. 284. On October 31, 2024, after Judge Mastando issued his opinion confirming the Plan but before the Plan became effective, the Court stayed the case on the motion of Levona. Dkt. No.

205.  From that date until March 25, 2025, all discovery in this case has been stayed.  On March 25, 2025, the Court lifted the stay of discovery but at the same time granted the request of Apargo Limited for a two-week period within which to make a motion to intervene.  Dkt. No. 297.  This motion was filed within that time period, on April 7, 2025.  Dkt. No. 301.

Levona has expressed concern that Proposed Intervenors' "motion is a tactical  maneuver designed to further delay this action after their other delay strategies have failed" and that Proposed Intervenors have sought "to delay these proceedings" while at the same time taking actions that would frustrate the Court's exercise of its jurisdiction by "press[ing] forward with enforcement of the award in at least Greece and England."  Dkt. No. 318 at 19–21.  There is force to that argument.  As the Court previously noted, counsel representing Eletson when it was managed by the three Greek shipping families engaged in a consistent practice of stalling in the bankruptcy court to avoid turning over the documents that now give rise to the concern that fraud was committed in the arbitration.  *See* Dkt. No. 162 at 34 ("Eletson constructed extraordinary obstacles to prevent Levona from uncovering its fraud. . . While Eletson was urging this Court to speed its efforts to confirm the arbitral award, it engaged in a process of stalling and delay in the bankruptcy court, repeatedly frustrating Levona's attempts to view the additional documents and objecting at every turn both before and after the Award was issued and before and after Levona filed a claim in the Bankruptcy Proceeding.").  Levona's concern, however, is not best addressed by precluding the family members who own or manage Proposed Intervenors and who owned or managed Eletson from participating in this case and depriving them of their ability to protect the interests they have in the Award.  It is best addressed by ensuring that Proposed Intervenors, now parties to this case, participate fully in discovery, allowing the Court to make a decision on the motion for vacatur after adversarial testing by the parties most interested in the Court's decision.

The Court has entered a scheduling order that provides for this case to be resolved on a relatively expedited basis.  *See* Dkt. No. 311.  If, as they have indicated, the Proposed Intervenors want the motion to vacate to be decided on the merits after the facts relevant to that motion are reviewed, they will be expected to comply with the Court's discovery schedules.[14]  They will also be expected to produce all of the documents and information that the Court has directed them to produce, to answer interrogatories, to sit for depositions, and if the Court requires a trial, to participate in that trial.

 Proposed Intervenors have shown that their interest in the Award may not be protected adequately by the parties to the action.  "The requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal."  *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10  (1972); *see Preble-Rish Haiti, S.A. v. Republic of Haiti*, 558 F. Supp. 3d 155, 158 (S.D.N.Y. 2021).  It is self-evident that Levona will not adequately represent the interests of Proposed Intervenors.  They are on the opposite side of the dispute, seeking to avoid what in the absence of vacatur will be an obligation to Proposed Intervenors.  It is equally obvious that Eletson will not adequately protect the interests of Proposed Intervenors.  Eletson now shares common ownership with Levona.  Although a portion of the Award is payable to Eletson, the vast majority of it is payable to the Proposed Intervenors.

Finally, Levona and Eletson both ask that conditions be put on intervention.  Dkt. No. 318 at 22; Dkt. No. 319 at 6–8.  Levona asks that: (1) Proposed Intervenors abide by pretrial

---

[14] The Court entered a discovery plan jointly submitted by Eletson and Levona on April 14, 2025, Dkt. No. 311, clarifying on April 15, 2025, that the Proposed Intervenors would be given an opportunity to move for modification of the discovery plan if and when a motion for intervention was granted, Dkt. No. 314.

orders already made; and (2 ) that the Proposed Intervenors withdraw their pending Greek confirmation proceeding and agree not to pursue confirmation or enforcement elsewhere prior to resolution of this action.  Dkt. No. 318 at 22.  They also imply that no additional discovery should be taken by Proposed Intervenors.  *Id.*  Eletson asks that intervention be conditioned on (1) Proposed Intervenors withdrawing the Greek confirmation proceeding; (2)  the principals and affiliates of the Proposed Intervenors complying with the orders of the bankruptcy court; (3) the principals and affiliates of the Proposed Intervenors ceasing their pursuit of any and all claims they or their affiliates have filed relating to the Award other than this proceeding; and (4) the Proposed Intervenors and their counsel being barred from seeking or obtaining assistance from Reed Smith, Eletson's former counsel.  Dkt. No. 319 at 6–8.

It is neither uncommon nor inappropriate for a court to impose conditions on permissive intervenors.  *See U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*, 2021 WL 6201777, at *3 (S.D.N.Y. Dec. 31, 2021) ("Where intervention is sought pursuant to Rule 24(b), the court has considerable flexibility in devising the conditions upon which it is permitted."); 7C C. Wright & A. Miller, Federal Practice and Procedure § 1922 (3d ed. 2025) ("Since the trial court has full discretion to grant or deny an application for permissive intervention under Rule 24(b), it may if it chooses impose conditions on its grant of the application.").  The conditions should strike "an appropriate balance between the [movant's] interests and the parties' interest in the expeditious determination" of the matter.  *United States v. New York City Hous. Auth.*, 326 F.R.D. 411, 418 (S.D.N.Y. 2018) (permitting intervention for the limited purpose of opposing a proposed consent decree and requiring intervenors to file their papers in eight days).  It is less clear that the Court can impose conditions upon an intervenor as of right beyond that to which Proposed Intervenors have agreed—that if they become a party, they will be treated as any other party and subject to

the rules that the Court already has in place.  *See Ionian Shipping Co. v. Brit. L. Ins. Co.*, 426

F.2d 186, 191–92 (2d Cir. 1970) ("In amending Rule 24(a), the Advisory Committee specifically

suggested that the intervenor might be subjected to conditions necessary to 'efficient conduct of

the proceedings'; we can see no reason why similar conditions applied to a discretionary

intervenor would not cure any possible objection to intervention in this action."); *PepsiCo. v. F.

T. C.*, 472 F.2d 179, 184 (2d Cir. 1972) (noting that "[i]f this had been a civil action, intervention

by the bottlers would have been not a matter of grace but of right, F.R.Civ.P. 24(a), and such an

intervenor would have had all the rights of a party subject only to reasonable provisions designed

to assure against repetitious evidence and argument").[15]

Proposed Intervenors' intervention as of right is not conditioned on the withdrawal of

their pending Greek confirmation proceeding or an agreement not to pursue confirmation or

enforcement elsewhere prior to resolution of this action.  Nor is it conditioned on compliance by

the principals and affiliates of the Proposed Intervenors with the orders of the bankruptcy court

or on the agreement of Proposed Intervenors and their counsel not to seek or obtain assistance

from Eletson's former counsel, Reed Smith.  Such a condition would go well beyond a

---

[15] "Rule 24(a) does not explicitly authorize the imposition of conditions and the court, in theory at least, has no discretion to refuse intervention to one who satisfies the requirements of that rule."  7C C. Wright & A. Miller, Federal Practice and Procedure § 1922 (3d ed. 2025). However, in 1966, the Advisory Committee noted that "[a]n intervention of right under the amended rule may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings."  Fed. R. Civ. P. 24, advisory committee note to 1966 amendment.  "The Advisory Committee cites no authority for this statement. . . [and] the fact that the Committee Note says that they have the power does not create the power if it does not otherwise exist."  7C C. Wright & A. Miller, Federal Practice and Procedure § 1922 (3d ed. 2025).  "Nevertheless several courts have shown a willingness to accept the Note at face value and to allow the imposition of conditions on an intervenor of right." *Id.*  "So long as these conditions are reasonable and are of a housekeeping nature, this view is likely to prevail." *Id.*  "It seems very doubtful, however, that the court has the right to make significant inroads on the standing of an intervenor of right." *Id.*

housekeeping measure, and beyond what is required for the "efficient conduct of the proceedings." *See* Fed. R. Civ. P. 24, advisory committee note to 1966 amendment. The Court need not condition intervention in those ways to protect the integrity of the proceedings before it. At oral argument on May 6, 2025, Proposed Intervenors made only the most equivocal representation that they would inform the Court and counsel if they sought to enforce the Award abroad. Counsel for Proposed Intervenors was unable to answer the question why, if they believed this case should now be resolved on the merits of the fraud claim, possibly resulting in the vacatur of the Award, they would not wait until this Court reached a decision before asking a court elsewhere to expend resources to confirm an Award that might end up being illusory. To the extent that the Greek proceeding or a proceeding in any other country interferes with or undermines the integrity of the proceedings before this Court, Levona (or Eletson) may bring a motion for an anti-suit injunction or other such relief and may do so on an expedited basis. Such relief, if granted, would be binding on the Proposed Intervenors, now before this Court. As to the orders of the bankruptcy court, the Court expects all litigants before it to comply with court orders. But, to date, Eletson has not demonstrated the authority of this Court to condition intervention on compliance by the principals of the Proposed Intervenors with orders imposed by a different court in a related but not consolidated matter. And, as to Reed Smith, if in fact it is violating its duties to its former clients (or if Proposed Intervenors are complicit in such violation), the Court trusts that Eletson will have remedies available to it. No such showing has yet been made. If it can be made and if the Court has jurisdiction to address the problem, Eletson may at that point raise the matter.

Finally, as to Levona's request that intervention be conditioned on the requirement that Proposed Intervenors abide by the current scheduling order, the Proposed Intervenors have

already consented to be bound by this Court's scheduling decisions.  *See* May 6, 2025, Minute

Entry.  Proposed Intervenors will have an opportunity to move for a modification to the existing

schedule set out at Dkt. No. 311.  As with any such motion, Proposed Intervenors must show

good cause for such amendment.  *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified

only for good cause and with the judge's consent."); *Furry Puppet Studio Inc. v. Fall Out Boy*,

2020 WL 4978080, at *1 (S.D.N.Y. Feb. 24, 2020); Individual Practices in Civil Cases,

Chambers of Lewis J. Liman, Rule 3.A.

## CONCLUSION

The motion to intervene is GRANTED IN PART and DENIED IN PART.  The Proposed

Intervenors are granted leave to intervene for the limited purpose of opposing the motion to

vacate.  Proposed Intervenors shall submit a response to the Amended Answer and Second

Amended Cross-Petition no later than May 20, 2025.  After meeting and conferring with Eletson

and Levona, Proposed Intervenors may move to modify the existing discovery schedule by May

12, 2025.  The motion to file the Proposed Petition and to intervene for purposes of petitioning to

confirm the Award is denied.

The Clerk of Court is respectfully directed to close Dkt. No. 301.

SO ORDERED.

Dated: May 9, 2025
      New York, New York
                                  LEWIS J. LIMAN
                           United States District Judge