**GT GreenbergTraurig**

Hal S. Shaftel
One Vanderbilt Avenue
New York, NY 10017
Tel: 212.801.2164
Fax: 212.801.6400
shaftelh@gtlaw.com

**VIA ECF**

Honorable Lewis J. Liman
United States District Court
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007-1312

May 13, 2025

> The Court sua sponte strikes the letter from the Intervenors at Dkt. No. 344 as violative of the Court's Individual Practices limiting letter submissions to three pages. Counsel is advised to review the Court's Individual Practices in Civil Cases. *See* Individual Practices in Civil Cases, Chambers of Lewis J. Liman, Rule 1.B. Counsel also is advised to review Rule 3.3(f)(2) of the New York Rules of Professional Conduct regarding the use of language befitting of counsel admitted to practice in this Court. Intervenors may submit a revised, compliant letter-motion by close of business May 13, 2025. Respondent and Petitioner have until May 15, 2025 to respond.
>
> SO ORDERED.
> /s/ Lewis J. Liman
> LEWIS J. LIMAN
> United States District Judge

Re: <u>Eletson Holdings, Inc. et al. v. Levona Holdings, Ltd.</u> 23-cv-7331 (S.D.N.Y) (LJL)

Dear Judge Liman:

Pursuant to the Court's instruction at the hearing on May 6, 2025 (Tr. at 2, 54), and the Court's Order dated May 9, 2025 (ECF 343 at 26), the Preferred Shareholders request modification of the current case management plan adopted before intervention. The Court has allowed discovery regarding "facts relevant to equitable tolling and to whether the [arbitral] award was procured by fraud." ECF 162 at 47. For both subject areas, meaningful discovery from Levona and closely affiliated entities and persons is essential for a responsible development of the record.

Discovery from Levona and its alter egos/agents[1] is required to determine if they acted with requisite diligence to justify equitable tolling because Levona raised the At-Issue Documents past the FAA deadline. 9 U.S.C. § 12. Relevant topics include (among other things): Levona's conduct in litigating the issue when the executives directing Levona had reviewed the At-Issue Documents before Eletson even filed to confirm the award (*i.e.*, well before the FAA deadline); Levona's connection to, including knowledge of, the At-Issue Documents or their substance through then-Eletson CFO Peter Kanelos, who was primarily responsible for preparing the documents while he was being bribed by Levona[2] (and thus likely communicating about the contents); and the chronology of which Levona lawyers, and when, accessed the documents, and whether the ultimate timing of Levona raising the issue was independent of Eletson's conduct.

For similar reasons, discovery from Levona and aligned persons, including Kanelos and Levona-side executives who conspired with him, is equally critical to the issue of alleged fraud. With respect to a document, which — akin to the At-Issue Documents — Kanelos drafted in July 2022 (and which is similar in substance to the At-Issue Documents and called at the arbitration a

---

[1] As the Arbitrator found: "Levona, Murchinson, and Pach Shemen, are each alter egos of the other." ECF 41-1 at 96; *see also id.* at 20-22 (recognizing the entities are "directed by the same Murchinson representatives").

[2] The Arbitrator also found: "The evidence establishes that Murchinson bribed Kanelos," which "continued after Levona/Murchinson" acquired interests. ECF 41-1 at 52; *see also id.* at 23 ("Kanelos and Murchinson actively concealed their communications" as "Kanelos intentionally used his personal gmail account"); *id.* at 24 (Kanelos' "clear[] conflict of interest … was induced by Murchinson"); *id.* at 24-25 (Kanelos was "aligned with Murchinson").

"smoking gun" by Levona), the Arbitrator already found: "it was drafted by Kanelos <u>who was being bribed by Murchison and had every incentive to muddy the waters.</u>" ECF 41-1 at 45 n. 6 (emphasis added). Given these circumstances, it appears likely that Kanelos communicated with Levona/Murchinson in real-time regarding the content of the At-Issue Documents. Further, Levona's decision not to disclose an audio recording, which also is similar to and "corroborative"[3] of the At-Issue Documents, relates to the disputed materiality of the At-Issue Documents.

Before the discovery stay went into effect (ECF 205), in September and October 2024, both sides propounded substantial party discovery, including document requests and other written discovery, which largely remains outstanding. In response to various discovery disputes, the parties filed six letter motions to compel discovery, which remain pending. *See* ECF 177, 178, 182, 189, 190, 191. While it pursues expansive discovery, Levona hypocritically has refused to (among other things) search the full Murchinson server for relevant information (as Levona does not have its own server); include several key custodians in its document collection; and obtain documents from alter ego Pach Shemen—critical issues still requiring resolution.

In addition to party discovery, Levona and Eletson also have sought discovery from at least 28 non-parties in six countries (12 from Levona, 16 from Eletson), which, again, largely is outstanding. For example, Levona served Rule 45 subpoenas on multiple law firms (including as of last week Greenberg Traurig), other professional and financial firms, and related individuals in the U.S., Greece and London. Eletson has sought discovery from Kanelos in Greece (ECF 183, 28 U.S.C. § 1783 motion); Murchinson in Canada (ECF 187, motion for letters rogatory) and Murchinson affiliates in Bermuda (ECF 192, motion for issuance of letters of request); as well as various law firms associated with Levona (including in London and the BVI, ECF 196, 199 (motions for issuance of letters of request)), just as Levona propounded analogous discovery.

After the Court lifted the discovery stay on March 25, 2025, the very next day Apargo—which, as one of the Preferred Shareholders, already had stated in court filings its intention to move to intervene by April 7—contacted the named parties to engage on a proposed discovery plan that the Court requested they file by April 13. ECF 297. But they rejected our repeated requests, taking the position that the Preferred Shareholders had no role. In response, the Preferred Shareholders highlighted the prospect of that refusal adding delay (attributable to the other side) if intervention later was granted. In justifying their discovery proposal, which the Court adopted (as later qualified),[4] Levona and Eletson mechanically added 147 days to the previously scheduled discovery close to account for the period of the stay. ECF 308 at 1. But that schedule is

---

[3] Recognizing that the Court has stated, "while [Levona] may have had a recording that was corroborative of the evidence Levona ultimately uncovered . . . that has no bearing on whether Levona knew that Eletson committed fraud" (ECF 16 at 35-36), the issue of materiality is different. Discovery is appropriate to demonstrate that the failure to disclose the recording reflects Levona's understanding that the after-the-fact, vague communications, particularly when created under suspect circumstances, are immaterial to whether the express contract terms for acquisition of the preferred shares had been satisfied months earlier.

[4] On the next day (April 14), the Court memo endorsed the parties' proposed discovery schedule. ECF 311. On April 15, the Preferred Shareholders as <u>proposed</u> intervenors promptly filed a letter (ECF 313) seeking leave then to present objections to the schedule, which the Court denied by memo endorsement stating: "The Preferred Shareholders will be given an opportunity to move for modification . . . if and when intervention is granted." ECF 314.

incompatible with a meaningful, fair development of the record. If parties do not want meaningful discovery, they of course don't need much time. As the Court acknowledged when it entered the original discovery plan: "notwithstanding the intent to move very, very quickly, there are going to be issues that will rise in terms of what documents to produce, custody and control, third parties and the like. And that's probably just the beginning." ECF 168 at 30 (emphasis added). That predication has proven entirely correct. Even aside from having to jump-start the process after a five-month stay (which Levona had requested), the parties in presenting their proposal conveniently ignored the six pending letter motions regarding discovery[5] and the prospect for future motions; various pending requests for international discovery; and the time-consuming procedural and logistical aspects of international discovery (plus potential GDPR issues); etc., etc. (including the unknowns). Noting various discovery matters on appeal, the original parties themselves, in one-sided fashion, even acknowledged in their own discovery proposal that "it may become necessary . . . to request an extension of the scheduled discovery period". ECF 308 at 3.[6]

At the May 6 hearing, the Court directed the parties to confer before the Preferred Shareholders sought modification of the discovery schedule. In a discussion on May 10, it was agreed—at the initial request of Eletson—to avoid confusion, that the Preferred Shareholders would serve their own discovery requests instead of simply adopting the prior requests that Eletson under different litigation instructions had propounded.[7] As the Preferred Shareholders explained, their view of the duration of discovery is not about counting days for the sake of days but about what fairly needs to get done. Much of the timing is in the hands of the other parties, as they can expedite comprehensive discovery from Murchinson/Pach Shemen and their lawyers, as well as cooperate with respect to Kanelos as a central figure with whom they were, and perhaps still are, closely aligned. Assuming tripartite cooperation and diligence among the parties to accelerate matters, we believe it is optimistic but possible to complete discovery within roughly 100 days (by August 31) subject, however, to adjustment for any Hague Convention delays outside of our control and good faith diligence. Beyond multiple-party discovery, the realities of international non-party discovery renders a tighter time frame impracticable.

We respectfully submit that this case as it has evolved presents "good cause" under the standard of Rule 3.A of the Court's Individual Practices in Civil Cases justifying additional time. We respectfully believe our position meets the criteria as applicable from *Furry Puppet Studio Inc.*

---

[5] Reflecting the lack of adversity between the original parties, their proposal stated that they "do not expect that it will be necessary for the Court to resolve those motions." ECF 308, ¶ 4. But the Preferred Shareholders intend to press those motions, which they view as critical.

[6] Predictably, the original parties have argued that Eletson's prior counsel ("RS") once favored a shorter discovery period. Whatever aspirations RS may have had, that position at a different point was predicated on discovery being "narrow" (ECF 168 at 18, 24) before receipt of Levona's broad party/non-party requests; depositions being uncertain (*id.*); and "two-way cooperation" (*id.* at 29). Now that the Court, in recent rulings (ECF 341, 342), has approved the scope of Levona's proposed discovery, the Preferred Shareholders are entitled to corresponding discovery (*i.e.*, same rules should apply) to adequately rebut Levona's contentions on these matters and thereby avoid prejudice.

[7] Today, the Preferred Shareholders are serving discovery requests consisting of (1) the exact same requests previously served by Eletson (and subject to pending motions); and (2) certain supplemental requests largely verbatim of additional categories now sought by Levona. As soon as practicable, the Preferred Shareholders will update non-party requests in the same way. Other non-party discovery, including from Unigas with whom Levona was interacting on these matters, is likely needed.

v. *Fall Out Boy* 2020 WL 4978080 at *1 (S.D.N.Y. Feb. 24, 2020). Here, it is not about undue delay; it is about avoiding an undue, strategic rush. In opposing intervention, the other side relied on City of Syracuse v. Bureau of Alcohol, Tobacco, Firearms and Explosives, 2021 WL 1051625 at * 9 (S.D.N.Y. 2021), which makes the point: while "[a]dditional parties always take additional time which may result in delay", the question is whether intervention will "unduly delay" adjudication (emphasis added) (citation omitted). While the Preferred Shareholders are not interested in the burden and cost of needless discovery, the stakes are high; it will take time to develop an appropriate evidentiary record across multiple countries for the Court then to consider; and the short-circuiting of that process threatens to greatly prejudice both our clients' ability to collect relevant evidence and the Court's ability ultimately to make a just and fair determination.[8]

Respectfully,

*Hal S. Shaftel*

Hal S. Shaftel

---

[8] As the Court denied the Preferred Shareholders' motion as presented to intervene for purposes of confirming the arbitral award, as distinct from only opposing vacatur (ECF 343), leaving them then unable to obtain the affirmative relief they requested in the action, they expressly reserve all rights, claims and positions.