**Request for International Judicial Assistance Pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters**

| | | |
|---|---|---|
| **1.** | **Sender** | The Honorable Lewis J. Liman<br>United States District Court<br>Southern District of New York<br>500 Pearl Street, Courtroom 15C<br>New York, New York 10007 |
| **2.** | **Central Authority of the Requested State** | Registrar of the Supreme Court<br>Supreme Court Registry<br>No. 84 Main Street<br>P.O. Box 418<br>Road Town, Tortola,<br>British Virgin Islands VG1110 |
| **3.** | **Person to whom the executed request is to be returned** | The Honorable Lewis J. Liman<br>United States District Court<br>Southern District of New York<br>500 Pearl Street, Courtroom<br>15C New York, New York 10007<br><br>and<br><br>Hal S. Shaftel<br>Maura M. Miller<br>Adam Kirschbaum<br>Greenberg Traurig, LLP<br>One Vanderbilt Avenue<br>New York, New York 10017 |

**4.    Specification of the date by which the requesting authority requires receipt of the response to the Letter of Request**

| | |
|---|---|
| **Date** | Document productions to occur as the parties may agree, but no later than July 3, 2025. |
| **Reason for urgency** | Under the Court's Case Management Plan, the close of discovery is July 30, 2025. ECF 371. |

IN CONFORMITY WITH ARTICLE 3 OF THE CONVENTION, THE UNDERSIGNED APPLICANT HAS THE HONOR TO SUBMIT THE FOLLOWING REQUEST:

| | | | |
|---|---|---|---|
| **5.** | *a* | **Requesting judicial authority (Article 3,a)** | The Honorable Lewis J. Liman<br>United States District Court<br>Southern District of New York<br>500 Pearl Street, Courtroom 15C |

<table>
<tr><td></td><td></td><td>New York, New York 10007</td></tr>
<tr><td><em>b</em></td><td><strong>To the competent authority of (Article 3,a)</strong></td><td>British Virgin Islands</td></tr>
<tr><td><em>c</em></td><td><strong>Name of case and any identifying number</strong></td><td><em>Eletson Holdings, et al. v. Levona Holdings, Ltd.</em>, Case No. 23-cv-7331 (LJL) (S.D.N.Y).</td></tr>
</table>

6. **Names and addresses of the Parties and their representatives (including representatives in the requested State) (Article 3,b)**

| | | |
|---|---|---|
| *a* | **Petitioners** | **Eletson Holdings, Inc. and Eletson Corporation (collectively, "Eletson" or "Petitioners")** |
| | **Representatives** | Jennifer Furey<br>Nate Koslof<br>Gouslton & Storrs<br>One Post Office Square, 25th Floor<br>Boston, MA 02109<br>Telephone:  617-482-1776 |
| *b* | **Respondent** | **Levona Holdings, Inc.** |
| | **Representatives** | Isaac Nesser<br>Mark McNeill<br>William B. Adams<br>51 Madison Avenue, 22nd Floor<br>New York, NY 10010<br>Tel:  212-849-7351<br>Fax:  212-849-7100 |
| *c* | **Intervenors** | **Apargo Limited, Fentalon Limited, Desimusco Trading Limited** |
| | **Representatives** | Hal S. Shaftel<br>Maura M. Miller<br>Adam Kirschbaum<br>One Vanderbilt Avenue<br>New York, NY 10017<br>Tel:  212-801-9200<br>Fax:  212-801-6400 |

7.    **Nature of the proceedings and summary of claims (Article 3,c)**

7.1    This action, captioned *Eletson Holdings Inc. et al v. Levona Holdings Ltd.*, Case No. 1:23-cv-07331-LJL (the "Action"), is a civil litigation pending before the Requesting Court where Petitioners are seeking to confirm an arbitral award (the "Final Award") pursuant to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38, as implemented by 9 U.S.C.S. §§ 201-208.

7.2    Petitioners, Eletson Holdings and Eletson Corporation (together "Eletson"), are both corporations formed under the laws of Liberia.  Generally, Eletson is engaged in the shipping industry.

7.3    Respondent Levona is a special purpose entity formed on October 20, 2021 and is incorporated under the laws of the British Virgin Islands.  Levona is owned by Nomis Bay Ltd. And BPY Limited, two hedge fund controlled by Murchinson Ltd.

7.4    On August 16, 2019, Holdings, Corp, and Levona's predecessors in interest, BTO Eletson Holdings L.P., Blackstone Family Tactical Opportunities Investment Partnership (Cayman) ECS L.P., and Blackstone Family Tactical Opportunities Investment Partnership (Cayman) SMD L.P., (collectively, "Blackstone") entered into the Third Amended and Restated LLC Agreement ("LLC Agreement").  The LLC Agreement contained a section titled "Disputes," which mandated that:

> Any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof (including the determination of the scope or applicability of this agreement to arbitrate) shall be determined by arbitration in New York County in the State of New York or any other mutually agreeable location, before a single arbitrator.  The arbitrator shall be selected by agreement of the parties.  If the parties are unable to agree on an arbitrator within 15 days after the demand for arbitration is made, JAMS shall designate the arbitrator.  The arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures.  The Federal Arbitration Act shall govern the interpretation and enforcement of such arbitration proceeding.  The arbitrator shall apply the Law of the

State of Delaware and the Republic of the Marshall Islands, as the case may be, in accordance with Section 12.13.

7.5     Shortly after acquiring the Blackstone interests, Levona sought to sell its stake in Eletson Gas.  Eletson and Levona then entered into discussions to finalize the terms of a transaction wherein Eletson acquired Levona's membership interests in the Company.  The details of that transaction were set forth in an agreement, the Binding Offer Letter, dated February 22, 2022 (the "BOL").  On March 11, 2022, the parties entered into a series of agreements that effectuated the buyout of Levona's interests in Eletson Gas.  Levona failed to acknowledge Eletson's compliance with the terms of buyout, and continued to act on behalf of Eletson Gas, in abject bad faith, including, *inter alia*, entering into a Letter of Intent with Eletson Gas's competitor, Unigas, in order to sell substantially all of the Company's vessels.

7.6     On July 29, 2022, Eletson filed its initial Statement of Claims, asserting a number of claims directly arising out of and relating to Levona's material breaches of the LLC Agreement.  Pursuant to the LLC Agreement, the Arbitration was initiated in New York County under JAMS, whereas JAMS appointed the Honorable Ariel Belen as sole arbitrator.

7.7     During the Arbitration, Eletson and Levona engaged in discovery and motion practice.  The Arbitration commenced on May 15, 2023, and lasted 8 days, with closing arguments on June 13, 2023.  During these proceedings, the arbitrator heard both fact and expert witnesses from both parties.

7.8     On September 29, 2023, Justice Belen issued the Final Award, finding in favor of Eletson.  On damages, Justice Belen awarded Eletson $43,455,122.21 in compensatory damages, $43,455,122.21 in punitive damages, $9,590,222.99 in attorneys' fees, costs, and expenses due in connection with the Arbitration, $22,366.10 in additional JAMS related costs, and $3,007,266.20

for attorney's fees, costs, and expenses accrued by Eletson in connection with related litigation initiated by Levona's affiliates.

7.9    Eletson then moved in the Requesting Court to confirm the Final Award pursuant to the New York Convention and the Federal Arbitration Act.  Levona cross-moved to vacate the Final Award under Section 10(a)(4) of the Federal Arbitration Act, alleging that the arbitrator "exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

7.10    On February 9, 2024 (amended April 19, 2024), the Honorable Lewis J. Liman of the Requesting Court issued an order (the "Confirmation Order") confirming the Final Award in part and vacating it in part.

7.11    As the parties awaited the entry of a judgment, Levona claimed that it had just recently learned of documents produced by Eletson in a parallel bankruptcy, to which Eletson is a debtor, and Levona, and its affiliates, are creditors, which are material to the issues litigated in the Arbitration.  Eletson disagrees that Levona just learned of the documents.  More specifically, Levona sought to amend (the "Motion to Amend") its motion to vacate the Final Award, asserting additional claims under Sections 10(a)(1) and (a)(3) of the FAA, and under Article V(1)(B) of the New York Convention.  These allegations wrongly accuse Eletson of withholding pertinent documents during discovery and accuse Justice Belen of arbitrator misconduct.  In addition, Levona requested discovery on its new claims.

7.12    Over a challenge that Levona's Motion to Amend was procedurally improper, and that its second motion to vacate was untimely under the Federal Arbitration Act, Judge Liman allowed Levona to bring a new motion to vacate, not amend its previous one, and granted limited discovery.  Further, to reach the merits of its second motion to vacate, Levona must satisfy the

extraordinary remedy of equitable tolling, which allows a party to bring a cause of action after its statute of limitations has accrued.  Intervenors are entitled to discovery on that issue.

7.13    On March 24, 2025, this Court recognized that Apargo Limited, Fentalon Limited, and Desimusco Trading Limited (collectively "Intervenors" or "Preferred Shareholders") "are the principal beneficiaries of the [Final] Award" (ECF 295 at 21) and thus "have a direct interest in whether the [Final] Award is confirmed, suspended, or vacated"; indeed, "[t]hey have the most direct stake in the Court's decision." *Id*.

7.14    On May 9, 2025, the Preferred Shareholders were granted leave to intervene for the purpose of opposing the motion to vacate. ECF 343.

## 8.  Evidence to be obtained and documents to be inspected (Article 3,d and 3,g)

8.1    It is therefore requested that Conyers Dill & Pearman ("Conyers"), located at Commerce House, Wickhams Cay 1, PO Box 3140, Roadtown, Tortola, British Virgin Islands, VG1110, be required to produce the specified documents described herein as are believed to exist in its power, possession or control that relate to the period of January 1, 2021 through and including July 3, 2024.  Such documents are necessary for the purposes of justice and for the due determination of the matters in dispute between the parties.  The specified documents requested herein specifically exclude privileged communications that Levona may have had with Conyers.

## 9.  Identity of any person to be examined

Conyers Dill & Pearman
Commerce House,
Wickhams Cay 1,
PO Box 3140,
Roadtown, Tortola,
British Virgin Islands
VG1110

**Name and address of witness's counsel**

Unknown

**10. Questions to be put to the persons to be examined or statement of the subject-matter about which they are to be examined**

Not applicable.

**11. Documents or other property to be inspected**

See Exhibit 1

**12. Request for notification of the time and place for the execution of the Request and identity and address of any person to be notified**

Hal S. Shaftel
Maura M. Miller
Greenberg Traurig, LLP
One Vanderbilt Avenue
New York, New York 10017

**13. The fees and costs incurred which are reimbursable under the second paragraph of Article 14 or under Article 26 of the Convention will be borne by**

The fees and costs incurred which may be reimbursable under the second paragraph of Article 14 of the Convention, being the fees and costs in connection with the execution of this Letter of Request, will be initially borne by Preferred Shareholders.  The payment of any such fees and costs is without prejudice to the Preferred Shareholders right to make subsequent requests for reimbursement of those fees and costs from other parties to the proceedings before the Requesting Court.

DATE OF REQUEST                          _____

SIGNATURE AND SEAL OF
THE REQUESTING AUTHORITY          _____

**EXHIBIT 1**

**(PREFERRED SHAREHOLDERS DOCUMENT REQUESTS TO CONYERS)**

## SCHEDULE A

You are requested to produce to the attorneys for Apargo Limited, Fentalon Limited, and Desimusco Trading Limited (collectively the "Preferred Shareholders") all Documents and Communications responsive to the Requests set forth below that are in your possession, custody, or control, wherever located or that can be obtained through reasonably diligent efforts.

## DEFINITIONS

1.      The terms "all," "any," and "each" shall each be construed as encompassing any and all, as provided by Local Civil Rule 26.3(d).

2.      The connectives "and," "and/or," and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Request all responses that might otherwise be construed to be outside of its scope.

3.      "At-Issue Documents" shall mean the documents at issue, located at docket numbers 142-1, 142-2, 142-3, 142-4, and 143-1 in this proceeding, and annexed hereto as Appendix A and shall include any substantially identical copies or versions of those documents.

4.      "Arbitration" shall mean that certain JAMS arbitration proceeding entitled *Eletson Holdings, Inc. et al v. Levona Holdings Ltd.*, JAMS Ref. No. 5425000511, pending before the Honorable Ariel Belen.

5.      "Audio Recording" shall mean the recording of the conversation between Vasilis Kertsikoff and Adam Spears, dated July 15, 2022.

6.      "Audio Recording Transcript" shall mean the document that purports to constitute a transcript of the Audio Recording, located at docket number 127-1 and annexed hereto as Appendix B.

7.      "BPY" shall mean BPY Limited, together with its respective officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.

8.    "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise), as defined in Local Civil Rule 26.3(c).

9.    "Concerning," means relating to, referring to, describing, evidencing or constituting, as defined in Local Civil Rule 26.3(c).

10.    "Document" is synonymous in meaning and equal in scope to the usage of the terms "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a)(l)(A), as provided in Local Civil Rule 26.3(c). A draft or non-identical copy constitutes a separate "Document" within the meaning of the term. "Document" shall also include all Electronically Stored Documents or Information (referred to as "ESI"). ESI includes but is not limited to all letters, memos, text messages, e-mails, instant messages, blackberry messages, photographs, Facebook messages, social media posts, blogs, google messages, and/or any other electronic or digital Communications.

11.    "Eletson" shall mean Petitioners Eletson Holdings, Inc. and Eletson Corporation if no specification is included.

12.    "Identify" with respect to Documents, means to give to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s). In the alternative, the responding party may produce the Documents, together with identifying information sufficient to satisfy Fed. R. Civ. P. 33(d).

13.    "Levona" and "Respondent" shall mean Respondent Levona Holdings Ltd., a subsidiary of funds managed by Murchinson Ltd, and its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.

14.    "Levona Affiliate" shall mean all affiliates of Levona, including, but not limited to Murchinson, Nomis Bay, BPY and Pach Shemen.

15.    "Levona Counsel" shall mean all counsel to Levona and any Levona Affiliate in any action involving Eletson, including but not limited to, Frankel, Rubin, Klein, Payne & Pudlowski, P.C.; Quinn Emmanuel Urquhart & Sullivan, LLP; Togut, Segal & Segal LLP; Dechert LLP; Rahman Ravelli Solicitors; and Conyers Dill & Pearman.

16.    "Murchinson" shall mean Murchinson Ltd., together with its respective officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.

17.    "Nomis Bay" shall mean Nomis Bay Ltd., together with its respective officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.

18.    "Pach Shemen" shall mean Pach Shemen LLC, together with its respective officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.

19.    "Person" means any natural person or any legal entity, including, without limitation, any business or governmental entity or association, as defined in Local Civil Rule 26.3(c).

20.    "You" and "Your" shall mean Conyers Dill & Pearman.

## INSTRUCTIONS

1.    Each Request is intended to, and does, request that each and every particular and part thereof be answered with the same force and effect as if each particular and part were the subject of and were asked by a separate Request.

2.    Any term stated in the singular includes the plural and vice versa, as provided by Local Civil Rule 26.3(d).

3.    Each Request shall be construed independently. No request shall be construed by reference to any other request for the purpose of limiting the scope of the answers to such request.

4.      Whenever the conjunctive is used, it shall also be taken in the disjunctive, and vice versa, as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope, as provided by Local Civil Rule 26.3(d).

5.      These Requests shall be deemed continuing requests so as to require supplemental responses if You obtain or discover additional information or Documents between the time of initial response or production and the time of final judgment. Such supplemental information and Documents must be produced promptly upon discovery. The Preferred Shareholders specifically reserve the right to seek supplementary responses and the additional supplementary production of Documents before final judgment.

6.      Whenever a singular form appears, it shall be construed as plural, and vice versa as necessary to bring within the scope of the Request all Documents or responses that might otherwise be construed to be outside the scope.

7.      When answering the Requests, You are requested to produce all Documents described below that can be located by a reasonable search of materials within Your possession, custody or control, or in the possession, custody or control of Your agents, relatives, attorneys, investigators, employees, vendors, experts, representatives, or any other person acting or purporting to act on Your behalf.

8.      If You object to part of a Request, You must state the basis of Your objections in accordance with Rule 34 of the Federal Rules of Civil Procedure, and produce all Documents called for by the portion of the request to which You do not object.

9.      In the event You object to any Request on the ground that it is overbroad and/or unduly burdensome, You shall respond to the Request as narrowed, to the least extent necessary, so as to render it not overbroad and/or unduly burdensome, and state specifically the extent to which You have narrowed the Request for purposes of its response.

10.     If there are no Documents responsive to any particular document request, Your response shall state so in writing.

11.     Any Document redacted or withheld from production on the basis of any claimed privilege or immunity shall be logged in accordance with Local Civil Rule 26.2. You must produce any and all portions of any responsive Document to which the claim of privilege or immunity does not apply.

12.     In the event any Document responsive to these requests has been lost, discarded or destroyed, or is otherwise no longer in Your possession, custody, or control, that Document is to be identified by stating as completely as possible: (a) the authors or creators of the Document; (b) all persons who received copies of the Document, including the Document's indicated and blind copy recipients; (c) the present custodian of the Document; (d) the date of the Document; (e) the Document's date of destruction or discard, manner of destruction or discard, and the reason for destruction or discard; and (f) the persons authorizing and carrying out such destruction or discard.

13.     Any electronic Document that is responsive to a Document Request shall be produced in its native file format.

14.     Any hard copy Document that is responsive to a Document Request shall be produced in its original form. If the Document was stapled, clipped, or otherwise attached to other Documents, it shall be produced in such form. In producing such Documents, all Documents that are physically attached to each other shall be left so attached. Documents that are segregated or separated from other Documents, whether by inclusion in binders, files, subfiles, or by use of dividers, tabs, or other methods, shall be left so segregated or separated.

15.     Documents shall be produced with sufficient information to identify the files or repositories in which such responsive Documents are maintained in the normal course of business,

including, for example, an index, key, code, or other means of ascertaining the source of the produced Documents.

16.    Electronically stored information must be produced in both native and a searchable format.

17.    All Documents that are produced in electronic format shall be provided with: (i) Group W "tiff" images and IPRO-ready OPT files; (ii) a Concordance DAT delimited file with boundaries; (iii) full text OCR, with OCR text files provided on a document level; and (iv) all metadata fields associated with each electronic Document. Eletson also requests that all spreadsheets created in Microsoft Excel or a similar spreadsheet program be produced in their native format. The Preferred Shareholders reserve all rights to request that other Documents be produced in their native format if necessary. The following metadata fields shall also be produced with all Documents produced in electronic format:

| Field Name | Description |
| --- | --- |
| BEGDOC | An automatically-generated number assigned to the first page of the Document |
| ENDDOC | An automatically-generated number assigned to the last page of the Document |
| BEGATTACH | An automatically-generated number assigned to the first page of an attachment in a Document family |
| ENDATTACH | An automatically-generated number assigned to the last page of an attachment in a Document family |
| PARENT_ID | The beginning DOCID for a parent Document |
| ATTACH_IDS | The beginning DOCID for all attachments |
| ATTCOUNT | The number of attachments to an email |
| DOC_TYPE | The type of file from the header (*e.g.*, Microsoft Outlook, Excel, Word, etc.) |
| PARENT_CHILD | A vendor-populated field where "P" denotes a parent Document and "A" denotes an attachment |
| PAGECOUNT | The number of pages of each individual Document |
| FROM | The name(s) of the sender of an email, from the "From" field |

| | |
|---|---|
| TO | The name(s) of the recipient(s) of an email, from the "To" field |
| CC | The name(s) of any Person(s) to whom a copy of an email was sent, from the "CC" field |
| BCC | The name(s) of any Person(s) that were blind copied on an email, from the "BCC" field |
| SUBJECT | The text in the "Subject" line or "Re" line of an email or application file |
| CUSTODIAN | The name(s) of the Person(s) from which a collection of email or application files originate |
| AUTHOR | The name of the author or the creator of an application file, from the "Author" field |
| DATE_SENT | The date on which an email was sent |
| DATE_RCVD | The date on which an email was received |
| DATE_LASTMOD | The date on which an email or application file was last modified |
| DATE_CREATED | The date an email or application file was created |
| TIME_CREATED | The time at which an email or application was created |
| TIME_SENT | The time at which an email was sent |
| TIME_RCVD | The time at which an email was received |
| TITLE | The text in the "Title" field of an application file |
| LAST_AUTHOR | The name in the "Last Author" field for an application file |
| LAST_SAVED | The date in the "Last Saved" field for an application file |
| LAST_PRINTED | The date in the "Last Printed" field for an application file |
| APPLICATION | The name of the application that generated the native file |
| FILEEXT | The filename extension of each email, attachment, or application file |
| FILENAME | The name of an application file, including its extension |
| FILESIZE | The size of a Document in bytes |
| SOURCEFOLDER | The full path information for email, attachments, and application files beginning with the original source-folder name |
| HASHVALUE | The output of an algorithm-generated value for each individual file |
| SEARCH_HIT | The search term or terms that "hit" on a Document |
| NATIVE FILE | A hyperlink to the native file |

## **DOCUMENTS TO BE PRODUCED**

1.      All Documents and Communications concerning Your awareness or knowledge of the existence of any one or more of the At-Issue Documents or their contents, including but not limited to the date upon which You first became aware of the existence of any one or more of the At-Issue Documents or their contents.

2.      All Documents and Communications concerning any known awareness or knowledge by Levona, Levona's Affiliates, or Levona's representatives of the existence of any one or more of the At-Issue Documents or their contents, including but not limited to the date upon which Levona, Levona's Affiliate, or Levona's representative first became aware of the existence of any one or more of the At-Issue Documents or their contents.

3.      All Documents and Communications between You and Levona, Levona's Affiliates, or Levona's representatives concerning the existence of any one or more of the At-Issue Documents or their contents, including but not limited to the date upon which any such Levona, Levona's Affiliate, or Levona's representative first became aware of the existence of any one or more of the At-Issue Documents or their contents.

4.      All Documents and Communications between You and Levona, Levona's Affiliates, or Levona's representatives conveying any one or more of the At-Issue Documents or their contents, including but not limited to the date upon which any such Levona, Levona's Affiliate, or Levona's representative first became aware of the existence of any one or more of the At-Issue Documents or their contents.

5.      All Documents and Communications concerning the knowledge or existence of or contents of any one or more of the At-Issue Documents shared with any representative, agent, or affiliate of Levona or Pach Shemen or Murchinson or Nomis Bay or BPY, including without limitation, Adam Spears, Mark Lichtenstein, Eliyahu Hasset, Joshua Fenttiman, Marc Bistricer, or any Levona Affiliate.

6.      All Documents and Communications concerning the knowledge or existence of or contents of any one or more of the At-Issue Documents between Adam Spears, Mark Lichtenstein, or any other person with knowledge thereof, on the one hand, and Levona Counsel on the other. For the avoidance of doubt, this request does not seek privileged parts of Communications solely among Conyers Dill & Pearman attorneys.

7.      All Documents and Communications reflecting any knowledge or awareness by Levona or Levona's Counsel of any of the At-Issue Documents during the Arbitration and/or prior to the issuance of the Award.

# **APPENDIX A**

From: Finance - Eletson HQ [marina.orfanoudaki@eletson.com]
Sent: 25/07/2022 13:52:37
To: peter.kanelos@eletson.com; pgkanelos@gmail.com
Subject: EGAS CF Model ** MSG#:<3068081>
Attachments: EG Model (Tufton & 2 LEG Refi & Overdraft) 25.07.2022.xlsx; Comments on the model.docx

## Message: 13574500

**From:** Finance - Eletson HQ <marina.orfanoudaki@eletson.com>
**To:** peter.kanelos@eletson.com,pgkanelos@gmail.com
**Date:** Mon, 25/Jul/2022 16:53:02 (UTC: +03:00)
**Subject:** EGAS CF Model ** MSG#:<3068081>
**Attachments(2):** EG Model (Tufton & 2 LEG Refi & Overdraft) 25.07.2022.xlsx, Comments on the model.docx

Message Number: 3068081

From: marina.orfanoudaki@eletson.com
To: Kanelos Peter (PGK) (peter.kanelos@eletson.com), pgkanelos@gmail.com
Sent: Monday, Jul 25, 2022 16:52 (UTC +03:00)
Subject: EGAS CF Model
Attachments: EG Model (Tufton & 2 LEG Refi & Overdraft) 25.07.2022.xlsx, Comments on the model.docx

Dear Mr. Kanelos,

Please find attached the updated CF model for EGAS.

Following you can see some comments/points regarding the model:

• **Buyout of Murchinson**

According to the binding agreement with Murchinson/Levona, Company will proceed to the sale of Symi and Telendos vessels. From the above-mentioned sales, net proceeds after SLB repayment are estimated at $21.2 million.

Simultaneously, Company intends to refinance the 2 Libera vessels (Antikithira, Ithacki), which are financed in yen. This transaction will result to $11.7 million available cash.

Also, Company will drawdown an overdraft facility of $15 million at 10% interest rate and 30-month duration.

All the above transactions, along with $1.1 million from GAS available cash, result to $49.1 million, which will be used for the repayment of Murchinson loan ($12.9 million) and Murchison partnership share ($36.2 million).

| TRANSACTION | Sources | Uses |
|---|---|---|
| Net Proceeds from MGCs sale | 21.2 | |
| Refi of Libera vsls | 11.7 | |
| Overdraft | 15.0 | |
| Murchinson 1st payment | | -21.2 |
| Murchinson - W/C Facility | | -12.9 |
| Murchinson 2nd payment | | -15.0 |
| W/C injection to Company | 1.1 | |
| | 49.1 | -49.1 |

Confidential

Dear Mr. Kanelos,

Please find attached the updated CF model for EGAS.

Following you can see some comments/points regarding the model:

- **Buyout of Murchinson**

According to the binding agreement with Murchinson/Levona, Company will proceed to the sale of Symi and Telendos vessels. From the above mentioned sales, net proceeds after SLB repayment are estimated at $21.2 million.

Simultaneously, Company intends to refinance the 2 Libera vessels (Antikithira, Ithacki), which are financed in yen. This transaction will result to $11.7 million available cash.

Also, Company will drawdown an overdraft facility of $15 million at 10% interest rate and 30-month duration.

All the above transactions, along with $1.1 million from GAS available cash, result to $49.1 million, which will be used for the repayment of Murchinson loan ($12.9 million) and Murchison partnership share ($36.2 million).

| TRANSACTION | Sources | Uses |
|---|---|---|
| Net Proceeds from MGCs sale | 21.2 | |
| Refi of Libera vsls | 11.7 | |
| Overdraft | 15.0 | |
| Murchinson 1st payment | | -21.2 |
| Murchinson - W/C Facility | | -12.9 |
| Murchinson 2nd payment | | -15.0 |
| W/C Injection to Company | 1.1 | |
| | **49.1** | **-49.1** |

Murchinson buyout will took place in 3 steps:

| MURCHINSON | Payment Plan |
|---|---|
| "1st Payment" | -21.2 |
| W/C facility repayment | -12.9 |
| "2nd Payment" | -15.0 |
| **Total Murchinson buyout** | **-49.1** |

- [redacted]

EletsonBK017270

Murchinson buyout will took place in 3 steps:

| MURCHINSON | Payment Plan |
| --- | --- |
| "1st Payment" | -21.2 |
| W/C facility repayment | -12.9 |
| "2nd Payment" | -15.0 |
| Total Murchinson buyout | -49.1 |

- Refinancing of loans/SLB Facilities







EletsonBK017266

Also, Company will drawdown an overdraft facility of $15 million at 10% interest rate and 30-month duration.

All the above transactions, along with $1.1 million from GAS available cash, result to $49.1 million, which will be used for the repayment of Murchinson loan ($12.9 million) and Murchison partnership share ($36.2 million).

| TRANSACTION | Sources | Uses |
|---|---|---|
| Net Proceeds from MGCs sale | 21.2 | |
| Refi of Libera vsls | 11.7 | |
| Overdraft | 15.0 | |
| Murchinson 1st payment | | -21.2 |
| Murchinson - W/C Facility | | -12.9 |
| Murchinson 2nd payment | | -15.0 |
| W/C injection to Company | 1.1 | |
| | 49.1 | -49.1 |

Murchinson buyout will took place in 3 steps:

| MURCHINSON | Payment Plan |
|---|---|
| "1st Payment" | -21.2 |
| W/C facility repayment | -12.9 |
| "2nd Payment" | -15.0 |
| Total Murchinson buyout | -49.1 |



EletsonBK017299

From: Finance - Eletson HQ [marina.orfanoudaki@eletson.com]
Sent: 25/07/2022 15:16:30
To: pgkanelos@gmail.com; peter.kanelos@eletson.com
Subject: Re: EGAS CF Model OLDMSG#:<3068081> ** MSG#:<3068156>
Attachments: EG Model (Tufton & 2 LEG Refi & Overdraft) 25.07.2022 v3.xlsx

## Message: 13574809

**From:** Finance - Eletson HQ <marina.orfanoudaki@eletson.com>
**To:** pgkanelos@gmail.com,peter.kanelos@eletson.com
**Date:** Mon, 25/Jul/2022 18:16:41 (UTC: +03:00)
**Subject:** Re: EGAS CF Model OLDMSG#:<3068081> ** MSG#:<3068156>
**Attachments(1):** EG Model (Tufton & 2 LEG Refi & Overdraft) 25.07.2022 v3.xlsx

Message Number: 3068156

From: marina.orfanoudaki@eletson.com
To: pgkanelos@gmail.com, Kanelos Peter (PGK) (peter.kanelos@eletson.com)
Sent: Monday, Jul 25, 2022 18:16 (UTC +03:00)
Subject: Re: EGAS CF Model ** MSG#:<3068081>
Attachments: EG Model (Tufton & 2 LEG Refi & Overdraft) 25.07.2022 v3.xlsx

fyi

_____ Original Message _____

## Message: 13574781

**From:** Peter Kanelos <pgkanelos@gmail.com>
**To:** Finance - Eletson HQ <marina.orfanoudaki@eletson.com>
**Date:** Mon, 25/Jul/2022 18:05:28 (UTC: +03:00)
**Subject:** Re: EGAS CF Model ** MSG#:<3068081>
**Attachments(1):** EG Model (Tufton & 2 LEG Refi & Overdraft) 25.07.2022 v3.xlsx

On Mon, 25 Jul 2022 at 16:52, Finance - Eletson HQ <marina.orfanoudaki@eletson.com> wrote:

Message Number: 3068081

From: marina.orfanoudaki@eletson.com
To: Kanelos Peter (PGK) (peter.kanelos@eletson.com), pgkanelos@gmail.com
Sent: Monday, Jul 25, 2022 16:52 (UTC +03:00)
Subject: EGAS CF Model
Attachments: EG Model (Tufton & 2 LEG Refi & Overdraft) 25.07.2022.xlsx, Comments on the model.docx

Dear Mr. Kanelos,

Please find attached the updated CF model for EGAS.

Following you can see some comments/points regarding the model:

• Buyout of Murchinson

According to the binding agreement with Murchinson/Levona, Company will proceed to the sale of Symi and Telendos vessels. From the above-mentioned sales, net proceeds after SLB repayment are estimated at $21.2 million.

Simultaneously, Company intends to refinance the 2 Libera vessels (Antikithira, Ithacki), which are financed in yen. This transaction will result to $11.7 million available cash.

EletsonBK017298

From:         CFO - Eletson HQ [peter.kanelos@eletson.com]
Sent:         12/08/2022 15:26:33
To:           vassilis.kertsikoff@eletson.com; vaskerts@hotmail.com
CC:           peter.kanelos@eletson.com
Subject:      Investor Model for Murchinson Buyout ** MSG#:<3076467>
Attachments:  EG Model (Tufton Refi & Murchinson exit)- EQ40M WITH NOTES vF.xlsx


TO : <vassilis.kertsikoff@eletson.com>, <vaskerts@hotmail.com>
CC : <peter.kanelos@eletson.com>

DATE : 12-Aug-2022 18:26
MSGNO : 3076467

Vassili,

Initial Investor proposal.

Strategic Rationale:
    ·    New Investor funds buyout of Murchinson, refinancing of Tufton
    ·    Investment Amount: $40 million
Use of Proceeds:
    ·    $12.85 million for the repayment of Murchison W/C Facility
    ·    $12.15 million available to use in negotiations with Murchison for acquisition of preferred
shares
    ·    $15 million for the refinancing of Tufton to a lower financing cost of ~7%
    ·    Shortly after the transaction, $10 million refinancing proceeds of two YEN Libera vessels
to be applied as repayment to the Investor reducing total Investor exposure to $30 million
Murchison's Exit Payment Plan:
    ·    $23 million net sale proceeds of MGCs sale to be applied towards Murchison
    ·    $12.85 million repayment of W/C facility
    ·    Up to $12.15 million available, if needed, to conclude negotiations with Murchison





EletsonBK017851

From: Finance - Eletson HQ [Elena.Tzarouchi@eletson.com]
Sent: 18/08/2022 12:00:42
To: peter.kanelos@eletson.com; pgkanelos@gmail.com
Subject: EGAS Model ** MSG#:<3077985>
Attachments: EG Model (Tufton Refi & Murchinson exit)- EQ25M (Oaktree funding).xlsx

**Message: 13627397**

From: Finance - Eletson HQ <Elena.Tzarouchi@eletson.com>
To: peter.kanelos@eletson.com, pgkanelos@gmail.com
Date: Thu, 18/Aug/2022 15:01:55 (UTC: +03:00)
Subject: EGAS Model ** MSG#:<3077985>
Attachments(1): EG Model (Tufton Refi & Murchinson exit)- EQ25M (Oaktree funding).xlsx

Message Number: 3077985
From: Elena.Tzarouchi@eletson.com;
To: Kanelos Peter (PGK) (peter.kanelos@eletson.com), pgkanelos@gmail.com
Sent: Thursday, Aug 18, 2022 15:00 (UTC −03:00)
Subject: EGAS Model
Attachments: EG Model (Tufton Refi & Murchinson exit)- EQ25M (Oaktree funding).xlsx

Mr Kanelos,

You can find enclosed the revised model based on the following transactions:

Transaction A:

- We leverage the Oaktree LEG facility by $11million
- Eletson provides funding of $4million ($3 million from EHI and $1 million from EGAS)
- Repayment of Levona W/C Facility ($13 million) and residual amount of $2.2 million will be provided to Murchinson

Transaction B:

- Pref equity investment of $25m (at a fixed cash interest rate of 6% per annum and PIK interest at 7% per annum) - Investor's IRR at 12%
- $5 million for the repayment of Oaktree thus total net exposure for Oaktree will be $6m
- $20 million for the repayment of Tufton and refi at 6%

Murchinson's Exit Payment:

- $23 million from Symi/Telendos sale
- $12.85 million of W/C facility
- $2.2 million residual amount from transaction A

Regards,
Elena

Confidential

From:          CFO - Eletson HQ <peter.kanelos@eletson.com>
Sent:          Thursday, August 18, 2022 3:24 PM
To:            jay.goodgal@castaliapartners.com
Cc:            anselm@austengrovecapital.com; vassilis.kertsikoff@eletson.com; peter.kanelos@eletson.com; vaskerts@hotmail.com
Subject:       RE: Eletson Holdings Inc. ** MSG#:<3078211>
Attachments:   EG_Model_Tufton_Refi__Murchinson_exit_-_EQ25M__Oaktree_funding_.xlsx

## Message: 13628449

**From:** CFO – Eletson HQ <peter.kanelos@eletson.com>
**To:** jay.goodgal@castaliapartners.com
**Cc:** anselm@austengrovecapital.com,vassilis.kertsikoff@eletson.com,peter.kanelos@eletson.com,vaskerts@hotmail.com
**Date:** Thu, 18/Aug/2022 22:24:38 (UTC: +03:00)
**Subject:** RE: Eletson Holdings Inc. ** MSG#:<3078211>
**Attachments(1):** EG_Model_Tufton_Refi__Murchinson_exit_-_EQ25M__Oaktree_funding_.xlsx

Message Number: 3078211

From: peter.kanelos@eletson.com
To: jay.goodgal@castaliapartners.com
Cc: anselm@austengrovecapital.com, vassilis.kertsikoff@eletson.com, peter.kanelos@eletson.com, vaskerts@hotmail.com
Sent: Thursday, Aug 18, 2022 22:23 (UTC +03:00)
Subject: RE: Eletson Holdings Inc.
Attachments: EG_Model_Tufton_Refi__Murchinson_exit_-_EQ25M__Oaktree_funding_.xlsx

Jay,

I have attached our model which quantifies the following transaction:

Transaction A:

- We leverage the Oaktree LEG facility by $11million
- Eletson provides funding of $4million ($3 million from EHI and $1 million from EGAS)
- Repayment of Levona W/C Facility ($13 million) and residual amount of $2.2 million will be provided to Murchinson

Transaction B:

- Pref equity investment of $25m (at a fixed cash interest rate of 6% per annum and PIK interest at 7% per annum) - Investor's IRR at 12%
- $5 million for the repayment of Oaktree thus total net exposure for Oaktree will be $6m

- $20 million for the repayment of Tufton and refi at 6%

Murchinson's Exit Payment:

- $23 million from Symi/Telendos sale
- $12.85 million W/C facility repaid
- $2.2 million residual amount from transaction A

Regards,
Peter

---------Original Message---------

Message: 13617663

From: Castalia Partners – JC Goodgal <jay.goodgal@castaliapartners.com>
To: vassilis kertsikoff <vaskers@hotmail.com>
Cc: "Anselm Gehling (anselm@austengrovecapital.com)" <anselm@austengrovecapital.com>, "vassilis.kertsikoff@eletson.com" <vassilis.kertsikoff@eletson.com>, "peter.kanelos@eletson.com" <peter.kanelos@eletson.com>
Date: Sat, 13/Aug/2022 15:54:55 (UTC: +03:00)
Subject: RE: Eletson Holdings Inc.
Attachments(1): EG _ CPL Engagement Letter Executed 08.12.2022.pdf

Vassilis,

Please find attached executed engagement agreement.

Best regards,

Jay

......CONFIDENTIALITY NOTICE......

The information in this email may be confidential and/or privileged. This email is intended to be reviewed by only the individual or organization named above. If you are not the intended recipient or an authorized representative of the intended recipient, you are hereby notified that any review, dissemination or copying of this email and its attachments, if any, or the information contained herein is prohibited. If you have received this email in error, please immediately notify the sender by return email and delete this email from your system.

Thank you.



*Castalia Partners Limited*

Case 1:23-cv-07331-LJL    Document 123-1    Filed 07/26/24    Page 6 of 22

**Jay Charles Goodgal**
*Managing Director*

jay.goodgal@castaliapartners.com
www.castaliapartners.com

**Castalia Partners Limited**
Dorey Court, Admiral Park
St. Peter Port, Guernsey GY1 2HT
Channel Islands

tel:  +44 (0) 1481 724782
fax:  +44 (0) 1481 710001
mobile:   +1 (914) 309-4377



**From:** vassilis kertsikoff <vaskerts@hotmail.com>
**Sent:** Saturday, August 13, 2022 4:07 AM
**To:** Castalia Partners - JC Goodgal <jay.goodgal@castaliapartners.com>
**Cc:** Anselm Gehling (anselm@austengrovecapital.com) <anselm@austengrovecapital.com>; vassilis.kertsikoff@eletson.com; peter.kanelos@eletson.com
**Subject:** Re: Eletson Holdings Inc.

morning see attached signed -- pls countersign & return.

figures with you this w/e.

**From:** Castalia Partners - JC Goodgal <jay.goodgal@castaliapartners.com>
**Sent:** Friday, August 12, 2022 5:04 PM
**To:** 'Vassilis Kertsikoff (vaskerts@hotmail.com)' <vaskerts@hotmail.com>
**Cc:** Anselm Gehling (anselm@austengrovecapital.com) <anselm@austengrovecapital.com>
**Subject:** Eletson Holdings Inc.

3
CONFIDENTIAL

Vassilis,

Please find the attached revised engagement letter for Eletson Holding Inc. in regards to capital raising for Eletson Gas LLC. Your edits have been accepted, except "the Company" has been included in the first paragraph as it is referenced in the document. We have also edited the paragraph beginning "It is understood…" in Section 4.

We will need the assistance of Peter to develop a teaser and presentation document as additional information will be required. Could you please arrange with him for a call so that we may begin the process?

Should you have any questions, please call me.

Best regards,

Jay

.......CONFIDENTIALITY NOTICE......
The information in this email may be confidential and/or privileged. This email is intended to be reviewed by only the individual or organization named above. If you are not the intended recipient or an authorized representative of the intended recipient, you are hereby notified that any review, dissemination or copying of this email and its attachments, if any, or the information contained herein is prohibited. If you have received this email in error, please immediately notify the sender by return email and delete this email from your system.
Thank you.

[X]  *Castalia Partners Limited*

**Jay Charles Goodgal**
*Managing Director*

**Castalia Partners Limited**
Dorey Court, Admiral Park
St. Peter Port, Guernsey GY1 2HT
Channel Islands

tel:    +44 (0) 1481 724782
fax:   +44 (0) 1481 710001
mobile:   +1 (914) 309-4377

jay.goodgal@castaliapartners.com
www.castaliapartners.com

4
CONFIDENTIAL

[X]

The information contained in this message is intended only for the recipient, is privileged and confidential and protected from disclosure. If you are not an intended recipient, please notify the sender and delete all copies. We implement technical and organizational measures aiming at the protection of personal data on the basis of requirements and standards set by applicable data protection laws, including the GDPR. The content and attachments of the message are checked by anti-virus programs. Please consider the environment before printing this e-mail!

5
CONFIDENTIAL

# APPENDIX B

EXHIBIT  10

EXHIBIT
LEV096

BINDING OFFER LETTER

To:

**Eletson Holdings Inc. ("Eletson Holdings")**
118, Kolokotroni Street
GR 18535 Piraeus, Greece

**Eletson Corporation**
c/o Trust Company Complex,
Ajeltake Road, Ajeltake Island,
Majuro, Marshall Islands MH 96960

**Eletson Gas LLC ("Eletson Gas")**
c/o Trust Company Complex,
Ajeltake Road, Ajeltake Island,
Majuro, Marshall Islands MH 96960

**EMC GAS Corporation ("EMC Gas")**
c/o Trust Company Complex,
Ajeltake Road, Ajeltake Island,
Majuro, Marshall Islands MH 96960

22 February 2022,

Dear Sirs,

Further to our recent discussions this letter (the "**Letter**") sets out the terms and conditions on, and subject to which, **LEVONA HOLDINGS LTD** or an affiliate thereof ("**Levona**") is willing to:

(A) buy the shares and/or membership interests (the "**Shares**") of Symi II Special Maritime Enterprise ("**Symi**") and Telendos II Special Maritime Enterprise ("**Telendos**" and together with Symi, the "**Companies**") from Eletson Gas in consideration of advancing a purchase option to Eletson Gas and Eletson Holdings as further detailed in Clause 2 below;

(B) advance a US$10,000,000 senior loan to Eletson Gas as further detailed in Clause 3 below.

The terms of this Letter are intended to be legally binding subject to the acceptance of the offer set out herein.

1      SHARE TRANSFER

1.1    Subject to obtaining the consent of OCM Maritime Yangtze LLC and OCM Maritime Danube LLC thereto (the "**Oaktree Consents**"), Levona shall buy all of the Shares in the Companies held by Eletson Gas with full title guarantee and free from security interests and encumbrances (the "**Transfer**") in consideration of the grant to Eletson Gas and Eletson Corporation of the purchase option set out in Clause 2 (the "**Purchase Option**").

1.2    The parties shall procure that Eletson Gas and Levona enter into formal documents for the transfer of the Shares and replacement of directors of each of the Companies required pursuant to Greek law within 10 days of execution of this letter by all parties, subject only to receipt of the Oaktree Consents and any other third party consents or approvals required for the Transfer (which the parties shall make best efforts to promptly obtain).

1.3    Simultaneously with the Transfer, all claims of any type whatsoever that that Eletson Gas, Eletson Corporation, Eletson Holdings and EMC Gas and each of their affiliates may have in relation to the Companies or the vessels owned by the Companies (the "**Symi and Telendos Claims**") shall be automatically and irrevocably waived and released in full by the relevant claimants and each of

Eletson Gas, Eletson Corporation, Eletson Holdings and EMC Gas shall procure that they provide written confirmation of such waiver and release from the relevant claimants as may be requested by Levona from time to time.

**2**      **PURCHASE OPTION**

2.1      Subject to and in consideration of the Transfer occurring and the conditions set out in Clause 2.2 and 2.3, Levona hereby grants to Eletson Gas ~~and Eletson Corporation (on a joint basis)~~ the option, exercisable by written notice to Levona by both of them (an "**Option Notice**"), for either Eletson Gas or its nominee to purchase all of the membership interests held by Levona in Eletson Gas (the "**Option Membership Interests**") for a consideration equal to the Purchase Option Consideration payable in cash on completion of the transfer of the Membership Interests to such account as Levona may nominate in writing. Subject to Clause 3, the parties shall procure that the transfer of the Option Membership Interests and payment of the Purchase Option Consideration shall occur within 10 days of the date a valid Option Notice is received by Levona. Once given, an Option Notice shall be irrevocable.

2.2      Eletson Gas and Eletson Corporation shall only be entitled to serve an Option Notice after either:

(a)      the Loan and any interest accrued thereon is fully repaid; or

(b)      adequate security and/or collateral is provided for the Loan (the adequacy of such security being at the sole discretion of Levona).

2.3      Subject to Clause 2.2, an Option Notice may only be served within 30 days from the date of this Letter (the "**Purchase Option Period**"), unless the Purchase Option Period is extended in accordance with Clause 2.4 or 2.5. If no Option Notice is validly served by the expiry of the Purchase Option Period (as may be extended) then the Purchase Option shall lapse.

2.4      The Purchase Option Period may be extended to 60 days from the date of this letter subject to repayment of a principal amount of the Loan of at least US$1,000,000 (which repayment may be funded by internal excess cash flow to the extent allowable under the financing arrangements of Eletson Gas) occurring prior to the date falling 30 days from the date of this Letter.

2.5      The Purchase Option Period may be extended to 90 days from the date of this letter subject to repayment of a total principal amount of the Loan of at least US$2,000,000 (which repayment may be funded by internal excess cash flow to the extent allowable under the financing arrangements of Eletson Gas) occurring prior to:

(a)      the date falling 30 days from the date of this Letter if no extension of the Purchase Option Period has occurred in accordance with Clause 2.4; or

(b)      the date falling 60 days from the date of this Letter if an extension of the Purchase Option Period has occurred in accordance with Clause 2.4.

**3**      **PURCHASE OPTION CONSIDERATION**

3.1      Eletson Gas and Eletson Corporation shall promptly, and no later than 14 days after the date of this letter, provide Levona with sufficient details to allow Levona to identify and verify the net asset value of the Companies, including but not limited to a recent valuation of the vessels leased by the Companies and an exhaustive list of all material liabilities of the Companies including financing fees, trade payables and outstanding lease payment obligations. Such detail may include proposals for certain liabilities of the Companies not to be transferred with the Companies pursuant to the Transfer.

3.2      The Purchase Option Consideration shall be an amount equal to US$1 plus an amount equal to US$23,000,000 less the Net Value. If the Net Value is equal to US$23,000,000, the Purchase Option Consideration shall be US$1. If the Net Value exceeds US$23,000,000 the amount outstanding under the Loan shall be reduced by the amount of the difference.

3.3  The Net Value shall be calculated as follows:

(a)  to the extent that, at the time of service of the Option Notice, the vessels leased by the Companies have been purchased by the Companies under the lease purchase option and then on-sold to a third party (whether such on-sale is completed or under binding contract for sale), the Net Value shall be the profit obtained (or to be obtained) by the Company after completion of such onwards sale net of fees and expenses of such sale(s) and the mutually agreed fees, costs, outgoings, expenses, trade debts and other liabilities of the Companies minus bunkers and lubs; and

(b)  to the extent that, at the time of service of the Option Notice, the vessels either remain under their current finance leases, have been refinanced or have been purchased under the lease purchase option but not on-sold to a third party, the Net Value shall be based on a third party independent valuation of the vessels owned by the Companies less the mutually agreed debts, costs, outgoings, expenses, trade debts and other liabilities of the Companies (including, if such vessels remain on finance lease, the purchase option price thereunder and the estimated fees and expenses of an eventual onward sale of the vessels) plus bunkers and lubs at the time of the transfer of the Companies to Levona.

3.4  The parties agree to work in good faith to determine and agree the Net Value promptly and no later than 5 days after service of the Option Notice. In the event of any failure to agree the Net Value within the aforementioned period:

(a)  the Option Notice shall remain valid but the transfer of the Option Membership Interests shall be suspended pending agreement or determination of the Net Value;

(b)  the parties shall instruct a mutually agreed and independent third party valuation expert (or experts) to determine the Net Value and such experts determination shall be binding on the parties.

4  LOAN AND ASSIGNMENT

4.1  Concurrently with the Transfer, Levona shall enter into a loan agreement (the "**Loan Agreement**") for the advance of a loan facility to Eletson Gas of an amount of US$10,000,000 (the "**Loan**"). The Loan shall be to be used as mutually agreed upon between Levona and Eletson Gas for various refinancing and sources and uses. The Loan shall be senior to all claims, debts, expenses, facilities, advances, credits or other liabilities of Eletson Gas and each of its subsidiaries whatsoever (including but not limited to any owed by Eletson to EMC Gas or Eletson Corporation), save for such secured debts of Eletson Gas as Levona may agree in their sole discretion may remain senior to the Loan.

4.2  Terms of the Loan Agreement shall include:

(a)  a maturity date of 2 years from the date of the first drawdown subject to acceleration following an event of default as specified below;

(b)  an interest rate of 10% per annum compounded monthly;

(c)  priority on any excess cash flow;

(d)  an agreement from Eletson Gas, Eletson Corporation and Eletson Holdings that as from the last date of the Purchase Option Period (and for so long as the Loan and any interest accrued thereon remains outstanding unless adequate security and/or collateral has been provided and accepted as per 2.2 (b)), they shall co-operate and vote in favour of any Fundamental Action (as defined in the limited liability company agreement for Eletson Gas) proposed by Levona;

(e)  for so long as the Loan and any interest accrued thereon remains outstanding, the signing authority of a representative of Levona shall be required for any payments made from any bank accounts of Eletson Gas or any of its subsidiaries: (i) in excess of US$40,000; or (ii) to Eletson Holdings, Eletson Corporation and EMC Gas or any affiliate of any of them of any amount; and

(f)     usual events of default, undertakings and covenants (it shall be a covenant that Eletson Corporation and EMC Gas shall cooperate fully with the reasonable requests of Levona in relation to Eletson Gas or the Vessels).

4.3     Concurrently with the Transfer and entry into the Loan Agreement, Eletson Corporation and EMC Gas shall assign (and/or procure the assignment) absolutely and irrevocably to Levona (the "**Assignment**") of any and all claims whatsoever type they or their affiliates may have against Eleston Gas, its subsidiaries or any vessel owned by any of them (together the "**Vessels**") for the period up to and including the date of the Transfer save for any Symi and Telendos Claims which shall have been released in accordance with Clause 1.2. (the "**Claims**").

4.4     Upon full repayment of the Loan and any other amounts outstanding under the Loan Agreement, Levona shall re-assign all Claims assigned pursuant to the Assignment.

**5       INSPECTION AND CLASS RECORDS**

5.1     In consideration of the covenants set out herein, Eletson Gas, EMC Gas, Eletson Corporation and Eletson Holdings each shall procure and provide full cooperation to allow representatives of Levona to:

(a)     be promptly provided from time to time with full and up to date class records and documentation for the Vessels such records and documents to be provided within a reasonable time after a request by Levona to receive such records and documentation;

(b)     allowed, within a reasonable time after a request to do so, to physically inspect any of the Vessels, so long as such inspection does not unduly delay the operation or maintenance of any Vessel.

**6       CONFIDENTIALITY**

None of the terms of this Letter or any ancillary matter or the fact that negotiations are taking place shall be disclosed or announced by or on behalf of any party to any other person (other than to its professional financial and/or legal advisers that require such disclosure to complete their advisory function) except with the prior written consent of the other party, such consent not to be unreasonably withheld or delayed, or except as, and to the extent that, may be required by applicable law or regulation or any governmental or regulatory authority.

**7       BINDING EFFECT**

This Letter shall be binding on all parties to it but may be superseded and/or supplemented by fuller form documents setting out detailed mechanisms and covenants including but not limited to a share purchase agreement, a purchase option and a loan agreement. The intention of the parties to enter into fuller form documents shall in no way diminish the binding effect of this Letter or the agreement contained herein.

**8       COSTS**

Except as expressly provided in this Letter, each party shall pay its own costs incurred in connection with the negotiation, preparation, and execution of this Letter, any documents referred to herein.

**9       MISCELLANEOUS**

9.1     No failure or delay of a party in exercising any right, power or privilege under this Letter shall impair or be construed as a waiver of such right, power or privilege nor shall any single or partial exercise of any such right, power or privilege preclude any further exercise of such right, power or privilege or the exercise of any other right, power or privilege. The rights and remedies of a party provided for in this Letter are cumulative and not exclusive of any rights or remedies provided by law. A waiver given or consent granted by a party under this Letter shall be effective only if given in writing and then only in the instance and for the purpose for which it is given. A

waiver by a party shall not constitute a continuing waiver and shall not prevent that party from subsequently enforcing any of the provisions of this Letter.

9.2     This Letter and any documents referred to in this Letter constitute the entire agreement between the parties concerning the subject matter of this Letter and supersede and replace any previous agreement between the parties or any representation made by one party to the other (whether oral or written) concerning the subject matter of this Letter. To the extent permitted by applicable laws, the parties shall not be bound by, or be liable for, any statement, representation, promise, inducement or understanding of any kind or nature not set out in this Letter, provided that nothing in this Clause 9.2 shall limit a party's liability for fraud.

9.3     Each party acknowledges and confirms that it has not entered into this Letter on the basis of any representation, warranty, undertaking or other statement whatsoever, whether made negligently or innocently, by any person (whether a party or not) other than as expressly set out in this Letter.

9.4     The invalidity or unenforceability of any provision of this Letter in any jurisdiction shall not affect: (a) the validity or enforceability in that jurisdiction of any other provision of this Letter; or (b) the validity or enforceability in other jurisdictions of that or any other provision of this Letter. Should any provision of this Letter become invalid or unenforceable, the parties shall negotiate in good faith new provisions that, as far as legally possible, most nearly reflect the intent of the parties originally expressed herein and that restore this Letter as nearly as possible to its original intent and effect.

9.5     Save as expressly set out in this Letter, a person or entity who is not a party to this Letter shall have no right to enforce any of its terms.

9.6     No amendment or supplement to this Letter shall be effective unless it is in writing and signed by an authorised representative of Levona and any other party whose rights or obligation hereunder may be materially altered by such amendment or supplement.

9.7     No party shall be permitted to assign, novate or otherwise transfer any of its rights or obligations under this Letter to any third party without the written permission of the other parties.

9.8     This Letter may be executed in any number of counterparts. This has the same effect as if the signatures on the counterparts were on a single copy of this Letter. The parties may enter into this Letter by executing any such counterpart.

10      **GOVERNING LAW AND JURISDICTION**

This Letter and the negotiations between the parties in connection with the contents hereof, including but not limited to the proposed purchase of the Shares, grant of the Purchase Option and advance of the Loan and any disputes and claims arising out of or in connection with them or their formation (including non-contractual claims and disputes), shall be governed by and construed in accordance with English law and shall finally be resolved by arbitration in accordance with the rules of arbitration of the London International Centre for Arbitration applicable at the time of conclusion of this letter (the "**Rules**") by one arbitrator to be appointed in accordance with the Rules. The seat of the arbitration shall be London, United Kingdom. The language to be used in the arbitral proceedings shall be the English language.

Remainder of Page Intnetionally Left Blank

The offer set out in this letter shall remain valid until 3.00 p.m. Eastern Standard Time on Tuesday 22 February 2022. If we do not receive a counterpart of this letter signed by authorised representatives of each of the four addresses to this letter at ~~adam@levona.com~~ by such time, the entirety of the offer herein will lapse.

Yours faithfully,

Eli Hassett, Director,
duly authorised for and on behalf of **Levona Holdings Ltd.**

**We confirm our agreement to the above.**

.................................... Director,          V. E. KERTSIKOFF
duly authorised for and on behalf of
**Eletson Holdings Inc.**

Date:

.................................... Director,
duly authorised for and on behalf of
**Eletson Corporation**

Date:

.................................... Director,
duly authorised for and on behalf of
**Eletson Gas LLC**

Date:

.................................... Director,
duly authorised for and on behalf of
**EMC GAS Corporation**

Date: 2/22/22

*Signatue Page to Binding Letter Offer*