**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| ELETSON HOLDINGS, INC. and ELETSON CORPORATION, |
|      Petitioners, |
|    v. |
| LEVONA HOLDINGS LTD, |
|      Respondent. |

Case No. 23-cv-7331 (LJL)

## THE PREFERRED SHAREHOLDERS' MEMORANDUM OF LAW IN OPPOSITION TO LEVONA'S MOTION FOR AN ANTI-SUIT INJUNCTION

## TABLE OF CONTENTS

INTRODUCTION ..............................................................................................................1

BACKGROUND ..............................................................................................................4

    I.      The Greek Proceeding......................................................................................4
    II.     The U.K. Proceeding........................................................................................6
    III.    The Preferred Shareholders Are Exercising Legitimate Rights.........................6

ARGUMENT ...................................................................................................................8

    I.      Levona Fails to Meet the Threshold Requirements for Anti-suit Injunction..........9

          A.   No Identity of Parties in Different Proceedings ........................................... 9

          B.   No Identity of Dispositive Resolutions in the Different Proceedings ........ 10

    II.     Levona Fails to Satisfy Additional *China Trade* Factors .....................................11

          A.   Public Policy As Adopted by the New York Convention Approves Parallel Proceedings.................................................................................................. 11

          B.   The Parallel Proceedings Do Not Threaten This Court's Jurisdiction........ 13

          C.   The Parallel Proceedings are Not Vexatious ............................................. 14

          D.   The Parallel Proceedings Do Not Represent "Forum Shopping"............... 14

          E.   The Parallel Proceedings Create No Other Type of Prejudice................... 15

    III.    SUSPENSION AS A REMEDY IS UNAVAILABLE AND INAPPROPRIATE ..................................................................................15

          A.   The FAA Does Not Provide for "Suspension"........................................... 15

          B.   An Order Memorializing A Purported Suspension Does Not Aid In Preserving The Court's Jurisdiction ......................................................... 20

    IV.    Levona Fails to Meet Its Burden for Preliminary Injunctive Relief.....................21
    V.     There is No Irreparable Harm to Levona .............................................................21

          A.   Levona is Not Likely to Succeed on the Merits ........................................ 22

          B.   Balance of Equities and Public Interest Do Not Favor Levona................. 25

    CONCLUSION..................................................................................................26

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*All. Capital Int'l Bank v. Wadiah Capital*,
   2025 WL 437618 (S.D.N.Y. Feb. 7, 2025)................................................................18

*Alto Mar Girassol v. Lumbermens Mut. Cas. Co.*,
   2005 WL 947126 (N.D. Ill. Apr. 12, 2005) ............................................................20

*AU New Haven, LLC v. YKK Corp.*,
   2018 WL 2128373 (S.D.N.Y. May 8, 2018) ............................................................12

*Baker Marine (Nig.) Ltd. v. Chevorn (Nig.) Ltd.*,
   191 F.3d. 194 (2d Cir. 1999)..................................................................................13

*Bauer v. Carty & Co.*,
   246 F. App'x 375 (6th Cir. 2007) ..........................................................................26

*Belanger v. N.Y. Univ.*,
   2025 WL 963308 (S.D.N.Y. Mar. 31, 2025) ..........................................................25

*C.f. RJR Nabisco, Inc. v. European Cmty.*,
   579 U.S. 325 (2016)..............................................................................................20

*CBF Industria de Gusa v. AMCI Holdings, Inc.*,
   850 F.3d 58 (2d Cir. 2017)....................................................................................28

*China Trade and Dev. Corp. v. M.V. Choong Yong*,
   837 F.3d 33 (2nd Cir. 1987)................................................................1, 2, 10, 22

*Commonwealth Ins. Co. v. Beneficial Corp.*,
   1987 WL 17951 (S.D.N.Y. Sep. 29, 1987)............................................................27

*Corporación AIC, SA v. Hidroeléctrica Santa Rita S.A.*,
   66 F.4th 876 (11th Cir. 2023) ..........................................................................19, 21

*D.H. Blair & Co. v. Gottdiener*,
   462 F.3d 95 (2d Cir. 2006)....................................................................................18

*Eastman Kodak Co. v Asia Optical Co, Inc.*,
   188 F.Supp. 3d 581, 587 (S.D.N.Y 2015)..............................................................11

*David Benrimon Fine Art LLC v. Durazzo*,
   2017 WL 4857603 (S.D.N.Y. Oct. 26, 2017) ........................................................14

*Fotochrome, Inc. v. Copal Co.*,
   517 F.2d 512 (2d Cir. 1975).................................................................................19

*Florasyth v. Pickholz*,
   750 F.2d 171 (2d Cir. 1984)................................................................................19

*Hawaiian Host, Inc. v. Citadel Pac. Ltd.*,
   637 F. Supp. 3d 1083 (D. Haw. 2022) ...............................................................20

*Int'l Equity Invs., Inc. v. Opportunity Equity Partners Ltd.*,
   441 F. Supp. 2d 552 (S.D.N.Y. 2006), aff'd, 246 F. App'x 73 (2d Cir. 2007).......................11

*Karah Bodas Co., LLC v. Perusahaan Pertambangan Minyak*,
   500 F.3d 111 (2d Cir. 2007)...............................................................2, 3, 12, 13

*Laker Airways Ltd. v. Sabena Belgian World Airlines*,
   731 F.2d 909 (D.C. Cir. 1984) ...........................................................................14

*Lewis v. Gov't of Eng. & U.K.*,
   2023 WL 2664081 (Mar. 28, 2023) ...................................................................23

*LiveWire Ergogenics, Inc. v. JS Barkats PLLC*,
   645 F. Supp. 3d 290 (S.D.N.Y. 2022) (Liman, J.) .............................................20

*Motorola Credit Corp. v. Uzan*,
   2003 WL 56998 (S.D.N.Y. Jan. 7, 2003) ..........................................................11

*No. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*,
   883 F.3d 32 (2d Cir. 2018).................................................................................23

*Odeon Cap. Grp. LLC v. Ackerman*,
   864 F.3d 191 (2d Cir. 2017)...............................................................................26

*Pa. Bureau of Corr. v. United States Marshals Serv.*,
   474 U.S. 34 (1985).............................................................................................18

*Paramedics Electromedicina Commercial LTDA v. GE Medical Systems
Information Technologies, Inc.*,
   369 F.3d 645 (2004)...............................................................................2, 10, 11

*Pearl v. City of Long Beach*,
   296 F.3d 76 (2d Cir. 2002).................................................................................25

*Phansalkar v. Andersen Weinroth & Co.*,
   344 F.3d 184 (2d Cir. 2003)...............................................................................27

*Rabinowitz v. Kelman*,
   2025 WL 842891 (2d Cir. Mar. 18, 2025).........................................................24

*Reliastar Life Ins. Co. v. EMC Nat'l Life Co.*,
  564 F.3d 81 (2d Cir. 2009)..................................................................................20

*Smalls v. Collins*,
  10 F.4th 117 (2d Cir. 2021) ..........................................................................25, 26

*Smith v. McGinnis*,
  208 F.3d 13 (2d Cir. 2000)...............................................................................24

*Smith v. Spizzirri*,
  601 U.S. 472 (2024)..........................................................................................19

*Thai-Lao Lignite (Thail.) Co. v. Gov't of the Lao People's Democratic Republic*,
  864 F.3d 172 (2d Cir. 2017)..............................................................................10

*Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*,
  126 F.3d 15 (2d Cir. 1997)..........................................................................18, 28

## Statutes

9 U.S.C § 2........................................................................................................4

9 U.S.C § 9..................................................................................................4, 18

9 U.S.C § 10......................................................................................................4

9 U.S.C § 11......................................................................................................4

All Writs Act..............................................................................................18, 21

FAA......................................................................................................... *passim*

## Other Authorities

Gary Born, *International Commercial Arbitration* (3rd Ed.) § 26.03[B][6] ................................22

Apargo Limited, Fentalon Limited, and Desimusco Trading Limited (the "Preferred Shareholders") submit this opposition to Levona Holdings Ltd.'s ("Levona") Motion for an Anti-Suit Injunction (ECF 362), as supplemented by letters from Levona (ECF 374) and Reorganized Holdings (ECF 373).[1]

## INTRODUCTION

In seeking the extraordinary, disfavored remedy of an anti-suit injunction, Levona misses the mark factually and legally as the foreign proceedings it seeks to halt in no way undermine or interfere with these proceedings. As the Second Circuit has held, foreign anti-suit injunctions "effectively restrict[] the jurisdiction of the court of a foreign sovereign" and therefore should be "used sparingly" and with "great restraint." *China Trade and Dev. Corp. v. M.V. Choong Yong*, 837 F.3d 33, 35-36 (2nd Cir. 1987). That is particularly so in this case regarding an arbitral award, where, as this Court following well-established precedent has recognized, the Convention on the Recognition and Enforcement of Arbitral Awards (the "New York Convention") (1958) expressly contemplates parallel proceedings. ECF 343 at 19 ("Even without confirmation by this Court, that Award may be confirmed and enforced in other countries under . . . the New York Convention.").

Levona does not satisfy the multiple high hurdles to warrant an anti-suit injunction. As a threshold matter, Levona ignores differences between: (1) the parties to the various proceedings as the Preferred Shareholders are distinct from Eletson Gas, Inc. ("Eletson Gas"); and (2) the remaining claims in the proceedings as this case seeks only vacatur of the arbitral award (the "Final Award") (ECF 41-1) while the other proceedings seek only confirmation. Even putting aside these

---

[1] Not to miss a chance to pile on, Reorganized Holdings—even though it had not joined in the motion—filed an unauthorized letter after the Court instructed only movant Levona to provide a supplemental letter. ECF 365. Particularly given the nature of its unfounded rhetoric (*i.e.*, record citations do not support accusations) far afield from the Court's specific inquiry, Reorganized Holdings' letter should be disregarded; nonetheless the Preferred Shareholders address some of its more egregious misstatements as concisely as possible.

predicate elements, Levona fails to satisfy what *China Trade* identifies as the primary two factors: "(A) whether the foreign action threatens the jurisdiction of the enjoining forum, and (B) whether strong public policies of the enjoining forum are threatened." *China Trade*, 837 F.2d at 36. Neither of these factors is remotely satisfied.

As for any claimed "threat" to jurisdiction under the *China Trade* test, the very precedent that Levona highlights refutes its argument. Unlike here, courts issue anti-suit injunctions in two inapt circumstances:

First, in contrast to here, injunctions may be warranted to protect a final judgment. *Karah Bodas Co., LLC v. Perusahaan Pertambangan Minyak*, 500 F.3d 111, 122, 126 (2d Cir. 2007) (involving "federal *judgments* confirming and enforcing" award; "federal *judgments* reached a dispositive determination"; injunction where foreign proceedings "threaten to undermine federal *judgments*") (emphasis added); *Paramedics Electromedicina Commercial LTDA v. GE Medical Systems Information Technologies, Inc*., 369 F.3d 645 (2004) (injunction where "district court's *judgment* disposes of" claims).  Here, no judgment is at risk.

Second, in contrast to here, injunctions may be warranted when vacatur, as distinct from confirmation, is being pursued outside of the primary jurisdiction where the arbitration occurred. That is because, as *Jolen, Inc. v. Kundan Rice Mills, Ltd*., recognized, the New York Convention authorizes only a court in the primary jurisdiction to set aside an award.  20019 WL 1559173 *3-4 (S.D.N.Y. 2019) (injunction where other court "does not have primary jurisdiction to decide vacatur application").  While allowing a secondary jurisdiction to decide vacatur, by definition, would deprive the primary jurisdiction of its exclusive authority under the New York Convention, the same does not hold for confirmation as the New York Convention specifically provides for parallel confirmation proceedings.  In enjoining a vacatur proceeding, *Karah Bodas* is highly

instructive for this motion by specifically holding: "the injunction has no effect on *confirmation* proceedings contemplated by the New York Convention in *other* jurisdictions." 500 F.3d 111, 130 (2nd Cir. 2007) (emphasis added).

Additionally, the subject foreign proceedings pose no threat whatsoever to Court's jurisdiction because: (1) to the extent they are active as described below, they seek only confirmation of the Final Award and *not* enforcement; and (2) the Preferred Shareholders have committed to provide notice to this Court and the court (the "Bankruptcy Court") in the related bankruptcy case before any enforcement activity. *See* May 6, 2025 Tr. 5:8-11 ("my clients in one other proceeding in Greece, are pursuing confirmation . . . but we're not pursuing enforcement."); *id.* at 18:15-17 ("enforcement will not take place without returning to the U.S."); *id.* at 33:17-19 ("we can commit to and what I believe we have is that we will enforce with notice to the courts."); Bankr. ECF 1587 ("Preferred Nominees have sought confirmation, not enforcement, of the Final Award."); ECF 329 at 12 ("Preferred Shareholders have sought confirmation, not enforcement, of the award in Greece").

Regarding public policy considerations under *China Trade*, the foreign litigation is perfectly aligned with the New York Convention's framework for parallel proceedings. Even with respect to enforcement, which is not being pursued, it is beyond cavil that "[u]nder the Convention, a court maintains the discretion to enforce an arbitral award even when nullification proceedings are occurring in the country where the award was rendered." *Karaha*, 335 F.3d at 367.

As inapt as an anti-suit injunction is to these circumstances, so, too, would be a suspension of the Final Award. As a possible approach, the Court inquired about "whether to preserve its jurisdiction, the Court may suspend the [Final] Award . . ." ECF 365. Because the foreign proceedings are no threat to the Court's jurisdiction, there is no factual predicate for the question.

Further, this Court is without jurisdiction to "suspend" the Award because it is not one of the forms of relief under the Federal Arbitration Act ("FAA"): enforcement (9 U.S.C § 2); confirmation (9 U.S.C § 9); vacatur (9 U.S.C § 10); and modification (9 U.S.C § 11). Nowhere does the FAA authorize suspension. Although the New York Convention references "suspend," which is a word that does not mean what Levona/Reorganized Holdings now argue and may be available in other jurisdictions, this Court's jurisdiction for this case derives from the FAA. Even if suspension was an available remedy, it still would be improper for the same reasons an anti-suit injunction is improper —the foreign proceedings are lawful and do not interfere at all with these proceedings.

In pursing the Greek Proceeding, as they are entitled to do, the Preferred Shareholders are respectful of both this Court and the Bankruptcy Court's authority and previously committed not to seek enforcement without notice to the U.S. courts. Indeed, it would be particularly unfair for the Preferred Shareholders not to be permitted to seek confirmation in this forum[2] while, at the same time, be barred from seeking confirmation everywhere else.

## **BACKGROUND**

### I.    **The Greek Proceeding**

In November 2024, the Preferred Shareholders commenced the Greece Proceeding before the Piraeus Court of First Instance, seeking recognition of the Final Award. As explained in the accompanying declaration from Themistoklis Sofos, Greek counsel for the Preferred Shareholders ("Sofos Decl."), only confirmation is sought—not enforcement—which would be a subsequent, distinct action. Sofos Decl. ¶¶ 4-5.

---

[2] ECF 343 (order denying intervention for purposes of confirmation); ECF 350 (so-ordered stipulation dismissing confirmation petition).

Ignoring the record, Levona asserts that the Preferred Shareholders "seek to confirm *and enforce*" through the pending Greek Proceeding. ECF 362 at 3. In fact, Levona's own (disputed) translation of the Greek pleading only states that the Preferred Shareholders seek "[t]o declare, as enforceable, the final Arbitration Award." [3]  While the plain text is perfectly clear, the Sofos Declaration further corroborates that, under Greek law (akin to U.S. law), to declare *enforceable* is not an act of enforcement. Sofos Decl. ¶ 4.

Although a hearing is scheduled in the Greek Proceeding for June 3, 2025, Levona notes that completion of service of process, which was required by May 3, has not occurred.  ECF 362 at 8. Accordingly, the Sofos Decl. explains that the Preferred Shareholders will request an adjournment at the June 3 hearing given the uneffectuated service. Sofos Decl. ¶ 11. The next available hearing date, subject to the Greek Court's schedule, likely will be at least six months later.  *Id.*  Alternatively, Levona also has the right either to seek a formal stay of the Greek Proceeding from the Greek Court.

As the Preferred Shareholders previously explained to the Court, they commenced the Greek Proceeding because confirmation of a foreign arbitral award in Greece is time-consuming. May 6 Hearing Tr. 16:25-17:2 ("justice in Greece can be slower than . . . justice here in the U.S."). The chronology of the case corroborates the time concerns, having been filed in November 2024, and still without completed service of the pleadings under the Hague Convention.  If the Greek Proceeding is halted rather than adjourned, the Preferred Shareholders may not be able to set a new hearing date until well into next year. They potentially could be required to recommence the time-consuming process from the beginning.  Sofos Decl. ¶ 12.

---

[3]  Exhibit A to the Sofos Decl. is the certified translation of the Greek pleading submitted by the Preferred Shareholders in the Greek Proceeding. At page 22-23, it requests only that the Final Award "be declared enforceable in Greece."

## II.    The U.K. Proceeding

Undeniably, the Preferred Shareholders are not parties to the U.K. Proceeding.  *See* ECF 363-1 (English Complaint).  In conclusory fashion, Levona posits that the Preferred Shareholders are present in the U.K. Proceeding "through Eletson Gas." ECF 362 at 8.  But no Court has ever made any findings that these distinct entities are the same; in fact, they are beneficiaries of different parts of the Final Award.  The fact that, as provided for by Justice Belen's Status Quo Injunction (Bank. ECF 7-3), individuals affiliated with the Preferred Shareholders, act in separate capacities as officers of Eletson Gas, does not equate to an absence of corporate separateness. Trying to have it both ways, Levona itself elsewhere states that the Preferred Shareholders "do not control Eletson Gas" (ECF 362 at 5 n. 1).[4]

While the Preferred Shareholders are not parties to the U.K. Proceeding, the record is clear that, like the Greek Proceeding, enforcement is not being sought.  Levona disingenuously omits verbiage from the U.K. pleading by claiming the action "seek[s] 'to enforce the JAMS Award.'" ECF 362 at 8. But the U.K. pleading actually seeks an "order[] . . . [f]or leave to enforce the JAMS Award," which, again, is not enforcement.  ECF 362-1 at 8.[5]  Levona thus has no choice but to admit that "'[n]o steps are [being] taken … to enforce'" the award in the U.K. ECF 362 at 8.

## III.    The Preferred Shareholders Are Exercising Legitimate Rights

Trying again to confuse who is who, Levona contends that "the bankruptcy court held the [Preferred Shareholders'] *principals* in contempt for pursuing the Greek Proceeding."  ECF 362 at

---

[4] Levona takes out of context comments from other proceedings that the Preferred Shareholders "have ultimate control over Eletson Gas." ECF 362 at 5 n. 1.  While these comments accurately reflect the fact that, in the capacity of shareholders, the Preferred Shareholders own all the preferred units, they in no way suggest that the Preferred Shareholders themselves manage the affairs of Eletson Gas.

[5] Further, the U.K. Complaint states: (1) relief is "sought by EG  [Eletson Gas] alone, and not by EH, or EC (or by the Preferred Nominees)" (ECF 362-1 at 26); and (2) that "EG accepts that the appropriate course is that no steps should be taken to enforce the JAMS Award . . . until conclusion of the [U.S.] Confirmation Proceeding" (*id* at 27).

8 (emphasis added).  Indisputably, the Preferred Shareholders have not been sanctioned by the Bankruptcy Court.  Nor would there be a basis to do so.  As the Bankruptcy Court stated: "confirmation of the Arbitration Award would not impinge on any party's ability to assert causes of action, if warranted in these proceedings."  Bank. ECF 348 at 8.  Likewise, this Court has stated: "neither the arbitration nor the [subsequent confirmation action] infringed upon the automatic stay or the Lift Stay Order." ECF 83 at 90.  Even aside from the fact that the Preferred Shareholders are not subject to the Lift Stay Order, these holdings recognize the propriety of petitioning for confirmation, and they apply equally to foreign proceedings.

Here, petitioning for confirmation of the Final Award, including in foreign proceedings, in no way undercuts any causes of action held by the debtors in the bankruptcy case.  Nor does anything in the bankruptcy plan adopted by the Bankruptcy Court prevent *non*-debtor entities from asserting their own rights, including in particular against other *non*-debtor entities.

While Reorganized Holdings argues the Preferred Shareholders are "fil[ing] legal actions … in the guise of confirmation of the Award" (ECF 373 at 2), they of course are entitled to so do.  As the Court has recognized, the Preferred Shareholders "are the principal beneficiaries of the [Final] Award" and thus "have a direct interest in whether the [Final] Award is confirmed, suspended, or vacated." ECF 291 at 21; s*ee also* ECF 343 at 18 ("the Award conferred enforceable rights on the Intervenors").

Further, Reorganized Holdings argues—indeed, reargues as Justice Belen already found otherwise—that "the purported transfer . . . to the [Preferred Shareholders] is a fiction created by Eletson's former management . . . as a result of the bankruptcy case." ECF 373 at 2.  But as Justice Belen found: "Eletson witnesses testified that from the outset . . . Eletson intended the preferred units to go to nominees" (ECF 41-1 at 28); "Levona knew about the Company's intention to

transfer the interests to nominees in a January 10, 2022 email" (*id.*); the BOL "expressly provides that 'Levona hereby grants Eletson Gas the option . . . for either Eletson Gas or its nominee.'" (*id.*) Likewise, the Bankruptcy Court recognized that "as the Arbitrator found (and the District Court confirmed), the transfer of the Preferred Shares occurred on March 11. 2022, which was nearly a year before the involuntary cases were filed." Bank. ECF 721 at 36.[6]

It also is noteworthy that Levona states it has sought "to enjoin the Greek and U.K. Proceedings as violative of the bankruptcy court's April 17, 2023 Stay Relief Order" and "Levona did not seek an antisuit injunction here then because it was instead proceeding with the bankruptcy court motion." ECF 362 at 9.  But if, as Levona asserts, the subject matter is being adjudicated in the bankruptcy case, then the anti-suit motion is impermissibly duplicative.

## ARGUMENT

As the Second Circuit has made clear, "principles of comity counsel that injunctions restraining foreign litigation be 'used sparingly' and 'granted only with care and great restraint.'" *Paramedics*, 369 F.3d 645, 652 (2d 2004); *citing China Trade*, 837 F.2d. at 36.  Such injunctions are particularly disfavored where, as here, the other action is expressly authorized by the New York Convention.  According to the Second Circuit: a party "may sue elsewhere to enforce an award before the award has been reviewed by courts in the arbitral seat." *Thai-Lao Lignite (Thail.) Co. v. Gov't of the Lao People's Democratic Republic*, 864 F.3d 172, 176 (2d Cir. 2017) (emphasis added). Thus, "under the Convention, a court maintains the discretion to enforce an arbitral award

---

[6] Contrary to Reorganized Holdings' insinuations about the timing of disclosures of the nominees, Justice Belen again found otherwise: "the families 'considered [it] to be an intrafamily matter, so [they] thought and believed it was not relevant to this arbitration."  ECF 41-1 at 31("Eletson's explanation for why the transfer . . . was not raised earlier in the proceedings is credible").   It also is flat wrong and contrary to Justice Belen's findings for Levona/Reorganized Holdings to continue misrepresenting that the petitioners in the arbitration stated that Eletson Holdings controlled Eletson Gas.

even when nullification proceedings are occurring in the country where the award was rendered." *Karaha*, 335 F.3d at 367.

### I.     Levona Fails to Meet the Threshold Requirements for Anti-suit Injunction

To obtain an anti-suit injunction, Levona must first satisfy two "threshold factors" regarding identity of parties and dispositive issues. *See China Trade*, 837 F.2d. at 35.  Neither is present here.

### A.     No Identity of Parties in Different Proceedings

The parties to this action and the proceedings in Greece and the U.K. are not the same: Eletson Gas, which is not a party to this case, is a petitioner in Greece and the sole petitioner in the U.K.  Given the different configurations, Levona argues that the parties in different proceedings need not be exactly the same but "substantially similar".  ECF 362 at 11 (citation omitted).  But to claim they are "substantially similar," Levona simply assumes that the Preferred Shareholders are "present" through Eletson Gas due to their "purported control" over it.  ECF 362 at 12.  Unlike the Levona-side entities, which include Murchinson and Pach Shemen as alter egos as found by Justice Belen (ECF 41-1 at 21-22, 96), there has never been a finding that the Preferred Shareholders and Eletson Gas are alter egos.  To the contrary, Levona itself states: "the [Preferred Shareholders] do not control Eletson Gas, including because that would be enforcement in violation of the bankruptcy court's stay relief order" (ECF 362 at n. 1); in fact, the Levona/Reorganized Eletson side even has sought sanctions in relation to various bankruptcy orders based on arguing that the Preferred Shareholders do not exercise control.

To obfuscate corporate separateness, Levona misplaces reliance on readily distinguishable cases.  *See Paramedics*, 369 F.3d 645, 652 ("[i]t is undisputed that [the two parties] are part of the [same] group of companies," using the same address for service of process.); *Eastman Kodak Co. v Asia Optical Co, Inc.* 188 F.Supp. 3d 581, 587 (S.D.N.Y. 2015) (respondents "failed to explain [the] role" of additional parties named in foreign litigation); *Int'l Equity Invs., Inc. v. Opportunity*

*Equity Partners Ltd.*, 441 F. Supp. 2d 552, 562 (S.D.N.Y. 2006), aff'd, 246 F. App'x 73 (2d Cir. 2007) (parties "executed an agreement" to vote together on matters); *Motorola Credit Corp. v. Uzan*, 2003 WL 56998, *2 (S.D.N.Y. Jan. 7, 2003) ("the real parties in interest are the same" as court previously one is a 'mere proxy' for the other other).

Reflecting their separateness, Eletson Gas and the Preferred Shareholders received separate forms of relief and benefits under the Final Award and thus possess distinct cognizable rights to protect the award. *See* ECF 41-1 at 100-101. The fact that the Preferred Shareholders own the preferred units in Eletson Gas, which of course is being disputed, does not render these entities the same.

### B.    No Identity of Dispositive Resolutions in the Different Proceedings

This case and the two foreign proceedings seek distinct relief: here, the only relief sought is *vacatur*; while in the U.K. and Greek Proceedings, the only relief sought is *confirmation*. As stated in *AU New Haven, LLC v. YKK Corp.*, 2018 WL 2128373 at *3, "the dispositive criterion may be satisfied when a foreign proceeding will *necessarily* render a determination of the core issue at the heart of a claim appropriately decided only in a pending domestic action" (emphasis added) (internal citation and quotation marks omitted). That is clearly not so in these cases, as a determination on vacatur in this action is not *necessarily* dispositive of the foreign confirmation proceedings. Given these circumstances, Levona's cited cases are inapposite. *See Jolen*, 2019 WL 1559173 at *1 ("[a] decision is "dispositive" when it "actually decide[s] the claims raised in the [foreign] action" (citation omitted)); *Karaha Bodas*, 500 F.3d at 121 (unlike here, "the Award, and the federal judgments confirming and enforcing it, actually decided the claims raised in the Cayman Islands action" while no judgments in this case have "actually decided" confirmation).

Having engineered a dismissal of the claims for confirmation in this action (ECF 350), leaving only vacatur, Levona now wants to box out the Preferred Shareholders from seeking

affirmative relief not only in the U.S. but everywhere.  No basis exists in law or equity for Levona's "heads it wins, tails the Preferred Shareholders lose" approach.

## II.    Levona Fails to Satisfy Additional *China Trade* Factors

Beyond missing the threshold factors, Levona also fails to satisfy the additional *China Trade* factors: (1) frustration of a strong public policy in this forum; (2) that the foreign action would be vexatious; (3) that this Court's jurisdiction is threatened; (4) that the proceedings in Greece or the U.K. prejudice other equitable considerations; or (5) that adjudication of the same issues in separate actions would result in delay, inconvenience, expense, inconsistency, or a race to judgment. 837 F.2d 33, 35-36.

### A.    Public Policy As Adopted by the New York Convention Approves Parallel Proceedings

In arguing that "strong public policies favor enjoining the Greek and UK Proceedings" (ECF 362 at 13), Levona gets it backwards.

First, Levona misapplies *Jolen*, 2019 WL 1559173., at *2, by arguing that an injunction would further the interest of respecting the New York Convention.  But the New York Convention specifically contemplates parallel confirmation proceedings.  Rather, what *Jolen* enjoined, in contrast to here, was a vacatur application in a secondary jurisdiction when vacatur is reserved for the primary jurisdiction.  It is for that reason that, when the other action seeks confirmation and not vacatur, *Karah Bodas* recognized that "the injunction has no effect on *confirmation* proceedings . . . in other jurisdictions."  500 F.3d at 130 (emphasis added).

Second, Levona cites to plainly inapposite precedent in arguing against so-called "second guess[ing] the *judgment* of a court in a primary State."  ECF 362 at 10 (emphasis added) (quoting *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 937 (D.C. Cir. 2007).  In contrast to here, Levona's citations involve a final U.S. or foreign court determination already rendered when there

is none in this case. *See id.* at 929 (party sought to enforce award already rejected by Colombia court); *Baker Marine (Nig.) Ltd. v. Chevorn (Nig.) Ltd.,* 191 F.3d. 194, 196 (2d Cir. 1999) (party sought to enforce award already rejected by Nigerian court).  While Levona, citing *Karaha Bodas*, notes that "federal courts *do* have inherent power to protect their *own* judgments" (ECF 362 at 11), there at present is no judgment to protect. Where a federal court has no judgment to protect, anti-suit injunctions are unwarranted.  *See David Benrimon Fine Art LLC v. Durazzo*, 2017 WL 4857603, at *2 (S.D.N.Y. Oct. 26, 2017) (denying request for anti-suit injunction where the court had not entered judgment).  Equally inapplicable is *Laker Airways Ltd. v. Sabena Belgian World Airlines*, 731 F.2d 909, 929 (D.C. Cir. 1984), where in the context of antitrust claims the U.S. court enjoined an English proceeding because its "sole purpose … [was] to terminate the American action"; the court even "offer[ed] to draft the injunction more narrowly to permit certain proceedings that were not inconsistent with the unhindered continuation of the United States action."  Obviously, nothing in the Greek Proceeding (nor the U.K. Proceeding) impedes this case.

Having no legal citation, Levona asserts the Greek and U.K. proceedings should be enjoined not because they violate any court judgment but because they "undermine this Court's *ability* to render a meaningful vacatur decision" (emphasis added).  ECF 362 at 11. But no precedent is identified for enjoining a foreign action because it somehow "undermines" the "ability" to render a judgment.  Nor, critically, do the foreign proceedings undermine anything, let alone this Court's ability to exercise its jurisdiction. Rather, they are in furtherance of what the New York Convention authorizes and are proceeding, albeit at a slower pace, in conjunction with this case.[7]

---

[7] Given the absence of a judgment, Levona pivots to arguing that the Court has "vacated significant portions of the Award."  ECF 362 at 11.  While substantially all of the relief granted against Levona was not vacated and currently remains intact, a pre-judgment, partial modification provides no grounds for an anti-suit injunction.  It also is disingenuous for Levona to argue that the Preferred Shareholders should be prevented from "pursu[ing] enforcement

### B.    The Parallel Proceedings Do Not Threaten This Court's Jurisdiction

Levona has made no showing that the Greek or U.K. proceedings in any way undermine the integrity of these proceedings; indeed, having little to nothing to say, Levona spends half a page—one paragraph—addressing what is a critical prong.  ECF 362 at 17.  Simply stating that a party's actions infringe on a court's jurisdiction is insufficient, and efforts to confirm (not enforce) the Final Award in Greece (or the U.K.), does not interfere with this Court's processes.  As the full title of the New York Convention itself makes plain, "Recognition *and* Enforcement" are different: while a confirmation proceeding allows a court in another country to issue a judgment *recognizing* the award and rendering it *enforceable*, it is not an act of enforcement.

To avoid repetition, suffice it to say the parallel proceedings are exactly what the New York Convention authorizes.  It is flatly wrong that that they represent an "attempt to evade the rightful authority of the forum court."  ECF 362 at 13 (quoting *A.P. Moller-Maersk A/S v. Ocean Express Miami*, 590 F. Supp. 2d 526, 533 (S.D.N.Y.).  This is not a case, as in *Jolen*, where an application to vacate in the secondary jurisdiction is contrary to the exclusive authority of the primary jurisdiction.  Nor, again, is this a case, as in *Karaha Bodas and Paramedics*, where any federal judgment is being frustrated.

Far from any semblance of impropriety, the Preferred Shareholders have been forthright by repeatedly stating that they will bring any prospective enforcement action to the attention of the U.S. courts.

---

of a fraudulent award." ECF 362 at 12.  Of course, there is no fraud finding; after discovery, the Preferred Shareholders intend to rebut the baseless accusations.

### C.    The Parallel Proceedings are Not Vexatious

In a peculiar twist, Levona argues that the foreign proceedings are vexatious because "Levona has received no indication that it has been served." ECF 362 at 12.  Unsurprisingly, Levona cites no case finding an action vexatious because service was not effectuated. Given how much time the procedures in foreign courts take when international parties are involved, the foreign cases still are at pre-service stages. *See* Sofos Decl. ¶¶ 8-10. But that status is only to the detriment of the Preferred Shareholders, not Levona.  It in fact is because of the time-consuming nature of these foreign procedures that it would be unfair to stall the Preferred Shareholders and force create the risk that they would have to start all over again in Greece down the road.

Particularly given the structure of the New York Convention, it is hard to fathom how parallel proceedings as specifically contemplated – which are the very rules Levona accepted by agreeing to international arbitration in the first place – are vexations. To the extent, however, Levona is aggrieved in some manner, the New York Convention itself provides the proper remedy, which is not by way of an anti-suit injunction. Instead, Article VI of the New York Convention expressly grants discretion to a court in a secondary jurisdiction to stay confirmation proceedings "if it considers it proper." No justification exists for Levona to flip the structure of the New York Convention on its head by failing to seek relief from the secondary jurisdiction as provided by the treaty itself.

### D.    The Parallel Proceedings Do Not Represent "Forum Shopping"

The structure of the New York Convention not only authorizes parallel proceedings, but also mitigates forum shopping concerns.  Under the New York Convention, the U.S. court is the primary court for the Final Award and alone decides vacatur.  If it wanted to do so, Levon could exercise its rights under the New York Convention to apply to a court in any secondary jurisdiction for a stay of the proceedings while the U.S. case proceeds.  But that process is not even required

14

in these circumstances, where this action is not only far ahead of the foreign proceedings, but the Preferred Shareholders have stipulated to refrain from enforcement of a confirmed award without coordination with the U.S. proceedings. This is a far cry from any "race" to a different courthouse, which presumably explains why Levona has never sought a stay from the Greek Court.

      **E.**      **The Parallel Proceedings Create No Other Type of Prejudice**

As much as Levona embraces *Jolen*, 2019 WL 15559173, at *5, for arguing about the risks of inconsistency and other burdens from foreign proceedings, *Jolen* provides no support as it involved secondary jurisdiction litigation usurping the exclusivity of the primary jurisdiction to determine vacatur. No similar concerns exist here. In fact, concerns about delay and expense weigh strongly against precluding the foreign proceedings. By seeking confirmation (but not yet enforcement) in the Greek Proceeding, the Preferred Shareholders appropriately want to avoid delay and the ensuing prejudice. If forced to halt or suspend the Greek Proceeding, the Preferred Shareholders will face the extra delay and expense to the extent they later must recommence confirmation from the beginning. Sofos Decl. ¶ 12. So, too, with Eletson Gas and the U.K. Proceeding.

Further, enforcement will not be sought in the Greek Proceeding (or U.K. Proceeding) absent coordination with the U.S. courts, which further mitigates against any risk of inconsistent rulings in different jurisdictions and disposes of any genuine prejudice on the part of Levona.

**III.**     **SUSPENSION AS A REMEDY IS UNAVAILABLE AND INAPPROPRIATE**

      **A.**      **The FAA Does Not Provide for "Suspension"**

Levona argues that the Court can "preserve its jurisdiction" by issuing an order memorializing that the Final Award already was suspended under this Court's February 14 Clarification Order (ECF 268) and/or the Stay Relief Order. However, Levona's argument rests

on a fatal flaw:  the Final Award is not suspended and cannot be suspended under domestic arbitral law.

The New York Convention provides for "different regimes for the review of arbitral awards (1) in the state in which, or under the law of which, the award was made ["primary jurisdiction"]; and (2) in other states where recognition and enforcement are sought ["secondary jurisdiction"]." *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997). The New York Convention contemplates that in a primary jurisdiction, the court applies its own domestic arbitral law, rather than the Convention itself.  *Id.* Here, the FAA governs.

Neither the Court's February 14 Clarification Order nor the Stay Relief Order operate as a "suspension" of the Final Award because the FAA does not provide for suspension.  As the FAA and case law make clear, a U.S. court has *limited* options in evaluating an arbitration award: the court "'*must grant'* [an order confirming] the award 'unless the award is vacated, modified, or corrected.'" *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (citing 9 U.S.C. § 9) (emphasis added).  There simply is no option for a "suspension," whatever that might even mean.

Neither Section 12 nor any other provision of the FAA allow for "suspending" the award itself. *See* 9 U.S.C. §§ 9-12.  While Section 12 of the FAA provides authority for the court to stay domestic enforcement proceedings while a motion to vacate is pending, § 12 does not authorize the Court to issue an order to a foreign court staying a confirmation proceeding there; at most, a federal court has the power to enjoin *a party* before it from pursuing litigation before a foreign tribunal but not the proceeding itself. *China Trade,* 837 F.2d 33 at 35 (noting that an "injunction operates only against the parties, and not directly against the foreign court")).  Given that the New York Convention expressly contemplates multiple confirmation actions, an anti-suit injunction of

a confirmation proceeding in another jurisdiction would be particularly inappropriate in these circumstances.

Nor is there any implied mechanism for "suspending" an arbitral award. Neither Levona nor Reorganized Holdings has cited any case in which a U.S. court has exercised any inherent authority to do so. Although the court in *Fotochrome, Inc. v. Copal Co.*, 517 F.2d 512 (2d Cir. 1975), stated that an award "is inchoate until enforced by judgment," it nevertheless held that an award is a "binding adjudication on the merits." *Id.* at 516-17 (2d Cir. 1975).   As held in *Florasynth, Inc. v. Pickholtz*, 750 F.2d 171, 176 (2d Cir. 1984) "[a]n unconfirmed award is a contract right."  It would be an unprecedented and unwise outcome to suspend that right based on vigorously disputed allegations.

Notwithstanding Levona's distortions of commentators' understanding of the term "suspension," U.S. courts interpret "suspend" to be synonymous with "vacate" under the FAA as distinct from a separate remedy with independent meaning. For example, the Eleventh Circuit has held that "[s]et aside, suspend, and annul under the New York Convention are, in turn, generally interchangeable with vacatur under the FAA. *They all refer to the invalidation of an arbitral award*." *Corporación AIC, SA v. Hidroeléctrica Santa Rita S.A.*, 66 F.4th 876, 882-83 (11th Cir. 2023) (emphasis added); *id.* at 885 ("The only reference to vacatur (i.e., 'set aside *or suspended*') in Article V is found in subsection (1)(e).") (emphasis added); *see also Hawaiian Host, Inc. v. Citadel Pac. Ltd.*, 637 F. Supp. 3d 1083, 1094 n.6 (D. Haw. 2022) ("In this regard, the New York Convention distinguishes between 'recognition and enforcement' of an award, and affirmatively 'setting aside or suspending' (*i.e.,vacating or annulling*) an award.") (emphasis added) (citing *Zeiler v. Deitsch*, 500 F.3d 157, 165 n.6 (2d Cir. 2007)).

The absence of an unspecified suspension remedy flows from the purpose and structure of the FAA, pursuant to which "confirmation of an arbitration award is 'a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *LiveWire Ergogenics, Inc. v. JS Barkats PLLC*, 645 F. Supp. 3d 290, 297 (S.D.N.Y. 2022) (Liman, J.) (citing *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984)). While other countries may have laws or judicial mechanisms contemplating something in the nature of a "suspension" of awards as distinct from vacatur (*see, e.g., Alto Mar Girassol v. Lumbermens Mut. Cas. Co.,* 2005 U.S. Dist. LEXIS 7479 (N.D. Ill. Apr. 12, 2005) (Illinois federal court, sitting in secondary jurisdiction, discussing statute suspending award pending appeal), Congress and the courts in the U.S. have determined that "the court's function in confirming or vacating an arbitration award is severely limited. If it were otherwise, the basic purpose for resort to arbitration, *i.e.*, avoidance of litigation, would be frustrated." *Reliastar Life Ins. Co. v. EMC Nat'l Life Co.*, 564 F.3d 81, 85 (2d Cir. 2009). If Congress wanted to include a provision in the FAA allowing suspension of an arbitral award made under the New York Convention—a provision which would have an impact beyond this country's borders—it affirmatively would have done so. *C.f. RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325, 335 (2016) ("The question is not whether we think 'Congress would have wanted' a statute to apply to foreign conduct 'if it had thought of the situation before the court,' but whether Congress has affirmatively and unmistakably instructed that the statute will do so.")

Nor does Article V(1)(e) of the New York Convention empower this Court with the authority to "suspend" the arbitral award. "Article V(1)(e) allows a court *exercising secondary jurisdiction* to deny a request to recognize and enforce a New York Convention award on the ground that it has been vacated by a court ('a competent authority') in the primary jurisdiction ('in which, or under the law of which, that award was made'). *But it does not purport to regulate the*

*procedures or set out the grounds for vacatur in the primary jurisdiction.*" *Corporación AIC* 66 F.4th at 885 (emphasis added). The provision does not create law; it merely instructs that a court sitting in the primary jurisdiction to apply its own law.

Likewise, the All Writs Act, 28 U.S.C. § 1651(a), does not allow for the relief Levona seeks. "Although that Act empowers federal courts to fashion extraordinary remedies when the need arises, it does not authorize them to issue *ad hoc* writs whenever compliance with statutory procedures appears inconvenient or less appropriate." *Pa. Bureau of Corr. v. United States Marshals Serv.*, 474 U.S. 34, 43 (1985). Thus, the Supreme Court has held that, "[w]here a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." *Id.* An order suspending an arbitral award would conflict with the express language of the FAA and caselaw dictating that "[a] court's function in confirming or vacating an arbitration award is severely limited." *All. Capital Int'l Bank v. Wadiah Capital*, 2025 WL 437618, at *7 (S.D.N.Y. Feb. 7, 2025) (quoting *Willemijn Houdstermaatschappij, BV v. Std. Microsystems Corp.,* 103 F.3d 9, 12 (2d Cir. 1997)). The FAA's use of the phrase "must grant," leaves no room for the exercise of discretion by the court. *See Smith v. Spizzirri*, 601 U.S. 472, 476 (2024) ("[T]he use of 'shall' in neighboring sections of the FAA create[s] a mandatory obligation that [leaves] 'no place for the exercise of discretion by a district court.'") (*quoting Dean Witter Reynolds Inc. v. Byrd*, 470 U. S. 213, 218 (1985)).

Finally, contrary to Levona's contention, the Stay Relief Order could not operate as a "suspension," because the Bankruptcy Court is not a "competent authority" to render that determination under the New York Convention. *See* ECF 36 ("This Court thus is the proper forum to decide whether to confirm or vacate the award."); ECF 39 ("[A]ll that the bankruptcy court could do in this matter would be to prepare and submit proposed findings of fact and conclusions

of law that would be reviewed de novo by this Court.")); *see also Fotochome,* 517 F.2d 517 (2d Cir. 1975) ("We conclude that a foreign arbitral award rendered after the filing of a Chapter XI petition in a United States Bankruptcy Court in an arbitration proceeding commenced prior to such filing is a valid determination on the merits and is unreviewable by the Bankruptcy Court.").

**B.    An Order Memorializing A Purported Suspension Does Not Aid In Preserving The Court's Jurisdiction**

To the extent Levona and Reorganized Holdings merely seek to have this Court issue an order memorializing a purported suspension which, they contend, already has occurred, they have not even properly explained how such an order would protect this Court's jurisdiction—indeed, such an order is unnecessary for the reasons explained. Additionally, as recognized by Reorganized Holdings, regardless of whether this Court, presiding in the primary jurisdiction, issues a suspension order, the New York Convention grants a court in the secondary jurisdiction the discretion to stay (or not) confirmation proceedings before it pending the outcome of vacatur proceedings in the primary jurisdiction. *See* ECF 373 (citing *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 316 (2d Cir. 1998) ("A court has discretion to adjourn enforcement proceedings *where an application has been made in the originating country* to have the arbitral award set aside or suspended.") (emphasis added); New York Convention Art. VI.  The absence of any similar remedy available in this case in the court with primary jurisdiction further confirms that such a remedy does not exist.  Even if the Court issued a suspension order, the permissive structure of Article V would allow a foreign court the discretion nonetheless to confirm the award. New York Convention Art. V(1) ("Recognition and enforcement of the award *may* be refused . . .) (emphasis assed); *see also* Gary Born, *International Commercial Arbitration* (3rd Ed.) § 26.03[B][6] ("The discretionary nature of Art. V is now well accepted internationally. There is no longer any argument, or any sustainable argument, that would suggest that the word 'may' in Art.

V should mean anything other than a discretionary 'may' as opposed to a mandatory 'shall.'" (quoting Cheng, *Celebrating the Fiftieth Anniversary of the New York Convention*, in A. van den Berg (ed.), 50 Years of the New York Convention 680 (2009)).

### IV.     Levona Fails to Meet Its Burden for Preliminary Injunctive Relief

To obtain its requested relief, Levona also "carries the burden of persuasion" that it independently meets the requirements for preliminary injunctive relief before a determination of the merits of the case.   *Lewis v. Gov't of Eng. & U.K.*, 2023 WL 2664081, *1-2 (Mar. 28, 2023) (denying preliminary injunction and anti-suit injunction). To obtain a preliminary injunction, Levona "must show (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." *No. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc*., 883 F.3d 32, 37 (2d Cir. 2018) (denying preliminary injunction). Levona certainly has not carried it burden.

### V.     There is No Irreparable Harm to Levona

Because the Greek and U.K. proceedings seek only confirmation of the Final Award but not enforcement, by definition there is no prospect of irreparable harm to Levona. While Levona argues that the Greek and U.K. proceedings create a risk of "inconsistent rulings"—they do not. To the contrary, under the New York Convention, the foreign courts are not even authorized to determine vacatur, which is the only relief at issue in this case.  Further, the fact again that the Preferred Shareholders "already stipulated that enforcement will be in coordination with U.S. judicial confirmation outside of the Greek proceeding" obviates any actual, irreparable harm. ECF 329 at 12.  In *ipse dixit* fashion, Levona also claims that delay is "almost self-evident" from the conduct of parallel proceedings (ECF 362 at 18) but does not identify what exact delay, particularly given the procedural status of the foreign proceedings.

Further undercutting the *bona fides* of any claim of irreparable harm is Levona's *own* delay in seeking an anti-suit injunction. As far back as December 20, 2024, Levona wrote to the Court regarding the U.K. Proceeding (ECF 232) and discussed the prospect of moving for an anti-suit injunction at the hearing on December 23, 2024. According to Levona, it wanted to ensure that even with the discovery stay "we could pursue the injunction against the foreign proceedings." (ECF 238 at 5). Reflecting an absence of any genuine, let alone irreparable, harm, Levona delayed almost five months before filing anything.

### A.    Levona is Not Likely to Succeed on the Merits

On the merits of the case, Levona has a high burden to prove – which the Preferred Shareholders vigorously dispute – that grounds exist for the equitable tolling of its fraud claim and that there was fraud in the arbitration. Having to show a likelihood of success, Levona bases its argument on the Court's decision to permit it to proceed with vacatur. But this Court held only "that there's enough for you to go forward with discovery, but I made clear in my opinion that that was just sustaining the complaint; it was not finding that you have proven your claim." ECF. 168 at 15:11-14.

Equitable tolling only applies in "rare and exceptional circumstances," *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000). Under 9 U.S.C. § 12, Levona had "three months after the award was filed or delivered" to move to vacate. Even measured from the September 29, 2023 Final Award, Levona had to move by December 29, 2023.[8] That threshold issue bars Levona from seeking vacatur at all and yet Levona fails even to discuss its burden to demonstrate that the three-month statute of limitations for it to seek vacatur warrants equitable tolling.

---

[8] Here, that time is measured from August 15, 2023, the date of the Corrected Interim Award. *See Rabinowitz v. Kelman*, 2025 WL 842891 at *2 (2d Cir. Mar. 18, 2025) (summary order) (affirming denial of motion to vacate as untimely because time to move was measured from award on the merits). That allowed Levona to move by November 15, 2023.

To succeed on the merits, Levona must first show the statute of limitations was subject to equitable tolling, which requires that Levona had been "pursuing its rights diligently" and that "some extraordinary circumstance stood in its way." *Smalls v. Collins*, 10 F.4th 117, 145 (2d Cir. 2021). Levona next must "show reasonable diligence in pursuing his claim *throughout the period he seeks to have tolled,*" which "cannot be made if the party, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances" (*id.*) (emphasis added). The facts will show that Levona could have done so.

Particularly because Levona now (belatedly) contends that the alleged fraud encompasses the entire issue of the exercise of the option and alleged related perjury, Levona's possession of a recording made on July 15, 2022 – before the arbitration even commenced – that goes directly to the issue – shows equitable tolling is far from likely to be found. Levona (erroneously) claims this recording shows that Eletson admitted that the option had previously lapsed, yet Levona admittedly withheld the recording for the entirety of the arbitration (ECF 138 at 7 & n.2 (p. 3 of brief)). Here, Levona "could have brought these claims earlier but chose not to. The evidence shows that [Levona] was aware of and even contemporaneously voiced concerns relating to the conduct that" it claims requires vacatur. *See Belanger v. N.Y. Univ.*, 2025 WL 963308, *15 (S.D.N.Y. Mar. 31, 2025). This is not the what the Second Circuit had "in mind[,] a situation where a plaintiff could show that it would have been *impossible* for a reasonably prudent person to learn about his or her cause of action." *Pearl v. City of Long Beach*, 296 F.3d 76, 85 (2d Cir. 2002).

Nor did Levona act with diligence "throughout the period [it] seeks to have tolled." *Smalls*, 10 F.4th at 145. It did nothing to pursue its claims for nearly three months, from when it first moved in the Bankruptcy Court on July 26, 2023 (Bankr. ECF 144) to when it filed a related

motion on October 19, 2023 (ECF 127-14).  Levona never sought relief in this Court, even though it told the bankruptcy judge in November 2023 that it was at that very time raising the issue with this Court (ECF 127-16 at 34:21-35:22; 38:16-39:10; 46:7-11).  Levona did not and cannot show that it is likely to succeed on its equitable tolling defense.

Equally critical, Levona's likelihood of success in showing any fraud fares no better.  Although Levona "recognizes it must still meet its burden to show fraud in the procurement of the Award" (ECF 362 at 15), it completely fails to do so. To be clear, the At-Issue Documents do not demonstrate, let alone by clear and convincing evidence, that Eletson engaged in "fraudulent activity." *Odeon Cap. Grp. LLC v. Ackerman*, 864 F.3d 191, 196 (2d Cir. 2017).  Rather, what Levona alleges is at best "'differences in interpretation'" over discovery requests, which are "not the intentional misrepresentation or bad faith required for fraud or undue means." *Bauer v. Carty & Co.*, 246 F. App'x 375, 378-79 (6th Cir. 2007) (failure to produce documents "is not clear and convincing evidence of bad faith").  Even more, the At-Issue Documents on their face would not have altered the Final Award, as just like other documents reviewed and rejected by Justice Belen, the At-Issue Documents are tainted by the fraud of Peter Kanelos.  These realities, which have been undeveloped now for nearly a year, do nothing more than demonstrate, in the eyes of the Court, "that there's enough for [Levona] to go forward with discovery" (ECF 168 at 15:11-14), not that the vacatur petition will be successful.

There are a multitude of defects with Levona's arguments regarding the alleged meaning and significance of the At-Issue Documents, including:

*First*, critically, each of the At-Issue Documents is infected by the fraud perpetrated by Peter Kanelos.  This infection led Justice Belen to discount documents touched by Peter Kanelos, who, in the words of Justice Belen, "breach[ed]" his "fiduciary duties" to Eletson and had "every

incentive to muddy the waters" (ECF 41-1 at 45 n.6, 51).  *See Phansalkar v. Andersen Weinroth & Co.*, 344 F.3d 184, 200 (2d Cir. 2003) (employee not an agent when he "breached his duties of loyalty and good faith" owed to employer). Just as Justice Belen did with the other documents touched by Kanelos, he would have disregarded the At-Issue Documents.

    *Second,* while Levona claims the At-Issue Documents should have been produced, they were not called for in the Arbitration. *Commonwealth Ins. Co. v. Beneficial Corp*., 1987 WL 17951, *4-5 (S.D.N.Y. Sep. 29, 1987) ("Full scale discovery is not automatically available in arbitration, as it is in litigation"), and the Parties, including Levona, stipulated to the fairness of the Arbitration (ECF 41-1 at 16-17).  Further, the At-Issue Documents were not responsive to any specific document requests put at issue by Levona. *See* ECF 147 at 6-7.

    *Third,* the At-Issue Documents are being grossly misread by Levona. Considering a similar document to the At-Issue Documents, Justice Belen found that a July 13 Email (listing the "Murchinson Buyout Steps") was not the "smoking gun" that Levona touted it to be.  To Justice Belen, the July 13 Email "at most" described "an inaccurate checklist of items needed to complete Levona's exit from Gas pursuant to the terms of the BOL" (ECF 41-1 at 44 n. 6).  The At-Issue Documents are more of the same, each discussing repayment of the outstanding loan to Levona and the Murchinson Exit. A review of the At-Issue Documents shows that nowhere do they say or suggest that the option had lapsed or that the buyout of the preferred shares was not effectuated.

    Despite its overstated recitation of pure accusations, Levona does not and cannot show that it is likely to succeed in its petition to vacate the Final Award.

### B.  Balance of Equities and Public Interest Do Not Favor Levona

    Levona states that "it is in the public interest to avoid enforcement of fraudulent awards" (ECF 362 at 20), despite knowing that no party is seeking to enforce the Final Award in the U.K. or in Greece at this time.  Nor has there been any effort to "forum shop, skirt this Court's

jurisdiction, [or] obtain conflicting judgments." ECF 362 at 20.  If anything, the balance of equities favors the parties seeking confirmation in the Greek and U.K. proceedings, as they involve time-consuming processes, and if those processes are halted, the parties may be required to recommence them from the beginning.

As a further public policy point, to enjoin a confirmation proceeding in a signatory state would disrupt the purpose of the Convention, which was designed to "facilitate[] the enforcement of arbitration awards by enabling parties to enforce them in third countries without first having to obtain either confirmation of such awards or leave to enforce them from a court in the country of the arbitral situs." *CBF Industria de Gusa v. AMCI Holdings, Inc*., 850 F.3d 58, 72 (2d Cir. 2017). Specifically, the New York Convention sets up an intentional scheme, adopted by the United States and 172 other countries, where an arbitration award can be confirmed in any signatory country but can be vacated or set aside only in the country said to have "primary jurisdiction." *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc*., 126 F.3d 15, 23 (2d Cir. 1997).  It would be against sound public policy (and international comity) to disregard the obligations set forth in the New York Convention.

## CONCLUSION

According, Levona's anti-suit injunction motion should be denied in its entirety.

Dated: May 25, 2025

                                        Respectfully submitted,

**GREENBERG TRAURIG, LLP**

By: _/s/ Hal. S. Shaftel_

Hal S. Shaftel
Maura E. Miller
Adam Kirschbaum
One Vanderbilt Avenue
New York, NY 10017
(212)801-9200
shaftelh@gtlaw.com
maura.miller@gtlaw.com
kirschbauma@gtlaw.com

_Counsel for Intervenors Apargo  Limited, Fentalon Limited. and Desimusco Trading Limited_

## CERTIFICATE PURSUANT TO LOCAL RULE 7.1(c)

I, Hal S. Shaftel, certify that the foregoing opposition contains fewer than 8,750 words.

According to the word processing program used to prepare this opposition, it contains 8,579 words.

By: */s/ Hal S. Shaftel*
Hal S. Shaftel