UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

                                                           :

ELETSON HOLDINGS INC. and ELETSON        :
CORPORATION,

                                                      :

                        Cross-Respondents,     :                23-cv-7331 (LJL)

                                                   :

                  -v-                            :          MEMORANDUM AND
                                                 :               ORDER

LEVONA HOLDINGS LTD.,                   :

                                                      :

                        Cross-Petitioner,     :

                                                      :

                  and                            :

                                                      :

APARGO LIMITED, FENTALON           :
LIMITED, and DESIMUSCO TRADING    :
LIMITED,                                 :

                        Intervenors.        :

                                                      :

------------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__6/20/2025__

LEWIS J. LIMAN, United States District Judge:

       Intervenors have filed motions for five letters of request, Dkt. Nos. 377, 380,[1] 383, 386,

as well as a subpoena pursuant to 28 U.S.C. § 1783, Dkt. No. 388, and have asked to join in a

prior motion of Petitioners Eletson Holdings, Inc. ("Holdings") and Eletson Corporation

("Corp." and, collectively with Holdings, "Eletson") to compel the production of documents

from Cross-Petitioner Levona Holdings Ltd. ("Levona") at Dkt. No. 182. *See* Dkt. No. 376. For

the reasons set forth below, the requests are granted in part and denied in part.

## BACKGROUND

       Familiarity with the prior proceedings in this case is presumed. On September 6, 2024,

the Court granted Levona's motion for leave to file an amended answer to Eletson's operative

---

[1] Intervenors filed a corrected version of Dkt. No. 380 at Dkt. No. 429.

petition to confirm the final arbitration award (the "Award") issued by the Honorable Ariel Belen of the Judicial Arbitration and Mediation Services, Inc. ("JAMS") on September 29, 2023, and an amended cross-petition to vacate the Award. *See Eletson Holdings, Inc. v. Levona Holdings Ltd.*, 2024 WL 4100555, at *1 (S.D.N.Y. Sept. 6, 2024). The amended answer and amended cross-petition are based on documents that Eletson did not produce in the arbitration but ultimately were required to produce in a separate bankruptcy proceeding in the summer of 2023 (the "At-Issue Documents") regarding the purported purchase by Eletson of the Preferred Interests of Levona in Eletson Gas LLC ("Gas"). The arbitration hinged on Eletson's account that it had exercised a purchase option for the Preferred Interests in Gas in March 2022. *Id.* at *8. The At-Issue Documents reflected Eletson trying to raise money for the purchase of the Preferred Interests months after it had supposedly acquired those interests and at the price in excess of what Eletson would have had to pay if they were acquired, as Eletson claimed, through the exercise of a purchase option in March 2022. *Id.* On Levona's interpretation, the At-Issue Documents undermined the argument and testimony offered by Eletson during the arbitration. The Court concluded that "Levona has presented evidence that, if credited, would show that Eletson engaged in fraudulent activity that Levona could not have discovered and that went to a pivotal issue in the arbitration." *Id.* at *22. The Court also concluded that "Levona has identified sufficient facts to establish at this stage both an extraordinary circumstance [preventing its discovery of Eletson's fraud in the arbitration] and due diligence." *Id.* at *17. The Court also concluded that Levona was entitled to discovery. "Levona ha[d] proffered evidence that would suggest that the four documents at issue may be just the tip of the iceberg and that there may be other relevant documents that would support its claims that extraordinary circumstances prevented it from filing earlier and that fraud was committed in the arbitration." *Id.* at *17.

The At-Issue Documents date from the period July 2022 to August 2022.  They include:

1.  A July 25, 2022, email from Marina Orfanoudaki, Corp's Group Financial Controller, to Peter Kanelos concerning the "Buyout of Murchinson," which addresses the financing necessary to fund the repayment of the loan and to purchase the Murchinson Ltd. ("Murchinson") partnership share and shows that Eletson was considering purchasing the Preferred Interests of Levona for $36.2 million. Dkt. No. 127-4.

2.  A July 25, 2022, email also from the Group Financial Controller to Peter Kanelos describing the procedures for a Murchinson buyout and containing an updated cashflow model.  Dkt. No. 127-5.

3.  An August 12, 2022, email from Peter Kanelos to Vassilis Kertsikoff with the subject line "Investor Model for Murchinson Buyout" that contemplated an additional $12.5 million to be used "in negotiations with Murchinson for acquisition of preferred shares," in addition to $23 million net sale proceeds from the sale of the vessels "to be applied towards Murchinson."  Dkt. No. 127-8.

4.  An August 18, 2022, email from Corp's Treasury and Corporate Finance Manager to Peter Kanelos containing a "revised model" that contemplated that Eletson would repay the working capital facility and provide $23 million from the sale of the two vessels and a residual $2.2 million from other funding for the Murchinson's Exit Payment.  Dkt. No. 127-9.

5.  A detailed model sent by Peter Kanelos, copying Kertsikoff, to the financial advisory firm Castalia Partners and to an individual at private equity firm Austen Grove Capital, for a minority investment in Eletson Gas that contains an entry for "Murchinson's Exit Payment" that contemplates repayment of the working capital, $23 million from the sale of the vessels and a residual amount of $2.2 million. Dkt. No. 137-1 at 7.  The document also refers to an August 13 engagement letter between Kertsikoff and Castalia Partners "in regards to capital raising for Eletson Gas."  *Id.* at 5.

All in all, the documents tend to contradict Eletson's position in the arbitration that it had exercised the option in March 2022.

The undisputed evidence before the Court at the time of its decision on Levona's motion to amend showed that Levona learned in June 2023 of the existence of a document produced to the petitioning creditors in Eletson's bankruptcy case, including to Levona affiliate Pach Shemen LLC, that contradicted Eletson's position that it had exercised the option in March 2022.  Dkt.

3

No. 162 at 8.  However, the document was the subject of a protective order in that bankruptcy

proceeding and not available to Levona.  In October 2023, Levona moved the bankruptcy court

to modify its protective order to allow Levona to access what, by that point, Levona thought

were four documents produced in the bankruptcy proceeding that should have been produced in

the arbitration proceeding.  *Id.* at 11.  Eletson fought Levona's right to be able to see the

documents even after Levona filed a claim in the bankruptcy proceeding and signed the

Protective Order.  *Id.* at 13–14.  It was not until July 2024 that the Bankruptcy Court modified its

Protective Order for the limited purpose of allowing Levona to use the documents in this Court.

*Id.* at 16.

**DICUSSION**

The Court addresses each set of motions in turn.

## I.    Motion for Walsh Act Testimony of Peter Kanelos

At Dkt. No. 388, Intervenors move for an order, pursuant to 28 U.S.C. § 1783, for

permission to serve a subpoena compelling the testimony of Kanelos and the production of

documents.  Dkt. No. 388.  Intervenors seek the following categories of documents from

Kanelos:

> 1. All Documents and Communications concerning Murchinson's, any Murchinson Affiliate's or Murchinson representative's awareness or knowledge of the existence of any one or more of the At-Issue Documents or their contents, including but not limited to the date upon which Murchinson, any Murchinson Affiliate and/or Murchinson representative first became aware of the existence of any one or more of the At-Issue Documents or their contents.
>
> 2. All Documents and Communications concerning the existence of or contents of any one or more of the At-Issue Documents shared with any representative, agent, or affiliate of Levona or Pach Shemen or Murchinson or Nomis Bay or BPY, including without limitation, Adam Spears, Mark Lichtenstein, Eliyahu Hasset, Joshua Fenttiman, Marc Bistricer, or any Murchinson Affiliate.
>
> 3. All Documents and Communications concerning the existence of or contents of any one or more of the At-Issue Documents between Adam Spears, Mark

4

Lichtenstein, or any other person with knowledge thereof, on the one hand, and Murchinson Counsel on the other.

4. All Documents and Communications concerning the existence of or contents of any one or more of the At-Issue Documents exchanged with or by any person or entity other than Murchinson.

5. All Documents and Communications concerning the Audio Recording or the Audio Recording Transcript.

6. All Documents and Communications concerning any other recording of Eletson personnel, including but not limited to any transcripts of any such recordings.

7. All Documents and Communications reflecting any knowledge or awareness by Eletson or its counsel of any of the At-Issue Documents during the Arbitration.

Dkt. No. 390-4 at 9–10 .

"Audio Recording" is defined as the recording of the conversation between Vasilis Kertsikoff and Adam Spears, dated July 15, 2022.  Dkt. No. 390-4 at 2.  "Murchinson Affiliate" is defined as "all affiliates of Murchinson, including, but not limited to Levona, Nomis Bay, BPY and Pach Shemen.  *Id.* at 4.  "Murchinson Counsel" is defined as all counsel to Murchinson and any Murchinson Affiliate in any action involving Eletson, including but not limited to, Frankel, Rubin, Klein, Pyane & Pudlowski, P.C.; Quinn Emmanuel Urquhart & Sullivan, LLP; Togut, Segal & Segal LLP; Dechert LLP; Rahman Ravelli Solicitors; and Conveyers Dill & Pearman.  *Id.*

The Walsh Act, 28 U.S.C. § 1783, provides in pertinent part:

A court of the United States may order the issuance of a subpoena requiring the appearance as a witness before it, or before a person or body designated by it, of a national or resident of the United States who is in a foreign country, or requiring the production of a specified document or other thing by him, if the court finds that particular testimony or the production of the document or other thing by him is necessary in the interest of justice, and . . . if the court finds, in addition, that it is not possible to obtain his testimony in admissible form without his personal appearance or to obtain the production of the document or other thing in any other manner.

5

28 U.S.C. § 1783(a); *see In re Petrobras Sec. Litig.*, 2016 WL 908644, at *1 (S.D.N.Y. Mar. 4, 2016). Section 1783(b) requires that the subpoena be served in accord with the Federal Rules of Civil Procedure and that the serving party pay the necessary travel costs of the witness, which are to be determined by the court.

Section 1783 lays out a two-part test for issuing a subpoena to an American residing abroad. First, the material sought must be "necessary in the interest of justice." 28 U.S.C. § 1783. Second, the court must find that there is no alternative method of obtaining the material that would render the material admissible at trial. *Id*.

"While there is a 'surprising shortage of pertinent case law involving issuance of a subpoena under § 1783,' those courts that have examined the Act in discovery disputes have generally read the 'interest[] of justice' element in the context of 'the predicate theory of federal pre-trial discovery—the production of relevant material essential for the full and fair litigation of a cause of action.'" *S.E.C. v. Sandifur*, 2006 WL 3692611, at *3 (W.D. Wash. 2006) (quoting *Estate of Ungar v. Palestinian Authority*, 412 F. Supp. 2d 328, 333 (S.D.N.Y. 2006)). To assess whether the issuance of a subpoena is in the interest of justice, courts consider the totality of the circumstances. *See Ungar*, 412 F. Supp. 2d at 333–34. "Section 1783's legislative history explains that when considering the propriety of the issuance of a subpoena under § 1783, the court should consider a multitude of factors, including 'the nature of the proceedings, the nature of the testimony or evidence sought, the convenience of the witness or the producer of the evidence, the convenience of the parties, and other facts bearing upon the reasonableness of requiring a person abroad to appear as a witness.'" *Id.* (quoting S. Rep. No. 88-1580, at 10 (1964)); *see also* Hans Smit, *International Litigation Under the United States Code*, 65 Colum. L. Rev. 1015, 1036–37 (1965) ("The purpose of th[e] [interest of justice] requirement is to

impress upon the court the need for recognizing that a subpoena addressed to an American national or resident who is abroad should issue only if the interest in having him produce the evidence outweighs his interest in not being disturbed abroad"). A court should "subpoena a United States citizen outside the jurisdiction of the United States when a 'compelling reason' exists." *Ungar*, 412 F. Supp. 2d at 334. When performing this test, "the 'interest of justice' element must be considered in light of the circumstances of the particular case and, more importantly, the posture of the case when the issue arises." *Klesch & Co. Ltd. V. Liberty Media Corp.*, 217 F.R.D. 517, 523 (D. Col. 2003).

Intervenors offer evidence that Kanelos is a United States citizen who is currently residing in Greece. *See* Dk. No. 390 ¶ 3. As to the question of relevance, they argue that the requested documents and testimony constitute crucial evidence. Dkt. No. 389 at 5. Kanelos is included in each of the email exchanges which constitute the At-Issue Documents, as either the sender or the recipient. He would be in a position to testify to their meaning. He also would be in a position to testify to whether the At-Issue Documents or the information in them was shared with Levona. *Id.* at 5–6. The arbitrator found that Kanelos was providing Gas's confidential information to Levona or to its parent Murchinson. *Id.* at 4–5. In addition to the question whether Kanelos shared the At-Issue Documents with Levona, Intervenors argue that they are entitled to probe whether the At-Issue Documents represent an effort by Kanelos "to provide Levona and/or Murchinson with additional consideration despite the exercise of the purchase option." *Id.* at 5.

Levona does not dispute that Kanelos is a United States citizen, that he is currently resident outside of the United States, or that it is not possible to obtain his testimony in admissible form without his personal appearance. Dkt. No. 417. Nor, for the most part, do they

dispute that his testimony or the production of some documents from him would be "necessary in the interest of justice." 28 U.S.C. § 1783(a). Rather, they argue that the following categories of documents, if they exist, are irrelevant to the issues on which the Court permitted discovery: "documents relating to the irrelevant audio recording (ECF 390-4 at RFP 5); any other recordings that may exist . . . ; (*id.* at RFP 6) when Murchinson became aware of the Withheld Documents (*id.* at RFP 1); and communications between Murchinson and Murchinson's counsel (*id.* at RFP 3)." *Id.* at 3.

With a few exceptions, Kanelos's testimony and his production of documents are necessary in the interest of justice. The disposition of this motion for vacatur will turn, in part, upon whether the At-Issue Documents reflect, as Levona contends, an effort by Eletson to purchase the Preferred Interests of Gas that it did not own or rather, to the contrary, a corrupt arrangement between Kanelos and Levona and/or Murchinson to defraud Eletson. It will also turn upon whether Kanelos secretly and improperly provided the seemingly confidential internal Eletson documents to Levona and/or Murchinson and thus whether Levona would have had independent access to the documents notwithstanding the Protective Order in the Bankruptcy case. Kanelos is not a minor or peripheral witness. Each of the At-Issue Documents was either sent to him or sent by him. Intervenors (and Levona) are entitled to depose Kanelos on the meaning of those documents. Kanelos is also central to Intervenors' defense. *See Balk v. New York Institute of Technology*, 974 F.Supp.2d 147, 156–67 (E.D.N.Y. 2013) (holding compulsion of testimony in the "interest of justice" under Section 1783 where recipient was "at the center of many of the allegations asserted" and "[i]n light of the numerous allegations directly involving [the recipient] with the claims at issue"). The arbitrator found that there was evidence that Kanelos breached his duties to Eletson in favor of Murchinson. Dkt. No. 41-1 ("Final Award")

at 45 n.6, 51. In the face of that finding, the Court cannot say that questions and requests directed to whether Kanelos provided the confidential At-Issue Documents to Levona or Murchinson or any Murchinson Affiliates or lawyers would be a fishing expedition.

Requests 5 and 6 are the exceptions. In ruling upon the motion to amend, the Court concluded that evidence of the Audio Recording between Kertsikoff and Spears did not defeat Levona's claim for fraud in the arbitration or for equitable tolling. Dkt. No. 162 at 35–36. Levona obviously knew of the Audio Recording. It possessed the recording; Spears also was on the recording. The Court previously determined, however, that while Levona "may have had a recording that was corroborative of the evidence Levona ultimately uncovered that Eletson allegedly fraudulently withheld during the arbitration, that has no bearing on whether Levona knew that Eletson committed fraud during the arbitration." Dkt. No. 162 at 35–36. Kertiskoff disputed Spears' interpretation of the relevant exchange. Final Award at 39; Dkt. No. 162 at 6–7. The relevance of the At-Issue Documents was in part that they called into question the veracity of Kertsikoff's testimony before the arbitrator. Dkt. No. 162 at 16. Intervenors have not satisfied their burden to show how documents and communications concerning the Audio Recording, the Audio Recording Transcript, or "any other recording," is necessary in the interest of justice.

Intervenors have not established that it is not possible to obtain Kanelos' testimony in admissible form without the Court taking the step of subpoenaing him to travel from a foreign country to appear in the United States to give testimony. Intervenors simply assert, without providing evidence, that, other than a subpoena under Section 1783, there are no other viable means of obtaining Kanelos's testimony because Kanelos did not appear at the underlying Arbitration and because, were they to attempt to obtain the evidence via the procedures of the

Hague Evidence Convention (presumably with a letter of request to a Greek Court), the process

of obtaining Mr. Kanelos's evidence would likely extend beyond the close of discovery. Dkt.

No. 389 at 6. The text of § 1783, however, requires a more thorough showing of impossibility

than Intervenors offer. Intervenors' argument that pursuing Mr. Kanelos's testimony via the

procedures of the Hague Convention is infeasible is belied by their simultaneous motions for this

Court to issue letters of request to various foreign courts pursuant to the Hague Convention. *See*

Dkt Nos. 377, 380, 383. Intervenors also have not identified any efforts they have made to have

Kanelos appear voluntarily for a deposition either in the foreign country where he is located or, if

a deposition is not practicable there, at a nearby location, presumably at Intervenors' expense.

*See, e.g.*, *Balk*, 974 F.Supp.2d at 160–61 (requiring the deposition to take place in person and in

the United States only after failed attempts to depose third party abroad and by phone);

*MedImmune, LLC v. PDL Biopharma, Inc.*, 2010 WL 2179154, at *2 (N.D. Cal. May 27, 2010)

(requiring the deposition to take place in the United States after third party refused to be

voluntarily deposed abroad); *Teller v. Helbrans*, 2019 WL 3779863, at *2 (E.D.N.Y. Aug. 12,

2019) (quashing a Walsh Act request because movant failed to show why a video deposition or a

deposition abroad were not possible). A subpoena to a United States citizen located abroad

under the Walsh Act should be the last option, not the first option. In the absence of any

evidence that other means of obtaining Kanelos's testimony are impracticable, the Court cannot

grant Intervenors' request for a subpoena.[2]

## II.    Letters of Request for Levona's Lawyers, Nomis Bay and BPY

At Dkt. Nos. 377, 380, 383, and 386, Intervenors ask the Court, pursuant to Federal Rule

of Civil Procedure 28(b)(2), 28 U.S.C. § 1781, and Chapter 1 of the Hague Convention on the

---

[2] Intervenors may renew this request upon a proper evidentiary foundation.

Taking of Evidence Abroad in Civil or Commercial Matters, March 18, 1970, T.I.A.S. No. 7444,

23 U.S.T. 255, to sign letters rogatory to the Registrar of the Supreme Court in the British Virgin

Islands, the Senior Master of the Process Section of Royal Courts of Justice in London, the

Registrar of the Supreme Court of Bermuda, and the Ontario Superior Court of Justice for

documents and communications of the following entities regarding their awareness and

knowledge of the At-Issue Documents during the time period from January 1, 2021 through and

including July 3, 2024: Conyers Dill & Pearman, Dkt. No. 379-1 (BVI); Rahman Ravelli

Solicitors, Dkt. No. 382-1 (UK); Nomis Bay Ltd. and BPY Limited, Dkt. Nos. 385-1, 385-2

(Bermuda); and Murchinson Ltd., Dkt. No. 386-2 (Canada).[3]

Conyers Dill & Pearman was retained to represent Levona in an *ex parte* enforcement

proceeding brought by Eletson in the British Virgin Islands in March 2024.  Dkt. No. 211 at 2;[4]

No. 378 at 2.  Rahman Ravelli Solicitors is Levona's counsel in its London-based arbitration

against Gas.  Dkt. No. 211 at 2; Dkt. No. 381 at 2.  Nomis Bay Ltd. and BPY Limited are the two

Bermuda-based special purpose vehicles managed and controlled by Murchinson that own

Levona.  Dkt. No. 384 at 2.  Murchinson is a Canadian hedge fund that owns and controls Nomis

Bay Lt. and BPY Limited, and through them, owns and controls Levona.  Dkt. No. 387 at 2.

Intervenors seek the following from international counsel to Levona, Conyers Dill &

Pearlman (BVI) and Rahman Ravelli (UK):

1. All Documents and Communications concerning Your awareness or knowledge of the
   existence of any one or more of the At-Issue Documents or their contents, including
   but not limited to the date upon which You first became aware of the existence of any
   one or more of the At-Issue Documents or their contents.

---

[3] In addition, the requests with respect to Nomis Bay, BPY Limited, and Murchinson seek documents relating to the Audio Recording.

[4] Levona has elected to rely on its prior briefing in connection with the requests for letters of request at Dkt. Nos. 377, 380 and 383.  *See* Dkt. No. 394.

2. All Documents and Communications concerning any known awareness or knowledge by Levona, Levona's Affiliates, or Levona's representatives of the existence of any one or more of the At-Issue Documents or their contents, including but not limited to the date upon which Levona, Levona's Affiliate, or Levona's representative first became aware of the existence of any one or more of the At-Issue Documents or their contents.

3. All Documents and Communications between You and Levona, Levona's Affiliates, or Levona's representatives concerning the existence of any one or more of the At-Issue Documents or their contents, including but not limited to the date upon which any such Levona, Levona's Affiliate, or Levona's representative first became aware of the existence of any one or more of the At-Issue Documents or their contents.

4. All Documents and Communications between You and Levona, Levona's Affiliates, or Levona's representatives conveying any one or more of the At-Issue Documents or their contents, including but not limited to the date upon which any such Levona, Levona's Affiliate, or Levona's representative first became aware of the existence of any one or more of the At-Issue Documents or their contents.

5. All Documents and Communications concerning the knowledge or existence of or contents of any one or more of the At-Issue Documents shared with any representative, agent, or affiliate of Levona or Pach Shemen or Murchinson or Nomis Bay or BPY, including without limitation, Adam Spears, Mark Lichtenstein, Eliyahu Hasset, Joshua Fenttiman, Marc Bistricer, or any Levona Affiliate.

6. All Documents and Communications concerning the knowledge or existence of or contents of any one or more of the At-Issue Documents between Adam Spears, Mark Lichtenstein, or any other person with knowledge thereof, on the one hand, and Levona Counsel on the other. For the avoidance of doubt, this request does not seek privileged parts of Communications solely among the attorneys of the firm.

7. All Documents and Communications reflecting any knowledge or awareness by Levona or its counsel of any of the At-Issue Documents during the Arbitration and/or prior to the issuance of the Award.

Dkt No. 382-1 at 16–17; Dkt. No. 379-1 at 16.

Intervenors seek from Nomis Bay and BPY:

1. All Documents and Communications concerning the hedge fund's awareness or knowledge of the existence of any one or more of the At-Issue Documents or their contents, including but not limited to the date upon which the hedge fund first became aware of the existence of any one or more of the At-Issue Documents or their contents.

2. All Documents and Communications concerning any other of the hedge funds' affiliates or representatives' awareness or knowledge of the existence of any one or more of the At-Issue Documents or their contents, including but not limited to the date upon which any such Affiliate or representative first became aware of the existence of any one or more of the At-Issue Documents or their contents.

3. All Documents and Communications concerning the existence of or contents of any one or more of the At-Issue Documents shared with any representative, agent, or affiliate of Levona or Pach Shemen or Murchinson or Nomis Bay or BPY, including without limitation, Adam Spears, Mark Lichtenstein, Eliyahu Hasset, Joshua Fenttiman, Marc Bistricer, or any Nomis Bay Affiliate.

4. All Documents and Communications concerning the existence of or contents of any one or more of the At-Issue Documents between Adam Spears, Mark Lichtenstein, or any other person with knowledge thereof, on the one hand, and the hedge fund on the other.

5. All Documents and Communications concerning the existence of or contents of any one of more of the At-Issue Documents shared with any person other than the hedge fund.

6. All Documents concerning Peter Kanelos (including without limitation any attorney, agent, representative) from October 2020 to present, including without limitation Documents reflecting or concerning Communications between the hedge fund or any Affiliate, on the one hand, and Peter Kanelos (including without limitation any attorney, agent, representative) on the other.

7. All Documents and Communications concerning the Audio Recording or the Audio Recording Transcript.

8. All Documents and Communications concerning any other recording of Eletson personnel, including but not limited to any transcripts of any such recordings.

Dkt. Nos. 385-1 at 15–16; Dkt. No. 385-2 at 15–16.

Intervenors seek from Murchinson and three individuals affiliated with Murchinson

(Adam Spears, Mark Lichtenstein, and Marc Bistricer) largely the same materials they seek from

Nomis Bay and BPY, with two substantive additions:

3. All Documents and Communications concerning the existence of or contents of any one or more of the At-Issue Documents between Adam Spears, Mark Lichtenstein, or any other person with knowledge thereof, on the one hand, and Murchinson Counsel on the other. For the avoidance of doubt, this request does not seek privileged parts of Communications solely among attorneys.

8. All Documents and Communications reflecting any knowledge or awareness by Eletson or its counsel of any of the At-Issue Documents during the Arbitration.

Dkt. No. 386-2 at 8–9.

"Discovery of persons or documents outside the United States may be governed by the Federal Rules of Civil Procedure, the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters . . . or both." *Gap, Inc. v. Stone Int'l Trading, Inc.*, 1994 WL 39651, at *1 (S.D.N.Y. 1994). "All courts of the U.S., both trial and appellate, have inherent authority to issue letters rogatory," including in order to request the assistance of foreign courts in discovery. 8A C. Wright & A. Miller, Federal Practice and Procedure § 2083 (3d ed. 1998); *see also U.S. v. Staples*, 256 F.2d 290, 292 (9th Cir. 1958). Here, Intervenors seek a Letter Rogatory for assistance from courts in England, which is a party to the Hague Evidence Convention, as well as Letters of Request from courts in the British Virgin Islands, Bermuda, and Canada, which are not parties to the Convention.[5] There are minor procedural differences between these types of letters. *See* Restatement (Third) of Foreign Relations Law § 473, reporters' note 1. Nevertheless, "the text of the Evidence Convention, as well as the history of its proposal and ratification by the United States, unambiguously supports the conclusion that it

[5] Intervenors mistakenly moved for Letters of Request under the Hague Evidence Convention for the entities in the British Virgin Islands and Bermuda, *see* Dkt. Nos. 377, 383, neither of which countries are parties to the Convention, *see* Hague Conference on Private International Law, https://www.hcch.net/en/instruments/conventions/status-table/. However, the differences are not meaningful for the purposes of these motions, as the motions seek discovery "in a foreign country under a letter of request, whether or not captioned a 'letter rogatory,'" *Villella v. Chem. & Mining Co. of Chile Inc.*, 2019 WL 171987, at *2 (S.D.N.Y. Jan. 11, 2019) (cleaned up); *Pearlstein v. BlackBerry Limited*, 332 F.R.D. 117, 120 n.1 (S.D.N.Y. 2019) ("'Letters of request' are synonymous with 'letters rogatory.'"), and because comity concerns which animate this decision are not limited to Hague signatories, *see Netherby Ltd. v. Jones Apparel Grp., Inc.*, 2005 WL 1214345, at *1 (S.D.N.Y. May 17, 2005) ("No higher standard is required for issuing letters rogatory that seek the cooperation of the Canadian courts in obtaining equivalent discovery in that country.").

was intended to establish optional procedures that would facilitate the taking of evidence abroad." *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for the Southern Dist. of Iowa*, 482 U.S. 522, 538 (1987). The standards under which the Court considers the motions for letters rogatory does not, therefore, substantively differ across the four jurisdictions involved.

"Rule 28(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1781(b)(2) authorize federal courts to issue letters rogatory that enable a U.S. litigant to obtain non-party discovery from a foreign entity." *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 2023 WL 5322019, at *1 (S.D.N.Y. Mar. 8, 2023) (quoting *Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 841 F. Supp. 2d 769, 776 (S.D.N.Y. 2012)). "[T]he responsibility of th[e] Court is to determine whether the letter of request should be issued given the principles of discovery" under Federal Rule of Civil Procedure 26. *Pearlstein*, 332 F.R.D. at 122; *see Lantheus Med. Imaging, Inc.*, 841 F. Supp. 2d at 776 ("In considering the issuance of letters rogatory, U.S. courts apply the discovery principles contained in Rule 26."). Rule 26(b)(1) permits discovery into "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Relevance is . . . to be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense." *Mortg. Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.*, 2016 WL 3906712, at *3 (S.D.N.Y. July 14, 2016) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *see also Hoxhaj v. Michael Cetta, Inc.*, 2022 WL 1664963, at *1 (S.D.N.Y. May 25, 2022); *SEC v. Rayat*, 2022 WL 1423300, at *2 (S.D.N.Y. May 5, 2022). "Although the party seeking the application of the Hague Convention procedures bears the burden of persuasion, that burden is not a heavy one." *Villella v. Chem. & Mining Co. of Chile Inc.*, 2018 WL 2958361, at *3 (S.D.N.Y. June 13, 2018) (cleaned up).

"In determining whether to apply the Hague Convention's discovery procedures or those of the Federal Rules, courts should make a particularized comity analysis, taking into account the specific facts involved, the sovereign interests at stake, and the likelihood that resort to the convention's procedures will prove effective." *Gap, Inc. v. Stone Int'l Trading, Inc*., 1994 WL 38651, at *1 (S.D.N.Y. Feb. 4, 1994) (citing *Societe Nationale Industrielle Aerospatiale v. U.S. District Court for the Southern District of Iowa*, 482 U.S. 522, 543–44 (1987)).  Among the factors the court must consider in this particularized comity analysis is "the availability of alternative means of securing the information."  *Societe Nationale*, 482 U.S. at 522 n.28.

Intervenors have not met their burden of persuasion with respect to the issuance of letters of request directed to Levona's counsel in the United Kingdom and British Virgin Islands. Intervenors seek documents in the possession of Conyers and Rahman Ravelli that would "show Levona's awareness of the At-Issue Documents which would cut against Levona's application for equitable tolling," Dkt. Nos. 381 at 4, 378 at 4, further arguing that to the extent the law firms are "communicating with Levona's affiliates, such as Murchinson or Pach Shemen that would also be probative," Dkt. Nos. 381 at 5, 378 at 4.  But the requests to be propounded on foreign counsel are in substance duplicative of the discovery propounded on Levona itself, *see* Dkt. No. 399, 182-1, as well as Murchinson, *see* Dkt. No. 386-2.  Levona objects, with reason, that the motions "seek privileged information and attorney work product in a context where there is no reason to believe that the applicable privileges have been waived."  Dkt. No. 211 at 2.  Serving discovery on opposing counsel is disfavored.  *See Bennett v. Cuomo*, 2024 WL 80271, *9 (S.D.N.Y. Jan. 8, 2024).  Moreover, Levona is the real party in interest, and Intervenors have made no showing that, to the extent that the documents are relevant and not privileged, the discovery sought through letters of request is not available from Levona itself as party discovery

rather than by using the offices of a foreign court. The Second Circuit has held that Section 1782 should not be interpreted to allow a litigant to ask a United States court for documents from a third party for use in a foreign proceeding. *See Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 247 (2d Cir. 2018) (holding with respect to Section 1782 that discovery should be requested in the first instance from the real party in interest); *Schmitz v. Bernstein Liebhard & Lifshitz, LLP.*, 376 F.3d 79, 85 (2d Cir. 2004) ("Although technically the respondent in the district court was Cravath, for all intents and purposes petitioners are seeking discovery from DT, their opponent in the German litigation. *Intel* suggests that because DT is a participant in the German litigation subject to German court jurisdiction, petitioner's need for § 1782 help 'is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad.'" (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 164 (2004)). By parity of reasoning, this Court should not ask a foreign court to obtain for use in proceedings before it evidence that it can compel the parties before it to produce. In sum, Intervenors have offered no evidence that foreign counsel would have any relevant, non-duplicative documents, including because Conyers was not retained until March 2024, well after Levona is purported to have become aware of the At-Issue Documents. *See* Dkt. No. 162, at 10, 14. Intervenors have offered no reason for this Court to burden a foreign authority with the obligation to request and supervise discovery when the requested discovery, if it is relevant and nonprivileged, can be obtained in the United States from parties subject to jurisdiction in the United States.

Intervenors have likewise failed to meet their burden of persuasion with respect to Nomis Bay and BPY. Intervenors argue that discovery against the two Bermuda-based entities is appropriate because Levona is a subsidiary of the two entities and the alleged bribes from

Murchinson and/or Levona were wired to Mr. Kanelos from Nomis Bay and BYP, such that the entities may possess "critical documents . . . regarding communications with Mr. Kanelos and Levona's knowledge of the Documents to rebut Levona's allegations of fraud in this proceeding." *See* Dkt. No. 384 at 2. However, Intervenors do not dispute that Nomis Bay and BPY are special purpose investment vehicles that do not have employees. Dkt. No. 211 at 3. Though Intervenors urge that "[t]o the extent that Nomis Bay and BPY were communicating with Mr. Kanelos, that too would be probative," Dkt. No. 384 at 5, they have offered no explanation of how shell entities with no employees can "communicate" in any sense that would not be captured by the requests to Levona and Murchinson. Nor have they demonstrated how documents regarding the alleged bribes from Murchinson and/or Levona would be probative as to whether Levona itself had access to the At Issue Documents independent of the access it was able to obtain through the bankruptcy court. To the extent documents belonging to Nomis Bay and BPY are relevant and responsive, they would be in the possession, custody, or control of Levona and Murchinson, both of which have or will receive discovery requests. Burdening the Registrar of the Supreme Court of Bermuda with letters rogatory respecting shell companies when the real party in interest is before the Court flies in the face of the comity concerns animating *Societe Nationale*, 482 U.S. at 522 n.28, and the Court accordingly declines to grant such requests.

To that point, however, the comity concerns which weigh against granting the letters of request relating to Levona's counsel and shell companies do not have the same force as against the letter of request relating to Murchinson. It is undisputed that Murchinson created Levona as a special purpose entity to acquire and hold the preferred shares of Gas, as a subsidiary of the intermediate entities, Nomis Bay and BPY. *See* Dkt. No. 387 at 2 (citing Final Award at 20).

Mark Lichtenstein, a representative of Levona, is also General Counsel of Murchinson. *Id.*

Though Levona argues that "there is no plausible basis on which Murchinson would have

relevant non-duplicative information," Dkt. No. 417 at 2, Levona itself, in its original responses

to Eletson's discovery requests, indicated that Levona's custodial documents are held by

Murchinson and are merely a subset of Murchinson's records, *see* Dkt. No. 182-2 at 9, 15–16

("Mark Lichtenstein's Levona-related emails are maintained in a non-segregated Microsoft 365

cloud account using the @murchinsonltd.com email domain. His account includes non-Levona

materials, including but not limited to non-Levona materials regarding his work for Pach Shemen

and Murchinson."). Levona has not established that all document requests to Murchinson are

duplicative of those made to Levona. Murchinson is not a shell company like Nomis Bay and

BPY, but an employer of multiple individuals, including Adam Spears, Mark Lichtenstein, and

Marc Bistricer, whose conduct and communications are central to this case. *See* Dkt. No. 387 at

2, 4. The fact that the At-Issue Documents were not "sent by or addressed to Murchinson," Dkt.

No. 417, does mean that Murchinson employees, in their capacity as Murchinson employees,

could not have had communications with Peter Kanelos or internally regarding the At-Issue

Documents which would not be available to Levona as the subsidiary. The At-Issue Documents

discuss proposals that would be made to Murchinson; even if the representatives of Intervenors

who are on the documents did not discuss the proposals with Murchinson,[6] the Arbitrator found

that Kanelos breached his duties towards Gas by providing information to Murchinson. Final

Award at 45 n.6, 51. Intervenors have proffered a basis for a request to Murchinson to determine

whether, apart from the bankruptcy, it had access to the At-Issue Documents, such that they

---

[6] Intervenors proffer no evidence that they shared the At-Issue Documents with Murchinson or
Levona, and the efforts that Eletson took in the bankruptcy to shield the documents from Levona
tend to suggest that Intervenors did not share those documents.

could have been provided to Levona without violating the protective order in that proceeding. Accordingly, the Court will sign a letter rogatory respecting Murchinson and the named individuals for Intervenors to discover whether Murchinson received the At-Issue Documents or whether the proposals made in them were extended to Murchinson through other means. However, for the same reasons elaborated above with respect to Peter Kanelos, RFPs 6 and 7 relating to the Audio Recording and audio recordings generally are denied as Intervenors have not satisfied their burden to show how documents and communications concerning the Audio Recording, the Audio Recording Transcript, or "any other recording," is relevant to the matter at hand.

Perhaps needless to say, the requests to Murchinson must be limited to documents and communications regarding the At-Issue documents prior to July 3, 2024. And the requests must necessarily exclude those documents and communications relating to knowledge gained by Murchinson as a result of Pach Shemen's participation in the bankruptcy proceeding. The parties will meet and confer on a revised Request consistent with the limitations set forth in this Memorandum and Order and provide that Request to the Court.

## III.    Party Discovery

In Dkt. No. 376, Intervenors move to join in the motion for discovery previously filed on behalf of Eletson, Dkt. No. 182, seeking an order compelling for discovery the production of a variety of documents and other materials allegedly in the possession, custody, and control of Levona. *See* Dkt. Nos. 182, 182-1. Levona argues that the Court did not authorize Intervenors to join discovery motions other than those for international discovery from third parties, and that regardless, Intervenors' purported joinder is improper because Intervenors chose to serve their own discovery requests rather than joining Eletson's, and should not therefore be allowed to "avoid the ordinary meet-and-confer process and obtain what would effectively be an advisory

ruling on a motion they have not brought and may never bring as to discovery requests they did not serve."  Dkt. No. 394 at 2.

Intervenors' request is premature as presently framed and is denied.  The motion at Dkt. No. 182 seeks to compel the production of documents pursuant to a document request served by Eletson.  It is accompanied by the requisite certification that counsel for Eletson met and conferred with counsel for Levona.  *Id*. at 4.  The document request that is the subject of the motion at Dkt. No. 182, however, has been withdrawn by Eletson.  *See* Dkt. Nos. 391, 405. Intervenors have no right to move to compel the production of documents in response to a request served by another party, much less a party who no longer seeks the documents it once requested.  *See Kingsway Fin. Servs., Inc. v. PriceWaterhouse-Coopers LLP*, 2009 WL 72165, at *3 (S.D.N.Y. Jan. 9, 2009) (noting that while Rule 37(a)(3)(A) provides that "any other party" may move to compel the automatic disclosures required of all litigants by Rule 26(a), only the "party seeking discovery" may bring a motion to compel an answer, designation, production, or inspection under Rule 37(a)(3)(B)); *U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*, 2020 WL 9549505, at *1 (S.D.N.Y. Nov. 30, 2020) ("Since the Trustee did not serve the RFAs, however, it has no standing to seek an order compelling the TAM Parties to respond to them." (citing *Kingsway*, 2009 WL 72165, at *3); *In re Urethane Antitrust Litig.*, 237 F.R.D. 454 (D. Kan. 2006) (holding that non-settling defendants lacked standing to seek enforcement of already-settled defendant's unresolved discovery requests).

Intervenors have served their own set of discovery requests, which, according to Intervenors, are inclusive of but broader than those originally served by Eletson.  *See* Dkt. No. 399.[7]  Levona has a right to respond to Intervenors' document requests.  It is not bound by its

---

[7] *Id.* ("[T]he totality of the Intervenors' requests faithfully mirror (1) the Eletson-propounded

answers to the document requests of another party; it may expand upon any previously made objections or withdraw those objections.  And following the service of responses and before making any motion to compel, Intervenors will be obliged to attempt to meet and confer.  They cannot rely upon the efforts of another party in connection with a different document request to satisfy their own obligations under Federal Rule of Civil Procedure 37.  *See* Fed. R. Civ. P. 37(a)(1) (requiring that a motion to compel must include "a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action"); 8B C. Wright & A. Miller, Federal Practice and Procedure, § 2285 (3d ed. 2025) ("The courts have vigorously implemented this requirement, frequently denying motions to compel because there were insufficient efforts to avoid the need for a motion altogether.").

The parties indicate that June 12, 2025, was the date for Levona's responses to the Intervenors' document requests.  Dkt. No. 394.  June 12, 2025, has now passed.  Assuming that Levona has interposed objections and Intervenors want to press a motion to compel, they may do so (and they may incorporate in their motion arguments previously made by Eletson), but they may do so only after attempting to meet and confer.

## CONCLUSION

Intervenors' motion for a subpoena at Dkt. No. 388 is DENIED WITHOUT PREJUDICE TO RENEW.  Intervenors' motions for letters rogatory at Dkt. Nos. 377, 380, and 383 are DENIED.  Intervenors' motion for a letter rogatory at Dkt. No. 386 is GRANTED IN PART. Intervenors' motion at Dkt. No. 376 to join the motion to compel at Dkt. No. 182 is DENIED.

---

requests subject to ECF 182; and (2) the Levona-propounded requests to the Intervenors . . . and our law firm. . . Thus, the prior briefing at ECF 182 covers all of Category (1).").

The Clerk of Court is respectfully directed to close Dkt. Nos. 182, 376, 377, 380, 383, 386, and 388.

SO ORDERED.

Dated: June 20, 2025
      New York, New York

LEWIS J. LIMAN
United States District Judge