**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ELETSON HOLDINGS, INC., and ELETSON CORP., <br><br> Petitioners/Cross-Respondents, <br><br> v. <br><br><br> LEVONA HOLDINGS LTD., <br><br> Respondent/Cross-Petitioner. <br><br> and <br><br> APARGO LIMITED, FENTALON LIMITED and DESIMUSCO TRADING LIMITED <br><br> Intervenors. | Civil Action No. 23-CV-7331 (LJL) <br><br> **[PROPOSED FORM OF ORDER FOR] REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE (LETTER ROGATORY) WITH RESPECT TO CANADIAN ENTITY** |

**TO THE ONTARIO SUPERIOR COURT OF JUSTICE:**

1.  The United States District Court for the Southern District of New York presents its compliments to the Ontario Superior Court of Justice, and respectfully requests international judicial assistance to compel the production of documents from a Canadian entity to be used in civil proceedings before this Court in the above-captioned matter. This Court requests the assistance described herein as necessary in the interests of justice.

**I.   SUMMARY OF ACTION**

2.  Petitioners Eletson Holdings, Inc. and Eletson Corporation (collectively, "Eletson") filed the above-captioned civil action on August 18, 2023, seeking to confirm the Arbitral Award that was issued on August 15, 2023 and September 29, 2023 by Hon. Ariel Belen of JAMS (together, the "Final Award"), in which Justice Belen made declarative findings in the Arbitration

Award in favor of Eletson, as well as Apargo Limited, Fentalon Limited, and Desimusco Trading Limited (collectively the "Preferred Shareholders"), and directed Respondent Levona Holdings Ltd. ("Levona") to pay compensatory damages, punitive damages, and attorney's fees, costs, and interest.

3. Levona filed a motion to dismiss and cross-petition to vacate the Arbitration Award on September 22, 2023. ECF 28.

4. On February 9, 2024, the Arbitration Award was partially confirmed and partially vacated. ECF 83 at 123 ("Confirmation Order") (amended April 19, 2024 at ECF 104). On February 14, 2024, the Court further amended the Confirmation Order to state that the award was confirmed "[s]ubject to the resolution of Levona's pending motion to vacate the award and its defense based on fraud in the arbitration." ECF 268.

5. On July 3, 2024, Levona sought leave to file an amended answer and cross-petition, citing that certain withheld documents provide good cause for the amendment, ECF 124 at 5, which was granted on September 6, 2024. ECF 162.

6. Levona asserts that at issue are documents, (the "At-Issue Documents", as defined in Appendix A hereto at 1) (some of which) were improperly withheld in the underlying Arbitration, giving rise to a potential fraud in the Arbitration.

7. On March 24, 2025, this Court recognized that the Preferred Shareholders "are the principal beneficiaries of the [Final] Award" (ECF 295 at 21) and thus "have a direct interest in whether the [Final] Award is confirmed, suspended, or vacated"; indeed, "[t]hey have the most direct stake in the Court's decision." *Id*.

8. On May 9, 2025, the Preferred Shareholders were granted leave to intervene for the purpose of opposing the motion to vacate. ECF 343.

9. Levona does not maintain its own document management system (ECF 182 at 1). Instead, Murchinson maintains possession and control over Levona's files (*Id.*). According to Levona, Murchinson stores Levona-related files in at least one folder titled "Levona" on Murchinson's server (*Id.*). Levona maintains there is a separation between the two entities and has asserted that it does not have custody or control over files stored on Murchinson's system. However, as Justice Belen found, "Levona, Murchinson, and Pach Shemen, are each alter egos of the other" (ECF 41-1 "Final Award" at 96). Justice Belen further found that, "Murchinson disingenuously hid behind shell entities to avoid producing relevant documents" and "[t]o this day, I am convinced that all relevant documents have not been produced by Murchinson/Levona" (ECF 41-1 ("Final Award") at 68). Both before and after November 2, 2021, when Levona/Murchinson entered the Company, Levona's activity was directed by Murchinson (Final Award at 21 (discussing a loan of $2 million to the Company, Spears states, "this took a lot of work to get Marc to agree to open his wallet"); ECF 125-1 at 3 (Spears admitting "I'm not the one in control here from our end" and "not making the decision")).). Accordingly, the Preferred Shareholders require the Letters Rogatory to obtain relevant Levona documents.

10. Additionally, several of the At-Issue Documents are e-mail communications involving Peter Kanelos, the Eletson employee who was then being "bribed" by Murchinson, "breach[ed]" his "fiduciary duties" to Eletson, was not acting in Eletson's interests, and who Justice Belen found had "every incentive to muddy the waters" (Final Award at 45 n.6, 51). Further, Justice Belen found that "Kanelos and Murchinson actively concealed their communications" (*id.* at 24) as "Kanelos intentionally used his personal gmail account" (*id.*) to hide communications, due to his being "aligned with Murchinson." *Id.* at 25.

3

11. All this makes Murchinson a central entity to the ongoing action between Eletson and Levona.

12. As the Court found in its order of June 20, 2025, Intervenors have proffered a basis for a request to Murchinson to determine whether, apart from the bankruptcy, it had access to the At-Issue Documents, such that they could have been provided to Levona without violating the protective order in that proceeding. ECF 435 at 19-20. Further, the Court also held that the fact that the At-Issue Documents were not "sent by or addressed to Murchinson," does mean that Murchinson employees, in their capacity as Murchinson employees, could not have had communications with Peter Kanelos or internally regarding the At-Issue Documents which would not be available to Levona as the subsidiary. *Id.* at 19.

## II. Assistance Requested

13. The assistance of the Ontario Superior Court of Justice in Toronto, Ontario, Canada, is requested because the evidence sought from a Canadian entity—Murchinson— and members of its management team personally involved in the disputed facts is relevant to discovery in this case and necessary for use at trial. The evidence is not otherwise obtainable by this Court at trial through this Court's compulsory process because the witness is a Canadian resident and outside the subpoena power of this Court. Therefore, this Court respectfully requests that, in the interests of justice, the Ontario Superior Court issue appropriate orders, subpoenas, or other compulsory processes necessary to compel Murchinson to produce requested documents and appear for a deposition.

### III. <u>Documents Requested</u>

#### A. Instructions

14. This request calls for the document production set forth in Schedule A hereto from an entity: Murchinson Ltd.

#### B. Entity and Associated Persons From Whom Documents and Deposition Testimony Is Requested

15. Murchinson Ltd.
    145 Adelaide Street West, Fourth Floor
    Toronto, Ontario Canada M5H 4E5

16. Individuals affiliated with Murchinson, Ltd: Adam Spears, Mark Lichtenstein, and Marc Bistricer
    c/o Murchinson Ltd.
    145 Adelaide Street West, Fourth Floor
    Toronto, Ontario Canada M5H 4E5

17. Murchinson and its management team is highly likely to possess knowledge of the At-Issue Documents underpinning Levona's cross motion to vacate. This Court therefore requests documents from Murchinson.

### IV. <u>Deposition Topics</u>

18. The subject matter of the document production as set forth in the attached Schedule A, including the At-Issue documents and:

(a) Murchinson's awareness of the creation and/or substance of the modelling, analysis, and/or development of potential proposals for the buy-out of Murchinson's alleged interests and repayment of its loan reflected in the At-Issue Documents prior to July 3, 2024, excluding Documents and Communications after June 28, 2023 relating to knowledge gained by Murchinson as a result of Pach Shemen's participation in the Bankruptcy Proceeding *In re Eletson Holdings Inc.,* 23-10322 (S.D.N.Y.);

5

(b) Documents and Communications received from, or transmitted to, the Frankel Rubin firm, or the Quinn Emmanuel firm, Concerning the creation and/or substance of the modelling, analysis, and/or development of potential proposals for the buy-out of Murchinson's interests and repayment of its loan reflected in the At-Issue Documents prior to July 3, 2024; and

(c) Documents and Communications received from, or transmitted to, Kanelos between June 1, 2022 and August 31, 2022.

### V.   Rights Under U.S. Law

19. Under the laws of the United States, a party has a privilege to refuse to produce documents if to do so would disclose a confidential communication between the party and his or her attorney that was communicated specifically for the purpose of obtaining legal advice and which privilege has not been waived. Other limited privileges on grounds not applicable here also exist, such as communications between doctors and patients, husband and wife, and clergy and penitent. Certain limited immunities are also recognized outside the strict definition of privilege, such as the limited protection of work product created by attorneys during or in anticipation of litigation.

### VI.   Reimbursement For Costs

20. The Preferred Shareholders are willing to reimburse the Ontario Superior Court of Justice for its costs incurred in the execution of this Court's Letter Rogatory.

### VII.   Reciprocity

21. In the furtherance of justice and by the proper and usual process of this Court, the United States District Court for the Southern District of New York assures the Ontario Superior

Court of Justice that it is willing to provide similar cooperation and assistance to the Ontario Superior Court of Justice in the event that Canada requests similar assistance.

Dated: _____          _____
                                         The Honorable Lewis J. Liman
                                         United States District Court Judge

# **APPENDIX A**

## SCHEDULE A

You are requested to produce to the attorneys for Apargo Limited, Fentalon Limited, and Desimusco Trading Limited (collectively "Preferred Shareholders") all Documents and Communications responsive to the Requests set forth below that are in your possession, custody, or control, wherever located or that can be obtained through reasonably diligent efforts.

## DEFINITIONS

1. The terms "all," "any," and "each" shall each be construed as encompassing any and all, as provided by Local Civil Rule 26.3(d).

2. The connectives "and," "and/or," and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Request all responses that might otherwise be construed to be outside of its scope.

3. "At-Issue Documents" shall mean the documents at issue, located at docket numbers 142-1, 142-2, 142-3, 142-4, 143-1, 448-1, 448-2, 448-3, 448-4, 448-5, and 448-6, in this proceeding, and shall include any substantially identical copies or versions of those documents. The Preferred Shareholders will attach the At-Issue Documents with any signed Letter Rogatory.

4. "Bankruptcy Proceeding" shall mean *In re Eletson Holdings Inc. et al*. Case No. 23-10322 (JPM).

5. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise), as defined in Local Civil Rule 26.3(c).

6. "Concerning," means relating to, referring to, describing, evidencing or constituting, as defined in Local Civil Rule 26.3(c).

7. "Document" is synonymous in meaning and equal in scope to the usage of the terms "documents or electronically stored information" in Federal Rule of Civil Procedure 34(a)(l)(A),

as provided in Local Civil Rule 26.3(c). A draft or non-identical copy constitutes a separate "Document" within the meaning of the term. "Document" shall also include all Electronically Stored Documents or Information (referred to as "ESI"). ESI includes but is not limited to all letters, memos, text messages, e-mails, instant messages, blackberry messages, photographs, Facebook messages, social media posts, blogs, google messages, and/or any other electronic or digital Communications.

8.      "Identify" with respect to Documents, means to give to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s). In the alternative, the responding party may produce the Documents, together with identifying information sufficient to satisfy Fed. R. Civ. P. 33(d).

9.      "Murchinson" "You" and "Your" shall mean Murchinson Ltd., together with its respective officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.

10.     "Pach Shemen" shall mean Pach Shemen LLC, together with its respective officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates.

11.     "Person" means any natural person or any entity, including, without limitation, any business or governmental entity, as defined in Local Civil Rule 26.3(c).

**INSTRUCTIONS**

1.      Each Request is intended to, and does, request that each and every particular and part thereof be answered with the same force and effect as if each particular and part were the subject of and were asked by a separate Request.

2.      Any term stated in the singular includes the plural and vice versa, as provided by Local Civil Rule 26.3(d).

3. Each Request shall be construed independently. No request shall be construed by reference to any other request for the purpose of limiting the scope of the answers to such request.

4. Whenever the conjunctive is used, it shall also be taken in the disjunctive, and vice versa, as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope, as provided by Local Civil Rule 26.3(d).

5. These Requests shall be deemed continuing requests so as to require supplemental responses if You obtain or discover additional information or Documents between the time of initial response or production and the time of final judgment. Such supplemental information and Documents must be produced promptly upon discovery. The Preferred Shareholders specifically reserve the right to seek supplementary responses and the additional supplementary production of Documents before final judgment.

6. Whenever a singular form appears, it shall be construed as plural, and vice versa as necessary to bring within the scope of the Request all Documents or responses that might otherwise be construed to be outside the scope.

7. When answering the Requests, You are requested to produce all Documents described below that can be located by a reasonable search of materials within Your possession, custody or control, or in the possession, custody or control of Your agents, relatives, attorneys, investigators, employees, vendors, experts, representatives, or any other person acting or purporting to act on Your behalf.

8. If You object to part of a Request, You must state the basis of Your objections in accordance with Rule 34 of the Federal Rules of Civil Procedure, and produce all Documents called for by the portion of the request to which You do not object.

9. In the event You object to any Request on the ground that it is overbroad and/or unduly burdensome, You shall respond to the Request as narrowed, to the least extent necessary, so as to render it not overbroad and/or unduly burdensome, and state specifically the extent to which You have narrowed the Request for purposes of its response.

10. If there are no Documents responsive to any particular document request, Your response shall state so in writing.

11. Any Document redacted or withheld from production on the basis of any claimed privilege or immunity shall be logged in accordance with Local Civil Rule 26.2. You must produce any and all portions of any responsive Document to which the claim of privilege or immunity does not apply.

12. In the event any Document responsive to these requests has been lost, discarded or destroyed, or is otherwise no longer in Your possession, custody, or control, that Document is to be identified by stating as completely as possible: (a) the authors or creators of the Document; (b) all persons who received copies of the Document, including the Document's indicated and blind copy recipients; (c) the present custodian of the Document; (d) the date of the Document; (e) the Document's date of destruction or discard, manner of destruction or discard, and the reason for destruction or discard; and (f) the persons authorizing and carrying out such destruction or discard.

13. Any electronic Document that is responsive to a Document Request shall be produced in its native file format.

14. Any hard copy Document that is responsive to a Document Request shall be produced in its original form. If the Document was stapled, clipped, or otherwise attached to other Documents, it shall be produced in such form. In producing such Documents, all Documents that are physically attached to each other shall be left so attached. Documents that are segregated or

separated from other Documents, whether by inclusion in binders, files, subfiles, or by use of dividers, tabs, or other methods, shall be left so segregated or separated.

15. Documents shall be produced with sufficient information to identify the files or repositories in which such responsive Documents are maintained in the normal course of business, including, for example, an index, key, code, or other means of ascertaining the source of the produced Documents.

16. Electronically stored information must be produced in both native and a searchable format.

17. All Documents that are produced in electronic format shall be provided with: (i) Group W "tiff" images and IPRO-ready OPT files; (ii) a Concordance DAT delimited file with boundaries; (iii) full text OCR, with OCR text files provided on a document level; and (iv) all metadata fields associated with each electronic Document. The Preferred Shareholders also request that all spreadsheets created in Microsoft Excel or a similar spreadsheet program be produced in their native format. The Preferred Shareholders reserve all rights to request that other Documents be produced in their native format if necessary. The following metadata fields shall also be produced with all Documents produced in electronic format:

| Field Name | Description |
|---|---|
| BEGDOC | An automatically-generated number assigned to the first page of the Document |
| ENDDOC | An automatically-generated number assigned to the last page of the Document |
| BEGATTACH | An automatically-generated number assigned to the first page of an attachment in a Document family |
| ENDATTACH | An automatically-generated number assigned to the last page of an attachment in a Document family |
| PARENT_ID | The beginning DOCID for a parent Document |
| ATTACH_IDS | The beginning DOCID for all attachments |

| | |
|---|---|
| ATTCOUNT | The number of attachments to an email |
| DOC_TYPE | The type of file from the header (*e.g.*, Microsoft Outlook, Excel, Word, etc.) |
| PARENT_CHILD | A vendor-populated field where "P" denotes a parent Document and "A" denotes an attachment |
| PAGECOUNT | The number of pages of each individual Document |
| FROM | The name(s) of the sender of an email, from the "From" field |
| TO | The name(s) of the recipient(s) of an email, from the "To" field |
| CC | The name(s) of any Person(s) to whom a copy of an email was sent, from the "CC" field |
| BCC | The name(s) of any Person(s) that were blind copied on an email, from the "BCC" field |
| SUBJECT | The text in the "Subject" line or "Re" line of an email or application file |
| CUSTODIAN | The name(s) of the Person(s) from which a collection of email or application files originate |
| AUTHOR | The name of the author or the creator of an application file, from the "Author" field |
| DATE_SENT | The date on which an email was sent |
| DATE_RCVD | The date on which an email was received |
| DATE_LASTMOD | The date on which an email or application file was last modified |
| DATE_CREATED | The date an email or application file was created |
| TIME_CREATED | The time at which an email or application was created |
| TIME_SENT | The time at which an email was sent |
| TIME_RCVD | The time at which an email was received |
| TITLE | The text in the "Title" field of an application file |
| LAST_AUTHOR | The name in the "Last Author" field for an application file |
| LAST_SAVED | The date in the "Last Saved" field for an application file |
| LAST_PRINTED | The date in the "Last Printed" field for an application file |
| APPLICATION | The name of the application that generated the native file |
| FILEEXT | The filename extension of each email, attachment, or application file |
| FILENAME | The name of an application file, including its extension |
| FILESIZE | The size of a Document in bytes |

6

| | |
|---|---|
| SOURCEFOLDER | The full path information for email, attachments, and application files beginning with the original source-folder name |
| HASHVALUE | The output of an algorithm-generated value for each individual file |
| SEARCH_HIT | The search term or terms that "hit" on a Document |
| NATIVE FILE | A hyperlink to the native file |

**DOCUMENTS TO BE PRODUCED**

1. All Documents and Communications Concerning Murchinson's awareness of the creation and/or substance of the modelling, analysis, and/or development of potential proposals for the buy-out of Murchinson's alleged interests and repayment of its loan reflected in the At-Issue Documents prior to July 3, 2024, excluding Documents and Communications after June 28, 2023 relating to knowledge gained by Murchinson as a result of Pach Shemen's participation in the Bankruptcy Proceeding *In re Eletson Holdings Inc.,* 23-10322 (S.D.N.Y.).

2. All Documents and Communications received from, or transmitted to, the Frankel Rubin firm, or the Quinn Emmanuel firm, Concerning the creation and/or substance of the modelling, analysis, and/or development of potential proposals for the buy-out of Murchinson's interests and repayment of its loan reflected in the At-Issue Documents prior to July 3, 2024.

3. All Documents and Communications received from, or transmitted to, Kanelos between June 1, 2022 and August 31, 2022.

Dated: July 1, 2025                                                              Respectfully submitted,

By: */s/ Hal. S. Shaftel*

**GREENBERG TRAURIG, LLP**

Hal S. Shaftel
Maura E. Miller
Adam Kirschbaum
One Vanderbilt Avenue

7

New York, NY 10017
(212) 801-9200
shaftelh@gtlaw.com
maura.miller@gtlaw.com
kirschbauma@gtlaw.com

*Counsel for the Preferred Shareholders Apargo Limited, Fentalon Limited, and Desimusco Trading Limited*