UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

<table>
<tr><td>ELETSON HOLDINGS INC. and ELETSON<br>CORPORATION,</td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td style="text-align:right">Cross-Respondents,</td><td>:</td><td>23-cv-7331 (LJL)</td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td style="text-align:center">-v-</td><td>:</td><td>MEMORANDUM AND<br>ORDER</td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>LEVONA HOLDINGS LTD.,</td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td style="text-align:center">Cross-Petitioner,</td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td style="text-align:center">and</td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>APARGO LIMITED, FENTALON<br>LIMITED, and DESIMUSCO TRADING<br>LIMITED,</td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td style="text-align:center">Intervenors.</td><td>:</td><td></td></tr>
</table>

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__8/8/2025__

-------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

On July 3, 2025, Intervenors Apargo Limited, Fentalon Limited, and Desimusco Trading Limited ("Intervenors") moved to compel the production of documents by Quinn Emanuel Urquhart & Sullivan, LLP ("QE"), counsel to Cross-Petitioner Levona Holdings Ltd. ("Levona"). Dkt. No. 474. QE responded in opposition on July 8, 2025. Dkt. No. 482.

On July 22, 2025, QE moved to quash the deposition subpoena issued to it by Intervenors, pursuant to Federal Rule of Civil Procedure 45(d)(3). Dkt. Nos. 512–514. The Intervenors responded in opposition on July 29, 2025. Dkt. No. 529. QE replied in support of their motion on July 31, 2025. Dkt. No. 533.

For the reasons that follow, Intervenors' motion to compel is denied, and QE's motion to quash is granted.

**BACKGROUND**

The Court has detailed the factual allegations underlying this matter at length in its prior opinions, particularly in its September 6, 2024, Opinion and Order, Dkt. No. 162, *see Eletson Holdings, Inc. v. Levona Holdings Ltd.*, 2024 WL 4100555 (S.D.N.Y. Sept. 6, 2024), and sets forth here only a brief background of those facts pertinent to the current motions, which turn on whether QE as counsel to Levona may be compelled to produce discovery relating to Levona's claim for equitable tolling.

On September 6, 2024, the Court granted Levona's motion for leave to file an amended answer to Eletson's operative petition to confirm the final arbitration award (the "Award") issued by the Honorable Ariel Belen of the Judicial Arbitration and Mediation Services, Inc. ("JAMS") on September 29, 2023, and an amended cross-petition to vacate the Award. *Id.* The amended answer and amended cross-petition are based on documents that Eletson did not produce in the arbitration but ultimately were required to produce in a separate bankruptcy proceeding in the summer of 2023 (the "At-Issue Documents") regarding the purported purchase by Eletson of the Preferred Interests of Levona in Eletson Gas LLC ("Gas"). *See In re Eletson Holdings Inc. et al.* ("Bankruptcy Proceeding"), No. 23-10322 (Bankr. S.D.N.Y.). The arbitration hinged on Eletson's claim that it had exercised a purchase option for the Preferred Interests in Gas in March 2022. *Eletson Holdings*, 2024 WL 4100555, at *8. The At-Issue Documents reflected Eletson trying to raise money for the purchase of the Preferred Interests months after it had supposedly acquired those interests and at a price in excess of what Eletson would have had to pay if they were acquired, as Eletson claimed, through the exercise of a purchase option in March 2022. *Id.* Levona claims that the documents should have been produced in the arbitration. On Levona's interpretation, the At-Issue Documents undermined the argument and testimony offered by Eletson during the arbitration.

The Court concluded that "Levona has presented evidence that, if credited, would show that Eletson engaged in fraudulent activity that Levona could not have discovered and that went to a pivotal issue in the arbitration." *Id.* at *22.  The Court also concluded that "Levona has identified sufficient facts to establish at this stage both an extraordinary circumstance [preventing its discovery of Eletson's fraud in the arbitration] and due diligence." *Id.* at *17.  "Levona has proffered evidence that would suggest that the four documents at issue may be just the tip of the iceberg and that there may be other relevant documents that would support its claims that extraordinary circumstances prevented it from filing earlier and that fraud was committed in the arbitration." *Id.* at *17.  The At-Issue Documents date from the period July 2022 to August 2022.  *See* Dkt. Nos. 127-4, 127-5, 127-8, 127-9, 137-1.  All in all, the documents tend to contradict Eletson's position in the arbitration that it had exercised the option in March 2022.

Given the requirement of Section 12 of the Federal Arbitration Act that "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered," 9 U.S.C. § 12, the Court permitted discovery to proceed on "facts relevant to equitable tolling and to whether the award was procured by fraud or undue means." *Id.* at *22.  On May 14, 2025, Levona and Eletson, now under common control, stipulated to the dismissal of the petition to confirm the Award, Dkt. No. 350.  The Court permitted Intervenors, who are beneficiaries of the Award, to intervene in opposition to the petition to vacate the Award.  Dkt. No. 343.  Because "[a] statute of limitations is equitably tolled only when the party seeking to avoid its effect shows that it has been pursuing its rights diligently and some extraordinary circumstance stood in his way to prevent timely filing," *Holland v. Florida*, 560 U.S. 631, 649 (2010), Intervenors are entitled to press for

discovery relating to whether Levona pursued its rights diligently with regard to the At-Issue Documents.

## I.    Levona's Efforts to Obtain the At-Issue Documents

Shortly after testimony concluded in the arbitration in June 2023 and before the arbitrator had issued any award, Levona alleges that it learned of the existence of a document that Eletson purportedly had produced to the petitioning creditors in Eletson's bankruptcy case.  Dkt. No. 136 at 8–9.  Levona claims that it did not receive the document itself and was not told what it said. At the time, Levona had not filed a claim in the Bankruptcy Proceeding and it had no right of access to the document.  Levona claims that it learned of the document's existence through non-confidential information shared with it by an individual who was both a representative of Pach Shemen, a petitioning creditor in the Bankruptcy Proceeding, and a representative of Levona.  *Id.* at 9 n.6.  Pach Shemen had no right to share the document or its contents with Levona.  The document was a subject of a protective order (the "Protective Order") in place in the Bankruptcy Proceeding that Eletson vigorously enforced and that required documents designated as confidential to be used "solely for the purposes of the Contested Bankruptcy Proceedings, the Chapter 11 Cases or any related Disputes, and not for any other purpose."  Dkt. No. 127-34 ¶ 10.[1]  Notably, the document was not produced during the arbitration.

On July 7, 2023, before the award was issued, Levona's prior arbitration counsel, Frankel, Rubin, Klein, Payne & Pudlowski, P.C. ("Frankel"), reached out to Eletson's prior counsel, Reed Smith LLP ("Reed Smith") about this document.  Dkt. No. 148-6 at 5–6.[2]  Reed

---

[1] Disclosure of material subject to the Protective Order not in accordance with the Protective Order's terms subjects the disclosing person to the potential for sanctions or other remedies the bankruptcy court may deem appropriate.  *Id.* ¶ 22.  The Protective Order also requires parties to take reasonable steps to destroy or return confidential material at the conclusion of the bankruptcy and remains in force after final resolution of the bankruptcy.  *Id.* ¶¶ 27–28.
[2] ECF pagination.

Smith responded with accusations.  Counsel stated that, "[a]pparently you and others have been violating the Protective Order entered in the Bankruptcy Court.  After the fuss you made about confidentiality and the respect for confidentiality orders, your violation is doubly unpardonable." *Id*. at 4.  Reed Smith also made threats.  It stated that Eletson "do[es] not consent to your reviewing whatever document you identified.  Indeed, we strenuously object, and we intend to seek all available remedies if you, once again, try to delay or derail the arbitration process . . .  In the meantime, it is time for you to tell your client that you want no more part in its illegal schemes."  *Id*.

On July 11, 2023, Levona proceeded to ask the arbitrator to order Eletson to produce the document.  *Id.*; Dkt. No. 67-52.  In its request, Levona noted that once Levona's counsel reviewed the document, it would determine whether it was appropriate to seek reopening of the arbitration based on that new evidence.  *Id*.  In opposition, Eletson noted that the document was within the scope of the Protective Order, and Eletson's counsel again made accusations against Levona.  Reed Smith wrote to the arbitrator that "Levona has never really understood that there needs to be an end to argument—unless one's goal is to delay—and that Levona does not always have to get <u>both</u> the first <u>and</u> last word," and complained that Levona only knew that the document existed because its client was willfully and repeatedly violating the Protective Order. Dkt. No. 67-52 (emphasis in original).  On July 18, 2023, the arbitrator denied the request.  *Id*.; Dkt. No. 67-54.  The arbitrator stated that Levona had not proffered any legal basis supporting the notion that the arbitrator had the authority to order Eletson to violate the Protective Order. The arbitrator also relied on the fact that Levona was not able to proffer the contents of the document.  He stated that the conclusory assertions by "interested agents" of Levona that these

documents were relevant did not amount to good cause to bypass the Protective Order.  Dkt. No. 67-52.  On July 26, 2023, Levona sought reconsideration of that order.  Dkt. No. 67-54.

The same day, July 26, 2023, Levona, a non-party to the bankruptcy, wrote a letter to the bankruptcy court identifying itself as the respondent in a pending arbitration in which the hearing had concluded but no decision had been issued.  It stated that a representative of Pach Shemen had advised Levona that Eletson produced a document in the Bankruptcy Proceeding that was material to and should have been produced in the arbitration, that Levona had tried to resolve the issue without the court's intervention by asking Eletson to produce the document, and that the arbitrator had refused Levona's request in the arbitration to order Eletson to produce the document at issue.  It accordingly requested that the bankruptcy court grant relief under the Protective Order to allow counsel for Levona to view the document to potentially reopen the arbitration.  *See* Bankruptcy Proceeding Dkt. No. 144.  Eletson never responded.  Dkt. No. 147 at 15.  The issue was not adjudicated by the bankruptcy court because the arbitrator issued an interim award two days later, on July 28, 2023, in favor of Eletson.  A corrected interim award was issued on August 15, 2023, Dkt. No. 67-55, and the Final Award was issued on September 29, 2023.  Dkt. No. 67-58.  Eletson filed its petition to confirm the arbitral award under seal before this Court on August 18, 2023.  Dkt. Nos. 1, 12.  QE first appeared for Levona on August 23, 2023.  Dkt. Nos. 3, 17.

Levona continued to pursue the relevant evidence notwithstanding that the arbitration had concluded.  On October 6, 2023, Levona moved this Court to refer this matter to the Bankruptcy Court, which would have consolidated any dispute relating to the document before that court, which the Court denied on October 10, 2023.  Dkt. Nos. 34, 36.  Levona sought reconsideration on October 17, 2023, which the Court denied.  Dkt. Nos. 38, 39.  On October 19, 2023, Levona

moved the bankruptcy court to modify its Protective Order to allow Levona to access what, by that point, Levona thought were four documents produced in the Bankruptcy Proceeding that should have been produced in the arbitration proceeding, which Levona still had not seen. Dkt. Nos. 127-14, 127-15. Eletson once again resisted Levona's requests. In opposition, Eletson argued that Levona was not entitled to the documents because it was not a party in the Bankruptcy Proceeding. It also argued that Levona was impermissibly seeking to attack the Award and that the arbitrator had already rejected Levona's attempt to reopen the evidentiary record. Notably, Eletson was silent about the fact that Levona had a right to attack the Award or to seek in this Court to make the argument that the record was impermissibly restricted. Dkt. No. 127-30. Taking advantage of the fact that it alone knew what the documents said, Eletson further represented that there was no "cognizable argument as to why the Documents can or should have any relevance whatsoever to the issue whether that Award should be confirmed" in part because there is "no provision for discovery" in the district court. *Id*. at 3. Eletson also relied on the Protective Order, arguing that it was improper for Levona to seek modification of the Protective Order for the purpose of using the documents in an entirely separate proceeding that had nothing to do with the Bankruptcy Proceeding and that granting such a request would be render the Protective Order meaningless. *Id*. at 7. Eletson also again made the accusation that a representative of Pach Shemen had apparently "improperly disclosed to Levona's counsel information concerning a document covered by the Protective Order." *Id*. at 9. Finally, Eletson submitted an affidavit of Vassilis Kertsikoff, one of Eletson's then-principals, now principal and representative to Intervenor Apargo Limited, stating that Levona's understanding of the documents was incorrect and the documents were "of a piece with, and the same subject matter

as, the corrupt doings of Levona and Peter Kanelos" because they were created "by or for that bribed former employee." *Id*. at 10; *see also* Dkt. No. 127-31; Dkt. No. 67-43 ¶¶ 194, 196.

Levona responded accurately that the district court was, in fact, empowered to decide whether the Award was procured by fraud and that Levona could still press additional grounds for vacatur. Dkt. No. 127-15 at 3–4. Levona also pointed out that neither it, nor its counsel, nor the district court could test Eletson's assertions about what the documents say without seeing them. *Id*. at 4.

On November 8, 2023, the bankruptcy court held a hearing on the motion. At the hearing, counsel for Levona explained that it wanted the bankruptcy court to modify the Protective Order so that Levona could review the four documents, which it believed were relevant to this Court's consideration of the pending petition to confirm the arbitral award and cross-petition to vacate the arbitral award, which were then *sub judice*. Dkt. No. 127-16 at 35. Levona stated to the bankruptcy court that it believed there was misconduct in the arbitration because the documents were not produced there. *Id*.

Eletson vigorously opposed the motion. It once again asserted that Levona's efforts were simply a "fishing expedition" and an effort to "misuse the offices of this Court." *Id*. at 39. Eletson stated that the document Levona had previously presented to the arbitrator was not responsive to any arbitration discovery request and that the arbitrator had decided not to consider the document because it was allegedly dated after the last relevant event in the arbitration in March 2022, not because it was subject to the Protective Order. *Id*. at 40. It did not explain why the documents could not be relevant if they were dated after March 2022. Reading this Court's jurisdiction narrowly, Eletson went on to tell the bankruptcy court that the issue in this Court was not whether the documents were responsive in or relevant to the arbitration, but only whether the

arbitrator had erred under a very narrow set of standards.  *Id*. at 41.  Eletson stated that there is

no discovery in this Court, that Levona never sought discovery in this Court, and that Levona

had not moved to vacate in this Court based on omitted evidence or fraud.  *Id*. at 41–42.  Eletson

also argued that there would be no protective order in this Court.  *Id*. at 42.  The bankruptcy

court denied the motion to modify the Protective Order.  *Id*. at 51.

Levona persisted in its efforts and Eletson persisted in its steadfast opposition.  In

December 2023, Levona filed a proof of claim in the Bankruptcy Proceeding, but Eletson

objected.  Dkt. No. 127-17.  In its objection, Eletson argued that Levona's claim was essentially

duplicative of what it had argued in arbitration and that the bankruptcy court should give the

Award preclusive effect.  Dkt. No. 127-17 at 10–12.[3]  Eletson continued to seek to delay in the

Bankruptcy Proceeding, arguing that the bankruptcy court should stay the adjudication of

Levona's claim until the Award was confirmed by the district court.  *Id*.

On February 8, 2024, Levona served discovery requests on Eletson related to its proof of

claim, including for documents regarding "(a) any interest Eletson Holdings or others ever held

in the [Preferred Interests]; and (b) Eletson Holdings' knowledge as to whether Eletson Gas

exercised the [Purchase Option]."  Dkt. No. 136 at 14.  On February 22, 2024, Eletson objected

and did not produce any documents.  Dkt. No. 136 at 14; Dkt. No. 127-20.

Separately from the discovery it sought related to its proof of claim, on February 15,

2024, Levona wrote to the bankruptcy court "regarding [Eletson's] baseless effort to obstruct

Levona from viewing documents" that had already been produced in the Bankruptcy Proceeding

notwithstanding the fact that Levona had now signed the Protective Order.  Dkt. No. 127-21.

---

[3] The Court does not confirm factual findings of an arbitrator.  Dkt. No. 104 at 82; *cf. id.* at 87–88 (noting limits of claim-preclusive effect of arbitration awards).

Eletson was objecting to Levona's viewing of documents on the basis that Levona was "not a party to the [P]rotective [O]rder," including because Levona's claims were precluded by the arbitration and it was therefore not a creditor. *Id.* However, in its previously filed objection, Eletson had acknowledged that some of Levona's claims were "distinguishable" from the claims in the arbitration. Dkt. No. 127-17 at 7, 12–13. Levona prevailed at a hearing on the issue, when the bankruptcy court held that Levona was entitled to view certain documents filed under seal. Dkt. No. 127-22 at 11–12. Eletson thereafter continued to complain that it had no evidence that Levona had signed the Protective Order, even though under the Protective Order it was not entitled to such evidence. *Id.* at 12–13. Following the bankruptcy court's order, Levona was able to review some documents that had previously been under seal for the first time on March 18, 2024. *Id.* However, those documents remained under the Protective Order.

In April 2024, Levona asked the bankruptcy court for another discovery conference regarding Eletson's continued refusal to produce the additional discovery that Levona requested regarding its proof of claim. Dkt. No. 136 at 15; Dkt. Nos. 127-23, 127-24. Levona was permitted to and did move to compel production of that additional evidence in May 2024. Dkt. No. 136 at 15; *see also* 127-26 (noting that "many months after Levona issued the discovery, [Eletson] [has] refused to produce any documents or witnesses" and describing the willful withholding of certain material documents from the arbitrator).

Eletson again sought delay in the Bankruptcy Proceeding, requesting a stay of discovery. Dkt. Nos. 127-28, 127-27; Bankruptcy Proceeding Dkt. No. 715. In opposing Levona's motion to compel, Eletson argued that Levona was impermissibly seeking to collaterally attack the Award "as subsequently confirmed by Judge Liman" and that Levona's "'new' alleged claims are even more obvious collateral attacks on Judge Liman." Dkt. No. 127-27 at 2. It made those

statements even though this Court did not confirm any of the findings of the arbitrator but concluded only that the Award was not in manifest disregard of the law and was within the scope of the arbitration agreement. *Id.* The Court did not address any of the issues that Levona now raises. Eletson further argued that Levona's discovery efforts were irrelevant and a waste of resources because arguments for vacatur under 10(a) of the FAA needed to be raised with the district court and in any event had been waived by Levona. *Id.* at 3.

The bankruptcy court held a hearing on June 18, 2024, regarding the discovery issues and "why [the bankruptcy court] should not modify [its] [P]rotective [O]rder to allow the district court to see [the newly-discovered evidence]." Dkt. No. 136 at 15. Eletson again resisted production. It argued that Levona was seeking to improperly collaterally attack the Award "as confirmed by Judge Liman." Bankruptcy Proceeding Dkt. No. 779 ¶ 2. Eletson described Levona as having "been blustering about these Documents for nearly a full year, repeatedly claiming they show fraud in the Arbitration." *Id.* ¶ 3. Eletson took issue with the fact that Levona was seeking to modify the Protective Order when it had never raised its fraud claim with the district court, all the while taking the position that Levona was not entitled to the documents necessary to raise the issue of fraud with this Court. *Id.* Eletson's position was that before asking the bankruptcy court for discovery that it might use in the district court, Levona needed to have the district court first reopen its confirmation proceedings. *Id.* ¶ 4.

On June 18, 2024, the bankruptcy court ruled in Levona's favor and modified its Protective Order for the limited purpose of allowing Levona to use the documents in this Court, finding that "extraordinary circumstances" and "compelling need" existed to justify the modification. *Id.*; *see also* Dkt. No. 128-1. And on July 11, 2024, a London-based arbitrator

presiding over a separate arbitration between the parties permitted Levona to disclose another email both in this Court and in the Bankruptcy Proceedings. *Id*. at 16.

Finally, the At-Issue documents were put before this Court on July 3, 2024, in support of Levona's motion for leave to file an amended answer to the operative petition to confirm the Award. Dkt. Nos. 123–127.

## DISCUSSION

Intervenors move to compel document discovery from QE responsive to Intervenors' Requests for Production 4 and 19–25, broadly relating to but not limited to the timeline of QE's awareness of the existence and content of the At-Issue Documents and obstacles to raising the issue of fraud in the arbitration within the otherwise applicable statute of limitations. Dkt. Nos. 474, 474-1. QE moves to quash the Rule 30(b)(6) deposition subpoena served by Intervenors to QE, which seeks testimony regarding, *inter alia*, the At-Issue Documents and QE's "diligence and timing in seeking information concerning" the At Issue Documents. Dkt. No. 514-1 at 5.

## I.    Legal Standard

Pursuant to Rule 45, a party may serve a subpoena on a non-party. *See* Fed. R. Civ. P. 45(d)(2). Under Rule 45(d)(3), the Court "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies; or . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3). "Motions to compel and motions to quash a subpoena are both 'entrusted to the sound discretion of the district court.'" *In re Fitch, Inc.*, 330 F.3d 104, 108 (2d Cir. 2003) (quoting *United States v. Sanders*, 211 F.3d 711, 720 (2d Cir. 2000)).

Rule 26(b)(1) of the Federal Rules of Civil Procedure sets forth the standard for discovery in litigation in federal court. A party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the

needs of the case." Fed. R. Civ. P. 26(b)(1).  "Information within this scope of discovery need

not be admissible in evidence to be discoverable." *Id.*  "[T]he determination

whether . . . information is discoverable because it is relevant to the claims or defenses depends

on the circumstances of the pending action." *Collens v. City of New York*, 222 F.R.D. 249, 252–

53 (S.D.N.Y. 2004) (quoting Fed. R. Civ. P. 26 advisory committee notes to 2000 amendment).

 "In general, the relevance standard that applies when seeking discovery from a party also

applies to non-parties." *Citizens Union of City of New York v. Att'y Gen. of New York*, 269 F.

Supp. 3d 124, 139 (S.D.N.Y. 2017); *see Malibu Media, LLC v. Doe*, 2016 WL 5478433, at *2

(S.D.N.Y. Sept. 29, 2016) ("[S]ubpoenas issued under Rule 45 are subject to the relevance

requirement of Rule 26(b)(1).").  "[T]here is no absolute rule that party sources must be

exhausted before calling upon third parties." *Jam Indus. USA, LLC v. Gibson Brands, Inc*., 2020

WL 4003280, at *4 (S.D.N.Y. July 15, 2020).  However, in evaluating whether discovery on a

nonparty constitutes an undue burden, one relevant factor is "whether the requested information

can be obtained from the parties themselves." *Cerco Bridge Loans 6 LLC v. Schenker*, 2024 WL

4165128, at *2 (S.D.N.Y. July 16, 2024) (quoting *Fishon v. Peloton Interactive, Inc.*, 336 F.R.D.

67, 69 (S.D.N.Y. 2020)); *see In re 650 Fifth Ave. & Related Props*., 2013 WL 12335763, at *3

(S.D.N.Y. Aug. 29, 2013).  "[I]f documents are available from a party, it has been thought

preferable to have them obtained pursuant to Rule 34 rather than subpoenaing them from a non-

party witness [pursuant to Rule 45]." *Burns v. Bank of Am.*, 2007 WL 1589437, at *14

(S.D.N.Y. June 4, 2007) (quoting Wright & Miller's Federal Practice & Procedure § 2204); *see*

*Cerco Bridge Loans*, 2024 WL 4165128, at *2.

 Moreover, "a court must take special care in evaluating subpoenas directed to opposing

counsel." *Liner Freedman Taitelman Cooley, LLP, v. Blake Lively*, 2025 WL 2205973, at *4

(S.D.N.Y. Aug. 4, 2025). "Courts have been particularly concerned about the burdens imposed on the adversary process when lawyers themselves have been the subject of discovery requests." *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 70 (2d Cir. 2003); *see also Patsy's Italian Rest., Inc. v. Banas*, 2007 WL 174131, at *2 (E.D.N.Y. Jan. 19, 2007). "A deposition or document request directed to counsel may encroach on the attorney-client privilege or attorney work product doctrine." *Liner Freedman*, 2025 WL 2205973, at *4. "Beyond that, a discovery request to counsel can threaten to turn the lawyer into a witness against the client and thereby may burden a party's choice of counsel." *Id.*; *see Varbero v. Belesis*, 2020 WL 7043503, at *2 (S.D.N.Y. Dec. 1, 2020); *In re Chevron Corp.*, 749 F. Supp. 2d 141, 163 (S.D.N.Y.) (considering "the extent to which the discovery would disrupt the litigation by injecting one of the lawyers charged with its conduct into the case as a witness"), *aff'd sub nom. Lago Agrio Plaintiffs v. Chevron Corp.*, 409 F. App'x 393 (2d Cir. 2010); *Bey v. City of New York*, 2007 WL 1893723, at *5 (S.D.N.Y. June 28, 2007) ("[D]epositions of counsel, even if limited to relevant and non-privileged information, are likely to have a disruptive effect on the attorney-client relationship." (citation omitted)); *cf. Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 729–30 (8th Cir. 2002) (noting that courts must "guard against the harassing practice of deposing opposing counsel . . . that does nothing for the administration of justice but rather prolongs and increases the costs of litigation, demeans the profession, and constitutes an abuse of the discovery process" (internal quotation omitted)).

The Second Circuit has instructed that courts must follow a flexible approach to lawyer depositions, whereby the Court should "take[] into consideration all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship." *Friedman*, 350 F.3d at 72. Such considerations may include "the need to

depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted." *Id*. "Under this approach, the fact that the proposed deponent is a lawyer does not automatically insulate him or her from a deposition nor automatically require prior resort to alternative discovery devices, but it is a circumstance to be considered." *Id.*

"Courts have also applied the *Friedman* factors in non-deposition contexts, including in decisions resolving motions to compel lawyers to comply with document subpoenas." *Cerco Bridge Loans 6 LLC v. Schenker*, 2024 WL 4754022, at *2 (S.D.N.Y. July 9, 2024) (citing *Chevron Corp. v. Donziger*, 2013 WL 1087236, at *23 (S.D.N.Y. Mar. 15, 2013); *Varbero*, 2020 WL 7043503, at *2). "The application of *Friedman* to document subpoenas necessarily follows from the principle that *Friedman* is simply an application of 'the standards set forth in Rule 26' that the Court must 'take into consideration all relevant circumstances' in considering whether the requested discovery constitutes an 'inappropriate burden.'" *Liner Freedman*, 2025 WL 2205973, at *5 (quoting *Friedman*, 350 F.3d at 72 (cleaned up)). The Rule 26 standards also apply to document discovery. *See, e.g.*, *Sahu v. Union Carbide Corp.*, 262 F.R.D. 308, 317–318 (S.D.N.Y. 2009) (applying undue burden standard to both deposition and document subpoenas). Accordingly, document discovery must also be evaluated to determine whether it unduly burdens "the adversary process," and the *Friedman* factors aid a court in making that determination. *Friedman*, 350 F.3d at 70. "[T]he production of documents is a more controlled form of discovery than a deposition, is less susceptible to harassment, and may have a lower risk of revealing privileged materials or an attorney's mental impressions." *Liner Freedman*, 2025 WL 2205973, at *5; *see Sahu*, 262 F.R.D. at 317 ("[D]ocument discovery . . . is a more convenient,

less costly, and less burdensome alternative to the depositions."); *see also Friedman*, 350 F.3d at

72 (suggesting that interrogatories to counsel would be less burdensome than a deposition); *cf.*

*Lederman v. New York City Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013)

(noting that high-ranking officials may be deposed only on a showing that "the official has

unique first-hand knowledge related to the litigated claims or that the necessary information

cannot be obtained through other, less burdensome or intrusive means").  However, "this simply

means that document subpoenas may be more likely to pass muster under *Friedman* than

deposition subpoenas, not that *Friedman* is inapplicable."  *Liner Freedman*, 2025 WL 2205973,

at *5.  "Document subpoenas to counsel may still implicate privilege and work-product issues,

run the risk of harassment, and interfere with the attorney-client relationship."  *Id.*  "*Friedman*

simply requires that a court account for these issues in determining whether a discovery request

to counsel constitutes an undue burden under Rule 26."  *Id.*

## II.    Motion to Compel

On May 20, 2024, Intervenors served QE with a subpoena consisting of forty-one

requests for production.  Dkt. No. 482 at 1.  Those forty-one requests essentially replicate every

request made originally by Eletson to Levona prior to the change in control, Levona's subpoenas

to the Intervenors, and Levona's subpoena to Greenberg Traurig, Intervenors' counsel.  *See* Dkt.

No. 474-1.  In response, QE agreed to "produce documents sufficient to show when it received

the" At-Issue Documents, which it claims are "the only non-duplicative documents in QE's

control possibly relevant to equitable tolling."  Dkt. No. 482 at 1.  Intervenors responded by

moving to compel QE's compliance with the discovery requests.  Dkt. No. 472.  By email, QE

advised counsel for Intervenors that the letter-motion to compel was deficient for failure to

specify which specific requests the Intervenors sought to compel.  Dkt. No. 482-2.  Intervenors

filed an amended letter-motion which indicated, in a footnote, *see* Dkt. No. 474 at 1–2 n.2, that

Intervenors sought to compel compliance with a subset of the forty-one requests, specifically, Request No. 4, seeking "[a]ll Documents and Communications" "concerning . . . awareness or knowledge of the existence of . . . the At-Issue Documents," Dkt. No. 474-1 at 13, and Request Nos. 19 through 25, seeking in part "[a]ll Documents and Communications" "[c]oncerning obstacles to Levona's raising of [a disputed] issue in its petition to vacate within the applicable limitations period," *id.* at 17.  In pressing these discovery requests, Intervenors argue that by invoking equitable tolling, Levona has "put at issue QE's communications relevant to when it learned of the substance of the At-Issue Documents and whether it diligently sought to access/use them," thereby "create[ing] a need for discovery regarding these issues but also waiv[ing] subject matter privileges."  Dkt. No. 474 at 1.

Intervenors' motion fails for several related reasons.  First, Intervenors have not met the threshold set forth in *Friedman* to justify discovery requests to counsel: they have not shown that the need to take discovery of QE justifies the burden and hardship imposed by the intrusion into the attorney-client relationship in these circumstances.  *See* 350 F.3d at 72.  As this Court has already noted in this case with regard to Intervenors' letters of request directed to Levona's counsel in the UK and British Virgin Islands, "[s]erving discovery on opposing counsel is disfavored."  Dkt. No. 435 at 16 (citing *Bennett v. Cuomo*, 2024 WL 80271, *9 (S.D.N.Y. Jan. 8, 2024)).  As with the prior requests, "Levona is the real party in interest, and Intervenors have made no showing that, to the extent that the documents are relevant and not privileged, the discovery sought through [the motion] is not available from Levona itself as party discovery." Dkt. No. 435 at 16.  "Documents in the possession of a party's attorney may be considered to be within the control of the party."  *Markus v. Rozhkov*, 615 B.R. 679, 705–06 (S.D.N.Y. 2020) (quoting *Donziger*, 296 F.R.D. at 190); *see* 7 Moore's Federal Practice § 34.14[2][c] (3d ed.

2025).  "'Control' does not require 'actual physical possession of the documents at issue; rather, documents are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents.'"  *Mirlis v. Greer*, 80 F.4th 377, 382 (2d Cir. 2023) (quoting *Coventry Cap. US LLC v. EEA Life Settlements Inc.*, 333 F.R.D. 60, 64 (S.D.N.Y. 2019)).

Many, if not all, of the documents called for in the eight requests for production now pressed by Intervenors would have been obtainable through a request to Levona, subject to Levona's claims of privilege and work product protection, prior to the close of discovery.[4]  If QE had communications or created documents reflecting awareness of and receipt of the At-Issue documents in its capacity as counsel for Levona, those documents would be available to Levona. One of the *Friedman* factors is "the need to [seek documents from] the lawyer."  *Friedman*, 350 F.3d at 72.  "When the documents sought are within the possession, custody, or control of the client because they were generated on behalf of the client, there is no need to make the lawyer into a witness against his client.  The client himself can produce the documents."  *Liner Freedman*, 2025 WL 2205973, at *6; *see Gropper v. David Ellis Real Est., L.P.*, 2014 WL 904483, at *3–4 (S.D.N.Y. Mar. 4, 2014) (rejecting attorney deposition and document request that would have duplicated information available from other sources); *cf. Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 245 (2d Cir. 2018) (holding under 28 U.S.C. § 1782 that a discovery request to a United States law firm should not be used to acquire the

---

[4] For example, Request No. 20(a) calls for documents and communications concerning Levona's requests for discovery regarding the Cypriot Nominees and the response from the arbitrator, Request No. 20(b) calls for documents that show that Levona sought to postpone the arbitration hearing, and Request No. 20(c) asks for documents that show that the arbitrator refused to hear evidence concerning the Cypriot Nominees or to permit discovery thereof.  Dkt. No. 474-1 RFP 20.  Such documents, to the extent that they exist and are not already in possession of Intervenors, should be obtainable from Levona itself.

documents of a client engaged in foreign litigation).  If for whatever reason QE had such

communications or documents in its capacity as counsel for parties other than Levona, such

documents would be only minimally if at all relevant to Levona's diligence in pursuing its rights

with respect to the At-Issue Documents, and would in any case be in the control of, and subject

to the privilege claims of, the represented parties.

Moreover, the requested documents are of minimal relevance.  Intervenors argue that

when QE received the At-Issue Documents is "only part of the equation."  Dkt. No. 474 at 2.

The other part is "what they considered doing and when to obtain the information."  *Id.*  Thus,

among other requests, they ask for communications concerning obstacles to raising the issue of

fraud on the arbitrator within the applicable limitations period, *see* Dkt. No. 474-1 at RFP 19; *see*

*also* RFP 20(e), 21(e), 23, 25, and documents sufficient to show that Levona sought to postpone

the arbitration hearing in order to obtain discovery, *id.* at RFP 21(b).  But Intervenors have not

demonstrated how any such communications between client and counsel would be relevant.

Intervenors can argue based on what Levona knew at earlier stages of this case that Levona

should have raised fraud on the arbitrator "within the applicable limitations period."  Dkt. No.

747-1 at RFP 19.  They can also argue that Levona should have been more aggressive in asking

for a delay in the arbitration proceeding.  They do not need the communications between client

and counsel to make those arguments. And the Court can reach its own conclusion on whether,

based on what Levona knew, it could or should have raised its claims earlier.

Moreover, as to the At-Issue Documents themselves, even if QE knew the substance of

the At-Issue Documents, Levona could not have used them as a basis for vacatur until Levona

obtained relief from the Bankruptcy Court.  The Court has already observed that, "[a]bsent such

relief, [Levona] would have arguably been in contempt for disclosing the documents to th[is]

Court." *Eletson Holdings*, 2024 WL 4100555, at *17.  The question to be addressed with respect to equitable tolling does not turn upon the factual question when Levona was aware of the possible existence of relevant documents produced in the Bankruptcy Court.  It is clear beyond doubt that Levona and QE were aware of the existence of at least some of the At-Issue documents no later than July 7, 2023, Dkt. No. 148-6 at 5–6, well before the final Award was issued, and was able to view the contents of at least some of the At-Issue Documents with permission of the Bankruptcy Court by March 18, 2024, Dkt. No. 127-22 at 11–12.  Indeed, Levona has never disputed that it was aware of the possible existence of documents that would demonstrate that the Award was obtained by fraud long before filing those documents in this Court.  It repeatedly raised before the Bankruptcy Court that such documents might exist and was met with resistance by Eletson.  Levona's argument has been that Eletson fraudulently withheld the documents in the arbitration.  Then, when the first inkling of the existence of the documents arose in the bankruptcy, Eletson fought tooth and nail first to prevent Levona from viewing the documents (going so far as to threaten to bring contempt proceedings) and then to prevent Levona from disclosing the documents to this Court and from using them to upset the Award.

Levona's case for equitable tolling thus necessarily turns on two questions.  The first is the essentially legal question whether the diligence it exercised in attempting to obtain the At-Issue Documents, seeking permission to bring the At-Issue Documents before the Court, and generally exercising its rights was reasonable and whether Eletson's efforts to thwart those efforts presented an extraordinary circumstance sufficient to support equitable tolling.  The second is the factual question whether, notwithstanding counsel's efforts to obtain and disclose the At-Issue Documents, those same or related documents were already independently in the

possession of Levona during the arbitration or could have been readily obtained by Levona, such that Levona cannot blame Eletson for Levona's failure to raise the fraud on the arbitrator claim earlier. Intervenors do not need discovery from QE regarding its efforts to uncover the documents and get permission to use them. Those efforts are documented and a matter of public record. And, as to when Levona learned of the At-Issue Documents and whether Levona had an independent source for them, Intervenors do not need the requested communications between QE and its client to get at that issue. They can ask those questions of Levona, Murchinson, and Kanelos. They can also pose such questions to their own witnesses who received or authored the documents and thus had the ability to provide them to or withhold them form Levona.[5]

Furthermore, the requests encroach deeply on the attorney-client privilege and attorney work product doctrine. Certain of the requests call for "all Documents or Communications Concerning any obstacles to Levona's raising of this issue in its petition to vacate within the applicable limitations period," *see* Dkt. No. 747-1 at RFP 19; *see also id.* at RFP 20(e), 21(e), 23, 25. Other request call for, inter alia, "All Documents and Communications" "sufficient to show Levona's request(s) for discovery of the At-Issue Documents and any response from the Arbitrator Concerning such request(s)," *id.* at RFP 21(a), and "sufficient to show that Levona sought to 'postpone the hearing' in order to obtain such discovery, and any response from the Arbitrator concerning such request(s)," *id.* at RFP 21(b). Such requests necessarily encompass confidential "communications" between QE and Levona relating to Levona's actions, decision-making, and legal strategy with respect to the arbitration. Those communications fall squarely

---

[5] QE has agreed to, and already has, produced documents sufficient to show when it received the At-Issue Documents. Dkt. No. 482 at 1. In addition, QE has offered that it would submit a declaration that it did not receive the withheld documents or learn about their contents outside of the proceedings in which they were produced. Dkt. No. 482 at 1 n.2.

within the classic definition of privileged attorney-client communications as communications "(1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011).

The same requests also implicate the work product doctrine. Work product protection applies to "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3). This definition does not apply only to counsel, and "[d]ocuments prepared by agents enlisted by legal counsel to perform investigative or analytical tasks to assist in preparing for litigation can be work product." *Spencer-Smith v. Ehrlich*, 2024 WL 4416581, at *4 (S.D.N.Y. Oct. 4, 2024). "The work product doctrine extends to the mental impressions and strategies of counsel, as well as to factual material including the result of a factual investigation." *Id.* "The work product doctrine, codified for the federal courts in Federal Rule of Civil Procedure 26(b)(3), is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998) (quoting *Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947)). Even fact work product can be obtained only "upon a showing of substantial need." *United States v. Ghavami*, 882 F. Supp.2d 532, 540 (S.D.N.Y. June 5, 2012). Intervenors' requests for documents relating to "any obstacles to Levona's raising of this issue in its petition to vacate within the applicable limitations period" would include significant attorney work product, including documents created by QE in the course of their advocacy for Levona such as internal legal memoranda, meeting notes, timelines, and drafts.

Intervenors have established neither the basis for a waiver of the privilege nor substantial need to overcome fact work product protection. They rely on three district court decisions that address the discoverability of privileged information in the context of a claim that the statute of limitations has been tolled. *See Johnson Matthey, Inc. v. Rsch. Corp.*, 2002 WL 1728566, *3 (S.D.N.Y. July 24, 2002) ("[T]he attorney-client privilege is waived when (1) a litigant seeks to avoid a statutory protection (such as a statute of limitations) by claiming that his adversary is estopped from relying upon it, and (2) there is a good faith basis to believe that the protected communications would shed light on the validity of this claim."); *Bohack Corp. v. Iowa Beef Processors*, 1981 WL 2018 (E.D.N.Y. 1981); *Connell v. Bernstein-Macaulay, Inc.*, 407 F. Supp. 420 (S.D.N.Y. 1976). Those decisions rest upon application of the 1975 decision of the Eastern District of Washington in *Hearn v. Rhay*, holding that the privilege was waived whenever a party through an affirmative act such as filing a lawsuit "put the protected information at issue by making it relevant to the case." 68 F.R.D. 574, 581 (E.D. Wash. 1975). But the Second Circuit has since disavowed *Hearn*. "[P]rivileged information may be in some sense *relevant* in any lawsuit" and therefore "[a] mere indication of a claim or defense certainly is insufficient to place legal advice at issue." *In re County of Erie*, 546 F.3d 222, 229 (2d Cir. 2008). An at-issue waiver applies only when a client (1) "testifies concerning portions of the attorney-client communication"; (2) "places the attorney-client relationship directly at issue"; or (3) "asserts reliance on an attorney's advice as an element of a claim or defense." *Id.* at 228 (internal citations and quotations omitted). The key to finding waiver in the third instance is that "a party must *rely* on privileged advice from his counsel to make his claim or defense." *Id.* at 229 (emphasis in the original).

There has been no at-issue waiver here.  Levona has not testified to the legal advice it received or placed the attorney-client relationship at issue.  Nor does it rely on privileged communications as an element of its claim for equitable tolling.  Levona's argument is not that its counsel had the At-Issue Documents and was responsible for not bringing them to this Court's attention earlier—such an argument might imply waiver.  Nor does it argue that it should be excused from complying with the statute of limitations because of its reasonable reliance on counsel or because of attorney error—such an argument  might also imply waiver.[6]  Rather, its argument has been that it could not have raised the issue of fraud without the At-Issue Documents and that it did not have the right to see or use the documents until given permission by the Bankruptcy Court and that when it received that permission it acted with appropriate alacrity in asserting its claim of fraud.  Intervenors do not need access to privileged documents to test those assertions.  They can be tested on the law and on whether the At-Issue and related documents were available independently.

Even if they were applicable, the cases cited by Intervenors do not support their argument.  In *Johnson Matthey*, the court, after surveying the relevant caselaw, held that a defendant challenging the plaintiff's assertion of equitable tolling could inquire of plaintiff itself (and not of its lawyers) when plaintiff learned certain facts, regardless whether it acquired that knowledge from counsel.  *See* 2002 WL 1728566, at *4.  The court's ruling is coextensive with the ruling here.  Intervenors may inquire when Levona learned of the At-Issue Documents without asking that question of Levona's counsel.  In *Connell*, the plaintiffs claimed that defendants should be estopped from relying on the statute of limitations because the plaintiffs

---

[6] The Second Circuit has held that "a want of diligence by a plaintiff's attorney generally will not prompt a court to provide relief from a limitations period by way of an equitable toll." *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002).

held off on filing suit based on the defendants' representations that they were taking steps to retore their financial health.  *See* 407 F. Supp. at 422.  The court accordingly held that the defendants were entitled to inquire, via deposition *of the plaintiffs*, into the plaintiffs' communications with their counsel because memoranda from plaintiffs' files already produced in discovery had provided a good-faith basis to believe that communications between plaintiffs and their counsel would show that there were other reasons for not timely filing suit.  *Id.* at 423.  Here, by contrast, Intervenors have offered no evidence to rebut the otherwise logical inference that the reason that QE did not bring its motion to amend to this Court earlier was because, as a result of Eletson's efforts in the Bankruptcy Court, it was not able to use the documents earlier.[7]  Even if Intervenors had proffered such evidence, it might entitle them to probe Levona regarding such communications, but likely would not entitle Intervenors to probe QE unless it could be shown that the information could not be had from other sources.

Finally, as to "the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation," it is significant that QE is trial counsel for Levona in this case and the discovery sought directly concerns QE's efforts related to this case.  *Friedman*, 350 F.3d at 71.  Attempts to "subpoena a lawyer who either was actively litigating the case on the other party's behalf or who was associated with trial counsel" run a much greater risk of intrusion on the attorney-client relationship than subpoenas to former lawyers or corporate counsel.  *Rekor Sys., Inc. v. Loughlin*, 2022 WL 671908, at *2 (S.D.N.Y. Mar. 7, 2022) (collecting cases).

---

[7] *Bohack* is to similar effect, standing for the proposition that a party may not claim ignorance of facts that would give rise to a claim while at the same time shielding from production the very documents that would be necessary to test whether the party had earlier knowledge of those facts.  *See* 1981 WL 2018, at *2–3.

Given the low relevance of the information requested to Intervenors' claims and the clear "risk of encountering privilege and work-product issues," *Friedman*, 350 F.3d at 72, Intervenors' document requests to QE constitute an undue burden.  Accordingly, Intervenors' motion to compel a response to RFPs 4 and 19–25 is denied, with the narrow exception of the documents that QE has already produced "sufficient to show" when the At-Issue Documents were first received.

## III.    Motion to Quash

On July 9, 2025, Intervenors served QE with a Rule 30(b)(6) Subpoena to Testify at a Deposition on July 24, 2025.  Dkt. Nos. 514, 514-1.  The Subpoena seeks testimony regarding, *inter alia*, each At-Issue Document, including "what is the relationship of each to Peter Kanelos," and QE's "diligence and timing in seeking information concerning" the At-Issue Documents, and  "[c]ommunications involving Peter Kanelos."  Dkt. No. 514-1 at 5.  In response, QE offered instead to "designate a witness to testify to the limited issue on which it has agreed to produce documents: when it received the [At-Issue] Documents or was otherwise advised of their substance."  Dkt. No. 513 at 3.  Intervenors rejected the offer, *id.*, and QE moved to quash the deposition subpoena, Dkt. No. 512.

In cases where lawyers have been compelled to be witnesses, they have generally had percipient knowledge not in the possession, custody, or control of the client.  *See Chevron Corp.*, 749 F. Supp. 2d at 163 ("[T]he proposed discovery focuses on matters concerning which Donziger is a percipient witness and a principal actor."); *Rekor Sys*, 2022 WL 671908, at *2 ("With respect to at least one potentially relevant event post-acquisition, [counsel] was only one of two percipient witnesses and questions have been raised about the competence of the other percipient witness."); *U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 2000 WL 1253262, at *3 (S.D.N.Y. Sept. 1, 2000) ("[T]he information sought through the attorney depositions at issue

cannot, as a practical matter, be obtained through other sources."); *Johnston Dev. Grp., Inc. v. Carpenters Loc. Union No. 1578*, 130 F.R.D. 348, 354 (D.N.J. 1990) ("The importance and degree of uniqueness of [counsel's] information outweighs the potential negative impact upon the attorney-client relationship and the adversary process.").  There is no reason here to believe that QE knew before Levona knew and independent of Levona of the At-Issue Documents.  Accordingly, a deposition of QE would not yield information that could not be obtained from Levona.

For all of the reasons set forth above with respect to Intervenors' requests for document production, the Court likewise grants QE's motion to quash the deposition subpoena.  Deposition of current trial counsel runs an even higher risk of intrusion into the attorney-client relationship than document discovery of counsel.  In deposition, the client's ability to timely assert its own privilege may be impaired, and the potential to inadvertently reveal privileged information may be greater.  *See Liner Freedman*, 2025 WL 2205973, at *5 ("[T]he production of documents is a more controlled form of discovery than a deposition, is less susceptible to harassment, and may have a lower risk of revealing privileged materials or an attorney's mental impressions.").

As set forth above, attorneys do not have absolute protection from being deposed in relation to their client's cases.  However, Intervenors have proffered no basis to believe that QE has any knowledge of the facts relevant to the At-Issue Documents, their contents, or their relationship to Peter Kanelos that would not be available through deposition of Levona's representatives, or through deposition of related third parties.

Accordingly, the motion to quash the deposition subpoena is granted.

## CONCLUSION

Intervenors' motion to compel is DENIED, and QE's motion to quash is GRANTED.

The Clerk of Court is respectfully directed to close Dkt. Nos. 474, 512.

SO ORDERED.

Dated: August 8, 2025
      New York, New York
                                         LEWIS J. LIMAN
                              United States District Judge