```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/26/2025
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                                   :
ELETSON HOLDINGS INC. and ELETSON                                  :
CORPORATION,                                                       :
                                                                   :
                          Cross-Respondents,                       :     23-cv-7331 (LJL)
                                                                   :
              -v-                                                  :     MEMORANDUM AND
                                                                   :           ORDER
LEVONA HOLDINGS LTD.,                                              :
                                                                   :
                          Cross-Petitioner,                        :
                                                                   :
         and                                                       :
                                                                   :
APARGO LIMITED, FENTALON                                           :
LIMITED, and DESIMUSCO TRADING                                     :
LIMITED,                                                           :
                                                                   :
                          Intervenors.                             :
-------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Cross-Petitioner Levona Holdings Ltd. moves, pursuant to Federal Rule of Civil Procedure 37(a), to compel Eletson Holdings ("Holdings") and Eletson Corp. ("Corp." and collectively with Holdings, "Eletson") to produce, through its counsel Goulston & Storrs P.C., documents called for by Levona's request for production. Dkt. No. 457.[1] The motion is granted in part.

I.    **Procedural History**

On September 25, 2024, Levona served document requests ("RFPs") on Eletson. Dkt. No. 178-1. At the time of the service of the document requests, the United States Bankruptcy Court for the Southern District of New York was considering competing plans for the

---

[1] Unless otherwise noted, citations in this order are to the S.D.N.Y. docket in Case No. 23-cv-7331.

reorganization of Holdings, whose Chapter 7 petition for protection had been voluntarily converted in September 2023 into a case under Chapter 11 of the Bankruptcy Code. *See In re Eletson Holdings Inc. et al.* ("*Bankruptcy Proceeding*"), No. 23-10322 (Bankr. S.D.N.Y.); Bankr. Dkt. No. 215. On October 25, 2024, the Bankruptcy Court entered a memorandum and order confirming the Chapter 11 plan (the "Plan"), Dkt. No. 202-3, submitted by Pach Shemen, a creditor to Holdings, and two other creditors (together, the "Petitioning Creditors"), rejecting a competing plan submitted by the Debtors as unconfirmable. Bankr. Dkt. No. 1212 (the "Confirmation Opinion"). Pach Shemen is related to Levona through common ownership. *Id.* at 20–22. On November 4, 2024, the Bankruptcy Court entered an order setting forth its findings of fact and conclusions of law in support of the plan confirmation, overruling the objections of the Debtors and its former shareholders. Bankr. Dkt. 1223 (the "Confirmation Order"); *see also Eletson Holdings Inc. v. Levona Holdings Ltd.*, 2025 WL 893686, at *2 (S.D.N.Y. Mar. 24, 2025). On November 7, 2024, a notice of appeal was filed on behalf of Holdings of the Confirmation Opinion, Bankr. Dkt. No. 1233,[2] but no notice of appeal was filed of the Confirmation Order. Perhaps inexplicably, no party sought a stay of the Confirmation Order or filed the bond that would be necessary to obtain a stay. On November 19, 2024, Holdings waived all conditions precedent and the Plan became effective. Bankr. Dkt. No. 1258.

---

[2] The appeal of the Confirmation Opinion was referred to this Court as related to the arbitration action. *See* S.D.N.Y. Case No. 24-cv-8672. On November 25, 2024, Holdings, now represented by Goulston & Storrs, filed a stipulation and agreement to dismiss the appeal under Rule 8023 of the Federal Rules of Bankruptcy Procedure. Dkt. No. 9. The proposed stipulation noted that two of the three appellants had been deemed dissolved as a result of the Confirmation Order, that the representation of the remaining appellant, Holdings, had been terminated by operation of the Confirmation Order, and that Goulston had filed a notice of appearance on behalf of Holdings. *Id.* The Court approved the proposed stipulation after argument on December 30, 2025. Dkt. Nos. 19, 20. Reed Smith, purporting to represent Holdings, filed a notice of appeal on January 16, 2025, Dkt. No. 24, and that appeal is still pending. *See* Case No. 25-176. No stay has been granted regarding the Confirmation Opinion or Confirmation Order.

The Plan provided that control of Eletson Holdings would pass from its former equity holders and board to Pach Shemen and a new board selected by the Petitioning Creditors and the Creditors Committee. On the effective date of the Plan, the members of the governing body of each Debtor prior to the Effective Date were "deemed to have resigned or otherwise ceased to be a director or manager of the applicable Debtor," Dkt. No. 202-3 § 5.10(c), and retention of all professionals by Debtors terminated. *Id*. § 2.5(a). The Confirmation Order directed that the Debtors and Petitioning Creditors, including their related parties, "cooperate in good faith to implement and consummate the Plan." Dkt. No. 1223 at 20.

Reed Smith, counsel to Eletson prior to its reorganization, nonetheless failed to turn over its client file and still purported to file documents on the docket on behalf of a client who had fired it. So, on January 7, 2025, Eletson moved for an order formally displacing Reed Smith as counsel of record and requiring that Reed Smith turn over its client file. Dkt. No. 242. The Court granted that motion. Dkt. Nos. 269, 270 (the "Turnover Order"). As the Court later elaborated, it had jurisdiction to enter the Turnover Order. *See* Dkt. No. 295 at 12–22. In addition, under established Supreme Court precedent, control of Holdings' privilege passed to Holdings' new owners along with the transfer of control of the company through the plan of confirmation. *See id.* at 28 (citing *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 358 (1985)). The Court also held that Reed Smith did not personally hold a retaining lien over the client file by virtue of the Plan's terms and, even if it did, any injury it suffered by having to turn over the client file could be addressed by money damages in the form of requiring Holdings to pay Reed Smith any monies due. *Id.* at 31–35. The Court further noted that the putative alternative board of Holdings had not appeared in the case nor had any other party that

3

could claim to be a privilege holder—such parties had thereby declined the Court's invitation to subject themselves to its jurisdiction. *Id.* at 11.

On February 24, 2025, Reed Smith filed an appeal from the Turnover Order. Dkt. No. 272. On April 16, 2025, the Second Circuit granted the motion for a temporary stay of the Turnover Order pending review by a three-judge panel. Dkt. No. 316.

On June 11, 2025, Bankruptcy Judge Mastando issued an order authorizing and directing Microsoft Corp. to suspend existing user accounts belonging to the Debtors' former management and to provide administrator-level access for Eletson Holdings and its designees in the bankruptcy case. Bankr. Dkt. No. 1691 (the "Microsoft Order"). Judge Mastando recognized that "this information should have been exchanged pursuant to multiple orders of this Court." Bankr. Dkt. No. 1695, June 2, 2025 Hearing Transcript at 31:2–31:4. The Microsoft Order was issued over the objection of Reed Smith, which both submitted a letter to the Bankruptcy Court in advance of the hearing and attended the hearing.[3] Bankr. Dkt. Nos. 1678, 1695.

On the same day that the Microsoft Order was issued, and while the request for a stay pending appeal of the Turnover Order was still pending, Reed Smith moved before the Second Circuit for an order enjoining Eletson and Levona from "taking any further steps to obtain the privileged documents" subject to the appeal of the Turnover Order in Case No. 25-445 (the "Turnover Appeal"), and for a "stay of any further proceedings . . . relating to any privileged documents of Eletson" before this Court in the instant arbitration action (S.D.N.Y. Case No. 23-cv-7331) and before the Bankruptcy Court (Bankr. S.D.N.Y. Case No. 23-bk-10322). Turnover

---

[3] Reed Smith has submitted a letter to the Court signed by Mr. Solomon stating that "the undersigned counsel" did not attend the hearing. Dkt. No. 468 at 2. The statement is misleading. It omits the fact that another partner from Reed Smith attended the hearing and participated fulsomely. *See* Bankr. Dkt. No. 1695, Tr. at 9:17–9:20; 23:21–25:13; 29:6–30:12.

4

Appeal Dkt. No. 62.2 at 1.  In that motion, Reed Smith expressly raised to the Second Circuit's attention the fact of the Microsoft Order and the concern that Holdings would be entitled to access and review those computer systems "without the obvious carveout for privileged documents." *Id.* at 9.  It claimed, without factual support, that Holdings would be able to "obtain access to the very same privileged documents at issue in this appeal." *Id.* at 9–10.  In sum, the fact that the Microsoft servers would likely contain copies of some documents that were also in the Reed Smith client file was squarely presented to the Circuit.

On June 25, 2025, the Second Circuit entered an administrative stay (the "Administrative Stay Order").  The Circuit stayed the Turnover Order, i.e., this Court's order requiring Reed Smith to turn over the Eletson client file to Eletson.  *See* Dkt. No. 450; Turnover Appeal Dkt. No. 66.  It rejected Reed Smith's argument for a broader stay.  The Order stated that the panel "decline[s] to grant Appellant's request to stay the district court or bankruptcy court proceedings." *Id.*  The Circuit added, without further elaboration, that the panel "trust[s] that both courts will tailor their proceedings to protect the privileged property at issue." *Id.*

Not content with that ruling, Reed Smith moved before the Second Circuit on July 14, 2025 for an emergency stay enjoining Eletson and Levona from "from reviewing, transferring, disclosing, or using in any way documents obtained from Eletson Holdings' computer systems, including specifically any documents as to which [Provisional Holdings] has any claim of privilege" and "require[ing] those parties to sequester the Eletson Documents in their possession." Turnover Appeal Dkt. No. 74.1 at 1.  On July 18, 2025, the Circuit denied the request for an emergency stay, referring the pending appeal to a three-judge panel.  *See* Turnover Appeal Dkt. No. 88.

5

## II.     Discussion

Eletson, through its current counsel Goulston & Storrs, has informed Levona that it possesses large quantities of documents obtained pursuant to the Microsoft Order, many of which are responsive to Levona's document demands. *See* Dkt. No. 457 at 2; *see also* Dkt. No. 471 at 2. Reed Smith filed a letter with the Bankruptcy Court in which it threatened anyone who viewed or used privileged documents in the Eletson server with sanctions and disqualification. Bankr. Dkt. No. 1707 at 2. Because of threats from Reed Smith, Eletson has not produced the requested documents from the Microsoft server to Levona.

Levona moves to compel Eletson, through Goulston & Storrs, to produce or log through a privilege log any documents in its possession, custody, or control that are responsive to the RFPs, including documents obtained pursuant to the Microsoft Order. Dkt. No. 457 at 2. Eletson does not oppose the motion but asks that, instead of being required to produce the documents immediately, the Court order that it and Levona meet and confer on the appropriate means for such review and production to occur within the timeframe of this proceeding. Dkt. No. 471 at 3. It also asks for an order making it explicit that Eletson and its counsel will not be subject to sanctions of disqualification for complying with the Court's order. *Id.*

Reed Smith on its own behalf and on behalf of its "clients," joined by Intervenors, opposes the motion. Dkt. Nos. 468, 470. Reed Smith argues that (1) "the Microsoft Order violated the Circuit's Administrative Stay" in the separate appeal of the Turnover Order; (2) Holdings should not have taken possession of the documents because Reed Smith "advised it on June 10 that it would be seeking an imminent stay in the Circuit of the bankruptcy proceedings involving the privileged documents'; and (3) granting Levona's motion would violate the Administrative Stay Order because documents on the Microsoft server would include documents

6

and information part of the Eletson file. Dkt. No. 468 at 2–3. There are numerous flaws in Reed Smith's argument.

First, it is dubious that any of Reed Smith, its "clients," or Intervenors have standing to object to Levona's discovery request propounded on Eletson. Reed Smith purports to represent something called "Provisional Holdings," Dkt. No. 468 at 2, or "Holdings (Greece)," Dkt. No. 545 at 1. But there is no legal entity called "Provisional Holdings" or "Holdings (Greece)," and thus it has no standing to appear in federal court. "[L]egal existence under state (or, in this case, foreign) law [is] a condition of Article III standing." *Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 386 (2d Cir. 2021) (holding that fund dissolved by operation of foreign law lacked standing). "[W]ithout legal existence, [a person] lack[s] standing to sue." *Id.* at 384; *see Brown v. Fifth Jud. Dist. Drug Task Force*, 255 F.3d 475, 477 (8th Cir. 2001) (explaining that "the questions of legal or juridical existence and capacity to sue and be sued are distinct, and that a group of persons working together for a common purpose must first be found to have legal existence before the question of capacity to sue or be sued can arise"). "Provisional Holdings" is without legal existence, and so fails that "condition" of standing. As previously stated, Reed Smith's representation of Holdings was terminated as a result of the Confirmation Order which became effective in November 2024 and was not appealed or stayed. Provisional Holdings' putative legal existence rested upon the order of a single-member Court of First Instance of Piraeus in Greece, Maritime Department, Non-Contentious Proceedings, which Holdings' former shareholders obtained on an *ex parte* basis on November 12, 2024, and which appointed an interim board on a provisional basis comprised of members of the families that formerly held Holdings. Dkt. No. 49-2. The order, among other things, authorized the "interim board" to appoint attorneys to act on behalf of Holdings to challenge the confirmation order of the

7

Bankruptcy Court. *Id.* The "provisional board" has never appeared in this case or moved to intervene and thus its standing to object to the discovery motion itself is in question. But, as important, on June 6, 2025, the Court of First Instance of Piraeus in Greece issued an order dismissing the *ex parte* petition of the so-called Provisional Board. That court stated that "[t]he claim that the voluntary bankruptcy of the U.S. Bankruptcy Court – Southern District of New York on October 25, 2024, and the court order of November 4, 2024, confirming the same, pursuant to which the shareholding structure of the company was changed . . . and the above Board of Directors was appointed, have no legal effect in Greece, is unfounded." Bankr. Dkt. No. 1687 at 11.[4] The foreign action that created "Provisional Holdings" having itself been dismissed, Reed Smith presents no evidence whatsoever that such entity enjoys legal existence under the laws of Greece or any other jurisdiction.

Reed Smith itself does not have standing. The RFPs are not directed to it. *Cf. Silverstone Holding Grp., LLC v. Zhongtie Dacheng (Zhuhai) Inv. Mgmt. Co.*, 650 F. Supp. 3d 199, 202 (S.D.N.Y. 2023) ("[A] non-recipient 'lacks standing to challenge subpoenas issued to non-parties on the grounds of relevancy or undue burden.'"); *Oakley v. MSG Networks, Inc.*, 2024 WL 5056111, at *3 (S.D.N.Y. Dec. 10, 2024) ("[T]he Second Circuit has made clear that 'a party usually does not have standing to object to a subpoena directed to a non-party witness.'" (quoting *Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2d Cir. 1975))). "A party may not ask for an order to protect the rights of another party or a witness if that party or witness does not claim protection for himself," but may only seek protection if "its own interest is jeopardized by

---

[4] The Court recognizes that the Second Circuit, in referring the appeal filed in the name of Eletson Holdings Inc. to a merits panel, has stated that it was not deciding whether the parties' descriptions of themselves was accurate or foreclosing the parties from raising before the merits panel "who controls Eletson Holdings, Inc., and what effect that control has on the appeal." Dkt. No. 450. For that reason, the Court goes on to discuss the merits.

8

discovery sought from a third person." 8A Wright & Miller's Federal Practice & Procedure § 2035 (3d ed.). Reed Smith has not asserted a personal or property interest in Eletson's files, privileged or non-privileged, nor could it have such an interest. In opposition to the request for the Turnover Order, Reed Smith asserted a proprietary interest in the client file. Under New York law, a law firm which is owed fees has the right to retain a client file until it is paid. *See Gardner-Alfred v. Fed. Rsrv. Bank of New York*, 2022 WL 17961594, at *2 (S.D.N.Y. Dec. 27, 2022); *Schneider, Kleinick, Weitz, Damashek & Shoot v. City of New York*, 754 N.Y.S.2d 220, 223 (1st Dep't 2002); *see also Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn L.L.P.*, 689 N.E.2d 879, 881 (N.Y. 1997) (concluding that under New York law, "upon termination of the attorney-client relationship, where no claim for unpaid legal fees is outstanding," the client is "presumptively accord[ed] . . . full access to the entire attorney's file on a represented matter with narrow exceptions"). But the retaining lien applies only to documents in the client file. It does not give a terminated law firm the right to claw back from its former client documents in the file of the former client. *See Gardner*, 2022 WL 17961594, at *2 ("The retaining lien—unlike the charging lien—'is founded upon physical possession, and an attorney may forfeit its retaining lien by voluntarily giving away any of the items to which it may have attached.'" (quoting *Schneider*, 754 N.Y.S.2d at 223); *see also id.* at *3 ("[I]f . . . the lien does not travel with the documents but is lost when the documents are shared with others, it follows that there is no obstacle to Defendant reproducing to Plaintiffs the documents Defendant obtained in the course of discovery as well as those Defendant produced in the course of discovery."). There is no claim that Reed Smith itself enjoys an attorney-client privilege; any such privilege would have been forfeited when it shared the documents with its then client, which was free to disclose the documents as it chose. Reed Smith itself has no right to control what Holdings does with

9

respect to the documents on the Microsoft server. Indeed, there has been no showing that it even authored or received any of the documents at issue. The fact that some documents may exist in duplicate in Eletson's possession and in the client file does not give Reed Smith a property interest in the copies that Eletson already possesses. Reed Smith's only conceivable interest is in protecting against the disclosure of information that could be damaging or embarrassing to it as a law firm, but that is not sufficient grounds for a non-party to object to the disclosure of plainly relevant information by one party to another.

For their part, Intervenors steadfastly have asserted that they are independent of Holdings (but are the owners of a different company, Eletson Gas LLC). *See* Dkt. No. 335 at 2. Undoubtedly, they have an interest with respect to the discovery that will be conducted of Levona's claim for vacatur. But there is no argument that the RFPs call for documents that are irrelevant to the arbitration action—indeed, the RFPs on their face call for some of the most relevant information to the question of fraud in the arbitration. Intervenors assert no protectible interest in the Microsoft documents themselves.

Second, if Reed Smith or its "clients" believed that the Microsoft Order violated the Circuit's Administrative Stay Order and thus that Holdings could not access the documents on the Microsoft server, it had the means to ask either the Bankruptcy Court or this Court on appeal to stay the Microsoft Order. If a party believes that an order of the bankruptcy court is in error, it can appeal. *See In re Adelphia Commc'ns Corp.*, 333 B.R. 649, 656 (S.D.N.Y. 2005) ("Final orders of the bankruptcy court may be appealed to the district court as of right." (citing 28 U.S.C. § 158(a)(1)). And, if a party wishes to stay the effect of that order, it may and ordinarily must first move in the bankruptcy court for a stay of the order pending appeal. *See* Fed. R. Bankr. P. 8007(a)(1)(A). If it does not obtain relief there, it may also ask for a stay in the court where the

appeal is pending. *See* Fed. R. Bankr. P. 8007(b). In those instances, the court may condition relief upon the filing of a bond or other security with the bankruptcy court. *See* Fed. R. Bankr. P. 8007(c). Reed Smith and its "client" did not seek a stay from the Bankruptcy Court or from this Court in its appeal of the Microsoft Order. Nor did they post a bond. Reed Smith's request for an emergency stay pending appeal to the Second Circuit was rejected. The only issue properly before this Court on this motion is whether, under the Federal Rules of Civil Procedure governing discovery, Levona is entitled to the production of documents from Eletson. Levona is entitled to such production and, to the extent Eletson asserts a privilege, Levona is entitled to a privilege log. In effect, Reed Smith is seeking to obtain from this Court, in connection with the motion to vacate an arbitration award, the relief it failed to obtain from the Bankruptcy Court and failed to seek on appeal from the Bankruptcy Court's Confirmation Order, the proper fora for raising the issues Reed Smith now raises.

Finally, even if (1) there were a party with standing to object to the request, and (2) this Court in this case were the proper court to determine whether the Microsoft Order violated the Administrative Stay Order, and (3) the issue was properly presented in this Court on a motion to compel the production of documents, Reed Smith's argument would be without merit. The Second Circuit, though granting a stay of the Turnover Order, denied Reed Smith's request that the proceedings in this Court and the bankruptcy court be stayed, and subsequently denied Reed Smith's request for an emergency stay pending appeal. In short, the Second Circuit has had multiple opportunities to halt the process by which Eletson accesses and reviews the contents of the Microsoft server, which it owns pursuant to the unappealed and unstayed Confirmation Order. The Circuit has declined those invitations to act on an emergency posture. It trusted both courts to tailor their proceedings to protect the "privileged property at issue" in the Turnover

11

Appeal. This Court has done so by continuing to protect the asserted property interest that Reed Smith has claimed over *its own client file* and thereby to honor Reed Smith's request, as presented to the Second Circuit, that this Court not take action that would moot its appeal of the Turnover Order. At the same time, the Court has permitted Eletson to review the documents in its possession, custody, and control and determine which of them is responsive to the RFPs and then, making the privilege calls that it alone has the power to make, to prepare a privilege log listing those documents as to which it claims a privilege.[5] The Administrative Stay Order does not shield from potential production documents in the possession of Eletson. To hold otherwise would be to halt these proceedings in their tracks, which the Second Circuit has declined to do.

### III.   Conclusion

Levona's motion to compel the production of documents responsive to its RFPs from Eletson is GRANTED IN PART. Eletson shall produce the documents responsive to the RFPs, including from the Microsoft Server and, to the extent it asserts a privilege, shall produce a privilege log. Eletson and Levona are directed to meet and confer on the appropriate means for such review and production to occur within the timeframe of this proceeding. Eletson further seeks an order that it will not be subject to sanctions of disqualification for complying with this Court's order. Eletson has no choice but to comply with the Court's order. Accordingly, it will not be subject to sanctions from this Court; the Court further assumes it will not be subject to sanctions or disqualification from any other court for the actions that it is required to take by order of this Court.

---

[5] If the former owners or shareholders believed that there was a particular subset of documents as to which they enjoyed a claim of privilege as against Holdings, the time and place to have made that objection was in the Bankruptcy Court when the Microsoft Order was entered.

The Clerk of Court is respectfully directed to close Dkt. No. 457.

SO ORDERED.

Dated: August 26, 2025
      New York, New York

                                LEWIS J. LIMAN
                            United States District Judge