UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

ELETSON HOLDINGS, INC., ET AL.,

Petitioners,

v. 23 Civ. 7331 (LOM)

LEVONA HOLDINGS LTD.,

Decision

Respondent.

------------------------------x

New York, N.Y.
September 3, 2024
3:30 p.m.

Before:

HON. LEWIS J. LIMAN,

District Judge

APPEARANCES

REED SMITH LLP
Attorneys for Petitioners
BY: COLIN A. UNDERWOOD
LOUIS M. SOLOMON

QUINN EMANUEL URQUHART & SULLIVAN LLP
Attorneys for Respondent
BY: ISAAC NESSER
WILLIAM ADAMS

(Case called)

MR. UNDERWOOD: Good afternoon, your Honor. Lou Solomon and Colin Underwood.

THE COURT: Good afternoon.

MR. NESSER: Good afternoon, your Honor. It's Isaac Nesser and William Adams from Quinn Emmanuel.

THE COURT: Good afternoon. The Court is prepared to give its opinion from the bench with respect to the pending motion.

Respondent and Cross-Petitioner Levona Holdings, Ltd, whom I'll refer to as "Levona" or "Respondent", moves for leave to file an amended answer to the operative petition of Eletson Holdings Inc., whom I'll refer to as "Holdings", and Eletson Corporation, who I will refer to as "Corp", to confirm a final arbitration award and an amended cross-petition to vacate the award.

Levona also seeks discovery on the new affirmative defenses and new grounds for vacatur. I am prepared to announce my ruling. A more detailed opinion will follow. The proposed amendment is at Dkt. No. 127-36. Levona seeks to add the following affirmative defenses to its answer: that it was unable to present its case during the arbitration under Article V(1)(b) of the New York Convention, that the award was procured by fraud or undue means under 28 U.S.C. § 10(a)(1), and that there was arbitrator misconduct under 28 U.S.C. § 10(a)(3).

Dkt. No. 136 at 5; Dkt. 127-37. It seeks to add the following additional ground to its motion to vacate the award: that the award was procured by fraud or undue means under 28 U.S.C. § 10(a)(1) and that there was arbitrator misconduct under 28 U.S.C. § 10(a)(3). Judgment has not yet been entered in this case.

Levona's motion is based on four documents that Eletson was compelled to produce in a bankruptcy proceeding in which Holdings is the debtor and Levona is a creditor. The documents were produced on March 18, 2024, subject to a protective order, but Levona was given leave to disclose the documents to this Court only on June 18, 2024. This motion was filed just weeks later, on July 3, 2024. Dkt. No. 123.

The newly-produced documents, if the inferences for which Levona argues are to be credited, undermine Eletson's arguments and proof with respect to a pivotal issue in the arbitration. Contrary to Eletson's argument, the documents are not irrelevant to the arbitration. They are highly relevant both to the arbitration and to the proceedings before this Court.

A pivotal question in the arbitration was whether Eletson had properly exercised the right granted it in the BOL to purchase Levona's Preferred Interests in the Company. Eletson's affirmative claims and Levona's counterclaims turned upon the answer to that question. Through the BOL and related

documents, the Company had transferred to Levona two of its ships—the Symi and the Telendos—in exchange for a cash infusion by Levona in the form of working capital of up to $10,000,000 and a limited option to buy Levona out of its Preferred Interests in the Company, which I will refer to as the "Purchase Option."

The Purchase Option was exercisable only during a limited time period and under limited circumstances. It expired if not exercised within 30 days of the February 22, 2022 date of the BOL. Dkt. No. 67-10 § 2.3. It could only be exercised if either (a) the Loan and any Interest accrued thereon was fully repaid; or (b) adequate security and/or collateral was provided for the Loan, with the adequacy of the security to be at the sole discretion of Levona. *Id.* § 2.2.

Eletson claimed at the arbitration, and the Arbitrator accepted, that the Purchase Option was exercised on March 11, 2022, when Eletson executed a series of documents to sell its interests in the Symi and Telendos to Levona. Eletson further claimed and the Arbitrator accepted, that Eletson need not have either repaid the Loan or provided adequate security for the repayment of the Loan. It claimed that it only needed to have provided collateral—which it did when it transferred Corp's claims against the Company to Levona—despite the fact that the BOL, independent of any collateral, required Eletson to transfer Corp's claims against the Company until the Loan was

paid off in full and that, in any event, Levona's rights under the Loan were senior to those of Corp.

Levona claimed that the Purchase Option was not exercised. It argued that Eletson never provided adequate security or collateral to Levona, nor did Eletson provide notice of the exercise of the Purchase Option, and the transfer of the vessels was consideration for the Purchase Option itself and not the Purchase Option consideration payable upon exercise of the Purchase Option.

The newly-produced documents, if the reasonable inferences that can be drawn from them are accepted after discovery, would undermine Eletson's arguments. They tend to show that the option was not exercised in March 2022 and that Eletson continued after that date in its efforts to buy the Preferred Interests, efforts in which it would never have engaged had it already exercised the option. The documents include a July 25, 2022, email from Marina Orfanoudaki, Corp's Group Financial Controller, to Peter Kanelos for the "Buyout of Murchinson." Dkt. No. 127-4. The communication addresses the financing necessary to fund the repayment of the loan and to purchase the Murchinson partnership share, which the documents suggest refer to the Preferred Interests.

The email reflects that Eletson was considering purchasing the Preferred Interests of Levona for $36.2 million, far in excess of the amount under the BOL if the Purchase

Option had been exercised in March 2022. The documents also include (1) a second July 25, 2022, email, also from the Group Financial Controller, describing the procedures for a Murchinson buyout and containing an updated cash flow model, Dkt. No. 127-5; (2) an August 12, 2022, email from Kanelos to Kertsikoff with the subject line "Investor Model for Murchinson Buyout" that contemplated an additional $12.5 million to be used "in negotiations with Murchinson for acquisition of preferred shares," in addition to $23 million net sale proceeds from the sale of the vessels "to be applied towards Murchinson," Dkt. No. 127-8; (3) an August 18, 2022, email from Corp's Treasury and Corporate Finance Manager to Kanelos containing a "revised model" that contemplated that Eletson would repay the working capital facility and provide $23 million from the sale of the two vessels and a residual $2.2 million from other funding for the Murchinson's Exit Payment, Dkt. No. 127-9; and (4) a detailed model sent by Eletson's CFO, and copying Kertsikoff, to financial advisory firm Castalia Partners and to an individual at private equity firm Austen Grove Capital, for a minority investment in Eletson Gas that contains an entry for "Murchinson's Exit Payment" that contemplates repayment of the working capital, $23 million from the sale of the vessels, and a residual amount of $2.2 million, Dkt. No. 137-1 at 7.

The documents also refer to an August 13 engagement

letter between Kertsikoff and Castalia Partners "in regards to capital raising for Eletson Gas." Dkt. No. 137-1 at 5. Thus, according to the documents which Eletson was compelled to produce during the bankruptcy proceeding, the story told by Eletson to the arbitrator was untrue. As late as August 2022, after Eletson had filed the arbitration, Eletson was trying to raise funds in order to purchase the Preferred Interests and was contemplating that it would have to pay more for those interests than contemplated under the Purchase Option.

Eletson argues that the motion is untimely and that it would be futile. The Court rejects those arguments.

Equitable tolling applies. "Equitable tolling is a doctrine that permits courts to extend a statute of limitations on a case-by-case basis to prevent inequity." *Doe v. United States*, 76 F.4th 64, 71 (2d Cir. 2023) (citing *Warren v. Garvin*, 219 F.3d 111, 113 (2d Cir. 2000)). It is "a background principle against which Congress drafts limitation periods." *Boechler, P.C. v. Comm'r of Internal Revenue*, 596 U.S. 199, 209 (2022). Congress need not explicitly state that a statutory time limit can be equitably tolled for a court to conclude that the statute is subject to equitable tolling. See *Holland v. Florida*, 560 U.S. 631, 647 (2010). In determining whether a statute is subject to equitable tolling, the court considers whether the statute at issue "(1) sets forth its time limitations in unusually emphatic form"; (2) uses "highly

detailed" and "technical" language "that, linguistically speaking, cannot easily be read as containing implicit exceptions"; (3) "reiterates its limitations several times in several different ways"; (4) relates to an "underlying subject matter,.. with respect to which the practical consequences of permitting tolling would be substantial"; and (5) would, if tolled, require tolling, not only procedural limitations, but also substantive limitations on the amount of recovery." *Holland*, 560 U.S. at 646-47.

The FAA contains none of the features that the Supreme Court has found sufficient to rebut the presumption in favor of equitable tolling. The language used to set forth the time period is not particularly emphatic nor highly technical. Section 12 provides that notice of a motion to vacate "must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12. Save for the use of the word "motion" instead of "complaint," the language is indistinguishable from that customarily used for statutes of limitations, *See, e.g.*, N.Y. C.P.L.R. § 213.

The word "must" is less emphatic than the language of the Federal Tort Claims Act (FTCA") that states claims are "forever barred" after a certain time period and yet the Supreme Court has found the FTCA subject to equitable tolling. See *U.S. v. Wong*, 575 U.S. 402, 420 (2015). The three-month limitation is not unusually generous. The three-month

limitations period is one of the shortest, if not the shortest, in the federal code; there is nothing about it that suggests Congress intended to preclude equitable tolling.

Finally, allowing tolling in the limited circumstances in which the bar for tolling is met would not have significant practical consequences nor would it require tolling substantive limitations on the amount of recovery. To the extent Eletson expresses the concern that recognition of equitable tolling would permit the losing party in an arbitration the ability for an indeterminate time into the future to upset an award and thereby undermine the summary nature of arbitration proceedings in federal court, the FAA already provides an answer to that concern.

The prevailing party in the arbitration can apply for confirmation and seek a judgment. After that time, to the extent the losing party theoretically retains any right to move "to vacate, modify, or correct an award," it would be ineffectual. The losing party if a judgment is entered might have rights under Federal Rule of Civil Procedure 60(b), but see *Arrowood Indem. Co. v. Equitas Ins. Ltd.*, 2015 WL 2258260, at *3-4 (S.D.N.Y. May 14, 2015), but could not obtain any relief from Section 12, regardless whether equitable tolling would otherwise apply.

Thus, as the Ninth Circuit has observed, despite the FAA's interest in swift and limited judicial review of arbitral

awards, "the arbitral process will not be disrupted if parties are permitted to satisfy the high bar of equitable tolling in limited circumstances." See *Move, Inc. v. Citigroup Global Markets, Inc.*, 840 F.3d 1152, 1155 (9th Cir. 2016).

Eletson argues that equitable tolling does not apply because the FAA's limitation period is "jurisdictional." See Dkt. No. 147 at ECF p. 19. However, the courts "treat a procedural requirement as jurisdictional only if Congress 'clearly states' that it is." *Boechler*, 596 U.S. at 203 (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515 (2006)). Here, as in *Harrow v. Dep't of Def.*, 601 U.S. 480, 485 (2024), the FAA makes no mention of the court's authority to hear the case nor is the FAA a statute the Supreme Court has previously defined as jurisdictional. Compare *John R. Sand & Gravel Co. v. U.S.*, 552 U.S. 130, 132, 137 (2008). Nor does the FAA fall under the "exception" to the general presumption of the availability of equitable tolling for statutes that involve an appeal from one Article III court to another.

Levona has also identified sufficient facts to create a triable issue that equitable tolling applies. A statute of limitations is equitably tolled only when the party seeking to avoid its effect shows that it has been pursuing its rights diligently and some extraordinary circumstance stood in his way to prevent timely filing. *Holland*, 560 U.S. at 649; see also *A.Q.C. ex rel. Castillo v. U.S.*, 656 F.3d 135, 144 (2d Cir.

2011 (equitable tolling is a drastic remedy applicable only in rare and exceptional circumstances). "The term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period." *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011).

With respect to diligence, a party must act "as diligently as reasonably could have been expected under the circumstances" and "throughout the period he seeks to toll." *Harper*, 648 F.3d at 139. Levona has presented evidence that Eletson committed fraud during the arbitral proceeding when it withheld critical evidence on the pivotal issue in that proceeding and its principal then lied under oath about the facts to which that evidence related and that it then constructed extraordinary barriers in the Bankruptcy Court to prevent Levona from uncovering the evidence of that fraud until after the limitations period for moving to vacate had expired. Dkt. No. 136 at ECF pp. 20, 26; Dkt. No. 149 at ECF pp. 13-14.

Levona also has presented evidence that it was reasonably diligent. It aggressively pursued the evidence that fraud was committed in the arbitration both during the arbitration and immediately thereafter. Eletson argues that Levona could have alleged fraud in its motion to vacate the arbitral award, even without the newly-produced documents. But to have done so, would have been reckless and potentially

sanctionable.

Levona did not have evidence of a fraud, much less clear and convincing evidence. It had only a suspicion. It did not have access to the documents or a right to see them. Even after it was able to see them, a protective order would have prevented Levona from using them or disclosing their contents in this Court. And Eletson vigorously fought Levona's efforts for relief from the protective order for Levona to make this Court aware of the documents.

To the extent that Eletson complains about the late-filing of this motion, Eletson itself was responsible for that late-filing. Levona promptly filed this motion as soon as Eletson's efforts to prevent Levona from disclosing the documents to this Court were finally rejected.

The Court need not address now whether Rule 15 would permit amendment absent the conditions for equitable tolling. The Court is dubious that it would and the Second Circuit has shared that skepticism. A panel of the Second Circuit has expressed "doubt" that "the generous Rule 15(a) standards for amending pleadings" apply to a "motion to vacate the arbitration award, which is not a pleading." *Loch View LLC v. Seneca Ins. Co. Inc.*, No. 21-1008, 2022 WL 1210664, at *2 (2d Cir. Apr. 25, 2022).

The Court also need not address now whether an amendment, if permitted, would relate back. The Court briefly

addresses the discretionary factors if an amendment would relate back. Eletson argues that an amendment is not permissible because Levona is guilty of undue delay and has acted in bad faith, that an amendment would be futile, and that Eletson would be prejudiced by an amendment. None of those arguments has merit. The Court's conclusions with respect to diligence and the materiality of the documents dispose of Eletson's arguments regarding delay and bad faith.

Eletson should not be heard to complain about delay. It frustrated Levona's ability to bring this motion earlier through its persistent and aggressive arguments in the Bankruptcy Court, which ultimately were rejected, including an argument that the Court finds to be incredulous that the documents were not relevant to the arbitration proceedings. Those conclusions also address prejudice.

Eletson complains that the proceedings in this Court will affect the rights of the creditors in the Bankruptcy Case, but Eletson itself is responsible for the issues raised by Levona not having been addressed by this Court earlier. The motion also is not futile. To establish a basis to vacate an award on grounds that it was "procured by corruption, fraud, or undue means," 9 U.S.C. § 10(a)(1), the movant must show "that (1) respondent engaged in fraudulent activity; (2) even with the exercise of due diligence, petitioner could not have discovered the fraud prior to the award issuing; and (3) the

fraud materially related to an issue in the arbitration." *Odeon Cap. Grp. LLC v. Ackerman*, 864 F.3d 191, 196 (2d Cir. 2017). Levona has presented evidence that, if credited, would show that Eletson engaged in fraudulent activity that Levona could not have discovered that went to a pivotal issue in the arbitration.

I should emphasize at this point that the Court has not made any definitive or conclusive findings of fact. It's ruling only on the motion to amend. The Court will permit discovery on facts relevant to equitable tolling and to whether the award was procured by fraud or undue means. "Discovery in a post-arbitration judicial proceeding to confirm or vacate is governed by the Federal Rules of Civil Procedure" and is available "in limited circumstances, where relevant and necessary to the determination of an issue raised by such an application." *Frere v. Orthofix, Inc.*, 2000 WL 1789641, at *4 (S.D.N.Y. Dec. 6, 2000).

Eletson's sole argument against discovery is that "Discovery is unwarranted given the glaring legal deficiencies in this motion, and particularly into the irrelevant and cumulative matters Levona apparently seeks to explore." Dkt No. 147 at 24. But the Court concludes that the motion does not have legal deficiencies, at least not those with respect to equitable tolling or with respect to the potential merits of the claim with respect to fraud on the arbitrator. And the

matters Levona seeks to explore are highly relevant and not cumulative.

Levona has proffered evidence that would suggest that the four documents at issue may be just the tip of the iceberg and that there may be other relevant documents that would support its claims that extraordinary circumstances prevented it from filing earlier and that fraud was committed in the arbitration.

So that's my ruling. I've not set any date with respect to discovery. Where do things stand with respect to the plan of arbitration? Because it occurs to me that it may be that I should have you back here immediately after there's a ruling with respect to the confirmation. Mr. Solomon?

MR. SOLOMON: Thank you, your Honor. I think your Honor was talking about the plaintiff confirmation. That is to be tried next week before Judge Mastando. He has not told us anything more than we're trying the issue of plan objections and the plan confirmation. So I've answered your Honor's question.

THE COURT: How long do you expect the trial to be before him?

MR. SOLOMON: He is saving the full week next week.

THE COURT: The full week. And you can defer answering if I'm asking an uncomfortable question, but do you have any expectation as to when he might rule with respect to

the plan for confirmation?

MR. SOLOMON: We do not, your Honor. He has not advised us. My sense is it's not going to take a long time, but I don't know. But with respect, I think if there needs to be discovery in this case and we have your Honor's ruling, we'd like to get about it. We still feel this is a statutory proceeding that needs to go expeditiously and in a summary way. And if your Honor wishes to have discovery, then we would like to get it done. We can then have the parties submit whatever they feel they need to submit to persuade your Honor under the applicable standard.

THE COURT: All right. Let me hear from the defendant with respect to that. It strikes me that there's some force to that argument. Right now, Eletson is represented by Mr. Solomon and Mr. Underwood. I have no reason to believe that the plan of confirmation would change anything, and Mr. Solomon is right that arbitration proceedings should receive attention from the Court and it should proceed without undue delay.

MR. NESSER: Your Honor, I don't think we have a strong objection to proceeding in that fashion. We did note in our letter a week or two ago that the -- one of the plans apparently that's being addressed at the hearing beginning on September 9 in the bankruptcy court would involve potentially a change of ownership and management of Eletson. If that were to

occur, certainly -- you know, Levona is not in the middle of a bankruptcy, but certainly if that were to occur, my sense is that that could have implications for how the proceedings here might or might not continue and what positions Eletson might or might not be interested in taking here.

So none of that is for us to speak to specifically, but we did want to again emphasize for the Court that that is a possibility. And to the extent the Court takes seriously that as a possibility, we leave open to the Court whether it might make sense to wait.

THE COURT: Mr. Solomon, I'll let you respond, but what I also have in mind is setting a time period which may be by the end of next week for you to meet and confer with the other side and put together a proposed plan for discovery and a proposed case management plan. Next week may be a busy week for you given the bankruptcy, so I am not committed to the end of next week.

MR. SOLOMON: And thank you, your Honor. The only time better than the end of next week is the end of this week in my judgment. There are -- as your Honor confirmed the award, there are other parties including gas, including the nominees, who have rights in this award, and nothing that is going to happen in the bankruptcy court -- I believe Judge Mastando should confirm the debtor's plan. Put that aside, nothing else is going to happen with respect to gas, nothing

that happens there is going to affect anything with respect to the other parties who have a keen interest in this matter. And so, it's for that reason that we would like to go here as expeditiously as possible.

We are undoubtedly going to need a meet-and-confer, and we're going to need some guidance. I think extending this and distending this further isn't going to profit anybody, including the court system. So if your Honor will give us a few days to talk to the other side about what discovery is necessary, I don't -- it's not the tip of the iceberg. We produced everything that we had that we knew about in the bankruptcy. It was not called for and your Honor did address in your Honor's opinion, but as expeditiously as we are able to go, we would like to go.

THE COURT: So I think people are not superstitious. Friday the 13th is as good a day, by 5:00 p.m., as any for either a joint case management plan or competing case management plans, and then for me to see you sometime the following week to finalize the case management plan.

My hope is that in the next several days I'll be able to get you a written opinion more fully laying out my reasoning. I don't know, Mr. Solomon, whether it will give you the guidance that you need, but there's always the case management conference that we will have the following week if there are issues that need to be resolved.

So that is my order, that by the 13th at 5:00 p.m., the parties submit a case management plan with respect to the discovery that I've indicated that I would permit, which is the discovery on the extraordinary circumstances that allegedly prevented Levona from filing earlier and that fraud was committed in the arbitration sufficient to invoke that provision of the arbitration act.

MR. SOLOMON: Thank you, your Honor. We're guided by your Honor's ruling. The discovery we intend is going to obviously have to be two-way. If there's a suggestion that there was fraud and Levona knew all about what it's claiming it did not know about, I think your Honor would want to know that as well.

THE COURT: I'm hearing you. I'm not expressing a view. And Mr. Nesser, you don't need to respond because there's nothing that is ripe for me to address at least at the moment. Let me give you a date during the week of the 16th to come back.

Does the 18th at 3:00 p.m. work for you, Mr. Solomon?

MR. SOLOMON: Pardon me, your Honor?

THE COURT: Mr. Nesser, why don't you look while Mr. Solomon is looking at his calendar.

MR. NESSER: Your Honor, I have to confess, I don't have my electronics here so I am without a calendar. I'm not

aware, standing here, of any conflicts on 18th.

THE COURT: I do sign electronics orders routinely. So next time if you want to bring your electronics so you can answer that question, just get me an electronics order.

MR. NESSER: Thank you, your Honor.

MR. SOLOMON: That's fine. Thank you.

THE COURT: Okay. The 18th at 3:00 p.m. in this courtroom. I'll see you then. Thank you.

(Adjourned)

o0o