**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ELETSON    HOLDINGS,    INC.    and
ELETSON CORP.,

          Cross-Respondents,

    v.

 LEVONA HOLDINGS, LTD.,

         Cross-Petitioner,

    and

APARGO LIMITED, FENTALON LIMITED, and
DESIMUSCO TRADING LIMITED,

       Intervenors.

Civ. No. 23-cv-07331 (LJL)

---

**LEVONA'S MEMORANDUM OF LAW IN SUPPORT OF**
**ITS MOTION FOR SANCTIONS AGAINST LOUIS M. SOLOMON, HAL S. SHAFTEL,**
**REED SMITH LLP, AND GREENBERG TRAURIG, LLP**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................2

    A.    Sanctionable Statements In Opposition To Levona's Initial Vacatur Petition ..........2

    B.    Sanctionable Statements In Opposition To Levona's Motion For Leave To Amend Its Vacatur Petition ............................................................................................4

    C.    Sanctionable Statements In Opposition To Levona's Amended Vacatur Petition...............................................................................................................................5

LEGAL STANDARD ...........................................................................................................9

ARGUMENT ......................................................................................................................12

I.    MR. SOLOMON'S FALSE, MISLEADING, FRIVOLOUS, AND IMPROPER STATEMENTS WARRANT SANCTIONS ..........................................................12

    A.    Statements About The Purported Exercise Of The Buyout Option Warrant Sanctions .................................................................................................................13

    B.    Statements About The Purported Nomination Warrant Sanctions ..........................15

    C.    Statements About The July 25 Email And Other Withheld Documents Warrant Sanctions.................................................................................................................18

    D.    The Entire Position Opposing Vacatur Warrants Sanctions .....................................19

II.    MR. SHAFTEL'S FALSE, MISLEADING, FRIVOLOUS, AND IMPROPER STATEMENTS WARRANT SANCTIONS ..........................................................20

CONCLUSION....................................................................................................................21

CERTIFICATE PURSUANT TO LOCAL RULE 7.1(C)................................................23

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*AJ Energy LLC v. Woori Bank*,
2019 WL 4688629 (S.D.N.Y. Sept. 26, 2019) .......................................................... 10, 20, 21

*ATSI Comm'cns, Inc. v. Shaar Fund, Ltd.*,
579 F.3d 143 (2d Cir. 2009) ................................................................................................. 9

*In re Australia & New Zealand Banking Grp. Ltd. Sec. Litig.*,
712 F. Supp. 2d 255 (S.D.N.Y. 2010) .......................................................................... 9, 10, 11

*Conway v. Conway*,
2019 WL 1331624 (S.D.N.Y. Mar. 25, 2019) ..................................................................... 11

*Delaney v. HC2, Inc.*,
761 F. Supp. 3d 641 (S.D.N.Y. 2025) ............................................................................ 11, 12

*Enmon v. Prospect Capital Corp.*,
675 F.3d 138 (2d Cir. 2012) ......................................................................................... 11, 12

*Est. of Calloway v. Marvel Ent. Grp., a Div. of Cadence Indus. Corp.*,
9 F.3d 237 (2d Cir. 1993) .................................................................................................. 11

*Galin v. Hamada*,
283 F. Supp. 3d 189 (S.D.N.Y. 2017) ............................................................................... 10

*Goodyear Tire & Rubber Co. v. Haeger*,
581 U.S. 101 (2017) ........................................................................................................ 12

*Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*,
991 F.3d 361 (2d Cir. 2021) ............................................................................................. 11

*Margo v. Weiss*,
213 F.3d 55 (2d Cir. 2000) ............................................................................................... 10

*New Oriental Enterprise, PTE, Ltd. v. Mission Critical Solutions LLC*,
2022 WL 874783 (S.D.N.Y. Mar. 24, 2022) .................................................................. 10, 20

*(RC) 2 Pharma Connect, LLC v. Mission Pharmacal Co.*,
2023 WL 112552 (S.D.N.Y. Jan. 4, 2023) ......................................................................... 10

*Recoop LLC v. Outliers Inc.*,
2025 WL 1725024 (S.D.N.Y. June 20, 2025) ....................................................................... 9

*Rossbach v. Montefiore Med. Ctr.*,
    81 F.4th 124 (2d Cir. 2023) ................................................................................................. 12

*Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*,
    682 F.3d 170 (2d Cir. 2012) ................................................................................................. 11

*Streamlined Consultants, Inc. v. EBF Holdings, LLC*,
    2023 WL 5835748 (S.D.N.Y. Sept. 8, 2023) ....................................................................... 9

*Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*,
    328 F.R.D. 100 (S.D.N.Y. 2018) .................................................................................... 9, 18

**Statutes**

9 U.S.C. § 9 ..................................................................................................................................... 2

28 U.S.C. § 1927 ............................................................................................. 1, 8, 11, 12, 20, 21

**Other Authorities**

Fed. R. Civ. P. 11 ................................................................. 1, 8, 9, 10, 11, 15, 17, 20, 21

## INTRODUCTION

The Court should sanction Louis M. Solomon, Hal S. Shaftel, and their respective law firms Reed Smith LLP and Greenberg Traurig, LLP (collectively, "Counsel") under Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and the Court's inherent authority, due to their repeated false, misleading, improper, and/or frivolous statements to the Court, which unreasonably and vexatiously multiplied and prolonged these proceedings.  Levona does not make these serious accusations nor seek this relief lightly.  But Levona has had to spend millions of dollars pursuing vacatur because of Counsel's wrongful actions.   The sanctions Levona seeks are therefore imperative to remedy Levona's injury and deter Counsel and others from future misconduct.

Counsel's entire effort to confirm the Award and oppose vacatur has been sanctionable from the start because Counsel has always known, or at minimum should have known through reasonable inquiry, that the arbitration award at issue was procured by fraud.  Indeed, the Court in its vacatur decision has already found that Mr. Solomon and Reed Smith *participated* in that fraud: "Eletson and its counsel understood the Purchase Option had not been exercised and that the Eletson [parties] had not nominated Intervenors to receive the Preferred Interests, and that Intervenors purposefully presented false testimony at the arbitration and withheld from Levona and the Arbitrator the documents necessary to show that such testimony was false and to reveal the truth."  ECF 678, at 34.  Despite knowing of that misconduct, Counsel falsely and misleadingly told the Court time and again that the arbitration was above board, that the Award's factual findings were true, and that the Award should be confirmed and not be vacated.  The fraud was unearthed, despite Counsel's best efforts to keep it hidden, only after massive expenditures of time and resources by Levona and the Court.  None of that should have been necessary.

Accordingly, the Court should order Counsel, jointly and severally, to pay Levona all of its reasonable fees, costs, and expenses in this action, with Mr. Shaftel and Greenberg Traurig

being jointly and severally liable only for those fees, costs, and expenses arising after they were retained. Nothing less is sufficient to compensate Levona for the significant costs it has wrongly had to bear or to deter Counsel's serious misconduct.

**BACKGROUND**

Counsel spent the last two-and-a-half years opposing Levona's efforts to vacate an award that they knew, or at minimum should have known through a reasonable inquiry, was procured by fraud. In so doing and during every phase of this case—when seeking confirmation and opposing Levona's initial vacatur petition, opposing Levona's motion to amend its vacatur petition, and opposing the amended petition—they made numerous false, misleading, frivolous, and/or improper statements to the Court.

**A.    Sanctionable Statements In Opposition To Levona's Initial Vacatur Petition**

Mr. Solomon and Reed Smith began making sanctionable statements to the Court from the outset of the case. To begin, on September 13, 2023, Eletson filed its initial confirmation petition, in which Mr. Solomon stated that "[p]ursuant to 9 U.S.C. § 9, Petitioners are entitled to a judgment confirming the Award" and that "[n]o grounds exist for the Court to refuse or defer recognition or enforcement of the Award under the New York Convention or the FAA." ECF 14, at 12. Then on October 10, 2023, soon after Levona petitioned to vacate the Award, Mr. Solomon wrote a letter to the Court opposing Levona's request to refer this matter to the bankruptcy court and calling it a "fallacy" that the "preferred shares … were or could be assets of [] Holdings" because the arbitrator had determined that "in early 2022 [Intervenors] purchased a contingent transfer of Levona's preferred shares, to take effect upon the exercise of the option." ECF 35, at 2.

From there, in Eletson's October 31, 2023 opposition to Levona's initial vacatur petition, Mr. Solomon asserted that the arbitrator "was not wrong" and instead had "conducted a careful analysis of the law and the facts … [and] credited Eletson's testimony that it 'strongly believe[d]

2

that [Eletson] gave notice to Levona that [it was] exercising the option and gave this notice on March 10 and March 11, [Eletson] exercised the option.'" ECF 54, at 20-21, 37-41. Specifically, Mr. Solomon told the Court to accept the arbitrator's findings that "Eletson's conduct following March 11 was consistent with the buyout" and that "both parties acted in a manner consistent with the fact that Levona had been bought out of the Company." *Id.* at 37. Mr. Solomon also asserted that the arbitrator correctly "considered and rejected" the July 13, 2022 buyout proposal as inaccurate. *Id.* at 41. Thus, Mr. Solomon asserted that the arbitrator had "acted well within the law and the contract in reviewing and relying on evidence that 'the parties acknowledged that Eletson was exercising the option.'" *Id.* at 38 (cleaned up). He then stated—still at a time when neither Levona nor the Court had seen the July 25 withheld document—that "Levona's complaint that it was not able to seek additional discovery after the hearing was closed … is wrong and irrelevant" because "the conclusory assertions by interested agents of [Levona] … do not constitute good cause shown … to reopen the hearing." *Id.* at 40 (emphasis removed). As to the nomination, Mr. Solomon stated that "Holdings only ever held the common shares in Eletson Gas" and even maintained that "Levona continues to peddle the false narrative that Eletson made untimely disclosures regarding the contingent transfer of the preferred shares to the Nominees 'specifically to keep the disputed property outside of Eletson Holdings' bankruptcy.'" *Id.* at 28-29; *see id.* at 19 ("Holdings was never to be a buyer").

Related to that opposition to Levona's initial vacatur petition, on December 12, 2023, Mr. Solomon filed a response and counterstatement to Levona's statement of undisputed material facts that was filled with unsupported and unwarranted denials of facts. ECF 66, at 4, 6, 11-12, 17-18, 65, 87 (disputing facts regarding the Buyout Option); *id.* at 58-59 (disputing facts regarding the Withheld Documents); *id.* at 19, 21-23, 28-34, 42-51, 54-55, 72, 81, 89, 98, 101 (disputing facts

regarding the purported nomination).  For example, the filing "disputed" that the July 13, 2022 email to Levona "sought to 'buyout' Levona" because the arbitrator "considered the cited July 13, 2022 letter, and found" that it had "created fury and confusion" and was "an inaccurate checklist." *Id.* at 18 (quoting ECF 67-58, at 44-45 n.6).  The filing also invoked the arbitrator's finding that Eletson had "complied with the BOL" based on purported "evidence that 'Eletson's conduct following March 11 was consistent with the buyout,' 'both parties acted in a manner consistent with the fact that Levona had been bought out of the Company,' and Eletson's Director 'repeatedly represented to potential investors that Levona was out of the Company.'"  *Id.* at 65 (quoting ECF 67-58, at 44-45).  Mr. Solomon further "disputed" Levona's assertion that the July 25 email was "newly discovered material evidence" and "highly responsive and critical" as inconsistent with the arbitrator's ruling.  *Id.* at 58.

Finally, at the January 2, 2024 hearing on Levona's initial vacatur petition, Mr. Solomon argued that "the award, in all of its findings, in all of its detail should be confirmed against Levona." ECF 77, at 73.  Mr. Solomon further asserted that "from the beginning, everybody knew that the preferred … wasn't going to go to Holdings. ... Counsel told your Honor … it was all going to go to Holdings and then they switched it up.  False.  And Justice Belen finds that it's false. And your Honor should refer to those findings."  *Id.* at 112-13.  Mr. Solomon continued, "[t]he idea that th[e nomination] was somehow a late add, it was not a late add.  That has been the case from the beginning. … The deal had been done more than a year before any of this had happened, the deal had been done."  *Id.* at 115-17.

### B.    Sanctionable Statements In Opposition To Levona's Motion For Leave To Amend Its Vacatur Petition

After Levona had finally obtained a handful of the withheld evidence, Mr. Solomon and Reed Smith continued to make sanctionable statements in trying to prevent Levona from raising

fraud as a basis for vacatur.  On July 23, 2024, in Eletson's opposition to Levona's motion for leave to amend its vacatur petition, Mr. Solomon stated—about all five of the withheld documents then identified, not just the July 25 email—that "[t]here was no fraud" and "Eletson has nothing to hide."  ECF 147, at 8.  Mr. Solomon also stated that "[t]he content of the new Documents is cumulative of what Justice Belen already rejected" and described Levona's attempts to investigate Eletson's fraud as a "serial effort to delay and spend Eletson into oblivion."  *Id.* at 9.  Mr. Solomon then doubled down that "[n]ot a single Document says that the option lapsed or that the Preferred Buyout was not effectuated."  *Id.* at 12 (emphasis removed).  Mr. Solomon further stated that "none of the Documents was responsive to the document requests."  *Id.* at 13 (emphasis removed).  Mr. Solomon also stated that the July 13 Buyout Steps proposal was a mere "post-hoc machination[] orchestrated by Peter Kanelos."  *Id.* at 9; *see id.* at 11 ("The July 13 Email related to the Murchinson Exit, not to the Preferred Buyout" and "the Documents are not 'admissions'").  And he repeated that "[r]epayment of the loan was not required for the Preferred Buyout to be finalized" because "Justice Belen found Vassilis Kertsikoff told potential investors in June 2022 that Gas sought 'to refinance working capital facility provided by its previous shareholders.'"  *Id.* at 10 (cleaned up).

Next, at the September 3, 2024 hearing on Levona's motion, Mr. Solomon stated that the initial handful of withheld documents was "not the tip of the iceberg" and Eletson had "produced everything that [it] had that [it] knew about in the bankruptcy.  It was not called for …."  9/3/2024 Hr'g Tr. 18.

## C.    Sanctionable Statements In Opposition To Levona's Amended Vacatur Petition

After Levona amended its vacatur petition, Mr. Solomon and later Mr. Shaftel made additional sanctionable statements when asserting that the Award should not be vacated for fraud.

First and most fundamentally, in Eletson's September 27, 2024 response to Levona's amended vacatur petition, Mr. Solomon denied Levona's allegations and prayer for relief, asserting that "[t]he Arbitral Award is not subject to vacatur on any of the grounds set forth in the Cross-Petition." ECF 170, at 2.

Intervenors then joined the fray. On April 7, 2025, in Intervenors' brief in support of their motion to intervene, Mr. Shaftel and Greenberg Traurig stated that "the Final Award is clearly warranted" and "is the outcome of a legitimate arbitration process and the challenges to the award … lack merit." ECF 302, at 6-7. Mr. Shaftel further asserted that "[a]s nominees of Eletson Gas, the Preferred Shareholders received their preferred shares in March 2022" because "Eletson Gas exercised its rights under the BOL to nominate the Preferred Shareholders." *Id*. at 8-9. And Intervenors' May 20, 2025 answer and defenses to Levona's amended vacatur petition denied Levona's allegations and prayer for relief, referring to the Award for relevant facts. ECF 366, at 1-4.

Over the ensuing months, Counsel made sanctionable statements to the Court in numerous filings. In Intervenors' May 25, 2025 brief in opposition to Levona's motion for an anti-suit injunction, Mr. Shaftel reiterated that Intervenors owned the preferred shares of Eletson Gas. ECF 392, at 11 n.4, 15. Mr. Shaftel also called Levona's fraud claims "baseless." *Id.* at 17-18 n.7; *see id.* at 27, 29-30 (denying the existence of any fraud). Likewise, in its July 8, 2025 opposition to Levona's motion to compel crime-fraud documents during the discovery period, Reed Smith asserted *on its own behalf* (in a document signed by Mr. Solomon) that "Levona points to no evidence—because there is none—that Eletson or its counsel intentionally (or fraudulently) withheld any of the documents at issue." ECF 484, at 9, 13-15. And Intervenors' September 4, 2025 declarations in support of their sanctions opposition (signed by Hadjieleftheriadis and

Karastamati, and filed by Greenberg Traurig and Mr. Shaftel) asserted that they owned the preferred shares in Eletson Gas. ECF 585, at 2; ECF 586, at 2.

Intervenors opposed Levona's vacatur petition on September 10, 2025. ECFs 589-591, 596. In those papers, Mr. Shaftel stated that Levona "soundly lost a well-administered Arbitration" and had "grossly exaggerate[d] [the withheld documents'] significance, distort[ed] meaning and context, and misdescribe[d] responsiveness to Arbitration discovery." ECF 589, at 10. He further stated that "the [withheld] documents fall well short of evidencing fraud of any kind." *Id.* at 11. Mr. Shaftel also stated that the Withheld Documents were immaterial and not called for in arbitration discovery, that "the positions taken by Eletson were always fair," and that the arbitration had been "properly conducted." *Id.* at 10-13, 20-21, 28, 30-54. He disputed material facts presented by Levona that Intervenors knew to be true. ECF 590, at 23-56, 58-82, 134-41 (disputing facts regarding the Buyout Option); *id.* at 24-48, 50-119, 141-59, 163-77 (disputing facts regarding the Withheld Documents); *id.* at 16, 70-82, 119-34 (disputing facts regarding the purported nomination); *id.* at 160-63 (disputing facts regarding fraud). He again asserted that Intervenors owned the preferred shares. *See, e.g.*, ECF 589, at 10, 14-15; ECF 590, at 16; ECF 591, at 8, 30. And he further asserted that the July 25 withheld document "did not appear (then or now) to have any evidentiary significance." ECF 596, at 24-25.

Then, at the December 9, 2025 hearing on Levona's vacatur petition, Mr. Shaftel stated that "[n]one of the at-issue documents, whether it be the original 11 or the later 36 or the Microsoft documents, the crime fraud documents, none, none affect the issues of whether the vessels transferred, whether there was adequate security, and, frankly, whether there was notice." 12/9/2025 Hr'g Tr. 43.

Last, Mr. Shaftel stated in Intervenors' supplemental vacatur opposition filings (ECFs 662-664, 666-667) on December 29, 2025, that "Levona cherry picks documents … from recent discovery,[] distorts (indeed misrepresents) their meaning, and impermissibly draws vigorously disputed inferences." ECF 662, at 5. Mr. Shaftel asserted that the Withheld Documents "provide no support for vacatur" or the nominee, option exercise, or discovery frauds, and that the arbitrator's 'fully vetted' findings should remain." *Id.* at 8-13. Moreover, Mr. Solomon stated (in a declaration submitted by Mr. Shaftel) that there had been no nominee fraud and that "Levona's assertions … are totally without any factual support and indeed are disproven by the facts." ECF 663, at 2, 5, 10, 15, 18-19. The principals of Intervenors, who are also former principals of Eletson, further swore (in declarations submitted by Mr. Shaftel) that they "stand by the fact that … Eletson's arbitration positions were always asserted with integrity, in good faith, based on facts believed to be true, with no effort to conceal information understood as material to any disputed matter and called for in arbitration discovery. As Eletson-side representatives, [Karastamati], [Hadjieleftheriadis,] and [Kertsikoff] closely coordinated with [Reed Smith] and [Timagenis] in a good faith, diligent effort to develop the case 'fair and square' through discovery, satisfy litigation obligations and present accurate, truthful evidence." ECF 664, at 4 (Kertsikoff); ECF 666, at 2-3 (Hadjieleftheriadis stating similar); ECF 667, at 2-3 (Karastamati stating similar).

*        *        *

For all of the above conduct, Levona served a notice of motion on December 31, 2025, and a supplemental notice of motion on January 7, 2026, seeking sanctions under Rule 11, Section 1927, and the Court's inherent authority. Those notices identified the sanctionable conduct at issue. The Rule 11 safe-harbor period expired on January 9, 2026, per the Court's orders. ECF 674; ECF 676. Counsel has not retracted any of the statements at issue.

## LEGAL STANDARD

**_Rule 11._**  Rule 11(b) provides that "[b]y presenting to the court a pleading, written motion, or other paper … an attorney … certifies that … after an inquiry reasonable under the circumstances":

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

A party "violate[s] Rule 11(b) by making false, misleading, improper, or frivolous representations to the court." *Recoop LLC v. Outliers Inc.*, 2025 WL 1725024, *13 (S.D.N.Y. June 20, 2025) (Liman, J.).  "[L]iability for Rule 11 violations 'requires only a showing of objective unreasonableness on the part of the attorney or client signing the papers.'" *ATSI Comm'cns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 150 (2d Cir. 2009) (citation omitted).

Making "false allegations" or allegations that are "utterly lacking in support" is "'objectively unreasonable' and therefore violate[s] Rule 11(b)(3)." *In re Australia & New Zealand Banking Grp. Ltd. Sec. Litig.*, 712 F. Supp. 2d 255, 263-64 (S.D.N.Y. 2010); *see, e.g.*, *Streamlined Consultants, Inc. v. EBF Holdings, LLC*, 2023 WL 5835748, *10-12 (S.D.N.Y. Sept. 8, 2023) (same).  So too is making statements that are "misleading" to the Court.  *Recoop*, 2025 WL 1725024, *13; *cf. Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*, 328 F.R.D. 100, 121-24 (S.D.N.Y. 2018) (sanctioning plaintiff, Mr. Solomon and Mr. Shaftel's client, under Rule 37 for making "misleading" statements).  The same is true of the failure to retract false allegations

after having been provided notice of their falsity. *See*, *e.g.*, *AJ Energy LLC v. Woori Bank*, 2019 WL 4688629, *11 (S.D.N.Y. Sept. 26, 2019), *aff'd*, 829 F. App'x 533 (2d Cir. 2020); *see Galin v. Hamada*, 283 F. Supp. 3d 189, 202 (S.D.N.Y. 2017) (Rule 11 imposes a "continuing obligation" on litigants), *aff'd*, 753 F. App'x 3 (2d Cir. 2018).

Moreover, sanctions are particularly appropriate as to false statements that are "material allegation[s] central to" a case. *In re Austl. & N.Z.*, 712 F. Supp. 2d at 264; *AJ Energy*, 2019 WL 4688629, at *11 ("[I]ndifference to the truth of the pleading's most important factual allegations is the sort of conduct that Rule 11 seeks to deter.") (internal marks omitted). And "an attorney may not simply take her client's word on faith where that word would be easily proved (or disproved) through a reasonable investigation or where red flags should have (and would have) alerted counsel to problems." *AJ Energy*, 2019 WL 4688629, at *11.

If "Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." *New Oriental Enterprise, PTE, Ltd. v. Mission Critical Solutions LLC*, 2022 WL 874783, *5 (S.D.N.Y. Mar. 24, 2022). Sanctions may include, in the court's discretion, "an order directing payment ... of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ. P. 11(c)(4); *see (RC) 2 Pharma Connect, LLC v. Mission Pharmacal Co.*, 2023 WL 112552, *2-3 (S.D.N.Y. Jan. 4, 2023) (Liman, J.) (assessing sanctions amounts). Attorneys' fees are an appropriate sanction where a party and its counsel violated Rule 11 by making objectively unreasonable filings. *See Margo v. Weiss*, 213 F.3d 55, 64-65 (2d Cir. 2000). "Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee." Fed. R. Civ. P. 11(c)(1).

"When requiring a litigant to pay [its] opponent's legal fees, 'the award should be based both on the total amount of reasonable attorneys' fees and costs attributable to the sanctioned party's misconduct and the amount needed to serve the deterrent purposes of Rule 11.'" *Conway v. Conway*, 2019 WL 1331624, *11 (S.D.N.Y. Mar. 25, 2019) (citation omitted). "[T]he effect of and number of misrepresentations that a party makes are perfectly acceptable data points for a court to consider in determining whether—and, perhaps more importantly, what—sanctions are warranted." *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 991 F.3d 361, 369 (2d Cir. 2021) (internal citation omitted).

"Where multiple parties or attorneys are responsible for Rule 11 violations, those parties may be held jointly and severally liable in the court's discretion." *In re Austl. & N.Z.*, 712 F. Supp. 2d at 271. "[J]oint and several liability is entirely appropriate" where a "Rule 11 violation was … a coordinated effort." *Est. of Calloway v. Marvel Ent. Grp., a Div. of Cadence Indus. Corp.*, 9 F.3d 237, 239 (2d Cir. 1993).

**<u>28 U.S.C. § 1927.</u>**  Much like Rule 11, Section 1927 "states that the court may require an attorney 'who so multiplies the proceedings in any case unreasonably and vexatiously' to personally satisfy the costs and attorney's fees reasonably incurred because of such conduct." *Delaney v. HC2, Inc.*, 761 F. Supp. 3d 641, 665-66 (S.D.N.Y. 2025) (Liman, J.) (quoting 28 U.S.C. § 1927). A "finding of 'conduct constituting or akin to bad faith'" is required. *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 178 (2d Cir. 2012) (citation omitted). Section 1927 authorizes sanctions on law firms. *Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 147 (2d Cir. 2012) ("There is no serious dispute that a court may sanction a law firm pursuant to its inherent power. We see no reason that a different rule should apply to § 1927 sanctions, and, in any event, we have previously upheld the award of § 1927 sanctions against a

law firm. … In addition, we would upset a relatively long-standing practice among district courts in our Circuit if we were to hold that law firms may not be sanctioned under § 1927 for the acts of certain attorneys.").

***Inherent Authority.*** Independent of Rule 11 and Section 1927, "'[a] court may also sanction a litigant pursuant to its inherent authority if there is clear evidence that the [litigant's] conduct was (1) entirely without color and (2) motivated by improper purposes.'" *Delaney*, 761 F. Supp. 3d at 665-66 (quoting *Huebner v. Midland Credit Mgmt.*, Inc., 897 F.3d 42, 56 (2d Cir. 2018) (internal quotation marks omitted)). That includes the power to "sanction a party or an attorney who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 141 (2d Cir. 2023) (citation omitted). Such sanctions "'must be compensatory rather than punitive in nature,'" *Delaney*, 761 F. Supp. 3d at 666 (quoting *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017)), and can be levied against law firms. *Enmon*, 675 F.3d at 147 ("There is no serious dispute that a court may sanction a law firm pursuant to its inherent power.").

## ARGUMENT

## I.    MR. SOLOMON'S FALSE, MISLEADING, FRIVOLOUS, AND IMPROPER STATEMENTS WARRANT SANCTIONS

Despite knowing that the Award had been obtained through fraud and participating in that fraud, Mr. Solomon and Reed Smith asserted that the Court should confirm the Award, deny Levona's vacatur petition, and accept the arbitrator's findings as true. The Court should impose sanctions for that overarching position and argument and each of the independent subsidiary statements underlying them.

A.      **Statements About The Purported Exercise Of The Buyout Option Warrant Sanctions**

In seeking confirmation and opposing vacatur of the Award, Mr. Solomon and Reed Smith throughout this case repeated the misrepresentations that he and Eletson had made to the arbitrator regarding the purported exercise of the Buyout Option.  For instance, Mr. Solomon stated that the arbitrator correctly "credited Eletson's testimony that it 'strongly believe[d] that [Eletson] gave notice to Levona that [it was] exercising the option and gave this notice on March 10 and March 11, [Eletson] exercised the option.'"  ECF 54, at 20-21, 37-41; *supra*, at 2-5.  He also told the Court to accept as valid the arbitrator's determination that the July 13 email "created fury and confusion" and was "an inaccurate checklist."  ECF 66, at 18; *supra*, at 2-5.  And he stated, as in the arbitration, that Eletson had "repeatedly represented to potential investors that Levona was out of the Company."  ECF 66, at 65; *supra*, at 2-5.

Those statements were knowingly false, misleading, improper, and meant to multiply proceedings because—as the Court has already concluded—Mr. Solomon, as Eletson's "counsel[,] understood the Purchase Option had not been exercised … and that Intervenors purposefully presented false testimony at the arbitration" in a fraudulent effort to convince the arbitrator to find that it had been.  ECF 678, at 34.

*First*, Mr. Solomon knew that Eletson's witnesses did not believe the Buyout Option had been exercised.  As the Court explained in its vacatur decision, "Kertsikoff, Karastamati, and Hadjieleftheriadis revealed their true understanding of the state of affairs regarding the exercise of the Purchase Option in their unvarnished communications to counsel [o]n July 20, 2022."  *Id.* at 84-85.  Specifically, in "instructions" sent to Reed Smith, they "unambiguously state[d] that '[t]he terms of the BOL have not been entirely complied with'"; "that 'all parties behaved as if BOL was still valid and effective (despite the lapse of the Purchase Option Period)'"; that "Eletson

13

'appreciates that certain dates of the original BOL ha[ve] lapsed"; and that "they believe that the objective may be achieved with some adjustments." *Id.* (quoting ECF 556-4, at 7, 10). Then on "July 25, 2022, just four days before the arbitration was commenced, Karastamati … again reiterated [to Reed Smith] that 'there was no explicit written or verbal indication that the option period would be extended nor any action from Levona to inhibit our ability to exercise the purchase option.'" *Id.* (quoting ECF 556-4, at 81); *see id.* at 89-91 (Kertsikoff, Karastamati, and Hadjieleftheriadis "acknowledged to [their] lawyers in July 2022 that the Purchase Option had not been exercised.") (quoting ECF 556-4, at 14).

*Second*, Mr. Solomon knew that the July 13 email was not an "inaccurate checklist" as he told the Court. Eletson's instructions to Reed Smith stated: "Eletson appreciates that certain dates of the original BOL have lapsed, but they believe that the objective may be achieved with some adjustments like the sale of a third ship for increasing Levona's return etc. This is why following discussions with Levona they sent their offer of Wednesday 13 July 2022 (and in return Levona sent the LOI dated – obviously subsequently – 15 July 2022). … Even if Eletson Interests' proposal may not be strictly in compliance with the black letter of the BOL, it substantially tries to achieve the same objective." ECF 556-4, at 22.

*Finally*, Mr. Solomon knew that Eletson had not "'repeatedly represented to potential investors that Levona was out of the Company.'" ECF 66, at 65 (quoting ECF 67-58, at 44-45). At the very least, Reed Smith had the April 2022 Swisschem emails, ECF 551-16, in its possession for months during the arbitral discovery period, discussed them internally, and produced a document attached to the same email chain that it argued supported Eletson's position. ECF 551-70; ECF 551-57, at 6 (rows 112, 114, 116); ECF 551-62, at 348:14-358:15. In those withheld emails, Hadjieleftheriadis sent a broker a presentation "prepared by [Holdings] … for the purpose

14

of considering" an investment in Eletson Gas "consist[ing] of [a] shareholder buy-out"—*i.e.*, a buyout of Levona's shares—as well as "asset based refinancing and working capital." ECF 551-15, at 2, 4, 7; ECF 551-1, at 40:10-15, 42:10-15. The presentation also recited the preferred shares' history without mentioning a prior buyout of Levona. ECF 551-15, at 8. And Hadjieleftheriadis confirmed to the broker that Levona was "in the final stages of disinvesting." ECF 551-16, at 2-3. And regardless of Mr. Solomon's knowledge of this issue, he and his firm at minimum failed to conduct the reasonable inquiry that Rule 11 requires and instead permitted Eletson to manage and perform its own document collection, searches, and review without oversight. *See* ECF 678, at 118 ("[Mr. Solomon] and his firm did not conduct the document collection. He did not 'ever see the word searches that [Eletson] ran' … and it is undisputed that Reed Smith was 'not involved in the collection.'") (quoting ECF 551-62, at 133:10-12; ECF 551-1, at 429:8-13); *id.* at 124 ("Another lawyer commented that his guess as to why the document was not produced is because 'the client search of files was—shall we say?—shaky at best.'") (quoting ECF 659-8, at 2); *id.* at 124 n.3 ("Kertsikoff states that although Eletson did not run a search for 'Murchinson Buy Out,' it ran a 'diligent and good faith approach to discovery.' … As explained as to fraud in document production, that statement is suspect in light of the fact that Eletson did not produce any of the Withheld Documents now at issue.") (quoting ECF 664 ¶ 29). A cursory review of Eletson's documents would have revealed the true nature of Eletson's investor outreach.

### B.    Statements About The Purported Nomination Warrant Sanctions

Mr. Solomon and Reed Smith also repeated the false nomination story to the Court in opposing Levona's amended vacatur petition. For example, Mr. Solomon repeatedly told the Court that "in early 2022 [Intervenors] purchased a contingent transfer of Levona's preferred shares, to take effect upon the exercise of the option." ECF 35, at 2; *see supra*, at 2-8. Those statements were false, misleading, improper, frivolous, and meant to multiply proceedings. "After

the bankruptcy petition was filed," Eletson's principals "had a conversation with Reed Smith about their options 'given the statements that Levona/Murchinson had just begun making in the bankruptcy.'"  ECF 678, at 107 (quoting ECF 551-62, at 401:5-10).  So Eletson's principals and Mr. Solomon hatched a plan.  "On March 22, 2023, fifteen days after the involuntary petition was filed, Reed Smith emailed" Eletson's principals to explain that the issues caused by the bankruptcy "could be averted if the Preferred Interests had been transferred to nominees."  *Id.* at 108.  They responded "'it was already done,' meaning that coincidentally they had already done the exact thing that Solomon was suggesting."  *Id.* (quoting ECF 551-62, at 396:10-16).  At minimum, there is no evidence that Mr. Solomon was astounded by this supposed stroke of fortune or surprised that his client had failed to reveal such important information to him previously.  In fact, Mr. Solomon knew that Eletson's in-house lawyer "suggest[ed] that the [supporting] documents can simply be altered: '[i]f the caption EHI shareholder formal meeting is misleading we can call it families meeting.'"  ECF 678, at 114-15 (quoting ECF 663-11).  Then, "[o]n April 19, 2023, Reed Smith again reiterated in an internal email that 'Levona's interests in the Company must be recognized to be extinguished, or were transferred to Eletson pursuant to the BOL.'"  *Id.* at 108 (quoting ECF 569-2).  And "[o]n April 22 … Hadjieleftheriadis sent an email to Reed Smith with 'a couple of docs which may be helpful for discovery' supporting that new theory of nomination."  *Id.* (quoting ECF 556-4, at 62).

After that, "[i]n a May 3, 2023 meeting at Reed Smith just days before the nominees were introduced to the Arbitrator, Solomon was reported by a notetaker as stating that '[w]e are trying to sneak in the information' about the transfer of the interest 'but we can't join them as parties, its [sic] too direct.'"  *Id.* at 108-09 (quoting ECF 659-4, at 8).  Mr. Solomon "continued that doing so was necessary 'to avoid the risk that you win the arbitration,' but that then … 'Levona or creditor

take over common stock in the bankruptcy.'" *Id.* at 109 (quoting ECF 659-4, at 8). Then, "on May 8, at a different meeting between Reed Smith and [Eletson's] former owners, Solomon clarified that '[w]e have to know who it will be transferred to,' and that 'there must be consideration' for any such transfer." *Id.* (quoting ECF 659-3, at 3). Crucially, "[t]he meeting did not reflect that the clients were already aware of the essential details of the nomination, as they would have been if the nomination had occurred." *Id.* Mr. Solomon then "informed the participants that '[e]veryone needs to testify that we thought we did what we needed to,' and that 'I need my witnesses to know that a nominee of gas will get the preferred.'" *Id.* (quoting ECF 659-3, at 3).

That evidence leaves no doubt that Mr. Solomon knew the nomination never happened. Mr. Solomon's self-serving denials (*e.g.*, ECF 663) are not credible. As the Court has found, the meetings he was a part of "show the nomination ruse being created in real time." ECF 678, at 122. He "sneak[ed]" in the nominee argument to avoid the risks arising from the bankruptcy. ECF 659-4, at 8. Moreover, despite ample opportunity and reason to do so—including a mountain of evidence brought to light here showing that "[w]hen Eletson did make external representations, Eletson made it clear that either Levona or Holdings owned the Preferred Shares, not Intervenors"—Mr. Solomon has never relented or even asserted that he was his "clients' innocent dupe." ECF 678, at 110, 113. He has instead reiterated that "Levona's assertions … are totally without any factual support and indeed are disproven by the facts." ECF 663, at 2, 5, 10, 15, 18-19.

The only reasonable conclusion is that Mr. Solomon knew that the nomination was a sham. At minimum, he failed to conduct a reasonable inquiry as to that issue as Rule 11 requires, in a

context where there was significant reason for doubt as to the veracity of the position that was being developed.  Either way, his repeated statements about the nomination are sanctionable.

### C.    Statements About The July 25 Email And Other Withheld Documents Warrant Sanctions

Sanctions are independently warranted based on Mr. Solomon and Reed Smith's misrepresentations about the Withheld Documents in opposing both Levona's initial and amended vacatur petitions.  Mr. Solomon stated here—even before Levona and the Court had ever seen the July 25 email—that the July 25 email was not "material," "highly responsive," or "critical."  ECF 66, at 58; *supra*, at 2-5.  He also stated that "[t]here was no fraud" as to any of the Withheld Documents, including the July 25 email, because the documents were supposedly irrelevant.  ECF 147, at 8; *supra*, at 2-5.  And he said "[t]here was no fraud" attributable to withheld evidence and that "Eletson ha[d] nothing to hide."  ECF 147, at 8.

Those statements were false, misleading, improper, frivolous, and meant to multiply proceedings.  As the Court has already determined, Mr. Solomon's statements to the arbitrator about the July 25 email were "false" and "patently untrue" because "[e]ven a cursory glance at the document would have demonstrated its importance" as it showed that "well after the March 2022 deadline, Eletson believed that it had not exercised the option, that it had therefore lapsed, and that Eletson would have to pay millions to obtain the Preferred Interests from Levona."  ECF 678, at 126, 128-29.  Mr. Solomon thus presented "false evidence" to the arbitrator, and thus to this Court, "cross[ing]" the "line between aggressive advocacy and false statements."  *Id.* at 128 (quoting *Torres v. Donnelly*, 554 F.3d 322, 326 (2d Cir. 2009)).

The same is true of his statements to this Court about the supposed irrelevance of the July 25 document and the rest of the Withheld Documents.  Those statements too were false, "frivolous," and "incredible" and therefore sanctionable. ECF 162, at 34-46; *cf. Syntel*, 328 F.R.D.

18

at 121-24 (sanctioning plaintiff, represented by Mr. Solomon and Mr. Shaftel, for improperly withholding documents during discovery by making "misleading" statements).  At minimum, they had no factual basis because (i) contrary to Mr. Solomon's representations to the Court, there were in fact many improperly withheld documents (ECF 678, at 115, 138), (ii) any reasonable inquiry would have revealed that there were many improperly withheld documents, and (iii) Mr. Solomon and Reed Smith had no pre-existing basis to opine on the existence or nonexistence of improperly withheld documents because they had "not [been] involved in the collection" of documents during the arbitration (*id.* at 118).  Mr. Solomon and Reed Smith also needlessly "delayed resolution of the case by withholding the document[s] … that should have been turned over in discovery."  *Id.* at 56.

**D.    The Entire Position Opposing Vacatur Warrants Sanctions**

Putting all of the above together, Mr. Solomon and Reed Smith not only made many discrete sanctionable statements to the Court but took an entire sanctionable position in seeking confirmation and opposing vacatur.  Throughout these proceedings, Mr. Solomon contended that the "Award is not subject to vacatur" for being procured by fraud.  ECF 170, at 2; *supra*, at 2-8.  That position was false, misleading, improper, frivolous, and meant to needlessly multiply proceedings.  As explained above, Mr. Solomon "understood" the fraud that occurred in the arbitration.  ECF 678, at 34; *supra*, at 13-19.  He helped perpetrate that fraud by permitting his client's knowingly false testimony, lying about the July 25 email, and concocting or at minimum improperly facilitating the nomination story.  Despite all of that, Mr. Solomon opposed Levona's vacatur petition by taking the knowingly false, misleading, and frivolous position that there had been no fraud in the arbitration.  The only conceivable purpose for that improper position was to mislead the Court, harass Levona, and multiply these proceedings.  Sanctions should follow.

Likewise, Mr. Solomon filed a knowingly frivolous confirmation petition that greatly and unnecessarily multiplied proceedings here.  *See* ECF 14.  That frivolous confirmation petition and Mr. Solomon's efforts in furtherance of it are at minimum sanctionable under the Court's inherent authority and Section 1927.

## II.    MR. SHAFTEL'S FALSE, MISLEADING, FRIVOLOUS, AND IMPROPER STATEMENTS WARRANT SANCTIONS

Intervenors' counsel, Mr. Shaftel and Greenberg Traurig, should also be sanctioned for four independent reasons.  *First*, Mr. Shaftel misrepresented to the Court from the time Intervenors joined the case that Intervenors were "nominees of Eletson Gas," that they had "received their preferred shares in March 2022," and that "Eletson Gas exercised its rights under the BOL to nominate the Preferred Shareholders."  ECF 302, at 8-9.  At minimum, Mr. Shaftel failed to conduct a reasonable inquiry into the truth of those representations and failed to retract them.  *New Oriental*, 2022 WL 874783, at *5 (explaining that courts use an objective standard of reasonableness when assessing whether factual contentions have evidentiary support on a Rule 11 motion).  Indeed, because the alleged nomination was so central to everything Intervenors did in this Court, Mr. Shaftel had an especially significant obligation to investigate the facts so as to ensure he was not making false statements.  *AJ Energy*, 2019 WL 4688629, at *11 ("[I]ndifference to the truth of the pleading's most important factual allegations is the sort of conduct that Rule 11 seeks to deter.").  Mr. Shaftel either conducted that investigation and made the false statements anyway, or alternatively relayed his clients' unverified, unsupported, demonstrably false assertions to the Court in a context where even minimal inquiry would have shown them to be false, following which he failed to retract them.  *See* Fed. R. Civ. P. 11(b).

*Second*, Mr. Shaftel asserted that various withheld documents "reflect[ed] a potential settlement offer—but [that] argument gravely mischaracterize[d] the record."  ECF 678, at 94

(citing ECF 589, at 34).  Indeed "there is no evidence that supports it."  *Id.* at 94-95.  It too is thus sanctionable at minimum under Rule 11(b)(3) as a "factual contention[]" that does not "have evidentiary support."

*Third,* as the Court ruled in its vacatur decision, Mr. Shaftel engaged in "dilatory discovery" tactics that "forced Levona to move to compel the production of basic and responsive documents" and then "disregarded this Court's grant of various motions to compel."  ECF 678, at 56.  Such tactics are sanctionable including because they needlessly multiplied proceedings and were improper attempts to harass Levona.

*Finally*, Mr. Shaftel made numerous false, misleading, frivolous, and improper representations in Intervenors' most recent filings opposing vacatur.  ECFs 589-591, 596, 662-664, 666-667; *supra*, at 7-8.  Even after receiving all the proof Levona marshalled proving misconduct by Eletson and its counsel in the arbitration, Mr. Shaftel did not retract but rather doubled down on his false statements that there had been no fraud.  *Supra*, at 7-8.  That failure to retract after being informed of false or improper statements is objectively unreasonable conduct that itself warrants sanctions.  *AJ Energy*, 2019 WL 4688629, at *11.

## CONCLUSION

The Court should order, pursuant to Rule 11, Section 1927, and/or the Court's inherent authority, that Mr. Solomon, Mr. Shaftel, Reed Smith, and Greenberg Traurig, jointly and severally, pay Levona for all fees, costs, and expenses reasonably incurred in litigating this action, with Mr. Shaftel and Greenberg Traurig being jointly and severally liable only for those fees, costs, and expenses arising after they were retained.[1]

---

[1]  The relief specified above is a subset of the relief specified in Levona's notice of motion, which was previously served and is being filed simultaneously with this brief pursuant to Rule 11.

DATED: January 20, 2026          QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  /s/ *Isaac Nesser*
_____

Isaac Nesser
William B. Adams
Daniel M. Kelly
Michael A. Wittmann
295 Fifth Avenue
New York, NY 10016
Tel: 212-849-7253
isaacnesser@quinnemanuel.com
williamadams@quinnemanuel.com
danieKarastamatielly@quinnemanuel.com
michaelwittmann@quinnemanuel.com

Matthew Scheck
Matthew Roznovak (admitted *pro hac vice*)
Alexander Van Dyke (admitted *pro hac vice)*
300 W. 6th Street
Austin, TX 78701
Tel: 737-667-6100
matthewscheck@quinnemanuel.com
matthewroznovak@quinnemanuel.com
alexvandyke@quinnemanuel.com

*Attorneys for Cross-Petitioner Levona Holdings, Ltd.*

---

Levona respectfully requests entry of an order consistent with the narrower scope identified herein. Similarly, notwithstanding the text of Levona's notice of motion, Levona is not filing a declaration together with this brief, because all of the cited materials are already in the record.

## CERTIFICATE PURSUANT TO LOCAL RULE 7.1(c)

I, Isaac Nesser, certify that the foregoing opposition contains fewer than 8,750 words.

According to the word processing program used to prepare this opposition, it contains 6,840 words.

By */s/ Isaac Nesser*
Isaac Nesser