UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X

ELETSON HOLDINGS, INC. and ELETSON CORP.,    :
                                                                     :

                        Cross-Respondents,    :     Civ. No. 23-cv-07331 (LJL)
                                                                   :

     -v.-    :

                                                                   :

LEVONA HOLDINGS, LTD.,    :

                        Cross-Petitioners,    :

                                                                     :

and    :

                                                                    :

APARGO LIMITED, FENTALON LIMITED, and    :
DESIMUSCO TRADING LIMITED,    :

                                                :

                        Intervenors.    :

---------------------------------------------------------------------X

## **GREENBERG TRAURIG, LLP'S AND HAL S. SHAFTEL'S MEMORANDUM OF LAW IN OPPOSITION TO LEVONA HOLDINGS, LTD.'S MOTION FOR SANCTIONS**

Benjamin S. Litman
Howard I. Elman
Mioko C. Tajika
ELMAN FREIBERG PLLC
950 Third Avenue, Suite 1600
New York, New York 10022
(646) 780-8100
blitman@ef-law.com
helman@ef-law.com
mtajika@ef-law.com

*Attorneys for Greenberg Traurig, LLP and*
  *Hal S. Shaftel, Esq.*

March 5, 2026

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ...........................................................................................1

RELEVANT PROCEDURAL BACKGROUND ..................................................................3

      A.      GT's Limited Role in This Action ............................................................4

      B.      The Court's 138-Page Vacatur Decision ..................................................8

ARGUMENT .........................................................................................................................9

I.      RULE 11 SETS A "PURPOSEFULLY HIGH" BAR FOR SANCTIONS .......................9

II.     NOTHING IN THE FILING DESCRIBED IN CATEGORY 1
OF LEVONA'S MOTION WARRANTS SANCTIONS AGAINST GT ........................11

III.    NOTHING IN THE FILING DESCRIBED IN CATEGORY 2
OF LEVONA'S MOTION WARRANTS SANCTIONS AGAINST GT ........................13

IV.    NONE OF THE DISCOVERY CONDUCT DESCRIBED IN CATEGORY 3
OF LEVONA'S MOTION WARRANTS SANCTIONS AGAINST GT ........................17

V.     NOTHING IN THE FILINGS DESCRIBED IN CATEGORY 4
OF LEVONA'S MOTION WARRANTS SANCTIONS AGAINST GT ........................21

CONCLUSION.....................................................................................................................25

# **TABLE OF AUTHORITIES**

**Page(s)**

## CASES

*AJ Energy LLC v. Woori Bank*,
18-CV-3735 (JMF), 2019 WL 4688629 (S.D.N.Y. Sept. 26, 2019) ............................... 12, 24

*Barbera v. Grailed, LLC*,
24-cv-3535 (LJL), 2025 WL 2098635 (S.D.N.Y. July 25, 2025).................... 9, 14, 16, 17, 21

*Bongiorno v. Baquet*,
20-cv-7288 (LJL), 2021 WL 4311169 (S.D.N.Y. Sept. 20, 2021) .................................... 9, 13

*Brock v. Logsdon*,
19-CV-6082-FPG, 2023 WL 203356 (W.D.N.Y. Jan. 17, 2023) ......................................... 10

*Calloway v. Marvel Entertainment Group*,
854 F.2d 1452 (2d Cir. 1988),
*rev'd in part sub nom.*, *Pavelic & LeFlore v. Marvel Entertainment Group*,
493 U.S. 120 (1989).......................................................................................................... 16

*Candelaria v. Erickson*,
No. 01 Civ. 8594 (LTS) (RLE), 2007 WL 1425849 (S.D.N.Y. May 14, 2007).................... 18

*Castro v. Mitchell*,
727 F. Supp. 2d 302 (S.D.N.Y. 2010)................................................................................. 11

*Collison v. Wandrd, LLC*,
24-cv-2221 (LJL), 2024 WL 3252933 (S.D.N.Y. July 1, 2024)........................................... 10

*Daniel v. Fighter-Daniel*,
Case No. 24-11218, 2025 WL 2448484 (E.D. Mich. Aug. 25, 2025),
*aff'd*, 2025 WL 3164450 (E.D. Mich. Nov. 12, 2025) .......................................................... 21

*Delaney v. HC2, Inc.*,
761 F. Supp. 3d 641 (S.D.N.Y. 2025)............................................................................ 23, 25

*Diedhiou v. Republic of Senegal*,
1:20-CV-05685 (DEH) (KHP), 2024 WL 3540406 (S.D.N.Y. July 10, 2024) .......... 19, 20, 25

*Doe v. RDM Camps, LLC*,
15CV778 (LMS), 2019 WL 13544699 (S.D.N.Y. Feb. 25, 2019) ........................ 9, 22, 24, 25

*Elwell v. Raymond James Financial Services, Inc.*,
686 F. Supp. 3d 281 (S.D.N.Y. 2023)................................................................................... 6

*Gagasoules v. MBF Leasing LLC*,
    286 F.R.D. 205 (E.D.N.Y. 2012) ........................................................................ 19

*Galin v. Hamada*,
    283 F. Supp. 3d 189 (S.D.N.Y. 2017),
    *aff'd*, 753 F. App'x 3 (2d Cir. 2018) ................................................................. 10

*Hadges v. Yonkers Racing Corp.*,
    48 F.3d 1320 (2d Cir. 1995) ........................................................................ 13, 15

*Healey v. Chelsea Resources, Ltd.*,
    947 F.2d 611 (2d Cir. 1991) ........................................................................ 16, 17

*In re Lehman Brothers Holdings Inc.*,
    25-cv-1001 (ALC), 25-cv-1014 (ALC),
    2025 WL 2778169 (S.D.N.Y. Sept. 29, 2025) ............................................. 10, 13

*In re Pennie & Edmonds LLP*,
    323 F.3d 86 (2d Cir. 2003) ................................................................................ 11

*Jeffreys v. Rossi*,
    275 F. Supp. 2d 463 (S.D.N.Y. 2003),
    *aff'd sub nom., Jeffreys v. City of New York*,
    426 F.3d 549 (2d Cir. 2005) ......................................................................... 16, 22

*Kiobel v. Millson*,
    592 F.3d 78 (2d Cir. 2010) ................................................................................ 10

*Local 97, International Brotherhood of Electrical Workers v. Niagara Mohawk Power Corp.*,
    196 F.3d 117 (2d Cir. 1999) .............................................................................. 12

*Lorber v. Winston*,
    993 F. Supp. 2d 250 (S.D.N.Y. 2014) ........................................................... 10-11

*Mealus v. Nirvana Spring Water New York Inc.*,
    No. 7:13-cv-313 (MAD/DEP),
    2015 WL 4546023 (N.D.N.Y. July 28, 2015) ............................... 14, 16, 22, 23-24

*Nelson v. Credit Suisse Securities (USA) LLC*,
    25-CV-01980 (JAV), 2025 WL 2431606 (S.D.N.Y. Aug. 22, 2025) .................... 12

*New Oriental Enterprise, PTE, Ltd. v. Mission Critical Solutions LLC*,
    20-cv-02327 (MKV), 2022 WL 874783 (S.D.N.Y. Mar. 24, 2022) ..................... 24

*New York v. Solvent Chemical Co.*,
    210 F.R.D. 462 (W.D.N.Y. 2002) ................................................................. 18, 19

*Optical Communications Group, Inc. v. M/V Ambassador*,
   938 F. Supp. 2d 449 (S.D.N.Y. 2013),
   *aff'd*, 558 F. App'x 94 (2d Cir. 2014) ........................................................................ 23, 25

*Qiu v. Shanghai Cuisine, Inc*.,
   18 Civ. 5448 (ER), 2021 WL 3929242 (S.D.N.Y. Sept. 1, 2021) .......................................... 11

*Quadrozzi v. City of New York*,
   127 F.R.D. 63 (S.D.N.Y. 1989) ....................................................................................... 19

*Robinson v. De Niro*,
   19-cv-09156 (LJL), 2022 WL 7091518 (S.D.N.Y. Oct. 12, 2022),
   *adopting* 614 F. Supp. 3d 73, 81-82 (S.D.N.Y. 2002) ..................................... 1, 12, 14, 15, 21

*Sacerdote v. Cammack Larhette Advisors, LLC*,
   17-CV-8834 (AT) (VF), 2022 WL 2078012 (S.D.N.Y. June 8, 2022) ............................. 9, 12

*Safe-Strap Co., Inc. v. Koala Corp*.,
   270 F. Supp. 2d 407 (S.D.N.Y. 2003) ............................................................................. 10

*Samsung America, Inc. v. M/T Fort Producer*,
   798 F. Supp. 184 (S.D.N.Y. 1992) ................................................................................. 14

*Simpson v. Putnam County National Bank of Carmel*,
   112 F. Supp. 2d 284 (S.D.N.Y. 2000) ............................................................................. 10

*Talos Capital Designated Activity Co. v. 257 Church Holdings LLC*,
   226 A.D.3d 414 (1st Dep't 2024) ................................................................................... 25

*Veliz v. Crown Lift Trucks*,
   714 F. Supp. 49 (E.D.N.Y. 1989) .............................................................................. 14, 21

*Zulworld Shipping Inc. v. Prams Water Shipping Co.*,
   11 Civ. 7597 (BSJ) (RLE), 2013 WL 2246913 (S.D.N.Y. May 16, 2013) ............................. 6

## STATUTES AND RULES

28 U.S.C. § 1927 ....................................................................................... 1, 9, 18, 19

Fed. R. Civ. P. 11 ......................................................................................... *passim*

Fed. R. Civ. P. 11(c)(4) ...................................................................................... 25

Fed. R. Civ. P. 11(d) ......................................................................................... 18

Fed. R. Civ. P. 26 ......................................................................................... 18, 19

Fed. R. Civ. P. 37 ................................................................................... 2, 8, 18, 19

Greenberg Traurig, LLP and its shareholder Hal S. Shaftel, Esq. (together, "GT"), by and through their attorneys, Elman Freiberg PLLC, respectfully submit this memorandum of law, together with Mr. Shaftel's declaration ("Shaftel Decl."), in opposition to the motion for sanctions filed by cross-petitioner Levona Holdings, Ltd. ("Levona") against GT (the "Motion").

## PRELIMINARY STATEMENT

Just as Mr. Shaftel expressed to this Court during his oral argument opposing Levona's motion to vacate the underlying arbitration award, GT does not respond to this Motion with a "tin ear." ECF 660 at 46:14-15. Then (for GT's clients) and now (for GT itself), the circumstances are serious. But a correspondingly serious review of the record and the law vindicates GT.

Despite invoking Section 1927 and this Court's inherent authority, Levona makes no allegation against GT of bad faith (or conduct from which bad faith could be inferred), as required to implicate either basis for sanctions.[1] For good reason: No evidence exists to even approach such a finding. GT therefore analyzes Levona's Motion pursuant to Rule 11 alone, unless otherwise indicated. And GT explains why, even under Rule 11's standard, nothing GT did was at all sanctionable. The record reflects that GT's advocacy on behalf of Apargo Ltd., Desimusco Trading Ltd., and Fentalon Ltd. (collectively, "Intervenors")—even if ultimately a losing effort—was good-faith, above-board, and zealous advocacy.

In its moving brief ("Levona Br.," ECF 682), Levona divides GT's purportedly sanctionable conduct into four categories. None are sanctionable, compelling denial of the Motion.

First, GT's statements, in its successful intervention motion, reciting key findings from the arbitration award were accurate when made. And they remained accurate at least until January 12,

---

[1] *See Robinson v. De Niro*, 614 F. Supp. 3d 73, 81-82 (S.D.N.Y. 2022), *adopted by*, 19-cv-09156 (LJL), 2022 WL 7091518 (S.D.N.Y. Oct. 12, 2022) ("Whereas Rule 11 requires only a showing of 'objective unreasonableness,' the imposition of sanctions under § 1927 or the Court's inherent power 'requires more: subjective bad faith by counsel.'").

2026, when this Court issued its order vacating the award. Until then, the arbitration award—together with this Court's order in *Eletson I* then-affirming the award in relevant part (including as to Intervenors' interests)—reflected the established record (a record GT had no role in creating). Like any lawyer, GT was entitled to recite those findings; at a minimum, it was not objectively unreasonable to do so. Indeed, that the arbitrator found in favor of Eletson Holdings, Inc. and Eletson Corp. (together, "Eletson") necessarily means that there was some evidentiary basis for GT to recite those findings. And GT recited them with citations to the arbitration award itself, making clear that GT was simply reminding the Court of what the arbitrator had found (in an arbitration GT had no involvement in). Far from being sanctionable, that is basic advocacy. It's what lawyers do in fact sections of filings thousands of times a day, every day. That Levona nonetheless identifies GT's statements in that regard as GT's *most* sanctionable conduct reveals just how weak Levona's Motion is vis-à-vis GT.

Second, GT's interpretation of the modeling documents as being related to settlement was not frivolous—even if this Court rejected it. GT's interpretation, as this Court held, might not have been sufficient to create a genuine issue of material fact precluding summary judgment for Levona. But that is not the test for sanctions. And GT's interpretation was based on both cited evidence, including deposition testimony using the word "settlement," and explained, reasonable inferences.

Third, GT's discovery conduct cannot give rise to Rule 11 sanctions as a matter of law. Even if the conduct had been abusive—and we respectfully submit it was not—this Court already awarded sanctions against GT's clients for that same conduct. ECF 678 at 58-59. This Court did so pursuant to Fed. R. Civ. P. 37, which courts have made clear is the principal mechanism for imposing discovery-related sanctions. Nor, as a matter of fact, did GT do anything wrong in connection with discovery. As Intervenors' representatives attested in their declarations, they chose

2

not to appear for their New York depositions due to personal concerns and after consultation with their local, personal lawyers—not GT. They further attested that no one could change their minds. GT was likewise entitled to rely on its clients in disclaiming their control over the documents of Eletson Gas. Far from stonewalling Levona, GT openly and repeatedly explained where it was searching (and not) and provided Levona with a sensible, alternative means to the same end: GT asked Reed Smith to produce Eletson Gas's documents, given that Reed Smith had access to them, and GT had no relationship, attorney-client or otherwise, with that entity. And, in fact, GT understood that the arrangement worked, as Levona never objected to it until months later.

Fourth, and finally, Levona's efforts to obtain sanctions against GT for a host of largely unspecified statements—to which Levona assigns a laundry list of sanctionable buzzwords without explanation as to how or why they apply—flies in the face of Rule 11's "purposefully high" bar and the "patently clear" proof required to clear it. Although Levona goes on to specify as allegedly "false" GT's pre-vacatur "statements that there had been no fraud," Levona ignores that GT's principal argument on Intervenors' behalf was that, *even if* there had been fraud, the absence of a nexus to the arbitrator's rationale still precluded vacatur. So "retract[ing]" those statements from Intervenors' filings—as Levona now insists GT should have done—would not have materially altered the course of the case or the amount of resources Levona devoted to seeking vacatur.

For these reasons, as detailed further below, GT respectfully submits that imposing sanctions on it would both be wrong and set bad precedent.

## **RELEVANT PROCEDURAL BACKGROUND**

The facts of this "lengthy and complex" case, ECF 678 at 1, are extensive and well known to this Court. In lieu of a formal, fulsome statement of facts, GT instead focuses on the procedural history most relevant to its opposition to Levona's Motion.

Levona attributes the lion's share of the allegedly sanctionable conduct described in the Motion to Reed Smith LLP and its partner Louis M. Solomon, Esq. (together, "Reed Smith"). Reed Smith represented pre-reorganized Eletson during the JAMS arbitration from July 2022 to September 2023, and then during the initial, pre-intervention proceedings in this Court from September 2023 to March 2025. Indeed, Levona accuses Reed Smith of having "*participated*" in the alleged arbitration fraud. Levona Br. at 1 (emphasis in Levona's brief). By contrast, Levona recognizes that GT had no involvement at all during that three-year period. Levona's Motion reflects as much: It spends only 1.5 pages of its argument addressing GT.

### A.    GT's Limited Role in This Action.

At the outset, Levona misleadingly lumps GT and Reed Smith together by referring to them collectively as "Counsel"—and then uses that term to make general allegations without distinguishing between the two firms. For example, Levona's introductory paragraphs state that "Counsel has always known . . . that the arbitration award at issue was procured by fraud," or that "[t]he fraud was unearthed, despite Counsel's best efforts to keep it hidden." Levona Br. at 1. But GT has no such knowledge of fraud and made no such effort to hide any fraud. Levona also misleadingly asserts that "Counsel spent the last two-and-a-half years opposing Levona's efforts to vacate." *Id.* at 2. But GT first became involved in this action less than a year ago in mid-March 2025, during the second phase of Levona's efforts to vacate the award. In the first phase (*Eletson I*), this Court had confirmed the award as relevant to Intervenors. Elsewhere, Levona misattributes statements from Mr. Solomon's declaration to Mr. Shaftel. Levona Br. at 7 (quoting ECF 596 at 24-25) (falsely asserting that Mr. Shaftel "further asserted that the July 25 withheld document 'did not appear (then or now) to have any evidentiary significance'"). This Court should summarily reject Levona's attempts to enlarge and confuse GT's role.

By the time GT appeared, this action had been pending for more than a year and a half, with almost 300 pre-existing docket entries. GT filed the motion to intervene April 7, 2025, and this Court decided it on May 9, 2025—granting Intervenors leave to oppose vacatur (but not to seek confirmation) of the arbitration award. ECF 343. Upon intervention, GT had an enormously steep learning curve. It faced an extremely tight discovery schedule (which was already significantly underway): GT had only weeks to issue discovery demands (by May 23, 2025), and was required to complete discovery in roughly two months (by July 30, 2025). ECF 371.

Levona and then-Reorganized Eletson filed motions for summary judgment and for joinder, respectively, on August 20, 2025, replete with 122 total exhibits and 75 total pages of briefing. ECF 548-562. Reorganized Eletson annexed to its motion previously unproduced documents. While certain of those documents were disclosed for the first time and marked at the July 30, 2025 deposition of Vassilis Kertsikoff, they had not been produced at the time. And, due to a dispute involving competing claims of privilege in which Intervenors were not involved, GT did not retain copies of them. Shaftel Decl. ¶ 10. GT's response to the large vacatur papers was due 20 days later, on September 10, 2025—even though Reorganized Eletson produced 77 documents, obtained from the Microsoft-server discovery, on August 28, 2025 (after the July 30, 2025 discovery deadline), and another 110,000 documents (roughly 675,000 pages), also from the Microsoft-server discovery, on September 2, 2025. *Id.* ¶ 11. GT had no knowledge of the contents of the Microsoft-server discovery before Reorganized Eletson produced it in this action. *Id.*

After the Court granted Levona's motion to compel Reed Smith to produce documents pursuant to the crime-fraud exception, Reed Smith made several productions in September and December 2025. *Id.* ¶ 12. Again, GT had no knowledge of the contents of these documents until

Reed Smith produced them. *Id.*[2] Supplemental briefing as to those documents followed, with Levona filing its brief on December 15, 2025, and GT responding on December 29, 2025. *Id.*

In short, GT was seeing and reacting in real-time to an evolving universe of "at issue" documents on which Levona/Reorganized Eletson relied to allege vacatur-warranting fraud in the arbitration (the "Subject Documents"). *Id.* ¶ 13. Not only had GT never seen any of the Subject Documents before they were disclosed, it never stood in the way of their production. *Id.* ¶ 14.

Because of the nature of the vacatur question and the very high bar to overturn the award, GT, as Mr. Shaftel noted at the February 9, 2026 hearing, "saw the task as addressing the arbitration that was arbitrated in 2022, 2023, not relitigating the underlying merits." ECF 705 at 25:10-12.[3] GT's focus was therefore on establishing the sufficiency of the evidence previously presented to the arbitrator to support his findings—and, as warranted, arguing the immateriality and cumulative nature of the Subject Documents in light of both the arbitrator's overall reasoning and the extent of other probative evidence in the arbitral record. Shaftel Decl. ¶ 16.[4]

GT also sought to establish the general propriety of the arbitral process. *Id.* ¶ 17. In doing so, GT understood its task was to evaluate the quality of the arbitration record, as it was presented, and not to develop new evidence outside of that record to disprove the alleged fraud (which was

---

[2] In addition, GT and its clients did not seek to participate in the extensive crime-fraud motion practice as it was unaware of the contents of the documents, did not claim any privilege with regard to the documents, and thus did not believe it had a constructive role to play. Shaftel Decl. ¶ 12.

[3] Vacating an arbitration award is "a formidable task." *Elwell v. Raymond James Fin. Servs., Inc.*, 686 F. Supp. 3d 281, 292 (S.D.N.Y. 2023). Levona shouldered an "exacting" burden to overturn the award by proving, by "clear and convincing evidence," not only that "there was a fraud," but also "that it could not have been discovered using due diligence during the arbitration proceedings and that there was a material relation between the fraud and the award." *Zulworld Shipping Inc. v. Prams Water Shipping Co.*, 11 Civ. 7597 (BSJ) (RLE), 2013 WL 2246913, at *2 (S.D.N.Y. May 16, 2013) (quotation marks omitted).

[4] As the Court likewise noted on February 9, "[it] actually didn't say [] in [its] opinion" that "Levona[] are the owners of the preferred shares," and "Mr. Shaftel did not particularly have notice that I was going to be deciding the questions of whether the nominees were properly selected. He had notice that I would be deciding the question of whether there was evidence that his clients lied with respect to that. The two things are different." ECF 705 at 6:15-17, 8:6-10.

not GT's burden to disprove in any event). *Id.* Nor, in the limited window for discovery in this action, was GT in a position to develop new evidence concerning the merits of the issues that the arbitrator evaluated and determined in a 102-page final award—which unequivocally found in favor of Eletson (and Intervenors)—after a seven-day hearing with several hundred exhibits, testimony from 14 witnesses, and post-hearing briefs exceeding 320 pages. *Id.*

Nor was such factual development necessary where GT's chief argument was *not* that there was no fraud. It was, instead, that even if there had been fraud, it was immaterial to the outcome—and therefore insufficient for vacatur—because of the absence of any nexus between the alleged fraud and the arbitrator's decision. ECF 660 at 46:14-47:2 (Mr. Shaftel at the December 9, 2025 hearing: "[O]ur first point" is that "even if you wanted to plug in the assumption that there is, there was, [fraud], there's no connection to the arbitrator's rationale."); *see also* ECF 589 at 11, 30-41, 57-58; ECF 591 at 10, 21, 27-31; ECF 660 at 46:14-47:9. GT asserted many other arguments that likewise took no position on the fraud issue. *See* ECF 589 at 11, 13-14, 22-29; ECF 591 at 13-20.

With respect to the Subject Documents, GT had no involvement whatsoever in the alleged withholding of those materials. Shaftel Decl. ¶ 13. Levona contends that the Subject Documents conclusively establish fraud, and appears to argue that any disagreement as to their meaning is itself sanctionable. That position is untenable. The Subject Documents are nuanced and complex; indeed, they cover an extensive time period, pertain to a variety of issues, involve a multitude of authors and recipients, are in Greek in certain instances, and are susceptible to competing inferences. *Id.* ¶ 15. GT did precisely what any competent defense counsel should have—and would have—done: draw reasonable inferences and advance the strongest good-faith arguments available on behalf of its clients. *Id.* That the Court, for purposes of vacatur, ultimately rejected those good-faith inferences drawn by GT is immaterial for purposes of Rule 11. As explained

below, arguments are not sanctionable merely because they do not prevail.

Nor did the universe of Subject Documents remain static throughout GT's involvement. That universe evolved from the original 5 documents (annexed to Levona's motion for leave to file an amended vacatur petition, ECF 125, 137), to an additional 4 documents in June 2025 (annexed to Levona's motion to compel, ECF 448), to an additional 35 documents in August 2025 (annexed to Levona's and Reorganized Eletson's motion papers, ECF 551, 556), followed by an additional 8 documents in December 2025 (annexed to Levona's supplemental brief in further support of vacatur, ECF 659). And, again, GT was reacting to each of those documents in real-time, never having seen *any* before. Shaftel Decl. ¶ 14. Accordingly, the objective reasonableness of each of the allegedly sanctionable statements in GT's filings must be evaluated against the then-operative universe of Subject Documents (i.e., at the time of each filing).

### B.    The Court's 138-Page Vacatur Decision

The Court's reasons for vacating the arbitration award were largely three-fold. Based on the Subject Documents, the Court concluded that Eletson: (i) committed perjury at the arbitration, (ii) fraudulently withheld documents at the arbitration, and (iii) made fraudulent statements to the arbitrator via a July 13, 2023 Reed Smith letter concerning a July 25, 2022 email that was produced in the related bankruptcy proceeding (but not in the arbitration). Again, GT was not involved in *any* of these acts. Separately from vacating the arbitration award, the Court also granted Levona's Rule 37 motion for sanctions against Intervenors for their alleged discovery defaults. The Court found that Intervenors' discovery defaults were willful. ECF 678 at 53. But it did not extend the finding of willfulness to GT, as Levona now pretends. Nor is there any basis to do so.

Levona predictably relies on the Court's vacatur decision as a basis for imposing sanctions on GT. But, of course, sanctions are not automatically imposed on counsel just because their clients

lost a litigation. There is, after all, a losing side in every case. Nor are sanctions on counsel compelled just because their clients were sanctioned. GT's reliance on the evidence in the record—which, by the time of its involvement, had already been vetted by the arbitrator, and reviewed by this Court in *Eletson I*—together with GT's reliance on its clients' understanding of the case and its clients' sworn statements, as well as GT's drawing of inferences based on its real-time review of new evidence as it was disclosed, was in good faith and objectively reasonable.

## ARGUMENT

In 1.5 pages of argument at the very end of its brief, Levona asserts that GT deserves to be sanctioned for four discrete categories of statements and actions. But, as a matter of fact and law, none justifies imposing sanctions on GT pursuant to Rule 11—or, therefore, pursuant to Section 1927 or this Court's inherent authority either.[5]

## I.    RULE 11 SETS A "PURPOSEFULLY HIGH" BAR FOR SANCTIONS.

As this Court has recognized, "Rule 11 targets situations where it is patently clear that a claim has absolutely no chance of success." *Barbera v. Grailed, LLC*, 24-cv-3535 (LJL), 2025 WL 2098635, at *16 (S.D.N.Y. July 25, 2025) (quotation marks omitted). "With regard to factual contentions, sanctions may not be imposed unless a particular allegation is utterly lacking in support." *Bongiorno v. Baquet*, 20-cv-7288 (LJL), 2021 WL 4311169, *23 (S.D.N.Y. Sept. 20, 2021) (quotation marks omitted). Indeed, "[c]ourts typically look for statements which rise to the level of direct falsehoods before they find that sanctions are warranted pursuant to Rule 11(b)(3)."

---

[5] *See, e.g.*, *Sacerdote v. Cammack Larhette Advisors*, LLC, 17-CV-8834 (AT) (VF), 2022 WL 2078012, at *12 (S.D.N.Y. June 8, 2022) (finding no basis to sanction pursuant Section 1927 or the Court's inherent authority where plaintiff's filing "had an objectively reasonable basis" under Rule 11); *see also, e.g.*, *Doe v. RDM Camps, LLC*, 15CV778 (LMS), 2019 WL 13544699, at *12 (S.D.N.Y. Feb. 25, 2019) (observing that if, for purposes of Rule 11, a court does not find that "counsel acted in an objectively unreasonable manner," there is "no basis" to conclude that counsel acted "with subjective bad faith, i.e., with deliberate dishonesty, a willful intent to deceive, or deliberate fraud or wrongdoing") (quotation marks omitted).

*Id.* (citation omitted). "Rule 11 neither penalizes overstatement nor authorizes an overly literal reading of each factual statement." *Kiobel v. Millson*, 592 F.3d 78, 83 (2d Cir. 2010). The bar is "purposefully high, so as not to stifle legal creativity and zealous advocacy." *Galin v. Hamada*, 283 F. Supp. 3d 189, 201 (S.D.N.Y. 2017), *aff'd*, 753 F. App'x 3 (2d Cir. 2018).

To determine whether sanctions are appropriate, the Court considers whether the attorneys' conduct was objectively reasonable—i.e., whether "a competent attorney could not form the requisite reasonable belief as to the validity of what is asserted in the paper." *In re Lehman Bros. Hldgs. Inc.*, 25-cv-1001 (ALC), 25-cv-1014 (ALC), 2025 WL 2778169, at *11 (S.D.N.Y. Sept. 29, 2025).[6] In making this determination, "courts must 'avoid hindsight and resolve all doubts in favor of the signer'"—i.e., GT. *Id*. To be sure, while "Rule 11 does not impose a continuing obligation on the presenter to update, correct or withdraw any pleading, written motion or other paper . . . [,] where after-acquired evidence demonstrates that a factual contention has no evidentiary support and is not likely to have evidentiary support after a reasonable investigation, a party may not later advocate that contention." *Collison v. Wandrd, LLC*, 24-cv-2221 (LJL), 2024 WL 3252933, at *2 (S.D.N.Y. July 1, 2024) (brackets and quotation marks omitted).

"[T]he imposition of sanctions is a choice of last resort." *Safe-Strap Co., Inc. v. Koala Corp.*, 270 F. Supp. 2d 407, 419 (S.D.N.Y. 2003). It should be "made with restraint," *Collison*, 2024 WL 3252933, at *2, and is "reserved for extreme cases of misconduct." *Brock v. Logsdon*, 19-CV-6082-FPG, 2023 WL 203356, at *4 (W.D.N.Y. Jan. 17, 2023) (quotation marks omitted). Even where a Court finds that Rule 11 has been violated, "the decision whether to impose sanctions is not mandatory, but rather is a matter for the court's discretion." *Lorber v. Winston*, 993 F. Supp.

---

[6] Among other factors courts consider are whether the improper conduct was willful or negligent; whether it was part of a pattern or activity, or an isolated event; whether it infected the entire filing, or only a part; what effect it had on the litigation process in time and expense; and whether the person has engaged in similar conduct before. *Simpson v. Putnam County Nat'l Bank of Carmel*, 112 F. Supp. 2d 284, 291-292 (S.D.N.Y. 2000).

2d 250, 253 (S.D.N.Y. 2014).

## II.  NOTHING IN THE FILING DESCRIBED IN CATEGORY 1 OF LEVONA'S MOTION WARRANTS SANCTIONS AGAINST GT.

The alleged misstatements at issue in this category all appear in a single filing: Intervenors' April 7, 2025 motion to intervene filed at the inception of GT's involvement in this action. ECF 301. Specifically, Levona attacks GT's statements that (i) Intervenors were "nominees of Eletson Gas," (ii) they had "received their preferred shares in March 2022," (iii) and "Eletson Gas exercised its rights under the BOL to nominate the Preferred Shareholders." Levona Br. at 20 (quoting ECF 302 at 8-9). But, as discussed further below, GT was simply summarizing findings from the arbitration award based on an extensive record—with explicit citations to the award. And, at the time, this Court had, in *Eletson I*, confirmed the award as to Intervenors.

As a threshold matter, Levona's Motion as to those unremarkable statements comes far too late. "Although Rule 11 contains no explicit time limit for serving the motion, the 'safe harbor' provision functions as a practical time limit, and motions have been disallowed as untimely when filed after a point in the litigation when the lawyer sought to be sanctioned lacked an opportunity to correct or withdraw the challenged submission." *In re Pennie & Edmonds LLP*, 323 F.3d 86, 89 (2d Cir. 2003). In particular, a Rule 11 motion is untimely when, as here, a court has disposed of the challenged filing *before* the Rule 11 notice is served. *See, e.g.*, *Qiu v. Shanghai Cuisine, Inc.*, 18 Civ. 5448 (ER), 2021 WL 3929242, at *3 (S.D.N.Y. Sept. 1, 2021) (deeming Rule 11 motion "moot" when, in light of the Court's decision, the targeted party "lacked the ability to withdraw" its allegedly sanctionable filing); *Castro v. Mitchell*, 727 F. Supp. 2d 302, 309 (S.D.N.Y. 2010) ("[A] party cannot wait to seek sanctions until after the contention has been judicially disposed.").

Here, the Court ruled on the motion to intervene on May 9, 2025, ECF 343, *granting* it in part (by authorizing Intervenors to oppose vacatur). That left nothing for GT to correct or withdraw

at all, much less when Levona finally served its original Rule 11 safe-harbor notice more than seven and a half months later on December 31, 2025. Because Levona's Motion is therefore untimely, this Court could not impose Rule 11 sanctions based on GT's statements in the motion to intervene even if there were a substantive basis to do so (which there isn't).[7]

Indeed, the timing of Levona's Motion indicates the objective reasonableness of *all* of GT's filings. If GT's positions were "on their face . . . patently frivolous," Levona "could have" (and, presumably, would have) "moved far sooner." *Robinson*, 614 F. Supp. 3d at 81. That Levona instead waited until December 31, 2025, to serve its original Rule 11 notice—after all substantive filings in the action, and on the eve of the Court's vacatur decision—betrays Levona's own belief "that [Intervenors'] claims were not objectively unreasonable at the time they were brought." *Id.*[8]

That belief was, and is, correct: The three statements that Levona attacks from the motion to intervene merely recite findings from the detailed 102-page arbitration award—with corresponding citations to it. Under the FAA, an arbitrator's decision is normally entitled to "great deference," and "'[a] reviewing court is bound by the arbitrator's factual findings, interpretation of the contract and suggested remedies.'" *Nelson v. Credit Suisse Secs. (USA) LLC*, 25-CV-01980 (JAV), 2025 WL 2431606, at *1 (S.D.N.Y. Aug. 22, 2025) (quoting *Loc. 97, Int'l Bhd. of Elec. Workers v. Niagara Mohawk Power Corp.*, 196 F.3d 117, 124 (2d Cir. 1999)). All that a court needs

---

[7] Sanctions are likewise inapplicable to any statements in Intervenors' opposition to Levona's application for a preliminary anti-suit injunction, ECF 392, which Levona discusses in the background (but not the argument) section of its Motion. *See* Levona Br. at 6. The Court already ruled on that application on June 2, 2025, ECF 407, itself almost seven months before Levona served its original Rule 11 safe-harbor notice.

[8] Not to mention that Levona's delayed notice did nothing to further the "the aim of Rule 11 [] to minimize expenditure of judicial resources and encourage correction or withdrawal of defective documents," *Sacerdote*, 2022 WL 2078012, at *6, as it would not have saved the parties from preparing their already-submitted voluminous filings. The only effect it could have had would have been on the Court. But by the time the safe harbor expired on Friday, January 9, 2026, ECF 674, the Court almost certainly would have already substantially completed its 138-page vacatur decision, which it issued the following Monday, January 12, 2026. Contrast the principal case Levona relies on for its argument against GT—*AJ Energy LLC v. Woori Bank*, 18-CV-3735 (JMF), 2019 WL 4688629, at *8 (S.D.N.Y. Sept. 26, 2019)—where the frivolousness of the statements at issue was so apparent that notice of it was given 10 days after the filing at issue.

is a "barely colorable justification" for the award to confirm it. *Id*. Sure enough, this Court had already partially confirmed the arbitration award by the time GT became involved.

Of course, GT became involved because Levona was again challenging those findings, by way of its renewed petition to vacate, as having been procured by fraud. But at least until this Court issued its vacatur decision, it was not objectively unreasonable for GT to recite those adjudicated findings. *See In re Lehman Bros.*, 2025 WL 2778169, at *11 ("[C]ourts must avoid hindsight and resolve all doubts in favor of the signer.") (quotation marks omitted).[9]

To hold otherwise would chill lawyers from advocacy as routine as citing prior arbitral or judicial findings as facts, for fear of facing a Rule 11 motion whenever such a decision is later reversed or vacated. Such a rule would run afoul of the requirement that, for a factual statement to violate Rule 11, it must be "utterly lacking in support." *Bongiorno*, 2021 WL 4311169, at *23. More fundamentally, it would produce the opposite effect of what the advisory committee intended via its 1993 amendment to Rule 11. *See Hadges v. Yonkers Racing Corp*., 48 F.3d 1320, 1327 (2d Cir. 1995) (observing that the 1993 amendment was "'intended to remedy problems that ha[d] arisen' under the [prior] version of . . . Rule [11] and [wa]s expected to 'reduce the number of motions for sanctions presented to the court'") (quoting Rule 11 Advisory Committee Notes).

## III.    NOTHING IN THE FILING DESCRIBED IN CATEGORY 2 OF LEVONA'S MOTION WARRANTS SANCTIONS AGAINST GT.

After spending one paragraph arguing its position on Category 1, Levona devotes just three sentences to Category 2. It involves GT's statement in its September 10, 2025 opposition to Levona's renewed vacatur petition that various of the then-Subject Documents—what the Court called the "modeling documents," ECF 678 at 94—"reflect[ed] a potential settlement offer." ECF

---

[9] For the same reason, it was equally reasonable for GT to rely on the arbitration award in Intervenors' May 20, 2025 answer, *see* ECF 366 at 2-3, denying certain allegations in Levona's amended vacatur petition. Levona fleetingly references (but does not substantively challenge) that answer in its Motion. *See* Levona Br. at 6.

589 at 43. Levona argues that this statement is sanctionable because the Court found that it "gravely mischaracterize[s] the record" and that "there is no evidence that supports it." Levona Br. at 20-21 (quoting ECF 678 at 94-95).

As an initial matter, GT's characterization of the modeling documents as "settlement-oriented," ECF 589 at 43, was only one of many arguments concerning those same documents that GT made in its 51-page brief opposing vacatur. Nor was it a principal or even dispositive argument. In such circumstances—where "one argument in an otherwise non-frivolous motion is found to be utterly groundless"—courts are reluctant to impose sanctions. *Veliz v. Crown Lift Trucks*, 714 F. Supp. 49, 58-59 (E.D.N.Y. 1989) (discussing cases). Because the time and resources Levona devoted to responding to GT's motion would not have been meaningfully reduced, if at all, by the absence of this tertiary argument, sanctions are unwarranted. *Barbera*, 2025 WL 2098635, at *16 (noting Rule 11's goal to "streamline the administration and procedure of the federal courts").

GT of course recognizes, even if it respectfully disagrees with, the gravity of this Court's language rejecting its "settlement" argument. But sanctions are not justified just because the Court strongly found against Intervenors on this issue: "[W]hether the claim can withstand summary judgment or succeed at trial is not the standard for purposes of Rule 11." *Robinson*, 614 F. Supp. 3d at 77. "Rule 11 sanctions are not tied to the outcome of litigation." *Samsung Am., Inc. v. M/T Fort Producer*, 798 F. Supp. 184, 189 (S.D.N.Y. 1992) (granting summary judgment but denying sanctions). Nor are sanctions "warranted where the evidentiary support is merely weak and the claim is unlikely to prevail." *Mealus v. Nirvana Spring Water N.Y. Inc.*, No. 7:13-cv-313 (MAD/DEP), 2015 WL 4546023, at *6 (N.D.N.Y. July 28, 2015) (quotation marks omitted).

Here, an objectively reasonable basis for GT's "settlement" statement exists in the record—namely, Kertsikoff's deposition testimony describing one of the modeling documents from July

2022 as having been developed in the context of "early settlement" discussions. ECF 51-1 at 233-234. Although the Court found that this testimony did "not create a genuine issue of material fact," ECF 678 at 95, that is not the relevant test under Rule 11. *See Robinson*, 614 F. Supp. 3d at 77. Virtually all of the modeling documents post-date the onset of adversity between Eletson and Levona, raising a fair inference that they were being prepared in a settlement context. Marina Orfanoudaki, who prepared or received some of these documents, also testified that Peter Kanelos created the models because "he wanted to raise some extra money for Murchinson and Levona in order to give them, because, otherwise, he believed that Eletson Gas will go to endless legal battles with Murchinson and Levona since they have tons of lawyers." ECF 551-10 at 143, 144, 149-150, 167, 169-170.

The presence of an objectively reasonable basis for GT's statements ends the Rule 11 inquiry as a matter of law. *See Hadges*, 48 F.3d at 1329-30 (because Rule 11 "requires only that an attorney conduct 'an inquiry reasonable under the circumstances' into whether 'factual contentions have evidentiary support,'" the "initial focus" for the Court is to discern "whether an objectively reasonable evidentiary basis for the claim was demonstrated in pretrial proceedings or at trial"— and "*[w]here such a basis was shown, no inquiry into the adequacy of the attorney's pre-filing investigation is necessary*") (quoting Rule 11(b) and (b)(3)) (emphasis added).

And even if the Court disagrees that such a basis exists in the record, thereby requiring an inquiry into GT's pre-filing investigation, its investigation was adequate. GT's statement was necessarily based on information that Intervenors—GT's clients—provided to GT, as well as a review of the evidentiary record, including a review of the then-operative Subject Documents themselves. Shaftel Decl. ¶¶ 19, 20.[10] Of course, "[a]n attorney is entitled to rely on his or her

---

[10] While the Court found it "[r]evealing[]" that Intervenors ultimately chose not to depose Kanelos (the sender or recipient of many of the emails at issue) after having made some efforts to do so, ECF 678 at 78-79, Rule 11 requires

client's statements as to factual claims when those statements are objectively reasonable." *Calloway v. Marvel Entm't Grp.*, 854 F.2d 1452, 1470 (2d Cir. 1988), *reversed in part sub nom.*, *Pavelic & LeFlore v. Marvel Entm't Grp.*, 493 U.S. 120 (1989). An attorney may do so, moreover, "without having to assess [the client's] credibility; 'credibility is solely within the province of the finder of fact.'" *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 481 (S.D.N.Y. 2003) *aff'd sub nom., Jeffreys v. City of N.Y.*, 426 F.3d 549 (2d Cir. 2005); *see also Healey v. Chelsea Res., Ltd.*, 947 F.2d 611, 626 (2d Cir. 1991) (district court's findings that client's testimony was "totally lacking in credibility," "in bad faith," "fabricated," and "an obvious contrivance," "w[ere] not an appropriate basis for an award of sanctions against [counsel] as [client's] attorney under . . . Rule 11").

In addition, the universe of Subject Documents (as well as the number of modeling documents) grew from the prior 4 annexed to Levona's July 3, 2024 motion seeking leave to file an amended petition to vacate, ECF 125, to a collective 46 documents (of which 20 or so were modeling documents) by the time they were discussed in Levona's August 20, 2025 motion for summary judgment and Reorganized Eletson's August 21, 2025 joinder memorandum. ECF 551, 558. GT had three weeks to submit their opposition papers by September 10, 2025. And GT simply reacted in real-time to the new documents as they were disclosed, drew reasonable inferences based on its own assessment of the documents and the information from its clients, and raised the fair inference that the modeling documents reflected calculations of what Eletson could pay, as opposed to what Eletson owed, for a global resolution of the parties' disputes. Shaftel Decl. ¶ 21; *see, e.g., Calloway*, 854 F.2d at 1470 (noting that the reasonableness of an attorney's pre-filing inquiry "depends on such factors" as "how much time for investigation was available to the signer" and "whether he had to rely on a client for information as to the facts underlying the [filing]").

---

only a "reasonable inquiry," not the "best possible evidence." *Barbera*, 2025 WL 2098635, at *17. Nor does it require counsel "to conduct exhaustive discovery." *Mealus*, 2015 WL 4546023, at *7 (quotation marks omitted).

The context in which GT made its "settlement" statement is critical. As this Court stated in *Eletson I*, "'a petition brought under the FAA [for vacatur or confirmation] is not an occasion for *de novo* review of an arbitral award' . . . nor an occasion for the court to conduct a 'reassessment of the evidentiary record.'" ECF 104 at 38; *see also supra* n.4. Levona implies that the Court's statement that there was "no evidence" to support the inference drawn by GT necessarily renders its filing objectively unreasonable. Not so. This Court's finding, in keeping with its narrowly circumscribed task, that Intervenors did "not create a genuine issue of material fact" for purposes of warding off summary judgment, ECF 678 at 95, is not tantamount to a determination that GT's statement was utterly lacking in support and objectively unreasonable for purposes of Rule 11.

At the time GT filed its opposition brief in September 2025, moreover, it did not have this Court's vacatur decision in its rearview mirror. GT was not required to anticipate the Court's ruling when it relied on its clients to raise arguments on their behalf. *See Healey*, 947 F.2d at 626 ("[Counsel] was not required to anticipate on the eve of trial either that [client] would be unsuccessful on his claims . . . or that the court would exclude the proffered documents.").

Assessing GT's inquiry when it must be assessed for purposes of Rule 11—as of the time of filing, and without the hindsight benefits of this Court's vacatur decision—the "settlement" statement it made was not utterly lacking in support. Intervenors through GT presented at least some evidence supporting the notion that the documents were settlement-oriented, compelling the denial of sanctions. *Barbera*, 2025 WL 2098635, at *17.

## IV.    NONE OF THE DISCOVERY CONDUCT DESCRIBED IN CATEGORY 3 OF LEVONA'S MOTION WARRANTS SANCTIONS AGAINST GT.

Levona spends even less time—two sentences—on its third category of purportedly sanctionable conduct. For good reason: It pertains exclusively to purported discovery misconduct, not any filing—and therefore cannot implicate Rule 11 as a matter of law.

Specifically, Levona argues that, "as the Court ruled in its vacatur decision, Mr. Shaftel engaged in 'dilatory discovery' tactics that 'forced Levona to move to compel the production of basic and responsive documents' and then 'disregarded this Court's grant of various motions to compel.'" Levona Br. at 21 (quoting ECF 678 at 56).[11] But, as this Court has made categorically clear, "Rule 11 does not apply to alleged discovery abuses." *Candelaria v. Erickson*, No. 01 Civ. 8594 (LTS) (RLE), 2007 WL 1425849, at *1 n.1 (S.D.N.Y. May 14, 2007). Indeed, Rule 11 contains an entire subsection entitled "Inapplicability to Discovery," which expressly provides that the "rule does not apply to disclosure and discovery requests, responses, objections, and motions under Rules 26 through 37." Fed. R. Civ. P. 11(d); *see also New York v. Solvent Chem. Co.*, 210 F.R.D. 462, 473 (W.D.N.Y. 2002) (declining, in light of Rule 11(d), to "assess attorneys' fees and costs pursuant to Rule 11" for alleged discovery misconduct).

Levona's description of what "the Court ruled" is also incorrect: The Court made no ruling about "Mr. Shaftel" in its vacatur decision. Instead, the language that Levona quotes, Levona Br. at 21, comes from that portion of the Court's decision discussing Levona's separate Rule 37 sanctions motion against Intervenors themselves. This Court granted that separate motion, and Levona now seeks more than half a million dollars as sanctions against Intervenors. ECF 702.

By its current Motion, Levona seeks payment from GT, too, for the same discovery conduct—the quintessential double dip. But neither Rule 11 nor Section 1927 or the Court's inherent authority allow for it. Rule 11, as noted, is altogether inapplicable. And, again, Levona makes no allegation that GT acted in bad faith (and invokes no conduct from which bad faith could

---

[11] Also on Page 56 of the vacatur decision, this Court found that "[t]he principals of Intervenors delayed resolution of the case by withholding the document produced in the Bankruptcy Proceeding" and "threatening Levona with sanctions." ECF 678 at 56. Neither act is attributable to GT, as both occurred during Reed Smith's tenure.

be inferred), as required to implicate either Section 1927 or this Court's inherent authority.[12]

Even if the law did allow for the discovery-related sanctions that Levona seeks in Category 3, the facts would not justify them. "'[D]ilatory and uncooperative conduct' . . . does not approach the bad faith standard required for sanctions under the court's inherent powers." *Solvent Chem.*, 210 F.R.D. at 474 (denying inherent-authority sanctions even where, as with Levona here, the moving party was required to "file three motions to compel"); *see also Quadrozzi v. City of New York*, 127 F.R.D. 63, 83-84 (S.D.N.Y. 1989) (same, even where "plaintiffs' conduct was far from exemplary," and "plaintiffs' counsel's actions frustrated the City in its discovery attempts, prolonged this litigation, and wasted limited judicial resources," because "clear evidence that plaintiffs willfully abused the judicial process is lacking").

To the extent Levona seeks sanctions based on Vasilis Hadjieleftheriadis's and Laskarina Karastmati's choice not to appear for their depositions in New York, Levona identifies no basis to hold GT responsible for its clients' representatives' independent decisions. *See Gagasoules v. MBF Leasing LLC*, 286 F.R.D. 205, 217-218 (E.D.N.Y. 2012) (declining to sanction counsel for "protracted discovery dispute over the appropriate location for the Plaintiffs' depositions" and for witnesses' "failure to submit to a deposition"). GT was in no way responsible for these representatives' decisions to not appear for their noticed depositions. Shaftel Decl. ¶ 23.[13] As Mr. Hadjieleftheriadis and Ms. Karastamati attested in their respective declarations, (i) they made their decisions "[i]n conjunction with advice from personal counsel"—i.e., not GT, and (ii) there was

---

[12] Caselaw, moreover, emphasizes that "[i]n the discovery context, the discretion to sanction a party under a Court's inherent powers should be exercised with even more restraint than usual . . . because[] Rules 26(g) and 37 represent the principal enforcement power to punish discovery abuse." *Diedhiou v. Republic of Senegal*, 1:20-CV-05685 (DEH) (KHP), 2024 WL 3540406, at *3 (S.D.N.Y. July 10, 2024) (quotation marks omitted).

[13] *See also* ECF 587-4 (Mr. Shaftel writing to Levona's counsel that Mr. Hadjieleftheriadis and Ms. Karastamati had personal fears about traveling to New York under the circumstances, that "we have been communicating with them throughout the weekend trying to address these concerns," but that "they now advise, in consultation with Greek counsel," that they will not appear).

"nothing anyone . . . could do" to change their decisions. *Id.* ¶ 24.

Nor are sanctions warranted regarding the Eletson Gas documents. Although the Court ultimately found that Intervenors had sufficient control over those documents, ECF 678 at 47-51, GT in good faith believed at the time that Eletson Gas, which is not a GT client, was a separate entity beyond its clients' control. Shaftel Decl. ¶ 25. Regardless of any access the Court attributes to Intervenors' three representatives, GT could not review Eletson Gas documents containing non-client privileged or commercially confidential information.[14] *Id.* Importantly, GT disclosed all known document repositories to Levona, concealed nothing, and repeatedly urged (and even requested of Eletson Gas) that the documents instead be produced through Reed Smith (Eletson's counsel)—efforts that GT understood were being addressed in discussions between Levona and Reed Smith. *Id.* ¶¶ 27-29. Indeed, when GT made its position—and workaround proposal to facilitate discovery—clear to Levona during meet-and-confers and follow-up emails with counsel, Levona did not register any objection. *Id.* ¶ 30. The Court's ultimate disagreement with GT's judgment—particularly in the context of a contested control analysis involving a non-client of GT's—is not clear evidence of bad faith on GT's part. *See Diedhiou*, 2024 WL 3540406, at *3 (even "[p]oor legal judgment," unlike GT's, "is not the same as bad faith").

The facts here simply do not support the conclusion that GT was dilatory. This is not a case where discovery was delayed. Shaftel Decl. ¶ 32. There were no missed deadlines or unusual extension requests. *Id.* And, critically—in the very antithesis of any effort to conceal or delay—GT did not oppose Levona's motion to compel Reed Smith to produce the crime-fraud documents. *Id.* GT hit the ground running in this complex matter in the midst of discovery, with a massive

---

[14] For the reasons explained in greater detail in the accompanying Shaftel Declaration, the orders at ECF 342 and 687 reflect that this Court, in determining that Intervenors had control over Eletson Gas, relied on filings or representations made by Intervenors' or their representatives' other counsel—*not* GT—to reach its conclusion. *See* Shaftel Decl. ¶¶ 26, 31.

record that had amassed almost 300 docket entries prior to GT's appearance (and has collected more than 450 additional entries since). And notwithstanding that it had only a couple of months to conduct discovery, GT kept pace with the schedule and reacted to the Subject Documents in real-time. None of this can be said to have caused any multiplication of proceedings.

## V.    NOTHING IN THE FILINGS DESCRIBED IN CATEGORY 4 OF LEVONA'S MOTION WARRANTS SANCTIONS AGAINST GT.

Levona's final category is a catch-all encompassing various filings by GT in opposition to Levona's renewed vacatur petition. Levona contends that those filings contain "numerous false, misleading, frivolous, and improper representations." Levona Br. at 21. But Levona does not explain what makes them any of those things. Instead, Levona argues generally that GT violated Rule 11 by "doubl[ing] down on [Mr. Shaftel's] false statements that there had been no fraud," instead of "retract[ing]" them "[e]ven after receiving all the proof Levona marshalled proving misconduct by Eletson and its counsel in the arbitration." *Id.*

As an initial matter, Levona makes no attempt in Category 4 to clear Rule 11's "high bar," *Robinson*, 614 F. Supp. 3d at 78, which is clearable only by "patently clear" evidence. *Barbera*, 2025 WL 2098635, at *16. Levona's failure to even try to meet its burden alone is grounds for denying sanctions. *See, e.g.*, *Daniel v. Fighter-Daniel*, Case No. 24-11218, 2025 WL 2448484, at *2 (E.D. Mich. Aug. 25, 2025), *aff'd*, 2025 WL 3164450 (E.D. Mich. Nov. 12, 2025) (denying sanctions where, as with Levona here, movant failed to "develop an argument as to how Defendants' or defense counsel's conduct was sanctionable," instead simply "stat[ing] that Defendants submitted 'frivolous and vexatious' filings," but "not explain[ing] how the filings were 'frivolous and vexatious'"). GT's "name and reputation are [its] stock in trade and thus any unfair or hasty sullying of that name strikes at [its] livelihood," *Veliz*, 714 F. Supp. at 56. Levona's perfunctory analysis cannot justify the grave consequences that would result from sanctions.

To the extent GT can make out the nature of Levona's arguments in Category 4, GT responds by describing the 12 filings Levona cites—and by explaining why none are sanctionable. Of those filings, five are declarations from the three Intervenor representatives, plus two declarations from Mr. Solomon of Reed Smith, all made under penalties of perjury. The purportedly sanctionable portions of the declarations from Intervenors' representatives consist of averments that Eletson's arbitration conduct was fair and in good faith and that Intervenors owned the preferred shares. Levona Br. at 7-8. But, as this Court has made clear, "'an attorney who relies on a client's verification made under the penalty of perjury is not acting in bad faith; indeed, it is unlikely that such reliance would even rise to the level of objective unreasonableness.'" *Doe*, 2019 WL 13544699 at *12 (citation omitted).

As for the two declarations from Mr. Solomon, his subject statements concern: (i) the July 25, 2022 email produced in the bankruptcy proceeding, and his comments regarding it in his July 13, 2023 letter to the arbitrator, ECF 596 at 24-25; and (ii) a few crime-fraud documents, as well as his explanation that he and his firm did not invent the nomination theory. ECF 663 at 2, 5, 10, 15, 18-19. But the submission of these declarations cannot be judged with the hindsight of this Court's later determinations about them. ECF 678 at 128. Credibility determinations are not for GT to make. *Jeffreys*, 275 F. Supp. 2d 481. An attorney is also "entitled to rely on the investigation done by" the client's prior attorneys. *Mealus*, 2015 WL 4546023, at *6. Mr. Solomon's statements—such as "make sure our testimony is consistent with the facts," or "Levona's interests in the Company must be recognized to be extinguished or were transferred to Eletson"—do not, on their face, establish fraud. ECF 659-1, 659-2. In short, the documents are not free of ambiguity, and it was not objectively unreasonable for GT to provide Mr. Solomon's own explanations of actions that Reed Smith took in the underlying arbitration, in which GT had no involvement.

As for the remaining five filings in Category 4—GT's briefs opposing vacatur, GT's responses to Levona's lengthy Rule 56.1 Statement, and the December 9, 2025 oral-argument transcript—GT relied on its clients, the evidentiary record, and the inferences drawn from the Subject Documents to support the statements made in those filings. Shaftel Decl. ¶¶ 15, 19, 20, 21. GT could not perform its duty in opposing vacatur without relying on its clients and the record— especially as GT had no involvement in the arbitration and accordingly had (and still has) no personal knowledge of the underlying events.

Indeed, what Levona is arguing is essentially this: The inferences that Levona drew from the Subject Documents (and that this Court in turn accepted in granting vacatur) are the *only* permissible inferences that could have been drawn. And those inferences should have caused GT to entirely reject its own clients' credibility. In Levona's view, the only unsanctionable way in which GT could have responded to Levona's vacatur petition is by agreeing that the three Intervenor representatives committed a fraud and by not opposing vacatur at all.

But, of course, GT was not required to abdicate its duty of zealous representation in fear of sanctions, or to abandon its clients despite the body of caselaw permitting attorneys to rely even on clients with "serious questions of credibility." *Optical Commc'ns Grp., Inc. v. M/V Ambassador*, 938 F. Supp. 2d 449, 465 (S.D.N.Y. 2013), *aff'd*, 558 F. App'x 94 (2d Cir. 2014). Rule 11 must not "stifle the enthusiasm or chill the creativity that is the very lifeblood of the law." *Delaney v. HC2, Inc.*, 761 F. Supp. 3d 641, 666 (S.D.N.Y. 2025) (Liman, J.). And while respecting the Court's vacatur decision, GT still does not believe that the Subject Documents—none of which is a black-and-white smoking gun—unequivocally controvert its clients' positions. *See Mealus*, 2015 WL 4546023, at *8 (denying sanctions based on counsel's failure to retract because the additional

evidence, "while certainly affecting Plaintiff's credibility, did not destroy it").[15]

There are, of course, cases where a client's account is so implausible, and the evidence so obviously defective, that counsel must not proceed. One is *AJ Energy LLC*, the first of only two cases that Levona cites in its argument against GT. Plaintiff there claimed that after wiring $3 billion that disappeared, it nonetheless then sent another $5 billion to the same bank—an allegation the Court found "defies common sense and exceeds the limits of credulity," particularly given the facially "forged" transfer documents. *AJ Energy LLC*, 2019 WL 4688629, at *4, *11. Likewise, in *New Oriental Enter., PTE, Ltd. v. Mission Critical Solutions LLC*, 20-cv-02327 (MKV), 2022 WL 874783, at *7 (S.D.N.Y. Mar. 24, 2022), the second of the two cases Levona cites, counsel persisted in accusing the wrong individual (a 15-year-old) despite "irrefutable proof" of his error. In both cases, the failure to investigate or heed obvious red flags was clear-cut.

This case is nowhere near the realm of *AJ Energy* or *New Oriental*. Instead, this is a case where, "[a]lthough [Levona's] interpretation of the evidence differed substantially from [Intervenors'] interpretation, neither [Intervenors] nor their counsel alleged facts that were utterly lacking in evidentiary support." *Doe*, 2019 WL 13544699, at *12. The record contains evidence permitting the inference that the buyout occurred. *See* ECF 595-55; 595-57; 595-25, ¶¶ 9-10; 595-1, ¶ 71; 595-58. Evidence likewise exists showing that the nomination and the transfer of the preferred shares both occurred, too. *See* ECF 31-25, 595-25 ¶ 108 (translation); 31-26, 595-1 ¶ 197 (translation); 31-24, 556-4; 595-76 at 31; 67-5, 663-8 (translation); 556-4. Indeed, the arbitrator found exactly that, ruling for Eletson (and Intervenors) on those very issues, in an award that this Court partially affirmed in *Eletson I*. And the hindsight fact that this Court, in its vacatur decision,

---

[15] Although, as noted, the "no fraud" argument that Levona flags in Category 4 was not GT's principal argument in opposition to vacatur, that argument had some basis, too. Indeed, and albeit in a 37-page declaration that this Court struck, ECF 665, Robert Cleary, Esq., a distinguished lawyer known for his extensive career as a former federal prosecutor, also determined after reviewing the Subject Documents that no fraud had occurred in the arbitration.

ultimately found such evidence unpersuasive, ECF 687 at 110-111, is irrelevant, for the reasons already discussed. Although *how* the Court got there—in particular, via a decision spanning 138 pages—*is* relevant, as it only further underscores that this was far from an open-and-shut case.

In sum, all that "[Intervenors] and their counsel [have done here is to] advocate for a view of the facts that was most favorable to their claims. This conduct was not objectively unreasonable." *Doe*, 2019 WL 13544699, at *12. Even though this Court "fully credited [Levona's] interpretation of the evidence, it would not render [Intervenors'] claims . . . so clearly losers" to justify sanctions. *Diedhiou*, 2024 WL 3540406, at *4 (brackets and quotation marks omitted).[16] Indeed, "[a] distinction must be drawn between a position which is merely losing, and one which is both losing and sanctionable." *Optical*, 938 F. Supp. 2d at 465 (citation omitted). Here, there is no argument, much less a finding, of GT's willfulness. The challenged portions of GT's filings constitute only a few of many independent arguments. Mr. Shaftel has not previously been sanctioned, Shaftel Decl. ¶ 5, and there is no clear showing of how GT's acts multiplied the proceedings. Under these circumstances, this Court—in "resolv[ing] all doubts in [GT's] favor," as it must, and "in an exercise of 'restraint'"—should not impose sanctions against GT. *Optical*, 938 F. Supp. 2d at 465.[17]

## CONCLUSION

For all of the reasons set forth above, GT respectfully submits that this Court should deny Levona's Motion, as against GT, in its entirety. And if the Court is nonetheless inclined to grant the Motion as against GT, GT respectfully requests a hearing prior to any such determination.

---

[16] Also instructive in the document-interpretation context is *Talos Capital Designated Activity Co. v. 257 Church Hldgs. LLC*, 226 A.D.3d 414, 416-17 (1st Dep't 2024). There, albeit under New York law, the First Department vacated sanctions against counsel who "put forth its interpretation of the documents . . . and then made arguments based on its interpretation," because "[t]he fact that the court took a different view of the evidence is not grounds for sanctions."

[17] If this Court were to disagree, additional submissions—starting with Levona's attorneys' fees declaration—would be necessary to determine the appropriate amount of sanctions, if any, i.e., "the least severe sanctions necessary to achieve the goal" of Rule 11's primary purpose of deterrence, *Delaney*, 761 F. Supp. 3d at 666, and only those "directly resulting" from any violative argument within the filings at issue. Fed. R. Civ. P. 11(c)(4).

Dated:  March 5, 2026
        New York, New York

Respectfully submitted,

ELMAN FREIBERG PLLC


By:   */s/ Benjamin S. Litman*
      Benjamin S. Litman
      Howard I. Elman
      Mioko C. Tajika
950 Third Avenue, Suite 1600
New York, New York 10022
(646) 780-8100
blitman@ef-law.com
helman@ef-law.com
mtajika@ef-law.com

*Attorneys for Greenberg Traurig, LLP*
  *and Hal S. Shaftel, Esq.*